DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
KARUN A. TILAK, SBN 323939
JESSE E. LANIER, SBN 303395
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, CA 94102-5408
Telephone: (415) 554-4223
Facsimile: (415) 437-4644
E-Mail: Jesse.Lanier@sfcityatty.org

Attorneys for Plaintiffs
CITY AND COUNTY OF SAN FRANCISCO

*[additional counsel on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; and CITY OF TUCSON, | Case No.  25-9277 |
| Plaintiffs, | |
| vs. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| UNITED STATES DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in her Official Capacity; OFFICE OF COMMUNITY ORIENTED POLICING SERVICES; and CORY D. RANDOLPH, in his official capacity, | |
| Defendants. | |

**INTRODUCTION**

1.     Since the mid-1990s, under the Public Safety Partnership and Community Policing Act ("COPS Statute"), Congress has authorized and appropriated more than $21 billion to be distributed as grants to local law enforcement agencies—all in service of increasing the efficacy of community policing by improving cooperative efforts between law enforcement agencies and the communities they serve.  The Department of Justice Office of Community Oriented Policing Services is charged with administering these grants.

2.     Plaintiffs the City and County of San Francisco, the County of Santa Clara, and the City of Tucson rely on grants issued pursuant to this statute ("COPS Grants") to support the vital public safety functions of their local law enforcement agencies.

3.     This year, each Plaintiff received a COPS Grant to meet critical needs for its law enforcement agencies, including grants to recruit and hire police officers in order to address serious staffing shortages and to support officers' mental health and wellness.

4.     The DOJ, however, has inserted in each of Plaintiffs' grant awards a number of unconstitutional and unlawful conditions (collectively, the "Challenged Conditions") that Plaintiffs must accept to receive the awarded funding.

5.     Specifically, these conditions require Plaintiffs to agree to and certify compliance with an interpretation of antidiscrimination law that is legally unsupported and ambiguous; agree in advance to comply with all Executive Orders and memoranda that the President has issued *and might in the future issue* to advance and impose his domestic political agenda; and agree to use funding in a manner that advances Defendants' policy goals but is at odds with the purpose of the grants.

6.     These Challenged Conditions constitute an impermissible attempt by the Executive Branch to coerce Plaintiffs into implementing certain policy objectives, in contravention of the separation of powers and other bedrock principles of the United States Constitution, settled civil rights and antidiscrimination law, the explicit terms of the COPS Statute itself, and the Administrative Procedure Act ("APA").

7.     Plaintiffs therefore face an untenable choice between, on the one hand, acquiescing to unlawful and unconstitutional conditions, and, on the other, surrendering critically-needed funds that

8.      enable their law enforcement agencies to effectively serve their communities and address the mental health needs of officers who are on the front lines of protecting public safety.

9.      Plaintiffs therefore bring this lawsuit to challenge the imposition of the Challenged Conditions on their COPS Grants.  Plaintiffs seek and are entitled to a declaratory judgment that Defendants' adoption and application of the Challenged Conditions are unlawful.  Plaintiffs also seek and are entitled to injunctive relief barring Defendants from applying or enforcing the Challenged Conditions or any materially similar conditions in connection with Plaintiffs' COPS Grant Awards.  And, under the APA, Plaintiffs seek and are entitled to an order vacating and setting aside the Challenged Conditions.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction under 28 United States Code section 1331 because this is a civil action arising under the Constitution and other laws of the United States.

11.      In addition to its other remedial authorities, this Court has authority to issue declaratory relief under the Declaratory Judgment Act, 28 United States Code sections 2201-02.

12.      Venue properly lies within the Northern District of California under 28 United States Code sections 1391(b)(2) and 1391(e)(1) because Plaintiffs City and County of San Francisco and the County of Santa Clara are in this judicial district; no real property is involved in this action; and a substantial part of the events or omissions giving rise to this action occurred in this District.

## DIVISIONAL ASSIGNMENT

13.      Assignment to the San Francisco Division of this District is proper under Civil Local Rules 3-2(c)-(d) because the San Francisco Division is the Division serving San Francisco, which is where a substantial part of the events or omissions giving rise to the claims asserted below occurred, and is therefore where this action arises.

# PARTIES

## I.    Plaintiffs

14.    Plaintiff City and County of San Francisco ("San Francisco") is a municipal corporation organized and existing under and by virtue of the laws of the State of California and is a charter city and county.

15.    Plaintiff County of Santa Clara ("Santa Clara") is a charter county and political subdivision of the State of California.

16.    Plaintiff City of Tucson ("Tucson") is a municipal corporation organized and existing under the laws of the State of Arizona.

17.    Plaintiffs have standing to bring this action because Defendants' adoption and imposition of the Challenged Conditions have injured, are injuring, and will continue to injure Plaintiffs unless and until application and enforcement of the Challenged Conditions are permanently enjoined.

## II.    Defendants

18.    Defendant Department of Justice (the "DOJ") is an agency and executive department of the United States government.  It has the ultimate responsibility for implementing the federal grant programs at issue in this action.  The DOJ is an "agency" within the meaning of the APA, United States Code section 701(b)(1).

19.    Defendant Pamela Bondi is the Attorney General of the United States.  She is sued in her official capacity, in which capacity she is responsible for overseeing and administering all duties and programs of the DOJ, including the Office of Community Oriented Policing Services, which administers the grants at issue in this lawsuit, except to the extent such activities are nondelegable by law.

20.    Defendant Office of Community Policing Services ("COPS Office") is an agency of the federal government within the DOJ.  It is the component of the DOJ responsible for advancing the practice of community policing by the nation's state, local, territorial, and tribal law enforcement agencies through information and grant resources.  The COPS Office oversees the administration of

the federal grant programs at issue in this lawsuit.  The COPS Office is also an "agency" within the meaning of the APA, 5 United States Code section 701(b)(1).

21.    Defendant Cory D. Randolph is the Acting Director of COPS.  He is sued in his official capacity, in which capacity he is responsible for administering all duties and programs of COPS, except to the extent such activities are nondelegable by law.

## FACTUAL ALLEGATIONS

### I.    Congress Creates COPS Grants to Aid Local Law Enforcement in Community Policing

22.    In 1994, Congress enacted the Public Safety Partnership and Community Policing Act of 1994, Pub. L. No. 103-322, Title I, Sept. 13, 1994, 108 Stat. 1807 ("COPS Statute"), with the goal of "increas[ing] the number of law enforcement officers interacting directly with members of the community" and improving "training to law enforcement officers to enhance their problem solving, service, and other skills needed in interacting with members of the community."  Pub. L. No 103-322 at § 10002, 108 Stat. at 1807.

23.    To this end, the statute authorized the DOJ to make grants to states and localities to "increase police presence, to expand and improve cooperative efforts between law enforcement agencies and members of the community to address crime and disorder problems, and otherwise to enhance public safety."  Pub. L. No 103-322 at § 10002,108 Stat. at 1808.  Congress enumerated twenty-four purposes for which grants may be made, including, as relevant here, "to hire and train new, additional career law enforcement officers for deployment in community-oriented policing."  34 U.S.C. § 10381(b)(2).  In 2018, Congress enacted the Law Enforcement Mental Health and Wellness Act of 2017, Pub. L. No. 115-113, Jan. 10, 2018, 131 Stat. 2276 ("LEMHWA"), with the goal of "provid[ing] support for law enforcement agency efforts to protect the mental health and well-being of law enforcement officers."  131 Stat. at 2276.  LEMHWA amended the COPS Statute to add the following purpose for which COPS Grants may be made: "to establish peer mentoring mental health and wellness pilot programs within State, tribal, and local law enforcement agencies."  34 U.S.C. § 10381(b)(24).

24.    The COPS Statute also sets out various requirements for applications for grant funding, including that applicants must "provide assurances that the applicant will, to the extent practicable,

seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks within the sworn positions in the law enforcement agency." 34 U.S.C. § 10382(c)(11).

25.    The DOJ administers COPS Grants through the COPS Office.  The COPS Office manages several types of COPS Grants each year.  Plaintiffs in this case received three grants, the COPS Hiring Program grant ("Hiring Grant"), Community Policing Development Microgrant Program ("COPS Microgrants"), and Law Enforcement Mental Health and Wellness Program Grant ("Mental Health Grant").

26.    The Hiring Grant "furthers the COPS Office's goal of advancing public safety through community policing by funding additional full-time career law enforcement positions to meet law enforcement agencies' community policing strategies." FY2025 Hiring Grant Notice of Funding Opportunity Guide ("NOFO") ("Hiring Grant NOFO") at p. 1, available at https://cops.usdoj.gov/ pdf/2025ProgramDocs/chp/nofo.pdf [https://perma.cc/L4CV-3LZL].  The DOJ describes community policing as "a philosophy that promotes organizational strategies that support the systematic use of partnerships and problem-solving techniques to proactively address the immediate conditions that give rise to public safety issues such as violent crime, nonviolent crime, and fear of crime." *Id.* at p. 6.

27.    Hiring Grants accomplish this goal by "provid[ing] funding directly to law enforcement agencies to hire and/or rehire career law enforcement officers in an effort to increase their community policing capacity and crime prevention efforts." Hiring Grant NOFO at p. 10.  Hiring Grants fund the salary and fringe benefits for new or re-hired full time officers for up to a three-year period. *Id.* at p. 12.

28.    The DOJ's COPS Microgrants "fund novel or innovative approaches to problem solving by local, state, tribal, and territorial law enforcement agencies that help develop law enforcement's community policing capacity through the implementation of commonsense policing strategies." FY25 COPS Microgrants Program Notice of Funding Opportunity Guide ("COPS Microgrant NOFO") at p. 8, available at https://cops.usdoj.gov/pdf/2025ProgramDocs/cpdmicrogrants/ nofo.pdf [https://perma.cc/ZAC9-TNM7].  There are several available subcategories of COPS Microgrants, including Uplifting the Image of the Law Enforcement Profession and Officer Recruitment, Hiring, and Retention. *Id*. at p. 9.  The COPS Microgrants program also allows law

enforcement agencies to propose projects "that offer highly innovative solutions" to "complex, locally identified community issues" that do not "fit within other identified microgrant categories." *Id* at p. 13.

29.     The COPS Microgrant Program funds grants that advance community policing in seven different engagement areas, one of which is "officer recruitment, hiring, and retention" ("Recruitment Microgrant"). These Recruitment Microgrants recognize that "the recruitment, selection, and retention of officers and deputies are among the most important elements to advancing community policing within an agency." COPS Microgrant NOFO at p. 10. To that end, the grant program seeks to further the ability of law enforcement agencies to "attract and retain the best law enforcement candidates who represent a variety of backgrounds, knowledge, and experiences," and "reflect[] the communities they serve." *Id*. It does this by providing funding for "innovative approach[es] to recruiting and hiring [] law enforcement officers, such as ways of reaching new talent pools or engaging with candidates who may not have previously considered working in law enforcement." *Id*. at p. 11.

30.     The Mental Health Grant "prioritizes wellness by providing resources to law enforcement agencies to support mental health and wellness efforts." FY25 LEMHWA Notice of Funding Opportunity Guide ("LEMHWA Grant NOFO") at p. 7, available at https://cops.usdoj.gov/pdf/2025ProgramDocs/lemhwa/nofo.pdf [https://perma.cc/Z7QJ-9XNP]. COPS Mental Health Grants fund "the delivery of peer support, training, family resources, suicide prevention, stress reduction, clinical support, and other promising practices for wellness programs" for a two-year period. *Id*. at pp. 8–9.

31.     The DOJ's objectives for Mental Health Grant awards include increasing law enforcement agency capacity (1) "to provide mental health and wellness training and resources for employees of law enforcement agencies and their families," (2) "to implement peer support networks for crisis and non-crisis circumstances," and (3) "to address and reduce the stigma associated with officer mental health and wellness by supporting the implementation of mental health education and development of resources." LEMHWA Grant NOFO at p. 7. According to the DOJ, "[m]ental and psychological health is as essential as physical health for law enforcement officers to effectively keep communities safe from crime and violence," and prioritizing officer wellness results in "a more

compassionate, effective, and resilient workforce that fosters a safer environment for both officers and the communities they serve." *Id.*

## II. Plaintiffs Apply for and Receive COPS Grants to Address Critical Public Safety Needs

32.     On March 15, 2025, Congress passed the Full-Year Continuing Appropriations and Extensions Act, Pub. L. No. 119-4, Mar. 15, 2025, Div. A Tit. III Sec. 1302, 139 Stat. 9, allocating more than $417 million to the COPS Office.

33.     In May of 2025, pursuant to that appropriation, the DOJ issued NOFOs for the FY25 Hiring Grant, the FY25 Mental Health Grant, and the FY25 COPS Microgrant.

### A. The San Francisco Police Department Applies for and Receives the Hiring Grant to Address Critical Staffing Needs

34.     The San Francisco Police Department ("SFPD") is a department of the City and County of San Francisco and is the municipal local law enforcement agency with primary law enforcement authority for the public safety of the over 800,000 residents and thousands of visitors in San Francisco.

35.     Adequate staffing—particularly for sworn peace officers authorized to enforce laws and make arrests ("sworn officers")—is essential to SFPD's ability to meet its core public safety function and deliver just, transparent, unbiased, and responsive policing for the community.

36.     SFPD's recommended staffing level to meet its current operational needs is 2,257 sworn officers.  However, for several years, SFPD has faced critical staffing shortages.  For example, in June 2025, SFPD was over 690 sworn officers short of its recommended staffing level (a deficit of approximately 30%).  To make up for this gap, SFPD has largely relied on overtime to meet the public safety needs of the city, which is both more costly for the City and more burdensome on SFPD officers.

37.     This year, San Francisco has prioritized increasing staffing levels for SFPD and other local public safety agencies, and SFPD has made significant progress toward recruiting and retaining new sworn officers.  These efforts have produced impressive results: the City has seen a decline in crime over 2025, with violent crime down by 18 percent and property crime falling by 28 percent.

38.     Ensuring that there is adequate funding to hire and retain officers is a priority for SFPD and San Francisco.  COPS Hiring Grants have played a vital role in ensuring that SFPD can continue

to hire qualified officers to meet its staffing needs and fulfill its public safety mission.  For example, in the fiscal year that ended June 30, 2021, the City received a $6.25 million Hiring Grant.  The grant funded the salaries and fringe benefits of fifty entry-level officers.  Several of these officers were assigned to the Field Operations Bureau, which is responsible for frontline policing and community engagement, including responding to emergency calls, conducting routine patrols, and enforcing traffic laws.

39.    In 2025, SFPD once again applied for a Hiring Grant to help the Department fund fifty sworn officer positions.  The need for Hiring Grants is particularly acute this year because San Francisco faces a difficult financial outlook.  For the budget cycle for fiscal years 2025 through 2027, the City had to close a $800 million deficit.  While the budget did not cut funding for sworn staff at SFPD, outside funding—including from COPS Hiring Grants—is an essential part of the Department's goal of reaching full staffing levels.

40.    SFPD submitted its application for a Hiring Grant on June 27, 2025.  On October 10, 2025, COPS approved SFPD's Hiring Grant application for $6.25 million for the payment of the salaries and fringe benefits of fifty officers and sent to SFPD a Pre-Acceptance Award Package ("SFPD Hiring Grant Award").  *See* Ex. 1 (SFPD Hiring Grant Award).  The SFPD Hiring Grant Award, among other things, reiterates the purpose of the Hiring Grant program, lists the terms and conditions that SFPD must agree to in order to accept the grant, and describes the mechanics under which the grant funds must be drawn down, expended, and documented by SFPD.

**B.  The Tucson Police Department Applies for and Receives the COPS Microgrant to Recruit Qualified Applicants**

41.    The Tucson Police Department ("TPD") is a department of the City of Tucson and is the municipal local law enforcement agency with primary law enforcement authority for the public safety of the approximately 550,000 residents of Tucson.  Funding from the DOJ is a critical resource for the department.

42.    Over the past four years, TPD has expended an average of $12.4 million annually in DOJ grant funding.  For the fiscal year that ended June 30, 2025, TPD spent $13.2 million in DOJ

1  grant funds, which was almost $2 million more than its entire general-fund allocation for non-

2  personnel expenses.

3      43.    Adequate staffing, particularly for sworn officers, is essential to TPD's ability to meet

4  its core public safety function and to deliver just, transparent, unbiased, and responsive policing for the

5  community.  But filling these positions is challenging.  As of June 30, 2025, only 772 of the 871

6  authorized positions for sworn personnel were filled, and there were 181 officers eligible to retire.

7  TPD received a $6.25 million Hiring Grant in 2024, to be used for salaries and fringe benefits for

8  sworn officers over a five-year period.  With this boost to TPD's hiring capacity, TPD is now focusing

9  on maximizing the efficacy of its recruitment efforts.

10     44.    On June 30, 2025, TPD applied for a Recruitment Microgrant to help TPD expand its

11 recruiting footprint across the United States and "recruit[] a candidate pool from diverse

12 backgrounds."  *See* Ex. 2 (TPD Recruitment Microgrant Award) at p. 4.  The Recruitment Microgrant

13 was also sought to strengthen internal talent pipelines, including TPD's Pathway to Policing program,

14 which provides a pathway for non-sworn personnel, such as Community Service Officers and

15 Professional Staff Investigators, to become sworn officers.  *Id.*  These internal advancement programs

16 help TPD to effectively mentor and retain these valuable employees.  *Id.*

17     45.    On October 10, 2025, the DOJ awarded TPD the requested Recruitment Grant in the

18 amount of $175,000 and sent to TPD a Pre-Acceptance Award Package ("TPD Recruitment

19 Microgrant Award").  *See* Ex. 2.  The TPD Recruitment Award Package, among other things,

20 reiterates the purpose of the COPS Microgrants program, lists the terms and conditions that TPD must

21 agree to in order to accept the grant, and describes the mechanics under which the grant funds must be

22 drawn down, expended, and documented by TPD.

23
24
### C. The County of Santa Clara's Office of the Sheriff Applies for and Receives a COPS Mental Health Grant to Support Staff Wellness, Engagement, and Retention

25     46.    Santa Clara's Office of the Sheriff ("SCCSO") is a department of the County of Santa

26 Clara and serves the entire Santa Clara County area, home to approximately 1.9 million residents.

27 SCCSO enforces state and local criminal laws in the unincorporated areas of the county, which total

28 approximately 600 square miles; serves as the municipal police department under contract with three

cities in the county; offers law enforcement services under contract to Stanford University, the Santa Clara County Superior Court, the Valley Transportation Authority, and other local agencies; offers regional investigative support with criminal investigations carried out by other law enforcement agencies at the local, state, and federal levels; and is responsible for the safety and care of the incarcerated population housed in the County of Santa Clara's two jails.

47.     SCCSO is committed to building a resilient, mission-ready workforce through a comprehensive wellness strategy that supports both fitness for duty and long-term quality of life. Consistent with this commitment, SCCSO operates a suite of wellness programs that address physical needs—like nutrition, exercise, sleep, and chiropractic care—as well as mental and emotional needs— like confidential peer support for crisis intervention.

48.     This year, SCCSO has prioritized expanding its programming for mental and emotional wellness.  The continuing effects on staff of recent critical incidents—especially the 2021 mass shooting at a Valley Transportation Authority rail yard in the City of San José, at which SCCSO deputies were first responders, and which killed ten people—have reinforced SCCSO's focus on employees' mental and emotional wellness.  Moreover, data from Santa Clara's Employee Assistance Program show that, relative even to other law enforcement agencies, SCCSO's staff underutilize the mental health services available to the broader county workforce, suggesting a need for culturally-tailored, trust-based interventions for law enforcement.  These interventions are essential to staff engagement and retention.

49.     On June 24, 2025, SCCSO submitted its application for the Mental Health Grant. SCCSO sought funding for critical wellness programming for the next two years, including (1) a secular chaplain to offer emotional, moral, and spiritual support to deputies, professional staff, and their families, serving people of any or no faith; (2) Courageous Heart training sessions to high-risk SCCSO personnel, including those working in or exposed to Special Weapons and Tactics, sex crimes, and in-custody mental health services, and those close to retirement; and (3) a pilot wellness-check program conducted by licensed therapists.

50.     On October 10, 2025, COPS approved SCCSO's Mental Health Grant Application for $200,000 to fund, among other things, a chaplain, Courageous Heart training sessions, and a pilot

wellness-check program, and sent to SCCSO a Pre-Acceptance Award Package ("Mental Health Grant Award"). *See* Ex. 3 (SCCSO Mental Health Grant Award). The Mental Health Grant Award, among other things, reiterates the purpose of the Mental Health Grant, lists the terms and conditions that SCCSO must agree to in order to accept the grant, and describes the mechanics under which the grant funds must be drawn down, expended, and documented by SCCSO.

### III. The DOJ Inserts Unlawful and Unconstitutional Conditions into Plaintiffs' Grant Awards

51. Plaintiffs' grant awards—the SFPD Hiring Grant Awards, the TPD Recruitment Microgrant Award, and the SCCSO Mental Health Grant Award—set out between thirty-nine and forty-two numbered conditions ("Grant Award Conditions") that SFPD, TPD, and SCCSO must each accept in order to receive the much-needed funds. These Grant Award Conditions, in turn, incorporate by reference several other DOJ documents, conditioning Plaintiffs' acceptance of grant awards on compliance with their terms. Plaintiffs' deadline to agree to the Grant Award Conditions is November 24, 2025.

52. Included in the Grant Award Conditions for all three types of grants are two sets of conditions that are arbitrary, vague, contradictory, and impose requirements unrelated to the purpose of the COPS Grants and in contravention of Congressional intent and authorization: (1) the Discrimination Condition (described in Part III.A below) and (2) the EO Condition (described in Part III.B below).

53. In addition, the NOFOs for all three grants each include a Federal Funding Restriction that purports to prohibit the use of awarded grant funds for various purposes that are ambiguous and contrary to the goals of the COPS Grants (addressed in Part III.C, below).

54. The Discrimination Condition, EO Condition, and Federal Funding Restriction constitute the unlawful and unconstitutional Challenged Conditions from which Plaintiffs seek relief in this case.

### A. The Discrimination Condition

55. Condition 3 of the Grant Award Conditions (the "Discrimination Condition") requires that, by accepting the grant, a Plaintiff or other grantee "certifies that it does not operate any program

(including any such programs having components relating to diversity, equity, and inclusion) that violates any applicable Federal civil rights or antidiscrimination laws." Ex 1 (SFPD Hiring Grant Award) at p. 6; Ex. 2 (TPD Recruitment Microgrant Award) at p. 6; Ex. 3 (SCCSO Mental Health Grant Award) at p. 6. This condition further requires that each Plaintiff or grantee "agrees that its compliance with all applicable Federal civil rights and antidiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for the purposes of the False Claims Act (31 U.S.C. §§ 3729-3730 and 3801-3812)." Ex. 1 at p 5; Ex. 2 at p. 7; Ex. 3 at p. 7.

56.    While Plaintiffs have routinely certified compliance with federal antidiscrimination laws as a condition of federal funding in the past, Defendants have thrown into doubt the well-established meaning of such a certification. The DOJ has issued guidance that purports to describe what antidiscrimination law requires, but, in fact, this guidance advances an ideological agenda that presents a contradictory, ambiguous, and legally unsupported distortion of federal antidiscrimination law as prohibiting any program or activity that takes into account or encourages diversity, equity, inclusion. The Discrimination Condition therefore purports to substitute the Executive's policy preferences for both Congress's enactment of antidiscrimination law and the judiciary's authoritative interpretations of those laws.

57.    Defendants' effort to impose their unsupported view of anti-discrimination law through the Discrimination Condition also throws into doubt a series of other related Grant Award Conditions that require recipients to comply with various civil rights and antidiscrimination laws (collectively the "Civil Rights Conditions").[1] For example, Condition 8 requires that recipients comply with "terms and conditions in the applicable award year COPS Office Program Award Owner's Manual" ("Award Owner's Manual") and the DOJ Grants Financial Guide ("Financial Guide"). *See, e.g.*, Ex. 1 at p. 6; Ex. 2 at p. 6; Ex. 3 at p. 7. The Award Owner's Manual and Financial Guide, in turn, require

---

[1] For avoidance of doubt, the Civil Rights Conditions are not among the Challenged Conditions (which are the Discrimination Condition, EO Condition, and Federal Funding Restriction). However, as discussed below, because the Discrimination Condition and EO Condition throw into doubt the meaning of the Civil Rights Conditions, Plaintiffs request that any relief with respect to the Discrimination and EO Conditions clarify that references to statutes in the Civil Rights Conditions mean those statutes *as enacted by Congress and interpreted by the judiciary*.

compliance with federal antidiscrimination law.  *See, e.g.*, 2024 COPS Hiring Program Award

Owner's Manual at pp. 8-9, 62, available at https://cops.usdoj.gov/pdf/2024AwardDocs/chp/AOM.pdf

[https://perma.cc/P39E-JBC6]; 2024 LEMHWA Program Award Owner's Manual, at pp. 22-23, 62

available at https://cops.usdoj.gov/pdf/2024AwardDocs/lemhwa/AOM.pdf [https://perma.cc/FPB5-

4E46]; 2024 COPS Microgrant Program Award Owner's Manual at pp. 22-23, 62,

https://cops.usdoj.gov/pdf/2024AwardDocs/cpd/AOM.pdf [https://perma.cc/P66L-MEJ2];[2] Financial

Guide at p. 5, available at https://www.ojp.gov/doj-financial-guide-2024 [https://perma.cc/JV2H-

B7CE].  Condition 9 requires each Plaintiff to comply with "applicable federal civil rights and

antidiscrimination statutes and regulations."  Ex. 1 at p. 6; Ex. 2 at p. 7; Ex. 3 at p. 7.  And Condition

15 requires each Plaintiff to reaffirm its agreement to comply with the assurances and certifications

that are part of the application process, including compliance with federal civil rights and

antidiscrimination law and the COPS Statute.  Ex. 1 at p. 11; Ex. 2 at p. 11; Ex. 3 at p. 11.

58.    In a vacuum, the Civil Rights Conditions do not pose constitutional concerns, and

Plaintiffs do not challenge the federal government's authority to include the Civil Rights Conditions in

grant agreements.  However, Plaintiffs now face significant uncertainty as to what these conditions

mean.  As described below, actions taken by the Trump administration, including by Defendant Bondi,

demonstrate that Defendants have adopted a contradictory and legally unsupported interpretation of

federal civil rights and antidiscrimination statutes and caselaw.  This incorrect interpretation is

reflected in the Discrimination Condition—which could be read to suggest that any program "having

components relating to diversity, equity, and inclusion" violates Federal civil rights or

antidiscrimination laws—and casts doubt on the meaning of the Civil Rights Conditions.

59.    This uncertainty is further exacerbated because Plaintiffs must stipulate that compliance

with antidiscrimination law is material for purposes of the federal False Claims Act—which threatens

to expose Plaintiffs to significant penalties for conditions that have been rendered unascertainable by

---

[2]Notwithstanding Condition 8's requirement that grantees comply with the Award Owner's Manual for the "applicable award year," an Award Owner's Manual for FY2025 was not provided with the Grant Awards, and Plaintiffs have been unable to locate a FY25 Manual.  This further exacerbates the problem that Plaintiffs must agree to terms they have not seen.  Plaintiffs reserve the right to challenge additional unlawful or unconstitutional provisions of the FY2025 Award Owner's Manual once it becomes available.

