DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
KARUN A. TILAK, SBN 323939
JESSE E. LANIER, SBN 303395
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, CA 94102-5408
Telephone: (415) 554-4223
Facsimile: (415) 437-4644
E-Mail: Karun.Tilak@sfcityatty.org
        Jesse.Lanier@sfcityatty.org

Attorneys for Plaintiffs
CITY AND COUNTY OF SAN FRANCISCO

*[additional counsel on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; CITY OF TUCSON; and CITY OF SAN DIEGO,<br><br>      Plaintiffs,<br><br>      vs.<br><br>UNITED STATES DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in her Official Capacity; OFFICE OF COMMUNITY ORIENTED POLICING SERVICES; and CORY D. RANDOLPH, in his official capacity,<br><br>      Defendants. | Case No. 3:25-cv-09277-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing Date:  December 18, 2025<br>Time:          10:00 a.m.<br>Judge:        Hon. James Donato<br>Place:        Courtroom 11<br><br>Date Filed:    October 28, 2025<br>Trial Date:    None Set |

1

## TABLE OF CONTENTS

2

INTRODUCTION ...................................................................................................................1

3

BACKGROUND .....................................................................................................................2

    I.      Congressional Funding for Community Policing ........................................2

4

    II.     COPS Grants Awarded to Plaintiffs in October 2025 ...............................3

5

    III.    Defendants Imposed Unconstitutional and Unlawful Conditions on
            Plaintiffs' Awards. ...................................................................................4

6

          A.     The Discrimination Condition ......................................................5

7

          B.     The False Claims Act ....................................................................6

8

          C.     The EO Condition .........................................................................7

9

          D.     Federal Funding Restrictions .......................................................7

10

LEGAL STANDARD ..............................................................................................................8

11

ARGUMENT ..........................................................................................................................8

    I.      Plaintiffs Are Likely to Succeed on the Merits .........................................8

12

          A.     Plaintiffs Have Standing to Contest the Challenged Conditions. ................9

13

          B.     The Challenged Conditions Are Unconstitutional. .......................................9

14

              1.     The Challenged Conditions Violate the Separation of
                   Powers. ...............................................................................9

15

              2.     The Challenged Conditions Violate Spending Power

16

                   Constraints. ......................................................................12

17

                   a.     The Challenged Conditions Are Ambiguous. ...................12

18

                   b.     The Challenged Conditions Are Unrelated to the
                       Purpose of the Grants. ...................................................16

19

           C.     The Challenged Conditions Violate the APA. ..............................................18

20

              1.     The Challenged Conditions Are Contrary to the Constitution
                   and in Excess of Statutory Jurisdiction. .........................18

21

               2.     The Challenged Conditions Are Arbitrary and Capricious ............19

22

    II.     Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary
            Relief. ....................................................................................................21

23

    III.    The Balance of Hardships and Public Interest Strongly Favor Plaintiffs. .............23

24

CONCLUSION .....................................................................................................................24

25

FILER'S ATTESTATION .....................................................................................................27

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*All. for the Wild Rockies v. Cottrell*
   632 F.3d 1127 (9th Cir. 2011) ............................................................................8

*Am. Fed'n of Tchrs. v. Dep't of Educ.*
   No. CV SAG-25-628, 2025 WL 2374697 (D. Md. Aug. 14, 2025) .........................16

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*
   559 F.3d 1046 (9th Cir. 2009) ..........................................................................21

*Ariz. Dream Act Coal. v. Brewer*
   757 F.3d 1053 (9th Cir. 2014) ..........................................................................23

*Arlington Cent. Sch. Bd. Of Educ. v. Murphy*
   548 U.S. 291 (2006) ..........................................................................................12

*Bennett v. Spear*
   520 U.S. 154 (1997) ..........................................................................................18

*Bostock v. Clayton Cnty.*
   *Georgia*, 590 U.S. 644 (2020) ..........................................................................13

*California v. Env't Prot. Agency*
   72 F.4th 308 (D.C. Cir. 2023) ..........................................................................11

*California v. United States Dep't of Transportation*
   788 F. Supp. 3d 316 (D.R.I. 2025) ...................................................................24

*Chicago Women in Trades v. Trump*
   773 F. Supp. 3d 592 (N.D. Ill.2025) ................................................................16

*City & Cnty. of San Francisco v. Barr*
   965 F.3d 753 (9th Cir. 2020) ..............................................................................9

*City & Cnty. of San Francisco v. Garland*
   42 F.4th 1078 (9th Cir. 2022) .............................................................................9

*City & Cnty. of San Francisco v. Sessions*
   372 F. Supp. 3d 928 (N.D. Cal. 2019) ...............................................................9

*City & Cnty. of San Francisco v. Sessions*
   349 F. Supp. 3d 924 (N.D. Cal. 2018) .........................................................9, 16

*City & Cnty. of San Francisco v. Trump*
   779 F. Supp. 3d 1077 (N.D. Cal. 2025) ...................................................8, 22, 24

*City & Cnty. of San Francisco v. Trump*
   897 F.3d 1225 (9th Cir. 2018) ......................................................................9, 24

*City & Cnty. of San Francisco v. Trump*
  No. 25-CV-01350-WHO, 2025 WL 1738675 (N.D. Cal. June 23, 2025)..................................8

*City of Arlington, Tex. v. F.C.C.*
  569 U.S. 290 (2013)...................................................................................................................10

*City of Fresno v. Turner ("Fresno I")*
  No. 25-cv-07070-RS, 2025 WL 2469330 (N.D. Cal. Aug. 27, 2025)...................11, 14, 15, 16

*City of Fresno v. Turner ("Fresno II")*
  No. 25-CV-07070-RS, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025 .....................9, 20, 22, 24

*City of Los Angeles v. Barr*
  941 F.3d 931 (9th Cir. 2019) ...............................................................................................10, 23

*City of Los Angeles v. Sessions*
  No. Cv-17-7215-R, 2018 WL 6071072 (C.D. Cal. Sept. 13, 2018) ..........................................23

*Clapper v. Amnesty Int'l USA*
  568 U.S. 398 (2013).....................................................................................................................9

*Climate United Fund v. Citibank, N.A.*
  775 F. Supp. 3d 335 (D.D.C. 2025).........................................................................................23

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*
  68 F.4th 864 (4th Cir. 2023) .....................................................................................................13

*Dep't of Commerce v. New York*
  588 U.S. 752 (2019).................................................................................................................9, 18

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*
  591 U.S. 1 (2020).......................................................................................................................20

*Drakes Bay Oyster Co. v. Jewell*
  747 F.3d 1073 (9th Cir. 2014) ..................................................................................................23

*F.C.C. v. Fox Television Stations, Inc.*
  556 U.S. 502 (2009)...................................................................................................................19

*Hecox v. Little*
  104 F.4th 1061 (9th Cir. 2024) ..................................................................................................21

*Hernandez v. Sessions*
   872 F.3d 976 (9th Cir. 2017) .....................................................................................................21

*Housing Authority of City & Cnty. of San Francisco v. Turner*
  No. 25-CV-08859-JST, 2025 WL 2961794 (N.D. Cal. Oct. 18, 2025)...............................8, 24

*Illinois v. Fed. Emergency Mgmt. Agency*
  No. CV 25-206 WES, 2025 WL 2716277 (D.R.I. Sept. 24, 2025) ...........................................21

*In re Aiken County*
    725 F.3d 255 (D.C. Cir. 2013) ...................................................................................10

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*
    591 U.S. 657 (2020) ...................................................................................................19

*Louisiana Pub. Serv. Comm'n v. FCC*
    476 U.S. 355 (1986) ...................................................................................................10

*Martin Luther King, Jr. Cnty. v. Turner*
    785 F. Supp. 3d 863 (W.D. Wash. 2025) ............................................................8, 11, 24

*Martin Luther King, Jr. Cnty. v. Turner*
    No. 2:25-CV-814, 2025 WL 2322763 (W.D. Wash. Aug. 12, 2025) ..............................8

*Maryland v. King*
    567 U.S. 1301 (2012) ..................................................................................................22

*Melendres v. Arpaio*
    695 F.3d 990 (9th Cir. 2012) .......................................................................................23

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*
    ("*State Farm*")
    463 U.S. 29 (1983) .................................................................................................19, 20

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*
    767 F. Supp. 3d 243 (D. Md. 2025) .............................................................................23

*New York v. United States*
    505 U.S. 144 (1992) ...................................................................................................16

*Ohio v. Env't Prot. Agency*
    603 U.S. 279 (2024) ...................................................................................................19

*Or. Nat. Res. Council v. Thomas*
    92 F.3d 792 (9th Cir. 1996) ........................................................................................20

*Pennhurst State Sch. & Hosp. v. Halderman*
    451 U.S. 1 (1981) ..................................................................................................12, 14

*Rodriguez v. Robbins*
    715 F.3d 1127 (9th Cir. 2013) ....................................................................................24

*S. Dakota v. Dole*
    483 U.S. 203 (1987) ...........................................................................................12, 16, 18

*San Francisco A.I.D.S. Found. v. Trump*
    786 F. Supp. 3d 1184 (N.D. Cal. 2025) .........................................................................9

