DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
KARUN A. TILAK, SBN 323939
JESSE E. LANIER, SBN 303395
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, CA 94102-5408
Telephone: (415) 554-4223
Facsimile: (415) 437-4644
E-Mail: Jesse.Lanier@sfcityatty.org

Attorneys for Plaintiffs
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, COUNTY OF SANTA CLARA; CITY OF TUCSON; and CITY OF SAN DIEGO,<br><br>          Plaintiffs,<br><br>     vs.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, PAMELA J. BONDI, in her Official Capacity, OFFICE OF COMMUNITY ORIENTED POLICING SERVICES; and CORY D. RANDOLPH, in his official capacity,<br><br>          Defendants. | Case No. 25-cv-09277-JD<br><br><br>**DECLARATION OF SHERIFF ROBERT JONSEN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

**DECLARATION OF SHERIFF ROBERT JONSEN**

I, Robert Jonsen, declare:

1.     I am a resident of the State of California, and I am over the age of 18 years.  I make this declaration in support of Plaintiffs' motion for a preliminary injunction.  I am competent to testify as to the matters in this declaration, and make it based on my personal knowledge, as well as my review of relevant business records.

2.     I am the Sheriff for the County of Santa Clara ("Santa Clara").  I was elected to this position by the voters of Santa Clara County in the November 2022 general election, and I assumed office in December 2022 when Santa Clara's Board of Supervisors appointed me to fill the remainder of my predecessor's term after her departure from office.

3.     Before I was elected Sheriff, I served as the Chief of Police for the City of Palo Alto Police Department from 2018 to 2022.  Prior to that, I also served as the Chief of Police for the City of Menlo Park Police Department.  I began my career in law enforcement in 1986 with the County of Los Angeles Sheriff's Department, where I served for 27 years in numerous roles, eventually rising to the rank of Captain.  In total, my career in law enforcement service spans nearly 40 years.

4.     I have devoted my career to public service and protection.  As a law enforcement officer, I believe that my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the constitutional rights of all people to liberty, equality, and justice.  This statement of my values appears prominently on the website for the County of Santa Clara's Office of the Sheriff ("Sheriff's Office"), and I believe in it wholeheartedly.

5.     I also care deeply about fostering integrity and compassion in my field. I am a certified instructor for Compassion Cultivation Training, a program developed at Stanford University, and I graduated as a trained mindfulness facilitator from the Semel Institute for Neuroscience and Human Behavior at the University of California, Los Angeles.  I have brought mindfulness and compassion training to the employees of the agencies I have led, including the Sheriff's Office.  I have witnessed firsthand the profound effects that a focus on compassion and mindfulness can have for public safety personnel and their interactions with the communities they serve.

6.      As my background reflects, I am committed to building and sustaining positive relationships between the community and the law enforcement officers under my command.  I often say that "respect-based policing" is the cornerstone of my philosophy.

### Background on Santa Clara and the Sheriff's Office

7.      Santa Clara is a charter county and a political subdivision of the State of California.  It is home to approximately 1.9 million residents, making it the most populous county in Northern California and more populous than 12 U.S. states.

8.      Santa Clara's mission is to plan for the needs of a dynamic community, provide quality services, and promote a healthy, safe, and prosperous community for all.  Under state law, Santa Clara is responsible for administering the social safety net and providing services to meet the basic needs of vulnerable residents.  Santa Clara is also responsible for public services that promote the safety and welfare of the community overall, including public health, disaster response, and public safety functions.

9.      The Sheriff's Office numbers nearly 1,900 employees who execute many of Santa Clara's public safety functions.  The core role of my Office is to apprehend individuals suspected of crimes, investigate criminal activity, protect and maintain peace in the community, recover missing persons, provide search-and-rescue services, serve warrants, and protect victims.  We serve the entire Santa Clara County area by enforcing state and local criminal laws in the unincorporated areas of the county, which total approximately 600 square miles; serving as the municipal police department under contract with three cities in the county; and offering law enforcement services under contract to Stanford University, the Santa Clara County Superior Court, the Valley Transportation Authority, and other local agencies.  Each year, the Sheriff's Office responds to approximately 175,000 calls for service and investigates thousands of suspected crimes.  Additionally, we offer regional investigative support with criminal investigations carried out by other law enforcement agencies at the local, state, and federal levels.  Finally, in addition to our enforcement work, the Sheriff's Office is responsible for the safety and care of the incarcerated population housed in Santa Clara's two jails.

10.      The Sheriff's Office is committed to building a resilient, mission-ready workforce through a comprehensive wellness strategy that supports both fitness for duty and long-term quality of

life.  Consistent with this commitment, the Sheriff's Office operates a suite of wellness programs that address physical needs—like nutrition, exercise, sleep, and chiropractic care—as well as mental and emotional needs—like confidential peer support for crisis intervention.

11.    Mental wellness is crucial for people, like Sheriff's Office staff, who work in law enforcement.  I am aware of national studies indicating that, relative to the civilian population, law enforcement professionals experience elevated rates of depression, post-traumatic stress disorder, substance use, and suicide.  My own experience across many law enforcement agencies, including the Sheriff's Office, is consistent with these findings.  Sheriff's Office personnel encounter extreme mental health stressors on the job.  Our first responders have been exposed to fatal pursuit incidents, including incidents involving young victims.  Personnel who engage directly with individuals in custody have witnessed people dying by suicide or attempting to do so, people dying by overdoses, and overdose rescues.  Some have had the traumatic experience of trying, but failing, to provide lifesaving care.  Many have also witnessed or experienced violent assaults.  Especially for staff who interact with incarcerated people, there is a significant correlation between staff wellness and performance.  Such personnel are less likely, for example, to be involved in using force if their own mental health is taken care of.  It is therefore my Office's priority that staff come to work with a clear head and the support they need to make sound decisions in their daily interactions with Santa Clara residents and with the incarcerated people in their care and custody.

**Santa Clara's Application for COPS Mental Health Grant Funding**

12.    On October 10, 2025, the U.S. Department of Justice's Office of Community Oriented Policing Services ("COPS") approved the Sheriff's Office's application for a grant under the Law Enforcement Mental Health and Wellness Act Program ("Mental Health Grant").  A true and correct copy of the Sheriff's Office's Mental Health Grant Award is attached hereto as **Exhibit A**.  The Sheriff's Office was awarded $200,000 for a period of performance from October 1, 2025, to September 30, 2027.  With this Mental Health Grant funding, the Sheriff's Office plans to support (1) its secular chaplaincy program ($100,000), (2) its Courageous Hearts training program ($55,000), and (3) a pilot wellness-check program ($45,000).

//

13.     First, funding for the secular chaplaincy program will allow the Sheriff's Office to contract with a part-time law enforcement chaplain who will work twenty hours per week for two years.  The contracted chaplain will offer emotional, moral, and spiritual support to our sworn law enforcement staff, professional (i.e., non-sworn) staff, and their families, serving people of any or no faith.  This support will include confidential counseling, referrals, critical-incident response, and non-denominational spiritual care.  The Sheriff's Office will also recruit and coordinate a team of volunteer chaplains to cover the patrol and custody divisions, which provide public safety services in the community and in our County jails, respectively.

