DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
KARUN A. TILAK, SBN 323939
JESSE E. LANIER, SBN 303395
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, CA 94102-5408
Telephone: (415) 554-4223
Facsimile: (415) 437-4644
E-Mail:      Karun. Tilak@sfcityatty.org
             Jesse.Lanier@sfcityatty.org

Attorneys for Plaintiffs
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; CITY OF TUCSON; and CITY OF SAN DIEGO,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in her Official Capacity; OFFICE OF COMMUNITY ORIENTED POLICING SERVICES; and CORY D. RANDOLPH, in his official capacity,<br><br>Defendants. | Case No. 3:25-cv-09277-JD<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:  December 18, 2025<br>Time:          10:00 a.m.<br>Judge:         Hon. James Donato<br>Place:         Courtroom 11<br><br>Date Filed:    October 28, 2025<br>Trial Date:    None Set |

This matter came before the Court on Plaintiffs' Motion for a Preliminary Injunction (the "Motion"). Having considered the briefs and declarations submitted in support of and in opposition to the Motion, and the other pleadings and papers filed in this action, and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

1. In 1994, Congress passed the Public Safety Partnership and Community Policing Act, Pub. L. No. 103-322, Title I, Sept. 13, 1994, 108 Stat. 1807 ("COPS Statute").

2. The COPS Statute authorizes the disbursement of grants to local law enforcement agencies to "increase police presence, to expand and improve cooperative efforts between law enforcement agencies and members of the community to address crime and disorder problems, and otherwise to enhance public safety." *Id.* at 108 Stat 1796 at § 7101.

3. Congress specifically authorized the Attorney General to administer grants "to hire and train new, additional career law enforcement officers for deployment in community-oriented policing," 34 U.S.C. § 10381(b)(2); to provide specialized training in "verbal de-escalation" and interaction with individuals with mental illnesses, 34 U.S.C. § 10381(b)(19)(20); and "to establish peer mentoring mental health and wellness pilot programs" for local law enforcement agencies, 34 U.S.C. § 10381(b)(24).

4. Congress mandated that "each application for a [COPS grant] . . . shall . . . provide assurances that the applicant will, to the extent practicable, seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks within the sworn positions in the law enforcement agency." 34 U.S.C. § 10382(c)(11) (emphases added).

5. On October 10, 2025, Plaintiffs in this case were each awarded grants from one or more of the following programs: the COPS Hiring Program ("Hiring Grant"), the COPS Policing Development Recruitment Microgrant ("Recruitment Microgrant"), the Law Enforcement Mental Health and Wellness Act Grant ("Mental Health Grant"), or the Safer Outcomes: Enhancing De-Escalation and Crisis Response Grant ("Safer Outcomes Grant") (collectively, the "COPS Grants").

6. Each of Plaintiffs' Grant Awards contains two types of unlawful conditions that have never been previously imposed on Plaintiffs: (1) a Discrimination Condition that, particularly when

read in conjunction with a July 29, 2025 Memorandum by Attorney General Pamela J. Bondi (the "July Bondi Memo"), requires Plaintiffs to operate in a way that is contrary to settled antidiscrimination law and contradicts the express requirements of the COPS Statute, and (2) an Executive Order Condition requiring compliance with "all" executive orders and Presidential Memoranda.  Further, the Notice of Funding Opportunities ("NOFOs") for each of the COPS Grants prohibit Plaintiffs from using the Grants for various purposes (the "Federal Funding Restrictions")—none of which has any connection to the COPS Statute or to providing support for community policing.  Collectively, the Discrimination Condition, the EO Condition, and the Federal Funding Restrictions are referred to herein as the "Challenged Conditions."

7. The Discrimination Condition (Condition 3 of the Grant Awards) requires Plaintiffs to "certif[y]" that they do "not operate any program (including any such programs having components relating to diversity, equity, and inclusion) that violates any applicable Federal civil rights or antidiscrimination laws."  Declaration of Sean Frost ("Frost Decl.") Ex. A (SFPD Hiring Grant Award) at pp. 5-6; Declaration of Chad Kasmar ("Kasmar Decl.") Decl. Ex. A (TDPD Recruitment Microgrant Award) at p. 6; Declaration of Robert Jonsen ("Jonsen Decl.") Decl. Ex. A (SCCSO Mental Health Grant Award) at p. 6; Declaration of Kyle Meaux ("Meaux Decl.") Decl. Ex. A (SDPD Hiring Grant Award) at pp. 5-6; Ex. B. (SDPD Safer Outcomes Grant Award) at p. 6.

