1   CRAIG H. MISSAKIAN (CABN 125202)
    United States Attorney
2   PAMELA T. JOHANN (CABN 145558)
    Chief, Civil Division
3   JEVECHIUS D. BERNARDONI (CABN 281892)
    Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102-3495
        Telephone: (415) 436-7224
6       Facsimile: (415) 436-6748
        jevechius.bernardoni@usdoj.gov
7
    Attorneys for Defendants
8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12  CITY AND COUNTY OF SAN FRANCISCO, *et al.*,                    Case No. 3:25-cv-09277-JD

13          Plaintiffs,                            **DEFENDANTS' OPPOSITION TO
                                                   PLAINTIFFS' MOTION FOR A
14      v.                                         PRELIMINARY INJUNCTION**

15  UNITED STATES DEPARTMENT OF JUSTICE,           Hearing Date: December 18, 2025
    *et al.*,                                      Time: 10:00 a.m.
16
            Defendants.                            The Honorable James Donato
17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

_Toc215218439
I. Introduction ................................................................................................................. 1

II. Background ................................................................................................................. 2

A. Legal Background ..................................................................................................... 2

B. This Litigation .......................................................................................................... 5

III. Legal Standard .......................................................................................................... 5

IV. Argument ................................................................................................................... 6

A. This Court Lacks The Power To Order Monetary Payments ..................................... 6

B. Plaintiffs Are Unlikely To Succeed On The Merits .................................................. 8

1. All Challenged Conditions Are Lawful And Constitutional ................................... 8

(i) The Anti-Discrimination Condition Is Constitutional ....................................... 8

(a) The Anti-Discrimination Condition Does Not Violate The "Separation of Powers" .......................................................................................................... 10

(b) The Anti-Discrimination Condition Does Not Violate The Spending Clause ....... 12

(ii) The EO Condition And The Federal Funding Restrictions Are Constitutional ........ 15

(a) The EO Condition And The Federal Funding Restrictions Do Not Violate The "Separation of Powers" .............................................................................. 15

(b) The EO Condition And The Federal Funding Restrictions Do Not Violate The Spending Clause .......................................................................................... 15

2. All Challenged Conditions Do Not Violate The APA ...................................... 16

(i) Plaintiffs' Grant Awards Are Not Reviewable Because They Are Committed To Agency Discretion .................................................................................... 16

(ii) Plaintiffs' APA Claim Also Fails On The Merits ...................................... 17

C. Plaintiffs Have Failed To Demonstrate Irreparable Harm ..................................... 19

D. The Balance Of The Equities Favors Denying The Motion .................................... 20

E. Other Non-Binding District Court Decisions—Based On Distinct Grant Programs, Conditions, And Factual Circumstances—Do Not Control The Outcome Here ...................... 21

F. Any Injunctive Relief Should Be Narrowly Tailored ............................................. 22

G. Any Injunctive Relief Should Be Accompanied By A Bond ................................... 22

V. Conclusion ................................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) .......................... 20

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,

    357 F.3d 62 (D.C. Cir. 2004) ........................................................................ 6

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .................................. 6

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470 (9th Cir. 1985) ................................ 20

*Bd. of Educ. for the Silver Consol. Schs. v. McMahon*,

    No. 25-cv-586, 2025 WL 2017177 (D.N.M. July 18, 2025) ........................ 12

*Boaz Hous. Auth. v. United States*, 994 F.3d 1359 (Fed. Cir. 2021) ................................ 6

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020) ........................................ 14

*Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668 (9th Cir 1988) .......................... 19

*City of Arlington v. FCC*, 569 U.S. 290 (2013) ........................................ 11

*City of Chelsea v. Trump*, No. 25-10442, 2025 WL 2807831 (D. Mass. Oct. 2, 2025) .................... 19, 21

*City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019) .................................. 12, 13, 14, 18

*City of Los Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019) ........................................ 11

*Climate United Fund v. Citibank, N.A.*, --- F.4th ----, 2025 WL 2502881 (D.C. Cir. Sept. 2, 2025) ... 6, 11

*County Sch. Bd. v. RT*, 433 F. Supp. 2d 692 (E.D. Va. 2006) ........................................ 12

*Dalton v. Specter*, 511 U.S. 462 (1994) ........................................ 11

*Dep't of Educ. v. California*, 604 U.S. 650 (2025) ........................................ 6, 7

*FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) ........................................ 18

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ................................ 6

*Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582 (1983) .................... 9, 16

*Harris Cnty. v. Kennedy*, 786 F. Supp. 3d 194 (D.D.C. 2025) ........................................ 12

*Heckler v. Chaney*, 470 U.S. 821 (1985) ........................................ 17

*Holley v. United States*, 124 F.3d 1462 (Fed. Cir. 1997) ........................................ 8

*Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985) ................................ 6

*Lamie v. U.S. Tr.*, 540 U.S. 526 (2004) ........................................ 14

1  *Lincoln v. Vigil*, 508 U.S. 182 (1993) ................................................................. 17

2  *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025 (9th Cir. 2013).................. 17

3  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012) ................. 6

4  *Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ............................... 12, 13, 16

5  *Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219 (2025) ................................ 6

6  *Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002) ................................. 17

7  *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) ............................................ 7

8  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ................................ 18

9  *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (Mem.) (2025)............................. 7, 20

10  *Nat'l Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563 (D.C. Cir. May 16, 2025) ..... 22

11  *Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61 (D.D.C. 2025) ............................ 16

12  *New York v. NSF*, 793 F. Supp. 3d 562 (S.D.N.Y. 2025) .................................... 11

13  *Nken v. Holder*, 556 U.S. 418 (2009) ................................................. 5, 20

14  *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ............................. 13

15  *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) ................................. 8

16  *Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62 (D.D.C. 2018).............................. 17

17  *Railway Labor Executives' Ass'n v. ICC*, 958 F.2d 252 (9th Cir. 1991)....................... 21

18  *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991)..... 20

19  *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1200 (N.D. Cal. 2025) ................ 10, 21

20  *Serrato v. Clark*, 486 F.3d 560 (9th Cir. 2007)............................................ 17

21  *Sharp v. Weinberger*, 798 F.2d 1521 (D.C. Cir. 1986) ...................................... 8

22  *South Dakota v. Dole*, 483 U.S. 203 (1987) .............................................. 12

23  *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313 (9th Cir. 1994) .................................... 19

24  *Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024)......................................... 5

25  *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015 (N.D. Cal. 2018).................... 12, 14, 16

26  *State v. Dep't of Just.*, 951 F.3d 84 (2d Cir. 2020) ......................................... 15

27  *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,

28      600 U.S. 181 (2023)............................................................ 9, 14, 19

*Thakur v. Trump*, 148 F.4th 1096 (9th Cir. 2025) ................................................................ 7

*Trump v. Boyle*, 145 S. Ct. 2653 (2025) ............................................................................ 20

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ......................................................................... 22

*Trump v. Wilcox*, 145 S. Ct. 1415 (2025) ......................................................................... 20

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155 (D.D.C. 2025) .......... 8

*United States Conf. of Cath. Bishops v. U.S. Dep't of State*,

    No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025) .............................................. 8

*United States v. Virginia*, 518 U.S. 515 (1996) ................................................................ 19

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) ............... 9

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...................................... 5, 6, 19, 20

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ......................................... 11

**STATUTES**

28 U.S.C. § 1491(a)(1) ..................................................................................................... 6

