DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
KARUN A. TILAK, SBN 323939
JESSE E. LANIER, SBN 303395
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, CA 94102-5408
Telephone: (415) 554-4223
Facsimile: (415) 437-4644
E-Mail: Jesse.Lanier@sfcityatty.org
          Karun.Tilak@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

*[additional counsel on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; CITY OF TUCSON; and CITY OF SAN DIEGO<br><br>       Plaintiffs,<br><br>       vs.<br><br>UNITED STATES DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in her Official Capacity; OFFICE OF COMMUNITY ORIENTED POLICING SERVICES; and CORY D. RANDOLPH, in his official capacity,<br><br>       Defendants. | Case No. 3:25-cv-09277-JD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

1

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................1

    I.      The Tucker Act Does Not Divest This Court of Jurisdiction. ...................1

    II.     Plaintiffs Are Likely to Succeed on the Merits of Their Claims. ............2

         A.     The Challenged Conditions Are Unconstitutional. ......................3

              1.     The Challenged Conditions Violate the Separation of Powers. .......................................................................3

                      a.     Plaintiffs' Separation of Powers Claim Is Constitutional—Not Statutory—Under *Murphy Co.* ...........3

                      b.     Neither Congress nor the Constitution Authorizes Defendants to Impose Any of the Challenged Conditions. .......................................................................4

              2.     The Challenged Conditions Violate Spending Power Constraints. ................................................................7

                      a.     The Spending Power Constraints Apply. .............................7

                      b.     The Requirements of the Challenged Conditions Are Ambiguous. ..................................................................8

                      c.     The Challenged Conditions Are Unrelated to Community Policing. ...........................................................9

         B.     The Challenged Conditions Violate the APA. ...........................10

               1.     The Imposition of the Challenged Conditions Is Reviewable by This Court. ..........................................10

               2.     The Challenged Conditions Violate the APA on the Merits. .........11

    III.    Plaintiffs Will Suffer Immediate and Irreparable Harm Absent Relief. ...............13

    IV.    The Equities Are Firmly in Plaintiffs' Favor. .........................................14

    V.     Plaintiffs' Request for Preliminary Injunction Is Appropriately Tailored............14

    VI.    The Court Should Not Require a Bond. ..................................................15

CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*
570 U.S. 205 (2013) ............................................................................................14

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*
357 F.3d 62 (D.C. Cir. 2004) ..................................................................................2

*All. for the Wild Rockies v. Cottrell*
632 F.3d 1127 (9th Cir. 2011) ................................................................................3

*Ariz. Dream Act Coal. v. Brewer*
757 F.3d 1053 (9th Cir. 2014) ........................................................................14, 15

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*
548 U.S. 291 (2006) ..............................................................................................8

*ASSE Int'l, Inc. v. Kerry*
803 F.3d 1059 (9th Cir. 2015) ..............................................................................10

*Board of Education for Silver Consolidated Schools v. McMahon*
791 F. Supp. 3d 1272 (D.N.M. 2025) .....................................................................7

*Boaz Hous. Auth. v. United States*
994 F.3d 1359 (Fed. Cir. 2021) ..............................................................................2

*California v. United States Dep't of Health and Human Svcs.*
25-cv-12118-IT, 2025 WL 3459579 (D. Mass. Dec. 2, 2025) ................................8

*Californians for Renewable Energy v. United States Env't Prot. Agency*
No. C 15-3292 SBA, 2018 WL 1586211 (N.D. Cal. Mar. 20, 2018).......................1

*Chaly-Garcia v. United States*
508 F.3d 1201 (9th Cir. 2007) .........................................................................6, 12

*City & Cnty. of San Francisco v. Barr*
965 F.3d 753 (9th Cir. 2020) ................................................................................10

*City & Cnty. of San Francisco v. Sessions*
349 F. Supp. 3d 924 (N.D. Cal. 2018) ...................................................................10

*City & Cnty. of San Francisco v. Trump ("San Francisco I")*
897 F.3d 1225 (9th Cir. 2018) .....................................................................3, 7, 14

*City & Cnty. of San Francisco v. Trump ("San Francisco II")*
783 F. Supp. 3d 1148 (N.D. Cal. 2025) ............................................................2, 15

*City of Fresno v. Turner ("Fresno I")*
No. 25-cv-07070-RS, 2025 WL 2469330 (N.D. Cal. Aug. 27, 2025)..................7, 9

*City of Fresno v. Turner* ("*Fresno II*")
    No. 25-cv-07070-RS, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025)............................ *passim*

*City of Los Angeles v. Barr* (*"Barr"*)
    929 F. 3d 1163 (9th Cir. 2019) ...........................................................................................7

*City of Seattle v. Trump* ("*Seattle*")
    No. 2:25-cv-01435-BJR, 2025 WL 3041905 (W.D. Wa. Oct. 31, 2025).........................2, 5, 9

*Climate United Fund v. Citibank, N.A.*
    154 F.4th 809 (D.C. Cir. Sept. 2, 2025).................................................................................2, 3

*Cnty. of Santa Clara v. Noem* ("*Santa Clara*")
    25-cv-08330-WHO, 2025 WL 3251660 (N.D. Cal. Nov. 21, 2025) ................................ *passim*

*Dalton v. Specter*
    511 U.S. 462 (1994)..........................................................................................................3, 4

*Dep't of Com. v. New York*
    588 U.S. 752 (2019) ............................................................................................................11

*Dep't of Educ. v. California*
    604 U.S. 650 (2025)..............................................................................................................2

*Hernandez v. Sessions*
    872 F.3d 976 (9th Cir 2017) ..............................................................................................13

*Holley v. United States*
    124 F.3d 1462 (Fed. Cir. 1997) ...........................................................................................2

*Hous. Auth. of City & Cnty. of San Francisco v. Turner* ("*Housing Authority*")
    25-cv-08859-JST, 2025 WL 3187761 (N.D. Cal. Nov. 14, 2025) ................................... *passim*

*Ingersoll-Rand Co. v. United States*
    780 F.2d 74 (D.C. Cir. 1985)................................................................................................2

*Jajati v. United States Customs & Border Prot.*
    102 F. 4th 1011 (9th Cir. 2024) .........................................................................................11

*Martin Luther King, Jr. Cnty. v. Turner* ("*King Cnty.*")
    785 F. Supp. 3d 863 (W.D. Wash. 2025).......................................................................... *passim*

*Martin Luther King, Jr. Cnty. v. Turner*
    No. 2:25-cv-814, 2025 WL 2322763 (W.D. Wash. Aug. 12, 2025) .........................................5

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*
    567 U.S. 209 (2012)..............................................................................................................2