Defendants' unsupported pronouncements on what antidiscrimination and civil rights laws require. Thus, any relief with respect to the Discrimination Condition (and the EO Condition, discussed in Part III.B) must also clarify that references to antidiscrimination and civil rights statutes (such as in the Civil Rights Conditions) mean those statutes as enacted by Congress and interpreted by the judiciary, such that it would not be a violation of those conditions for a grantee to take actions that comply with the law as interpreted by the courts, even if those actions run counter to the Executive's view of those laws.

60.    Since his inauguration, President Trump has issued a series of executive orders ("EOs") purporting to target any program that advances diversity, equity, and inclusion goals. For example, he issued orders directing all federal agencies to "terminate . . . 'equity-related grants'"—without defining "equity-related" or even "equity"—and to require grant recipients to certify that they do not operate any programs "promoting" diversity, equity, inclusion, and accessibility "that violate any applicable Federal antidiscrimination laws" in all grant terms.[3]  Going further, President Trump recently ordered that discretionary grant awards must "demonstrably advance the President's policy priorities" and "shall not be used to fund, promote, encourage, subsidize, or facilitate" whatever the Trump administration may deem to be "racial preferences or other forms of racial discrimination by the grant recipient."[4]

61.    On July 29, 2025, after each of the Plaintiffs submitted their Applications, Attorney General Bondi issued a memorandum titled "Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination" ("July Bondi Memo"). The July Bondi Memo purports to "clarif[y] the application of federal antidiscrimination laws" and indicates that the guidance is applicable to all "[e]ntities that receive federal financial assistance . . . including . . . state and local governments." Ex Ex. 4 (July Bondi Memo) at p. 1.

---

[3] Ending Radical and Wasteful Government DEI Programs and Preferencing, Executive Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025); Ending Illegal Discrimination and Restoring Merit-Based Opportunity, Executive Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025).

[4] Improving Oversight of Federal Grantmaking, Executive Order No. 14,332, 90 Fed. Reg. 38929 (Aug. 7, 2025).

62.     But, in fact, the July Bondi Memo effectively casts any diversity, equity, and inclusion ("DEI") program as discriminatory.  More specifically, the July Bondi Memo asserts that practices and policies designed to support historically marginalized groups—including training and educational programs, scholarships, and hiring and application policies—are, under the Trump administration, unlawful and discriminatory.  *See* Ex. 4 at pp. 4-8 (classifying as unlawful training programs that purportedly "stereotype individuals" by discussing concepts such as racial privilege and "toxic masculinity;" hiring practices that "prioritize[s] candidates from 'underrepresented groups' for admission, hiring, or promotion, bypassing qualified candidates who do not belong to those groups," requirements that candidates demonstrate "cultural competence" or "cross-cultural skills," and policies that "set[] racial benchmarks or mandate[] demographic representation in candidate pools, such as requiring a certain percentage of finalists to be from 'diverse' backgrounds.").

63.     In many respects, the July Bondi Memo contradicts judicial interpretation of antidiscrimination laws.  For example, the Memo goes so far as to assert that even the use of "[f]acially neutral criteria (e.g., 'cultural competence,' 'lived experience,' geographic targeting) that function as proxies for protected characteristics violate federal law if designed or applied with the intention of advantaging or disadvantaging individuals based on protected characteristics."  Ex. 4 at p. 2.  That assertion is inconsistent with Supreme Court precedent that has "consistently declined to find constitutionally suspect" the adoption of race-neutral criteria—even where the decision-maker was "well aware" the race-neutral criteria "correlated with race."  *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 885–86 (4th Cir. 2023) (cleaned up) (citing *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015)).  The July Bondi Memo also asserts that funding recipients "should affirm sex-based boundaries rooted in biological differences," Ex. 4 at p. 6, contrary to Supreme Court precedent applying Title VII sex-based protections to transgender people. *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 662, 670 (2020).

64.     The July Bondi Memo's proscriptions are not only inconsistent with settled statutory and decisional civil rights and antidiscrimination law; they also flatly contradict the explicit and unambiguous text of the COPS Statute.  In enacting the COPS Statute, Congress specified that applicants for COPS Grants must "provide assurances that the applicant will, to the extent practicable,

seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks within the sworn positions in the law enforcement agency." *See* 34 U.S.C. § 10382(c)(11). Indeed, Condition 8 of Plaintiffs' COPS Grant Awards (one of the Civil Rights Conditions) specifically requires Plaintiffs and other grantees to comply with the COPS Statute, including the requirement under 34 U.S.C. § 10382 to "seek, recruit, and hire qualified members of racial and ethnic minority groups" in order to increase their representation in the ranks of sworn officers. Ex. 1 at p. 6; Ex. 2 at p. 6; Ex. 3 at p. 7.

65.     Defendants have usurped both the legislative and judicial functions by weaponizing the Discrimination Condition and the Civil Rights Conditions to attempt to impose the Executive's unsupported view of what these laws mean.

66.     Plaintiffs now face the risk that, in certifying compliance with these conditions, they are certifying compliance with these laws not as written by Congress and interpreted by the courts, but as reconceptualized by the Executive Branch.

67.     As a practical matter, the Discrimination Condition also makes it impossible for Plaintiffs to comply, on the one hand, with the guidance of the July Bondi Memo and, on the other hand, with the actual mandates of settled federal civil rights and antidiscrimination law and the text of the COPS Statute (which expressly contemplates hiring that takes into account race and sex). The Discrimination Condition and the Civil Rights Conditions—when read in the context of the July Bondi Memo—raise the very real possibility that Plaintiffs will face crushing civil and criminal penalties if they use their awarded COPS Grants funds in the manner in which Congress intended. And, as discussed further below, Defendants have only ratcheted up the stakes of this conundrum by attempting to require Plaintiffs to concede materiality for purposes of the False Claims Act in order to accept the grant.

**B. The EO Condition**

68.     The EO Condition likewise imposes practical and legal impossibilities on Plaintiffs.

69.     As a general matter, EOs express general policy and/or are addressed to the Executive Branch of the federal government. EOs do not by their terms apply to, or impose any requirements on,

1  federal grant recipients.  Nor do EOs have the power to attach conditions on the receipt of federal

2  funds appropriated by Congress or to reinterpret law contrary to the judiciary.

3      70.    The EO Condition (numbered Condition 4) of the Grant Awards requires Plaintiffs to

4  "comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the

5  President." Ex. 1 at p. 6; Ex. 2 at p. 6; Ex. 3 at p. 6.

6      71.    The requirement that Plaintiffs "comply with all applicable federal laws" on its face

7  includes federal civil rights and antidiscrimination law as well as the COPS Statute.  As alleged above,

8  it is impossible for Plaintiffs to so comply while at the same time hewing to the guidance of the July

9  Bondi Memo, which purports to reinterpret civil rights and antidiscrimination law.

10      72.    Further, the EO Condition lacks any limiting principle.  Its language could be read to

11  require Plaintiffs to comply *not only* with existing EOs having nothing whatsoever to do with the

12  COPS Grants *but also* with EOs yet to be issued, EOs that have been enjoined as unlawful or

13  unconstitutional, or EOs that run contrary to the COPS Statute.

14      73.    What's more, the EO Condition requires compliance with the directives of "Presidential

15  Memoranda," a term that is entirely undefined in the context of the Award Packages.[5]  In other words,

16  there is no way for Plaintiffs to know whether the Trump Administration considers any particular

17  document to be a Presidential Memoranda with provisions to which Plaintiffs must adhere.

18      74.    In the first ten months of his current term, President Trump has issued more than 200

19  EOs and dozens of directives labeled as "Presidential Memoranda."  As discussed above, several of

20  these EOs have targeted so-called "diversity, equity, and inclusion" programs and advanced the

21  Administration's unsupported and unlawful interpretation of anti-discrimination law.  As such,

22  Plaintiffs face considerable uncertainty about the meaning of the Discrimination Condition and Civil

23  Rights Conditions in the Grant Awards.  But the President's EOs and directives also cover a vast

24  swath of the President's other ideological and policy preferences, including on the economy,

25  education, energy, national security, medical policy, and federal government operations.  There is no

26

27      [5] The White House's official website has subpages for Presidential Actions, including "Executive Orders" and "Presidential Memoranda," *see* https://www.whitehouse.gov/presidential-actions, but the

28  Award Package does not refer to or incorporate this resource by reference.

way to predict whether the President will issue additional EOs or directives that the Administration

will contend are "Presidential Memoranda," much less how frequently or when he will issue such EOs

and Memoranda, or the subject matters or scope of new EOs and Memoranda.  And Plaintiffs have no

way of knowing which of the myriad current or future EOs Orders and Memoranda will be deemed

"applicable" to an awarded grant.

75.    Plaintiffs cannot voluntarily and knowingly agree to terms they cannot ascertain, terms

that do not yet exist, or terms that have been enjoined as unlawful or may prove to be unlawful or

unconstitutional.  Nor can the DOJ compel them to do so.  Moreover, neither the DOJ nor the COPS

Office has provided a reasoned explanation or basis why the EO Condition should control how COPS

Grants are distributed and used by local law enforcement.  Indeed, the EO Condition effectively allows

Defendants to legislate by Executive fiat through the incorporation of EOs and Memoranda that have

no basis in, or connection to, the COPS Statute or COPS Grants.

**C.  The Federal Funding Restriction**

76.    Finally, the NOFOs for each of the three types of COPS Grant at issue in this case

include a section entitled "Federal Funding Restrictions" that purports to prohibit the use of COPS

Office funding for various purposes that the Administration does not support, including (1) directly or

indirectly supporting educational institutions "[requiring] students to have received a COVID-19

vaccination to attend any in-person education program," (2) promoting "gender ideology," (3)

supporting "projects that provide or advance diversity, equity, inclusion, and accessibility or

environmental justice programs, services, or activities," and (4) state and local governments and law

enforcement agencies "that have failed to protect public monuments, memorials, and statues."  *See*

COPS Hiring Grant NOFO at p. 15; COPS Microgrant NOFO at p. 22; LEMHWA Grant NOFO at p.

15.

77.    Defendants have provided no authority for the source of these purported funding

restrictions, nor do they have any basis in the COPS Statute or any connection to providing support for

community policing.  With respect to the restriction on using funds for projects that advance

"diversity, equity, inclusion, and accessibility," to the extent this policy preference is discernible, it is

directly contrary to the intent of the COPS Statute, which requires applicants for grants to assure they

will "seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks within the sworn positions in the law enforcement agency."  34 U.S.C. § 10382(c)(11).  To the extent that the policy preference for opposing accessibility in particular is discernable, it is also contrary to LEMHWA's intent "to protect the mental health and well-being of law enforcement officers."

78.  The condition prohibiting the use of grant funds "to promote gender ideology" does not define what the term "gender ideology" means.  Nor, for that matter, does this condition make clear what it means to "promote" gender ideology.  But, to the extent that "gender ideology" has the meaning ascribed by the President,[6] this restriction could be read to bar law enforcement agencies' use of LEMHWA grants to address the needs of any officer experiencing gender dysphoria—despite the fact that Congress enacted no such restriction in authorizing LEMHWA grants to address law enforcement officers' mental health and wellness.

79.  Similarly, it is entirely unclear what it would mean to "directly or indirectly" support an educational institution that requires COVID-19 vaccines, or how that bears on any of the Congressional purposes enumerated in the COPS Statute.  For example, if funds under the Recruitment Microgrant were used to fund a job fair at a school or university with a COVID-19 vaccine requirement, a law enforcement agency would run the risk that such use would be deemed to violate the Federal Funding Restriction—even though the purpose of the grant is to enhance the department's recruiting efforts.  The final condition in the Federal Funding Restriction—related to failure to protect public monuments—is similarly ambiguous and untethered to the purpose of the COPS Statute.

80.  The Federal Funding Restriction therefore represents yet another attempt to improperly impose Executive policy preferences that Congress has not sanctioned.

---

[6] *See* Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government ,Exec. Order No. 14,168 §3(g),  90 Fed. Reg. 8,615 (Jan. 20, 2025)

**IV.     Plaintiffs Face a Hobson's Choice Between Acceding to Defendants' Unlawful Conditions and Giving Up Sorely-Needed Public Safety Funding**

81.     The Challenged Conditions put Plaintiffs in an impossible position.  If Plaintiffs accept the sorely-needed grant funding in order to meet critical local law enforcement needs, they put themselves at risk of civil and criminal penalties in the event that Defendants attempt to exploit the ambiguities and contradictions of the Challenged Conditions.  If Plaintiffs reject the Challenged Conditions and thereby give up their COPS Grants, they must either forgo important staffing and officer wellness initiatives or reallocate funding from other critical public safety activities in order to fill the gap.  The dilemma is unconstitutional, and it inflicts substantial budget uncertainty on Plaintiffs.

82.     This Hobson's choice is particularly acute because Defendants have crafted the conditions to expose Plaintiffs to considerable liability if they engage in actions consistent with the COPS Statute and the judiciary's authoritative interpretation of federal civil rights and antidiscrimination law, but which run afoul of Defendants' policy agenda.

83.     Not only do Plaintiffs face a loss of funding if they cannot meet the DOJ's impossible and contradictory conditions, *see* Ex. 1 at p. 8 (Condition 12); Ex. 2 at p. 8; Ex. 3 at pp. 8-9; but Plaintiffs also face the threat of liability under the False Claims Act.  That statute imposes substantial civil liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."  31 U.S.C. § 3729(a).   If a Plaintiff is found liable, it faces potential treble damages, which could result in a judgment far exceeding the amount of federal funds received in the first place. What is more, the same conduct—presentation of a false or fraudulent claim material to the federal government's issuance of payment—may also give rise to criminal liability, including up to five years' imprisonment. 18 U.S.C. § 287.

84.     Defendants have clearly communicated their intent to use the False Claims Act as a cudgel to impose their interpretation of antidiscrimination law under the guise of enforcing the Discrimination Condition and perverting the meaning and effect of the Civil Rights Conditions.  On May 19, 2025, the DOJ announced the creation of a "Civil Rights Fraud Initiative"—co-led by the DOJ's Civil Fraud Section and Civil Rights Division—that will "utilize the False Claims Act to

investigate and, as appropriate, pursue claims against any recipient of federal funds that knowingly violates civil rights laws"—or, more accurately, the Administration's reimagining thereof as reflected in the July Bondi Memo.  The DOJ's announcement asserts that the False Claims Act "is implicated whenever federal-funding recipients or contractors certify compliance with civil rights laws while knowingly engaging in racist preferences, mandates, policies, programs, and activities, including through diversity, equity, and inclusion (DEI) programs that assign benefits or burdens on race, ethnicity, or national origin."  It further states that "[t]he Civil Fraud Section and the Civil Rights Division will also engage with the Criminal Division, as well as with other federal agencies that enforce civil rights requirements for federal funding recipients."[7]

85.     The DOJ reaffirmed this threat to weaponize the False Claims Act on June 11, 2025 when Assistant Attorney General Brett Shumate announced his intent to dedicate "all available resources" of the DOJ Civil Division "to pursue affirmative litigation combatting unlawful discriminatory practices" and to "aggressively investigate and, as appropriate, pursue False Claims Act violations against recipients of federal funds that knowingly violate civil rights laws."[8]

86.     This threat is only underscored by the requirement that Plaintiffs agree to a condition stating that compliance with antidiscrimination law is "material" for purposes of the False Claims Act.  *See* Ex. 1 at pp. 5-6, Ex. 2 at p. 6; Ex. 3 at p. 6.

87.     Plaintiffs therefore face the prospect that, if they use the COPS Grants for the purposes for which Congress intended—including to recruit and hire "members of racial and ethnic minority groups and women" to increase their representation in law enforcement and to protect the mental health and well-being of the workforce—they will face crushing civil and criminal penalties for failing to abide by the DOJ's contrary interpretation of federal civil rights and antidiscrimination law.

88.     Likewise, if Plaintiffs accept the EO Condition, they will effectively be playing a game of chance with critical public safety funding: Plaintiffs will be left to guess which of hundreds of current and future EOs and Memoranda are "applicable"—without even knowing what those future

---

[7] Deputy Att'y Gen'l, Civil Rights Fraud Initiative (May 19, 2025), https://www.justice.gov/dag/media/1400826/dl [archived at https://perma.cc/MFC5-YDGU];

[8] Asst. Att'y Gen'l, Civil Division Enforcement Priorities (June 11, 2025), https://www.justice.gov/civil/media/1404046/dl [archived at https://perma.cc/QL7T-33TH]

EOs and directives may cover—and, if they guess wrong, Defendants can, at any time, impose legal penalties or pull essential funding.

89.     Accepting the Federal Funding Restriction, in turn, would require acceding to curtail the expenditure of funds for purposes that serve the needs of Plaintiffs' law enforcement agencies and are consistent with Congress's intent as reflected in the COPS Statute.

90.     Yet, rejecting these grants to avoid running afoul of the Challenged Conditions is also untenable.

91.     If SFPD does not receive its Hiring Grant, for instance, it would likely have to use more General Fund money than it currently does to cover the salaries and benefits for the fifty officers covered by the grant.  (The Hiring Grant covers approximately 70% of each newly-hired officer's salaries and benefits.)  However, given the City's budget deficit and strained financial position, using limited General Fund dollars in order to fund fifty officers would likely require allocating considerable money away from other important SFPD public safety services.  If SFPD cannot locate or reallocate other sources of funds to meet its staffing needs, SFPD runs the very real risk of remaining understaffed and compromising the services the SFPD is able to provide San Francisco, its residents, and its visitors.  As alleged above, SFPD has covered staffing gaps with overtime.  This practice is burdensome on officers and undermines SFPD's ability to retain career officers due to overwork and burnout.  Being unable to bolster the ranks at SFPD risks losing hard-fought positive momentum in reduced crime, community safety, and community trust—each of which are explicit aims of the COPS Statute.

92.     Likewise, if TPD does not receive its Microgrant Recruitment Award funds, it will face a choice between trying to replace that funding with critically limited general fund dollars or continuing to struggle with hiring and retention of highly qualified candidates. Use of general fund dollars to cover recruiting efforts reduces resources available for other critical public safety programs. But continued understaffing increases reliance on overtime and places additional strain on current officers, risking burnout, diminished morale, and, as a consequence, loss of experienced personnel. Without this boost to its recruiting efforts, TPD's ability to effectively and efficiently utilize its 2024 Hiring Grant funding will also be adversely impacted.

93. If the County of Santa Clara cannot accept its Mental Health Grant award, SCCSO must either reallocate money from its other services or forgo supporting SCCSO's mental and emotional wellness programming. Given Santa Clara's projected loss of $1 billion in funding under H.R. 1 for FY25–26, SCCSO is already deciding how to cut expenditures by tens of millions of dollars. Reallocating money to support what the Mental Health Grant would have funded would likely take funding away from any number of public safety services, including—perversely—its existing wellness initiatives. On the other hand, forgoing support for mental and emotional wellness programming would likely diminish SCCSO staff's quality of life and ability to perform their jobs; leave unchecked the unique risks of working in law enforcement, like elevated rates of depression, post-traumatic stress disorder, substance use, and suicide; and increase staff attrition. Either outcome thwarts LEMHWA's goal "to protect the mental health and well-being of law enforcement officers."

## FIRST CAUSE OF ACTION

### Violation of Separation of Powers

94. Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs.

95. The Constitution vests Congress—not the Executive—with "[a]ll" of the federal government's "legislative Powers." U.S. Const. art. I, § 1; *id.* § 8, cl. 1; *id.* § 9, cl. 7.

96. The Constitution "exclusively grants the power of the purse to Congress, not the President." *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018). "Congress's power to spend is directly linked to its power to legislate. Incident to the spending power, Congress may attach conditions on the receipt of federal funds." *Id.* at 1231-32.

97. The "executive Power" vested in the President does not include the power to attach conditions on the receipt of federal funds. To the contrary, "[t]here is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes." *City & Cnty. of S.F.*, 897 F.3d at 1232 (alteration in original) (quoting *Clinton v. City of New York*, 524 U.S. 417, 438 (1998)).

98. Accordingly, absent an express delegation, only Congress, not the Executive Branch, is entitled to attach conditions to federal funds.

99.     The separation of the legislative, executive, and judicial powers among the three branches is a central and core tenet of our Constitution.  *See, e.g.*, *Trump v. United States*, 603 U.S. 593, 637-38 (2024) (the separation of powers "doctrine is undoubtedly carved into the Constitution's text by its three articles separating powers"); *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 737 (2022) (Gorsuch, J., concurring) ("the Constitution's rule vesting federal legislative power in Congress is 'vital to the integrity and maintenance of the system of government ordained by the Constitution.'" (quoting *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892)).

100.     Consistent with these principles, the Executive Branch acts at the "lowest ebb" of its constitutional power when it "takes measures incompatible with the express or implied will of Congress."  *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring).

101.     In leveraging its spending power under the Constitution, Congress has not conditioned the provision of funding for COPS Grants on compliance with a prohibition on all forms of DEI policies and initiatives or any of the other policies that Defendants seek or may seek in the future to impose on Plaintiffs through any of the Challenged Conditions or through misapplication of the Civil Rights Conditions.  Nor has Congress delegated to Defendants the authority to attach any such conditions unilaterally.

102.     To the contrary, the Challenged Conditions are in fact contrary to Congress's intent as expressed in the COPS Statute and in LEMHWA.  In the COPS Statute, Congress specifically instructed that applicants provide assurances that they will "seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks within the sworn positions in the law enforcement agency." 34 U.S.C. § 10382(c)(11).  And, in LEMHWA, Congress expressed its intent to support that workforce by "protect[ing] the mental health and well-being of law enforcement officers."

103.     By imposing the Challenged Conditions on grant recipients, Defendants are unilaterally attaching new conditions to federal funding without constitutional authorization from Congress and in the absence of statutory authority to do so.

104.    For these reasons, Defendants' conditioning of Plaintiffs' COPS Grants on compliance with the Discrimination Condition, EO Condition, and Federal Funding Restriction, and their misapplication of the Civil Rights Conditions, violates the constitutional separation of powers.

105.    Defendants' violations have caused harm and will continue to cause harm to Plaintiffs for which no remedy other than an injunction is adequate.

## SECOND CAUSE OF ACTION

### Violation of Spending Power

106.    Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs.

107.    Congress's power to attach conditions to federal funding "is of course not unlimited, but is instead subject to several general restrictions." *S. Dakota v. Dole*, 483 U.S. 203, 207 (1987).  The Challenged Conditions violate at least three of the Constitution's restrictions on the spending power.

108.    First, the spending power requires recipients to have fair and advance notice of conditions that apply to federal funds so that recipients can "voluntarily and knowingly" decide whether to accept the funds.  *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 25 (1981). The grant conditions must be set forth "unambiguously," because recipients "cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.'" *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (quoting *Pennhurst*, 451 U.S. at 17).  As a corollary, the spending power prohibits the federal government from "surprising" grantees "with post acceptance or 'retroactive' conditions."  *Pennhurst*, 451 U.S. at 25.

109.    Second, the government may only impose conditions on federal funding that are reasonably related to the federal interest in the project and the project's objectives.  *Dole*, 483 U.S. at 207-208; *Massachusetts v. United States*, 435 U.S. 444, 461 (1978); *accord New York v. United States*, 505 U.S. 144, 167 (1992).

110.    As discussed in the First Cause of Action, Congress has not delegated authority to Defendants or the Executive to condition COPS Grants on recipients' agreement to terms prohibiting DEI statements and policies as conceived by the Administration (illustrated by the July

Bondi Memo); mandating compliance with all current and future EOs and Presidential memoranda; or prohibiting using funds for DEI policies, "gender ideology," institutions requiring COVID-19 vaccines, and other disfavored policies reflected in the Federal Funding Restriction.  But even if Congress had, the Challenged Conditions would nonetheless be unlawful and unenforceable because, in contravention of the spending power, they are ambiguous, not germane to the purposes of the statutes that authorize the COPS Grants, and require recipients to engage in actions that are themselves unconstitutional.  Each of these flaws applies to each of the Challenged Conditions.

a.      **Ambiguity**

111.    The Discrimination Condition and Civil Rights Conditions are ambiguous and unascertainable.  As an initial matter, the Discrimination Condition (Condition 3) does not define key terms, including "diversity, equity, and inclusion."  Moreover, while Plaintiffs have understood well-settled statutory and judicial interpretations of civil rights and antidiscrimination laws—and have certified to compliance based on that understanding in the past—the meaning of these terms has been upended by the July Bondi Memo's vague and contradictory guidance and the DOJ's threat to pursue False Claims Act litigation against any jurisdiction that pursues policies inconsistent with that guidance.  As such, the Discrimination Condition, and the Civil Rights Conditions in conjunction at least with the July Bondi Memo, prevent any reasonable grantee, including Plaintiffs, from understanding their scope and meaning and, therefore, from knowingly accepting the conditions.

112.    The EO Condition likewise is fatally ambiguous because it fails entirely to specify what EOs and Presidential Memoranda are supposedly covered by the condition, purports to require Plaintiffs to agree to EOs and Memoranda not in existence, and provides no guidance on which EOs and Memoranda (both present and future) are deemed "applicable."  As such, the EO Condition prevents any reasonable grantee, including Plaintiffs, from understanding its scope and meaning and, therefore, from knowingly accepting the condition.

113.    The Federal Funding Restriction is ambiguous because it fails to define key terms, including "gender ideology," "diversity, equity, inclusion, and accessibility," and "environmental justice" and fails to explain what it means to "directly or indirectly support or subsidize" an educational institution requiring the COVID-19 vaccine, to "promote" gender ideology, or to "fail to

protect" public monuments, memorials, and statues." As such, the Federal Funding Restriction prevents any reasonable grantee, including Plaintiffs, from understanding its scope and meaning and, therefore, from knowingly accepting the condition.

### b.    Germaneness

114.    The Challenged Conditions are not germane to the purposes of the COPS Grants, the COPS Statute (which authorizes the Grants), or the federal interest in the projects funded by the COPS Grants, which pertain to public safety and community policing.

115.    The Discrimination Condition is not germane to the purpose of the COPS Statute and, in fact, contradicts the express requirement of the COPS Statute that applicants "seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks within the sworn positions in the law enforcement agency." 34 U.S.C. § 10382(c)(11). When viewed through the lens of the Trump administration's novel and unsupported interpretation of federal civil rights and antidiscrimination law as memorialized in the July Bondi Memo and elsewhere, the Civil Rights Conditions are likewise not germane to the purpose of the COPS Statute and, in fact, contradict the same express requirements of the COPS Statute

116.    The EO Condition on its face purports to apply without limit to hundreds of EOs and dozens of Memoranda—and untold numbers of EOs and Memoranda that have yet to be enacted—despite the fact that these directives have no nexus to the COPS Statute, and are in many instances contrary to the Congressional intent expressed therein.

117.    The Federal Funding Restriction purports to restrict the use of funding in ways that are not germane to the purpose of the COPS Statute, and are in some instances contrary to the Congressional intent expressed therein.