*San Francisco Unified School District v. AmeriCorps* ("*AmeriCorps*")
    789 F. Supp 3d 716 (N.D. Cal. 2025) .....................................................................15, 16, 24

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*
    576 U.S. 519 (2015)...................................................................................13

*W. Virginia v. Env't Prot. Agency*
    597 U.S. 697 (2022)...................................................................................11

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008)........................................................................................8

*Youngstown Sheet & Tube Co. v. Sawyer*
    343 U.S. 579 (1952).....................................................................................9

**Statutes**
5 U.S.C.
    § 701(a)(2) ...............................................................................................18
    § 706(2) ....................................................................................................18
    § 706(2)(B) ..............................................................................................19
    § 706(2)(C) ..............................................................................................19
    § 706(2)(D) ..............................................................................................21

31 U.S.C.
    § 3729(a) ....................................................................................................6
    § 3729(a)(1)(A) ..........................................................................................6

34 U.S.C.
    § 10381(a) .................................................................................................10
    § 10381(b) .................................................................................................18
    § 10381(b)(18) ..........................................................................................17
    § 10381(b)(19) ..........................................................................................17
    § 10381(b)(19)(20) ......................................................................................2
    § 10381(b)(2) ........................................................................................2, 17
    § 10381(b)(24) ......................................................................................2, 17
    § 10382(c) ...........................................................................................10, 18
    § 10382(c)(11) ...................................................................................passim

**Regulations**
2 C.F.R.
    § 200.208(a) ..............................................................................................21
    § 200.208(d)(2) .........................................................................................21
    § 3002.10 ..................................................................................................21

**Constitutional Provisions**
U.S. Const., art. I
    § 1 ..............................................................................................................9
    § 8 ..............................................................................................................9
    § 9 ..............................................................................................................9

U.S. Const. art. II
    § 3 ............................................................................................................10

**Other Authorities**

*Assuring the Security of the State of Qatar*, Executive Order No. 14,353,
    90 Fed. Reg. 48143 (Sep. 29, 2025). ............................................................17

*Ensuring Continued Accountability in Federal Hiring,* Executive Order No. 14356,
    90 Fed. Reg. 48387 (Oct. 15, 2025)) ............................................................17

*Presidential Actions,* White House, https://whitehouse.gov/presidential-actions
    (last visited Nov. 12, 2025)................................................................................7

Public Safety Partnership and Community Policing Act, Pub. L. No. 103-322, Title I,
    Sept. 13, 1994, 108 Stat. 1807 .................................................................2, 22

*Saving TikTok While Protecting National Security*, Executive Order No. 14,352,
    90 Fed. Reg. 47219 (Sep. 25, 2025). ............................................................17

*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the
    Federal Government*, Executive Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025)..........13

*Ending Radical and Wasteful Government DEI Programs and Preferencing,* Executive Order No.
    14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025) ............................................................13

*Improving Oversight of Federal Grantmaking*, Executive Order No. 14,332,
    90 Fed. Reg. 38929 (Aug. 7, 2025) ............................................................13, 14

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 18, 2025 at 10:00 a.m., or as soon thereafter as may be heard before the Honorable Judge James Donato in Courtroom 11, 450 Golden Gate, San Francisco, 94102, of the United States District Court for the Northern District of California, Plaintiffs the City and County of San Francisco, the County of Santa Clara, the City of Tucson, and the City of San Diego will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction against Defendants: United States Department of Justice; Pamela Bondi, in her official capacity; Office of Community Oriented Policing Service; and Cory D. Randolph, in his official capacity.

Plaintiffs respectfully move the Court to enter a preliminary injunction before January 9, 2026, preventing Defendants from imposing, enforcing, or implementing unlawful and unconstitutional grant conditions or any materially similar terms or conditions to any federal funds received or awarded to Plaintiffs.  This Motion presents the following issues to be decided: (i) whether Plaintiffs have shown a likelihood of success on the merits of their claims that Defendants' imposition, enforcement, or implementation of the grant conditions at issue violates the Separation of Powers and spending power in the United States Constitution; (ii) whether Plaintiffs have shown a likelihood of success on the merits of their claims that Defendants' imposition, enforcement, or implementation of the grant conditions at issue violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)(C); (iii) whether Plaintiffs face a likelihood of irreparable harm in the absence of a preliminary injunction; and (iv) whether the balance of equities and public interest favor preliminary injunctive relief.

Plaintiffs' Motion is based on this Notice of Motion and Motion, the accompanying supporting Memorandum of Points and Authorities, the accompanying supporting declarations and exhibits thereto, and the Request for Judicial Notice, as well as the papers, evidence, and records on file in this action, and any other written or oral evidence or argument as may be presented at or before the time this motion is heard by the Court.

Dated: November 14, 2025          Respectfully submitted,

                                  DAVID CHIU
                                  City Attorney
                                  YVONNE R. MERÉ
                                  Chief Deputy City Attorney
                                  MOLLIE M. LEE
                                  Chief of Strategic Advocacy
                                  SARA J. EISENBERG
                                  Chief of Complex and Affirmative Litigation
                                  KARUN A. TILAK
                                  JESSE E. LANIER
                                  Deputy City Attorneys

                            By: /s/ Jesse E. Lanier
                                  JESSE E. LANIER
                                  Deputy City Attorney

                                  Attorneys for Plaintiffs
                                  CITY AND COUNTY OF SAN FRANCISCO

*[additional counsel listed on signature page]*

## MEMORANDUM OF POINTS AND AUTHORITIES
### INTRODUCTION

The ability of local law enforcement agencies to effectively protect and serve their communities is the heart of this dispute. Plaintiffs are municipalities served by law enforcement agencies that rely on federal grants to fulfill their mission. Each has been awarded a federal grant award through a program administered by the Office of Community Oriented Policing, a unit of the Department of Justice. Plaintiffs are counting on these funds to carry out activities critical to their missions—recruiting and hiring police officers to fill chronic gaps in staffing, funding mental health programs to assist officers (including trauma-informed counseling for conditions developed while responding to critical incidents), and training officers in de-escalation techniques and in how to more effectively interact with individuals experiencing mental health crises. Each of these important purposes is specifically endorsed by the federal statute authorizing the grant program.

Yet, before Plaintiffs can accept these grants, they must agree to a number of unlawful and unconstitutional conditions imposed by Defendants. The conditions are so vague and unwieldly as to either be completely indecipherable, entirely unrelated to the purposes of the COPS program, or both. And, to the extent the meaning of these conditions is discernible at all, the conditions are in many cases contradictory. These conditions, for instance, prohibit Plaintiffs from supporting programming that promotes diversity, equity, and inclusion, while simultaneously requiring Plaintiffs to certify that, when hiring police officers, they will prioritize the recruitment of racial and ethnic minorities and women. Another condition purports to require Plaintiffs to comply with "all" applicable executive orders and Presidential memoranda—a term so capacious as to encompass not just the hundreds of executive orders this Administration has issued, but also executive orders and directives that do not yet exist. Defendants also purport to prohibit Plaintiffs from using grant funds to promote "gender ideology" or "projects that provide or advance diversity, equity, inclusion, and accessibility or environmental justice programs, services, or activities."

Put plainly, it is impossible for Plaintiffs to accept these conditions, and Defendants have imposed them without statutory or constitutional authorization, in alarming disregard of bedrock

principles of Separation of Powers doctrine and the spending power, and in contravention of the Administrative Procedure Act.

The risk to Plaintiffs is not hypothetical. Plaintiffs must decide by January 9, 2026 whether to agree to these unlawful conditions or to forfeit sorely needed federal funding they would otherwise be able to accept if the unlawful conditions were not attached. As argued below, Plaintiffs are likely to succeed on the merits of their claims and will be immediately and irreparably harmed if these unlawful conditions are allowed to stand, and the balance of the equities weighs strongly in Plaintiffs' favor. Accordingly, the Court should issue a preliminary injunction before January 9 that bars Defendants from imposing and enforcing the unlawful grant conditions discussed below.

## BACKGROUND

### I.     Congressional Funding for Community Policing

Congress has long recognized the effectiveness of community policing, and, for more than thirty years, has appropriated billions of dollars to strengthen community policing at the state and local levels. In 1994, Congress passed the Public Safety Partnership and Community Policing Act, Pub. L. No. 103-322, Title I, Sept. 13, 1994, 108 Stat. 1807 ("COPS Statute"). The COPS Statute authorizes the disbursement of grants to local law enforcement agencies to "increase police presence, to expand and improve cooperative efforts between law enforcement agencies and members of the community to address crime and disorder problems, and otherwise to enhance public safety." *Id.* at 108 Stat 1808 at § 1701. Congress specifically authorized the Attorney General to administer grants "to hire and train new, additional career law enforcement officers for deployment in community-oriented policing," 34 U.S.C. § 10381(b)(2); to provide specialized training in "verbal de-escalation" and interaction with individuals with mental illnesses, 34 U.S.C. § 10381(b)(19)(20); and "to establish peer mentoring mental health and wellness pilot programs" for local law enforcement agencies, 34 U.S.C. § 10381(b)(24). Recognizing that community policing is most effective when officer ranks are representative of the communities they serve, Congress mandated that "each application for a [COPS grant] . . . *shall* . . . provide assurances that the applicant will, to the extent practicable, seek, recruit, and hire members of racial and ethnic minority groups and women *in order to increase their ranks*

within the sworn positions in the law enforcement agency."  34 U.S.C. § 10382(c)(11) (emphases added).