14.     With the Mental Health Grant funding, the Sheriff's Office will implement the chaplaincy program to increase staff's access to trusted supportive resources, enhance officer engagement in the aftermath of critical incidents, establish a standing chaplain presence in all divisions, and help destigmatize mental healthcare among law enforcement personnel.  In addition, the chaplaincy program will establish weekly office hours, host "Coffee with the Chaplain" sessions, and support ceremonial and community events.

15.     Second, funding for the Courageous Heart training program will support the costs of providing six training sessions and materials for up to 550 individuals, including high-risk Sheriff's Office personnel—like those working in or exposed to Special Weapons and Tactics, sex crimes, and in-custody mental health services—as well as key stakeholders from Santa Clara's District Attorney's Office and Probation Department.  The Courageous Heart training program was developed by the Compassion Institute and Stanford Medicine's Department of Psychiatry and Behavioral Sciences, and offers evidence-based training that strengthens staff compassion, emotional regulation, and resilience in high-stress environments.  The Sheriff's Office expects that providing public safety personnel with the opportunity to participate in the Courageous Heart training program will strengthen personnel's self-awareness, emotional regulation, openness to seeking support, and cross-agency wellness alignment, which also directly benefits the community members they serve.

16.     Third, funding for a pilot wellness-check program will provide roughly 300 voluntary wellness checks for sworn staff, conducted by two to three licensed therapists who have experience in first-responder and trauma-informed mental healthcare.  These thirty-minute confidential check-ins

will initially be offered to executive staff (Phase 1) and then expand to high-risk staff (Phase 2). The Sheriff's Office anticipates that approximately 150 to 200 personnel will receive wellness checks, referrals to Santa Clara's Employee Assistance Program, and early intervention to prevent mental health degradation in the face of high-stress, high-risk jobs. The program will also lay the groundwork for a permanent, sustainable system of wellness check-ins that the Sheriff's Office hopes to be able to provide for all staff in the future. Supplementing its tools for ensuring staff wellness in the aftermath of critical incidents, this pilot wellness-check program will allow the Sheriff's Office to build resilience proactively, before crises arise.

### Irreparable Harm from the Potential Loss of COPS Mental Health Grant Funding

17.     I am aware that the Sheriff's Office's award package for the COPS Mental Health Grant includes several "Award Conditions" that Plaintiffs, including Santa Clara, are challenging in this case. I understand that Santa Clara must either accept those conditions by Defendants' deadline, or lose access to approximately $200,000 in Mental Health Grant funding. Without this funding, the efforts of the Sheriff's Office to meet its personnel's urgent mental health needs would be undercut. My assessment based on nearly four decades of professional experience in law enforcement is that my staff's mental health affects not only their personal well-being but also their relationships with colleagues and our organization's overall ability to engage and retain key staff. In addition, supporting staff in maintaining positive health and well-being is absolutely critical given the very high-stress nature of their work protecting community safety and caring for individuals housed in the County jails.

18.     Recent events and data reflect that mental wellness is an acutely important issue for Sheriff's Office staff in particular. The 2021 mass shooting at a Valley Transportation Authority rail yard in the City of San José, in which ten people were killed, spurred my Office to further deepen its commitment to mental wellness. Sheriff's Office deputies were first responders and investigators to that shooting, and continue to grapple with extreme emotional trauma as a result of it. Several tragic and unexpected personnel losses, including the loss of two active Sheriff's Office deputies and a range master in the last two years, have also had lasting mental health effects on staff. Finally, I am aware of data from Santa Clara's Employee Assistance Program indicating that, relative even to other law

enforcement agencies, Sheriff's Office staff underutilize county mental health services, suggesting a need for culturally tailored, trust-based interventions.

19.     The Sheriff's Office has consequently invested significant resources in its wellness programs, which include physical, mental, and emotional wellness resources for staff.  The Sheriff's Office's physical wellness benefits are extensive, including one-on-one sessions with dietitians, fitness training, body scans and health screenings, and chiropractic services.  The Sheriff's Office also provides mental and emotional wellness programming, like pet therapy, in which trained canines visit certain high-stress divisions to uplift staff spirits and relieve stress; a 24/7 Peer Support Program, through which staff provide confidential support to one another; and the Cordico Wellness App, which digitally connects personnel with peer support and clinicians in the aftermath of critical incidents.

20.     Despite these efforts, significant gaps remain in the Sheriff's Office's mental and emotional wellness programming.  Some evidence—for example, lower-than-expected engagement with the Cordico Wellness App—suggests that employees would benefit from different therapeutic modalities, especially in-person, onsite engagement with a third party (i.e., not their coworkers).  The Sheriff's Office applied for the Mental Health Grant with the goal of making this engagement accessible.

21.     The Mental Health Grant is an indispensable source of funding.  If the County is unable to accept this funding, the Sheriff's Office will have to either reallocate money from other services to support the wellness programs that the Mental Health Grant would have funded or forgo the new programming altogether.  Given Santa Clara's projected loss of $1 billion in funding under H.R. 1 for FY25-26, the Sheriff's Office is already deciding how to cut expenditures by tens of millions of dollars.  As a result, reallocating money to support what the Mental Health Grant would have funded would likely take funding away from any number of the Office's public safety services, including— perversely—its existing wellness initiatives.  On the other hand, forgoing support for mental and emotional wellness programming would mean eliminating plans to fund the chaplaincy program, the Courageous Heart training program, and a pilot wellness-check program.

22.     The harms of not being able to provide the planned programming would be significant.  As mentioned above, the Sheriff's Office is facing a budget crisis.  In addition, the Sheriff's Office is

1  contending with the challenges of understaffing and retention. Without the Mental Health Grant,

2  prospective and current employees would not have the benefits of in-person, onsite, third-party mental

3  health support from chaplains or licensed therapists, as well as the benefits of Courageous Heart

4  trainings that would foster self-compassion and emotional regulation. This lack of access would likely

5  not only jeopardize employee retention and worsen existing staff shortages and burnout but also hurt

6  the Sheriff's Office's ability to recruit new employees. Additionally, if personnel do not receive

7  adequate mental health care, their performance on the job may suffer. This outcome would ultimately

8  harm the relationships of trust with Santa Clara residents and of the people housed in Santa Clara's

9  jails on which our staff depend to provide effective service.

10      23.    In short, the loss of Mental Health Grant funding would impede Santa Clara's public

11  safety functions. In my estimation, mental armor is no less important than physical armor. Promoting

12  the mental wellness of Sheriff's Office personnel translates to recruiting, keeping, and engaging more

13  judicious and more compassionate law enforcement officers—and to better protecting the Santa Clara

14  community.

15      I declare under penalty of perjury under the laws of the United States of America that the

16  foregoing is true and correct.