8. When Plaintiffs have certified compliance with federal civil rights and antidiscrimination law as a condition of federal funding in the past, Plaintiffs were certifying compliance with antidiscrimination law as enacted by Congress and interpreted by the courts.

9. On July 29, 2025, after each of the Plaintiffs had submitted their grant applications, Attorney General Pamela Bondi issued a memorandum titled Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination (the "July Bondi Memo" or the "Memo").  See RJN Ex. E (July Bondi Memo).

10. The Memo purports to "clarif[y] the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ('DEI') programs." *Id.* at p. 1 (emphasis added).  The Memo asserts that practices and policies that have long been understood to be lawful—including training and educational

programs, scholarships, and hiring policies designed to support historically marginalized groups—are unlawful and discriminatory. *See id.* at pp. 4-8 (classifying as unlawful the "prioritiz[ation] [of] candidates from 'underrepresented groups' for admission, hiring, or promotion"; and policies that "set[] racial benchmarks or mandate[] demographic representation in candidate pools, such as requiring a certain percentage of finalists to be from 'diverse' backgrounds.").

11. The EO Condition (Condition 4 of the Grant Awards) requires Plaintiffs to "comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President." Frost Decl. Ex. A at p. 6; Kasmar Decl. Ex. A at p. 6; Jonsen Decl. Ex. A at p. 6; Meaux Decl. Ex. A at p. 6; Ex. B. at p. 6.

12. The NOFOs for each of the four types of COPS Grants at issue here include a section called "Federal Funding Restrictions." Federal Funding Restrictions prohibit the use of awarded grants for a hodgepodge of purposes including: (1) directly or indirectly supporting educational institutions "[requiring] students to have received a COVID-19 vaccination to attend any in-person education program," (2) promoting "gender ideology," (3) supporting "projects that provide or advance diversity, equity, inclusion, and accessibility or environmental justice programs, services, or activities," and (4) "fail[ing] to protect public monuments, memorials, and statues." See RJN Ex. A (Hiring Grant NOFO) at p. 15; RJN Ex. B (Mental Health Grant NOFO) at p. 15; RJN Ex. C (Recruitment Microgrant NOFO) at p. 22; RJN Ex. D (Safer Outcomes NOFO) at p.20. There is no statutory authority for these Restrictions, and these Restrictions have no connection to supporting community policing. Moreover, many key terms in these Restrictions are undefined and indecipherable.

13. The Grants also require Plaintiffs to agree that compliance with "all applicable Federal civil rights and antidiscrimination laws" is "material" for the purposes of the False Claims Act ("FCA"). Frost Decl. Ex. A at p. 5; Kasmar Decl. Ex. A at p. 6; Jonsen Decl. Ex. A at p. 6; Meaux Decl. Ex. A at p. 5; Ex. B. at p. 5. The FCA imposes liability on "any person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Each violation of the FCA is punishable by mandatory treble damages plus civil penalties. 31 U.S.C. § 3729(a); *see also* 28 C.F.R. § 85.5(a).

14. On May 19, 2025, the DOJ formed a task force to target grantees that sign such certifications. The DOJ has described potential liability under the FCA as a "primary weapon" it will deploy to enforce its proscription on DEI programs and has "strongly encourag[ed]" private parties to bring civil suits against grant recipients. See RJN Ex. F (Civil Rights Fraud Initiative Memo), at pp. 1, 2.

15. There is no statutory authority for the Challenged Conditions. The COPS Statute does not authorize Defendants to impose the Discrimination Condition; in fact, that condition, when read alongside the Memo, is contrary to the COPS Statute. *See* 34 U.S.C. § 10382(c)(11). Nor does the COPS Statute authorize Defendants to impose the myriad EOs and Presidential Memoranda incorporated by the EO Condition, or the President's policy preferences reflected in the Federal Funding Restriction.