34 U.S.C. § 10381 *et seq.* ............................................................................................... 3

34 U.S.C. § 10382(c)(11) ............................................................................................... 14

34 U.S.C. § 10388 .......................................................................................................... 3

42 U.S.C. § 2000d ............................................................................................... 8, 11, 14

5 U.S.C. § 701(a)(2) ....................................................................................................... 17

5 U.S.C. § 702 ............................................................................................................... 6

**OTHER AUTHORITIES**

Executive Order 13933, 85 Fed. Reg. 40081 (June 26, 2020) (*Protecting American Monuments,*

    *Memorials, and Statues and Combatting Recent Criminal Violence*) ......................... 4, 5

Executive Order 14189, 90 Fed. Reg. 8849 (Jan. 29, 2025) (*Celebrating America's 250th Birthday*) . 4, 5

Executive Order 14214, 90 Fed. Reg. 9949 (Feb. 214, 2025) (*Keeping Education Accessible and Ending*

    *COVID-19 Vaccine Mandates in Schools*) ............................................................ 4, 5

Executive Order No. 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025) (*Ending Radical and Wasteful*

    *Government DEI Programs and Preferencin*g) ........................................................ 2

Executive Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) (*Defending Women From Gender*

*Ideology Extremism and Restoring Biological Truth to the Federal Government*)............... 2, 4, 5

Executive Order No. 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025) (*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*) ...................................................................................... 2, 4, 5

Executive Order No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025) (*Improving Oversight of Federal Grantmaking*) ................................................................................................................................ 2

Executive Order No. 14352, 90 Fed. Reg. 47219 (Sep. 25, 2025) (*Saving TikTok While Protecting National Security*) ........................................................................................................................ 2

Executive Order No. 14353, 90 Fed. Reg. 48143 (Sep. 29, 2025) (*Assuring the Security of the State of Qatar*)............................................................................................................................................ 2

Executive Order No. 14356, 90 Fed. Reg. 48387 (Oct. 15, 2025) (*Ensuring Continued Accountability in Federal Hiring*) ................................................................................................................................ 2

## **RULES**

Federal Rule of Civil Procedure 65(c) .................................................................................................. 22

## **REGULATIONS**

2 C.F.R. § 200.211(c)(1)(ii) ............................................................................................. 3, 8, 11, 15

2 C.F.R. § 200.300(a).............................................................................................................. 3, 8, 11

2 C.F.R. § 200.303(b)............................................................................................................... passim

## I.  Introduction

The Office of Community Oriented Policing Services ("COPS Office")—a component of the Department of Justice ("DOJ")—administers discretionary, competitive grant programs, including the four programs that are at issue in the complaint, that provide critical resources to law enforcement and the communities they serve. In FY 2025, the COPS Office received approximately 3,100 applications requesting more than $2 billion in funding; with approximately $380 million available, the COPS Office was able to make only about 740 awards.

Plaintiffs are a group of municipalities from across the country who received awards under the four at-issue discretionary, competitive grant programs administered by the COPS Office. Each Plaintiff was aware of the terms and conditions of the grant programs when it applied, and Plaintiffs' grant applications certified that each Plaintiff "will comply with all legal, administrative, and programmatic requirements" including "all Executive Orders, and applicable Presidential Memoranda, program regulations, laws, orders, and circulars." Notwithstanding that they were aware of and already agreed to the grant terms, Plaintiffs now seek to dictate how the COPS Office administers its grant awards. Accordingly, Plaintiffs move this Court for emergency relief that would require the COPS Office to disburse potentially unrecoverable federal funds to recipients, without the terms that the COPS Office has determined properly implement and effectuate the grant programs. In seeking to rewrite the agreed-upon terms of the grant programs, Plaintiffs are not only preventing the disbursement of funds to their own communities, but also to thousands of other competing applicants from across the United States that—like Plaintiffs—agreed to comply with the grant terms. The requested relief is inappropriate.

To begin, the Court lacks jurisdiction over key aspects of what is, at base, a contractual dispute. To the extent Plaintiffs seek to require Defendants to pay money pursuant to federal grant awards, the Tucker Act places those claims within the exclusive jurisdiction of the Court of Federal Claims. Even if the Court had jurisdiction, Plaintiffs' substantive arguments are unlikely to succeed on the merits. Plaintiffs argue that the COPS Office cannot enforce various grant conditions, claiming that the conditions both violate the Constitution and the Administrative Procedure Act ("APA"). But the COPS Office has the statutory authority to implement these conditions and has done so in prior funding years. There is nothing unlawful about ensuring that recipients of federal funds comply with federal law.

1  Plaintiffs also fail to satisfy the other factors for the extraordinary remedy of a preliminary

2  injunction. There is no irreparable injury because Plaintiffs' claimed damages are economic and are thus

3  reparable, and the balance of equities favor Defendants. The Court thus should deny Plaintiffs' motion

4  for a preliminary injunction.

## II.    Background

### A.    Legal Background

7  Since taking office on January 20, 2025, the President has issued several executive orders

8  consistent with federal law, setting the policy priorities for his administration intended to eliminate all

9  types of discrimination. Many focus on the expenditure of federal funds, instructing federal agencies to

10 terminate, review, or revise federal grants. Plaintiffs' motion for preliminary injunction (ECF No. 20,

11 "Mot.") discusses seven of those executive orders:  Executive Order No. 14151, 90 Fed. Reg. 8339 (Jan.

12 20, 2025) (*Ending Radical and Wasteful Government DEI Programs and Preferencing*); Executive Order

13 No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) (*Defending Women From Gender Ideology Extremism and*

14 *Restoring Biological Truth to the Federal Government*); Executive Order No. 14173, 90 Fed. Reg. 8633

15 (Jan. 21, 2025) (*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*); Executive

16 Order No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025) (*Improving Oversight of Federal Grantmaking*);

17 Executive Order No. 14356, 90 Fed. Reg. 48387 (Oct. 15, 2025) (*Ensuring Continued Accountability in*

18 *Federal Hiring*); Executive Order No. 14353, 90 Fed. Reg. 48143 (Sep. 29, 2025) (*Assuring the Security*

19 *of the State of Qatar*); and Executive Order No. 14352, 90 Fed. Reg. 47219 (Sep. 25, 2025) (*Saving*

20 *TikTok While Protecting National Security*). Each of the executive orders discussed in the Motion makes

21 clear that it must be "implemented consistent with applicable law." *See* EO 14151 § 4(b); EO 14168

22 § 8(b); EO 14173 § 8(b); EO 14332 § 7(b); EO 14356 § 5(b); EO 14353 § 4(b); EO 14352 § 6(b).

23 The federal government, through various agencies (including Defendants in this lawsuit),

24 provides funding to state and local governments and other eligible stakeholders using federal financial

25 assistance (through grants and cooperative agreements) that are subject to specified terms and conditions

26 which govern the recipients' use of and continued receipt of the federal funds. As a default matter,

27 government-wide grant regulations issued by the Office of Budget and Management ("OMB") require

28 that federal agencies incorporate "statutory, executive order, other Presidential directive, or regulatory

requirements" into the terms and conditions of federal awards. 2 C.F.R. § 200.211(c)(1)(ii); *see also* 2 C.F.R. § 200.300(a) ("The Federal agency or pass-through entity must manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations— including provisions protecting free speech, religious liberty, public welfare, and the environment, and those prohibiting discrimination—and the requirements of this part."); 2 C.F.R. § 200.303(b) (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards requiring all recipients of federal grants to "[c]omply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award").