*Mayweathers v. Newland*
    314 F.3d 1062 (9th Cir. 2002) .........................................................................................7, 8

*Medina v. Planned Parenthood S. Atl.*
   606 U.S. 357 (2025) ...................................................................................................2

*Melendres v. Arpaio*
   695 F.3d 990 (9th Cir. 2012) ....................................................................................14

*Murphy Co. v. Biden*
   65 F.4th 1122 (9th Cir. 2023) .....................................................................................4

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n* ("*NIH*")
   145 S. Ct. 2658 (2025) ...............................................................................................2

*National Association of Diversity Officers in Higher Education v. Trump*
   No. 25-1189 (4th Cir. Mar. 14, 2025) .........................................................................6

*New York v. National Science Foundation*
   793 F.Supp. 3d 562 (S.D.N.Y. 2025) ..........................................................................3

*Pennhurst State Sch. & Hosp. v. Halderman*
   451 U.S. 1 (1981) ....................................................................................................8, 9

*Perry Cap. LLC v. Mnuchin*
   864 F.3d 591 (D.C. Cir. 2017) ....................................................................................2

*San Francisco A.I.D.S. Foundation v. Trump* ("*A.I.D.S. Foundation*")
   786 F. Supp. 3d 1184 (N.D. Cal. 2025) ......................................................................6

*San Francisco Unified Sch. Dist. v. AmeriCorps* ("*AmeriCorps I*")
   789 F. Supp. 3d 716 (N.D. Cal. 2025) ...............................................................7, 9, 10

*San Francisco Unified Sch. Dist. v. AmeriCorps* ("*AmeriCorps II*")
   784 F. Supp. 3d 1280 (N.D. Cal. 2025) ...................................................................2, 3

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College* ("*SFFA*")
   600 U.S. 181 (2023) ....................................................................................................6

*Thakur v. Trump*
   148 F.4th 1096 (9th Cir. 2025) ....................................................................................2

*Trump v. CASA, Inc.*
   606 U.S. 831 (2025) ..................................................................................................15

*United Aeronautical Corp. v. United States Air Force*
   80 F.4th 1017 (9th Cir. 2023) .....................................................................................1

*United States Conf. of Cath. Bishops v. United States Dep't of State*
   770 F. Supp. 3d 155 (D.C.Cir. 2025) ..........................................................................2

*United States Conf. of Cath. Bishops v. United States Dep't of State*
   No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025) ..........................................2

*Youngstown Sheet & Tube Co. v. Sawyer*
 343 U.S. 579 (1952)................................................................................3

**Statutes**
5 U.S.C.
 § 701(a)(2) ................................................................................10, 11
 § 706(2)(A)-(C)................................................................................11

28 U.S.C.
 § 1391(e)(1)(c) ................................................................................1

34 U.S.C.
 § 10381(b) ................................................................................11
 § 10382(c) ................................................................................11

42 U.S.C.
 § 2000d ................................................................................4

**Rules**
Fed. R. Civ. Proc.
 65(d)(2) ................................................................................15

**INTRODUCTION**

Plaintiffs' ability to support the critical public safety efforts of their law enforcement agencies is in limbo. And Plaintiffs are in this position because Defendants have, without Congressional authority, inserted into Plaintiffs' Grant Awards[1] indecipherable conditions that have nothing whatsoever to do with hiring, training, and supporting sworn officers. To the extent it is possible for Plaintiffs to understand the Challenged Conditions, accepting them requires Plaintiffs to flout explicit requirements of the COPS Statute. Meanwhile, rejecting the Conditions requires Plaintiffs to turn down, collectively, millions of sorely needed dollars. Either option is untenable. Plaintiffs appreciate counsel's candor in acknowledging the growing list of rulings in the Ninth Circuit enjoining similar grant conditions for the same reasons Plaintiffs have argued here. *See* Opposition ("Opp.") pp. 21-22. But these cases are not, contrary to Defendants' position, wrongly decided. These cases are *correctly* decided, and they denote a glide path to the right result. Defendants' opposition repeats arguments these same in-circuit district courts have considered and consistently rejected. This Court should do likewise and enjoin the Challenged Conditions.

**ARGUMENT[2]**

**I.     The Tucker Act Does Not Divest This Court of Jurisdiction.**

When determining whether an APA action for injunctive relief is a "disguised" breach of contract claim for purposes of the Tucker Act, courts consider (i) the sources of the rights on which plaintiff bases its claims and (ii) the type of relief sought. *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (cleaned up). Here, the sources of Plaintiffs' rights are the Constitution and the APA, and the nature of Plaintiffs' relief is injunctive. There is no contractual claim, and the Tucker Act does not divest this Court of jurisdiction to adjudicate Plaintiffs' claims.

---

[1] Plaintiffs use the same shorthand in this reply as in their opening motion.

[2] Defendants do not contest Plaintiffs' requests for judicial notice or argue Plaintiffs lack standing. Motion for Preliminary Injunction ("Mot.") p. 9. As to the propriety of venue, Opp. p. 21 n.6, under 28 U.S.C. § 1391(e)(1)(c), "[t]he clear weight of federal authority holds that venue is proper in a multi-plaintiff case if any plaintiff resides in the district." *Californians for Renewable Energy v. United States Env't Prot. Agency* No. C 15-3292 SBA, 2018 WL 1586211, at *5 (N.D. Cal. Mar. 20, 2018), amended in part, No. C 15-3292 SBA, 2020 WL 13490288 (N.D. Cal. Sept. 30, 2020) (noting no requirement that all plaintiffs reside in the forum district). "[R]equiring each plaintiff to reside in the district for venue purposes" undermines the intent of section 1391, "which is to ease the burden on plaintiffs attempting to bring suit against the federal government." *Id.* (citation omitted).

1   Plaintiffs do not challenge the termination of grants and do not allege Defendants breached an

2   existing grant agreement (or other contract).  In fact, no Plaintiff has accepted the Grant Award

3   Conditions, so there are no pertinent contracts to enforce.  Accordingly, Defendants' authorities are

4   inapposite:  None stand for the proposition that challenging conditions of grant awards mandates

5   adjudication by the Court of Federal Claims.[3]  Just because preliminary relief would enable Plaintiffs

6   to access badly-needed federal funds does not transform this case into a contractual dispute.  As

7   Defendants' own authority recognizes, "a district court's jurisdiction is 'not barred by the possibility'

8   that an order . . . may result in the disbursement of funds."  *Dep't of Educ.*, 604 U.S. at 651.  Indeed,

9   multiple courts[4] have rejected the arguments Defendants make here.  This Court should do likewise.

10  ## II.  Plaintiffs Are Likely to Succeed on the Merits of Their Claims.