118.    Defendants' violations of the Spending Power have caused harm and will continue to cause harm to Plaintiffs for which no remedy other than an injunction is adequate.

### THIRD CAUSE OF ACTION

### Violation of Due Process Clause of the Fifth Amendment: Unconstitutional Vagueness

119.    Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs.

120.     The Due Process Clause of the Fifth Amendment provides that "[n]o person shall... be deprived of life, liberty, or property, without due process of law . . . ."

121.     Under this Clause, a governmental enactment is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

122.     Each of the Challenged Conditions is unconstitutionally vague.

123.     In light of the guidance of the July Bondi Memo, the Discrimination Condition and the Civil Rights Conditions require people of ordinary intelligence to guess as to what is prohibited.  The July Bondi Memo's interpretation of federal civil rights and antidiscrimination law is contrary to decades of jurisprudence and contradicts the explicit mandates of the COPS Statute to promote the hiring of racial and ethnic minority and women law enforcement officers.  It is literally impossible for Plaintiffs and other grantees to comply with both.

124.     The resulting patchwork of requirements and instructions is a standardless landscape that invites Defendants to enforce the Discrimination Condition and the Civil Rights Conditions in an arbitrary, even malicious, fashion.

125.     By the same token, other conditions of the COPS Grant Awards afford nearly unfettered discretion to Defendants to determine, based on their subjective interpretation (and presumably following the principles outlined in the July Bondi Memo) whether an activity or policy violates civil rights and antidiscrimination law.

126.     The EO Condition is vague in purporting to incorporate "all" Executive Orders and Presidential Memoranda.  As alleged above, EOs are the President's directives to federal agencies and do not apply to federal grant recipients.  The requirements that Plaintiffs and other grantees follow "all" such written directives—regardless of their subject matter, whether they yet exist, or whether they have been rendered unconstitutional or unenforceable by a court—renders the other funding conditions vague.

127.    Further, the EO Condition term "Presidential Memoranda" is undefined in the context of the COPS Grant Awards.  It is therefore impossible for Plaintiffs or other grantees to know what additional written directives in theory control their acceptance of the COPS Grant Awards.

128.    The EO Conditions leaves Plaintiffs and other grantees without fair notice of what activities or policies would violate this Challenged Condition or other conditions of the COPS Grant Awards.

129.    The Federal Funding Restriction fails to define key terms like "gender ideology," "diversity, equity, inclusion, and accessibility," and "environmental justice" and fails to explain what it means to "directly or indirectly support or subsidize" an educational institution requiring the COVID-19 vaccine, to "promote" gender ideology, or to "fail to protect" public monuments, memorials, and statues."  It therefore fails to provide a person of ordinary intelligence fair notice of what uses of funding are prohibited.

130.    Defendants' violations of the Due Process Clause of the Fifth Amendment have caused harm and will continue to cause harm to Plaintiffs for which no remedy other than an injunction is adequate.

## FOURTH CAUSE OF ACTION

### Violation of the Administrative Procedure Act: Arbitrary and Capricious

131.    Plaintiffs repeat and incorporate by reference each of the allegations of the prior paragraphs as if fully set forth herein.

132.    Defendant DOJ is an "agency" as defined in the APA, 5 U.S.C. § 551(1).

133.    Final agency actions (1) "mark the 'consummation' of the agency's decision-making process" and (2) are ones "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 178 (1997).

134.    Defendants' incorporation of the Challenged Conditions as requirements for acceptance of COPS Grant Awards is a final agency action.

135.    Under the APA, a "court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

136.    "An agency action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'" *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024) (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)).  A court must therefore "ensure, among other things, that the agency has offered 'a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made.'" *Id*. (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co*., 463 U.S. 29, 43 (1983)).  "[A]n agency cannot simply ignore 'an important aspect of the problem'" addressed by its action.  *Id*. at 293.

137.    Defendants have provided no reasoned explanation or basis for their decision to incorporate the Challenged Conditions in COPS Grant Awards, which have no reasonable connection or nexus to those issues.

138.    Defendants have ignored essential aspects of the "problem" they purport to address by incorporating the Challenged Conditions in COPS Grant awards, including by failing to (a) assess which of these conditions are lawful and consistent with the authorizing statute and the Constitution; (b) consider Plaintiffs' reasonable and inevitable reliance on now at-risk funds, and (c) consider the potential impacts on public safety and officer wellness of withholding the funding appropriated by Congress.

139.    Defendants' violations have caused harm and will continue to cause harm to Plaintiffs for which no remedy other than an injunction is adequate.

140.    Plaintiffs therefore ask the Court to declare under 5 U.S.C. § 706 and 28 U.S.C. § 2201 that the inclusion of the Challenged Conditions in COPS Grant awards violates the APA because it is arbitrary and capricious; to provide preliminary relief under 5 U.S.C. § 705; and to temporarily restrain, and preliminarily and permanently enjoin Defendants from including the Challenged Conditions in COPS Grant awards to Plaintiffs without complying with the APA.

### FIFTH CAUSE OF ACTION

### Violation of the Administrative Procedure Act: Contrary to Constitution

141.    Plaintiffs reallege and incorporate by reference the allegations of the preceding paragraphs.

142.    Under the APA, a "court shall . . . hold unlawful and set aside agency actions, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).

143.    As described above, the Challenged Conditions violate bedrock constitutional provisions and principles, including the spending power, the separation of constitutional powers between and among the President, Congress, and judiciary, and the Due Process Clause of the Fifth Amendment.

144.    Plaintiffs therefore ask the Court to declare under 5 U.S.C. § 706 and 28 U.S.C. § 2201 that the inclusion of the Challenged Conditions in COPS Grant awards violates the APA because it contrary to constitutional rights, powers, privileges, or immunities; to provide preliminary relief under 5 U.S.C. § 705; and to temporarily restrain, and preliminarily and permanently enjoin Defendants from including the Challenged Conditions in COPS Grant Awards without complying with the APA.

145.    Defendants' violations have caused harm and will continue to cause harm to Plaintiffs for which no remedy other than an injunction is adequate.

## SIXTH CAUSE OF ACTION

### Violation of the Administrative Procedure Act: Excess of Statutory Authority

146.    Plaintiffs repeat and incorporate by reference each of the allegations of the prior paragraphs as if fully set forth herein.

147.    Under the APA, a "court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law … [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C).

148.    Defendants may exercise only authority granted to them by statute or the Constitution.

149.    No law or provision of the Constitution authorizes Defendants to impose extra-statutory conditions not authorized by Congress on congressionally appropriated funds.  The Challenged Conditions are not authorized by any statute under which the COPS Grant exists, nor under any other statute, and are in fact contrary to the requirements of the COPS Statute.

150.    Defendants' violations have caused harm and will cause harm to Plaintiffs for which no remedy other than an injunction is adequate.

151.    Plaintiffs therefore ask the Court to declare under 5 U.S.C. § 706 and 28 U.S.C. § 2201 that the inclusion of the Challenged Conditions in COPS Grant awards violates the APA because it is in excess of Defendants' statutory jurisdiction, authority, or limitations, or short of statutory right; to provide preliminary relief under 5 U.S.C. § 705; and to temporarily restrain, and preliminarily and permanently enjoin, Defendants from including the Challenged Conditions in COPS Grants awards without complying with the APA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the Court grant the following relief:

1.    A declaration that the Challenged Conditions are unconstitutional, are not authorized by statute, violate the APA, and are otherwise unlawful;

2.    A declaration that Defendants' attachment and incorporation of the Challenged Conditions and materially similar requirements in any documents incorporated by reference into the Grant Award Conditions for COPS Grants is unconstitutional, is not authorized by statute, violates the APA, and is otherwise unlawful;

3.    An order temporarily restraining and preliminarily and permanently enjoining Defendants from attaching, incorporating, imposing, or enforcing the Challenged Conditions, or any materially similar terms or conditions, with respect to any applications submitted by Plaintiffs for COPS Grants or any COPS Grants funds awarded to or received by Plaintiffs, whether directly or indirectly, including but not limited to the SFPD Hiring Grant Award, the TPD Recruitment Microgrant Award, and the SCCSO Mental Health Grant Award;

4.    An order temporarily restraining and preliminarily and permanently enjoining Defendants from attaching, incorporating, imposing, or enforcing the requirement that Plaintiffs comply with the Civil Rights Conditions, federal civil rights law, antidiscrimination law, or the COPS Statute as requiring anything other than compliance with such laws as enacted by Congress and interpreted by the judiciary;

1        5.     An order pursuant to 5 U.S.C. § 705 that: (i) postpones the effective date of any action by any Defendants to adopt, issue, enforce, or implement the Challenged Conditions or any materially similar terms or conditions pending conclusion of this litigation; (ii) declares the Challenged Conditions void and unenforceable with respect to any application, award, agreement, or subagreement, or other document executed by Plaintiffs that is related to COPS Grants; and (iii) declares that Plaintiffs need only comply with the Civil Rights Conditions, federal civil rights law, antidiscrimination law, and the COPS Statute as enacted by Congress and interpreted by the judiciary;

6.     An order under 5 U.S.C. § 706 holding unlawful, setting aside, and vacating all actions taken by Defendants to: (i) adopt, issue, enforce, or implement the Challenged Conditions or any materially similar terms or conditions; (ii) require, attach, incorporate, implement, or enforce the Challenged Conditions in any application, award, agreement or subagreement, or other document executed by Plaintiffs related to COPS Grants; or (iii) construe the requirements that Plaintiffs comply with the Civil Rights Conditions, federal civil rights law, antidiscrimination law, and the COPS Statute in any mannyer other than how such laws have been enacted by Congress and interpreted by the judiciary;

7.     Orders preliminarily and permanently enjoining Defendants from retaliating against any Plaintiff for participating in this lawsuit or taking any adverse action based on any Plaintiff's participation in this lawsuit, including but not limited to reducing the amount of a grant award to that Plaintiff or to any state agency through which Plaintiff may receive grant funding; refusing to issue, process, sign, or approve grant applications, grant agreements, or subgrant agreements; and refusing to issue, process, sign, or approve any invoice or request for payment, or reducing the amount of such approval or payment;

8.     An award to Plaintiffs of their reasonable attorneys' fees, costs, and other expenses; and

9.     Any other and further relief that this Court deems just and proper.

1    Dated:  October 28, 2025                    Respectfully submitted,

2                                                DAVID CHIU
3                                                City Attorney
                                                 YVONNE R. MERÉ
4                                                Chief Deputy City Attorney
                                                 MOLLIE M. LEE
5                                                Chief of Strategic Advocacy
                                                 SARA J. EISENBERG
6                                                Chief of Complex and Affirmative Litigation
                                                 KARUN A. TILAK
7                                                JESSE E. LANIER
                                                 Deputy City Attorneys
8

9                                        By:  /s/ David Chiu
                                                 DAVID CHIU
10                                               Deputy City Attorney

11                                               Attorneys for Plaintiffs
                                                 CITY AND COUNTY OF SAN FRANCISCO
12

13                                               TONY LOPRESTI, SBN 289269
                                                 County Counsel
14

15                                       By:  /s/Tony LoPresti
                                                 TONY LOPRESTI
16                                               County Counsel

17                                               KAVITA NARAYAN, SBN 264191
                                                 Chief Assistant County Counsel
18                                               MEREDITH A. JOHNSON, SBN 291018
                                                 Lead Deputy County Counsel
19                                               BILL NGUYEN, SBN 333671
                                                 Deputy County Counsel
20                                               70 W. Hedding Street, East Wing, 9th Floor
                                                 San José, CA 95110
21                                               Telephone:     (408) 299-5900
                                                 Facsimile:     (408) 292-7240
22                                               E-Mail:        tony.lopresti@cco.sccgov.org

23                                               Attorneys for Plaintiff
24                                               COUNTY OF SANTA CLARA

25

26

27

28

1

2          ROI I. LUSK
           City Attorney

3          By: */s/ Roi I. Lusk*_____

4                ROI I. LUSK
                 County Counsel

5
           REGINA L. NASSEN Ariz. Bar No. 014574 *

6          Principal Assistant City Attorneys, Tucson City
           Attorney's Office

7          255 W. Alameda, 7th Floor
           P.O. Box 27210

8          Tucson, Arizona 85726-7210
           Telephone: (520)837-4207

9          Facsimile: (520)623-9803
           E-Mail: regina.nassen@tucsonaz.gov

10
           ERIN B. BERNSTEIN, SBN 231539

11         PRIANKA MUNGALE, SBN 348165
           Bradley Bernstein Sands, LLP

12         1212 Broadway, Suite 1100
           Oakland, California 94612

13         Telephone: (510)380-5801
           E-Mail: ebernstein@bradleybernstein.com

14
           Attorneys for Plaintiff

15         CITY OF TUCSON

16
           *Application for admission pro hac vice*

17         *forthcoming*

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FILER'S ATTESTATION**

I, DAVID CHIU, am the ECF user whose identification and password are being used to file this COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, I hereby attest that the other above-named signatories concur in this filing.

# Exhibit 1



# Department of Justice (DOJ)

### Office of Community Oriented Policing Services (COPS Office)

*Washington, D.C. 20531*

| | |
|---|---|
| **Name and Address of Recipient:** | CITY & COUNTY OF SAN FRANCISCO<br>1245 3RD ST<br>FL 6 |
| **City, State and Zip:** | SAN FRANCISCO, CA 94158 |
| **Recipient UEI:** | SRZKDWN293M2 |

| | |
|---|---|
| **Project Title:** FY25 COPS Hiring Program | **Award Number:** 15JCOPS-25-GG-00974-UHPX |
| **Solicitation Title:** FY25 COPS Hiring Program | |
| **Federal Award Amount:** $6,250,000.00 | **Federal Award Date:** 10/10/25 |
| **Awarding Agency:** | Office of Community Oriented Policing Services |
| **Award Type:** | Initial |
| **Funding Instrument Type:** | Grant |
| **Opportunity Category:** D<br>**Assistance Listing:**<br>16.068 - COPS Hiring Program | |
| **Project Period Start Date:** 10/1/25 | **Project Period End Date:** 9/30/30 |
| **Budget Period Start Date:** 10/1/25 | **Budget Period End Date:** 9/30/30 |

**Project Description:**
The FY25 COPS Hiring Program (CHP) provides funding to law enforcement agencies to hire and/or rehire additional career law enforcement officers in an effort to increase their community policing capacity and crime prevention efforts. Anticipated outcomes of CHP awards include engagement in planned community partnerships, implementation of projects to analyze and assess problems, implementation of changes to personnel and agency management in support of community policing, and increased capacity of agency to engage in community policing activities

## Award Letter

October 10, 2025

Dear Paul Yep,

On behalf of Attorney General Pamela Bondi, it is my pleasure to inform you the Office of Community Oriented Policing Services (the COPS Office) has approved the application submitted by  CITY & COUNTY OF SAN FRANCISCO  for an award under the funding opportunity entitled 2025 FY25 COPS Hiring Program. The approved award amount is $6,250,000.
Review the Award Instrument below carefully and familiarize yourself with all conditions and requirements before accepting your award. The Award Instrument includes the Award Offer (Award Information, Project Information, Financial Information, and Award Conditions) and Award Acceptance. For COPS Office and OVW funding the Award Offer also includes any Other Award Documents.

Please note that award requirements include not only the conditions and limitations set forth in the Award Offer, but also compliance with assurances and certifications that relate to conduct during the period of performance for the award. These requirements encompass financial, administrative, and programmatic matters, as well as other important matters (e.g., specific restrictions on use of funds). Therefore, all key staff should receive the award conditions, the

assurances and certifications, and the application as approved by the COPS Office, so that they understand the award requirements. Information on all pertinent award requirements also must be provided to any subrecipient of the award.

Should you accept the award and then fail to comply with an award requirement, DOJ will pursue appropriate remedies for non-compliance, which may include termination of the award and/or a requirement to repay award funds.

Prior to accepting the award, your Entity Administrator must assign a Financial Manager, Grant Award Administrator, and Authorized Representative(s) in the Justice Grants System (JustGrants). The Entity Administrator will need to ensure the assigned Authorized Representative(s) is current and has the legal authority to accept awards and bind the entity to the award terms and conditions. To accept the award, the Authorized Representative(s) must accept all parts of the Award Offer in the Justice Grants System (JustGrants), including by executing the required declaration and certification, within 45 days from the award date.

To access your funds, you will need to enroll in the Automated Standard Application for Payments (ASAP) system, if you haven't already completed the enrollment process in ASAP. The Entity Administrator should have already received an email from ASAP to initiate this process.

Congratulations, and we look forward to working with you.

Cory D. Randolph
COPS Acting Director

**Office for Civil Rights Notice for All Recipients**

The Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) enforces federal civil rights laws and other provisions that prohibit discrimination by recipients of federal financial assistance from OJP, the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW).

Several civil rights laws, including Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act of 1973, require recipients of federal financial assistance (recipients) to give assurances that they will comply with those laws.  Taken together, these and other civil rights laws prohibit recipients from discriminating in the provision of services and employment because of race, color, national origin, religion, disability, and sex or from discriminating in the provision of services on the bases of age.

Some recipients of DOJ financial assistance have additional obligations to comply with other applicable nondiscrimination provisions like the Omnibus Crime Control and Safe Streets Act of 1968, which prohibits discrimination on the basis of religion in addition to race, color, national origin, and sex.  Recipients may also have related requirements regarding the development and implementation of equal employment opportunity programs.

OCR provides technical assistance, training, and other resources to help recipients comply with civil rights obligations. Further, OCR administratively enforces civil rights laws and nondiscrimination provisions by investigating DOJ recipients that are the subject of discrimination complaints.  In addition, OCR conducts compliance reviews of DOJ recipients based on regulatory criteria.  These investigations and compliance reviews permit OCR to evaluate whether DOJ recipients are providing services to the public and engaging in employment practices in a nondiscriminatory manner.

For more information about OCR, your civil rights and nondiscrimination responsibilities, how to notify your employees or beneficiaries of their civil rights protections and responsibilities and how to file a complaint, as well as technical assistance, training, and other resources, please visit www.ojp.gov/program/civil-rights-office/outreach.  If you would like OCR to assist you in fulfilling your civil rights or nondiscrimination responsibilities, please contact us at askOCR@ojp.usdoj.gov or www.ojp.gov/program/civil-rights-office/about#ocr-contacts.

**Award Information**

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

**Recipient Information**

**Recipient Name**

**UEI**
SRZKDWN293M2                          **ORI Number**

**Street 1**                                    **Street 2**
1245 3RD ST                                FL 6

**City**                                        **State/U.S. Territory**
SAN FRANCISCO                         California

**Zip/Postal Code**                       **Country**
94158                                       United States

**County/Parish**                         **Province**


**Award Details**

**Federal Award Date**                  **Award Type**
10/10/25                                    Initial

**Award Number**                         **Supplement Number**
15JCOPS-25-GG-00974-UHPX          00

**Federal Award Amount**               **Funding Instrument Type**
$6,250,000.00                             Grant

| Assistance Listing Number | Assistance Listings Program Title |
|---|---|
| 16.068 | COPS Hiring Program |

| Statutory Authority |
|---|
| The Public Safety Partnership and Community Policing Act of 1994, 34 U.S.C. § 10381 et seq |

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*


**Project Information**

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

**Solicitation Title**                     **Awarding Agency**
2025 FY25 COPS Hiring Program      COPS

**Application Number**

GRANT14447390

| Grant Manager Name | Phone Number | E-mail Address |
|---|---|---|
| Tammy Richardson | 202-598-6908 | tammy.richardson2@usdoj.gov |

**Project Title**
FY25 COPS Hiring Program

**Performance Period Start Date**
10/01/2025

**Performance Period End Date**
09/30/2030

**Budget Period Start Date**
10/01/2025

**Budget Period End Date**
09/30/2030

**Project Description**
The FY25 COPS Hiring Program (CHP) provides funding to law enforcement agencies to hire and/or rehire additional career law enforcement officers in an effort to increase their community policing capacity and crime prevention efforts. Anticipated outcomes of CHP awards include engagement in planned community partnerships, implementation of projects to analyze and assess problems, implementation of changes to personnel and agency management in support of community policing, and increased capacity of agency to engage in community policing activities

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

## Financial Information

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

A financial analysis of budgeted costs has been completed. All costs listed in the approved budget below were programmatically approved based on the final proposed detailed budget and budget narratives submitted by your agency to the COPS Office. Any adjustments or edits to the proposed budget are explained below.

Budget Clearance Date:              9/15/25 5:42 PM

| Comments |
|---|
| No items |

## Budget Summary

| Budget Category | Proposed Budget | Change | Approved Budget | Percentage |
|---|---|---|---|---|
| Sworn Officer Positions: | $24,314,077 | $23 | $24,314,100 | |
| Civilian or Non-Sworn Personnel: | $0 | $0 | $0 | |
| Travel: | $0 | $0 | $0 | |
| Equipment: | $0 | $0 | $0 | |

| | | | |
|---|---|---|---|
| Supplies: | $0 | $0 | $0 |
| SubAwards: | $0 | $0 | $0 |
| Procurement Contracts: | $0 | $0 | $0 |
| Other Costs: | $0 | $0 | $0 |
| Total Direct Costs: | $24,314,077 | $23 | $24,314,100 |
| Indirect Costs: | $0 | $0 | $0 |
| Total Project Costs: | $24,314,077 | $23 | $24,314,100 |
| Federal Funds: | $6,250,000 | $0 | $6,250,000 | 25.71% |
| Match Amount: | $18,064,100 | $0 | $18,064,100 | 74.29% |
| Program Income: | $0 | $0 | $0 | 0.00% |

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

## Award Conditions

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

**Condition 1**
Restrictions on Internal Confidentiality Agreements: No recipient or subrecipient under this award, or entity that receives a contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts the lawful reporting of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information. Full-Year Continuing Appropriations and Extensions Act, 2025, Public Law 119-4; Further Consolidated Appropriations Act, 2024, Public Law 118-47, Division B, Title VII, Section 742.

**Condition 2**
Compliance with 8 U.S.C. § 1373: Authority to obligate or expend contingent on compliance with this condition. State or local government entity recipients of this award, and any subrecipient of this award at any tier that is an entity of a State or of a unit of local government, must comply with 8 U.S.C. §1373, which provides that such entities may not prohibit, or in any way restrict, any government entity or official from sending to, receiving from, maintaining, or exchanging information regarding citizenship or immigration status, lawful or unlawful, of any individual with components of the U.S. Department of Homeland Security or any other federal, state or local government entity. This includes any prohibitions or restrictions imposed or established by a State or local government entity or official.

Any obligations or expenditures of a recipient or subrecipient that are impermissible under this condition shall be unallowable costs for purposes of this award.

References to the Immigration and Naturalization Service in 8 U.S.C. 1373 are to be read, as a legal matter, as references to components of the U.S. Department of Homeland Security.

**Condition 3**
Federal Civil Rights and Nondiscrimination Laws (certification): The recipient agrees that its compliance with all applicable Federal civil rights and nondiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for purposes of the False Claims Act (31 U.S.C. 3729-3730 and 3801-3812),

and, by accepting this award, certifies that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws.

**Condition 4**
Federal Laws, Presidential Memoranda, and Executive Orders: Recipients of grant funding must comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President.

**Condition 5**
Award Monitoring Activities: Federal law requires that recipients receiving federal funding from the COPS Office must be monitored to ensure compliance with their award conditions and other applicable statutes and regulations. The COPS Office is also interested in tracking the progress of our programs and the advancement of community policing. Both aspects of award implementation—compliance and programmatic benefits—are part of the monitoring process coordinated by the U.S. Department of Justice. Award monitoring activities conducted by the COPS Office include site visits, enhanced office-based grant reviews, alleged noncompliance reviews, financial and programmatic reporting, and audit resolution. As a COPS Office award recipient, you agree to cooperate with and respond to any requests for information pertaining to your award. This includes all financial records, such as general accounting ledgers and all supporting documents. All information pertinent to the implementation of the award is subject to agency review throughout the life of the award, during the close-out process and for three-years after the submission of the final expenditure report. 2 C.F.R. §§ 200.334 and 200.337, and, as applicable, 34 U.S.C. § 10385(a).

**Condition 6**
Authorized Representative Responsibility: The recipient understands that, in accepting this award, the Authorized Representatives declare and certify, among other things, that they possess the requisite legal authority to accept the award on behalf of the recipient entity and, in so doing, accept (or adopt) all material requirements throughout the period of performance under this award. The recipient further understands, and agrees, that it will not assign anyone to the role of Authorized Representative during the period of performance under the award without first ensuring that the individual has the requisite legal authority.

**Condition 7**
Contract Provision: All contracts made by the award recipients under the federal award must contain the provisions required under 2 C.F.R. Part 200, Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards. Please see appendices in the Award Owner's Manual for a full text of the contract provisions.

**Condition 8**
Award Owner's Manual: The recipient agrees to comply with the terms and conditions in the applicable award year COPS Office Program Award Owner's Manual; DOJ Grants Financial Guide; COPS Office statute (34 U.S.C. § 10381, et seq.) as applicable; Students, Teachers, and Officers Preventing (STOP) School Violence Act of 2018 (34 U.S.C. § 10551, et seq.) as applicable; the requirements of 2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards), including subsequent changes, as adopted by the U.S. Department of Justice in 2 C.F.R. § 2800.101; 48 C.F.R. Part 31 (FAR Part 31) as applicable (Contract Cost Principles and Procedures); the Cooperative Agreement as applicable; representations made in the application; and all other applicable program requirements, laws, orders, regulations, or circulars.

Failure to comply with one or more award requirements may result in remedial action including, but not limited to, withholding award funds, disallowing costs, suspending, or terminating the award, or other legal action as appropriate.

Should any provision of a condition of this award be held to be invalid or unenforceable by its terms, then that provision shall first be applied with a limited construction so as to give it the maximum effect permitted by law (to any person or circumstance) under this award. Should it be held, instead, that a condition (or a provision thereof) is of utter invalidity or unenforceability, such condition (or such provision) shall be deemed severable from this award.

**Condition 9**
Federal Civil Rights: The recipient and any subrecipient must comply with applicable federal civil rights and nondiscrimination statutes and regulations including: Section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d),

as implemented in Subparts C and D of 28 C.F.R. Part 42; section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), as implemented in Subpart G of 28 C.F.R. Part 42; section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681), as implemented in Subpart D of 28 C.F.R. Parts 42 and 54; section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102), as implemented in Subpart I of 28 C.F.R. Part 42; and section 809(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. § 10228(c)), as implemented in Subpart D of 28 C.F.R. Part 42. In addition to applicable federal statutes and regulations that pertain to civil rights and nondiscrimination, the recipient and any subrecipient must comply with the requirements in 28 C.F.R. Parts 22 (Confidentiality of Identifiable Research and Statistical Information); 28 C.F.R. Part 23 (Criminal Intelligence Systems Operating Policies); 28 C.F.R. Part 38 (Partnerships with Faith-Based and Other Neighborhood Organizations); and 28 C.F.R. Part 46 (Protection of Human Subjects). For an overview of the civil rights laws and nondiscrimination requirements in connection with your award, please see https://www.ojp.gov/program/civil-rights/overview.

**Condition 10**
Duplicative Funding: The recipient understands and agrees to notify the COPS Office if it receives, from any other source, funding for the same item or service also funded under this award.