## II.    COPS Grants Awarded to Plaintiffs in October 2025

Plaintiffs in this case were each awarded grants from one or more of the following programs: the COPS Hiring Program ("Hiring Grant"), the COPS Policing Development Recruitment Microgrant ("Recruitment Microgrant"), the Law Enforcement Mental Health and Wellness Act Grant ("Mental Health Grant"), or the Safer Outcomes: Enhancing De-Escalation and Crisis Response Grant ("Safer Outcomes Grant") (collectively, the "COPS Grants").

The Hiring Grant "provides funding to law enforcement agencies to hire and/or rehire additional career law enforcement officers in an effort to increase their community policing capacity and crime prevention efforts."  Plaintiff's Request for Judicial Review ("RJN") Ex. A (Hiring Grant Notice of Funding Opportunity ("NOFO")) at p. 6.  This Grant covers the salary and fringe benefits of new or re-hired local law enforcement officers for three years.  *Id.* at p. 12.  The COPS Office notified the San Francisco Police Department ("SFPD") it had been awarded a $6.25 million Hiring Grant on October 10, 2025.   Declaration of Sean Frost ("Frost Decl.") Ex. A (SFPD Hiring Grant Award) at p. 1.  The same day, the COPS Office notified the San Diego Police Department ("SDPD") it had been awarded a $750,000 Hiring Grant.  Declaration of Kyle Meaux ("Meaux Decl.") Ex. A (SDPD Hiring Grant Award) at p. 1.

The Recruitment Microgrant is awarded through the CPD Microgrant Program.  This Program seeks to support local law enforcement agencies' efforts to "develop[] and test[] innovative strategies," to establish a knowledge base about effective practices, and to "support[] new, creative approaches to preventing crime and promoting safe communities."  RJN Ex. C (Recruitment Microgrant NOFO) at p. 1.  To that end, this Grant funds pilot projects that advance crime fighting, community engagement, problem solving, or organizational changes.  *Id.* at p. 8.  This includes grants for officer recruitment, hiring, and retention, which the DOJ recognizes as "among the most important elements to advancing community policing" and ensuring that law enforcement agencies "reflect[] the communities they serve."  *Id.* at p. 10.  The Tucson Police Department ("TPD") was notified that it had been awarded a

1  Recruitment Microgrant for $175,000 on October 10, 2025. Declaration of Chad Kasmar ("Kasmar

2  Decl.") Ex. B (TPD Recruitment Microgrant Award) at p. 1.

3      The Mental Health Grant aims "to improve the delivery of and access to mental health and

4  wellness services for law enforcement officers through the implementation of peer support, training,

5  family resources, suicide prevention, and other promising practices for wellness programs." RJN Ex.

6  B (Mental Health Grant NOFO) at p. 1. To do so, this Grant funds mental health and wellness

7  services for law enforcement officers and their families. *Id.* at p. 7. The Santa Clara County Sheriff's

8  Office ("SCCSO") was notified that it had been awarded a Mental Health Grant for $200,000 on

9  October 10, 2025. Declaration of Robert Jonsen ("Jonsen Decl.") Ex. A (SCCSO Mental Health Grant

10  Award) at p. 1.

11      Finally, the Safer Outcomes Grant "promotes safe outcomes during police encounters with

12  persons in crisis" through "quality training on de-escalation and crisis response strategies for law

13  enforcement officers." RJN Ex. D (Safer Outcomes NOFO) at p. 7. To do so, the Grant supports

14  training programs that focus on de-escalation tactics and alternatives to use of force, safe responses to

15  individuals experiencing "mental or behavioral health or suicidal crisis," enhanced encounters "with

16  individuals with disabilities," improved participation in crisis intervention, and effective referrals to

17  community-based services and support. *Id.* pp. 7-8. SDPD was informed it had been awarded a

18  $500,000 Safer Outcomes Grant on October 10, 2025. Meaux Decl. Ex. B (SDPD Safer Outcomes

19  Grant Award) at p. 1.

20      Each of the Plaintiffs has until January 9, 2026[1] to accept or decline the Grant Awards and

21  their attendant conditions—including those conditions Plaintiffs now challenge.

22  **III.    Defendants Imposed Unconstitutional and Unlawful Conditions on Plaintiffs' Awards.**

23      Each of Plaintiffs' Grant Awards contains two types of unconstitutional and unlawful

24  conditions addressed in this Motion: (1) a Discrimination Condition that, read in conjunction with a

25  July 29, 2025 Memorandum by Attorney General Pamela J. Bondi, requires Plaintiffs to operate in a

26

27  _____

    [1] The original deadline for Plaintiffs to accept or reject the Grant Awards was November 24, 2025.
    The DOJ agreed to an extension to January 9, 2026 to accommodate the Court's consideration of the
28  instant motion for preliminary injunction.

way that is contrary to settled antidiscrimination law and contradicts the express requirements of the COPS Statute, and (2) an Executive Order ("EO") Condition requiring compliance with "all" executive orders and Presidential Memoranda.  Further, the NOFOs for each of the COPS Grants purports to prohibit Plaintiffs from using the Grants for various purposes that the Administration opposes (the "Federal Funding Restrictions")—none of which has any connection to the COPS Statute or to providing support for community policing.[2]  Collectively, Plaintiffs refer to the Discrimination Condition, the EO Condition, and the Federal Funding Restrictions as the "Challenged Conditions."

### A.    The Discrimination Condition

The Discrimination Condition (which appears as Condition 3 of the Grant Awards) requires Plaintiffs to "certif[y]" that they do "not operate any program (including any such programs having components relating to diversity, equity, and inclusion) that violates any applicable Federal civil rights or antidiscrimination laws."  Frost Decl. Ex. A at pp. 5-6; Kasmar Decl. Ex. B at p. 6; Jonsen Decl. Ex. A at p. 6; Meaux Decl. Ex. A at pp. 5-6; Ex. B at p. 6.  Plaintiffs have regularly certified compliance with federal civil rights and antidiscrimination law as a condition of federal funding in the past.  But, in doing so, Plaintiffs were certifying compliance with antidiscrimination law as enacted by Congress and interpreted by the courts.  As explained below, the Executive Branch—including but not limited to Defendants—has now issued guidance that turns antidiscrimination law on its head, thereby casting serious doubt as to what Plaintiffs are being asked to certify through the Discrimination Condition.

On July 29, 2025, after each of the Plaintiffs had submitted their grant applications, Attorney General Pamela Bondi issued a memorandum titled *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination* (the "July Bondi Memo" or the "Memo").  *See* RJN Ex. E (July Bondi Memo).  The Memo purports to "*clarif[y]* the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ('DEI') programs."  *Id.* at p. 1 (emphasis added).  Yet, instead of providing

---

[2] In the NOFOs for SCCSO's Mental Health Grant, TPD's Recruitment Microgrant, and SDPD's Safer Outcomes Grant, this section is called "Allowable and Unallowable Costs."  The "Allowable and Unallowable Costs" sections contain the same objectionable provisions as the Hiring Grant NOFOs' "Federal Funding Restrictions."  For ease of reference, Plaintiffs refer to these provisions collectively as the "Federal Funding Restrictions."

clarification, the Memo creates confusion by asserting that practices and policies that have long been understood to be lawful—including training and educational programs, scholarships, and hiring policies designed to support historically marginalized groups—are unlawful and discriminatory. *See id.* at pp. 4-8 (classifying as unlawful the "prioritiz[ation] [of] candidates from 'underrepresented groups' for admission, hiring, or promotion"; and policies that "set[] racial benchmarks or mandate[] demographic representation in candidate pools, such as requiring a certain percentage of finalists to be from 'diverse' backgrounds.").

Moreover, the Discrimination Condition and the July Bondi Memo (and other of Defendants' actions) also throw into doubt the meaning of a series of other related Grant Award conditions that require recipients to comply with various civil rights and antidiscrimination laws including the COPS Statute itself (collectively the "Civil Rights Conditions"[3]). Frost Decl. Ex. A at pp. 6-7, 11; Kasmar Decl. Ex. B at pp. 6-7, 11; Jonsen Decl. Ex. A at pp. 7-8, 11; Meaux Decl. Ex. A at pp. 6-7, 11; Ex. B at pp. 6-7, 11.