17      Executed on  11 | 03 | 25  at San José, California.

18

19

20                                          ROBERT JONSEN

21

22

23

24

25

26

27

28

DECL. OF SHERIFF ROBERT JONSEN;          8
CASE NO. 25-CV-09277

# Exhibit A



# Department of Justice (DOJ)

## Office of Community Oriented Policing Services (COPS Office)

*Washington, D.C. 20531*

| | |
|---|---|
| **Name and Address of Recipient:** | COUNTY OF SANTA CLARA<br>55 W YOUNGER AVE |
| **City, State and Zip:** | SAN JOSE, CA 95110 |
| **Recipient UEI:** | JNECJW88ML98 |

| | |
|---|---|
| **Project Title:** FY25 Law Enforcement Mental Health and Wellness Act (LEMHWA) Implementation Projects - COUNTY OF SANTA CLARA, CA | **Award Number:** 15JCOPS-25-GG-00436-LEMH |

**Solicitation Title:** FY25 Law Enforcement Mental Health and Wellness Act (LEMHWA) Implementation Projects

| | |
|---|---|
| **Federal Award Amount:** $200,000.00 | **Federal Award Date:** 10/10/25 |

| | |
|---|---|
| **Awarding Agency:** | Office of Community Oriented Policing Services |
| **Award Type:**<br>**Funding Instrument Type:** | Initial<br>Grant |

**Opportunity Category:** D
**Assistance Listing:**
16.070 - Law Enforcement Mental Health and Wellness Act

| | |
|---|---|
| **Project Period Start Date:** 10/1/25 | **Project Period End Date:** 9/30/27 |
| **Budget Period Start Date:** 10/1/25 | **Budget Period End Date:** 9/30/27 |

**Project Description:**

The Santa Clara County Sheriff's Office is committed to building a resilient, mission-ready workforce through a comprehensive wellness strategy that supports both fitness for duty and long-term quality of life. They will contract a part-time law enforcement chaplain (20 hours/week for 2 years) to offer emotional, moral, and spiritual support to deputies, professional staff, and their families; provide evidence-based training that strengthens compassion, emotional regulation, and resilience; and launch a 30-Minute Wellness Check Pilot Program. Expected outcomes include 150-200 personnel receiving wellness checks, increased EAP referrals and early interventions, and creation of a sustainable model for a mandatory wellness check program in future budget cycles. Together, these integrated strategies aim to reduce mental health stigma, increase access to timely and culturally competent care, and strengthen individual and organizational resilience across the agency.

**Award Letter**

October 10, 2025

Dear Robert Jonsen,

On behalf of Attorney General Pamela Bondi, it is my pleasure to inform you the Office of Community Oriented Policing Services (the COPS Office) has approved the application submitted by COUNTY OF SANTA CLARA for an award under the funding opportunity entitled 2025 FY25 Law Enforcement Mental Health and Wellness Act (LEMHWA) Implementation Projects. The approved award amount is $200,000.

Review the Award Instrument below carefully and familiarize yourself with all conditions and requirements before accepting your award. The Award Instrument includes the Award Offer (Award Information, Project Information, Financial Information, and Award Conditions) and Award Acceptance. For COPS Office and OVW funding the Award Offer also includes any Other Award Documents.

Please note that award requirements include not only the conditions and limitations set forth in the Award Offer, but also compliance with assurances and certifications that relate to conduct during the period of performance for the award. These requirements encompass financial, administrative, and programmatic matters, as well as other important matters (e.g., specific restrictions on use of funds). Therefore, all key staff should receive the award conditions, the assurances and certifications, and the application as approved by the COPS Office, so that they understand the award requirements. Information on all pertinent award requirements also must be provided to any subrecipient of the award.

Should you accept the award and then fail to comply with an award requirement, DOJ will pursue appropriate remedies for non-compliance, which may include termination of the award and/or a requirement to repay award funds.

Prior to accepting the award, your Entity Administrator must assign a Financial Manager, Grant Award Administrator, and Authorized Representative(s) in the Justice Grants System (JustGrants). The Entity Administrator will need to ensure the assigned Authorized Representative(s) is current and has the legal authority to accept awards and bind the entity to the award terms and conditions. To accept the award, the Authorized Representative(s) must accept all parts of the Award Offer in the Justice Grants System (JustGrants), including by executing the required declaration and certification, within 45 days from the award date.

To access your funds, you will need to enroll in the Automated Standard Application for Payments (ASAP) system, if you haven't already completed the enrollment process in ASAP. The Entity Administrator should have already received an email from ASAP to initiate this process.

Congratulations, and we look forward to working with you.


Cory D. Randolph
COPS Acting Director

## Office for Civil Rights Notice for All Recipients

The Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) enforces federal civil rights laws and other provisions that prohibit discrimination by recipients of federal financial assistance from OJP, the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW).

Several civil rights laws, including Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act of 1973, require recipients of federal financial assistance (recipients) to give assurances that they will comply with those laws. Taken together, these and other civil rights laws prohibit recipients from discriminating in the provision of services and employment because of race, color, national origin, religion, disability, and sex or from discriminating in the provision of services on the bases of age.

Some recipients of DOJ financial assistance have additional obligations to comply with other applicable nondiscrimination provisions like the Omnibus Crime Control and Safe Streets Act of 1968, which prohibits discrimination on the basis of religion in addition to race, color, national origin, and sex. Recipients may also have related requirements regarding the development and implementation of equal employment opportunity programs.

OCR provides technical assistance, training, and other resources to help recipients comply with civil rights obligations. Further, OCR administratively enforces civil rights laws and nondiscrimination provisions by investigating DOJ recipients that are the subject of discrimination complaints. In addition, OCR conducts compliance reviews of DOJ recipients based on regulatory criteria. These investigations and compliance reviews permit OCR to evaluate whether DOJ recipients are providing services to the public and engaging in employment practices in a nondiscriminatory manner.

For more information about OCR, your civil rights and nondiscrimination responsibilities, how to notify your employees or beneficiaries of their civil rights protections and responsibilities and how to file a complaint, as well as technical assistance, training, and other resources, please visit www.ojp.gov/program/civil-rights-office/outreach. If you would like OCR to assist you in fulfilling your civil rights or nondiscrimination responsibilities, please contact us at askOCR@ojp.usdoj.gov or www.ojp.gov/program/civil-rights-office/about#ocr-contacts.