16. The Challenged Conditions are also ambiguous.

    a. The Discrimination Condition, particularly when read alongside the Memo, creates significant uncertainty about what meaning and scope Defendants intend the Discrimination Condition to carry. The Discrimination Condition and Memo also unsettle the meaning of various other conditions requiring Plaintiffs to comply with civil rights and antidiscrimination laws (collectively the "Civil Rights Conditions"). Frost Decl. Ex. A at pp. 6-7, 11; Kasmar Decl. Ex. A at pp. 6-7, 11; Jonsen Decl. Ex. A at pp. 7-8, 11; Meaux Decl. Ex. A at pp. 6-7, 11; Ex. B. at pp. 6-7, 11. Specifically, it is unclear whether Plaintiffs are agreeing to comply with those statutes as written by Congress and interpreted by the courts, or whether Plaintiffs are agreeing to the Executive Branch's reinterpretation of those laws to advance the President's policy agenda. The Discrimination Condition also creates a conflict with the COPS Statute itself, including the requirement that award recipients "seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks within the sworn positions." 34 U.S.C. § 10382(c)(11).

      b.    The EO Condition does not define what counts as "applicable" and has no meaningful limiting principle. It could be read to require Plaintiffs to comply with "all" existing EOs and Presidential Memoranda (itself an undefined term), regardless of whether they actually relate to COPS Grants; EOs and Memoranda yet to be issued; EOs and Memoranda that have been enjoined as unlawful or unconstitutional; EOs and Memoranda with vague or indiscernible terms; or EOs and Memoranda that contradict the COPS Statute.

      c.    The Federal Funding Restriction is also ambiguous because it fails to define key terms, like "projects that provide or advance diversity, equity, inclusion, and accessibility or environmental justice programs, services, or activities," "to promote gender ideology"; to "directly or indirectly" "support or subsidize" an educational institution that requires COVID-19 vaccinees; and to "have failed to protect" "public monuments, memorials, and statues" from "destruction and vandalism."

17.    The Challenged Conditions have no nexus to the purpose of the COPS grants, which are intended to advance community policing and public safety. The Discrimination Condition's requirements run contrary to the purpose of COPS grants articulated in the COPS Statute: to increase the number of racial and ethnic minorities and women in the officer ranks. 34 U.S.C. § 10382(c)(11). The EO Condition and Federal Funding Condition impose conditions that are not reasonably calculated to advance community policing.

18.    Defendants acted arbitrarily and capriciously in adopting the Challenged Conditions and imposing them on Plaintiffs' grants. The Challenged Conditions reflect a change in the grant conditions applicable to COPS Grants, but Defendants have not considered the statutory requirements of the COPS Grants, Plaintiffs' reliance interests, or alternatives to the Challenged Conditions, and have offered no explanation for their decision.

19.    Plaintiffs face immediate and irreparable harm from the imposition of the Challenged Conditions during the pendency of this litigation absent a preliminary injunction. Plaintiffs must decide as early as January 9, 2026 to either accept these unlawful conditions or lose their COPS

Grants. Plaintiffs do not have the financial capacity to support the COPS Grants projects while also maintaining their other current operations, and losing the COPS Grants will result in a reduction in critical public safety services for Plaintiffs' communities.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over Defendants and the subject matter of this action.

2. "A loss of funds promised under federal law satisfies Article III's standing requirement." *City & Cnty. of San Francisco v. Trump* ("*San Francisco*"), 897 F.3d 1225, 1235 (9th Cir. 2018) (cleaned up); *Arizona v. Yellen*, 34 F.4th 841, 852 (9th Cir. 2022). Plaintiffs therefore have standing to bring this suit.

3. Defendants' policy decision to adopt the Challenged Conditions and apply them to grant recipients like Plaintiffs is a "final agency action" subject to review under the APA. The same is true for Defendants' attachment of the Challenged Conditions to Plaintiffs' Grant Awards. *See* 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted).

4. The imminent loss of funds through infringement of Plaintiffs' constitutional and statutory rights is traceable to the Challenged Conditions—collectively and individually. This harm is redressable by an order restraining their enforcement. "An injunction enjoining Defendants from enforcing the [Challenged Conditions] would [also] redress Plaintiffs' alleged injury of having to either modify their conduct or risk making a false certification." *San Francisco A.I.D.S. Found. v. Trump*, No. 25-CV-01824-JST, 2025 WL 1621636, at *10 (N.D. Cal. June 9, 2025).