The COPS Office administers four discretionary, competitive grant programs that are the subject of the complaint:  (1) FY 2025 Community Policing Development (CPD) Microgrants; (2) FY 2025 Law Enforcement Mental Health and Wellness Act (LEMHWA); (3) FY 2025 COPS Hiring Program (CHP); and (4) FY 2025 Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement (Safer Outcomes). Declaration of Cory Randolph ("Randolph Decl.") ¶¶ 4-8. Each of these four programs is authorized under the Omnibus Crime Control and Safe Streets Act of 1968, as amended, and the Violent Crime Control and Law Enforcement Act of 1994, Title I, Part Q, Public Law 103-322, 34 U.S.C. § 10381 *et seq.* Randolph Decl. ¶ 9. Under 34 U.S.C. § 10388, the Attorney General may promulgate regulations and guidelines to carry out the grant programs. *Id.* Each notice of funding opportunity at issue here included a link to the applicable grant terms and conditions, and those terms and conditions include the Challenged Conditions. *Id.* ¶¶ 11-14 & Exs. A-F. In Plaintiffs' applications for the grant awards, each Plaintiff certified that it "will comply with all legal, administrative, and programmatic requirements that govern the applicant for acceptance and use of federal funds as outlined in the applicable COPS Office Grant Application Resource Guide, the COPS Office Award Owner's Manual, the DOJ Grants Financial Guide, Assurances, Certifications, all Executive Orders, and applicable Presidential Memoranda, program regulations, laws, orders, and circulars." *Id.* ¶ 23 & Exs. H-K. To the extent Plaintiffs have questions about programmatic requirements of these four programs, they may call the COPS Office Response Center at 800-421-6770 or send questions via email to AskCopsRC@usdoj.gov. *Id.* ¶ 27. The COPS Office Response Center operates Monday through

Friday, 9:00 a.m. to 5:00 p.m. ET, except on federal holidays. *Id.*

Plaintiffs now challenge some of the terms and conditions that they were aware of and agreed to when they applied for the grant programs. *First*, the grant terms require Plaintiffs to agree "that [their] compliance with all applicable Federal civil rights and nondiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for purposes of the False Claims Act (31 U.S.C. 3729-3730 and 3801-3812), and, by accepting this award, certif[y] that [they] do[] not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws." Plaintiffs refer to this provision as the "Discrimination Condition" (Mot. at 5), although a more apt name is the "Anti-Discrimination Condition" since its purpose is to end discrimination to the maximum extent allowed by law.

*Second*, the grant awards require that "[r]ecipients of grant funding must comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President." Plaintiffs describe this as the "EO Condition." Mot. at 7.

*Third*, the grant awards prohibit the use of awarded grant funds to, *inter alia*, (1) directly or indirectly support educational institutions "[requiring] students to have received a COVID-19 vaccination to attend any in-person education program," (2) promote "gender ideology," (3) support "projects that provide or advance diversity, equity, inclusion, and accessibility or environmental justice programs, services, or activities," and (4) agencies that "fail to protect public monuments, memorials, and statues." Plaintiffs call these the "Federal Funding Restrictions." Mot. at 7. These Federal Funding Restrictions were based on current national and administration priorities announced in five Executive Orders: Executive Order 14214, 90 Fed. Reg. 9949 (Feb. 214, 2025) (*Keeping Education Accessible and Ending COVID-19 Vaccine Mandates in Schools*); Executive Order 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) (*Defending Women From Gender Ideology Extremism And Restoring Biological Truth To The Federal Government*); Executive Order 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025) (*Ending Illegal Discrimination And Restoring Merit-Based Opportunity*); Executive Order 14189, 90 Fed. Reg. 8849 (Jan. 29, 2025) (*Celebrating America's 250th Birthday*); Executive Order 13933, 85 Fed. Reg. 40081 (June 26, 2020) (*Protecting American Monuments, Memorials, and Statues and Combatting Recent Criminal Violence*).

Randolph Decl. ¶ 16. Like the executive orders discussed above, each executive order at issue in the Federal Funding Restrictions makes clear that it must be "implemented consistent with applicable law." EO 14214 § 4(b); EO 14168 § 8(b); EO 14173 § 8(b); EO 14189 § 5(b); EO 13933 § 6(b). The NOFOs advised applicants that if they receive an award and it is determined that the applicant is not in compliance with the Federal Funding Restrictions, the COPS Office may place a hold on the award and/or take other remedial action. Randolph Decl. ¶ 16.

Plaintiffs refer to the Anti-Discrimination Condition, the EO Condition, and the Federal Funding Restrictions collectively as the "Challenged Conditions." Mot. at 5.

### B.    This Litigation

Plaintiffs are public municipalities that "have been awarded a federal grant award though a program administered by" the COPS Office, and Plaintiffs contend that they "are counting on" these federal funds to carry out various activities for each of their municipalities. Mot. at 1. But Plaintiffs claim that they cannot accept the federal funds so long as the grants include the Challenged Conditions; they allege that the Challenged Conditions are unlawful because they purportedly violate the Separation of Powers, the Spending Clause, the Fifth Amendment due process clause, and the Administrative Procedure Act ("APA").[1] Plaintiffs thus move for a preliminary injunction to prevent Defendants from (1) imposing or enforcing the Challenged Conditions, (2) withholding funding on the basis of the Challenged Conditions, or (3) imposing any materially similar conditions on Plaintiffs. *See id.* at 24.

## III.    Legal Standard

Emergency injunctive relief, such as a preliminary injunction, is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs must make a clear showing that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20). The final two factors merge when the government is a party, *Nken v. Holder*, 556 U.S. 418, 435 (2009), and the "sliding scale" approach invoked by Plaintiffs applies only when the

---

[1] The Motion for preliminary injunction does not invoke Fifth Amendment due process concerns, and Defendants thus do not address that legal claim in this opposition brief.

1    moving party has established that irreparable harm is "likely" absent an injunction, *Winter*, 555 U.S at 22,

2    and the "hardship balance [] tips sharply toward the plaintiff[s]." *All. for the Wild Rockies v. Cottrell*, 632

3    F.3d 1127, 1132 (9th Cir. 2011).

4    **IV.    Argument**

5        **A.    This Court Lacks The Power To Order Monetary Payments**

6        Generally, federal district courts lack jurisdiction to "order the payment of money under" the APA

7    because the federal government's sovereign immunity for claims seeking non-monetary relief "does not

8    extend to orders 'to enforce a contractual obligation to pay money.'" *Dep't of Educ. v. California*, 604

9    U.S. 650, 651 (2025) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).

10   The APA's limited waiver also does not apply "if any other statute that grants consent to suit expressly

11   or impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi

12   Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). The Tucker Act (28 U.S.C.

13   § 1491(a)(1)) is one such statute that "grants the Court of Federal Claims jurisdiction over suits based on

14   'any express or implied contract with the United States.'" *California*, 604 U.S. at 651 (quoting 28 U.S.C.

15   § 1491(a)(1)). Specifically, the Tucker Act provides that the "United States Court of Federal Claims shall

16   have jurisdiction to render judgment upon any claim against the United States founded" on "any express

17   or implied contract with the United States," 28 U.S.C. § 1491(a)(1), and it "impliedly forbids" bringing

18   "contract actions" against "the government in a federal district court." *Albrecht v. Comm. on Emp.