11  Under the Ninth Circuit's "sliding scale" approach, "a plaintiff may obtain an injunction so

12  long as he has demonstrated 'serious questions going to the merits," that the balance of hardships "tips

13  sharply" in his favor, that he is likely to suffer irreparable harm, and that an injunction is in the public

---

[3] *Nat'l Insts. of Health v. Am. Pub. Health Ass'n* ("*NIH*"), 145 S. Ct. 2658 (2025)  (citation omitted) (termination of funding); *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (payments under existing grant agreements); *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 370–72 (2025) (section 1983 claim regarding participation in state Medicaid program); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (competing claims to land); *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021) (breach of annual contributions contract); *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) (challenging termination from military service without due process); *Climate United Fund v. Citibank, N.A.*, 154 F.4th 809, 824 (D.C. Cir. Sept. 2, 2025) (termination of funding);  *United States Conf. of Cath. Bishops v.  United States Dep't of State*, 770 F. Supp. 3d 155, 163 (D.C.Cir. 2025), dismissed sub nom. *United States Conf. of Cath. Bishops v.  United States Dep't of State*, No. 25-5066, 2025 WL 1350103 (D.C. Cir. May 2, 2025) (cancellation of cooperative agreements); *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (breach of fiduciary duty reviewable by district court); *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (citation omitted) (challenging decision to suspend employee contributions to retirement benefit plan); *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985) (termination of contract).

[4] *E.g.*, *Cnty. of Santa Clara v. Noem* ("*Santa Clara*"), 25-cv-08330-WHO, 2025 WL 3251660, at *29 (N.D. Cal. Nov. 21, 2025) (noting "wall of authority"); *Hous. Auth. of City & Cnty. of San Francisco v. Turner* ("*Housing Authority*"), 25-cv-08859-JST, 2025 WL 3187761, at *8-10 (N.D. Cal. Nov. 14, 2025); *City of Seattle v. Trump* ("*Seattle*"), No. 2:25-cv-01435-BJR, 2025 WL 3041905, at *7-8 (W.D. Wa. Oct. 31, 2025); *City of Fresno v. Turner* ("*Fresno II*"), No. 25-cv-07070-RS, 2025 WL 2721390, at *5-6 (N.D. Cal. Sept. 23, 2025); *San Francisco Unified Sch. Dist. v. AmeriCorps* ("*AmeriCorps II*"), 784 F. Supp. 3d 1280, 1291–97 (N.D. Cal. 2025); *Martin Luther King, Jr. Cnty. v. Turner* ("*King Cnty.*"), 785 F. Supp. 3d 863, 877–82 (W.D. Wash. 2025); *City & Cnty. of San Francisco v. Trump* ("*San Francisco II*"), 783 F. Supp. 3d 1148, 1201 n.12 (N.D. Cal. 2025); *see also Thakur v. Trump*, 148 F.4th 1096, 1103–04 (9th Cir. 2025).

---

interest. *Santa Clara*, 2025 WL 3251660, at *25 (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011)); *AmeriCorps II*, 784 F. Supp. at 1285.[5]

### A.    The Challenged Conditions Are Unconstitutional.

Defendants' repeated insistence that the Challenged Conditions[6] do nothing more than require compliance with federal anti-discrimination law misrepresents their text, scope, and context. To the extent the Conditions are decipherable, they appear to require Plaintiffs to abandon lawful DEI programs and policies and act contrary to the COPS Statute.

#### 1.    The Challenged Conditions Violate the Separation of Powers.

Plaintiffs are likely to succeed on the merits of their claim that the Challenged Conditions violate the Separation of Powers. As Plaintiffs have argued, the authority to place conditions on the receipt of federal funds comes only from Congress. Mot. p. 10. "[W]hen it comes to spending, the President has none of 'his own constitutional powers' to 'rely' upon." *City & Cnty. of San Francisco v. Trump* (*"San Francisco I"*), 897 F.3d 1225, 1233-34 (9th Cir. 2018) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952)). Here, neither the Constitution nor Congress authorize Defendants to impose the Challenged Conditions or any materially similar requirements.

##### a.    Plaintiffs' Separation of Powers Claim Is Constitutional—Not Statutory—Under *Murphy Co.*

Defendants' argument misinterprets the teachings of *Dalton v. Specter*, 511 U.S. 462 (1994), and ignores controlling Ninth Circuit precedent. Courts in the Northern District have already considered and rejected Defendants' exact argument. *See, e.g., Santa Clara*, 2025 WL 3251660, at *30; *Housing Authority*, 2025 WL 3187761, at *10.[7]

---

[5] The application of the "sliding scale" approach is not contingent upon establishing irreparable harm is likely. Opp. pp. 5-6. Even so, such an approach would have no practical effect on the outcome.

[6] Defendants point out that Plaintiffs agreed to abide by requirements materially similar to the Challenged Conditions when they applied for the grants. This is beside the point, as the Plaintiffs' applications for grants were not a grant agreement. Moreover, Defendants do not argue that this has any bearing on the constitutionality of the grant conditions. In addition, until the grants were awarded in October 2025, it was not clear which conditions would be included. And, in any case, Plaintiffs applied *before* the July Bondi Memo was issued.

[7] Defendants' out-of-circuit additional authorities are distinguishable. In *Climate United Fund v. Citibank, N.A.*, 154 F. 4th 809, 826-27 (D.C. Cir. 2025), the plaintiffs, as in *Dalton*, claimed that defendants had violated a federal statute. In *New York v. National Science Foundation*, 793 F.Supp. 3d 562, 604-07 (S.D.N.Y. 2025), the terminations of grants allegedly "violated statutes."

Defendants first argue that Plaintiffs invoke statutory rather than constitutional doctrines for their Separation of Powers arguments.  Opp. p. 11.  Defendants contend *Dalton* stands for the principle that a claim the President has exceeded his statutory authority is not and can never be a constitutional claim.  Opp. p. 11 (citing *Dalton*, 511 U.S. at 473).  But, in *Dalton*, the plaintiffs' claims were rooted *solely* in statutory analysis:  There, the plaintiffs sought to enjoin an executive action because it violated the substantive and procedural requirements of a statute.  *Dalton*, 511 U.S. at 466, 474.  The Court held judicial review was not available because that same statute granted the President the discretion to act as he did.  *Id.* at 469-72, 74.