**Condition 11**
Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and COPS Office authority to terminate award): The recipient and subrecipient agree to comply with the following requirements of 2 C.F.R. Part 175, Appendix A to Part 175 – Award Term:
I. Trafficking in Persons
(a) Provisions applicable to a recipient that is a private entity. (1) Under this award, the
recipient, its employees, subrecipients under this award, and subrecipient's employees must not engage in:
(i) Severe forms of trafficking in persons;
(ii) The procurement of a commercial sex act during the period of time that this award
or any subaward is in effect;
(iii) The use of forced labor in the performance of this award or any subaward; or
(iv) Acts that directly support or advance trafficking in persons, including the following acts:
(A) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;
(B) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:
(1) Exempted from the requirement to provide or pay for such return transportation by the Federal department or agency providing or entering into the grant or cooperative agreement; or
(2) The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or a witness in a human trafficking enforcement action;
(C) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;
(D) Charging recruited employees a placement or recruitment fee; and
(E) Providing or arranging housing that fails to meet the host country's housing and safety standards.
(2) The Federal agency may unilaterally terminate this award or take any remedial
actions authorized by 22 U.S.C. 7104(c), without penalty, if any private entity under this award:
(i) Is determined to have violated a prohibition in paragraph (a)(1) of this appendix; or
(ii) Has an employee that is determined to have violated a prohibition in paragraph
(a)(1) of this appendix through conduct that is either:
(A) Associated with the performance under this award; or
(B) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR part 180, ''OMB
Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement),'' as implemented by DOJ at 2 C.F.R. Part 2867.
(b) Provision applicable to a recipient other than a private entity. (1) The Federal agency
may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C.
7104b(c), without penalty, if a subrecipient that is a private entity under this award:
(i) Is determined to have violated a prohibition in paragraph (a)(1) of this
appendix; or
(ii) Has an employee that is determined to have violated a prohibition in paragraph
(a)(1) of this appendix through conduct that is either:

(A) Associated with the performance under this award; or
(B) Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by 2 C.F.R. Part 2867.
(c) Provisions applicable to any recipient.
(1) The recipient must inform the Federal agency and the Inspector General of the Federal agency immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (a)(1) of this appendix.
(2) The Federal agency's right to unilaterally terminate this award as described in paragraphs (a)(2) or (b)(1) of this appendix:
(i) Implements the requirements of 22 U.S.C. 78, and
(ii) Is in addition to all other remedies for noncompliance that are available to the Federal agency under this award.
(3) The recipient must include the requirements of paragraph (a)(1) of this award term in any subaward it makes to a private entity.
(4) If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR 175.105(b).
(d) Definitions. For purposes of this award term:
Employee means either:
(1) An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this award; or
(2) Another person engaged in the performance of the project or program under this award and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing
requirements.
Private Entity means any entity, including for-profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 CFR 200.1.
The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. 7102).


**Condition 12**
Termination: Recipient understands and agrees that the COPS Office may terminate funding, in whole or in part, for the following reasons:
(1) When the recipient fails to comply with the terms and conditions of a Federal award.
(2) When the recipient agrees to the termination and termination conditions.
(3) When the recipient provides the COPS Office written notification requesting termination including the reasons, effective date, and the portion of the award to be terminated. The COPS Office may terminate the entire award if the remaining portion will not accomplish the purposes of the award.
(4) Pursuant to any other award terms and conditions, including, when an award no longer effectuates the program goals or agency priorities to the extent such termination is authorized by law.
2. C.F.R. § 200.340.


**Condition 13**
Recipient Integrity and Performance Matters: For awards over $500,000, the recipient agrees to comply with the following requirements of 2 C.F.R. Part 200, Appendix XII to Part 200 – Award Term and Condition for Recipient Integrity and Performance Matters:
I. Reporting of Matters Related to Recipient Integrity and Performance
(a) General Reporting Requirement.
(1) If the total value of your active grants, cooperative agreements, and procurement contracts from all Federal agencies exceeds $10,000,000 for any period of time during the period of performance of this Federal award, then you as the recipient must ensure the information available in the responsibility/qualification records through the System for Award Management (SAM.gov), about civil, criminal, or administrative proceedings described in paragraph (b) of this award term is current and complete. This is a statutory requirement under section 872 of Public Law 110–417, as amended (41 U.S.C. 2313). As required by section 3010 of Public Law 111– 212, all information posted in responsibility/qualification records in SAM.gov on or after April 15, 2011 (except past performance reviews required for Federal procurement contracts) will be publicly available.
(b) Proceedings About Which You Must Report.

(1) You must submit the required information about each proceeding that—
(i) Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;
(ii) Reached its final disposition during the most recent five-year period; and
(iii) Is one of the following—
(A) A criminal proceeding that resulted in a conviction;
(B) A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;
(C) An administrative proceeding that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or
(D) Any other criminal, civil, or administrative proceeding if—
(1) It could have led to an outcome described in paragraph (b)(1)(iii)(A) through (C);
(2) It had a different disposition arrived at by consent or compromise with an acknowledgment of fault on your part; and
(3) The requirement in this award term to disclose information about the proceeding does not conflict with applicable laws and regulations.
(c) Reporting Procedures. Enter the required information in SAM.gov for each proceeding described in paragraph (b) of this award term. You do not need to submit the information a second time under grants and cooperative agreements that you received if you already provided the information in SAM.gov because you were required to do so under Federal procurement contracts that you were awarded.
(d) Reporting Frequency. During any period of time when you are subject to the requirement in paragraph (a) of this award term, you must report proceedings information in SAM.gov for the most recent five-year period, either to report new information about a proceeding that you have not reported previously or affirm that there is no new information to report. If you have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000, you must disclose semiannually any information about the criminal, civil, and administrative proceedings.
(e) Definitions. For purposes of this award term—
Administrative proceeding means a nonjudicial process that is adjudicatory in nature to make a determination of fault or liability (for example, Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with the performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.
Conviction means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere. Total value of currently active grants, cooperative agreements, and procurement contracts includes the value of the Federal share already received plus any anticipated Federal share under those awards (such as continuation funding).


**Condition 14**
Reporting Subawards and Executive Compensation: The recipient agrees to comply with the following requirements of 2 C.F.R. Part 170, Appendix A to Part 170 – Award Term:
I. Reporting Subawards and Executive Compensation
(a) Reporting of first-tier subawards—(1) Applicability. Unless the recipient is exempt as provided in paragraph (d) of this award term, the recipient must report each subaward that equals or exceeds $30,000 in Federal funds for a subaward to an entity or Federal agency. The recipient must also report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000. All reported subawards should reflect the total amount of the
subaward.
(2) Reporting Requirements. (i) The entity or Federal agency must report each subaward described in paragraph (a)(1) of this award term to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at http://www.fsrs.gov.
(ii) For subaward information, report no later than the end of the month following the month in which the subaward was issued. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025.)
(b) Reporting total compensation of recipient executives for entities—(1) Applicability. The recipient must report the total compensation for each of the recipient's five most highly compensated executives for the preceding completed fiscal year if:
(i) The total Federal funding authorized to date under this Federal award equals or exceeds $30,000;
(ii) in the preceding fiscal year, the recipient received:
(A) 80 percent or more of the recipient's annual gross revenues from Federal procurement contracts (and

subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and

(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,

(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

(2) Reporting Requirements. The recipient must report executive total compensation described in paragraph (b)(1) of this appendix:

(i) As part of the recipient's registration profile at https://www.sam.gov.

(ii) No later than the month following the month in which this Federal award is made, and annually after that. (For example, if this Federal award was made on November 7, 2025, the executive total compensation must be reported by no later than December 31, 2025.)

(c) Reporting of total compensation of subrecipient executives—(1) Applicability. Unless a first-tier subrecipient is exempt as provided in paragraph (d) of this appendix, the recipient must report the executive total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if:

(i) The total Federal funding authorized to date under the subaward equals or exceeds $30,000;

(ii) In the subrecipient's preceding fiscal year, the subrecipient received:

(A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,

(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal awards (and subawards) subject to the Transparency Act; and

(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see

the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

(2) Reporting Requirements. Subrecipients must report to the recipient their executive total compensation described in paragraph

(c)(1) of this appendix. The recipient is required to submit this information to the

Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at http://www.fsrs.gov no later than the end of the month following the month in which the subaward was made. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025).

(d) Exemptions. (1) A recipient with gross income under $300,000 in the previous tax year is exempt from the requirements to report:

(i) Subawards, and

(ii) The total compensation of the five most highly compensated executives of any subrecipient.

(e) Definitions. For purposes of this award term:

Entity includes:

(1) Whether for profit or nonprofit:

(i) A corporation;

(ii) An association;

(iii) A partnership;

(iv) A limited liability company;

(v) A limited liability partnership;

(vi) A sole proprietorship;

(vii) Any other legal business entity;

(viii) Another grantee or contractor that is not excluded by subparagraph (2); and

(ix) Any State or locality;

(2) Does not include:

(i) An individual recipient of Federal financial assistance; or

(ii) A Federal employee.

Executive means an officer, managing partner, or any other employee holding a management position.

Subaward has the meaning given in 2 CFR200.1.

Subrecipient has the meaning given in 2CFR 200.1.

Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 CFR 229.402(c)(2).

**Condition 15**
Assurances and Certifications: The recipient acknowledges its agreement to comply with the Assurances and Certifications forms that were signed as part of its application.

**Condition 16**
Conflict of Interest: Recipients and subrecipients must disclose in writing to the COPS Office or pass-through entity, as applicable, any potential conflict of interest affecting the awarded federal funding in 2 C.F.R. § 200.112.

**Condition 17**
Debarment and Suspension: The recipient agrees not to award federal funds under this program to any party which is debarred or suspended from participation in federal assistance programs. 2 C.F.R. Part 180 (Government-wide Nonprocurement Debarment and Suspension) and 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension).

**Condition 18**
Equal Employment Opportunity Plan (EEOP): Please see the Office for Civil Rights website https://www.ojp.gov/eeop-notice for current information on the recipient's responsibilities related to the federal regulations pertaining to the development and implementation of an Equal Employment Opportunity Plan.

**Condition 19**
Employment Eligibility: The recipient agrees to complete and keep on file, as appropriate, the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS) Employment Eligibility Verification Form (I-9). This form is to be used by recipients of federal funds to verify that persons are eligible to work in the United States. Immigration Reform and Control Act of 1986 (IRCA), Public Law 99-603.

**Condition 20**
Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information: Recipients and subrecipients agree not to discharge, demote, or otherwise discriminate against an employee as reprisal for the employee disclosing information that he or she reasonably believes is evidence of gross mismanagement of a federal contract or award, a gross waste of federal funds, an abuse of authority relating to a federal contract or award, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or award. Recipients and subrecipients also agree to provide to their employees in writing (in the predominant native language of the workforce) of the rights and remedies provided in 41 U.S.C. § 4712. Please see appendices in the Award Owner's Manual for a full text of the statute.

**Condition 21**
False Statements: False statements or claims made in connection with COPS Office awards may result in fines, imprisonment, debarment from participating in federal awards or contracts, and/or any other remedy available by law. 31 U.S.C. § 3729-3733.

**Condition 22**
Mandatory Disclosure: Recipients and subrecipients must timely disclose in writing to the Federal awarding agency or pass-through entity, as applicable, all federal criminal law violations involving fraud, bribery, or gratuity that may potentially affect the awarded federal funding. Recipients that receive an award over $500,000 must also report certain civil, criminal, or administrative proceedings in SAM and are required to comply with the Term and Condition for Recipient Integrity and Performance Matters as set out in 2 C.F.R. Part 200, Appendix XII to Part 200. Failure to make required disclosures can result in any of the remedies, including suspension and debarment, described in 2 C.F.R. § 200.339. 2 C.F.R. § 200.113.

**Condition 23**
Reports/Performance Goals: To assist the COPS Office in monitoring and tracking the performance of your award,

your agency will be responsible for submitting semi-annual programmatic performance reports that describe project activities during the reporting period and quarterly Federal Financial Reports using Standard Form 425 (SF-425). 2 C.F.R. §§ 200.328 - 200.329. The performance report is used to track your agency's progress in implementing the award, and, as applicable, community policing strategies including gauging the effectiveness of your agency's community policing capacity. The Federal Financial Report is used to track the expenditures of the recipient's award funds on a cumulative basis throughout the life of the award.

**Condition 24**
System for Award Management (SAM.gov) and Universal Identifier Requirements: The recipient agrees to comply with the following requirements of 2 C.F.R. Part 25, Appendix A to Part 25 – Award Term:
I. System for Award Management (SAM.gov) and Universal Identifier Requirements
(a) Requirement for System for Award Management. (1) Unless exempt from this requirement under 2 CFR 25.110, the recipient must maintain a current and active registration in SAM.gov. The recipient's registration must always be current and active until the recipient submits all final reports required under this Federal award or receives the final payment, whichever is later. The recipient must review and update its information in SAM.gov at least annually from the date of its initial registration or any subsequent updates to ensure it is current, accurate, and complete. If applicable, this includes identifying the recipient's immediate and highest-level owner and subsidiaries and providing information about the recipient's predecessors that have received a Federal award or contract within the last three years.
(b) Requirement for Unique Entity Identifier (UEI). (1) If the recipient is authorized to make subawards under this Federal award, the recipient:
(i) Must notify potential subrecipients that no entity may receive a subaward until the entity has provided its UEI to the recipient.
(ii) Must not make a subaward to an entity unless the entity has provided its UEI to the recipient. Subrecipients are not required to complete full registration in SAM.gov to obtain a UEI.
(c) Definitions. For the purposes of this award term:
System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide the information required for the conduct of business as a recipient. Additional information about registration procedures may be found in SAM.gov (currently at https://www.sam.gov).
Unique entity identifier means the universal identifier assigned by SAM.gov to uniquely identify an entity.
Entity is defined at 2 CFR 25.400 and includes all of the following types as defined in 2 CFR 200.1:
(1) Non-Federal entity;
(2) Foreign organization;
(3) Foreign public entity;
(4) Domestic for-profit organization; and
(5) Federal agency.
Subaward has the meaning given in 2 CFR 200.1.
Subrecipient has the meaning given in 2 CFR 200.1.

**Condition 25**
Additional High-Risk Recipient Requirements: The recipient agrees to comply with any additional requirements that may be imposed during the award performance period if the awarding agency determines that the recipient is a high-risk recipient. 2 C.F.R. § 200.208.

**Condition 26**
Evaluations: The COPS Office may conduct monitoring or sponsor national evaluations of its award programs. The recipient agrees to cooperate with the monitors and evaluators. 34 U.S.C. § 10385(b).

**Condition 27**
Background Investigations: Recipients agree to ensure that each officer(s) hired with CHP funding will be subject to a background investigation, notify the COPS Office upon completion of the background investigation for each officer hired under the CHP award, and cooperate with the COPS Office and provide updates on the status of background investigations upon request. 2 C.F.R. § 200.208
If the COPS Office determines that CHP funds are being used to pay the salary and fringe benefits of an officer who has not undergone a background investigation, the COPS Office may temporarily suspend grant funds in accordance with 2 C.F.R. §200.339 until the agency can demonstrate the background investigation has been completed.

**Condition 28**
Retention: At the time of award application, your agency committed to retaining all sworn officer positions awarded under the CHP award with state and/or local funds for a minimum of 12 months following the conclusion of 36 months of federal funding for each position, over and above the number of locally-funded sworn officer positions that would have existed in the absence of the award. Your agency cannot satisfy the retention requirement by using CHP-funded positions to fill locally-funded vacancies resulting from attrition. 34 U.S.C. § 10382 (c)(8).

**Condition 29**
Allowable Costs Condition: The funding under this project is for the payment of three years (36 months) of approved full-time entry-level salaries and fringe benefits during the five-year (60 months) period of performance. The maximum federal share is $125,000 per officer position (unless a local match waiver is approved) for career law enforcement officer positions hired and/or rehired on or after the official award start date. Any salary and fringe benefit costs higher than entry-level that your agency pays a CHP-funded officer must be paid with local funds. Your agency is required to use CHP award funds for the specific hiring categories awarded. In accordance with 2 C.F.R. § 200.400(g), the recipient or subrecipient must not earn or keep any profit resulting from the award. Funding under this program may be used for the following categories:
• Hiring new officers, which includes filling existing officer vacancies that are no longer funded in your agency's budget;
• Rehiring officers laid off by any jurisdiction as a result of state, local, or Bureau of Indian Affairs (BIA) budget reductions; and/or
• Rehiring officers who were, at the time of award application, scheduled to be laid off (by your jurisdiction) on a specific future date as a result of state, local, or BIA budget reductions.
If your agency's local fiscal conditions have changed and your agency needs to change one or more of the funded hiring categories, your agency should request an award modification and receive prior approval before spending CHP funding under the new category. The approved budget in the award package specifies the amount of CHP funds awarded to your agency. Please note that the salary and fringe benefit costs requested in your CHP application may have been adjusted or removed. Your agency may only be reimbursed for the approved cost categories up to the amounts specified in the approved budget. Only actual allowable costs incurred during the award period will be eligible for reimbursement and drawdown. If your agency experiences any cost savings over the course of the award (for example, your award application overestimated the total entry-level officer salary and fringe benefits package), your agency may not use that excess funding to continue salary payments to the officers beyond 36 months. Any funds remaining after your agency has drawn down for the costs of approved salaries and fringe benefits incurred for each awarded position during the 36-month funding period will be deobligated during the closeout process and should not be spent by your agency.

**Condition 30**
Advancing Department of Justice Priority Problem Focus Areas: This condition applies to agencies that selected one of the following priority crime problem/focus areas to address in their COPS Hiring Program (CHP) application:
• Violent Crime
• Squatting and Encampment Enforcement
• Homeland and Border Security
• Nuisance and Abatement and Quality of Life
• School Based Policing
Your agency understands and agrees to the following: Your agency will implement the one specific community policing plan identified in your CHP award application?
Your agency will address its specific priority crime problem throughout the entire CHP award period?

Your agency will implement any organizational changes identified in its CHP award application;
Your agency will cooperate with any award monitoring by the COPS Office to ensure that it is initiating or enhancing its community policing efforts to address its priority crime problem, which may include your agency having to respond to additional or modified reporting requirements.

**Condition 31**
Supplementing, not Supplanting: State, local, and tribal government recipients must use award funds to supplement, and not supplant, state, local, or Bureau of Indian Affairs (BIA) funds that are already committed or otherwise would have been committed for award purposes (hiring, training, purchases, and/or activities) during the award period. In other words, state, local, and tribal government recipients may not use COPS Office funds to supplant (replace) state, local, or BIA funds that would have been dedicated to the COPS Office-funded item(s) in the absence of the COPS

Office award. 34 U.S.C. § 10384(a).

## Condition 32

Career Law Enforcement Officer: Officer hiring funds may only be used to pay entry-level salaries and fringe benefits for full-time "career law enforcement officers" for 36 months. The COPS Office's statute defines a "career law enforcement officer" as "a person hired on a permanent basis who is authorized by law or by a State or local public agency to engage in or supervise the prevention, detection, or investigation of violations of criminal laws." 34 U.S.C. §10389(1). A recipient agency may use officer hiring funds to pay the salary and benefits of recruits while in academy training to become "career law enforcement officers" if it is the standard practice of the agency to do so with locally-funded recruits. The State of Alaska, and any Indian tribe or tribal organization in that State, may also use officer hiring funds for a "village public safety officer" defined as "an individual employed as a village public safety officer under the program established by the State pursuant to Alaska Statute 18.65.670." Tribal Law and Order Act of 2010, Pub. L. 111-211, title II, § 247 (a)(2).

## Condition 33

Local Match: COPS Hiring Program award recipients are required to contribute a local match of at least 25 percent towards the total cost of the approved award project, unless waived in writing by the COPS Office. The local match must be a cash match from funds not previously budgeted for law enforcement purposes and must be paid during the award period. The local match contribution must be made on an increasing basis during each year of the three-year award period, with the federal share decreasing accordingly. 34 U.S.C. § 10381(g).

## Condition 34

Modifications: Occasionally, a change in an agency's fiscal or law enforcement situation necessitates a change in its COPS Office CHP award. Award modifications under CHP are evaluated on a case-by-case basis in accordance with 2 C.F.R. § 200.308(i). For federal awards in excess of the simplified acquisition threshold (currently $250,000), any modification request involving the reallocation of funding between budget categories that exceed or are expected to exceed 10 percent (10%) of the total approved budget requires prior written approval by the COPS Office. Regardless of the federal award amount or budget modification percentage, any reallocation of funding is limited to approved budget categories. In addition, any budget modification that changes the scope of the project requires prior written approval by the COPS Office. In addition, please be aware that the COPS Office will not approve any modification request that results in an increase of federal funds.

In addition, modification requests should be submitted to the COPS Office when an agency determines that it will need to shift officer positions awarded in one hiring category into a different hiring category and/or reduce the total number of positions awarded. For example, if an agency was awarded CHP funding for two new, additional sworn officer positions, but due to fiscal distress/constraints the agency needs to change the hiring category from the new hire category to the rehire category for officers laid off or scheduled for layoff on a specific future date post-application, the agency would have to request a modification. The COPS Office will only consider a modification request after an agency makes final, approved budget and/or personnel decisions. An agency may implement the modified award following written approval from the COPS Office. Please be aware that the COPS Office will not approve any modification request that results in an increase of federal funds.

During the CHP award period, it may become necessary for an agency to modify its CHP award due to changes in an agency's fiscal or law enforcement situation. Modification requests should be submitted to the COPS Office when an agency determines that it will need to shift officer positions awarded in one hiring category into a different hiring category, reduce the total number of positions awarded, shift funds among benefit categories, and/or reduce the entry-level salary and fringe benefit amounts. For example, an agency may have been awarded CHP funding for 10 new, additional full-time sworn officer positions, but due to severe fiscal distress/constraints the agency determines it is unable to sustain all 10 positions and must reduce its request to five full-time positions; or an agency may have been awarded CHP funding for two new, additional sworn officer positions, but due to fiscal distress/constraints the agency needs to change the hiring category from the new hire category to the rehire category for officers laid off or scheduled for layoff on a specific future date post-application. Award modifications under CHP are evaluated on a case-by-case basis. The COPS Office will only consider a modification request after an agency makes final, approved budget and/or personnel decisions. An agency may implement the modified award following written approval from the COPS Office. Please be aware that the COPS Office will not approve any modification request that results in an increase of federal funds.

## Condition 35

School Resource Officer (SRO) Training Requirement: COPS Office-funded SROs are required to complete a 40-hour basic SRO training course from a list of COPS Office-approved providers. Training must be completed no later than nine months after the date shown on the award congratulatory letter or six months from the date of the SRO's hire, whichever comes first. If a COPS Office-funded SRO leaves the recipient agency after completing the training, the recipient agrees to pay for the new SRO, who is assigned to backfill this position, to attend a 40-hour basic training course. The new SRO must complete the training no later than nine months after being placed in the school. If the officer has completed 40-hour basic training within the last 12 months prior to the award date, the condition has been fulfilled. Any longer than 12 months will require the officer to retake the course. The agency must coordinate with the training provider to secure funding to cover registration and travel expenses.

If your agency fails to comply with the SRO basic training within the specified timeframe, the COPS Office may temporarily suspend grant funds or take other remedial actions in accordance with 2 C.F.R. §200.339 until your agency complies with this requirement.

## Condition 36
Extensions: Your agency may request an extension of the 60-month award performance period to receive additional time to implement your award program. Such extensions do not provide additional funding. Any request for an extension will be evaluated on a case-by-case basis. Only those recipients that can provide a reasonable justification for delays will be granted no-cost extensions. Reasonable justifications may include difficulties in filling COPS Office-funded positions, officer turnover, or other circumstances that interrupt the 36-month funding period. An extension allows your agency to compensate for such delays by providing additional time to complete the full 36 months of funding for each position awarded. 2 C.F.R. §§ 200.308(f)(10) and 200.309. Extension requests must be received prior to the end date of the award.

## Condition 37
Contracts and/or MOUs with other Jurisdictions: Sworn law enforcement officer positions awarded must be used for law enforcement activities or services that benefit your agency and the population that it serves. The items funded under the CHP award cannot be utilized by other agencies unless the items benefit the population that your agency serves. Your agency may use items funded under the CHP award to assist other law enforcement agencies under a resource sharing, mutual aid, or other agreement to address multi-jurisdictional issues as described in the agreement.

## Condition 38
Community Policing: Community policing activities to be initiated or enhanced by your agency and the officers funded by this award program were identified and described in your CHP award application. Your agency developed a community policing plan for the CHP award with specific reference to a crime or disorder problem and the following elements of community policing: (a) problem solving—your agency's plan to assess and respond to the problem identified; (b) community partnerships and support, including related governmental and community initiatives that complement your agency's proposed use of CHP funding; and (c) organizational transformation—how your agency will use the funds to reorient its mission to community policing or enhance its involvement in and commitment to community policing. Throughout the CHP award period, your agency is required to implement the community policing plan it set forth in the CHP award application.

The COPS Office defines community policing as a philosophy that promotes organizational strategies that support the systematic use of partnerships and problem-solving techniques to proactively address the immediate conditions that give rise to public safety issues such as crime, social disorder, and fear of crime. CHP awards through the specific officers funded (or an equal number of redeployed veteran officers) must be used to initiate or enhance community policing activities. All newly hired additional or rehired officers (or an equal number of redeployed veteran officers) funded under CHP must implement your agency's approved community policing plan, which you described in your award application.

## Condition 39
Memorandum of Understanding Requirement (for School Resource Officers only)
Recipients using award funding to hire and/or deploy School Resource Officers into schools understand and agree to the following:
• Your agency must submit a signed Memorandum of Understanding (MOU) between the law enforcement agency and the school partner(s) to the COPS Office before obligating or drawing down funds under this award. The MOU must be submitted to the COPS Office within 90 days of the date shown on the award letter. If your agency fails to submit the MOU within the 90 days, the COPS Office may temporarily suspend grant funds in accordance with 2 C.F.R. §200.339 until your agency submits the MOU.

• Your agency's MOU must contain the following information?

o The purpose of the MOU
o Clearly defined roles and responsibilities of the school district and the law enforcement agency, focusing officers' roles on safety
o Information sharing
o Supervision responsibility and chain of command for the SRO
o Signatures
Note: Please refer to the MOU Fact Sheet for a detailed explanation of the requirements under each of the bullets.

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

## Award Acceptance

**Declaration and Certification to the U.S. Department of Justice as to Acceptance**

By checking the declaration and certification box below, I--

A.    Declare to the U.S. Department of Justice (DOJ), under penalty of perjury, that I have authority to make this declaration and certification on behalf of the applicant.

B.    Certify to DOJ, under penalty of perjury, on behalf of myself and the applicant, to the best of my knowledge and belief, that the following are true as of the date of this award acceptance: (1) I have conducted or there was conducted (including by applicant's legal counsel as appropriate and made available to me) a diligent review of all terms and conditions of, and all supporting materials submitted in connection with, this award, including any assurances and certifications (including anything submitted  in connection therewith by a person on behalf of the applicant before, after, or at the time of the application submission and any materials that accompany this acceptance and certification); and (2) I have the legal authority to accept this award on behalf of the applicant.