## B. The False Claims Act

Compounding Plaintiffs' predicament is a statutory sword of Damocles. The Grant Awards require that each Plaintiff agree that compliance with "all applicable Federal civil rights and antidiscrimination laws" is "material" for the purposes of the False Claims Act ("FCA"). Frost Decl. Ex. A at p. 5; Kasmar Decl. Ex. B at p. 6; Jonsen Decl. Ex. A at p. 6; Meaux Decl. Ex. A at pp. 5–6; Ex. B at p. 6. The FCA imposes liability on "any person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Each violation of the FCA is punishable by *mandatory treble damages* plus civil penalties. 31 U.S.C. §

---

[3] The Civil Rights Conditions are numbers 8, 9, and 15. Condition 8 requires Plaintiffs to comply with, *inter alia*, the COPS Statute. Conditions 8, 9, and 15 also incorporate various other documents, including the Award Owners' Manuals and DOJ Financial Guide, which require compliance with civil rights and antidiscrimination law. *See* RJN Ex. G (DOJ Financial Guide) at p. 5; RJN Ex. H (COPS Hiring Program Award Owners' Manual) at pp. 8-9, 62; RJN Ex. I (2024 LEMHWA Program Award Owners' Manual) at pp. 22-23, 62; RJN Ex. J (2024 COPS Office Community Policing Development Program Award Owner's Manual) at pp. 22-23, 62; RJN Ex. K (2024 COPS Safer Outcome Grant Award Owner's Manual) at pp. 23-24, 63.

3729(a); *see also* 28 C.F.R. § 85.5(a). Defendants' attempt to force Plaintiffs to concede materiality puts Plaintiffs in an impossible bind—with potentially astronomical monetary consequences.

There can be no doubt the DOJ intends to use certifications of "materiality" as a cudgel. On May 19, 2025, the DOJ formed a task force to target grantees that sign such certifications. The DOJ has also described potential liability under the FCA as a "primary weapon" it will deploy to enforce its proscription on DEI programs and has "strongly encourag[ed]" private parties to bring civil suits against grant recipients. *See* RJN Ex. F (Civil Rights Fraud Initiative Memo), at pp. 1, 2. The gaps and contradictions in the Challenged Conditions, therefore, are primed for Defendants' exploitation.

### C.    The EO Condition

The EO Condition (Condition 4 in the Grant Awards) requires Plaintiffs to "comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President." Frost Decl. Ex. A at p. 6; Kasmar Decl. Ex. B at p. 6; Jonsen Decl. Ex. A at p. 6; Meaux Decl. Ex. A at p. 6; Ex. B at p. 6. This Condition does not define what counts as "applicable" and has no meaningful limiting principle. It could be read to require Plaintiffs to comply not only with "all" existing EOs, regardless of whether they actually relate to COPS Grants, but also with EOs yet to be issued, EOs that have been enjoined as unlawful or unconstitutional, EOs with vague or indiscernible terms, or EOs that run contrary to the COPS Statute. Finally, the EO Condition requires compliance with "Presidential Memoranda," an undefined term that may or may not refer to directives posted on the White House's website under a similarly named drop-down menu.[4]

### D.    Federal Funding Restrictions

The NOFOs for each of the four types of COPS Grants at issue here include Federal Funding Restrictions. The Federal Funding Restrictions purport to prohibit the use of awarded grants for a hodgepodge of purposes including: (1) directly or indirectly supporting educational institutions "[requiring] students to have received a COVID-19 vaccination to attend any in-person education program," (2) promoting "gender ideology," (3) supporting "projects that provide or advance diversity, equity, inclusion, and accessibility or environmental justice programs, services, or activities," and (4)

---

[4] *See Presidential Actions,* White House, https://whitehouse.gov/presidential-actions (last visited Nov. 12, 2025).

"fail[ing] to protect public monuments, memorials, and statues." *See* RJN Ex. A at p. 15; RJN Ex. B at p. 15; RJN Ex. C at p. 22; RJN Ex. D at p. 20. Defendants have provided no statutory authority for these Restrictions, and they have no basis in the COPS Statute or any connection to the primary purpose of the funding, which is to support community policing. Moreover, many key terms in these Restrictions, discussed further below, are undefined and indecipherable.

At bottom, the Challenged Conditions produce utter confusion. To the extent Plaintiffs are able to decipher their meaning, Plaintiffs confront contradictions that make it impossible for them to accept the Grants as constituted. The larger, more fundamental problem, however, is that it is impossible for Plaintiffs to ascertain what the Challenged Conditions require of them.

## LEGAL STANDARD

A preliminary injunction is warranted where the moving party establishes (i) it is likely to succeed on the merits; (ii) irreparable harm is likely in the absence of preliminary relief; (iii) the balance of equities tips in the movant's favor; and (iv) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under the Ninth Circuit's "sliding scale approach," a plaintiff may obtain an injunction if it shows "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff," *if* it shows that "the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (cleaned up). Here, all factors strongly favor Plaintiffs.

## ARGUMENT

### I.    Plaintiffs Are Likely to Succeed on the Merits

There is no constitutional or statutory authority for Defendants to impose the Discrimination Condition, the EO Condition, or the Federal Funding Restrictions on the COPS Grants Plaintiffs were awarded. For the reasons argued below, Plaintiffs claims are likely to succeed on the merits.[5]

---

[5] In the Ninth Circuit alone, district courts have routinely found that plaintiffs are likely to succeed on the merits of their challenges to similar conditions. *See, e.g., See Housing Authority of City & Cnty. of San Francisco v. Turner*, No. 25-CV-08859-JST, 2025 WL 2961794, at *2-3 (N.D. Cal. Oct. 18, 2025); *Martin Luther King, Jr. Cnty. v. Turner*, 785 F. Supp. 3d 863, 884-86 (W.D. Wash. 2025); *Martin Luther King, Jr. Cnty. v. Turner*, No. 2:25-CV-814, 2025 WL 2322763, at *11-15 (W.D. Wash. Aug. 12, 2025); *City & Cnty. of San Francisco v. Trump*, 779 F. Supp. 3d 1077 (N.D. Cal. 2025), *opinion clarified*, 782 F. Supp. 3d 830 (N.D. Cal. 2025); *City & Cnty. of San Francisco v.*

**A.    Plaintiffs Have Standing to Contest the Challenged Conditions.**

At the outset, Plaintiffs have standing because they face concrete, particularized, and imminent injuries as a direct result of the Challenged Conditions.  To establish standing, a plaintiff must show it has suffered or will suffer an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).  Courts have repeatedly recognized that "[a] loss of funds promised under federal law satisfies Article III's standing requirement."  *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1235 (9th Cir. 2018) (cleaned up); *see also Dep't of Commerce v. New York*, 588 U.S. 752, 767 (2019) ("[L]os[ing] out on federal funds . . . is a sufficiently concrete and imminent injury to satisfy Article III . . . .").  Here, each Plaintiff has been awarded a COPS Grant to support the critical public safety work of Plaintiffs' law enforcement agencies, and each grant is subject to the Challenged Conditions.  *See* Background Part II, *supra*.  Each Plaintiff therefore faces a choice between acquiescing to the unlawful, contradictory, and ambiguous Challenged Conditions—and accepting the risk of significant legal liability attached to them—or suffering the loss of critical federal funding.  This imminent harm is directly traceable to the Challenged Conditions and can be redressed through injunctive relief prohibiting Defendants from imposing or enforcing the Challenged Conditions against Plaintiffs.   Thus, Plaintiffs plainly have standing.

**B.    The Challenged Conditions Are Unconstitutional.**

**1.    The Challenged Conditions Violate the Separation of Powers.**

The Constitution vests Congress, and not the Executive Branch, with legislative powers, *see* U.S. Const., art. I, § 1, the spending power, *see id.* art. I, § 8, cl. 1, and the appropriations power, *see id.* art. I, § 9, cl. 7.

---

*Trump*, No. 25-CV-01350-WHO, 2025 WL 1738675, at *1-3 (N.D. Cal. June 23, 2025); *City of Fresno v. Turner ("Fresno II")*, No. 25-CV-07070-RS, 2025 WL 2721390, at *12 (N.D. Cal. Sept. 23, 2025); *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1211 (N.D. Cal. 2025); *City & Cnty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 941-43 (N.D. Cal. 2019), *vacated on other grounds by City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078 (9th Cir. 2022); *City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 944–48 (N.D. Cal. 2018), *vacated on other grounds by City & Cnty. of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020).

The President does not make laws.  *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952).  His role is only to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.  Likewise, the Executive Branch "has no power to act . . . unless and until Congress confers power upon it."  *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).  Concomitantly, the Executive Branch has no authority under the Constitution to unilaterally place conditions on the receipt of federal funds; the authority to do so comes only from Congress.  *See City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019) (concluding that agency grant conditions imposed without statutory authority were "*ultra vires*"); *see also City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297 (2013) (recognizing agencies are "charged with administering congressional statutes," which means that "[b]oth their power to act and how they are to act is authoritatively prescribed by Congress").