## Award Information

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

## Recipient Information

### Recipient Name

### UEI
JNECJW88ML98

### ORI Number
CA04300

### Street 1
55 W YOUNGER AVE

### Street 2

### City
SAN JOSE

### State/U.S. Territory
California

### Zip/Postal Code
95110

### Country
United States

### County/Parish

### Province

## Award Details

### Federal Award Date
10/10/25

### Award Type
Initial

### Award Number
15JCOPS-25-GG-00436-LEMH

### Supplement Number
00

### Federal Award Amount
$200,000.00

### Funding Instrument Type
Grant

| Assistance Listing Number | Assistance Listings Program Title |
|---|---|
| 16.070 | Law Enforcement Mental Health and Wellness Act |

### Statutory Authority

The Public Safety Partnership and Community Policing Act of 1994, 34 U.S.C. § 10381 et seq

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

## Project Information

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

**Solicitation Title**
2025 FY25 Law Enforcement Mental Health and
Wellness Act (LEMHWA) Implementation Projects

**Awarding Agency**
COPS

**Application Number**
GRANT14420594

**Grant Manager Name**
Bethany Wilson

**Phone Number**
202-330-2299

**E-mail Address**
bethany.wilson@usdoj.gov

**Project Title**
FY25 Law Enforcement Mental Health and Wellness Act (LEMHWA) Implementation Projects - COUNTY OF SANTA
CLARA, CA

**Performance Period Start
Date**
10/01/2025

**Performance Period End Date**
09/30/2027

**Budget Period Start Date**
10/01/2025

**Budget Period End Date**
09/30/2027

## Project Description

The Santa Clara County Sheriff's Office is committed to building a resilient, mission-ready workforce
through a comprehensive wellness strategy that supports both fitness for duty and long-term quality of
life. They will contract a part-time law enforcement chaplain (20 hours/week for 2 years) to offer
emotional, moral, and spiritual support to deputies, professional staff, and their families; provide
evidence-based training that strengthens compassion, emotional regulation, and resilience; and launch
a 30-Minute Wellness Check Pilot Program. Expected outcomes include 150-200 personnel receiving
wellness checks, increased EAP referrals and early interventions, and creation of a sustainable model
for a mandatory wellness check program in future budget cycles. Together, these integrated strategies
aim to reduce mental health stigma, increase access to timely and culturally competent care, and
strengthen individual and organizational resilience across the agency.

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

## Financial Information

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

A financial analysis of budgeted costs has been completed. All costs listed in the approved budget below were

programmatically approved based on the final proposed detailed budget and budget narratives submitted by your agency to the COPS Office. Any adjustments or edits to the proposed budget are explained below.

Budget Clearance Date:                    8/26/25 9:43 PM

| Comments |
| --- |
| No items |

## Budget Summary

| Budget Category | Proposed Budget | Change | Approved Budget | Percentage |
| --- | --- | --- | --- | --- |
| Sworn Officer Positions: | $0 | $0 | $0 | |
| Civilian or Non-Sworn Personnel: | $100,000 | $0 | $100,000 | |
| Travel: | $0 | $0 | $0 | |
| Equipment: | $0 | $0 | $0 | |
| Supplies: | $5,500 | -$5,500 | $0 | |
| SubAwards: | $0 | $0 | $0 | |
| Procurement Contracts: | $0 | $0 | $0 | |
| Other Costs: | $94,500 | $5,500 | $100,000 | |
| Total Direct Costs: | $200,000 | $0 | $200,000 | |
| Indirect Costs: | $0 | $0 | $0 | |
| Total Project Costs: | $200,000 | $0 | $200,000 | |
| Federal Funds: | $200,000 | $0 | $200,000 | 100.00% |
| Match Amount: | $0 | $0 | $0 | 0.00% |
| Program Income: | $0 | $0 | $0 | 0.00% |

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

## Award Conditions

**This award is offered subject to the conditions or limitations set forth in the Award Information, Project Information, Financial Information, and Award Conditions.**

**Condition 1**
Restrictions on Internal Confidentiality Agreements: No recipient or subrecipient under this award, or entity that receives a contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts the lawful reporting of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive

such information. Full-Year Continuing Appropriations and Extensions Act, 2025, Public Law 119-4; Further Consolidated Appropriations Act, 2024, Public Law 118-47, Division B, Title VII, Section 742.

**Condition 2**
Compliance with 8 U.S.C. § 1373: Authority to obligate or expend contingent on compliance with this condition. State or local government entity recipients of this award, and any subrecipient of this award at any tier that is an entity of a State or of a unit of local government, must comply with 8 U.S.C. §1373, which provides that such entities may not prohibit, or in any way restrict, any government entity or official from sending to, receiving from, maintaining, or exchanging information regarding citizenship or immigration status, lawful or unlawful, of any individual with components of the U.S. Department of Homeland Security or any other federal, state or local government entity. This includes any prohibitions or restrictions imposed or established by a State or local government entity or official.

Any obligations or expenditures of a recipient or subrecipient that are impermissible under this condition shall be unallowable costs for purposes of this award.

References to the Immigration and Naturalization Service in 8 U.S.C. 1373 are to be read, as a legal matter, as references to components of the U.S. Department of Homeland Security.

**Condition 3**
Federal Civil Rights and Nondiscrimination Laws (certification): The recipient agrees that its compliance with all applicable Federal civil rights and nondiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for purposes of the False Claims Act (31 U.S.C. 3729-3730 and 3801-3812), and, by accepting this award, certifies that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws.

**Condition 4**
Federal Laws, Presidential Memoranda, and Executive Orders: Recipients of grant funding must comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President.

**Condition 5**
Award Monitoring Activities: Federal law requires that recipients receiving federal funding from the COPS Office must be monitored to ensure compliance with their award conditions and other applicable statutes and regulations. The COPS Office is also interested in tracking the progress of our programs and the advancement of community policing. Both aspects of award implementation—compliance and programmatic benefits—are part of the monitoring process coordinated by the U.S. Department of Justice. Award monitoring activities conducted by the COPS Office include site visits, enhanced office-based grant reviews, alleged noncompliance reviews, financial and programmatic reporting, and audit resolution. As a COPS Office award recipient, you agree to cooperate with and respond to any requests for information pertaining to your award. This includes all financial records, such as general accounting ledgers and all supporting documents. All information pertinent to the implementation of the award is subject to agency review throughout the life of the award, during the close-out process and for three-years after the submission of the final expenditure report. 2 C.F.R. §§ 200.334 and 200.337, and, as applicable, 34 U.S.C. § 10385(a).

**Condition 6**
Authorized Representative Responsibility: The recipient understands that, in accepting this award, the Authorized Representatives declare and certify, among other things, that they possess the requisite legal authority to accept the award on behalf of the recipient entity and, in so doing, accept (or adopt) all material requirements throughout the period of performance under this award. The recipient further understands, and agrees, that it will not assign anyone to the role of Authorized Representative during the period of performance under the award without first ensuring that the individual has the requisite legal authority.

**Condition 7**
Contract Provision: All contracts made by the award recipients under the federal award must contain the provisions required under 2 C.F.R. Part 200, Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards. Please see appendices in the Award Owner's Manual for a full text of the contract provisions.

**Condition 8**

Award Owner's Manual: The recipient agrees to comply with the terms and conditions in the applicable award year COPS Office Program Award Owner's Manual; DOJ Grants Financial Guide; COPS Office statute (34 U.S.C. § 10381, et seq.) as applicable; Students, Teachers, and Officers Preventing (STOP) School Violence Act of 2018 (34 U.S.C. § 10551, et seq.) as applicable; the requirements of 2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards), including subsequent changes, as adopted by the U.S. Department of Justice in 2 C.F.R. § 2800.101; 48 C.F.R. Part 31 (FAR Part 31) as applicable (Contract Cost Principles and Procedures); the Cooperative Agreement as applicable; representations made in the application; and all other applicable program requirements, laws, orders, regulations, or circulars.