5. There is a strong likelihood that Plaintiffs will succeed on the merits of their claims that the Challenged Conditions violate (1) the Separation of Powers, *see San Francisco*, 897 F.3d at 1234; (2) the spending power, *see S. Dakota v. Dole*, 483 U.S. 203, 207–08 (1987); and (3) the APA, 5 U.S.C. § 706(2).

6. Plaintiffs are likely to suffer irreparable harm during the pendency of this litigation in the absence of the issuance of a preliminary injunction.

7. The balance of equities strongly tips towards Plaintiffs, and the public interest strongly weighs in favor of entering a preliminary injunction.

8.    Defendants have not posited any non-monetary harm they will experience if an injunction were to issue, and Defendants have no legitimate interest in ensuring that funds are spent pursuant to conditions that were likely imposed in violation of the United States Constitution and the APA. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (defendants "cannot suffer harm from an injunction that merely ends an unlawful practice").

9.    An injunction also further protects the public interest because the distribution of funds consistent with Congress's determinations that the federal government should provide monetary and logistical support to community policing.

10.    No security bond is required under Federal Rule of Civil Procedure 65(c).

## ORDER

1.    Plaintiffs' Motion for Preliminary Injunction is **GRANTED**;

2.    Defendants and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them (collectively "Enjoined Parties"), are enjoined during the pendency of this lawsuit from:

(a)    imposing or enforcing the Challenged Conditions, or any materially similar terms or conditions in connection with federal funding, at any stage of the grantmaking process, including but not limited to in new grant applications, applications for continuation funding, notices of funding availability or opportunity, certifications, grant agreements, post-award submissions, or reimbursement requests, with respect to any COPS Grants awarded to Plaintiffs or their subrecipients;

(b) attaching, incorporating, imposing, or enforcing any interpretation of the Civil Rights Conditions as requiring anything other than compliance with the statutes cited in the Civil Rights Conditions as they have been enacted by Congress and interpreted by the judiciary;

(c) as to Plaintiffs or their subrecipients, rescinding, withholding, cancelling, or otherwise not processing any DOJ COPS grant agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning DOJ COPS funds, based on such terms or conditions, including without limitation failing or refusing to process

and otherwise implement grants signed with changes or other objections to conditions enjoined by this preliminary injunction;

(d) requiring Plaintiffs or their subrecipients to make any "certification" or other representation or assurance related to compliance with the Challenged Conditions or any materially similar term or condition; or

(e) retaliating against any Plaintiff for participating in this lawsuit or taking any adverse action based on any Plaintiff's participation in this lawsuit, including but not limited to rescinding or reducing the amount of a grant award to that Plaintiff; refusing to issue, process, sign, or approve grant applications, grant agreements, or subgrant agreements; and refusing to issue, process, sign, or approve any invoice or request for payment, or reducing the amount of such approval or payment.

3. The Enjoined Parties shall immediately treat any actions taken to implement or enforce the Challenged Conditions or any materially similar terms or conditions as to the Plaintiffs or their subrecipients (including but not limited to any delays or withholding of funds based on such conditions) as null, void, and rescinded; while this preliminary injunction is in effect, shall treat as null and void any such conditions included in any grant agreement executed by any of the Plaintiffs or their subrecipients; and may not retroactively apply such conditions to grant agreements during the effective period of this preliminary injunction. The Enjoined Parties shall immediately take every step necessary to effectuate this order, including without limitation clearing any administrative, operational, or technical hurdles to implementation;

4. Defendants' counsel shall provide written notice of this Order to all Enjoined Parties and their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with them by the end of the second calendar day after issuance of this Order;

5. By the end of the second day after issuance of this Order, the Defendants **SHALL FILE** on the Court's electronic docket and serve upon Plaintiffs a Status Report documenting the actions that they have taken to comply with this Order, including a copy of the notice and an explanation as to whom the notice was sent; and

6. This Order remains in effect pending further orders from this Court.

**IT IS SO ORDERED.**

Dated: _____

_____
HON. JAMES DONATO
United States District Judge