19   Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (citation omitted). This

20   prohibition extends to claims founded on grants, like those at issue here, that are implemented through

21   "contracts to set the terms and receive commitments from recipients." *Boaz Hous. Auth. v. United

22   States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021); *see also Medina v. Planned Parenthood S. Atl.*, 145 S. Ct.

23   2219, 2231 (2025) (explaining that courts have historically described federal grants as contracts); *Climate

24   United Fund v. Citibank, N.A.*, --- F.4th ----, 2025 WL 2502881, at *9 (D.C. Cir. Sept. 2, 2025) (same).

25   This jurisdictional barrier ensures that contract claims against the United States are channeled into a court

26   that has "unique expertise." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

27        The Supreme Court has recently reiterated the preclusive scope of the Tucker Act. In April, the

28   Supreme Court stayed a district court order to make payments based on grants because the federal

government was "likely to succeed in showing the District Court lacked jurisdiction" to bar termination of various education-related grants because the injunction was effectively an order "to enforce a contractual obligation to pay money." *California*, 604 U.S. at 651 (citation omitted). In August, the Supreme Court stayed a judgment vacating the federal government's termination of grants because the APA's limited waiver does not provide district courts with jurisdiction "to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (Mem.) (2025) ("*NIH*") (citation omitted).

This Court should follow the Supreme Court's stay rulings[2] to the extent Plaintiffs are seeking to enforce an obligation to pay money. Although Plaintiffs purport to seek an injunction against the Challenged Conditions, the relief Plaintiffs request—uninterrupted grant funding—is fundamentally contractual in nature. Indeed, the Motion goes well-beyond enjoining the Challenged Conditions; Plaintiffs instead expressly seek an order forcing the federal government to disburse funds. Mot. at 24 ("Plaintiffs request that this Court issue a preliminary injunction prohibiting Defendants from . . . withholding funding on the basis of the Challenged Conditions"). Plaintiffs' proposed order makes the monetary implications of their requested relief even more explicit:  Plaintiffs seek an order enjoining Defendants from "rescinding, withholding, cancelling, or otherwise not processing any DOJ COPS grant agreements, or pausing, freezing, impeding, blocking, cancelling, terminating, delaying, withholding, or conditioning DOJ COPS funds[.]" ECF No. 20-5 at 8.

As in *California* and *NIH*, any entitlement Plaintiffs may have to these funding streams arises solely on the basis of their federal grant awards; Plaintiffs have no statutory or constitutional right to such funding. Because Plaintiffs' theories hinge on contractual routing of funding to them as provided for in their grant awards, cloaking their claims as seeking equitable relief under the Constitution and the APA

---

[2] Although the Ninth Circuit recently issued a decision denying the federal government's application for a stay in *Thakur v. Trump*, 148 F.4th 1096 (9th Cir. 2025), the Supreme Court's *NIH* decision—issued hours after *Thakur*—overrules *Thakur*'s reasoning. *See, e.g.*, *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc) (stating that district courts must apply Supreme Court authority over Ninth Circuit authority). As Justice Gorsuch explained in a separate opinion, the reasoning from *California*—that "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on any express or implied contract with the United States"—"binds lower courts as a matter of vertical *stare decisis*." *NIH*, 145 S. Ct. at 2664 (Gorsuch, J., concurring in part and dissenting in part) (quoting *California*, 604 U.S. at 651). The government has moved for panel reconsideration or reconsideration en banc in *Thakur* based on the decision in *NIH*.

1  is irrelevant. *See, e.g.*, *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (district court

2  lacks jurisdiction over any case that "is in 'its essence contractual'"); *Holley v. United States*, 124 F.3d

3  1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the

4  Court of Federal Claims based on a properly brought claim under the Tucker Act").

5       In short, Plaintiffs "want[] the Government to keep paying up" to maintain funding pursuant to

6  contracts with the United States. *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155,

7  163 (D.D.C. 2025), *dismissed sub nom. United States Conf. of Cath. Bishops v. U.S. Dep't of State*,

8  No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025). To the extent they seek to enforce such contract

9  obligations, their claims are "founded upon a contract" and "must be heard in Claims Court." *Id.* at 165

10  (quoting *Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986) (Scalia, J.) ("We know of no case

11  in which a court has asserted jurisdiction . . . to issue an injunction compelling the United States to fulfill

12  its contractual obligations.")).

13      **B.**    **Plaintiffs Are Unlikely To Succeed On The Merits**

14       Even if the Court proceeds to the merits, Plaintiffs have not demonstrated that they are likely to

15  succeed. In fact, the opposite is true:  the Anti-Discrimination Condition, the EO Condition, and the

16  Federal Funding Restrictions were implemented within the COPS Office's statutory authority in a manner

17  consistent with past iterations of the COPS Office's terms and conditions incorporating federal law for

18  all recipients of federal funds.

19          **1.**    **All Challenged Conditions Are Lawful And Constitutional**

20          **(i)**    **The Anti-Discrimination Condition Is Constitutional**

21       Under Title VI of the Civil Rights Act of 1964, recipients of federal assistance must comply with

22  federal anti-discrimination law. *See* 42 U.S.C. § 2000d. Title VI further "authorize[s] and direct[s]"

23  federal agencies that award federal funds to effectuate section 2000d by issuing rules and regulations. *Id.*

24  § 2000d-1. Pursuant to this authority, DOJ, as a federal agency, and the COPS Office, as a component of

25  DOJ, is required to ensure that all grant awards comply with federal law. Specifically, DOJ must

26  administer federal awards in a manner that ensures "that Federal funding is expended and associated

27  programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and

28  regulations." 2 C.F.R. § 200.300(a); *see also* 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b). All

1    relevant requirements must then be communicated to recipients and subrecipients and incorporated into

2    the awards directly or by reference in the terms and conditions of the federal award. *Id.*

3        That is exactly what the COPS Office did. It provided the terms and conditions required for the

4    awards and specifically told recipients of those awards that they must certify that they do "not operate

5    any program (including any such programs having components relating to diversity, equity, and

6    inclusion) that violates any applicable Federal civil rights or antidiscrimination laws." That condition

7    makes plain that recipients cannot violate federal anti-discrimination law, including by using protected

8    characteristics "as a stereotype or negative." *Cf. Students for Fair Admissions, Inc. v. President & Fellows*

9    *of Harvard Coll.*, 600 U.S. 181, 213 (2023) (noting race can "never" be used as "a stereotype or

10   negative"). And false certifications of compliance with civil rights laws are false statements that put

11   recipients on notice that their compliance is material, *i.e.*, that it is "capable of influencing" the

12   government's payment decision. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S.

13   176, 193 (2016).