Here, unlike in *Dalton*, Plaintiffs do not allege Defendants *violated* the COPS Statute.  Instead, Plaintiffs allege the COPS Statute *does not authorize* Defendants to impose the Challenged Conditions.  This is a Separation of Powers argument.  Further, that Plaintiffs may invoke statutory doctrines to illustrate the violation of the Separation of Powers does not transform this dispute from a constitutional one to a statutory one.  In the Ninth Circuit, a challenge to an Executive Branch action is "constitutional, and therefore judiciable" as long as the plaintiff ties the Separation of Powers claim to the President's lack of "statutory authority and background constitutional authority."  *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023), *cert. denied* 144 S. Ct. 1111 (2024).  Plaintiffs have argued precisely this. Mot. pp. 10-12.  Their claims are constitutional.  *Murphy,* 65 F. 4th at 1130. ("While an action taken by the President in excess of his statutory authority does not necessarily violate the Constitution, specific allegations regarding separation of powers may suffice." (cleaned up)).

### b. Neither Congress nor the Constitution Authorizes Defendants to Impose Any of the Challenged Conditions.

Defendants claim the Discrimination Condition is lawfully imposed under federal regulations promulgated pursuant to Title VI[8] of the Civil Rights Act.  Opp. pp. 8-9.  The Discrimination Condition, according to Defendants, requires only that Plaintiffs certify compliance with existing law. *Id.* p. 10.

Not so.  The Discrimination Condition purports to do far more than just require Plaintiffs to

---

[8] Title VI prohibits discrimination "on the ground of race, color, or national origin" in "any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.

follow existing law.  Both by itself and in conjunction with the July Bondi Memo and many of this Administration's EOs, Mot. pp. 12-14, 13 n.7, this Condition appears to require Plaintiffs to operate contrary to settled antidiscrimination law.  Mot. pp. 4-6.  The Executive Branch's guidance not only openly maligns DEI but also "repeatedly cast[s] [the Administration] as departing drastically from the practices of prior administrations."  *See Housing Authority*, 2025 WL 3187761, at *12 (discussing anti-DEI EOs); *Martin Luther King, Jr. Cnty. v. Turner*, No. 2:25-cv-814, 2025 WL 2322763, at *12 (W.D. Wash. Aug. 12, 2025) (". . . Defendants interpret federal antidiscrimination laws in a manner that is inconsistent with well-established legal precedent.").  The Discrimination Condition therefore portends "professedly radical departures from a longstanding status quo," negating Defendants' argument they merely seek to require compliance with existing law.  *See Santa Clara*, 2025 WL 3251660, at *34 ("The current Administration's vision of what anti-discrimination means . . . [is] somewhat at odds with that precedent. . . .")*.*

Nothing in Title VI (or its implementing regulations) authorizes Defendants to impose the Discrimination Condition.  *See, e.g., Santa Clara*, 2025 WL 3251660, at *33-34; *Seattle*, 2025 WL 3041905, at *7-8 (holding Title VI does not authorize prohibition of DEI); *Housing Authority*, 2025 WL 3187761, at *11 ("Congress has never authorized the Executive to use Title IX or Title VI as vehicles for prohibiting gender ideology.").  There is likewise no COPS Statute authorization for the Executive Branch to condition receipt of grant funding on eliminating DEI.  *See Housing Authority,* 2025 WL 3187761, at *11-12 (observing, in context of different grant program, no statutory authority for conditioning grant funding on "eliminating all forms of DEI").  To the contrary, Congress *requires* consideration of DEI when allocating COPS Statute grant funds.  Mot. pp. 10-11.

Finally, even assuming that the Discrimination Condition does no more than require Plaintiffs to follow the law (it does not), Plaintiffs are already prohibited from violating federal law by operation of the laws as enacted by Congress and interpreted by courts.  *See Housing Authority*, 2025 WL 3187761 at *12.  And other provisions of the Grant Awards, including the Civil Rights Conditions, require Plaintiffs to comply with "applicable federal civil rights and nondiscrimination statutes and regulations including[] Section 601 of the Civil Rights Act of 1964."  ECF 20-4 (Frost Decl.) Ex. A at pp. 6-7, 11; ECF 20-1 (Kasmar Decl.) Ex. B at pp. 6-7, 11; ECF 20-3 (Jonsen Decl.) Ex. A at pp. 7-8,

11; ECF 20-2 (Meaux Decl.) Ex. A at pp. 6-7, 11, Ex. B at pp. 6-7, 11.  The Discrimination Condition is therefore not only unconstitutional but also "superfluous."  *See Chaly-Garcia v. United States*, 508 F.3d 1201, 1204 (9th Cir. 2007) (federal common law "presum[es] that every provision was intended to accomplish some purpose, and that none are deemed superfluous").

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College* (*"SFFA"*), 600 U.S. 181 (2023) "is not the smoking gun [Defendants] claim it is."  *Santa Clara*, 2025 WL 3251660, at \*37 n.11 (discussing *SFFA*).  *SFFA* confronted only the unique issue of race-based admissions in higher education:  It does not, contrary to Defendants' insistence, "prohibit all programs rooted in promoting diversity."  *Id.*  Far from it.  As Judge Orrick observed just weeks ago, the *SFFA* Court describes these goals as "'commendable' and 'worthy' even though insufficient to justify race-based admissions."  *Id.* (cleaned up, quoting *SFFA*).[9]  Defendants' argument therefore fails.  *See, e.g., Fresno II*, 2025 WL 2721390, at \*16-17, 19 (enjoining similar conditions).

Defendants likewise fail to identify any constitutional or statutory basis for imposing the EO Condition or the Federal Funding Restrictions.  *See* Opp. p. 15.  Defendants point only to regulations as justification, *id.*, but "an agency regulation cannot create statutory authority; only Congress can do that."  *Fresno II*, 2025 WL 2721390, at \*10 (cleaned up); *see id.* at \*15-16, 19 (finding similar conditions likely unlawful).  Defendants also point to prior administrative practice, Opp. p. 15, but do not—and cannot—offer any authority that prior practice can itself authorize agency action.  That the COPS Office *may have* put "similar conditions" in prior grant awards does not make it legal.  (And, at any rate, Defendants have not put into the record examples of "similar conditions" purportedly included in prior grant awards.)  There is no constitutional or statutory authority authorizing the Executive Branch to legislate though EOs, *see City of Fresno v. Turner* (*"Fresno I"),* No. 25-cv-

---

[9] *San Francisco A.I.D.S. Foundation v. Trump* ("*A.I.D.S. Foundation*"), 786 F. Supp. 3d 1184, 1220-21 (N.D. Cal. 2025) and the *National Association of Diversity Officers in Higher Education v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025) (Stay Order at ECF No. 29) are outliers.  *See* ECF 30 (Notice of Related Cases).  Moreover, neither case concerned grants authorized by statutes mandating DEI hiring practices, and, further, each order pre-dates the July Bondi Memo, which targets the same type of DEI activity that the COPS Statute mandates—prioritizing the hiring of women and minorities as sworn officers.  ECF 21-5 (July Bondi Memo) pp. 4-8.  In light of the July Bondi Memo, Judge Tigar, who also ruled on *A.I.D.S. Foundation*, concluded the Administration was attempting to change the law "by fiat."  *Housing Authority*, 2025 WL 3187761, at \*12, 14 (enjoining similar conditions).