C.    Accept this award on behalf of the applicant.

D.    Declare the following to DOJ, under penalty of perjury, on behalf of myself and the applicant:  (1) I understand that, in taking (or not taking) any action pursuant to this declaration and certification, DOJ will rely upon this declaration and certification as a material representation; and (2) I understand that any materially false, fictitious, or fraudulent information or statement in this declaration and certification (or concealment or omission of a material fact as to either) may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the applicant to civil penalties and administrative remedies under the federal False Claims Act (including under 31 U.S.C. §§ 3729-3730 and/or §§ 3801-3812) or otherwise.

**Agency Approval**

**Title of Approving Official**   **Name of Approving Official**   **Signed Date And Time**
COPS Acting Director              Cory D. Randolph                 9/29/25 5:32 AM

## Authorized Representative

☐ Declaration and Certification (Law Enforcement Executive/Program Official)

**Entity Acceptance**

**Title of Authorized Entity Official**
 no value

**Name of Authorized Entity Official**
 no value

**Signed Date And Time**
no value

☐ Declaration and Certification (Government Executive/Financial Official)

**Entity Acceptance**

**Title of Authorized Entity Official**
Chief Financial Officer

**Name of Authorized Entity Official**
no value

**Signed Date And Time**
no value

Exhibit 2



# Department of Justice (DOJ)

### Office of Community Oriented Policing Services (COPS Office)

*Washington, D.C. 20531*

| | |
|---|---|
| **Name and Address of Recipient:** | CITY OF TUCSON<br>255 W ALAMEDA ST |
| **City, State and Zip:** | TUCSON, AZ 85701 |
| **Recipient UEI:** | X487LACQEQN6 |

| | |
|---|---|
| **Project Title:** FY25 CPD Microgrants - CITY OF TUCSON, AZ | **Award Number:** 15JCOPS-25-GG-01048-PPSE |

**Solicitation Title:** FY25 Community Policing Development Microgrants

| | |
|---|---|
| **Federal Award Amount:** $175,000.00 | **Federal Award Date:** 10/10/25 |

| | |
|---|---|
| **Awarding Agency:** | Office of Community Oriented Policing Services |
| **Award Type:**<br>**Funding Instrument Type:** | Initial<br>Grant |

**Opportunity Category:** D
**Assistance Listing:**
16.710 - Public Safety Partnership and Community Policing Grants

| | |
|---|---|
| **Project Period Start Date:** 10/1/25 | **Project Period End Date:** 9/30/27 |
| **Budget Period Start Date:** 10/1/25 | **Budget Period End Date:** 9/30/27 |

**Project Description:**
The Tucson Police Department (TPD) will enhance their workforce by: (1) expanding the recruiting footprint for the department across the United States, primarily through participation in targeted job fair events, digital and social media campaigns, and traditional advertising, (2) recruiting a candidate pool from diverse backgrounds to expand efforts and attract qualified candidates and (3) by developing and encouraging a pathway for TPD's non-sworn, including Community Service Officers (CSOs), Professional Staff Investigators (PSIs), and Professional Staff to become sworn officers. The requested funding would be used to build new efforts and enhance strategies currently underway at TPD centered around marketing, and the internal Pathway to Policing (P2P) program. Specifically, funding will address marketing tactics, marketing materials, and travel for targeted recruitment efforts.

## Award Letter

October 10, 2025

Dear Chad Kasmar,

On behalf of Attorney General Pamela Bondi, it is my pleasure to inform you the Office of Community Oriented Policing Services (the COPS Office) has approved the application submitted by CITY OF TUCSON for an award under the funding opportunity entitled 2025 FY25 Community Policing Development Microgrants. The approved award amount is $175,000.
Review the Award Instrument below carefully and familiarize yourself with all conditions and requirements before accepting your award. The Award Instrument includes the Award Offer (Award Information, Project Information, Financial Information, and Award Conditions) and Award Acceptance. For COPS Office and OVW funding the Award Offer also includes any Other Award Documents.

Please note that award requirements include not only the conditions and limitations set forth in the Award Offer, but also compliance with assurances and certifications that relate to conduct during the period of performance for the award. These requirements encompass financial, administrative, and programmatic matters, as well as other important matters (e.g., specific restrictions on use of funds). Therefore, all key staff should receive the award conditions, the assurances and certifications, and the application as approved by the COPS Office, so that they understand the award requirements. Information on all pertinent award requirements also must be provided to any subrecipient of the award.

Should you accept the award and then fail to comply with an award requirement, DOJ will pursue appropriate remedies for non-compliance, which may include termination of the award and/or a requirement to repay award funds.

Prior to accepting the award, your Entity Administrator must assign a Financial Manager, Grant Award Administrator, and Authorized Representative(s) in the Justice Grants System (JustGrants). The Entity Administrator will need to ensure the assigned Authorized Representative(s) is current and has the legal authority to accept awards and bind the entity to the award terms and conditions. To accept the award, the Authorized Representative(s) must accept all parts of the Award Offer in the Justice Grants System (JustGrants), including by executing the required declaration and certification, within 45 days from the award date.

To access your funds, you will need to enroll in the Automated Standard Application for Payments (ASAP) system, if you haven't already completed the enrollment process in ASAP. The Entity Administrator should have already received an email from ASAP to initiate this process.

Congratulations, and we look forward to working with you.


Cory D. Randolph
COPS Acting Director

## Office for Civil Rights Notice for All Recipients

The Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) enforces federal civil rights laws and other provisions that prohibit discrimination by recipients of federal financial assistance from OJP, the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW).

Several civil rights laws, including Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act of 1973, require recipients of federal financial assistance (recipients) to give assurances that they will comply with those laws. Taken together, these and other civil rights laws prohibit recipients from discriminating in the provision of services and employment because of race, color, national origin, religion, disability, and sex or from discriminating in the provision of services on the bases of age.

Some recipients of DOJ financial assistance have additional obligations to comply with other applicable nondiscrimination provisions like the Omnibus Crime Control and Safe Streets Act of 1968, which prohibits discrimination on the basis of religion in addition to race, color, national origin, and sex. Recipients may also have related requirements regarding the development and implementation of equal employment opportunity programs.

OCR provides technical assistance, training, and other resources to help recipients comply with civil rights obligations. Further, OCR administratively enforces civil rights laws and nondiscrimination provisions by investigating DOJ recipients that are the subject of discrimination complaints. In addition, OCR conducts compliance reviews of DOJ recipients based on regulatory criteria. These investigations and compliance reviews permit OCR to evaluate whether DOJ recipients are providing services to the public and engaging in employment practices in a nondiscriminatory manner.

For more information about OCR, your civil rights and nondiscrimination responsibilities, how to notify your employees or beneficiaries of their civil rights protections and responsibilities and how to file a complaint, as well as technical assistance, training, and other resources, please visit www.ojp.gov/program/civil-rights-office/outreach. If you would like OCR to assist you in fulfilling your civil rights or nondiscrimination responsibilities, please contact us at askOCR@ojp.usdoj.gov or www.ojp.gov/program/civil-rights-office/about#ocr-contacts.

## Award Information

This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.

**Recipient Information**

**Recipient Name**

**UEI**
X487LACQEQN6                                    **ORI Number**

**Street 1**
255 W ALAMEDA ST                                **Street 2**

**City**                                        **State/U.S. Territory**
TUCSON                                          Arizona

**Zip/Postal Code**                             **Country**
85701                                           United States

**County/Parish**                               **Province**


**Award Details**

**Federal Award Date**                          **Award Type**
10/10/25                                        Initial

**Award Number**                                **Supplement Number**
15JCOPS-25-GG-01048-PPSE                        00

**Federal Award Amount**                        **Funding Instrument Type**
$175,000.00                                     Grant

| Assistance Listing Number | Assistance Listings Program Title |
|---|---|
| 16.710 | Public Safety Partnership and Community Policing Grants |

**Statutory Authority**

The Public Safety Partnership and Community Policing Act of 1994, 34 U.S.C. § 10381 et seq

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*


**Project Information**

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

**Solicitation Title**
2025 FY25 Community Policing Development
Microgrants

**Awarding Agency**
COPS

**Application Number**
GRANT14443112

| **Grant Manager Name** | **Phone Number** | **E-mail Address** |
|---|---|---|
| Ebonyque Taylor | 202-598-1297 | ebonyque.taylor@usdoj.gov |

**Project Title**
FY25 CPD Microgrants - CITY OF TUCSON, AZ

**Performance Period Start Date**
10/01/2025

**Performance Period End Date**
09/30/2027

**Budget Period Start Date**
10/01/2025

**Budget Period End Date**
09/30/2027

**Project Description**
The Tucson Police Department (TPD) will enhance their workforce by: (1) expanding the recruiting footprint for the department across the United States, primarily through participation in targeted job fair events, digital and social media campaigns, and traditional advertising, (2) recruiting a candidate pool from diverse backgrounds to expand efforts and attract qualified candidates and (3) by developing and encouraging a pathway for TPD's non-sworn, including Community Service Officers (CSOs), Professional Staff Investigators (PSIs), and Professional Staff to become sworn officers. The requested funding would be used to build new efforts and enhance strategies currently underway at TPD centered around marketing, and the internal Pathway to Policing (P2P) program. Specifically, funding will address marketing tactics, marketing materials, and travel for targeted recruitment efforts.

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

---

**Financial Information**

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

A financial analysis of budgeted costs has been completed. All costs listed in the approved budget below were programmatically approved based on the final proposed detailed budget and budget narratives submitted by your agency to the COPS Office. Any adjustments or edits to the proposed budget are explained below.

Budget Clearance Date:          9/8/25 5:02 PM

| **Comments** |
|---|
| No items |

**Budget Summary**

| Budget Category | Proposed Budget | Change | Approved Budget | Percentage |
|---|---|---|---|---|
| Sworn Officer Positions: | $0 | $0 | $0 | |
| Civilian or Non-Sworn Personnel: | $0 | $0 | $0 | |
| Travel: | $66,312 | $0 | $66,312 | |
| Equipment: | $3,700 | $0 | $3,700 | |
| Supplies: | $64,988 | -$10,000 | $54,988 | |
| SubAwards: | $0 | $0 | $0 | |
| Procurement Contracts: | $40,000 | $0 | $40,000 | |
| Other Costs: | $0 | $10,000 | $10,000 | |
| Total Direct Costs: | $175,000 | $0 | $175,000 | |
| Indirect Costs: | $0 | $0 | $0 | |
| Total Project Costs: | $175,000 | $0 | $175,000 | |
| Federal Funds: | $175,000 | $0 | $175,000 | 100.00% |
| Match Amount: | $0 | $0 | $0 | 0.00% |
| Program Income: | $0 | $0 | $0 | 0.00% |

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

## Award Conditions

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

**Condition 1**
Restrictions on Internal Confidentiality Agreements: No recipient or subrecipient under this award, or entity that receives a contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts the lawful reporting of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information. Full-Year Continuing Appropriations and Extensions Act, 2025, Public Law 119-4; Further Consolidated Appropriations Act, 2024, Public Law 118-47, Division B, Title VII, Section 742.

**Condition 2**
Compliance with 8 U.S.C. § 1373: Authority to obligate or expend contingent on compliance with this condition. State or local government entity recipients of this award, and any subrecipient of this award at any tier that is an entity of a State or of a unit of local government, must comply with 8 U.S.C. §1373, which provides that such entities may not prohibit, or in any way restrict, any government entity or official from sending to, receiving from, maintaining, or exchanging information regarding citizenship or immigration status, lawful or unlawful, of any individual with components of the U.S. Department of Homeland Security or any other federal, state or local government entity. This includes any prohibitions or restrictions imposed or established by a State or local government entity or official.

Any obligations or expenditures of a recipient or subrecipient that are impermissible under this condition shall be unallowable costs for purposes of this award.

References to the Immigration and Naturalization Service in 8 U.S.C. 1373 are to be read, as a legal matter, as references to components of the U.S. Department of Homeland Security.

**Condition 3**
Federal Civil Rights and Nondiscrimination Laws (certification): The recipient agrees that its compliance with all applicable Federal civil rights and nondiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for purposes of the False Claims Act (31 U.S.C. 3729-3730 and 3801-3812), and, by accepting this award, certifies that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws.

**Condition 4**
Federal Laws, Presidential Memoranda, and Executive Orders: Recipients of grant funding must comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President.

**Condition 5**
Award Monitoring Activities: Federal law requires that recipients receiving federal funding from the COPS Office must be monitored to ensure compliance with their award conditions and other applicable statutes and regulations. The COPS Office is also interested in tracking the progress of our programs and the advancement of community policing. Both aspects of award implementation—compliance and programmatic benefits—are part of the monitoring process coordinated by the U.S. Department of Justice. Award monitoring activities conducted by the COPS Office include site visits, enhanced office-based grant reviews, alleged noncompliance reviews, financial and programmatic reporting, and audit resolution. As a COPS Office award recipient, you agree to cooperate with and respond to any requests for information pertaining to your award. This includes all financial records, such as general accounting ledgers and all supporting documents. All information pertinent to the implementation of the award is subject to agency review throughout the life of the award, during the close-out process and for three-years after the submission of the final expenditure report. 2 C.F.R. §§ 200.334 and 200.337, and, as applicable, 34 U.S.C. § 10385(a).

**Condition 6**
Authorized Representative Responsibility: The recipient understands that, in accepting this award, the Authorized Representatives declare and certify, among other things, that they possess the requisite legal authority to accept the award on behalf of the recipient entity and, in so doing, accept (or adopt) all material requirements throughout the period of performance under this award. The recipient further understands, and agrees, that it will not assign anyone to the role of Authorized Representative during the period of performance under the award without first ensuring that the individual has the requisite legal authority.

**Condition 7**
Contract Provision: All contracts made by the award recipients under the federal award must contain the provisions required under 2 C.F.R. Part 200, Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards. Please see appendices in the Award Owner's Manual for a full text of the contract provisions.

**Condition 8**
Award Owner's Manual: The recipient agrees to comply with the terms and conditions in the applicable award year COPS Office Program Award Owner's Manual; DOJ Grants Financial Guide; COPS Office statute (34 U.S.C. § 10381, et seq.) as applicable; Students, Teachers, and Officers Preventing (STOP) School Violence Act of 2018 (34 U.S.C. § 10551, et seq.) as applicable; the requirements of 2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards), including subsequent changes, as adopted by the U.S. Department of Justice in 2 C.F.R. § 2800.101; 48 C.F.R. Part 31 (FAR Part 31) as applicable (Contract Cost Principles and Procedures); the Cooperative Agreement as applicable; representations made in the application; and all other applicable program requirements, laws, orders, regulations, or circulars.

Failure to comply with one or more award requirements may result in remedial action including, but not limited to, withholding award funds, disallowing costs, suspending, or terminating the

award, or other legal action as appropriate.

Should any provision of a condition of this award be held to be invalid or unenforceable by its terms, then that provision shall first be applied with a limited construction so as to give it the maximum effect permitted by law (to any person or circumstance) under this award. Should it be held, instead, that a condition (or a provision thereof) is of utter invalidity or unenforceability, such condition (or such provision) shall be deemed severable from this award.

## Condition 9

Federal Civil Rights: The recipient and any subrecipient must comply with applicable federal civil rights and nondiscrimination statutes and regulations including: Section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), as implemented in Subparts C and D of 28 C.F.R. Part 42; section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), as implemented in Subpart G of 28 C.F.R. Part 42; section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681), as implemented in Subpart D of 28 C.F.R. Parts 42 and 54; section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102), as implemented in Subpart I of 28 C.F.R. Part 42; and section 809(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. § 10228(c)), as implemented in Subpart D of 28 C.F.R. Part 42. In addition to applicable federal statutes and regulations that pertain to civil rights and nondiscrimination, the recipient and any subrecipient must comply with the requirements in 28 C.F.R. Parts 22 (Confidentiality of Identifiable Research and Statistical Information); 28 C.F.R. Part 23 (Criminal Intelligence Systems Operating Policies); 28 C.F.R. Part 38 (Partnerships with Faith-Based and Other Neighborhood Organizations); and 28 C.F.R. Part 46 (Protection of Human Subjects). For an overview of the civil rights laws and nondiscrimination requirements in connection with your award, please see https://www.ojp.gov/program/civil-rights/overview.

## Condition 10

Duplicative Funding: The recipient understands and agrees to notify the COPS Office if it receives, from any other source, funding for the same item or service also funded under this award.

## Condition 11

Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and COPS Office authority to terminate award): The recipient and subrecipient agree to comply with the following requirements of 2 C.F.R. Part 175, Appendix A to Part 175 – Award Term:
I. Trafficking in Persons
(a) Provisions applicable to a recipient that is a private entity. (1) Under this award, the
recipient, its employees, subrecipients under this award, and subrecipient's employees must not engage in:
(i) Severe forms of trafficking in persons;
(ii) The procurement of a commercial sex act during the period of time that this award
or any subaward is in effect;
(iii) The use of forced labor in the performance of this award or any subaward; or
(iv) Acts that directly support or advance trafficking in persons, including the following acts:
(A) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;
(B) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:
(1) Exempted from the requirement to provide or pay for such return transportation by the Federal department or agency providing or entering into the grant or cooperative agreement; or
(2) The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or a witness in a human trafficking enforcement action;
(C) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;
(D) Charging recruited employees a placement or recruitment fee; or
(E) Providing or arranging housing that fails to meet the host country's housing and safety standards.
(2) The Federal agency may unilaterally terminate this award or take any remedial
actions authorized by 22 U.S.C. 7104b(c), without penalty, if any private entity under this award:
(i) Is determined to have violated a prohibition in paragraph (a)(1) of this appendix; or
(ii) Has an employee that is determined to have violated a prohibition in paragraph
(a)(1) of this appendix through conduct that is either:
(A) Associated with the performance under this award; or
(B) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an

individual to an organization that are provided in 2 CFR part 180, "OMB
Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by DOJ
at 2 C.F.R. Part 2867.
(b) Provision applicable to a recipient other than a private entity. (1) The Federal agency
may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C.
7104b(c), without penalty, if a subrecipient that is a private entity under this award:
(i) Is determined to have violated a prohibition in paragraph (a)(1) of this
appendix; or
(ii) Has an employee that is determined to have violated a prohibition in paragraph
(a)(1) of this appendix through conduct that is either:
(A) Associated with the performance under this award; or
(B) Imputed to the subrecipient using the standards and due process for imputing the
conduct of an individual to an organization that are provided in 2 CFR part 180, "OMB
Guidelines to Agencies on Government-wide Debarment and Suspension
(Nonprocurement)," as implemented by 2 C.F.R. Part 2867.
(c) Provisions applicable to any recipient.
(1) The recipient must inform the Federal agency and the Inspector General of the Federal agency immediately of any
information you receive from any source alleging a violation of a prohibition in paragraph (a)(1) of this appendix.
(2) The Federal agency's right to unilaterally terminate this award as described in paragraphs (a)(2) or (b)(1) of this
appendix:
(i) Implements the requirements of 22 U.S.C. 78, and
(ii) Is in addition to all other remedies for noncompliance that are available to the Federal agency under this award.
(3) The recipient must include the requirements of paragraph (a)(1) of this award term in any subaward it makes to a
private entity.
(4) If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR
175.105(b).
(d) Definitions. For purposes of this award term:
Employee means either:
(1) An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or
program under this award; or
(2) Another person engaged in the performance of the project or program under this award and not compensated by
the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an
in-kind contribution toward cost sharing
requirements.
Private Entity means any entity, including for-profit organizations, nonprofit organizations, institutions of higher
education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states
as defined in 2 CFR 200.1.
The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse
of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meanings given at section
103 of the TVPA, as amended (22 U.S.C. 7102).


**Condition 12**
Termination: Recipient understands and agrees that the COPS Office may terminate funding, in whole or in part, for
the following reasons:
(1) When the recipient fails to comply with the terms and conditions of a Federal award.
(2) When the recipient agrees to the termination and termination conditions.
(3) When the recipient provides the COPS Office written notification requesting termination including the reasons,
effective date, and the portion of the award to be terminated. The COPS Office may terminate the entire award if the
remaining portion will not accomplish the purposes of the award.
(4) Pursuant to any other award terms and conditions, including, when an award no longer effectuates the program
goals or agency priorities to the extent such termination is authorized by law.
2. C.F.R. § 200.340.


**Condition 13**
Recipient Integrity and Performance Matters: For awards over $500,000, the recipient agrees to comply with the
following requirements of 2 C.F.R. Part 200, Appendix XII to Part 200 – Award Term and Condition for Recipient
Integrity and Performance Matters:
I. Reporting of Matters Related to Recipient Integrity and Performance

(a) General Reporting Requirement.

(1) If the total value of your active grants, cooperative agreements, and procurement contracts from all Federal agencies exceeds $10,000,000 for any period of time during the period of performance of this Federal award, then you as the recipient must ensure the information available in the responsibility/qualification records through the System for Award Management (SAM.gov), about civil, criminal, or administrative proceedings described in paragraph (b) of this award term is current and complete. This is a statutory requirement under section 872 of Public Law 110–417, as amended (41 U.S.C. 2313). As required by section 3010 of Public Law 111– 212, all information posted in responsibility/qualification records in SAM.gov on or after April 15, 2011 (except past performance reviews required for Federal procurement contracts) will be publicly available.

(b) Proceedings About Which You Must Report.

(1) You must submit the required information about each proceeding that—

(i) Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;

(ii) Reached its final disposition during the most recent five-year period; and

(iii) Is one of the following—

(A) A criminal proceeding that resulted in a conviction;

(B) A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;

(C) An administrative proceeding that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or

(D) Any other criminal, civil, or administrative proceeding if—

(1) It could have led to an outcome described in paragraph (b)(1)(iii)(A) through (C);

(2) It had a different disposition arrived at by consent or compromise with an acknowledgment of fault on your part; and

(3) The requirement in this award term to disclose information about the proceeding does not conflict with applicable laws and regulations.

(c) Reporting Procedures. Enter the required information in SAM.gov for each proceeding described in paragraph (b) of this award term. You do not need to submit the information a second time under grants and cooperative agreements that you received if you already provided the information in SAM.gov because you were required to do so under Federal procurement contracts that you were awarded.

(d) Reporting Frequency. During any period of time when you are subject to the requirement in paragraph (a) of this award term, you must report proceedings information in SAM.gov for the most recent five-year period, either to report new information about a proceeding that you have not reported previously or affirm that there is no new information to report. If you have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000, you must disclose semiannually any information about the criminal, civil, and administrative proceedings.

(e) Definitions. For purposes of this award term—

Administrative proceeding means a nonjudicial process that is adjudicatory in nature to make a determination of fault or liability (for example, Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with the performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.

Conviction means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere. Total value of currently active grants, cooperative agreements, and procurement contracts includes the value of the Federal share already received plus any anticipated Federal share under those awards (such as continuation funding).


**Condition 14**

Reporting Subawards and Executive Compensation: The recipient agrees to comply with the following requirements of 2 C.F.R. Part 170, Appendix A to Part 170 – Award Term:

I. Reporting Subawards and Executive Compensation

(a) Reporting of first-tier subawards—(1) Applicability. Unless the recipient is exempt as provided in paragraph (d) of this award term, the recipient must report each subaward that equals or exceeds $30,000 in Federal funds for a subaward to an entity or Federal agency. The recipient must also report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000. All reported subawards should reflect the total amount of the subaward.

(2) Reporting Requirements. (i) The entity or Federal agency must report each subaward described in paragraph (a)(1) of this award term to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at http://www.fsrs.gov.

(ii) For subaward information, report no later than the end of the month following the month in which the subaward was issued. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025).

(b) Reporting total compensation of recipient executives for entities—(1) Applicability. The recipient must report the total compensation for each of the recipient's five most highly compensated executives for the preceding completed fiscal year if:

(i) The total Federal funding authorized to date under this Federal award equals or exceeds $30,000;

(ii) in the preceding fiscal year, the recipient received:

(A) 80 percent or more of the recipient's annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and

(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,

(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

(2) Reporting Requirements. The recipient must report executive total compensation described in paragraph (b)(1) of this appendix:

(i) As part of the recipient's registration profile at https://www.sam.gov.

(ii) No later than the month following the month in which this Federal award is made, and annually after that. (For example, if this Federal award was made on November 7, 2025, the executive total compensation must be reported by no later than December 31, 2025.)

(c) Reporting of total compensation of subrecipient executives—(1) Applicability. Unless a first-tier subrecipient is exempt as provided in paragraph (d) of this appendix, the recipient must report the executive total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if:

(i) The total Federal funding authorized to date under the subaward equals or exceeds $30,000;

(ii) In the subrecipient's preceding fiscal year, the subrecipient received:

(A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,

(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal awards (and subawards) subject to the Transparency Act; and

(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

(2) Reporting Requirements. Subrecipients must report to the recipient their executive total compensation described in paragraph (c)(1) of this appendix. The recipient is required to submit this information to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at http://www.fsrs.gov no later than the end of the month following the month in which the subaward was made. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025.)

(d) Exemptions. (1) A recipient with gross income under $300,000 in the previous tax year is exempt from the requirements to report:

(i) Subawards, and

(ii) The total compensation of the five most highly compensated executives of any subrecipient.

(e) Definitions. For purposes of this award term:

Entity includes:

(1) Whether for profit or nonprofit:

(i) A corporation;

(ii) An association;

(iii) A partnership;

(iv) A limited liability company;

(v) A limited liability partnership;

(vi) A sole proprietorship;
(vii) Any other legal business entity;
(viii) Another grantee or contractor that is not excluded by subparagraph (2); and
(ix) Any State or locality;
(2) Does not include:
(i) An individual recipient of Federal financial assistance; or
(ii) A Federal employee.
Executive means an officer, managing partner, or any other employee holding a management position.
Subaward has the meaning given in 2 CFR200.1.
Subrecipient has the meaning given in 2CFR 200.1.
Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 CFR 229.402(c)(2).

## Condition 15

Assurances and Certifications: The recipient acknowledges its agreement to comply with the Assurances and Certifications forms that were signed as part of its application.

## Condition 16

Conflict of Interest: Recipients and subrecipients must disclose in writing to the COPS Office or pass-through entity, as applicable, any potential conflict of interest affecting the awarded federal funding in 2 C.F.R. § 200.112.

## Condition 17

Debarment and Suspension: The recipient agrees not to award federal funds under this program to any party which is debarred or suspended from participation in federal assistance programs. 2 C.F.R. Part 180 (Government-wide Nonprocurement Debarment and Suspension) and 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension).

## Condition 18

Equal Employment Opportunity Plan (EEOP): Please see the Office for Civil Rights website https://www.ojp.gov/eeop-notice for current information on the recipient's responsibilities related to the federal regulations pertaining to the development and implementation of an Equal Employment Opportunity Plan.

## Condition 19

Employment Eligibility: The recipient agrees to complete and keep on file, as appropriate, the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS) Employment Eligibility Verification Form (I-9). This form is to be used by recipients of federal funds to verify that persons are eligible to work in the United States. Immigration Reform and Control Act of 1986 (IRCA), Public Law 99-603.