In the COPS Statute, Congress enumerated the specific purposes for which grants may be disbursed, *see* 34 U.S.C. § 10381(a), and listed assurances that applicants must provide, *see id.* § 10382(c).  Nowhere in this prescriptive statutory scheme did Congress authorize Defendants to impose the Challenged Conditions or any materially similar requirements.  Specifically, there is no statutory authority to prohibit grantees from operating any DEI programs (as at least the Discrimination Condition and Federal Funding Restrictions purport to do).  To the contrary, the COPS Statute requires applicants for COPS Grants to prioritize the hiring of racial and ethnic minorities and women in order to increase their representation in the ranks of sworn officers.  34 U.S.C. § 10382(c)(11); *see In re Aiken County*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.) ("[T]he Executive must abide by statutory mandates and prohibitions.").  And, as discussed in Argument Part I.B.2, *infra*, the Discrimination Condition also goes well beyond what antidiscrimination law, as written by Congress and interpreted by the courts, requires.

Attempting to prohibit DEI is not the only area in which Defendants have marched beyond their congressional authorization.  The Federal Funding Restrictions, for instance, contain additional supposed prohibitions on how grantees may spend grant funds.  These prohibitions, too, are not authorized by Congress.  Specifically, Congress did not authorize Defendants to prohibit grantees from spending grant money to support educational institutions that impose COVID-19 vaccine requirements, to promote "gender ideology," to support "environmental justice," or to prohibit funding

from going to agencies that, in the Administration's view, do not do enough to protect public monuments.  RJN Ex. A at p. 15; RJN Ex. B at p. 22; RJN Ex. C at p. 15; RJN Ex. D at p. 20.  These conditions are vague and ambiguous for the reasons discussed in Part I.B.2, *infra*.  But, to the extent they are decipherable they constrain Plaintiffs' ability to use COPS Grant funding for purposes authorized by Congress—including, for example, to recruit and hire officers from educational institutions that require COVID-19 vaccines or to provide mental health, wellness, and accessibility services for officers experiencing gender dysphoria.

In addition, through the EO Condition, Defendants and by extension the President attempt to circumvent Congress entirely.  "[A]n executive order is not 'law,' within the meaning of the Constitution."  *California v. Env't Prot. Agency*, 72 F.4th 308, 318 (D.C. Cir. 2023).  (Nor, for that matter, is a "Presidential Memorandum.")  As instruments of governance, EOs are meant to express general policy preferences of the Administration and to provide direction to executive branch agencies.  EOs cannot and do not, by their own terms, impose requirements or restrictions on grants that are inconsistent with congressional appropriations.  *See City of Fresno v. Turner ("Fresno I")*, No. 25-cv-07070-RS, 2025 WL 2469330, at *6 (N.D. Cal. Aug. 27, 2025).

The President has issued more than 200 EOs and dozens of Presidential Memoranda in his second term alone.  The subject matter of these directives ranges widely—from the economy, education, and energy to national security, medical policy, and federal government operations, among other topics.  The inclusion of the EO Condition in the Grant Awards is an attempt to co-opt Plaintiffs into implementing the *President's* policy objectives, not those of Congress.  *See W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 724 (2022) (holding courts must be skeptical of "agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted").  Congress did not authorize the Executive Branch to legislate through EOs, or to impose the President's policy priorities on this array of subjects as conditions to receive federal funds for community policing.  *See Martin Luther King, Jr. Cnty.*, 785 F. Supp. 3d at 886-87 (holding "[s]ubstantive conditions implicating controversial policy matters that are unrelated to the authorizing statute . . . are simply not 'of the same kind' as conditions that require recipients to monitor and report the progress of their program").

1   Faced with similar overreach by other executive agencies, federal courts have not hesitated to

2   enjoin similar grant conditions after finding that plaintiffs were likely to succeed on the merits of their

3   challenges.  The same logic applies here, where Plaintiffs are likely to succeed on the merits of this

4   claim.

5   **2.    The Challenged Conditions Violate Spending Power Constraints.**

6   The Challenged Conditions also exceed constitutional limits on the spending power and are

7   unlawful for that separate reason.

8   Under the spending power, grant conditions generally must be (1) set forth unambiguously,

9   (2) established before a recipient enters into the grant agreement with the federal government, and

10  (3) related to the subject matter of the grant program.  *See S. Dakota v. Dole*, 483 U.S. 203, 207

11  (1987); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).  Defendants'

12  Challenged Conditions fail the first and third principles. The Conditions are so vague, ambiguous, and

13  open-ended that it is impossible for Plaintiffs to know the full range of activities Defendants might

14  consider prohibited.  And, indeed, the Conditions have no nexus to the federal interest of supporting

15  community policing efforts by local law enforcement agencies.

16  **a.    The Challenged Conditions Are Ambiguous.**

17  Under the spending power, grant conditions must be clear and unambiguous.  *See Pennhurst*,

18  451 U.S. at 17 (1981) ("[I]f Congress intends to impose a condition on the grant of federal moneys, it

19  must do so unambiguously[.]").  A condition is unambiguous when a grantee "would clearly

20  understand . . . the obligation" imposed.  *Arlington Cent.  Sch. Bd. Of Educ. v. Murphy*, 548 U.S. 291,

21  296 (2006).  Local government entities "cannot knowingly accept conditions of which they are

22  unaware or which they are unable to ascertain."  *Id.* (cleaned up).

23  The Challenged Conditions are anything but clear and unambiguous.

24  As described above, the Discrimination Condition requires Plaintiffs to certify they "[d]o not

25  operate" "programs" with DEI "components" that violate applicable antidiscrimination laws.  Frost

26  Decl. Ex. A at p. 6; Kasmar Decl. Ex. B at p. 6; Jonsen Decl. Ex. A at p. 6; Meaux Decl. Ex. A at pp.

27  5–6; Ex. B at p. 6.  In light of Defendants' and the President's unsupported pronouncements that

28

programs that encourage diversity, equity, and inclusion violate antidiscrimination law, the Discrimination Condition is fatally ambiguous and leaves Plaintiffs with contradictory obligations.

Further, as already noted, the July Bondi Memo adds additional confusion by suggesting— contrary to decades of policy, practice, and court rulings—that hiring practices that promote the hiring of ethnic and racial minorities and women are *illegal*. For example, the Memo asserts that even the use of "[f]acially neutral criteria (e.g., 'cultural competence,' 'lived experience,' geographic targeting) that function as proxies for protected characteristics violate federal law if designed or applied with the intention of advantaging or disadvantaging individuals based on protected characteristics." RJN Ex. E at p. 2. That assertion is inconsistent with Supreme Court precedent that has "consistently declined to find constitutionally suspect" the adoption of race-neutral criteria—even where the decision-maker was "well aware" the race-neutral criteria "correlated with race." *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 885–86 (4th Cir. 2023) (cleaned up) (*citing Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015)).[6] The Administration has also advanced its policy goal of attacking DEI through various EOs that reinterpret antidiscrimination law. For instance, the President's Executive Order entitled *Ending Illegal Discrimination and Restoring Merit-Based Opportunity* openly maligns DEI and related policies. Executive Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025) (the "Anti-DEI EO") ("Illegal DEI and DEIA policies not only violate the text and spirit of our longstanding Federal civil-rights laws, they also undermine our national unity. . . . Hardworking Americans who deserve a shot at the American Dream should not be stigmatized, demeaned, or shut out of opportunities because of their race or sex."). This is but one example.[7]

---

[6] The July Bondi Memo also asserts that funding recipients "should affirm sex-based boundaries rooted in biological differences," RJN Ex. E at p. 6, contrary to Supreme Court precedent applying Title VII sex-based protections to transgender people, *see Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 662, 670 (2020). Indeed, "athletic competitions" and restrooms are the only areas in which the Memo appears to conclude that protected characteristics may properly be taken into account to make any sort of distinction in treatment. RJN Ex. E at p. 6. This has the perverse effect of accomplishing exactly what the Memo purports to discourage—treating the biological characteristic of being female as a trait requiring special treatment.

[7] *See, e.g.*, *Ending Radical and Wasteful Government DEI Programs and Preferencing,* Executive Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025); *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, Executive Order No. 14,168,

This inconsistency injects profound ambiguity into the meaning and effect of the Discrimination Condition—and, by extension, the Civil Rights Conditions—in two ways. First, when Plaintiffs certify that they are compliant with antidiscrimination law and that such compliance is material under the FCA, they do not know whether they are certifying to compliance with those laws as written by Congress and long interpreted by the courts—or to the Executive Branch's purported guidance. Second, to the extent the Discrimination Condition incorporates the view of DEI policies espoused in the July Bondi Memo and in the Administration's other pronouncements, it contradicts other conditions and assurances in the Grant Awards—including specifically the requirement to comply with the COPS Statute. Plaintiffs therefore have no way of understanding what obligations they are expected to follow.

The EO Condition itself is likewise ambiguous. As noted above, this Condition could be read to require Plaintiffs to comply not only with existing EOs having nothing to do with COPS Grants, but also with EOs enjoined as unlawful or unconstitutional, EOs that run contrary to the COPS Statute (such as the Anti-DEI EO), and EOs yet to be issued. Even if the Executive held the spending power, the specter of being required to comply with future EOs would be in tension with the spending power's requirement that conditions must be unambiguous *before* a recipient enters into a grant agreement with the federal government. *Pennhurst*, 451 U.S. at 25 (clarifying that the spending power does not include the ability to impose "post acceptance or 'retroactive' conditions"). While the EO Condition purports to incorporate only "applicable" EOs and Presidential Memoranda, it provides no criteria as to what is considered "applicable," leaving that determination entirely to Defendants' subjective discretion. Plaintiffs therefore have no guidance as to what EOs are currently incorporated into the Grants, much less how they are to determine which future EOs and directives will be applied against them.