Failure to comply with one or more award requirements may result in remedial action including, but not limited to, withholding award funds, disallowing costs, suspending, or terminating the
award, or other legal action as appropriate.

Should any provision of a condition of this award be held to be invalid or unenforceable by its terms, then that provision shall first be applied with a limited construction so as to give it the maximum effect permitted by law (to any person or circumstance) under this award. Should it be held, instead, that a condition (or a provision thereof) is of utter invalidity or unenforceability, such condition (or such provision) shall be deemed severable from this award.

**Condition 9**

Federal Civil Rights: The recipient and any subrecipient must comply with applicable federal civil rights and nondiscrimination statutes and regulations including: Section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), as implemented in Subparts C and D of 28 C.F.R. Part 42; section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), as implemented in Subpart G of 28 C.F.R. Part 42; section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681), as implemented in Subpart D of 28 C.F.R. Parts 42 and 54; section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102), as implemented in Subpart I of 28 C.F.R. Part 42; and section 809(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. § 10228(c)), as implemented in Subpart D of 28 C.F.R. Part 42. In addition to applicable federal statutes and regulations that pertain to civil rights and nondiscrimination, the recipient and any subrecipient must comply with the requirements in 28 C.F.R. Parts 22 (Confidentiality of Identifiable Research and Statistical Information); 28 C.F.R. Part 23 (Criminal Intelligence Systems Operating Policies); 28 C.F.R. Part 38 (Partnerships with Faith-Based and Other Neighborhood Organizations); and 28 C.F.R. Part 46 (Protection of Human Subjects). For an overview of the civil rights laws and nondiscrimination requirements in connection with your award, please see https://www.ojp.gov/program/civil-rights/overview.

**Condition 10**

Duplicative Funding: The recipient understands and agrees to notify the COPS Office if it receives, from any other source, funding for the same item or service also funded under this award.

**Condition 11**

Prohibited conduct by recipients and subrecipients related to trafficking in persons (including reporting requirements and COPS Office authority to terminate award): The recipient and subrecipient agree to comply with the following requirements of 2 C.F.R. Part 175, Appendix A to Part 175 – Award Term:
I. Trafficking in Persons
(a) Provisions applicable to a recipient that is a private entity. (1) Under this award, the
recipient, its employees, subrecipients under this award, and subrecipient's employees must not engage in:
(i) Severe forms of trafficking in persons;
(ii) The procurement of a commercial sex act during the period of time that this award
or any subaward is in effect;
(iii) The use of forced labor in the performance of this award or any subaward; or
(iv) Acts that directly support or advance trafficking in persons, including the following acts:
(A) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;
(B) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:
(1) Exempted from the requirement to provide or pay for such return transportation by the Federal department or agency providing or entering into the grant or cooperative agreement; or
(2) The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment

or a witness in a human trafficking enforcement action;

(C) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;

(D) Charging recruited employees a placement or recruitment fee; or

(E) Providing or arranging housing that fails to meet the host country's housing and safety standards.

(2) The Federal agency may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. 7104b(c), without penalty, if any private entity under this award:

(i) Is determined to have violated a prohibition in paragraph (a)(1) of this appendix; or

(ii) Has an employee that is determined to have violated a prohibition in paragraph (a)(1) of this this appendix through conduct that is either:

(A) Associated with the performance under this award; or

(B) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR part 180, ''OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement),'' as implemented by DOJ at 2 C.F.R. Part 2867.

(b) Provision applicable to a recipient other than a private entity. (1) The Federal agency may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. 7104b(c), without penalty, if a subrecipient that is a private entity under this award:

(i) Is determined to have violated a prohibition in paragraph (a)(1) of this appendix; or

(ii) Has an employee that is determined to have violated a prohibition in paragraph (a)(1) of this appendix through conduct that is either:

(A) Associated with the performance under this award; or

(B) Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR part 180, ''OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement),'' as implemented by 2 C.F.R. Part 2867.

(c) Provisions applicable to any recipient.

(1) The recipient must inform the Federal agency and the Inspector General of the Federal agency immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (a)(1) of this appendix.

(2) The Federal agency's right to unilaterally terminate this award as described in paragraphs (a)(2) or (b)(1) of this appendix:

(i) Implements the requirements of 22 U.S.C. 78, and

(ii) Is in addition to all other remedies for noncompliance that are available to the Federal agency under this award.

(3) The recipient must include the requirements of paragraph (a)(1) of this award term in any subaward it makes to a private entity.

(4) If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 CFR 175.105(b).

(d) Definitions. For purposes of this award term:

Employee means either:

(1) An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this award; or

(2) Another person engaged in the performance of the project or program under this award and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing requirements.

Private Entity means any entity, including for-profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 CFR 200.1.

The terms ''severe forms of trafficking in persons,'' ''commercial sex act,'' ''sex trafficking,'' ''Abuse or threatened abuse of law or legal process,'' ''coercion,'' ''debt bondage,'' and ''involuntary servitude'' have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. 7102).


**Condition 12**

Termination: Recipient understands and agrees that the COPS Office may terminate funding, in whole or in part, for the following reasons:

(1) When the recipient fails to comply with the terms and conditions of a Federal award.

(2) When the recipient agrees to the termination and termination conditions.

(3) When the recipient provides the COPS Office written notification requesting termination including the reasons,

effective date, and the portion of the award to be terminated. The COPS Office may terminate the entire award if the remaining portion will not accomplish the purposes of the award.

(4) Pursuant to any other award terms and conditions, including, when an award no longer effectuates the program goals or agency priorities to the extent such termination is authorized by law.

2. C.F.R. § 200.340.

**Condition 13**

Recipient Integrity and Performance Matters: For awards over $500,000, the recipient agrees to comply with the following requirements of 2 C.F.R. Part 200, Appendix XII to Part 200 – Award Term and Condition for Recipient Integrity and Performance Matters:

I. Reporting of Matters Related to Recipient Integrity and Performance

(a) General Reporting Requirement.

(1) If the total value of your active grants, cooperative agreements, and procurement contracts from all Federal agencies exceeds $10,000,000 for any period of time during the period of performance of this Federal award, then you as the recipient must ensure the information available in the responsibility/qualification records through the System for Award Management (SAM.gov), about civil, criminal, or administrative proceedings described in paragraph (b) of this award term is current and complete. This is a statutory requirement under section 872 of Public Law 110–417, as amended (41 U.S.C. 2313). As required by section 3010 of Public Law 111– 212, all information posted in responsibility/qualification records in SAM.gov on or after April 15, 2011 (except past performance reviews required for Federal procurement contracts) will be publicly available.

(b) Proceedings About Which You Must Report.

(1) You must submit the required information about each proceeding that—

(i) Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;

(ii) Reached its final disposition during the most recent five-year period; and

(iii) Is one of the following—

(A) A criminal proceeding that resulted in a conviction;

(B) A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;

(C) An administrative proceeding that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or

(D) Any other criminal, civil, or administrative proceeding if—

(1) It could have led to an outcome described in paragraph (b)(1)(iii)(A) through (C);

(2) It had a different disposition arrived at by consent or compromise with an acknowledgment of fault on your part; and

(3) The requirement in this award term to disclose information about the proceeding does not conflict with applicable laws and regulations.