14       This condition is not novel. It has been true for decades that "[e]very application for Federal

15   financial assistance must, 'as a *condition* to its approval and the extension of any Federal financial

16   assistance,' contain assurances that the program will comply with Title VI *and* with all requirements

17   imposed pursuant to the executive regulations issued under Title VI." *Guardians Ass'n v. Civ. Serv.*

18   *Comm'n of City of New York*, 463 U.S. 582, 629-30 (1983) (Marshall, J., dissenting) (citing regulations

19   from more than ten federal agencies). These "assurances" of compliance are "given in consideration of"

20   federal aid, "and the federal government extends assistance in reliance on the assurance of compliance"—

21   but the obligations of Title VI apply regardless of any certification. *Id.* at 630 (citation omitted). The

22   requirement here is no different; although recipients must certify that any DEI programs they run comply

23   with federal antidiscrimination law, this certification "does not place upon a recipient any unanticipated

24   burdens because any recipient must anticipate having to comply with the law." *Id.*

25       Accordingly, another Judge of this Court denied a similar challenge to a DEI certification

26   provision, finding that the plaintiffs "have not demonstrated that they [are] likely to succeed in their

27   challenge to the Certification Provision because they have not shown at this juncture that the provision

28   goes beyond targeting DEI programs that violate federal antidiscrimination law." *San Francisco A.I.D.S.*

*Found. v. Trump*, 786 F. Supp. 3d 1184, 1200, 1221-22 (N.D. Cal. 2025), *appeal filed* No. 25-4988 (9th Cir. 2025). Further, the Fourth Circuit unanimously granted the government's motion for a stay in a case challenging Executive Order 14173, which directs federal agencies to require grant recipients to certify that they do not operate unlawful DEI programs. *See* Order, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025); *see id.* at 7 (Harris, J. concurring) (explaining that the challenged provision "appl[ies] only to conduct that violates existing federal anti-discrimination law").

The Anti-Discrimination Condition at issue here simply requires recipients to certify their compliance with existing law. An incorrect premise in Plaintiffs' arguments against the Anti-Discrimination Condition is that Plaintiffs are required to violate anti-discrimination laws by complying with this condition. *See, e.g.*, Mot. at 4-5 (arguing that the Anti-Discrimination Condition "requires Plaintiffs to operate in a way that is contrary to settled antidiscrimination law"); *id.* at 5 (asserting that "the Executive Branch . . . has now issued guidance that turns antidiscrimination law on its head, thereby casting serious doubt as to what Plaintiffs are being asked to certify through the Discrimination Condition"); *id.* at 12-13 ("In light of Defendants' and the President's unsupported pronouncements that programs that encourage diversity, equity, and inclusion violate antidiscrimination law, the Discrimination Condition is fatally ambiguous and leaves Plaintiffs with contradictory obligations."). But Plaintiffs are not being asked to sign on to the Administration's policy preferences, or even the Administration's views about the proper interpretation of federal anti-discrimination laws. Plaintiffs are simply agreeing not to violate the laws currently in place. *See* Mot. at 5 (Plaintiffs must "certif[y]" that they do "not operate any program (including any such programs having components relating to diversity, equity, and inclusion) that violates any applicable Federal civil rights or antidiscrimination laws"). Plaintiffs may disagree with the government's legal interpretations and policy preferences in this area, but that has little to do with the Anti-Discrimination Condition, which simply asks funding recipients to certify that they are complying with anti-discrimination laws.

### (a)    The Anti-Discrimination Condition Does Not Violate The "Separation of Powers"

Plaintiffs argue that the Anti-Discrimination Condition is "unconstitutional" because it

"[v]iolate[s] the Separation of Powers." Mot. at 9-10. But Plaintiffs invoke several *statutory* doctrines for this proposition, all without elaborating which one applies. *First*, Plaintiffs invoke non-constitutional cases relating to whether agencies had statutory—not constitutional—authority to perform certain actions. *See* Mot. at 10 (citing *City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019); *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013)). *Second*, Plaintiffs' Motion confirms that their argument is a statutory one rather than a constitutional one, as they invoke a "statutory scheme" (Mot. at 10) and argue that "there is no statutory authority to prohibit grantees from operating any DEI programs" (*id.*).

Even under this statutory approach to Plaintiffs' constitutional claim, Plaintiffs' argument fails. To start, *Dalton v. Specter*, 511 U.S. 462 (1994), forecloses their ability to raise statutory arguments with constitutional dressing. There, the Supreme Court reversed a federal circuit court that had "reasoned, relying primarily on *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), that whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id.* at 471. The Court stated this reasoning was incorrect because the Supreme Court's "cases do not support the proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. Instead, the Court "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* Therefore, "claims simply alleging that the President [or an executive officer] has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review." *Id.* at 473. The Court thus should ignore Plaintiffs' attempt to constitutionalize their statutory claim. *See Climate*, 2025 WL 2502881, at *10 (citing cases); *New York v. NSF*, 793 F. Supp. 3d 562, 604-07 (S.D.N.Y. 2025) (challenge to directives and grants was statutory, not constitutional, under *Dalton*).

In any event, as discussed *supra*, the COPS Office fully complied with the relevant governing statutes. Indeed, the COPS Office is *required* to include conditions to ensure that recipients comply with anti-discrimination law. *See* 42 U.S.C. § 2000d; 2 C.F.R. § 200.300(a); 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b). The Anti-Discrimination Condition sensibly implements Title VI. That Congress did not specifically spell out that the COPS Office must enforce anti-discrimination laws in each statute governing a grant program does not remove the COPS Office's authority—and obligation—to ensure

that recipients follow those laws. There is thus no basis for a "Separation of Powers" violation.

(b)    **The Anti-Discrimination Condition Does Not Violate The Spending Clause**

In the alternative, Plaintiffs argue that the Anti-Discrimination Condition is unlawful under the U.S. Constitution's Spending Clause. U.S. Const. art. I, § 8, cl. 1. Mot. at 12-14. As an initial matter, the Spending Clause does not apply here because it limits Congress' power to legislate only and has no application to Executive Branch decisions about how to expend funds appropriated by Congress. *See Bd. of Educ. for the Silver Consol. Schs. v. McMahon*, No. 25-cv-586, 2025 WL 2017177, at *10 (D.N.M. July 18, 2025) ("[T]he Spending Clause is only implicated 'when Congress imposes a spending or funding condition.' And without alleging congressional action, Plaintiff 'cannot state a claim under the Spending Clause.'") (citation omitted). Although the Ninth Circuit has held in a footnote that the Spending Clause applies to executive action, *see City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 n.6 (9th Cir. 2019) (finding "no reason" that spending power constraints do not apply to "agency-drawn conditions on grants"), Defendant submit that decision is incorrect.[3] However, even if the Spending Clause applied, the challenge still would fail because the condition is unambiguous and relates to the general purpose of enforcing anti-discrimination law.

Under the Spending Clause, statutes passed by Congress must meet certain criteria. Absent a violation of another constitutional provision, all that is required is that they must be "in pursuit of the general welfare" and "unambiguous, clearly communicating . . . the consequences of [] participation in the federally funded scheme." *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002) (citation omitted). The funding must "bear *some relationship* to the purpose of the federal spending," but that is a "low-threshold." *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1034 (N.D. Cal. 2018). In any event, "Congress may . . . 'further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (citation omitted). Applying these principles, the Ninth Circuit rejected

---

[3] *See, e.g.*, *Harris Cnty. v. Kennedy*, 786 F. Supp. 3d 194, 212 (D.D.C. 2025) ("At the outset, it is unclear that this limitation on Congress's spending power applies to the Executive Branch."); *County Sch. Bd. v. RT*, 433 F. Supp. 2d 692, 701 n.18 (E.D. Va. 2006) ("the Spending Clause relates to congressional power, not executive power").

1  a Spending Clause challenge to COPS Office competitive grant programs under the first Trump

2  Administration. *See Barr*, 929 F.3d at 1175 ("the applicable Spending Clause principles do not readily

3  apply to an allocation of grant funds through a competitive grant process, such as the [COPS Office]

4  program in this case").