07070-RS, 2025 WL 2469330, at *6 (N.D. Cal. Aug. 27, 2025) (EOs do not bind private parties or local governments), or to impose the President's policy priorities on unrelated subjects, such as Qatar, TikTok, COVID-19 vaccines, public monuments, "gender ideology," or "environmental justice," as conditions of receiving federal grants, *see also King Cnty.*, 785 F. Supp. 3d at 886-87 ("Substantive conditions implicating controversial policy matters that are unrelated to the authorizing statute . . . are simply not 'of the same kind' as conditions that require recipients to monitor and report the progress of their program"). The EO Condition and the Federal Funding Restrictions also fail.

Finally, to the extent any of Defendants' arguments rely on boilerplate language limiting implementation to the contours of applicable law, such arguments must fail. *E.g.*, *Housing Authority*, 2025 WL 3187761, at *13; *Fresno II*, 2025 WL 2721390, at *10. Such savings clauses are not "magic[]," *Housing Authority*, 2025 WL 3187761, at *13, and they may not be used to override "clear and specific language" or to "rescue" lawfulness. *San Francisco I*, 897 F.3d at 1239.

### 2. The Challenged Conditions Violate Spending Power Constraints.
#### a. The Spending Power Constraints Apply.

Defendants' argument that the Spending Clause has "no application to Executive Branch decisions" about how to expend funds appropriated by Congress is contrary to Ninth Circuit law. *See City of Los Angeles v. Barr* ("*Barr*"), 929 F. 3d 1163, 1175 n.6 (9th Cir. 2019) (finding "no reason" that Spending Power constraints would not apply to "agency-drawn conditions on grants"). *Barr* controls, even if Defendants contend, based solely on out-of-circuit authority, the decision "is incorrect." Opp. p. 12 & n.3. Courts in the Northern District have applied this reasoning recently in similar cases involving grant conditions. *See, e.g.*, *San Francisco Unified Sch. Dist. v. AmeriCorps* ("*AmeriCorps I*"), 789 F. Supp. 3d 716, 744 (N.D. Cal. 2025) ("[T]he Spending Clause applies not only to Congress, but the agencies implementing spending legislation."). The constraints of the Spending Power apply.[10]

---

[10] Defendants' reliance on *Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) does nothing to help their cause. In that case, the "plain language" of the statute at issue "clearly communicated" the requirements of the condition. *Id.* at 1067. *Board of Education for Silver Consolidated Schools v. McMahon*, 791 F. Supp. 3d 1272 (D.N.M. 2025) is out-of-circuit and distinguishable because the case concerned annually renewed grants that, at the appointed time, were not renewed.

### b. The Requirements of the Challenged Conditions Are Ambiguous.

Defendants next argue that the requirements of a grant condition may be ambiguous—so long as it is unambiguous to the grantee that there is a condition with which they must comply. Opp. pp. 12-14. This argument is not only based on a misreading of case law—it makes absolutely no sense. What purpose is served by a condition that unambiguously exists and unambiguously applies to a party—if the party charged with compliance cannot understand what the condition requires it to do? The purpose of the prohibition on ambiguity is to ensure that acceptance of any conditions is *knowing*: "[T]here can, of course, be no knowing acceptance if a State . . . is unable to ascertain *what is expected of it*." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (emphasis added); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (cleaned up) (local governments "cannot knowingly accept conditions of which they are unaware or which they are unable to ascertain"); *see also California v. United States Dep't of Health and Human Svcs.*, 25-cv-12118-IT, 2025 WL 3459579, at *10-12 (D. Mass. Dec. 2, 2025) (rejecting identical argument that ambiguity *of requirement* of conditions is immaterial).

Plaintiffs do not contend Defendants have failed to "list every factual instance" of noncompliance, Opp. p. 13 (quoting *Mayweathers*, 314 F.3d at 1067). Plaintiffs are unable to ascertain what the Conditions *mean*. The Discrimination Condition's text, especially in conjunction with the Bondi Memo and sundry EOs, has inserted ambiguity into what it means to comply with antidiscrimination law by pronouncing DEI, including the type of DEI mandated by the COPS Statute, unlawful. Mot. pp. 12-14. When Plaintiffs certify compliance, they cannot know whether they are certifying compliance with antidiscrimination laws as written by Congress and interpreted by the courts—or with the Executive Branch's new interpretations. Mot. p. 14; *Santa Clara*, 2025 WL 3251660, at *40 ("[I]t does not appear that any other President has attempted to comprehensively override understanding of federal anti-discrimination law in the way this Administration seeks to through [EOs].")). Defendants' analysis of *SFFA* only amplifies the ambiguity. Defendants claim there can be no ambiguity as to DEI in light of *SFFA*, which "reinforced longstanding precedent" by affirming the unlawfulness of discrimination. Opp. p. 14. But, as discussed *supra*, II.A.1.b, *SFFA* does not prohibit DEI initiatives or even the consideration of race or equity in all circumstances.

*SFFA*, 600 U.S. at 214-15, 230.  Defendants seem to believe, however, that it does.  Opp. p. 14.[11]

The EO Condition is also ambiguous.  *E.g., Santa Clara*, 2025 WL 3251660, at *38 ("[I]t is not clear what compliance with the EO Condition would entail, as it fails to articulate to what extent plaintiffs would be expected to adhere to President Trump's Executive Orders.").  It could be read to require compliance with existing, unrelated EOs, with unlawful or unconstitutional EOs, and with EOs yet to be issued.  Mot. p. 14.  Defendants argue only that Plaintiffs are required to comply with the law as it exists and evolves.  Opp. p. 16.  But, as Plaintiffs have explained, EOs are not laws under the Constitution.  Mot. p. 11.  Defendants have no response.  The Opposition also does not reconcile the EO Condition's plain language, which would encompass EOs that do not yet exist, with the Spending Clause's limits on retroactive conditions.  *See Pennhurst*, 451 U.S. at 25; Mot. p. 14.  And Defendants fail entirely to address Plaintiffs' arguments concerning the vague and undefined terms of the EOs (incorporated by reference to the Grant Awards by the EO Condition) or the Federal Funding Restrictions.  Mot. pp. 14-16.  In fact, Defendants pass over all Plaintiffs' arguments concerning the ambiguities of the Federal Funding Restrictions.  Mot. pp. 15-16.