## Condition 20

Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information: Recipients and subrecipients agree not to discharge, demote, or otherwise discriminate against an employee as reprisal for the employee disclosing information that he or she reasonably believes is evidence of gross mismanagement of a federal contract or award, a gross waste of federal funds, an abuse of authority relating to a federal contract or award, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or award. Recipients and subrecipients also agree to provide to their employees in writing (in the predominant native language of the workforce) of the rights and remedies provided in 41 U.S.C. § 4712. Please see appendices in the Award Owner's Manual for a full text of the statute.

## Condition 21

False Statements: False statements or claims made in connection with COPS Office awards may result in fines, imprisonment, debarment from participating in federal awards or contracts, and/or any other remedy available by law. 31 U.S.C. § 3729-3733.

## Condition 22

Mandatory Disclosure: Recipients and subrecipients must timely disclose in writing to the Federal awarding agency or

pass-through entity, as applicable, all federal criminal law violations involving fraud, bribery, or gratuity that may potentially affect the awarded federal funding. Recipients that receive an award over $500,000 must also report certain civil, criminal, or administrative proceedings in SAM and are required to comply with the Term and Condition for Recipient Integrity and Performance Matters as set out in 2 C.F.R. Part 200, Appendix XII to Part 200. Failure to make required disclosures can result in any of the remedies, including suspension and debarment, described in 2 C.F.R. § 200.339. 2 C.F.R. § 200.113.

## Condition 23

Reports/Performance Goals: To assist the COPS Office in monitoring and tracking the performance of your award, your agency will be responsible for submitting semi-annual programmatic performance reports that describe project activities during the reporting period and quarterly Federal Financial Reports using Standard Form 425 (SF-425). 2 C.F.R. §§ 200.328 - 200.329. The performance report is used to track your agency's progress in implementing the award, and, as applicable, community policing strategies including gauging the effectiveness of your agency's community policing capacity. The Federal Financial Report is used to track the expenditures of the recipient's award funds on a cumulative basis throughout the life of the award.

## Condition 24

System for Award Management (SAM.gov) and Universal Identifier Requirements: The recipient agrees to comply with the following requirements of 2 C.F.R. Part 25, Appendix A to Part 25 – Award Term:
I. System for Award Management (SAM.gov) and Universal Identifier Requirements
(a) Requirement for System for Award Management. (1) Unless exempt from this requirement under 2 CFR 25.110, the recipient must maintain a current and active registration in SAM.gov. The recipient's registration must always be current and active until the recipient submits all final reports required under this Federal award or receives the final payment, whichever is later. The recipient must review and update its information in SAM.gov at least annually from the date of its initial registration or any subsequent updates to ensure it is current, accurate, and complete. If applicable, this includes identifying the recipient's immediate and highest-level owner and subsidiaries and providing information about the recipient's predecessors that have received a Federal award or contract within the last three years.
(b) Requirement for Unique Entity Identifier (UEI). (1) If the recipient is authorized to make subawards under this Federal award, the recipient:
(i) Must notify potential subrecipients that no entity may receive a subaward until the entity has provided its UEI to the recipient.
(ii) Must not make a subaward to an entity unless the entity has provided its UEI to the recipient. Subrecipients are not required to complete full registration in SAM.gov to obtain a UEI.
(c) Definitions. For the purposes of this award term:
System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide the information required for the conduct of business as a recipient. Additional information about registration procedures may be found in SAM.gov (currently at https://www.sam.gov).
Unique entity identifier means the universal identifier assigned by SAM.gov to uniquely identify an entity.
Entity is defined at 2 CFR 25.400 and includes all of the following types as defined in 2 CFR 200.1:
(1) Non-Federal entity;
(2) Foreign organization;
(3) Foreign public entity;
(4) Domestic for-profit organization; and
(5) Federal agency.
Subaward has the meaning given in 2 CFR 200.1.
Subrecipient has the meaning given in 2 CFR 200.1.

## Condition 25

Additional High-Risk Recipient Requirements: The recipient agrees to comply with any additional requirements that may be imposed during the award performance period if the awarding agency determines that the recipient is a high-risk recipient. 2 C.F.R. § 200.208.

## Condition 26

Allowable Costs: The funding under this award is for the payment of approved costs for program-specific purposes. The allowable costs approved for your agency's award are limited to those listed in your agency's award package. In

accordance with 2 C.F.R. § 200.400(g), the recipient or subrecipient must not earn or keep any profit resulting from the award. Your agency may not use award funds for any costs not identified as allowable in the award package.

**Condition 27**
Training Guiding Principles: Any training or training materials developed or delivered with award funding provided by the Office of Community Oriented Policing Services is to adhere to the following guiding principles –

1. Trainings must comply with applicable law.
In developing and conducting training under the award, recipients (and any subrecipients) shall not violate the Constitution or any federal law, including any law prohibiting discrimination.

2. The content of trainings and training materials must be accurate, appropriately tailored, and focused.
The content of training programs must be accurate, useful to those being trained, and well matched to the program's stated objectives. Training materials used or distributed at trainings must be accurate, relevant, and consistent with these guiding principles.

3. Trainers must be well-qualified in the subject area and skilled in presenting it.
Trainers must possess the subject-matter knowledge and the subject-specific training experience necessary to meet th

4. Trainers must demonstrate the highest standards of professionalism.
Trainers must comport themselves with professionalism. While trainings will necessarily entail varying teaching styles, techniques, and degrees of formality, as appropriate to the particular training goal, professionalism demands that trainers instruct in the manner that best communicates the subject matter while conveying respect for all.

**Condition 28**
Computer Network Requirement: The recipient understands and agrees that no award funds may be used to maintain or establish a computer network unless such network blocks the viewing, downloading, and exchanging of pornography. Nothing in this requirement limits the use of funds necessary for any federal, state, tribal, or local law enforcement agency or any other entity carrying out criminal investigations, prosecution, or adjudication activities. Full-Year Continuing Appropriations and Extensions Act, 2025, Public Law 119-4; Consolidated Appropriations Act, 2024, Public Law 118-42, Division C, Title V, Section 527.

**Condition 29**
Evaluations: The COPS Office may conduct monitoring or sponsor national evaluations of its award programs. The recipient agrees to cooperate with the monitors and evaluators. 34 U.S.C. § 10385(b).

**Condition 30**
Extensions: Recipients may request an extension of the award period to receive additional time to implement their award program. Such extensions do not provide additional funding. Only those recipients that can provide a reasonable justification for delays will be granted no-cost extensions. Extension requests must be received prior to the end date of the award. 2 C.F.R. §§ 200.308(f)(10) and 200.309.

**Condition 31**
Human Subjects Research: The recipient agrees to comply with the provisions of the U.S. Department of Justice's common rule regarding Protection of Human Subjects, 28 C.F.R. Part 46, prior to the expenditure of Federal funds to perform such activities, if applicable. The recipient also agrees to comply with 28 C.F.R. Part 22 regarding the safeguarding of individually identifiable information collected from research participants.

**Condition 32**
Modifications: Award modifications are evaluated on a case-by-case basis in accordance with 2 C.F.R. § 200.308(i). For federal awards in excess of the simplified acquisition threshold (currently, $250,000), any modification request involving the reallocation of funding between budget categories that exceed or are expected to exceed 10 percent (10%) of the total approved budget requires prior written approval by the COPS Office. Regardless of the federal award amount or budget modification percentage, any reallocation of funding is limited to approved budget categories. In addition, any budget modification that changes the scope of the project requires prior written approval by the COPS Office.

**Condition 33**
The Paperwork Reduction Act Clearance and Privacy Act Review: Recipient agrees, if required, to submit all surveys, interview protocols, and other information collections to the COPS Office for submission to the Office of Management and Budget (OMB) for clearance under the Paperwork Reduction Act (PRA). Before submission to OMB, all information collections that request personally identifiable information must be reviewed by the COPS Office to ensure compliance with the Privacy Act. The Privacy Act compliance review and the PRA clearance process may take several months to complete. 44 U.S.C. §§ 3501-3520 and 5 U.S.C. § 552a.


**Condition 34**
Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment: Recipient agrees that it, and its subrecipients, will not use award funds to extend, renew, or enter into any contract to procure or obtain any covered telecommunication and video surveillance services or equipment as described in 2 CFR §200.216. Covered services and equipment include telecommunications or video surveillance services or equipment produced or provided by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities); Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities); or an entity that the Secretary of Defense, in consultation with the Director of the National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an entity owned or controlled by, or otherwise connected to, the government of China. The use of award funds on covered telecommunications or video surveillance services or equipment are unallowable.
2. C.F.R. § § 200.216 & 471. See also Section 889 of the John S. McCain National Defense Authorization Act of Fiscal Year 2019, Public Law 115-232.


**Condition 35**
Sole Source Justification: Recipients who have been awarded funding for the procurement of an item (or group of items) or service in excess of the simplified acquisition threshold (currently, $250,000) and who plan to seek approval for use of a noncompetitive procurement process must provide a written sole source justification to the COPS Office for approval prior to obligating, expending, or drawing down award funds for that item or service. 2 C.F.R. § 200.325(b)(2).


**Condition 36**
Supplementing, not Supplanting: State, local, and tribal government recipients must use award funds to supplement, and not supplant, state, local, or Bureau of Indian Affairs (BIA) funds that are already committed or otherwise would have been committed for award purposes (hiring, training, purchases, and/or activities) during the award period. In other words, state, local, and tribal government recipients may not use COPS Office funds to supplant (replace) state, local, or BIA funds that would have been dedicated to the COPS Office-funded item(s) in the absence of the COPS Office award. 34 U.S.C. § 10384(a).


**Condition 37**
Travel Costs: Travel costs for transportation, lodging and subsistence, and related items are allowable with prior approval from the COPS Office. Payment for allowable travel costs will be in accordance with 2 C.F.R. § 200.475.


**Condition 38**
Copyright: If applicable, the recipient may copyright any work that is subject to copyright and was developed, or for which ownership was acquired, under this award in accordance with 2 C.F.R. § 200.315(b). The COPS Office reserves a royalty-free, nonexclusive and irrevocable license to reproduce, publish, or otherwise use the work, in whole or in part (including create derivative works), for Federal Government purposes, and to authorize others to do so. The COPS Office also reserves the right, at its discretion, not to publish deliverables and other materials developed under this award as a U.S. Department of Justice resource.

Products and deliverables developed with award funds and published as a U.S. Department of Justice resource will contain the following copyright notice:

"This resource was developed under a federal award and may be subject to copyright. The U.S. Department of Justice reserves a royalty-free, nonexclusive, and irrevocable license to reproduce, publish, or otherwise use the work for Federal Government purposes and to authorize others to do so. This resource may be freely distributed and used for noncommercial and educational purposes only."

## Condition 39
Requirement to report actual or imminent breach of personally identifiable information (PII).

The recipient (and any subrecipient at any tier) must have written procedures in place to respond in the event of an actual or imminent breach (as defined in OMB M-17-12) if it (or a subrecipient)-- 1) creates, collects, uses, processes, stores, maintains, disseminates, discloses, or disposes of personally identifiable information (PII) (as defined in 2 C.F.R. 200.1) within the scope of a COPS Office grant-funded program or activity, or 2) uses or operates a Federal information system (as defined in OMB Circular A-130). The recipient's breach procedures must include a requirement to report actual or imminent breach of PII to the recipient's COPS Office Program Manager no later than 24 hours after an occurrence of an actual breach, or the detection of an imminent breach.

## Condition 40
Domestic preferences for procurements: Recipient agrees that it, and its subrecipients, to the greatest extent practicable, will provide a preference for the purchase, acquisition, or use of goods, products, and materials produced in, and services offered in, the United States. 2. C.F.R. § 200.322 and Executive Order 14005, Ensuring the Future is Made in All of America by All of America's Workers, January 25, 2021.

## Condition 41
Public Release Information: The recipient agrees to submit one copy of all reports and proposed publications resulting from this award ninety (90) days prior to public release. Any publications (written, curricula, visual, sound, or websites) or computer programs, whether or not published at government expense, shall contain the following statement:

"This project was supported, in whole or in part, by federal award number [YYYY-XX-XXXX] awarded to [Entity] by the U.S. Department of Justice, Office of Community Oriented Policing Services. The opinions contained herein are those of the author(s) or contributor(s) and do not necessarily represent the official position or policies of the U.S. Department of Justice. References to specific individuals, agencies, companies, products, or services should not be considered an endorsement by the author(s), contributor(s), or the U.S. Department of Justice.

## Condition 42
Determination of suitability required, in advance, for certain individuals who may interact with participating minors.

SCOPE. This condition applies to this award if it is indicated –- in the application for the award (as approved by DOJ)(or in the application for any subaward, at any tier), the DOJ funding announcement (solicitation), or an associated federal statute –- that a purpose of some or all of the activities to be carried out under the award (whether by the recipient, or a subrecipient at any tier) is to benefit a set of individuals under 18 years of age.

The recipient, and any subrecipient at any tier, must make determinations of suitability before certain individuals may interact with participating minors. This requirement applies regardless of an individual's employment status.

1. Advance determination regarding suitability. The recipient (and any subrecipient at any tier) may not permit any covered individual to interact with any participating minor in the course of activities under the award, unless the recipient or subrecipient first has made a written determination of the suitability of that individual to interact with participating minors, based on current and appropriate information as described in paragraph 3.E., and taking into account the factors and considerations described in paragraph 4.

2. Updates and reexaminations

A. The recipient (or subrecipient) must, at least every five years, update the searches described in paragraph 3.E.1. and 2., reexamine the covered individual's suitability determination in light of those search results, and, if appropriate, modify or withdraw that determination.

B. The recipient also must reexamine a covered individual's suitability determination upon learning of information that reasonably may suggest unsuitability and, if appropriate, modify or withdraw that determination.

3. Definitions

A. "Covered individual" means any individual (other than a participating minor, as defined in this condition, or a client of

the recipient (or subrecipient)) who is expected, or reasonably likely, to interact with any participating minor (other than the individual's own minor children). A covered individual need not have any particular employment status or legal relationship with the recipient (or subrecipient). Such an individual might be an employee of a recipient (or subrecipient), but also might be (for example) a consultant, contractor, employee of a contractor, trainee, volunteer, or teacher.

B. "Participating minor." All individuals under 18 years of age within the set of individuals described in the scope section of this condition as it appears on the award document are participating minors.

C. "Interaction" includes physical contact, oral and written communication, and the transmission of images and sound, and may be in person or by electronic (or similar) means. But "interaction" does not include--

(1) brief contact that is both unexpected by the recipient (or subrecipient) and unintentional on the part of the covered individual -- such as might occur when a postal carrier delivers mail to an administrative office.

(2) personally-accompanied contact -- that is, infrequent or occasional contact (for example, by someone who comes to make a presentation) in the presence of an accompanying adult, pursuant to written policies and procedures of the recipient (or subrecipient) that are designed to ensure that -- throughout the contact -- an appropriate adult who has been determined to be suitable pursuant to this condition will closely and personally accompany, and remain continuously within view and earshot of, the covered individual.

D. "Activities under the award." Whether paid for with federal funds from the award, "matching" funds included in the COPS Office-approved budget for the award, or "program income" for the award as defined by the (DOJ) Part 200 Uniform Requirements), activities under the award include both --

(1) activities carried out under the award by the recipient (or subrecipient); and

(2) actions taken by an entity or individual pursuant to a procurement contract under the award or to a procurement contract under a subaward at any tier.

E. "Current and appropriate information"

In addition to information resulting from checks or screening required by applicable federal, state, tribal, or local law, and/or by the recipient's (or subrecipient's) written policies and procedures, current and appropriate information includes the results of all required searches listed below, each of which must be completed no earlier than six months before the determination regarding suitability.

(1) Public sex offender and child abuse websites/registries

A search (by current name, and, if applicable, by previous name(s) or aliases), of the pertinent and reasonably-accessible federal, state, and (if applicable) local and tribal sex offender and child abuse websites/public registries, including--

(a) the Dru Sjodin National Sex Offender Public Website (www.nsopw.gov);

(b) the website/public registry for each state (and/or tribe, if applicable) in which the individual lives, works, or goes to school, or has lived, worked, or gone to school at any time during the past five years; and

(c) the website/public registry for each state (and/or tribe, if applicable) in which the individual is expected to, or reasonably likely to, interact with a participating minor in the course of activities under the award.

(2) Criminal history registries and similar repositories of criminal history records

For each individual at least 18 years of age who is a covered individual under this award, a fingerprint search (or, if the recipient or subrecipient documents that a fingerprint search is not legally available, a name-based search, using current and, if applicable, previous names and aliases) (-- encompassing at least the time period beginning five calendar years preceding the date of the search request -- of pertinent state (and, if applicable, local and tribal) criminal history registries or similar repositories, including--

(a) the criminal history registry for each state in which the individual lives, works, or goes to school, or has lived, worked, or gone to school at any time during the past five years; and

(b) the criminal history registry for each state in which he or she is expected to, or reasonably likely to, interact with a participating minor in the course of activities under the award.

4. Factors and considerations in determinations regarding suitability

In addition to the factors and considerations that must or may be considered under applicable federal, state, tribal, or local law, and under the recipient's (or subrecipient's) written policies and procedures, in making a determination regarding suitability, the recipient (or subrecipient) must consider the current and appropriate information described in paragraph 3.E.

In particular (unless applicable law precludes it), with respect to either an initial determination of suitability or a subsequent reexamination, the recipient (or subrecipient) may not determine that a covered individual is suitable to interact with participating minors in the course of activities under the award if the covered individual--

A. Withholds consent to a criminal history search required by this condition;

B. Knowingly makes (or made) a false statement that affects, or is intended to affect, any search required by this condition;

C. Is listed as a registered sex offender on the Dru Sjodin National Sex Offender Public Website;

D. To the knowledge of the recipient (or subrecipient), has been convicted -- whether as a felony or misdemeanor -- under federal, state, tribal, or local law of any of the following crimes (or any substantially equivalent criminal offense, regardless of the specific words by which it may be identified in law):

(1) sexual or physical abuse, neglect, or endangerment of an individual under the age of 18 at the time of the offense;
(2) rape/sexual assault, including conspiracy to commit rape/sexual assault;
(3) sexual exploitation, such as through child pornography or sex trafficking;
(4) kidnapping;
(5) voyeurism; or

E. Is determined by a federal, state, tribal, or local government agency not to be suitable.

5. Administration; rule of construction

A. The requirements of this condition are among those that must be included in any subaward (at any tier), and must be monitored. They apply as of the date of acceptance of this award, and throughout the remainder of the period of performance.

B. The recipient is to contact the DOJ awarding agency with any questions regarding the requirements of this condition and must not allow a covered individual to interact with a participating minor until such questions are answered.

C. Award funds may be obligated for the reasonable, necessary, and allocable costs (if any) of actions designed to ensure compliance with this condition, provided that such funds would not supplant non-federal funds that would otherwise be available for such costs.

D. Nothing in this condition shall be understood to authorize or require any recipient, any subrecipient at any tier, or any person or other entity, to violate any federal, state, tribal, or local law, including any applicable civil rights or nondiscrimination law.

**Condition 43**
The recipient understands that one or more cost items within the approved budget is subject to further programmatic review. The recipient agrees not to obligate, expend, or draw down funds for these specific cost items until the COPS Office issues an Award Condition Modification (ACM) which will remove this award condition and release the identified funds. The partial withholding is specific to cost items requiring further review and will not impact use of the remaining funding. For additional information on the specific cost item(s) that are pending programmatic review, please contact

the COPS Office Program Manager.

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

## Award Acceptance

**Declaration and Certification to the U.S. Department of Justice as to Acceptance**

By checking the declaration and certification box below, I--

A.    Declare to the U.S. Department of Justice (DOJ), under penalty of perjury, that I have authority to make this declaration and certification on behalf of the applicant.

B.    Certify to DOJ, under penalty of perjury, on behalf of myself and the applicant, to the best of my knowledge and belief, that the following are true as of the date of this award acceptance: (1) I have conducted or there was conducted (including by applicant's legal counsel as appropriate and made available to me) a diligent review of all terms and conditions of, and all supporting materials submitted in connection with, this award, including any assurances and certifications (including anything submitted  in connection therewith by a person on behalf of the applicant before, after, or at the time of the application submission and any materials that accompany this acceptance and certification); and (2) I have the legal authority to accept this award on behalf of the applicant.

C.    Accept this award on behalf of the applicant.

D.    Declare the following to DOJ, under penalty of perjury, on behalf of myself and the applicant:  (1) I understand that, in taking (or not taking) any action pursuant to this declaration and certification, DOJ will rely upon this declaration and certification as a material representation; and (2) I understand that any materially false, fictitious, or fraudulent information or statement in this declaration and certification (or concealment or omission of a material fact as to either) may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the applicant to civil penalties and administrative remedies under the federal False Claims Act (including under 31 U.S.C. §§ 3729-3730 and/or §§ 3801-3812) or otherwise.

**Agency Approval**

| **Title of Approving Official** | **Name of Approving Official** | **Signed Date And Time** |
|---|---|---|
| COPS Acting Director | Cory D. Randolph | 9/29/25 8:08 PM |

## Authorized Representative

☐ Declaration and Certification (Law Enforcement Executive/Program Official)

**Entity Acceptance**

## Title of Authorized Entity Official
 no value

## Name of Authorized Entity Official
 no value

## Signed Date And Time
 no value

☐ Declaration and Certification (Government Executive/Financial Official)

**Entity Acceptance**

**Title of Authorized Entity Official**
City Manager

**Name of Authorized Entity Official**
 no value

**Signed Date And Time**
 no value

# Exhibit 3



# Department of Justice (DOJ)

### Office of Community Oriented Policing Services (COPS Office)

*Washington, D.C. 20531*

| | |
|---|---|
| **Name and Address of Recipient:** | COUNTY OF SANTA CLARA<br>55 W YOUNGER AVE |
| **City, State and Zip:** | SAN JOSE, CA 95110 |
| **Recipient UEI:** | JNECJW88ML98 |

| **Project Title:** FY25 Law Enforcement Mental Health and Wellness Act (LEMHWA) Implementation Projects - COUNTY OF SANTA CLARA, CA | **Award Number:** 15JCOPS-25-GG-00436-LEMH |
|---|---|

**Solicitation Title:** FY25 Law Enforcement Mental Health and Wellness Act (LEMHWA) Implementation Projects

| **Federal Award Amount:** $200,000.00 | **Federal Award Date:** 10/10/25 |
|---|---|

| **Awarding Agency:** | Office of Community Oriented Policing Services |
|---|---|
| **Award Type:**<br>**Funding Instrument Type:** | Initial<br>Grant |

**Opportunity Category:** D
**Assistance Listing:**
16.070 - Law Enforcement Mental Health and Wellness Act

| **Project Period Start Date:** 10/1/25 | **Project Period End Date:** 9/30/27 |
|---|---|
| **Budget Period Start Date:** 10/1/25 | **Budget Period End Date:** 9/30/27 |

**Project Description:**

The Santa Clara County Sheriff's Office is committed to building a resilient, mission-ready workforce through a comprehensive wellness strategy that supports both fitness for duty and long-term quality of life. They will contract a part-time law enforcement chaplain (20 hours/week for 2 years) to offer emotional, moral, and spiritual support to deputies, professional staff, and their families; provide evidence-based training that strengthens compassion, emotional regulation, and resilience; and launch a 30-Minute Wellness Check Pilot Program. Expected outcomes include 150-200 personnel receiving wellness checks, increased EAP referrals and early interventions, and creation of a sustainable model for a mandatory wellness check program in future budget cycles. Together, these integrated strategies aim to reduce mental health stigma, increase access to timely and culturally competent care, and strengthen individual and organizational resilience across the agency.

**Award Letter**

October 10, 2025

Dear Robert Jonsen,

On behalf of Attorney General Pamela Bondi, it is my pleasure to inform you the Office of Community Oriented Policing Services (the COPS Office) has approved the application submitted by COUNTY OF SANTA CLARA for an award under the funding opportunity entitled 2025 FY25 Law Enforcement Mental Health and Wellness Act (LEMHWA) Implementation Projects. The approved award amount is $200,000.

Review the Award Instrument below carefully and familiarize yourself with all conditions and requirements before accepting your award. The Award Instrument includes the Award Offer (Award Information, Project Information, Financial Information, and Award Conditions) and Award Acceptance. For COPS Office and OVW funding the Award Offer also includes any Other Award Documents.

Please note that award requirements include not only the conditions and limitations set forth in the Award Offer, but also compliance with assurances and certifications that relate to conduct during the period of performance for the award. These requirements encompass financial, administrative, and programmatic matters, as well as other important matters (e.g., specific restrictions on use of funds). Therefore, all key staff should receive the award conditions, the assurances and certifications, and the application as approved by the COPS Office, so that they understand the award requirements. Information on all pertinent award requirements also must be provided to any subrecipient of the award.

Should you accept the award and then fail to comply with an award requirement, DOJ will pursue appropriate remedies for non-compliance, which may include termination of the award and/or a requirement to repay award funds.

Prior to accepting the award, your Entity Administrator must assign a Financial Manager, Grant Award Administrator, and Authorized Representative(s) in the Justice Grants System (JustGrants). The Entity Administrator will need to ensure the assigned Authorized Representative(s) is current and has the legal authority to accept awards and bind the entity to the award terms and conditions. To accept the award, the Authorized Representative(s) must accept all parts of the Award Offer in the Justice Grants System (JustGrants), including by executing the required declaration and certification, within 45 days from the award date.

To access your funds, you will need to enroll in the Automated Standard Application for Payments (ASAP) system, if you haven't already completed the enrollment process in ASAP. The Entity Administrator should have already received an email from ASAP to initiate this process.

Congratulations, and we look forward to working with you.


Cory D. Randolph
COPS Acting Director

## Office for Civil Rights Notice for All Recipients

The Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) enforces federal civil rights laws and other provisions that prohibit discrimination by recipients of federal financial assistance from OJP, the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW).

Several civil rights laws, including Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act of 1973, require recipients of federal financial assistance (recipients) to give assurances that they will comply with those laws.  Taken together, these and other civil rights laws prohibit recipients from discriminating in the provision of services and employment because of race, color, national origin, religion, disability, and sex or from discriminating in the provision of services on the bases of age.

Some recipients of DOJ financial assistance have additional obligations to comply with other applicable nondiscrimination provisions like the Omnibus Crime Control and Safe Streets Act of 1968, which prohibits discrimination on the basis of religion in addition to race, color, national origin, and sex.  Recipients may also have related requirements regarding the development and implementation of equal employment opportunity programs.

OCR provides technical assistance, training, and other resources to help recipients comply with civil rights obligations. Further, OCR administratively enforces civil rights laws and nondiscrimination provisions by investigating DOJ recipients that are the subject of discrimination complaints.  In addition, OCR conducts compliance reviews of DOJ recipients based on regulatory criteria.  These investigations and compliance reviews permit OCR to evaluate whether DOJ recipients are providing services to the public and engaging in employment practices in a nondiscriminatory manner.

For more information about OCR, your civil rights and nondiscrimination responsibilities, how to notify your employees or beneficiaries of their civil rights protections and responsibilities and how to file a complaint, as well as technical assistance, training, and other resources, please visit www.ojp.gov/program/civil-rights-office/outreach.  If you would like OCR to assist you in fulfilling your civil rights or nondiscrimination responsibilities, please contact us at askOCR@ojp.usdoj.gov or www.ojp.gov/program/civil-rights-office/about#ocr-contacts.