What's more, in many cases the language of the EOs *themselves* is vague. *See Fresno I*, 2025 WL 2469330, at *6. Take, for instance, the EO *Improving Oversight of Federal Grantmaking,* Executive Order No. 14,332, 90 Fed. Reg. 38929 (Aug. 7, 2025) ("Grantmaking EO"). This EO,

---

90 Fed. Reg. 8615 (Jan. 20, 2025); *Improving Oversight of Federal Grantmaking*, Executive Order No. 14,332, 90 Fed. Reg. 38929 (Aug. 7, 2025).

which through the EO Condition could apply to the Plaintiffs' Grants, proclaims that discretionary grant awards must "demonstrably advance the President's policy priorities" and "shall not be used to fund, promote, encourage, subsidize, or facilitate" "racial preferences or other forms of racial discrimination by the grant recipient," "denial by the grant recipient of the sex binary in humans or the notion that sex is a chosen or mutable characteristic," or other "anti-American values." *Id.* The EO is silent on what a "policy priorit[y]" is or what "anti-American values" are, and it is not clear what compliance with these EOs—or any of the others—requires of Plaintiffs. *See Fresno I,* 2025 WL 2469330, at *6 (holding an EO Condition vague in part because the Grantmaking EO and Anti-DEI EO, among other orders, "use[d] vague language"); *see also San Francisco Unified School District v. AmeriCorps ("AmeriCorps"),* 789 F. Supp 3d 716, 745-49 (N.D. Cal. 2025) (finding grant conditions ambiguous because incorporated provisions of EOs, including the Anti-DEI EO, were "highly ambiguous.").[8]

Finally, the Federal Funding Restrictions are also ambiguous. The prohibition on using funds for "diversity, equity, inclusion, and accessibility," like components of the other Challenged Conditions, discussed above, is directly contrary to the COPS Statute, which requires applicants for grants to assure they will "seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks within the sworn positions in the law enforcement agency." 34 U.S.C. § 10382(c)(11).

The other three prohibitions in the Federal Funding Restrictions are likewise inscrutable. The requirement that grant funds not be used "to promote gender ideology" does not define what "promote" or "gender ideology" mean. A prohibition on the promotion of "gender ideology" could be interpreted to bar Plaintiffs from addressing the needs of officers experiencing gender dysphoria, but it could also just as easily be interpreted to prohibit activities that enforce "traditional" notions of gender roles. It could even be read to prohibit Plaintiffs from making public statements respecting individual gender identities. Similarly, it is entirely unclear what it would mean to "directly or indirectly"

---

[8] In addition to each of these variables that confound any attempt at clarity, there is no way to predict whether the President will issue additional EOs or directives that the Administration will contend are "Presidential Memoranda," much less how frequently or when he will do so, or the subject matters or scope of such materials.

"support or subsidize" an educational institution that requires students to be vaccinated for COVID-19. And, finally, it is a mystery what it means to "have failed to protect" "public monuments, memorials, and statues" from "destruction or vandalism." Does this apply to public art that has been relocated against an artist's wishes? To unsuccessful efforts to prevent graffiti artists from tagging? What about to a local government's inability to pay for restoration work relating to weather-related damage? Plaintiffs can only guess at what is prohibited by the Federal Funding Restrictions.

In sum, the Challenged Conditions are subject to "various interpretations," none of which are "self-evident." *See AmeriCorps*, 789 F. Supp. 3d at 748-49. Ultimately, "[b]ecause the terms [of each of the Challenged Conditions] are so broad and involve inherent value judgments, they leave regulated persons without proper notice of what conduct they must certify they are not engaging in, and they empower the government to enforce the [c]ertification [r]equirement arbitrarily." *See Am. Fed'n of Tchrs. v. Dep't of Educ.*, No. CV SAG-25-628, 2025 WL 2374697, at *31 (D. Md. Aug. 14, 2025). Courts have repeatedly held that ambiguous conditions—including conditions materially similar to the Challenged Conditions—violate the spending power. *See, e.g.*, *Fresno I*, 2025 WL 2469330, at *5; *Chicago Women in Trades v. Trump*, 773 F. Supp. 3d 592, 603 (N.D. Ill.2025) (recognizing the meaning of DEI conditions "is left entirely to the imagination"). There is no reason to reach a different result here.

### b. The Challenged Conditions Are Unrelated to the Purpose of the Grants.

The Challenged Conditions bear no relationship to the purpose of the COPS Grants awarded Plaintiffs. For this distinct reason as well, there is a likelihood of success on the merits.

Conditions imposed on federal grants must be "reasonably related to the purpose of the expenditure." *New York v. United States*, 505 U.S. 144, 172 (1992) (citation omitted); *see also Dole*, 483 U.S. at 207, 209 ("[C]onditions on federal grants" must be "reasonably calculated to address th[e] particular . . . purpose . . . for which the funds are expended."). This requirement is crucial: Without "some relationship" between spending conditions and "the purpose of the federal spending," "the spending power could render academic the Constitution's other grants and limits of federal authority." *New York*, 505 U.S. at 167; *see also City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d at 960 (holding conditions on Byrne JAG funding regarding immigration enforcement failed nexus test

because conditions lacked "any relationship to (and in fact interfere[d] with) the criminal justice priorities . . . [of] the Byrne JAG statute").

The Challenged Conditions do precisely that, for there is no relationship between any of the Challenged Conditions and the purpose of the COPS Grants awarded to Plaintiffs.  As expressly noted by Congress, COPS Grants are intended to support community policing (and in turn public safety) by bolstering local law enforcement's ability to recruit, hire, retain, and support sworn officers.  The COPS Statute specifies that COPS Grants be made for specifically enumerated purposes, including hiring, providing specialized training in de-escalation and for interactions with individuals with mental illnesses, and supporting officers with mental health resources.  34 U.S.C. § 10381(b)(2), (18)-(19), (24).

The EO Condition and the Federal Funding Restrictions, to the extent their terms are decipherable, impose a host of restrictions having nothing whatever to do with increasing resources for community policing along these or other statutorily enumerated parameters.  An educational institution's vaccine requirements, a city's policy concerning the upkeep of statues and monuments, and, to reference a few recent EOs, federal employers' hiring practices,[9] the degree of Qatar's political stability,[10] and preserving Americans' access to TikTok[11] have nothing at all to do with a law enforcement office's ability to recruit, hire, retain, or support sworn officers.

Further, to the extent the terms of the Discrimination Condition are decipherable, they seek to impose restrictions not just *unrelated* to the purpose of the COPS Grants but *antithetical* to an animating goal of the COPS Statute—to increase the number of racial and ethnic minorities and women in the officer ranks.  34 U.S.C. § 10382(c)(11).  The COPS Statute contains an explicit Congressional DEI mandate; this mandate is not just directed at increasing diversity and access amongst a law enforcement agency's sworn officer employees, but also at ensuring that the make-up

---

[9] *See Ensuring Continued Accountability in Federal Hiring,* Executive Order No. 14,356, 90 Fed. Reg. 48387 (Oct. 15, 2025).

[10] *See Assuring the Security of the State of Qatar,* Executive Order No. 14,353, 90 Fed. Reg. 48143 (Sep. 29, 2025).

[11] *See Saving TikTok While Protecting National Security,* Executive Order No. 14,352, 90 Fed. Reg. 47219 (Sep. 25, 2025).

of a law enforcement agency is more closely aligned with the communities that it serves.  Requiring

Plaintiffs to abandon their own DEI programs, as the Discrimination Condition does, could hardly be

at greater odds with the purpose of the COPS Grants.

None of the Challenged Conditions are "reasonably calculated" to enhance community

policing.  *See Dole*, 483 U.S. at 207, 209 ("[C]onditions on federal grants" must be "reasonably

calculated to address th[e] particular . . . purpose . . . for which the funds are expended."). Plaintiffs are

therefore likely to succeed on the merits of this argument as well.

### C.    The Challenged Conditions Violate the APA.

In addition to violating the Separation of Powers and the spending power of the Constitution,

the Challenged Conditions also violate the APA.  The APA requires courts to "hold unlawful and set

aside agency action" that is "arbitrary" and "capricious," "not in accordance with law," "contrary to

constitutional right," "in excess of statutory jurisdiction," or "without observance of procedure

required by law." 5 U.S.C. § 706(2).  Defendants' imposition of the Challenged Conditions violates

each of these requirements.[12]

### 1.    The Challenged Conditions Are Contrary to the Constitution and in Excess of Statutory Jurisdiction.

Under the APA, a court may set aside agency action that is "contrary to constitutional right,

power, privilege, or immunity" or "in excess of statutory jurisdiction, authority, or limitations, or short

of statutory right." 5 U.S.C. § 701(a)(2)(B), (C).  As discussed in Argument Part II.B, *supra*, the

Challenged Conditions are unconstitutional and thus may be enjoined under section 706(2)(B).