(c) Reporting Procedures. Enter the required information in SAM.gov for each proceeding described in paragraph (b) of this award term. You do not need to submit the information a second time under grants and cooperative agreements that you received if you already provided the information in SAM.gov because you were required to do so under Federal procurement contracts that you were awarded.

(d) Reporting Frequency. During any period of time when you are subject to the requirement in paragraph (a) of this award term, you must report proceedings information in SAM.gov for the most recent five-year period, either to report new information about a proceeding that you have not reported previously or affirm that there is no new information to report. If you have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000, you must disclose semiannually any information about the criminal, civil, and administrative proceedings.

(e) Definitions. For purposes of this award term—

Administrative proceeding means a nonjudicial process that is adjudicatory in nature to make a determination of fault or liability (for example, Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with the performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.

Conviction means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere. Total value of currently active grants, cooperative agreements, and procurement contracts includes the value of the Federal share already received plus any anticipated Federal share under those awards (such as continuation funding).

**Condition 14**

Reporting Subawards and Executive Compensation: The recipient agrees to comply with the following requirements of 2 C.F.R. Part 170, Appendix A to Part 170 – Award Term:

I. Reporting Subawards and Executive Compensation

(a) Reporting of first-tier subawards—(1) Applicability. Unless the recipient is exempt as provided in paragraph (d) of this award term, the recipient must report each subaward that equals or exceeds $30,000 in Federal funds for a subaward to an entity or Federal agency. The recipient must also report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000. All reported subawards should reflect the total amount of the
subaward.

(2) Reporting Requirements. (i) The entity or Federal agency must report each subaward
described in paragraph (a)(1) of this award term to the Federal Funding Accountability
and Transparency Act Subaward Reporting System (FSRS) at http://www.fsrs.gov.

(ii) For subaward information, report no later than the end of the month following the month in which the subaward was issued. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025).

(b) Reporting total compensation of recipient executives for entities—(1) Applicability. The recipient must report the total compensation for each of the recipient's five most highly compensated executives for the preceding completed fiscal year if:

(i) The total Federal funding authorized to date under this Federal award equals or
exceeds $30,000;

(ii) in the preceding fiscal year, the recipient received:

(A) 80 percent or more of the recipient's annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and

(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,

(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

(2) Reporting Requirements. The recipient must report executive total compensation described in paragraph (b)(1) of this appendix:

(i) As part of the recipient's registration profile at https://www.sam.gov.

(ii) No later than the month following the month in which this Federal award is made, and annually after that. (For example, if this Federal award was made on November 7,
2025, the executive total compensation must be reported by no later than December 31,
2025.)

(c) Reporting of total compensation of subrecipient executives—(1) Applicability. Unless a first-tier subrecipient is exempt as provided in paragraph (d) of this appendix, the recipient must report the executive total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if:

(i) The total Federal funding authorized to date under the subaward equals or exceeds
$30,000;

(ii) In the subrecipient's preceding fiscal year, the subrecipient received:

(A) 80 percent or more of its annual gross revenues from Federal procurement contracts
(and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,

(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal awards (and subawards) subject to the Transparency Act; and

(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see
the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

(2) Reporting Requirements. Subrecipients must report to the recipient their executive total compensation described in paragraph
(c)(1) of this appendix. The recipient is required to submit this information to the
Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at http://www.fsrs.gov no later than the end of the month following the month in which the subaward was made. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025).

(d) Exemptions. (1) A recipient with gross income under $300,000 in the previous tax year is exempt from the requirements to report:
(i) Subawards, and
(ii) The total compensation of the five most highly compensated executives of any subrecipient.
(e) Definitions. For purposes of this award term:
Entity includes:
(1) Whether for profit or nonprofit:
(i) A corporation;
(ii) An association;
(iii) A partnership;
(iv) A limited liability company;
(v) A limited liability partnership;
(vi) A sole proprietorship;
(vii) Any other legal business entity;
(viii) Another grantee or contractor that is not excluded by subparagraph (2); and
(ix) Any State or locality;
(2) Does not include:
(i) An individual recipient of Federal financial assistance; or
(ii) A Federal employee.
Executive means an officer, managing partner, or any other employee holding a management position.
Subaward has the meaning given in 2 CFR200.1.
Subrecipient has the meaning given in 2CFR 200.1.
Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 CFR 229.402(c)(2).

**Condition 15**
Assurances and Certifications: The recipient acknowledges its agreement to comply with the Assurances and Certifications forms that were signed as part of its application.

**Condition 16**
Conflict of Interest: Recipients and subrecipients must disclose in writing to the COPS Office or pass-through entity, as applicable, any potential conflict of interest affecting the awarded federal funding in 2 C.F.R. § 200.112.

**Condition 17**
Debarment and Suspension: The recipient agrees not to award federal funds under this program to any party which is debarred or suspended from participation in federal assistance programs. 2 C.F.R. Part 180 (Government-wide Nonprocurement Debarment and Suspension) and 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension).

**Condition 18**
Equal Employment Opportunity Plan (EEOP): Please see the Office for Civil Rights website https://www.ojp.gov/eeop-notice for current information on the recipient's responsibilities related to the federal regulations pertaining to the development and implementation of an Equal Employment Opportunity Plan.

**Condition 19**
Employment Eligibility: The recipient agrees to complete and keep on file, as appropriate, the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS) Employment Eligibility Verification Form (I-9). This form is to be used by recipients of federal funds to verify that persons are eligible to work in the United States. Immigration Reform and Control Act of 1986 (IRCA), Public Law 99-603.

**Condition 20**
Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information: Recipients and subrecipients agree not to discharge, demote, or otherwise discriminate against an employee as reprisal for the employee disclosing information that he or she reasonably believes is evidence of gross mismanagement of a federal contract or award, a gross waste of federal funds, an abuse of authority relating to a federal contract or award, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal

contract (including the competition for or negotiation of a contract) or award. Recipients and subrecipients also agree to provide to their employees in writing (in the predominant native language of the workforce) of the rights and remedies provided in 41 U.S.C. § 4712. Please see appendices in the Award Owner's Manual for a full text of the statute.

**Condition 21**
False Statements: False statements or claims made in connection with COPS Office awards may result in fines, imprisonment, debarment from participating in federal awards or contracts, and/or any other remedy available by law. 31 U.S.C. § 3729-3733.

**Condition 22**
Mandatory Disclosure: Recipients and subrecipients must timely disclose in writing to the Federal awarding agency or pass-through entity, as applicable, all federal criminal law violations involving fraud, bribery, or gratuity that may potentially affect the awarded federal funding. Recipients that receive an award over $500,000 must also report certain civil, criminal, or administrative proceedings in SAM and are required to comply with the Term and Condition for Recipient Integrity and Performance Matters as set out in 2 C.F.R. Part 200, Appendix XII to Part 200. Failure to make required disclosures can result in any of the remedies, including suspension and debarment, described in 2 C.F.R. § 200.339. 2 C.F.R. § 200.113.