5       Plaintiffs' first argument on this front is that the Anti-Discrimination Condition is ambiguous. *See*

6  Mot. at 12-13. It is not. The provision requires Plaintiffs to "not operate any program (including any such

7  programs having components relating to diversity, equity, and inclusion) that violates any applicable

8  Federal civil rights or antidiscrimination laws." To comply with the clear notice requirement of Spending

9  Clause jurisprudence, Congress must only make clear that acceptance of federal funds obligates States to

10  comply with a condition. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981). *Pennhurst*

11  explicitly recognized that a State's obligations under a Spending Clause program may be "largely

12  indeterminate," so long as Congress gives "clear notice to the States that they, by accepting funds under

13  the Act, would indeed be obligated to comply with" the condition. *Id.* at 24-25. States make an "informed

14  choice" when the Federal Government simply makes clear that acceptance of federal money obligates

15  the States to comply with a condition. *Id.* at 25. Indeed, the Ninth Circuit has recognized that the Spending

16  Clause is satisfied where a "statute's *intention to impose a condition* is expressed clearly," even though

17  the operation of a funding condition "is perhaps unpredictable." *Mayweathers*, 314 F.3d at 1067. There

18  is no requirement to "list every factual instance in which a [funding recipient] will fail to comply with a

19  condition" because requiring "[s]uch specificity would prove too onerous, and perhaps, impossible." *Id.*

20       Here, there is no doubt that grantees must comply with the Anti-Discrimination Condition.

21  Plaintiffs have identified no ambiguity about whether they are subject to the condition; that is why they

22  filed this lawsuit. While the COPS Office requires recipients to certify that any DEI programs they

23  operate comply with anti-discrimination law, Plaintiffs cannot plausibly argue that this certification is

24  impermissible given that it is subsumed within the broader certification prohibiting funding recipients

25  from operating *any* programs that violate federal anti-discrimination law. Indeed, it is unclear why

26  Plaintiffs believe this provision is ambiguous—they claim that "they do not know whether they are

27  certifying to compliance with those laws as written by Congress and long interpreted by the courts—or

28  to the Executive Branch's purported guidance." Mot. at 14. But that argument ignores both the Supreme

Court—which recently reinforced longstanding precedent that stereotyping and discrimination against other races for the benefit of certain races are illegal, *Students for Fair Admissions*, 600 U.S. at 211-12—and Congress's express requirements for recipients to comply with federal anti-discrimination law and for agencies to effectuate that law when awarding federal funding. 42 U.S.C. §§ 2000d, 2000d-1.[4] The consequences of failing to follow anti-discrimination laws, such as an investigation into False Claims Act liability, *see* Mot. at 14, does not make the requirement to comply ambiguous. *Cf. Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (courts apply "plain, nonabsurd meaning" of a statute "even if . . . the words lead to a harsh outcome").

Next, Plaintiffs argue that the Anti-Discrimination Condition is not just "*unrelated* to the purpose of the COPS Grants but *antithetical* to an animating goal of the COPS Statute[.]" Mot. at 17 (emphasis in original). But there is no conflict between the Anti-Discrimination Condition and the statute's directive that grant recipients, "to the extent practicable" "seek, recruit, and hire members of racial and ethnic minority groups and women." 34 U.S.C. § 10382(c)(11). Indeed, the Anti-Discrimination Condition simply ensures that grant recipients will comply with anti-discrimination law (as the recipients are independently required to do)—in no way does the Anti-Discrimination Condition prevent grant recipients from hiring "members of racial and ethnic minority groups and women." *Id.* In any event, the reasonable relation requirement is a "low-threshold," *Becerra*, 284 F. Supp. 3d at 1034, and "not demanding." *Barr*, 929 F.3d at 1175. The Supreme "Court has never struck down a condition on federal grants based on th[e] relatedness prong." *Id.*

There is no need for this Court to break new ground, as agencies have long applied grant conditions like the Anti-Discrimination Condition to further all manner of purposes and objectives. *See, e.g.*, 2 C.F.R. § 200.303(b) (requiring all recipients of federal grants to "[c]omply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award. The conditions here simply prevent the expenditure of federal funds on activities that violate the law. *Cf. State*

---

[4] Plaintiffs also insinuate that following the Anti-Discrimination Condition may cause them to violate the Supreme Court's decision in *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020), *see* Mot. at 13 n.6, but the relevant regulations make clear that agencies must ensure that recipients do not discriminate "based on sexual orientation and gender identity consistent with the Supreme Court's reasoning in *Bostock*." 2 C.F.R. § 200.300(b). Plaintiffs have not demonstrated that they would be forced to ignore *Bostock* if they choose to accept federal funds.

*v. Dep't of Just.*, 951 F.3d 84, 107 (2d Cir. 2020) ("[T]here is something disquieting in the idea of States and localities seeking federal funds to enforce their own laws while themselves hampering the enforcement of federal laws, or worse, violating those laws.").

### (ii)    The EO Condition And The Federal Funding Restrictions Are Constitutional

Plaintiffs' challenges to the EO Condition and Federal Funding Restrictions (all of which are based on national and administration policies announced through executive orders, *see* Randolph Decl. ¶ 16) are similarly misguided. The COPS Office included within its grant conditions a requirement that all recipients comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President. Here, Plaintiffs again argue that the EO Condition and the Federal Funding Restrictions violate the "Separation of Powers" and the Spending Clause. Both arguments lack merit.

### (a)    The EO Condition And The Federal Funding Restrictions Do Not Violate The "Separation of Powers"

Like the Anti-Discrimination Condition, Plaintiffs' challenge to the COPS Office's ability to impose the EO Condition and the Federal Funding Restrictions is a statutory claim disguised as a constitutional one precluded by the Supreme Court's decision in *Dalton*, so the claim fails on that basis alone. *See supra* Part IV.B.1(i)(a).

But, in any event, the COPS Office is required to incorporate into the terms of its grants "national policy requirements," including those flowing from "executive order[s]." 2 C.F.R. § 200.211(c)(1)(ii); *see also* 2 C.F.R. § 200.300. And the COPS Office has also applied similar conditions for several years. Randolph Decl. ¶ 28 (the COPS Office has consistently required grant recipients to comply with "all other applicable program requirements, laws, orders, regulations, or circulars"). Accordingly, there is nothing new about these grant requirements; the EO Condition and the Federal Funding Restrictions here are lawful and within the COPS Office's authority.

### (b)    The EO Condition And The Federal Funding Restrictions Do Not Violate The Spending Clause

The EO Condition and the Federal Funding Restrictions also do not violate the Spending Clause because they are unambiguous and related to the purpose of the grants. To start, these conditions are

unambiguous. Like COPS Office grant conditions issued in prior years, the EO Condition and the Federal Funding Restrictions merely require Plaintiffs to comply with executive orders in the same manner as they would have to follow any changes to federal statutes or regulations or intervening court decisions. The EO Condition and the Federal Funding Restrictions here are as clear as those prior requirements and readily satisfy the Spending Clause standard. *See Mayweathers*, 314 F.3d at 1067.