Multiple courts in the Ninth Circuit have held conditions similar to the Challenged Conditions are ambiguous.  *E.g.*, *Santa Clara*, 2025 WL 3251660, at *34; *Housing Authority*, 2025 WL 3187761 at *14-15; *AmeriCorps I*, 789 F. Supp. 3d at 750; *Fresno I*, 2025 WL 2469330, at *5; *Seattle*, 2025 WL 3041905.[12]  This Court should reach the same result here.

### c.   The Challenged Conditions Are Unrelated to Community Policing.

Defendants next argue that the Challenged Conditions are "reasonably related" to the purpose of the federal expenditure because they require nothing more than for Plaintiffs to comply with the

---

[11] Contrary to Defendants' characterization, Opp. p. 13, Plaintiffs do not argue that the False Claims Act materiality component of the Discrimination Condition is ambiguous.  In fact, its consequences are *unambiguously* alarming.  Mot. pp. 6-7, 21-22; *see also, e.g.*, *Santa Clara*, 2025 WL 3251660, at *38 (noting ambiguities in Discrimination Condition "particularly concerning" in light of the "well founded fear that the Department of Justice may use the [False Claims Act] as a weapon against grant recipients"); *Fresno II*, 2025 WL 2721390, at *14 (discussing similar condition).

[12] At least one court in this district has rejected Defendants' suggestion that conditions' lack of clarity could be resolved by calling the federal agency in question.  *Housing Authority*, 2025 WL 3187761, at *15.  Such "case-by-case clarification" does not give Plaintiffs a reasonable opportunity to know what is prohibited at the juncture of deciding whether to agree to the Challenged Conditions.  *Id.* Further, *ad hoc* activity "encourages arbitrary and discriminatory application."  *Id.* (cleaned up).

law.  Opp. pp. 14, 16.  This Court should reject this argument for the reasons discussed above.

Further, there is no semblance of connection, even a "low" one, between the Challenged Conditions

and the purpose of the COPS Grants.  Opp. p. 12 (citations omitted).  As discussed throughout,

especially when read in the context of the July Bondi Memo and various EOs, the Discrimination

Condition and DEI-related components of the Federal Funding Restrictions appear to prohibit DEI.[13]

Mot. pp. 17-18.  But prohibiting DEI is contrary to the requirements of the COPS Statute, *id.*, and

negates any relation to its purpose.  *Id.*; *see AmeriCorps I*, 789 F. Supp. 3d at 750 (finding anti-DEI

grant conditions likely did not "bear [any] relationship" to grants whose "statutory objections . . .

conflict[ed]" with the conditions); *City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 961

(N.D. Cal. 2018),aff'd in part, vacated in part sub nom. *City & Cnty. of San Francisco v. Barr*, 965

F.3d 753 (9th Cir. 2020) (holding that immigration enforcement conditions had no "nexus" to the

purpose of funding because they "interfere[d]" with priorities of the statute).  And the EO Condition

and Federal Funding Restrictions, to the extent their terms are decipherable, impose restrictions

completely unrelated to assisting law enforcement with supporting community policing through

recruiting, hiring, retaining, and supporting sworn officers.  Mot. p. 17.  Defendants have not even

attempted to argue otherwise.

### B.    The Challenged Conditions Violate the APA.

#### 1.    The Imposition of the Challenged Conditions Is Reviewable by This Court.

Defendants do not contest that the imposition of the Challenged Conditions on Plaintiffs' Grant

Awards is a final agency action.  *See* Mot p. 18 n.12.  Defendants argue instead that Plaintiffs' claims

are not subject to judicial review because there is no "meaningful standard against which to judge the

agency's exercise of discretion."  Opp. pp. 16-17.  This argument fails.

Discretionary language in a statute "does not make agency action unreviewable."  *ASSE Int'l,

Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015) (cleaned up).  In fact, section 701(a)(2)'s exception

to the APA's strong "presumption" favoring judicial review is "quite narrow[]."  *Dep't of Com. v. New*

---

[13] Plaintiffs do not argue that the Discrimination Conditions "prevents" the hiring of minorities and women.  Opp. p. 14.  Rather, it is the threatened inability to *prioritize* the hiring of minorities and women as sworn officers that is jeopardized by the Challenged Conditions.

*York*, 588 U.S. 752, 772 (2019) (cleaned up).  The bar to judicial review applies only in those "rare instances" where there is "truly no law to apply." *Jajati v. United States Customs & Border Prot.*, 102 F. 4th 1011, 1017 (9th Cir. 2024).  This case is not one of those "rare instances" that overcomes the strong presumption of judicial review.  *Id.*

Plaintiffs do not contest that COPS Grants are competitive, discretionary grants.  But, contrary to Defendants' argument, Opp. p. 17, Plaintiffs have not challenged the "allocation" of funds or Defendants' decision to award appropriated funds in the first place.  Plaintiffs challenge *the imposition of the Challenged Conditions to their Grant Awards*.  By setting forth program goals and identifying twenty-four specific purposes for which grant monies may be used, the COPS Statute provides a meaningful standard against which to judge Defendants' exercise of discretion in imposing the Conditions.  34 U.S.C. §§ 10381(b), 10382(c); *Santa Clara*, 2025 WL 3251660, at *41 (collecting cases); *King Cnty.*, 785 F. Supp. 3d at 884 (authorizing statutes provide sufficient guidance).  Accordingly, section 701(a)(2) does not preclude judicial review of Plaintiffs' APA claims.[14]

## 2.    The Challenged Conditions Violate the APA on the Merits.

Plaintiffs have shown that the adoption and imposition of the Challenged Conditions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "in excess of statutory . . . authority."  5 U.S.C. § 706(2)(A)-(C); Mot. pp.18-21.  Neither the Constitution nor the COPS Statute gives Defendants or the Executive the authority to impose the Challenged Conditions on Plaintiffs' Grant Awards.  Courts have repeatedly held that imposing grant conditions without statutory or constitutional authority, as Defendants have done here, violates the APA.  *See, e.g.*, *Santa Clara*, 2025

---

[14] *Lincoln v. Vigil*, 508 U.S. 182 (1993) does not stand for the proposition asserted.  Opp. p. 17.  That case involved cancellation of a program funded by a lump sum.  508 U.S. at 185.  Because the relevant statutes *did not mention the program*, the Court held "[t]he decision to terminate the Program was committed to the [agency's] discretion." *Id.* at 193-94.  Defendants' remaining authorities are also unavailing.  *See generally Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002) (involving allocation of funding, but noting that "statutory reference point" could support judicial review); *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013) (lack of specific language made action unreviewable); *Serrato v. Clark*, 486 F.3d 560, 568-69 (9th Cir. 2007) (funding from lump-sum appropriation did not indicate how it was to be used); *Policy & Research, LLC v. United States  Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 75-78 (D.D.C. 2018) (involving decision not to fund grant and concluding that the agency's guidance and regulations permitted judicial review).