## Award Information

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

### Recipient Information

**Recipient Name**

**UEI**
JNECJW88ML98

**ORI Number**
CA04300

**Street 1**
55 W YOUNGER AVE

**Street 2**

**City**
SAN JOSE

**State/U.S. Territory**
California

**Zip/Postal Code**
95110

**Country**
United States

**County/Parish**

**Province**

### Award Details

**Federal Award Date**
10/10/25

**Award Type**
Initial

**Award Number**
15JCOPS-25-GG-00436-LEMH

**Supplement Number**
00

**Federal Award Amount**
$200,000.00

**Funding Instrument Type**
Grant

| Assistance Listing Number | Assistance Listings Program Title |
| --- | --- |
| 16.070 | Law Enforcement Mental Health and Wellness Act |

**Statutory Authority**

The Public Safety Partnership and Community Policing Act of 1994, 34 U.S.C. § 10381 et seq

[  ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

Page: 3 of 17

## Project Information

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

**Solicitation Title**
2025 FY25 Law Enforcement Mental Health and
Wellness Act (LEMHWA) Implementation Projects

**Awarding Agency**
COPS

**Application Number**
GRANT14420594

**Grant Manager Name**
Bethany Wilson

**Phone Number**
202-330-2299

**E-mail Address**
bethany.wilson@usdoj.gov

**Project Title**
FY25 Law Enforcement Mental Health and Wellness Act (LEMHWA) Implementation Projects - COUNTY OF SANTA CLARA, CA

**Performance Period Start Date**
10/01/2025

**Performance Period End Date**
09/30/2027

**Budget Period Start Date**
10/01/2025

**Budget Period End Date**
09/30/2027

## Project Description

The Santa Clara County Sheriff's Office is committed to building a resilient, mission-ready workforce through a comprehensive wellness strategy that supports both fitness for duty and long-term quality of life. They will contract a part-time law enforcement chaplain (20 hours/week for 2 years) to offer emotional, moral, and spiritual support to deputies, professional staff, and their families; provide evidence-based training that strengthens compassion, emotional regulation, and resilience; and launch a 30-Minute Wellness Check Pilot Program. Expected outcomes include 150-200 personnel receiving wellness checks, increased EAP referrals and early interventions, and creation of a sustainable model for a mandatory wellness check program in future budget cycles. Together, these integrated strategies aim to reduce mental health stigma, increase access to timely and culturally competent care, and strengthen individual and organizational resilience across the agency.

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

## Financial Information

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

A financial analysis of budgeted costs has been completed. All costs listed in the approved budget below were

programmatically approved based on the final proposed detailed budget and budget narratives submitted by your agency to the COPS Office. Any adjustments or edits to the proposed budget are explained below.

Budget Clearance Date:                8/26/25 9:43 PM

| Comments |
| --- |
| No items |

## Budget Summary

| Budget Category | Proposed Budget | Change | Approved Budget | Percentage |
| --- | --- | --- | --- | --- |
| Sworn Officer Positions: | $0 | $0 | $0 | |
| Civilian or Non-Sworn Personnel: | $100,000 | $0 | $100,000 | |
| Travel: | $0 | $0 | $0 | |
| Equipment: | $0 | $0 | $0 | |
| Supplies: | $5,500 | -$5,500 | $0 | |
| SubAwards: | $0 | $0 | $0 | |
| Procurement Contracts: | $0 | $0 | $0 | |
| Other Costs: | $94,500 | $5,500 | $100,000 | |
| Total Direct Costs: | $200,000 | $0 | $200,000 | |
| Indirect Costs: | $0 | $0 | $0 | |
| Total Project Costs: | $200,000 | $0 | $200,000 | |
| Federal Funds: | $200,000 | $0 | $200,000 | 100.00% |
| Match Amount: | $0 | $0 | $0 | 0.00% |
| Program Income: | $0 | $0 | $0 | 0.00% |

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

## Award Conditions

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

**Condition 1**
Restrictions on Internal Confidentiality Agreements: No recipient or subrecipient under this award, or entity that receives a contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts the lawful reporting of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive

such information. Full-Year Continuing Appropriations and Extensions Act, 2025, Public Law 119-4; Further Consolidated Appropriations Act, 2024, Public Law 118-47, Division B, Title VII, Section 742.

**Condition 2**
Compliance with 8 U.S.C. § 1373: Authority to obligate or expend contingent on compliance with this condition. State or local government entity recipients of this award, and any subrecipient of this award at any tier that is an entity of a State or of a unit of local government, must comply with 8 U.S.C. §1373, which provides that such entities may not prohibit, or in any way restrict, any government entity or official from sending to, receiving from, maintaining, or exchanging information regarding citizenship or immigration status, lawful or unlawful, of any individual with components of the U.S. Department of Homeland Security or any other federal, state or local government entity. This includes any prohibitions or restrictions imposed or established by a State or local government entity or official.

Any obligations or expenditures of a recipient or subrecipient that are impermissible under this condition shall be unallowable costs for purposes of this award.

References to the Immigration and Naturalization Service in 8 U.S.C. 1373 are to be read, as a legal matter, as references to components of the U.S. Department of Homeland Security.

**Condition 3**
Federal Civil Rights and Nondiscrimination Laws (certification): The recipient agrees that its compliance with all applicable Federal civil rights and nondiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for purposes of the False Claims Act (31 U.S.C. 3729-3730 and 3801-3812), and, by accepting this award, certifies that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws.

**Condition 4**
Federal Laws, Presidential Memoranda, and Executive Orders: Recipients of grant funding must comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President.

**Condition 5**
Award Monitoring Activities: Federal law requires that recipients receiving federal funding from the COPS Office must be monitored to ensure compliance with their award conditions and other applicable statutes and regulations. The COPS Office is also interested in tracking the progress of our programs and the advancement of community policing. Both aspects of award implementation—compliance and programmatic benefits—are part of the monitoring process coordinated by the U.S. Department of Justice. Award monitoring activities conducted by the COPS Office include site visits, enhanced office-based grant reviews, alleged noncompliance reviews, financial and programmatic reporting, and audit resolution. As a COPS Office award recipient, you agree to cooperate with and respond to any requests for information pertaining to your award. This includes all financial records, such as general accounting ledgers and all supporting documents. All information pertinent to the implementation of the award is subject to agency review throughout the life of the award, during the close-out process and for three-years after the submission of the final expenditure report. 2 C.F.R. §§ 200.334 and 200.337, and, as applicable, 34 U.S.C. § 10385(a).

**Condition 6**
Authorized Representative Responsibility: The recipient understands that, in accepting this award, the Authorized Representatives declare and certify, among other things, that they possess the requisite legal authority to accept the award on behalf of the recipient entity and, in so doing, accept (or adopt) all material requirements throughout the period of performance under this award. The recipient further understands, and agrees, that it will not assign anyone to the role of Authorized Representative during the period of performance under the award without first ensuring that the individual has the requisite legal authority.

**Condition 7**
Contract Provision: All contracts made by the award recipients under the federal award must contain the provisions required under 2 C.F.R. Part 200, Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards. Please see appendices in the Award Owner's Manual for a full text of the contract provisions.

**Condition 8**

Award Owner's Manual: The recipient agrees to comply with the terms and conditions in the applicable award year COPS Office Program Award Owner's Manual; DOJ Grants Financial Guide; COPS Office statute (34 U.S.C. § 10381, et seq.) as applicable; Students, Teachers, and Officers Preventing (STOP) School Violence Act of 2018 (34 U.S.C. § 10551, et seq.) as applicable; the requirements of 2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards), including subsequent changes, as adopted by the U.S. Department of Justice in 2 C.F.R. § 2800.101; 48 C.F.R. Part 31 (FAR Part 31) as applicable (Contract Cost Principles and Procedures); the Cooperative Agreement as applicable; representations made in the application; and all other applicable program requirements, laws, orders, regulations, or circulars.

Failure to comply with one or more award requirements may result in remedial action including, but not limited to, withholding award funds, disallowing costs, suspending, or terminating the
award, or other legal action as appropriate.

Should any provision of a condition of this award be held to be invalid or unenforceable by its terms, then that provision shall first be applied with a limited construction so as to give it the maximum effect permitted by law (to any person or circumstance) under this award. Should it be held, instead, that a condition (or a provision thereof) is of utter invalidity or unenforceability, such condition (or such provision) shall be deemed severable from this award.

**Condition 9**

Federal Civil Rights: The recipient and any subrecipient must comply with applicable federal civil rights and nondiscrimination statutes and regulations including: Section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), as implemented in Subparts C and D of 28 C.F.R. Part 42; section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), as implemented in Subpart G of 28 C.F.R. Part 42; section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681), as implemented in Subpart D of 28 C.F.R. Parts 42 and 54; section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102), as implemented in Subpart I of 28 C.F.R. Part 42; and section 809(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. § 10228(c)), as implemented in Subpart D of 28 C.F.R. Part 42. In addition to applicable federal statutes and regulations that pertain to civil rights and nondiscrimination, the recipient and any subrecipient must comply with the requirements in 28 C.F.R. Parts 22 (Confidentiality of Identifiable Research and Statistical Information); 28 C.F.R. Part 23 (Criminal Intelligence Systems Operating Policies); 28 C.F.R. Part 38 (Partnerships with Faith-Based and Other Neighborhood Organizations); and 28 C.F.R. Part 46 (Protection of Human Subjects). For an overview of the civil rights laws and nondiscrimination requirements in connection with your award, please see https://www.ojp.gov/program/civil-rights/overview.

**Condition 10**

Duplicative Funding: The recipient understands and agrees to notify the COPS Office if it receives, from any other source, funding for the same item or service also funded under this award.

**Condition 11**

Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and COPS Office authority to terminate award): The recipient and subrecipient agree to comply with the following requirements of 2 C.F.R. Part 175, Appendix A to Part 175 – Award Term:
I. Trafficking in Persons
(a) Provisions applicable to a recipient that is a private entity. (1) Under this award, the
recipient, its employees, subrecipients under this award, and subrecipient's employees must not engage in:
(i) Severe forms of trafficking in persons;
(ii) The procurement of a commercial sex act during the period of time that this award
or any subaward is in effect;
(iii) The use of forced labor in the performance of this award or any subaward; or
(iv) Acts that directly support or advance trafficking in persons, including the following acts:
(A) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;
(B) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:
(1) Exempted from the requirement to provide or pay for such return transportation by the Federal department or agency providing or entering into the grant or cooperative agreement; or
(2) The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment

or a witness in a human trafficking enforcement action;
(C) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;
(D) Charging recruited employees a placement or recruitment fee; or
(E) Providing or arranging housing that fails to meet the host country's housing and safety standards.
(2) The Federal agency may unilaterally terminate this award or take any remedial
actions authorized by 22 U.S.C. 7104b(c), without penalty, if any private entity under this award:
(i) Is determined to have violated a prohibition in paragraph (a)(1) of this appendix; or
(ii) Has an employee that is determined to have violated a prohibition in paragraph
(a)(1) of this this appendix through conduct that is either:
(A) Associated with the performance under this award; or
(B) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR part 180, ''OMB
Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement),'' as implemented by DOJ at 2 C.F.R. Part 2867.
(b) Provision applicable to a recipient other than a private entity. (1) The Federal agency
may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C.
7104b(c), without penalty, if a subrecipient that is a private entity under this award:
(i) Is determined to have violated a prohibition in paragraph (a)(1) of this award:
appendix; or
(ii) Has an employee that is determined to have violated a prohibition in paragraph
(a)(1) of this appendix through conduct that is either:
(A) Associated with the performance under this award; or
(B) Imputed to the subrecipient using the standards and due process for imputing the
conduct of an individual to an organization that are provided in 2 CFR part 180, ''OMB
Guidelines to Agencies on Government-wide Debarment and Suspension
(Nonprocurement),'' as implemented by 2 C.F.R. Part 2867.
(c) Provisions applicable to any recipient.
(1) The recipient must inform the Federal agency and the Inspector General of the Federal agency immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (a)(1) of this appendix.
(2) The Federal agency's right to unilaterally terminate this award as described in paragraphs (a)(2) or (b)(1) of this appendix:
(i) Implements the requirements of 22 U.S.C. 78, and
(ii) Is in addition to all other remedies for noncompliance that are available to the Federal agency under this award.
(3) The recipient must include the requirements of paragraph (a)(1) of this award term in any subaward it makes to a private entity.
(4) If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR 175.105(b).
(d) Definitions. For purposes of this award term:
Employee means either:
(1) An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this award; or
(2) Another person engaged in the performance of the project or program under this award and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing
requirements.
Private Entity means any entity, including for-profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 CFR 200.1.
The terms ''severe forms of trafficking in persons,'' ''commercial sex act,'' ''sex trafficking,'' ''Abuse or threatened abuse of law or legal process,'' ''coercion,'' ''debt bondage,'' and ''involuntary servitude'' have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. 7102).


**Condition 12**
Termination: Recipient understands and agrees that the COPS Office may terminate funding, in whole or in part, for the following reasons:
(1) When the recipient fails to comply with the terms and conditions of a Federal award.
(2) When the recipient agrees to the termination and termination conditions.
(3) When the recipient provides the COPS Office written notification requesting termination including the reasons,

effective date, and the portion of the award to be terminated. The COPS Office may terminate the entire award if the remaining portion will not accomplish the purposes of the award.
(4) Pursuant to any other award terms and conditions, including, when an award no longer effectuates the program goals or agency priorities to the extent such termination is authorized by law.
2. C.F.R. § 200.340.


**Condition 13**
Recipient Integrity and Performance Matters: For awards over $500,000, the recipient agrees to comply with the following requirements of 2 C.F.R. Part 200, Appendix XII to Part 200 – Award Term and Condition for Recipient Integrity and Performance Matters:
I. Reporting of Matters Related to Recipient Integrity and Performance
(a) General Reporting Requirement.
(1) If the total value of your active grants, cooperative agreements, and procurement contracts from all Federal agencies exceeds $10,000,000 for any period of time during the period of performance of this Federal award, then you as the recipient must ensure the information available in the responsibility/qualification records through the System for Award Management (SAM.gov), about civil, criminal, or administrative proceedings described in paragraph (b) of this award term is current and complete. This is a statutory requirement under section 872 of Public Law 110–417, as amended (41 U.S.C. 2313). As required by section 3010 of Public Law 111– 212, all information posted in responsibility/qualification records in SAM.gov on or after April 15, 2011 (except past performance reviews required for Federal procurement contracts) will be publicly available.
(b) Proceedings About Which You Must Report.
(1) You must submit the required information about each proceeding that—
(i) Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;
(ii) Reached its final disposition during the most recent five-year period; and
(iii) Is one of the following—
(A) A criminal proceeding that resulted in a conviction;
(B) A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;
(C) An administrative proceeding that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or
(D) Any other criminal, civil, or administrative proceeding if—
(1) It could have led to an outcome described in paragraph (b)(1)(iii)(A) through (C);
(2) It had a different disposition arrived at by consent or compromise with an acknowledgment of fault on your part; and
(3) The requirement in this award term to disclose information about the proceeding does not conflict with applicable laws and regulations.
(c) Reporting Procedures. Enter the required information in SAM.gov for each proceeding described in paragraph (b) of this award term. You do not need to submit the information a second time under grants and cooperative agreements that you received if you already provided the information in SAM.gov because you were required to do so under Federal procurement contracts that you were awarded.
(d) Reporting Frequency. During any period of time when you are subject to the requirement in paragraph (a) of this award term, you must report proceedings information in SAM.gov for the most recent five-year period, either to report new information about a proceeding that you have not reported previously or affirm that there is no new information to report. If you have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000, you must disclose semiannually any information about the criminal, civil, and administrative proceedings.
(e) Definitions. For purposes of this award term—
Administrative proceeding means a nonjudicial process that is adjudicatory in nature to make a determination of fault or liability (for example, Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with the performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.
Conviction means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere. Total value of currently active grants, cooperative agreements, and procurement contracts includes the value of the Federal share already received plus any anticipated Federal share under those awards (such as continuation funding).


**Condition 14**

Reporting Subawards and Executive Compensation: The recipient agrees to comply with the following requirements of 2 C.F.R. Part 170, Appendix A to Part 170 – Award Term:

I. Reporting Subawards and Executive Compensation

(a) Reporting of first-tier subawards—(1) Applicability. Unless the recipient is exempt as provided in paragraph (d) of this award term, the recipient must report each subaward that equals or exceeds $30,000 in Federal funds for a subaward to an entity or Federal agency. The recipient must also report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000. All reported subawards should reflect the total amount of the

subaward.

(2) Reporting Requirements. (i) The entity or Federal agency must report each subaward

described in paragraph (a)(1) of this award term to the Federal Funding Accountability

and Transparency Act Subaward Reporting System (FSRS) at http://www.fsrs.gov.

(ii) For subaward information, report no later than the end of the month following the month in which the subaward was issued. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025).

(b) Reporting total compensation of recipient executives for entities—(1) Applicability. The recipient must report the total compensation for each of the recipient's five most highly compensated executives for the preceding completed fiscal year if:

(i) The total Federal funding authorized to date under this Federal award equals or

exceeds $30,000;

(ii) in the preceding fiscal year, the recipient received:

(A) 80 percent or more of the recipient's annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and

(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,

(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

(2) Reporting Requirements. The recipient must report executive total compensation described in paragraph (b)(1) of this appendix:

(i) As part of the recipient's registration profile at https://www.sam.gov.

(ii) No later than the month following the month in which this Federal award is made, and annually after that. (For example, if this Federal award was made on November 7,

2025, the executive total compensation must be reported by no later than December 31,

2025.)

(c) Reporting of total compensation of subrecipient executives—(1) Applicability. Unless a first-tier subrecipient is exempt as provided in paragraph (d) of this appendix, the recipient must report the executive total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if:

(i) The total Federal funding authorized to date under the subaward equals or exceeds

$30,000;

(ii) In the subrecipient's preceding fiscal year, the subrecipient received:

(A) 80 percent or more of its annual gross revenues from Federal procurement contracts

(and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,

(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal awards (and subawards) subject to the Transparency Act; and

(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see

the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

(2) Reporting Requirements. Subrecipients must report to the recipient their executive total compensation described in paragraph

(c)(1) of this appendix. The recipient is required to submit this information to the

Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at http://www.fsrs.gov no later than the end of the month following the month in which the subaward was made. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025).

(d) Exemptions. (1) A recipient with gross income under $300,000 in the previous tax year is exempt from the requirements to report:
(i) Subawards, and
(ii) The total compensation of the five most highly compensated executives of any subrecipient.
(e) Definitions. For purposes of this award term:
Entity includes:
(1) Whether for profit or nonprofit:
(i) A corporation;
(ii) An association;
(iii) A partnership;
(iv) A limited liability company;
(v) A limited liability partnership;
(vi) A sole proprietorship;
(vii) Any other legal business entity;
(viii) Another grantee or contractor that is not excluded by subparagraph (2); and
(ix) Any State or locality;
(2) Does not include:
(i) An individual recipient of Federal financial assistance; or
(ii) A Federal employee.
Executive means an officer, managing partner, or any other employee holding a management position.
Subaward has the meaning given in 2 CFR200.1.
Subrecipient has the meaning given in 2CFR 200.1.
Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 CFR 229.402(c)(2).

**Condition 15**
Assurances and Certifications: The recipient acknowledges its agreement to comply with the Assurances and Certifications forms that were signed as part of its application.

**Condition 16**
Conflict of Interest: Recipients and subrecipients must disclose in writing to the COPS Office or pass-through entity, as applicable, any potential conflict of interest affecting the awarded federal funding in 2 C.F.R. § 200.112.

**Condition 17**
Debarment and Suspension: The recipient agrees not to award federal funds under this program to any party which is debarred or suspended from participation in federal assistance programs. 2 C.F.R. Part 180 (Government-wide Nonprocurement Debarment and Suspension) and 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension).

**Condition 18**
Equal Employment Opportunity Plan (EEOP): Please see the Office for Civil Rights website https://www.ojp.gov/eeop-notice for current information on the recipient's responsibilities related to the federal regulations pertaining to the development and implementation of an Equal Employment Opportunity Plan.

**Condition 19**
Employment Eligibility: The recipient agrees to complete and keep on file, as appropriate, the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS) Employment Eligibility Verification Form (I-9). This form is to be used by recipients of federal funds to verify that persons are eligible to work in the United States. Immigration Reform and Control Act of 1986 (IRCA), Public Law 99-603.

**Condition 20**
Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information: Recipients and subrecipients agree not to discharge, demote, or otherwise discriminate against an employee as reprisal for the employee disclosing information that he or she reasonably believes is evidence of gross mismanagement of a federal contract or award, a gross waste of federal funds, an abuse of authority relating to a federal contract or award, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal

contract (including the competition for or negotiation of a contract) or award. Recipients and subrecipients also agree to provide to their employees in writing (in the predominant native language of the workforce) of the rights and remedies provided in 41 U.S.C. § 4712. Please see appendices in the Award Owner's Manual for a full text of the statute.

**Condition 21**
False Statements: False statements or claims made in connection with COPS Office awards may result in fines, imprisonment, debarment from participating in federal awards or contracts, and/or any other remedy available by law. 31 U.S.C. § 3729-3733.

**Condition 22**
Mandatory Disclosure: Recipients and subrecipients must timely disclose in writing to the Federal awarding agency or pass-through entity, as applicable, all federal criminal law violations involving fraud, bribery, or gratuity that may potentially affect the awarded federal funding. Recipients that receive an award over $500,000 must also report certain civil, criminal, or administrative proceedings in SAM and are required to comply with the Term and Condition for Recipient Integrity and Performance Matters as set out in 2 C.F.R. Part 200, Appendix XII to Part 200. Failure to make required disclosures can result in any of the remedies, including suspension and debarment, described in 2 C.F.R. § 200.339. 2 C.F.R. § 200.113.

**Condition 23**
Reports/Performance Goals: To assist the COPS Office in monitoring and tracking the performance of your award, your agency will be responsible for submitting semi-annual programmatic performance reports that describe project activities during the reporting period and quarterly Federal Financial Reports using Standard Form 425 (SF-425). 2 C.F.R. §§ 200.328 - 200.329. The performance report is used to track your agency's progress in implementing the award, and, as applicable, community policing strategies including gauging the effectiveness of your agency's community policing capacity. The Federal Financial Report is used to track the expenditures of the recipient's award funds on a cumulative basis throughout the life of the award.

**Condition 24**
System for Award Management (SAM.gov) and Universal Identifier Requirements: The recipient agrees to comply with the following requirements of 2 C.F.R. Part 25, Appendix A to Part 25 – Award Term:
I. System for Award Management (SAM.gov) and Universal Identifier Requirements
(a) Requirement for System for Award Management. (1) Unless exempt from this requirement under 2 CFR 25.110, the recipient must maintain a current and active registration in SAM.gov. The recipient's registration must always be current and active until the recipient submits all final reports required under this Federal award or receives the final payment, whichever is later. The recipient must review and update its information in SAM.gov at least annually from the date of its initial registration or any subsequent updates to ensure it is current, accurate, and complete. If applicable, this includes identifying the recipient's immediate and highest-level owner and subsidiaries and providing information about the recipient's predecessors that have received a Federal award or contract within the last three years.
(b) Requirement for Unique Entity Identifier (UEI). (1) If the recipient is authorized to make subawards under this Federal award, the recipient:
(i) Must notify potential subrecipients that no entity may receive a subaward until the entity has provided its UEI to the recipient.
(ii) Must not make a subaward to an entity unless the entity has provided its UEI to the recipient. Subrecipients are not required to complete full registration in SAM.gov to obtain a UEI.
(c) Definitions. For the purposes of this award term:
System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide the information required for the conduct of business as a recipient. Additional information about registration procedures may be found in SAM.gov (currently at https://www.sam.gov).
Unique entity identifier means the universal identifier assigned by SAM.gov to uniquely identify an entity.
Entity is defined at 2 CFR 25.400 and includes all of the following types as defined in 2 CFR 200.1:
(1) Non-Federal entity;
(2) Foreign organization;
(3) Foreign public entity;
(4) Domestic for-profit organization; and
(5) Federal agency.

Subaward has the meaning given in 2 CFR 200.1.
Subrecipient has the meaning given in 2 CFR 200.1.

**Condition 25**
Additional High-Risk Recipient Requirements: The recipient agrees to comply with any additional requirements that may be imposed during the award performance period if the awarding agency determines that the recipient is a high-risk recipient. 2 C.F.R. § 200.208.

**Condition 26**
Allowable Costs: The funding under this award is for the payment of approved costs for program-specific purposes. The allowable costs approved for your agency's award are limited to those listed in your agency's award package. In accordance with 2 C.F.R. § 200.400(g), the recipient or subrecipient must not earn or keep any profit resulting from the award. Your agency may not use award funds for any costs not identified as allowable in the award package.

**Condition 27**
Training Guiding Principles: Any training or training materials developed or delivered with award funding provided by the Office of Community Oriented Policing Services is to adhere to the following guiding principles –

1. Trainings must comply with applicable law.
In developing and conducting training under the award, recipients (and any subrecipients) shall not violate the Constitution or any federal law, including any law prohibiting discrimination.

2. The content of trainings and training materials must be accurate, appropriately tailored, and focused.
The content of training programs must be accurate, useful to those being trained, and well matched to the program's stated objectives. Training materials used or distributed at trainings must be accurate, relevant, and consistent with these guiding principles.

3. Trainers must be well‐qualified in the subject area and skilled in presenting it.
Trainers must possess the subject‐matter knowledge and the subject‐specific training experience necessary to meet th

4. Trainers must demonstrate the highest standards of professionalism.
Trainers must comport themselves with professionalism. While trainings will necessarily entail varying teaching styles, techniques, and degrees of formality, as appropriate to the particular training goal, professionalism demands that trainers instruct in the manner that best communicates the subject matter while conveying respect for all.

**Condition 28**
Computer Network Requirement: The recipient understands and agrees that no award funds may be used to maintain or establish a computer network unless such network blocks the viewing, downloading, and exchanging of pornography. Nothing in this requirement limits the use of funds necessary for any federal, state, tribal, or local law enforcement agency or any other entity carrying out criminal investigations, prosecution, or adjudication activities. Full-Year Continuing Appropriations and Extensions Act, 2025, Public Law 119-4; Consolidated Appropriations Act, 2024, Public Law 118-42, Division C, Title V, Section 527.

**Condition 29**
Evaluations: The COPS Office may conduct monitoring or sponsor national evaluations of its award programs. The recipient agrees to cooperate with the monitors and evaluators. 34 U.S.C. § 10385(b).

**Condition 30**
Extensions: Recipients may request an extension of the award period to receive additional time to implement their award program. Such extensions do not provide additional funding. Only those recipients that can provide a reasonable justification for delays will be granted no-cost extensions. Extension requests must be received prior to the end date of the award. 2 C.F.R. §§ 200.308(f)(10) and 200.309.