---

[12] Defendants' actions are subject to APA review.  Defendants' inclusion of the Challenged Conditions marks the "consummation of the agency's decisionmaking process" such that accessing the funds requires adherence to these conditions. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  The inclusion of these conditions is an action "by which rights or obligations have been determined," and "from which legal consequences will flow." *Id.*  Plaintiffs must either accept the Challenged Conditions— and open themselves up to potentially significant legal consequences based on unlawful, contradictory, and ambiguous terms—or surrender these much-needed federal funds.

The imposition of the Challenged Conditions is also not an issue committed to agency discretion by law.  *See* 5 U.S.C. § 701(a)(2).  This narrow exception only applies in those "rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Commerce*, 588 U.S. at 772.  Here, the COPS Statute clearly provides a meaningful standard against which to judge the agency's exercise of discretion.  34 U.S.C. §§ 10381(b), 10382(c).

In addition, the Conditions may be enjoined under section 706(2)(C) because they do not derive from the COPS Statute or any other statutory authority. As discussed above, none of the Challenged Conditions has any basis in the COPS Statute, and indeed, many components of the Challenged Conditions are antithetical to the Congressional purposes reflected in the statute. *See* Argument Part II.B, *supra*. Thus, in incorporating these Challenged Conditions into Plaintiffs' COPS Grant Awards, Defendants have acted in excess of their statutory jurisdiction. Plaintiffs are likely to succeed on the merits of these arguments.

### 2.    The Challenged Conditions Are Arbitrary and Capricious

Agency action is arbitrary and capricious where the action is not "reasonable" or "reasonably explained." *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024) (cleaned up). An agency must offer "a satisfactory explanation for its action" and can neither "rel[y] on factors which Congress has not intended it to consider" nor simply ignore "an important aspect of the problem[.]" *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.* ("*State Farm*"), 463 U.S. 29, 43 (1983). While agencies are free to change their existing policies, they must "display awareness that they are doing so, provide "good reasons for the new policy," and demonstrate that they have taken account of "reliance interests" engendered by the prior policy. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Defendants' imposition of the Challenged Conditions is arbitrary and capricious in four principal ways. First, Defendants failed to consider an important aspect of the problem they purport to address because they applied the Challenged Conditions to the COPS Grants without "look[ing] to" or "discuss[ing]" statutory "requirements," *see Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020), and "relied on factors which Congress has not intended [them] to consider," *see State Farm*, 463 U.S. at 43. As discussed above, the Challenged Conditions have no basis in, and in many cases are contrary to, the congressional intent and enumerated purposes reflected in the COPS Statute. In imposing the Challenged Conditions, Defendants did not even acknowledge the language of the COPS Statute, let alone discuss or justify how the Conditions relate to the purpose of COPS Grants. *See Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996) (stating that whether an agency has overlooked an important aspect of the problem—and

thereby acted arbitrarily and capriciously—"turns on what a relevant substantive statute makes important"). Similarly, by tying grant funding to compliance with Defendants' misinterpretation of antidiscrimination law and adherence to the President's political agenda as articulated in EOs, Defendants "relied on factors which Congress has not intended it to consider." *See State Farm*, 463 U.S. at 43; *see also Fresno II*, 2025 WL 2721390, at *8 (indicating that actions furthering presidential directive are not exempt from arbitrary-and-capricious review (collecting cases)). This is particularly evident where Defendants have tied funding to prohibitions directly at odds with the COPS Statute.

Second, the Challenged Conditions "reflect changes in agency position which require . . . an explanation of reasoning." *See Fresno II*, 2025 WL 2721390, at *8. The Challenged Conditions effect a radical change in the conditions applicable to COPS Grants. As a court in this district recently found, the Discrimination Condition's references to anti-discrimination law "act as announcements of policies" and make clear that the Executive Branch's interpretation of federal law "is undergoing significant change." *Id.* The EO Condition and Federal Funding Restrictions likewise purport to incorporate a number of the Administration's policy preferences as part of COPS Grants for the first time. Yet Defendants fail to acknowledge this change of position and offered no explanation—let alone a reasoned one—for these changes.

Third, and relatedly, agencies "must consider the 'alternatives' that are 'within the ambit of existing policy,'" consider "whether there are reliance interests, determine whether they are significant, and weigh any such interests against competing policy concerns." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30, 33 (2020) (cleaned up). Defendants have offered no consideration of these factors. In particular, Defendants have failed to account for Plaintiffs' reliance on COPS Grants to serve critical public safety needs. Nor have Defendants considered the deleterious consequences to community policing and officer wellness that will result from imposing conditions that are ambiguous and inconsistent with the purpose of COPS Grants—and which Plaintiffs cannot accept. "The failure [of Defendants] to even consider reasons to not impose the contested conditions highlights the arbitrariness of the process." *Illinois v. Fed. Emergency Mgmt. Agency*, No. CV 25-206 WES, 2025 WL 2716277, at *12 (D.R.I. Sept. 24, 2025).

Fourth, Defendants have failed to observe procedures required by law. *See* 5 U.S.C. § 706(2)(D). Defendants are obligated to follow the Office of Management and Budget Guidance in Title 2 of the Code of Federal Regulations, Part 200. 2 C.F.R. § 3002.10. As to "[s]pecific conditions," "[f]ederal agencies are responsible for ensuring that specific Federal award conditions . . . are consistent with the program design" and enumerate specific conditions that may be included. 2 C.F.R. § 200.208(a). Regulations also require Defendants to clarify "[t]he reason why the specific condition(s) is being imposed" "*[p]rior* to imposing specific conditions." 2 C.F.R. § 200.208(d)(2) (emphasis added). But, as explained above, no reason has been provided (there is likely none) that the Challenged Conditions comply with congressional authority or the purpose of COPS Grants. Given the apparent lack of reasoned decision making, Plaintiffs are likely to succeed on their claim that Defendants' imposition of the Challenged Conditions is arbitrary and capricious.

**II.    Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief.**

The Challenged Conditions force Plaintiffs to choose between two equally untenable options: acceding to unlawful and unascertainable conditions, or foregoing grant awards that fund essential public safety projects. This posture itself constitutes irreparable harm, as a plaintiff may suffer constitutional injury from being forced into a "Hobson's choice" between accepting unconstitutional conditions and losing out on congressionally appropriated funding. *See, e.g., Hecox v. Little*, 104 F.4th 1061, 1088 (9th Cir. 2024), as amended (June 14, 2024), cert. granted, 145 S. Ct. 2871 (2025); *see also Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–59 (9th Cir. 2009).

Accepting the Challenged Conditions is impossible. Fundamentally, Plaintiffs cannot agree to abide by constraints that they cannot understand, that are contradictory, or, as particular to the EO Condition, *that do not yet exist*. Accepting the Challenged Conditions would in some instances require Plaintiffs to act contrary to settled law or to flout the specific requirements of the COPS Statute, *see, e.g.*, 34 U.S.C. § 10382(c)(11), in order to meet the Trump Administration's novel and unsupported view of civil rights and antidiscrimination law.

The ambiguities in the Challenged Conditions also create another irreparable harm: immediate budgetary uncertainty for Plaintiffs. Plaintiffs must make budgetary decisions—including whether to

fund projects supported by their COPS Grants alongside their myriad other public safety functions—
while facing the looming prospect that Defendants can, at any time, withdraw funding based on
Plaintiffs' perceived failure to abide by conditions that are entirely unascertainable or based on the
same perceived failure pursue exorbitant monetary damages under the FCA.  *See* Frost Decl. ¶¶ 15–
17; Kasmar Decl. ¶¶ 18–19; Jonsen Decl. ¶¶ 21–22; Meaux Decl. ¶¶ 7–8, 13–15; *see also Fresno II*,
2025 WL 2721390, at *19 (finding irreparable harm where plaintiffs' grants might be withdrawn or
blocked based on defendants' assessment of similarly vague conditions); *City & County of San
Francisco v. Trump*, 779 F. Supp. 3d at 1082  (concluding that budgetary uncertainty constitutes
irreparable harm).