**Condition 23**
Reports/Performance Goals: To assist the COPS Office in monitoring and tracking the performance of your award, your agency will be responsible for submitting semi-annual programmatic performance reports that describe project activities during the reporting period and quarterly Federal Financial Reports using Standard Form 425 (SF-425). 2 C.F.R. §§ 200.328 - 200.329. The performance report is used to track your agency's progress in implementing the award, and, as applicable, community policing strategies including gauging the effectiveness of your agency's community policing capacity. The Federal Financial Report is used to track the expenditures of the recipient's award funds on a cumulative basis throughout the life of the award.

**Condition 24**
System for Award Management (SAM.gov) and Universal Identifier Requirements: The recipient agrees to comply with the following requirements of 2 C.F.R. Part 25, Appendix A to Part 25 – Award Term:
I. System for Award Management (SAM.gov) and Universal Identifier Requirements
(a) Requirement for System for Award Management. (1) Unless exempt from this requirement under 2 CFR 25.110, the recipient must maintain a current and active registration in SAM.gov. The recipient's registration must always be current and active until the recipient submits all final reports required under this Federal award or receives the final payment, whichever is later. The recipient must review and update its information in SAM.gov at least annually from the date of its initial registration or any subsequent updates to ensure it is current, accurate, and complete. If applicable, this includes identifying the recipient's immediate and highest-level owner and subsidiaries and providing information about the recipient's predecessors that have received a Federal award or contract within the last three years.
(b) Requirement for Unique Entity Identifier (UEI). (1) If the recipient is authorized to make subawards under this Federal award, the recipient:
(i) Must notify potential subrecipients that no entity may receive a subaward until the entity has provided its UEI to the recipient.
(ii) Must not make a subaward to an entity unless the entity has provided its UEI to the recipient. Subrecipients are not required to complete full registration in SAM.gov to obtain a UEI.
(c) Definitions. For the purposes of this award term:
System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide the information required for the conduct of business as a recipient. Additional information about registration procedures may be found in SAM.gov (currently at https://www.sam.gov).
Unique entity identifier means the universal identifier assigned by SAM.gov to uniquely identify an entity.
Entity is defined at 2 CFR 25.400 and includes all of the following types as defined in 2 CFR 200.1:
(1) Non-Federal entity;
(2) Foreign organization;
(3) Foreign public entity;
(4) Domestic for-profit organization; and
(5) Federal agency.

Subaward has the meaning given in 2 CFR 200.1.
Subrecipient has the meaning given in 2 CFR 200.1.

**Condition 25**
Additional High-Risk Recipient Requirements: The recipient agrees to comply with any additional requirements that may be imposed during the award performance period if the awarding agency determines that the recipient is a high-risk recipient. 2 C.F.R. § 200.208.

**Condition 26**
Allowable Costs: The funding under this award is for the payment of approved costs for program-specific purposes. The allowable costs approved for your agency's award are limited to those listed in your agency's award package. In accordance with 2 C.F.R. § 200.400(g), the recipient or subrecipient must not earn or keep any profit resulting from the award. Your agency may not use award funds for any costs not identified as allowable in the award package.

**Condition 27**
Training Guiding Principles: Any training or training materials developed or delivered with award funding provided by the Office of Community Oriented Policing Services is to adhere to the following guiding principles –

1. Trainings must comply with applicable law.
In developing and conducting training under the award, recipients (and any subrecipients) shall not violate the Constitution or any federal law, including any law prohibiting discrimination.

2. The content of trainings and training materials must be accurate, appropriately tailored, and focused.
The content of training programs must be accurate, useful to those being trained, and well matched to the program's stated objectives. Training materials used or distributed at trainings must be accurate, relevant, and consistent with these guiding principles.

3. Trainers must be well-qualified in the subject area and skilled in presenting it.
Trainers must possess the subject-matter knowledge and the subject-specific training experience necessary to meet th

4. Trainers must demonstrate the highest standards of professionalism.
Trainers must comport themselves with professionalism. While trainings will necessarily entail varying teaching styles, techniques, and degrees of formality, as appropriate to the particular training goal, professionalism demands that trainers instruct in the manner that best communicates the subject matter while conveying respect for all.

**Condition 28**
Computer Network Requirement: The recipient understands and agrees that no award funds may be used to maintain or establish a computer network unless such network blocks the viewing, downloading, and exchanging of pornography. Nothing in this requirement limits the use of funds necessary for any federal, state, tribal, or local law enforcement agency or any other entity carrying out criminal investigations, prosecution, or adjudication activities. Full-Year Continuing Appropriations and Extensions Act, 2025, Public Law 119-4; Consolidated Appropriations Act, 2024, Public Law 118-42, Division C, Title V, Section 527.

**Condition 29**
Evaluations: The COPS Office may conduct monitoring or sponsor national evaluations of its award programs. The recipient agrees to cooperate with the monitors and evaluators. 34 U.S.C. § 10385(b).

**Condition 30**
Extensions: Recipients may request an extension of the award period to receive additional time to implement their award program. Such extensions do not provide additional funding. Only those recipients that can provide a reasonable justification for delays will be granted no-cost extensions. Extension requests must be received prior to the end date of the award. 2 C.F.R. §§ 200.308(f)(10) and 200.309.

**Condition 31**
Human Subjects Research: The recipient agrees to comply with the provisions of the U.S. Department of Justice's

common rule regarding Protection of Human Subjects, 28 C.F.R. Part 46, prior to the expenditure of Federal funds to perform such activities, if applicable. The recipient also agrees to comply with 28 C.F.R. Part 22 regarding the safeguarding of individually identifiable information collected from research participants.

## Condition 32
Modifications: Award modifications are evaluated on a case-by-case basis in accordance with 2 C.F.R. § 200.308(i). For federal awards in excess of the simplified acquisition threshold (currently, $250,000), any modification request involving the reallocation of funding between budget categories that exceed or are expected to exceed 10 percent (10%) of the total approved budget requires prior written approval by the COPS Office. Regardless of the federal award amount or budget modification percentage, any reallocation of funding is limited to approved budget categories. In addition, any budget modification that changes the scope of the project requires prior written approval by the COPS Office.

## Condition 33
The Paperwork Reduction Act Clearance and Privacy Act Review: Recipient agrees, if required, to submit all surveys, interview protocols, and other information collections to the COPS Office for submission to the Office of Management and Budget (OMB) for clearance under the Paperwork Reduction Act (PRA). Before submission to OMB, all information collections that request personally identifiable information must be reviewed by the COPS Office to ensure compliance with the Privacy Act. The Privacy Act compliance review and the PRA clearance process may take several months to complete. 44 U.S.C. §§ 3501-3520 and 5 U.S.C. § 552a.