Plaintiffs claim that they do not know which executive orders are encompassed within the EO Condition because the word "applicable" leaves "that determination entirely to Defendants' subjective discretion." Mot. at 14. But such conditions, incorporating sources of law with which Plaintiffs are already generally required to comply, cannot be facially vague. *See, e.g.*, *Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61, 94-96 (D.D.C. 2025) (rejecting vagueness challenges to DEI—and gender ideology— executive orders that "tells agencies to cancel equity related agreements in accordance with the law, not whenever they see fit"). Indeed, the EO Conditions "do[] not place upon a recipient any unanticipated burdens because any recipient must anticipate having to comply with the law," even as federal law shifts when Congress passes laws or the Supreme Court interprets laws differently. *Guardian Ass'n*, 463 U.S. at 630 (Marshall, J., dissenting).

The EO Condition and the Federal Funding Restriction surpass the "low-threshold" of being reasonably related to the purpose of expenditure. *See Becerra*, 284 F. Supp. 3d at 1034. The COPS Office is required to ensure that all grants comply with federal law, and the EO Condition and the Federal Funding Restrictions are another way to ensure that requirement is met.

### 2.    All Challenged Conditions Do Not Violate The APA

#### (i)    Plaintiffs' Grant Awards Are Not Reviewable Because They Are Committed To Agency Discretion

Plaintiffs are unlikely to prevail on their APA claim because the grant awards at issue are discretionary. Randolph Decl. ¶¶ 4-8. Plaintiffs thus fail to demonstrate that there are standards for the Court to apply in reviewing the Anti-Discrimination Condition, the EO Condition, and the Federal Funding Restrictions for these discretionary grants.

Ordinarily, for discretionary grants, agencies are free to reject applications in what is a competitive process. And "before any review at all may be had, a party must first clear the hurdle of § 701(a)," *Heckler*

*v. Chaney*, 470 U.S. 821, 828 (1985), which precludes review under the APA if the challenged agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Under § 701(a)(2), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. "In such a case," the relevant statutory provision "can be taken to have committed the decisionmaking to the agency's judgment absolutely." *Id.* (internal quotation marks omitted).

An agency's allocation of appropriated funds is typically and presumptively committed to agency discretion by law because "the very point . . . is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993); *see Milk Train, Inc. v. Veneman*, 310 F.3d 747, 748-51 (D.C. Cir. 2002); *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013); *Serrato v. Clark*, 486 F.3d 560, 568-70 (9th Cir. 2007). This is why agency grant-award decisions are presumptively unreviewable. *See Lincoln*, 508 U.S. at 191-92 (including "allocation of funds from a lump-sum appropriation" among the "administrative decision[s] traditionally regarded as committed to agency discretion" that have been held "to be presumptively unreviewable"); *see also Milk Train, Inc.*, 310 F.3d at 750–51 (applying *Lincoln* in the context of non-lump-sum appropriations).

Plaintiffs cannot overcome the presumption that the Anti-Discrimination Condition, the EO Condition, and the Federal Funding Restrictions—which merely reiterate that recipients must comply with federal anti-discrimination law and executive orders—are unreviewable for these discretionary grants. No statutory provision limits the COPS Office's discretion to issue funding, much less do the statutes prevent requiring compliance with federal anti-discrimination law or Executive Branch policy directives, making those decisions presumptively unreviewable. *Cf. Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018) (holding that decision to stop funding and recompete the funds is a "presumptively unreviewable" type of agency action, but holding that a denial to continue funding without explanation was arbitrary and capricious under the APA).

### (ii) Plaintiffs' APA Claim Also Fails On The Merits

Plaintiffs' initial APA argument parrots Plaintiffs' earlier claims that the COPS Office violated the Constitution by supposedly exceeding its statutory authority to implement the Challenged Conditions.

1  Mot. at 18-19. But that is wrong. As discussed above, the COPS Office is required to enforce all federal

2  anti-discrimination laws and has the authority to require recipients to follow executive orders, as it did in

3  prior fiscal years.

4      The COPS Office's implementation of the Challenged Conditions was also not arbitrary or

5  capricious. Mot. at 19-21. Judicial review under the APA's arbitrary-and-capricious standard "is

6  deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v.

7  Prometheus Radio Project*, 592 U.S. 414, 423 (2021). That review is "narrow." *Motor Vehicle Mfrs.

8  Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). All that is required is for the agency to

9  "act[] within a zone of reasonableness." *Prometheus*, 592 U.S. at 423; *Barr*, 929 F.3d at 1181 ("The

10  agency need provide only a minimal level of analysis to avoid its action being deemed arbitrary and

11  capricious"). Here, given the agency's discretion to impose appropriate terms and conditions on the

12  receipt of federal funds, and general grantmaking requirements that the recipients of such funds follow

13  federal law, the adoption of grant conditions that require recipients to certify their compliance with

14  executive orders and federal anti-discrimination laws can hardly be considered arbitrary or capricious.

15  *See id.* at 1182 (rejecting APA arbitrary and capricious challenge to COPS grant programs and holding

16  that "the wisdom of DOJ's policy is not an element of our arbitrary and capricious review").

17      Plaintiffs argue otherwise based on the mistaken premise that the "Challenged Conditions effect

18  a radical change in the conditions applicable to COPS Grants" and that Plaintiffs have a reliance interest

19  on COPS Office grants to serve critical public safety needs. Mot. at 20-21. But although the COPS

20  Office's grant conditions may have been worded differently in the past, the Challenged Conditions are

21  not new, nor do they constitute a "radical change" in conditions applicable to COPS Office grants. As

22  discussed above, the Anti-Discrimination Condition simply requires Plaintiffs to certify compliance with

23  otherwise applicable anti-discrimination law. And previous iterations of the COPS Office's grant terms

24  have also required compliance with executive orders. Randolph Decl. ¶ 28. Further, Plaintiffs' claim that

25  they have a reliance interest in "COPS Grants to serve critical public safety needs" is a red herring. Mot.

26  at 20. The issue is not whether Plaintiffs have a reliance interest in federal funding—Plaintiffs

27

28

unquestionably are free to accept the awarded federal funding in this case.[5] Instead, the issue is whether Plaintiffs have a right to accept federal funds while impermissibly participating in stereotyping individuals based on their race, color, sex, or national origin or discriminating against them without satisfying the requisite level of scrutiny required by the Constitution; Plaintiffs have no such right or reliance interest. *See Students for Fair Admissions*, 600 U.S. at 212 (outlining the Court's prior explanations of the dangers with race-based government action and why strict scrutiny must be applied); *see also United States v. Virginia*, 518 U.S. 515, 555 (1996) (gender-based classifications are subject to "heightened scrutiny"). Plaintiffs also do not explain what reliance interest they could have in being able to violate executive orders while participating in programs funded by the federal government. Any harm to the public safety of Plaintiffs' communities due to their choice to not accept federal funds with appropriate conditions is not caused by the federal government. *See* Mot. at 22 (arguing that Defendants did not consider "the deleterious consequences to community policing and officer wellness that will result from imposing" the Challenged Conditions). Instead, any harm here is self-inflicted if Plaintiffs choose not to accept the awarded funds.

## C.    Plaintiffs Have Failed To Demonstrate Irreparable Harm

Plaintiffs seeking the extraordinary remedy of a preliminary injunction must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (citation omitted). The "possibility" of such harm is insufficient, *id.*, as is "speculative injury," *id.* at 21; Plaintiffs must show both immediacy and likelihood that they will be irreparably harmed absent emergency relief. *See Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir 1988).