WL 3251660, at *41-42; *City & Cnty. of San Francisco v. Trump*, 25-cv-01350, 2025 WL 1738675, at *1; *Fresno II*, 2025 WL 2721390, at *10- 12; *King Cnty.*, 785 F. Supp. 3d at 884-88.

Defendants fail to counter Plaintiffs' arguments that the Challenged Conditions are arbitrary and capricious.  And, in order to skirt the requirement to provide an explanation of their reasoning or to show Defendants considered Plaintiffs' reliance interests, Defendants insist the Challenged Conditions do not mark a "radical change."  Opp. p. 18.

Defendants' litigation position is divorced from the reality of the Executive Branch's actions. The Discrimination Condition, especially in conjunction with Executive Branch guidance, characterizes DEI as unlawful.  This is the Trump Administration's *new* assertion of what federal law requires, as other courts have noted.  *E.g.*, *Housing Authority*, 2025 WL 3187761, at *12 (noting EOs issued by second Trump administration "repeatedly cast themselves as departing drastically from the practices of prior administrations"); *Fresno II*, 2025 WL 2721390, at *8 (observing condition's references to anti-discrimination law make clear that Executive Branch's interpretation of federal law "is undergoing significant change").  Requiring Plaintiffs to comply with "all" EOs and "Presidential Memoranda" is also a change in agency position, as are the *hundreds* of EOs issued by this President on a wide array of subject matter the EO Condition incorporates by reference.  In an effort to suggest the Challenged Conditions are not novel, Cory Randolph asserts that grant recipients have consistently been required to comply with "all other applicable program requirements, laws, orders, regulations, or circulars."  ECF 33 ¶ 28.  Highlighting this language, however, only proves Plaintiffs' point, as this language remains in each of Plaintiffs' Grant Awards.  *See, e.g.,* ECF 20-1, Ex. B p. 6 (Condition 8). The Challenged Conditions must therefore mean something *new*.  *Chaly-Garcia*, 508 F.3d at 1204. And the admonitions of the Federal Funding Restrictions, which Defendants only cursorily address in their brief, reflect policy goals of the Trump Administration but not one aim of the COPS Statute. Defendants do not even attempt to argue that restrictions relating to COVID-19 vaccine policy, "environmental justice," "gender ideology," or public monuments do not signify a policy change— much less attempt to explain the reasoning behind imposing these limits.

In sum, there can be no serious question that the Challenged Conditions reflect changes in agency position.  These changes require an explanation of reasoning and consideration of reliance

interests.  Mot. p. 20.  Defendants provide neither.[15]  Nor do Defendants provide any proof they

followed the statutory and regulatory procedures concerning the imposition of conditions.  Mot. p. 21.

As Defendants have failed to provide any reasoned explanation for their change in policy or disregard

of Plaintiffs' reliance interests, the Challenged Conditions are arbitrary and capricious.  *E.g.*, *Fresno*

*II*, 2025 WL 2721390, at \*9; *King Cnty.*, 785 F.Supp.3d at 888-89.

### III.    Plaintiffs Will Suffer Immediate and Irreparable Harm Absent Relief.

Plaintiffs' irreparable harms are not purely "economic," Opp. p. 19, but are constitutional and

operational.  First, the "deprivation of constitutional rights 'unquestionably constitutes irreparable

injury.'"  *Fresno II*, 2025 WL 2721390, at \*19 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th

Cir 2017).  And Plaintiffs have demonstrated that the "choice" put to them by Defendants— subject

themselves to the Challenged Conditions or forgo funding—causes irreparable harm because the

Challenged Conditions likely violate the Constitution.  *See, e.g.*, *Housing Authority*, 2025 WL

3187761, at \*19-20.  Second, if Plaintiffs are unable to access the funding, public safety in Plaintiffs'

jurisdictions will suffer.  *See* Mot. p. 22.  And, third, Defendants' conduct also amplifies Plaintiffs'

extreme budgetary uncertainty, a distinct source of irreparable injury.  *King Cnty.*, 785 F. Supp. 3d at

890-91; Mot. pp. 21-22.

Defendants' argument that Plaintiffs "recourse is to decline the funds," Opp. p. 20, glibly

ignores the reality of what declining the funds means —scrambling to find alternate sources of funding

(in at least one case, a "practical impossibility"); diverting funding from other public safety projects;

or cancelling indispensable programming altogether.  ECF 20-4 (Frost Decl.) ¶¶ 15–18; ECF 20-2

(Meaux Decl.) ¶¶ 7, 15; ECF 20-1 (Kasmar Decl.) ¶¶ 18-19; ECF 20-3 (Jonsen Decl.) ¶¶ 21-22.  At

any rate, Defendants' "recourse" argument has been rejected by another court in this district.  *See*

*Housing Authority*, 2025 WL 3187761, at \*20 (holding "recourse" argument does not apply where a

government "denies a benefit to a person on a basis that infringes his constitutionally protected

---

[15] Defendants pretend the only reliance interest Plaintiffs could have is in the ability to violate existing law and EOs—in other words, no reliance interest at all.  Opp. pp. 18-19.  But Plaintiffs' reliance interest on COPS Grants is to serve critical public safety needs—hiring sworn officers to address staffing shortages, developing mental health and wellness support for officers, and training officers to better de-escalate encounters with persons experiencing behavioral crises.  Mot. p. 20.  Defendants have shown no consideration of these or any other reliance interests.

interests, even if he has no entitlement to that benefit" (quoting *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013)). Underscoring the importance of projects that support community policing, Congress appropriated about $380 million for COPS Grants. ECF 33 (Randolph Decl.) ¶ 3. The safety of Plaintiffs' communities and sworn officers and staff is at stake. Plaintiffs have no realistic "recourse" "to decline the funds." Instead, Plaintiffs face two "untenable options" without relief from this Court. *King Cnty.*, 785 F. Supp. 3d at 889-90.

## IV.    The Equities Are Firmly in Plaintiffs' Favor.

Multiple public interests are served by granting Plaintiffs' request for relief. Mot. pp. 23-24. First, it is "always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (cleaned up). Because Plaintiffs have shown a likelihood of success on their constitutional and APA claims, Plaintiffs have already shown the public interest and equities are in their favor. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). Further, the public interest "cannot be disserved" by an injunction that "brings clarity to all parties and to citizens dependent on public services." *San Francisco I*, 897 F.3d at 1244. Awarding Plaintiffs' requested injunctive relief provides such clarity.