**Condition 31**
Human Subjects Research: The recipient agrees to comply with the provisions of the U.S. Department of Justice's

common rule regarding Protection of Human Subjects, 28 C.F.R. Part 46, prior to the expenditure of Federal funds to perform such activities, if applicable. The recipient also agrees to comply with 28 C.F.R. Part 22 regarding the safeguarding of individually identifiable information collected from research participants.

## Condition 32

Modifications: Award modifications are evaluated on a case-by-case basis in accordance with 2 C.F.R. § 200.308(i). For federal awards in excess of the simplified acquisition threshold (currently, $250,000), any modification request involving the reallocation of funding between budget categories that exceed or are expected to exceed 10 percent (10%) of the total approved budget requires prior written approval by the COPS Office. Regardless of the federal award amount or budget modification percentage, any reallocation of funding is limited to approved budget categories. In addition, any budget modification that changes the scope of the project requires prior written approval by the COPS Office.

## Condition 33

The Paperwork Reduction Act Clearance and Privacy Act Review: Recipient agrees, if required, to submit all surveys, interview protocols, and other information collections to the COPS Office for submission to the Office of Management and Budget (OMB) for clearance under the Paperwork Reduction Act (PRA). Before submission to OMB, all information collections that request personally identifiable information must be reviewed by the COPS Office to ensure compliance with the Privacy Act. The Privacy Act compliance review and the PRA clearance process may take several months to complete. 44 U.S.C. §§ 3501-3520 and 5 U.S.C. § 552a.

## Condition 34

Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment: Recipient agrees that it, and its subrecipients, will not use award funds to extend, renew, or enter into any contract to procure or obtain any covered telecommunication and video surveillance services or equipment as described in 2 CFR §200.216. Covered services and equipment include telecommunications or video surveillance services or equipment produced or provided by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities); Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities); or an entity that the Secretary of Defense, in consultation with the Director of the National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an entity owned or controlled by, or otherwise connected to, the government of China. The use of award funds on covered telecommunications or video surveillance services or equipment are unallowable.
2. C.F.R. § § 200.216 & 471. See also Section 889 of the John S. McCain National Defense Authorization Act of Fiscal Year 2019, Public Law 115-232.

## Condition 35

Sole Source Justification: Recipients who have been awarded funding for the procurement of an item (or group of items) or service in excess of the simplified acquisition threshold (currently, $250,000) and who plan to seek approval for use of a noncompetitive procurement process must provide a written sole source justification to the COPS Office for approval prior to obligating, expending, or drawing down award funds for that item or service. 2 C.F.R. § 200.325(b)(2).

## Condition 36

Supplementing, not Supplanting: State, local, and tribal government recipients must use award funds to supplement, and not supplant, state, local, or Bureau of Indian Affairs (BIA) funds that are already committed or otherwise would have been committed for award purposes (hiring, training, purchases, and/or activities) during the award period. In other words, state, local, and tribal government recipients may not use COPS Office funds to supplant (replace) state, local, or BIA funds that would have been dedicated to the COPS Office-funded item(s) in the absence of the COPS Office award. 34 U.S.C. § 10384(a).

## Condition 37

Travel Costs: Travel costs for transportation, lodging and subsistence, and related items are allowable with prior approval from the COPS Office. Payment for allowable travel costs will be in accordance with 2 C.F.R. § 200.475.

## Condition 38

Copyright: If applicable, the recipient may copyright any work that is subject to copyright and was developed, or for

which ownership was acquired, under this award in accordance with 2 C.F.R. § 200.315(b). The COPS Office reserves a royalty-free, nonexclusive and irrevocable license to reproduce, publish, or otherwise use the work, in whole or in part (including create derivative works), for Federal Government purposes, and to authorize others to do so. The COPS Office also reserves the right, at its discretion, not to publish deliverables and other materials developed under this award as a U.S. Department of Justice resource.

Products and deliverables developed with award funds and published as a U.S. Department of Justice resource will contain the following copyright notice:

"This resource was developed under a federal award and may be subject to copyright. The U.S. Department of Justice reserves a royalty-free, nonexclusive, and irrevocable license to reproduce, publish, or otherwise use the work for Federal Government purposes and to authorize others to do so. This resource may be freely distributed and used for noncommercial and educational purposes only."

**Condition 39**
Requirement to report actual or imminent breach of personally identifiable information (PII).

The recipient (and any subrecipient at any tier) must have written procedures in place to respond in the event of an actual or imminent breach (as defined in OMB M-17-12) if it (or a subrecipient)-- 1) creates, collects, uses, processes, stores, maintains, disseminates, discloses, or disposes of personally identifiable information (PII) (as defined in 2 C.F.R. 200.1) within the scope of a COPS Office grant-funded program or activity, or 2) uses or operates a Federal information system (as defined in OMB Circular A-130). The recipient's breach procedures must include a requirement to report actual or imminent breach of PII to the recipient's COPS Office Program Manager no later than 24 hours after an occurrence of an actual breach, or the detection of an imminent breach.

**Condition 40**
Domestic preferences for procurements: Recipient agrees that it, and its subrecipients, to the greatest extent practicable, will provide a preference for the purchase, acquisition, or use of goods, products, and materials produced in, and services offered in, the United States. 2. C.F.R. § 200.322 and Executive Order 14005, Ensuring the Future is Made in All of America by All of America's Workers, January 25, 2021.

**Condition 41**
The recipient understands that one or more cost items within the approved budget is subject to further programmatic review. The recipient agrees not to obligate, expend, or draw down funds for these specific cost items until the COPS Office issues an Award Condition Modification (ACM) which will remove this award condition and release the identified funds. The partial withholding is specific to cost items requiring further review and will not impact use of the remaining funding. For additional information on the specific cost item(s) that are pending programmatic review, please contact the COPS Office Program Manager.

**Condition 42**
Public Release Information: The recipient agrees to submit one copy of all reports and proposed publications resulting from this award ninety (90) days prior to public release. Any publications (written, curricula, visual, sound, or websites) or computer programs, whether or not published at government expense, shall contain the following statement:

"This project was supported, in whole or in part, by federal award number [YYYY-XX-XXXX] awarded to [Entity] by the U.S. Department of Justice, Office of Community Oriented Policing Services. The opinions contained herein are those of the author(s) or contributor(s) and do not necessarily represent the official position or policies of the U.S. Department of Justice. References to specific individuals, agencies, companies, products, or services should not be considered an endorsement by the author(s), contributor(s), or the U.S. Department of Justice.

[  ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

**Award Acceptance**

**Declaration and Certification to the U.S. Department of Justice as to Acceptance**

By checking the declaration and certification box below, I--

A.   Declare to the U.S. Department of Justice (DOJ), under penalty of perjury, that I have authority to make this declaration and certification on behalf of the applicant.

B.   Certify to DOJ, under penalty of perjury, on behalf of myself and the applicant, to the best of my knowledge and belief, that the following are true as of the date of this award acceptance: (1) I have conducted or there was conducted (including by applicant's legal counsel as appropriate and made available to me) a diligent review of all terms and conditions of, and all supporting materials submitted in connection with, this award, including any assurances and certifications (including anything submitted  in connection therewith by a person on behalf of the applicant before, after, or at the time of the application submission and any materials that accompany this acceptance and certification); and (2) I have the legal authority to accept this award on behalf of the applicant.

C.   Accept this award on behalf of the applicant.

D.   Declare the following to DOJ, under penalty of perjury, on behalf of myself and the applicant:  (1) I understand that, in taking (or not taking) any action pursuant to this declaration and certification, DOJ will rely upon this declaration and certification as a material representation; and (2) I understand that any materially false, fictitious, or fraudulent information or statement in this declaration and certification (or concealment or omission of a material fact as to either) may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the applicant to civil penalties and administrative remedies under the federal False Claims Act (including under 31 U.S.C. §§ 3729-3730 and/or §§ 3801-3812) or otherwise.

**Agency Approval**

| **Title of Approving Official** | **Name of Approving Official** | **Signed Date And Time** |
|---|---|---|
| COPS Acting Director | Cory D. Randolph | 9/29/25 7:17 PM |

## Authorized Representative

☐ Declaration and Certification (Law Enforcement Executive/Program Official)

**Entity Acceptance**

### Title of Authorized Entity Official
no value

### Name of Authorized Entity Official
no value

### Signed Date And Time
no value

☐ Declaration and Certification (Government Executive/Financial Official)

**Entity Acceptance**

### Title of Authorized Entity Official
County Executive

### Name of Authorized Entity Official
no value

### Signed Date And Time
no value

Exhibit 4



# Office of the Attorney General
## Washington, D. C. 20530

July 29, 2025

MEMORANDUM FOR ALL FEDERAL AGENCIES

FROM:               THE ATTORNEY GENERAL

SUBJECT:            GUIDANCE FOR RECIPIENTS OF FEDERAL FUNDING
                    REGARDING UNLAWFUL DISCRIMINATION

## I.    INTRODUCTION

One of our Nation's bedrock principles is that all Americans must be treated equally. Not only is discrimination based on protected characteristics illegal under federal law, but it is also dangerous, demeaning, and immoral. Yet in recent years, the federal government has turned a blind eye toward, or even encouraged, various discriminatory practices, seemingly because of their purportedly benign labels, objectives, or intentions. No longer. Going forward, the federal government will not stand by while recipients of federal funds engage in discrimination.

This guidance clarifies the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ("DEI") programs.[1] Entities receiving federal funds, like all other entities subject to federal antidiscrimination laws, must ensure that their programs and activities comply with federal law and do not discriminate on the basis of race, color, national origin, sex, religion, or other protected characteristics—no matter the program's labels, objectives, or intentions. In furtherance of that requirement, this guidance identifies "Best Practices" as non-binding suggestions to help entities comply with federal antidiscrimination laws and avoid legal pitfalls; these are not mandatory requirements but rather practical recommendations to minimize the risk of violations.

Entities that receive federal financial assistance or that are otherwise subject to federal anti-discrimination laws, including educational institutions, state and local governments, and public and private employers, should review this guidance carefully to ensure all programs comply with their legal obligations.

---

[1] DEI programs go by other names as well, such as Diversity, Equity, Inclusion, and Accessibility ("DEIA") and Diversity, Equity, Inclusion, and Belonging ("DEIB").

## II.    EXECUTIVE SUMMARY

This guidance emphasizes the significant legal risks of initiatives that involve discrimination based on protected characteristics and provides non-binding best practices to help entities avoid the risk of violations. Key points include:

- **Statutory nondiscrimination requirements:** Federal law prohibits discrimination based on protected characteristics like race, sex, color, national origin, or religion.

- **Legal pitfalls of DEI Programs:** The use of terms such as "DEI," "Equity," or other euphemistic terms does not excuse unlawful discrimination or absolve parties from scrutiny regarding potential violations.

- **Prohibition on Protected Characteristics as Criteria:** Using race, sex, or other protected characteristics for employment, program participation, resource allocation, or other similar activities, opportunities, or benefits, is unlawful, except in rare cases where such discrimination satisfies the relevant level of judicial scrutiny.

- **Importance of Sex-Separated Intimate Spaces and Athletic Competitions:** Compelling employees to share intimate spaces with the opposite sex or allowing men to compete in women's athletic competitions would typically be unlawful.

- **Unlawful Proxy Discrimination:** Facially neutral criteria (e.g., "cultural competence," "lived experience," geographic targeting) that function as proxies for protected characteristics violate federal law if designed or applied with the intention of advantaging or disadvantaging individuals based on protected characteristics.

- **Scrutiny of Third-Party Funding:** Recipients of federal funds should ensure federal funds do not support third-party programs that discriminate.

- **Protection Against Retaliation:** Individuals who object to or refuse to participate in discriminatory programs, trainings, or policies are protected from adverse actions like termination or exclusion based on that individual's opposition to those practices.[2]

## III.    KEY FEDERAL ANTIDISCRIMINATION PROVISIONS AND LAW

Federal antidiscrimination laws prohibit discrimination on the basis of protected characteristics, including race, color, religion, sex, and national origin. The U.S. Supreme Court has consistently held that policies or practices based upon protected characteristics are subject to

---

[2] Unlawful retaliation occurs when a federally funded entity takes adverse actions against employees, participants, or beneficiaries because they engage in protected activities related to opposing DEI practices they reasonably believe violate federal antidiscrimination laws.

rigorous judicial scrutiny. Race-based classifications are subject to strict scrutiny, requiring a compelling governmental interest and narrowly tailored means to achieve that interest.[3] Sex-based classifications are subject to heightened scrutiny, requiring an exceedingly persuasive justification and substantial relation to an important governmental objective.[4] Discrimination based on other protected characteristics, such as religion, is also evaluated under analogous standards.[5] Entities receiving federal funds must comply with applicable civil rights laws, including:

- **Title VI of the Civil Rights Act of 1964:** Prohibits discrimination based on race, color, or national origin in any program or activity receiving federal financial assistance. This includes most educational institutions, healthcare providers, and state and local government agencies.

- **Title VII of the Civil Rights Act of 1964:** Prohibits employment discrimination based on, or motivated by, race, color, religion, sex, or national origin, in any terms, conditions, or privileges of employment, including hiring, promotion, demotion, termination, compensation, job transfers, training, or access to employment privileges and benefits.

- **Title IX of the Education Amendments of 1972:** Prohibits discrimination based on sex in education programs or activities receiving federal financial assistance. Title IX protections extend beyond athletics and include addressing sexual harassment, sex-based harassment, admissions policies, and equal access to resources and programs.

---

[3] *See, e.g., Students for Fair Admissions, Inc. v. Harvard*, 600 U.S. 181, 214 (2023) (holding racial classifications by public institutions are subject to strict scrutiny and racial classifications by private institutions can serve as basis for revoking funding under Title VI); *Ricci v. DeStefano*, 557 U.S. 557, 579 (2009) ("[E]xpress, race-based decision-making violates Title VII's command that employers cannot take adverse employment actions because of an individual's race."); *see also Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021) (holding grant program with race and sex preferences is unlawful under Equal Protection Clause).

[4] *See, e.g., United States v. Virginia*, 518 U.S. 515, 531 (1996).

[5] *See, e.g., Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 479 (2020) ("The Free Exercise Clause, which applies to the States under the Fourteenth Amendment, protects religious observers against unequal treatment and against laws that impose special disabilities on the basis of religious status . . . . [S]trict scrutiny applies . . . because Montana's no-aid provision discriminates based on religious status"); *Shapiro v. Thompson*, 394 U.S. 618, 631 (1969) (holding discriminating against individual for exercising fundamental constitutional rights is subject to heightened scrutiny), *overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974); *see also Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993) (relying on Equal Protection principles in holding intentional discrimination against exercise of religion is subject to strict scrutiny).

- **Equal Protection Clause of the Fourteenth Amendment:** Prohibits States from denying any person the equal protection of the laws, relevant in the context of discrimination claims involving state or local government actions.

## IV.    UNLAWFUL DISCRIMINATORY POLICIES AND PRACTICES

The following is a non-exhaustive list of unlawful practices that could result in revocation of grant funding. Federal funding recipients may also be liable for discrimination if they knowingly fund the unlawful practices of contractors, grantees, and other third parties.

### A.    Granting Preferential Treatment Based on Protected Characteristics

#### 1.    What Constitutes Unlawful Preferential Treatment?

Preferential treatment occurs when a federally funded entity provides opportunities, benefits, or advantages to individuals or groups based on protected characteristics in a way that disadvantages other qualified persons, including such practices portrayed as "preferential" to certain groups. Such practices violate federal law unless they meet very narrow exceptions.

#### 2.    Examples of Unlawful Practices

**Race-Based Scholarships or Programs:** A university's DEI program establishes a scholarship fund exclusively for students of a specific racial group (e.g., "Black Student Excellence Scholarship") and excludes otherwise qualified applicants of other races, even if they meet academic or financial need criteria. This extends to any race-exclusive opportunities, such as internships, mentorship programs, or leadership initiatives that reserve spots for specific racial groups, regardless of intent to promote diversity. Such race-exclusive programs violate federal civil rights law by discriminating against individuals based solely on their race or treating people differently based on a protected characteristic without meeting the strict legal standards required for race-conscious programs.

**Preferential Hiring or Promotion Practices:** A federally funded entity's DEI policy prioritizes candidates from "underrepresented groups" for admission, hiring, or promotion, bypassing qualified candidates who do not belong to those groups, where the preferred "underrepresented groups" are determined on the basis of a protected characteristic like race.

**Access to Facilities or Resources Based on Race or Ethnicity:** A university's DEI initiative designates a "safe space" or lounge exclusively for students of a specific racial or ethnic group.

B.    **Prohibited Use of Proxies for Protected Characteristics**

1.    **What Constitutes Unlawful Proxies?**

Unlawful proxies occur when a federally funded entity intentionally uses ostensibly neutral criteria that function as substitutes for explicit consideration of race, sex, or other protected characteristics. While these criteria may appear facially neutral, they become legally problematic under any of the following circumstances:

- They are selected because they correlate with, replicate, or are used as substitutes for protected characteristics.

- They are implemented with the intent to advantage or disadvantage individuals based on protected characteristics.

2.    **Examples of Potentially Unlawful Proxies**

**"Cultural Competence" Requirements:** A federally funded university requires job applicants to demonstrate "cultural competence," "lived experience," or "cross-cultural skills" in ways that effectively evaluate candidates' racial or ethnic backgrounds rather than objective qualifications. This includes selection criteria that advantage candidates who have experiences the employer associates with certain racial groups. For instance, requiring faculty candidates to describe how their "cultural background informs their teaching" may function as a proxy if used to evaluate candidates based on race or ethnicity.

**Geographic or Institutional Targeting:** A federally funded organization implements recruitment strategies targeting specific geographic areas, institutions, or organizations chosen primarily because of their racial or ethnic composition rather than other legitimate factors.

**"Overcoming Obstacles" Narratives or "Diversity Statements":** A federally funded program requires applicants to describe "obstacles they have overcome" or submit a "diversity statement" in a manner that advantages those who discuss experiences intrinsically tied to protected characteristics, using the narrative as a proxy for advantaging that protected characteristic in providing benefits.

C.    **Segregation Based on Protected Characteristics**

1.    **What Constitutes Unlawful Segregation?**

Segregation based on protected characteristics occurs when a federally funded entity organizes programs, activities, or resources—such as training sessions—in a way that separates or restricts access based on race, sex, or other protected characteristics. Such practices generally violate federal law by creating unequal treatment or reinforcing stereotypes, regardless of the stated goal (e.g., promoting inclusion or addressing historical inequities). Exceptions are narrow

and include only cases where federal law expressly permits race-based remedies for specific, documented acts of past discrimination by the institution itself, or in specialized contexts such as correctional facilities where courts have recognized compelling institutional interests.

While compelled segregation is generally impermissible, failing to maintain sex-separated athletic competitions and intimate spaces can also violate federal law. Federally funded institutions that allow males, including those self-identifying as "women," to access single-sex spaces designed for females—such as bathrooms, showers, locker rooms, or dormitories—undermine the privacy, safety, and equal opportunity of women and girls. Likewise, permitting males to compete in women's athletic events almost invariably denies women equal opportunity by eroding competitive fairness. These policies risk creating a hostile environment under Title VII, particularly where they compromise women's privacy, safety, or professional standing, and can violate Title IX by denying women access to the full scope of sex-based protections in education. To ensure compliance with federal law and to safeguard the rights of women and girls, organizations should affirm sex-based boundaries rooted in biological differences.

## 2. Examples of Unlawful Practices

**Race-Based Training Sessions:** A federally funded university hosts a DEI training program that requires participants to separate into race-based groups (e.g., "Black Faculty Caucus" or "White Ally Group") for discussions, prohibiting individuals of other races from participating in specific sessions. In contrast, a "Faculty Academic Support Network" open to all faculty interested in promoting student success avoids reliance on protected characteristics and complies with federal law.

**Segregation in Facilities or Resources:** A college receiving federal funds designates a "BIPOC-only study lounge," facially discouraging access by students of other races. Even if access is technically open to all, the identity-based focus creates a perception of segregation and may foster a hostile environment. This extends to any resource allocation—such as study spaces, computer labs, or event venues—that segregates access based on protected characteristics, even if intended to create "safe spaces." This does not apply to facilities that are single-sex based on biological sex to protect privacy or safety, such as restrooms, showers, locker rooms, or lodging.

**Implicit Segregation Through Program Eligibility:** A federally funded community organization hosts a DEI-focused workshop series that requires participants to identify with a specific racial or ethnic group (e.g., "for underrepresented minorities only") or mandates sex-specific eligibility, effectively excluding others who meet objective program criteria. Use of Protected Characteristics in Candidate Selection

## 3. What Constitutes Unlawful Use of Protected Characteristics?

Unlawful use of protected characteristics occurs when a federally funded entity or program considers race, sex, or any other protected trait as a basis for selecting candidates for employment

(e.g., hiring, promotions), contracts (e.g., vendor agreements), or program participation (e.g., internships, admissions, scholarships, training). This includes policies that explicitly mandate representation of specific groups in candidate pools or implicitly prioritize protected characteristics through selection criteria, such as "diverse slate" requirements, diversity decision-making panels, or diversity-focused evaluations. It also includes requirements that contracting entities utilize a specific level of working hours from individuals of certain protected characteristics to complete the contract. Such practices violate federal law by creating unequal treatment or disadvantaging otherwise qualified candidates, regardless of any intent to advance diversity goals.

### 4.    Examples of Unlawful Practices

**Race-Based "Diverse Slate" Policies in Hiring:** A federally funded research institute adopts a policy requiring that all interview slates for faculty positions include a minimum number of candidates from specific racial groups (e.g., at least two "underrepresented minority" candidates), rejecting otherwise qualified candidates who do not meet this racial criterion. This extends to any policy that sets racial benchmarks or mandates demographic representation in candidate pools, such as requiring a certain percentage of finalists to be from "diverse" backgrounds.

**Sex-Based Selection for Contracts:** A federally funded state agency implements a DEI policy that prioritizes awarding contracts to women-owned businesses, automatically advancing female vendors or minority-owned businesses over equally or more qualified businesses without preferred group status. This includes any contract selection process that uses sex or race as a tiebreaker or primary criterion, such as policies favoring "minority- or women-owned" businesses without satisfying the appropriate level of judicial scrutiny.

**Race- or Sex-Based Program Participation:** A federally funded university's internship program requires that 50% of selected participants be from "underrepresented racial groups" or female students, rejecting equally or more qualified applicants who do not meet these demographic criteria. This extends to any program—such as scholarships, fellowships, or leadership initiatives—that uses race, sex, or any other protected characteristic as a selection criterion, even if framed as addressing underrepresentation.

### D.    Training Programs That Promote Discrimination or Hostile Environments

### 1.    What Constitutes Unlawful DEI Training Programs?

Unlawful DEI training programs are those that—through their content, structure, or implementation—stereotype, exclude, or disadvantage individuals based on protected characteristics or create a hostile environment. This includes training that:

- Excludes or penalizes individuals based on protected characteristics.

- Creates an objectively hostile environment through severe or pervasive use of presentations, videos, and other workplace training materials that single out, demean, or stereotype individuals based on protected characteristics.

## 2.    Examples of Unlawful Practices

**Trainings That Promote Discrimination Based on Protected Characteristics:** A federally funded school district requires teachers to complete a DEI training that includes statements stereotyping individuals based on protected characteristics—such as "all white people are inherently privileged," "toxic masculinity," etc. Such trainings may violate Title VI or Title VII if they create a hostile environment or impose penalties for dissent in ways that result in discriminatory treatment.[6]

## E.    Recommendations on Best Practices

**Ensure Inclusive Access:** All workplace programs, activities, and resources should be open to all qualified individuals, regardless of race, sex, or other protected characteristics. Avoid organizing groups or sessions that exclude participants based on protected traits. Some sex separation is necessary where biological differences implicate privacy, safety, or athletic opportunity.

**Focus on Skills and Qualifications:** Base selection decisions on specific, measurable skills and qualifications directly related to job performance or program participation. For example, rather than asking about "cultural competence," assess specific skills such as language proficiency or relevant educational credentials. Criteria like socioeconomic status, first-generation status, or geographic diversity must not be used if selected to prioritize individuals based on racial, sex-based, or other protected characteristics.

**Prohibit Demographic-Driven Criteria:** Discontinue any program or policy designed to achieve discriminatory outcomes, even those using facially neutral means. Intent to influence demographic representation risks violating federal law. For example, a scholarship program must not target "underserved geographic areas" or "first-generation students" if the criteria are chosen to increase participation by specific racial or sex-based groups. Instead, use universally applicable criteria, such as academic merit or financial hardship, applied without regard to protected characteristics or demographic goals.

**Document Legitimate Rationales:** If using criteria in hiring, promotions, or selecting contracts that might correlate with protected characteristics, document clear, legitimate rationales unrelated to race, sex, or other protected characteristics. Ensure these rationales are consistently applied and are demonstrably related to legitimate, nondiscriminatory institutional objectives.

**Scrutinize Neutral Criteria for Proxy Effects:** Before implementing facially neutral criteria, rigorously evaluate and document whether they are proxies for race, sex, or other protected

---

[6] Federal law allows for workplace harassment trainings that are focused on preventing unlawful workplace discrimination and that do not single out particular groups as inherently racist or sexist.

characteristics. For instance, a program targeting "low-income students" must be applied uniformly without targeting areas or populations to achieve racial or sex-based outcomes.

**Eliminate Diversity Quotas:** Focus solely on nondiscriminatory performance metrics, such as program participation rates or academic outcomes, without reference to race, sex, or other protected traits. And discontinue policies that mandate representation of specific racial, sex-based, or other protected groups in candidate pools, hiring panels, or final selections. For example, replace a policy requiring "at least one minority candidate per slate" with a process that evaluates all applicants based on merit.

**Avoid Exclusionary Training Programs:** Ensure trainings are open to all qualified participants, regardless of protected characteristics. Avoid segregating participants into groups based on race, sex, or other protected characteristics. Trainings should not require participants to affirm specific ideological positions or "confess" to personal biases or privileges based on a protected characteristic.

**Include Nondiscrimination Clauses in Contracts to Third Parties and Monitor Compliance:** Incorporate explicit nondiscrimination clauses in grant agreements, contracts, or partnership agreements, requiring third parties to comply with federal law, and specify that federal funds cannot be used for programs that discriminate based on protected characteristics. Monitor third parties that receive federal funds to ensure ongoing compliance, including reviewing program materials, participant feedback, and outcomes to identify potential discriminatory practices. Terminate funding for noncompliant programs.

**Establish Clear Anti-Retaliation Procedures and Create Safe Reporting Mechanisms:** Implement and communicate policies that prohibit retaliation against individuals who engage in protected activities, such as raising concerns, filing complaints, or refusing to participate in potentially discriminatory programs. Include these policies in employee handbooks, student codes of conduct, and program guidelines. Provide confidential, accessible channels for individuals to report concerns about unlawful practices.

## V.    CONCLUSION

Entities are urged to review all programs, policies, and partnerships to ensure compliance with federal law, and discontinue any practices that discriminate on the basis of a protected status. The recommended best practices provided in this guidance are non-binding suggestions to assist entities in avoiding legal pitfalls and upholding equal opportunity for all. By prioritizing nondiscrimination, entities can mitigate the legal, financial, and reputational risks associated with unlawful DEI practices and fulfill their civil rights obligations.