But losing out on the awarded COPS Grants is equally untenable.  The COPS Grants fund
essential public safety projects.  Frost Decl. ¶¶ 13–18; Kasmar Decl. ¶¶ 14–18; Jonsen Decl. ¶¶ 13–18;
Meaux Decl. at ¶¶ 4–6, 9–13.  As Congress has found, and DOJ acknowledges, these projects are vital
for advancing community policing.  *See* Pub. L. No 103-322 at § 10002, 108 Stat. at 1808; RJN Ex. A
at p. 6; *id.* Ex. C at p. 8; *id.* Ex. B at p. 7; *id.* Ex. D at pp. 6–8.   Plaintiffs' law enforcement agencies
do not have the financial capacity to support the COPS Grants projects while also maintaining their
other current operations.  Rather, giving up these COPS Grants would require Plaintiffs' law
enforcement agencies to either (1) allocate limited funding away from other public safety operations in
order to backfill the COPS Grant funding (and reduce services elsewhere), or (2) give up on the
critical staffing, mental health, and training programs that the Grants are intended to fund.  Frost Decl.
¶¶ 15–18; Kasmar Decl. ¶ 18; Jonsen Decl. ¶¶ 21–23; Meaux Decl. ¶¶ 7, 8, 13–15.  Either outcome is
deleterious for public safety and community policing in Plaintiffs' jurisdictions and would create an
irreparable harm that cannot be compensated with money damages.  Frost Decl. ¶¶ 16–18; Kasmar
Decl. ¶ 18; Jonsen Decl. ¶ 23; Meaux Decl. at ¶¶ 7, 8, 13–15; *see City & County of San Francisco v.
Trump*, 779 F. Supp. 3d at 1082 (finding "irreparable injury in the form of [*inter alia*], undermining
trust between the Cities and Counties and the communities they serve"); *see also Maryland v. King*,
567 U.S. 1301, 1303 (2012) (acknowledging irreparable harm exists to "enforcement and public safety
interests"); *City of Los Angeles v. Sessions*, No. Cv-17-7215-R, 2018 WL 6071072, at *3 (C.D. Cal.
Sept. 13, 2018), *aff'd sub nom. City of Los Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019) (finding

irreparable harm where the city had to either "diminish[] community trust and undermine[] public safety" by implementing objectionable policies or forgoing funding). Nor could Plaintiffs recover grant funding at a later juncture if Defendants "transfer, re-allocat[e], or re-obligat[e]" grants to other recipients. *See Climate United Fund v. Citibank, N.A.*, 775 F. Supp. 3d 335, 349 (D.D.C. 2025); *see also Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d 243, 288 (D. Md. 2025), opinion clarified, 769 F. Supp. 3d 465 (D. Md. 2025) (deciding that the loss of federal grants was irreparable harm where "monetary recovery" was "likely to be precluded" in "light of Defendants' sovereign immunity").

Defendants therefore have put before Plaintiffs a classic Hobson's Choice, and an injunction must issue to safeguard Plaintiffs from irreparable harm.

## III.    The Balance of Hardships and Public Interest Strongly Favor Plaintiffs.

The balance of equities and the public interest favor an injunction against imposition and enforcement of the Challenged Conditions. Where the federal government is the defendant, the balance of equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). And, in a case involving an alleged constitutional violation, the factors are satisfied by a showing of likelihood of success on the merits of the underlying claim. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (finding that "it is always in the public interest to prevent the violation of a party's constitutional rights") (cleaned up). As discussed above, Plaintiffs have established a likelihood of success on each of their constitutional and statutory claims and therefore meet the balance of equities and public interest factors.

Plaintiffs meet these factors for additional reasons. If Plaintiffs are forced to decline funds due to unlawful conditions, public safety initiatives will be curtailed and may ultimately be cut—with harmful consequences for Plaintiffs' communities. Frost Decl. ¶¶ 15–18; Kasmar Decl. ¶ 18; Jonsen Decl. ¶¶ 21–23; Meaux Decl. ¶¶ 7, 8, 13–15. But, if Plaintiffs accept the terms, they face the prospect that Defendants will weaponize the ambiguities in the Challenged Conditions to carry out President Trump's agenda and impose crushing civil and criminal penalties on Plaintiffs. *See City & Cnty. of*

1  *San Francisco v. Trump*, 897 F.3d at 1244 ("[T]he public interest cannot be disserved by an injunction

2  that brings clarity to all parties and to citizens dependent on public services").

3      In contrast, Defendants in this case will not be harmed by an injunction prohibiting them from

4  enforcing grant requirements that offend established constitutional principles.  *See Rodriguez v.*

5  *Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (describing how defendants "cannot suffer harm from an

6  injunction that merely ends an unlawful practice").  Recent court orders granting similar preliminary

7  relief also undercut any hardship argument that Defendants could proffer.  *See Housing Authority of*

8  *City & Cnty. of San Francisco*, 2025 WL 2961794, at *2-3; *see also Fresno II,* 2025 WL 2721390, at

9  *20; *Martin Luther King, Jr. Cnty.*, 785 F. Supp. 3d at 893–94; *Americorps*, 789 F. Supp. 3d at 755–

10  56; *City & County of San Francisco v. Trump*, 779 F. Supp. 3d at 1083.  Defendants can muster no

11  serious argument that they cannot comply with an injunction in this case.

12      Finally, Defendants' potential inability to recover grant funding is not an irreparable harm.  As

13  a court in this district recently noted in a similar case, "these concerns cut both ways since Plaintiffs

14  may be forced to divert and spend unplanned sources of public money to keep afloat projects that the

15  Grant Conditions jeopardize. In fact, since Plaintiffs have shown a likelihood of success on the merits,

16  this concern cuts in their favor."  *Fresno II*, 2025 WL 2721390, at *20.

17      Accordingly, the public interest and balance of equities unequivocally tilt in favor of providing

18  Plaintiffs interim relief.[13]

19  **CONCLUSION**

20      For the foregoing reasons, Plaintiffs request that this Court issue a preliminary injunction

21  prohibiting Defendants from imposing or enforcing the Challenged Conditions on Plaintiffs,

22  withholding funding on the basis of the Challenged Conditions, or imposing any materially similar

23  conditions on Plaintiffs.

24

25  [13] For the same reasons, a bond is not warranted in this case because Defendants cannot show a
likelihood of success on the merits or that they are harmed by being unable to enforce the Challenged

26  Conditions.  A bond would also deprive Plaintiffs and the public they serve of the very funds the
preliminary injunction seeks to protect.  *See Martin Luther King, Jr. Cnty.*, 785 F. Supp. 3d at 893

27  (denying federal defendants' request for bond); *Americorps*, 789 F. Supp. 3d at 754–55; *California v.
United States Dep't of Transportation*, 788 F. Supp. 3d 316, 324 (D.R.I. 2025) (same); *see also Fresno*

28  *II*, 2025 WL 2721390, at *20 (ordering nominal bond of $100).

Dated:  November 14, 2025                    Respectfully submitted,

1

2                                            DAVID CHIU
                                             City Attorney
3                                            YVONNE R. MERÉ
                                             Chief Deputy City Attorney
4                                            MOLLIE M. LEE
                                             Chief of Strategic Advocacy
5                                            SARA J. EISENBERG
                                             Chief of Complex and Affirmative Litigation
6                                            KARUN A. TILAK
                                             JESSE E. LANIER
7                                            Deputy City Attorneys

8                                      By:   /s/ Jesse E. Lanier
                                             JESSE E. LANIER
9                                            Deputy City Attorney

10                                           Attorneys for Plaintiffs
                                             CITY AND COUNTY OF SAN FRANCISCO
11

12                                           TONY LOPRESTI, SBN 289269
13                                           County Counsel

14                                     By:   /s/ Bill Nguyen
                                             BILL NGUYEN
15                                           Deputy County Counsel

16                                           KAVITA NARAYAN, SBN 264191
                                             Chief Assistant County Counsel
17                                           MEREDITH A. JOHNSON, SBN 291018
                                             Lead Deputy County Counsel
18                                           BILL NGUYEN, SBN 333671
                                             Deputy County Counsel
19                                           70 W. Hedding Street, East Wing, 9th Floor
20                                           San José, CA 95110
                                             Telephone:     (408) 299-5900
21                                           Facsimile:     (408) 292-7240
                                             E-Mail:        tony.lopresti@cco.sccgov.org
22

23                                           Attorneys for Plaintiff
                                             COUNTY OF SANTA CLARA
24

25

26

27

28

ROI I. LUSK
City Attorney

By: */s/ Regina L. Nassen*
REGINA L. NASSEN, Ariz. Bar No. 014574*
Principal Assistant City Attorney

Tucson City Attorney's Office
255 W. Alameda, 7th Floor
P.O. Box 27210
Tucson, Arizona 85726-7210
Telephone: (520)837-4207
Facsimile: (520)623-9803
E-Mail: regina.nassen@tucsonaz.gov

ERIN B. BERNSTEIN, SBN 231539
PRIANKA MUNGALE, SBN 348165
Bradley Bernstein Sands, LLP
1212 Broadway, Suite 1100
Oakland, California 94612
Telephone: (510)380-5801
E-Mail: ebernstein@bradleybernstein.com

Attorneys for Plaintiff
CITY OF TUCSON

*Admitted *pro hac vice*

HEATHER FERBERT, SBN 246759
City Attorney

By: */s/ Daniel Ikeri*
DANIEL IKERI
Deputy City Attorney

JEAN JORDAN, SBN 155009
Acting Assistant City Attorney
JULIE RAU, SBN 317658
Lead Deputy City Attorney
DANIEL IKERI, SBN 207674
Deputy City Attorney
1200 Third Avenue, Suite 1620
San Diego, CA 92101
Telephone:    (619) 236-6220
Facsimile:    (619) 236-7215
E-Mail:       Jrau@sandiego.org
              DIkeri@sandiego.org

Attorneys for Plaintiffs
CITY OF SAN DIEGO

**FILER'S ATTESTATION**

I, JESSE E. LANIER, am the ECF user whose identification and password are being used to file this PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT, I hereby attest that the other above-named signatories concur in this filing. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.