## Condition 34
Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment: Recipient agrees that it, and its subrecipients, will not use award funds to extend, renew, or enter into any contract to procure or obtain any covered telecommunication and video surveillance services or equipment as described in 2 CFR §200.216. Covered services and equipment include telecommunications or video surveillance services or equipment produced or provided by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities); Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities); or an entity that the Secretary of Defense, in consultation with the Director of the National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an entity owned or controlled by, or otherwise connected to, the government of China. The use of award funds on covered telecommunications or video surveillance services or equipment are unallowable.
2. C.F.R. § § 200.216 & 471. See also Section 889 of the John S. McCain National Defense Authorization Act of Fiscal Year 2019, Public Law 115-232.

## Condition 35
Sole Source Justification: Recipients who have been awarded funding for the procurement of an item (or group of items) or service in excess of the simplified acquisition threshold (currently, $250,000) and who plan to seek approval for use of a noncompetitive procurement process must provide a written sole source justification to the COPS Office for approval prior to obligating, expending, or drawing down award funds for that item or service. 2 C.F.R. § 200.325(b)(2).

## Condition 36
Supplementing, not Supplanting: State, local, and tribal government recipients must use award funds to supplement, and not supplant, state, local, or Bureau of Indian Affairs (BIA) funds that are already committed or otherwise would have been committed for award purposes (hiring, training, purchases, and/or activities) during the award period. In other words, state, local, and tribal government recipients may not use COPS Office funds to supplant (replace) state, local, or BIA funds that would have been dedicated to the COPS Office-funded item(s) in the absence of the COPS Office award. 34 U.S.C. § 10384(a).

## Condition 37
Travel Costs: Travel costs for transportation, lodging and subsistence, and related items are allowable with prior approval from the COPS Office. Payment for allowable travel costs will be in accordance with 2 C.F.R. § 200.475.

## Condition 38
Copyright: If applicable, the recipient may copyright any work that is subject to copyright and was developed, or for

which ownership was acquired, under this award in accordance with 2 C.F.R. § 200.315(b). The COPS Office reserves a royalty-free, nonexclusive and irrevocable license to reproduce, publish, or otherwise use the work, in whole or in part (including create derivative works), for Federal Government purposes, and to authorize others to do so. The COPS Office also reserves the right, at its discretion, not to publish deliverables and other materials developed under this award as a U.S. Department of Justice resource.

Products and deliverables developed with award funds and published as a U.S. Department of Justice resource will contain the following copyright notice:

"This resource was developed under a federal award and may be subject to copyright. The U.S. Department of Justice reserves a royalty-free, nonexclusive, and irrevocable license to reproduce, publish, or otherwise use the work for Federal Government purposes and to authorize others to do so. This resource may be freely distributed and used for noncommercial and educational purposes only."

**Condition 39**
Requirement to report actual or imminent breach of personally identifiable information (PII).

The recipient (and any subrecipient at any tier) must have written procedures in place to respond in the event of an actual or imminent breach (as defined in OMB M-17-12) if it (or a subrecipient)-- 1) creates, collects, uses, processes, stores, maintains, disseminates, discloses, or disposes of personally identifiable information (PII) (as defined in 2 C.F.R. 200.1) within the scope of a COPS Office grant-funded program or activity, or 2) uses or operates a Federal information system (as defined in OMB Circular A-130). The recipient's breach procedures must include a requirement to report actual or imminent breach of PII to the recipient's COPS Office Program Manager no later than 24 hours after an occurrence of an actual breach, or the detection of an imminent breach.

**Condition 40**
Domestic preferences for procurements: Recipient agrees that it, and its subrecipients, to the greatest extent practicable, will provide a preference for the purchase, acquisition, or use of goods, products, and materials produced in, and services offered in, the United States. 2. C.F.R. § 200.322 and Executive Order 14005, Ensuring the Future is Made in All of America by All of America's Workers, January 25, 2021.

**Condition 41**
The recipient understands that one or more cost items within the approved budget is subject to further programmatic review. The recipient agrees not to obligate, expend, or draw down funds for these specific cost items until the COPS Office issues an Award Condition Modification (ACM) which will remove this award condition and release the identified funds. The partial withholding is specific to cost items requiring further review and will not impact use of the remaining funding. For additional information on the specific cost item(s) that are pending programmatic review, please contact the COPS Office Program Manager.

**Condition 42**
Public Release Information: The recipient agrees to submit one copy of all reports and proposed publications resulting from this award ninety (90) days prior to public release. Any publications (written, curricula, visual, sound, or websites) or computer programs, whether or not published at government expense, shall contain the following statement:

"This project was supported, in whole or in part, by federal award number [YYYY-XX-XXXX] awarded to [Entity] by the U.S. Department of Justice, Office of Community Oriented Policing Services. The opinions contained herein are those of the author(s) or contributor(s) and do not necessarily represent the official position or policies of the U.S. Department of Justice. References to specific individuals, agencies, companies, products, or services should not be considered an endorsement by the author(s), contributor(s), or the U.S. Department of Justice.

[ ] *I have read and understand the information presented in this section of the Federal Award Instrument.*

**Award Acceptance**

**Declaration and Certification to the U.S. Department of Justice as to Acceptance**

By checking the declaration and certification box below, I--

A.   Declare to the U.S. Department of Justice (DOJ), under penalty of perjury, that I have authority to make this declaration and certification on behalf of the applicant.

B.   Certify to DOJ, under penalty of perjury, on behalf of myself and the applicant, to the best of my knowledge and belief, that the following are true as of the date of this award acceptance: (1) I have conducted or there was conducted (including by applicant's legal counsel as appropriate and made available to me) a diligent review of all terms and conditions of, and all supporting materials submitted in connection with, this award, including any assurances and certifications (including anything submitted  in connection therewith by a person on behalf of the applicant before, after, or at the time of the application submission and any materials that accompany this acceptance and certification); and (2) I have the legal authority to accept this award on behalf of the applicant.

C.   Accept this award on behalf of the applicant.

D.   Declare the following to DOJ, under penalty of perjury, on behalf of myself and the applicant:  (1) I understand that, in taking (or not taking) any action pursuant to this declaration and certification, DOJ will rely upon this declaration and certification as a material representation; and (2) I understand that any materially false, fictitious, or fraudulent information or statement in this declaration and certification (or concealment or omission of a material fact as to either) may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the applicant to civil penalties and administrative remedies under the federal False Claims Act (including under 31 U.S.C. §§ 3729-3730 and/or §§ 3801-3812) or otherwise.

**Agency Approval**

| **Title of Approving Official** | **Name of Approving Official** | **Signed Date And Time** |
|---|---|---|
| COPS Acting Director | Cory D. Randolph | 9/29/25 7:17 PM |

## Authorized Representative

☐ Declaration and Certification (Law Enforcement Executive/Program Official)

**Entity Acceptance**

**Title of Authorized Entity Official**
no value

**Name of Authorized Entity Official**
no value

**Signed Date And Time**
no value

☐ Declaration and Certification (Government Executive/Financial Official)

**Entity Acceptance**

**Title of Authorized Entity Official**
County Executive

**Name of Authorized Entity Official**
no value

**Signed Date And Time**
no value