Plaintiffs have failed to make that showing here because, fundamentally, the harms they assert are economic. *See, e.g.*, Mot. at 21-22 (describing "budgetary uncertainty" and other "financial" harms). They seek the payment—on the terms that they prefer—of federal funds pursuant to their contracts with the federal government. The associated injuries Plaintiffs assert are thus definitionally not irreparable, *see, e.g.*, *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320-21 (9th Cir. 1994); *Rent-A-Center, Inc. v. Canyon*

---

[5] In any event, each of the four grant programs at issue are competitive and discretionary (Randolph Decl. ¶¶ 4-8), and Plaintiffs thus cannot reasonably argue that they have a reliance interest in funds that are "fraught with unpredictability due to the competitive nature of the grant application process." *City of Chelsea v. Trump*, No. 25-10442, 2025 WL 2807831, at *7 (D. Mass. Oct. 2, 2025).

*Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991), particularly because Plaintiffs allege no "threat of being driven out of business." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) (citation omitted).

Plaintiffs also assert that they face harm from being put to the choice "between two equally untenable options:  acceding to unlawful and unascertainable conditions, or foregoing grant awards that fund essential public safety projects." Mot. at 21. That argument fails. There is no constitutional violation, and it is always the case that "if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds." *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). If a party makes the voluntary choice to forego those funds, any resulting economic harm cannot constitute an irreparable injury attributable to the federal government. Nor do Plaintiffs demonstrate that the acceptance of terms they consider to be "unconstitutional"—but that require them to comply with otherwise applicable federal law—imposes any concrete, imminent harm necessitating preliminary relief.

### D.    The Balance Of The Equities Favors Denying The Motion

Plaintiffs must also demonstrate that "the balance of equities tips in [their] favor" and "an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citation omitted). These "factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

In arguing that the public interest weighs in their favor, Plaintiffs mostly repackage their arguments on alleged irreparable harm and on the merits. Those arguments fail. On the other hand, granting Plaintiffs' Motion would significantly disrupt the COPS Office's ongoing consideration of grant applications and would prevent the COPS Office from disbursing finite federal funding to thousands of other applicants for these same discretionary grant programs (all of which, like Plaintiffs, accepted the Challenged Conditions). *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025) (granting request for stay of injunction "to avoid [] disruptive effect[s]" on government operations). Further, a preliminary injunction risks irreparable harm to the government and to the public interest by requiring the payment of money that the government may never recover. *See NIH*, 145 S. Ct. 2658. This decision must "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Therefore, the balance of the equities and public interest favor denying Plaintiffs' request for relief.

E.   **Other Non-Binding District Court Decisions—Based On Distinct Grant Programs, Conditions, And Factual Circumstances—Do Not Control The Outcome Here[6]**

Defendants recognize that courts in this District and around the country have issued orders—both favorable to the government and not—on requests for preliminary and permanent relief related to grant funding conditions imposed under the current administration. *See* ECF No. 30 (Joint Notice of Related Cases). Those non-binding decisions were based on the specific facts and circumstances of those cases, including the unique grant conditions, statutory framework, procedural history, and scope of relief requested in each case. However, to Defendants' knowledge no court has issued a decision with respect to the terms and conditions of the specific COPS Office grant programs at issue in this lawsuit. The only other federal court lawsuit involving challenges to grant conditions imposed by the COPS Office under the current administration is *City of Chicago v. U.S. Dep't of Justice*, No. 25-cv-13863-JLA (N.D. Ill.)—the plaintiff in that case filed a motion for preliminary injunction after the Motion in the above-captioned case, and the court in the Northern District of Illinois has not yet issued a ruling.

To the extent the non-binding decisions listed in the Joint Notice of Related Cases (ECF No. 30) are relevant to this Court's analysis, Defendants note that multiple courts have refused to enjoin, at least in part, similar grant conditions. For example, in *San Francisco A.I.D.S. Foundation*, Judge Tigar declined to enjoin a DEI certification provision (while enjoining other grant conditions) because the plaintiffs had failed to show "at this juncture that the provision goes beyond targeting DEI programs that violate federal antidiscrimination law." 786 F. Supp. 3d at 1221-22. Similarly, in *City of Chelsea*, the court denied a motion for preliminary injunction, finding that "it is far from certain that plaintiffs will succeed," *inter alia*, because the federal government can "attach conditions upon the receipt of federal funds to further federal policy objectives." 2025 WL 2807831, at *7.

Finally, Defendants recognize that other district courts have issued decisions enjoining grant conditions similar to those at issue in this case. *See* ECF No. 30 (Joint Notice of Related Cases).

---

[6] During the November 24, 2025 status conference, the Court inquired whether venue properly lies in the Northern District of California for claims asserted by plaintiffs the City of Tucson and the City of San Diego. For purposes of this proceeding only, Defendants do not contest venue for this lawsuit under 28 U.S.C. § 1391, because venue is proper as to plaintiffs the City and County of San Francisco and the County of Santa Clara. *See Railway Labor Executives' Ass'n v. ICC*, 958 F.2d 252, 256 (9th Cir. 1991).

1  Defendants acknowledge that these rulings, and the common questions of law between this case and those
2  rulings, would likely control the result in this case should the Court adhere to the legal reasoning in those
3  prior decisions. However, the government disagrees with those decisions and has appealed adverse orders
4  in similar grant conditions cases; those appeals remain pending. *See id.* In any event, Defendants submit
5  that the non-binding district court decisions in other grant conditions cases do not control the outcome of
6  this case, especially as applied to the specific facts of this case, for the reasons stated in this opposition.

7  **F.    Any Injunctive Relief Should Be Narrowly Tailored**

8  If the Court were to provide injunctive relief, the injunction should be narrowly tailored to provide
9  only what "will offer complete relief to the plaintiffs before the court." *Trump v. CASA, Inc.*, 606 U.S.
10  831, 852 (2025). In line with these principles, to the extent the Court intends to grant Plaintiffs' request
11  for a preliminary injunction, any preliminary relief should be limited to address any established harms of
12  the present Plaintiffs. In particular, that relief should flow only (1) to any Plaintiff that is able to
13  demonstrate all the requirements for emergency injunctive relief; (2) only against any Defendant against
14  whom all such requirements for emergency injunctive relief are met; and (3) only against any particular
15  term and condition, imposed in specifically-identified grant programs, with respect to which any Plaintiff
16  demonstrates all requirements for emergency injunctive relief. And any injunction should, at most, enjoin
17  only those portions of Defendants' identified grant conditions which can be read to require actions beyond
18  complying with federal law (something Plaintiffs are independently required to do).

19  **G.    Any Injunctive Relief Should Be Accompanied By A Bond**

20  Any preliminary injunction should also be accompanied by a bond under Federal Rule of Civil
21  Procedure 65(c). As the D.C. Circuit recently clarified, "injunction bonds are generally required." *Nat'l*
22  *Treasury Emps. Union v. Trump*, No. 25-5157, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025)
23  (per curiam). The Court has broad discretion to determine the amount of an appropriate bond. If the Court
24  were to enter an injunction, Defendants ask that the bond amount reflect the cost and disruption to the
25  COPS Office's administration to the grants at issue in this proceeding resulting from Plaintiffs' requested
26  relief.

27  **V.    Conclusion**

28  For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

1    DATED:  December 2, 2025                    Respectfully submitted,

2

3                                               CRAIG H. MISSAKIAN
                                               United States Attorney
4
                                               */s/ Jevechius D. Bernardoni*
5                                               JEVECHIUS D. BERNARDONI
                                               Assistant United States Attorney
6
                                               Attorneys for Defendants
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28