Defendants have no persuasive rejoinder. They contend only that granting Plaintiffs' requested relief will disrupt "ongoing consideration of grant applications" and disbursement of grant funds to other would-be recipients. Opp. p. 20. Defendants also suggest that there is a risk of non-repayment in the event Plaintiffs are ultimately unsuccessful on the merits. *Id.* Defendants fail to provide any evidence or explanation for either argument, and, moreover, "these concerns cut both ways." *See Fresno II*, 2025 WL 2721390, at *19. As explained above, Plaintiffs would "be forced to divert and spend unplanned sources of public money to keep afloat projects that the Grant Conditions jeopardize." *See id.* Plaintiffs' interests in ensuring their communities receive funding to hire, recruit, train, and support sworn officers far exceed Defendants' interests. *See, e.g., Santa Clara,* 2025 WL 3251660, at *44 (noting general public interest in seeing statutory mandates fulfilled); *Housing Authority*, 2025 WL 3187761, at *20; *Fresno II*, 2025 WL 2721390, at *20.

## V.    Plaintiffs' Request for Preliminary Injunction Is Appropriately Tailored.

The relief Plaintiffs seek is narrowly tailored to provide "complete relief to the plaintiffs before

the court," *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025), and is necessary to preserve the status quo "before the controversy arose." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (cleaned up).  Effective relief must enjoin Defendants from imposing or enforcing the Challenged Conditions or materially similar conditions in COPS Grants awarded to Plaintiffs, whether through the current grant agreements, in reimbursement requests and post-award submissions under the currently awarded grants, or in future COPS Grant awards.  "To require instead . . . that each Plaintiff specifically identify every grant which may be implicated is backwards because Plaintiffs are injured specifically by the uncertainty and broadness of the Grant Conditions' meaning and reach." *Fresno II*, 2025 WL 2721390, at *20.

Plaintiffs' requested relief is also limited to ensuring that "the present Plaintiffs" have relief. Plaintiffs' Grant Awards require *Plaintiffs* to monitor subrecipients' compliance with the Challenged Conditions.  Thus, extending relief to Plaintiffs' subrecipients is a necessary component of the complete relief needed for Plaintiffs.  *See King Cnty.*, 785 F. Supp. 3d at 893-94 (including subrecipients).  Moreover, Rule 65 expressly authorizes injunctive relief to extend to those acting in concert with Defendants to carry out the grant programs.  *See* Fed. R. Civ. Proc. 65(d)(2).  Defendants also ask the Court to enjoin the Challenged Conditions only to the extent they impose requirements beyond those imposed by existing federal law.  Judge Tigar has already rejected an identical request, which would "compound, not cure, the vagueness defects" especially where "Plaintiffs are already required to comply with federal law." *Housing Authority*, 2025 WL 3187761, at *22.

## VI.    The Court Should Not Require a Bond.

Defendants have not demonstrated a risk of non-payment or any harm that would ensue if the Court declined to award a bond.  Opp. p. 22.  A bond would deprive Plaintiffs and the public they serve of badly needed funds—undermining the effect of the preliminary injunction.  *E.g.*, *San Francisco II*, 783 F. Supp. 3d at 1203 (denying request for bond).  Alternatively, only a nominal bond should issue.  *See, e.g.*, *Housing Authority,* 2025 WL 3187761, at *21 (imposing $100).

### CONCLUSION

For the reasons set forth in the foregoing and in the opening motion, Plaintiffs respectfully request that the Court issue a preliminary injunction as specified in Plaintiffs' proposed order.

Dated: December 12, 2025                    Respectfully submitted,

                                            DAVID CHIU
                                            City Attorney
                                            YVONNE R. MERÉ
                                            Chief Deputy City Attorney
                                            MOLLIE M. LEE
                                            Chief of Strategic Advocacy
                                            SARA J. EISENBERG
                                            Chief of Complex and Affirmative Litigation
                                            KARUN A. TILAK
                                            JESSE E. LANIER
                                            Deputy City Attorneys

                                     By:  /s/ *Jesse E. Lanier*
                                            JESSE E. LANIER
                                            Deputy City Attorney

                                            Attorneys for Plaintiff
                                            CITY AND COUNTY OF SAN FRANCISCO


                                            TONY LOPRESTI, SBN 289269
                                            County Counsel

                                     By:  /s/ *Bill Nguyen*
                                            BILL NGUYEN
                                            Deputy County Counsel

                                            KAVITA NARAYAN, SBN 264191
                                            Chief Assistant County Counsel
                                            MEREDITH A. JOHNSON, SBN 291018
                                            Lead Deputy County Counsel
                                            BILL NGUYEN, SBN 333671
                                            Deputy County Counsel
                                            70 W. Hedding Street, East Wing, 9th Floor
                                            San José, CA 95110
                                            Telephone:    (408) 299-5900
                                            Facsimile:    (408) 292-7240
                                            E-Mail:       tony.lopresti@cco.sccgov.org

                                            Attorneys for Plaintiff
                                            COUNTY OF SANTA CLARA

ROI I. LUSK
City Attorney

By:  /s/ Regina L. Nassen
REGINA L. NASSEN, Ariz. Bar No. 014574*
Principal Assistant City Attorney

Tucson City Attorney's Office
255 W. Alameda, 7th Floor
P.O. Box 27210
Tucson, Arizona 85726-7210
Telephone: (520)837-4207
Facsimile: (520)623-9803
E-Mail: regina.nassen@tucsonaz.gov

ERIN B. BERNSTEIN, SBN 231539
PRIANKA MUNGALE, SBN 348165
Bradley Bernstein Sands, LLP
1212 Broadway, Suite 1100
Oakland, California 94612
Telephone: (510)380-5801
E-Mail: ebernstein@bradleybernstein.com

Attorneys for Plaintiff
CITY OF TUCSON

*Admitted pro hac vice


HEATHER FERBERT, SBN 246759
City Attorney

By:  /s/ Julie Rau
JULIE RAU
Lead Deputy City Attorney

JEAN JORDAN, SBN 155009
Acting Assistant City Attorney
JULIE RAU, SBN 317658
Lead Deputy City Attorney
DANIEL IKERI, SBN 207674
Deputy City Attorney
1200 Third Avenue, Suite 1620
San Diego, CA 92101
Telephone:      (619) 236-6220
Facsimile:      (619) 236-7215
E-Mail:         Jrau@sandiego.org
                DIkeri@sandiego.org

Attorneys for Plaintiffs
CITY OF SAN DIEGO

**FILER'S ATTESTATION**

I, JESSE E. LANIER, am the ECF user whose identification and password are being used to file this PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, I hereby attest that the other above-named signatories concur in this filing. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.