CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone:  (415) 436-7224
   Facsimile:  (415) 436-6748
   jevechius.bernardoni@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br><br>        Defendants. | Case No. 3:25-cv-09277-JD<br><br>**CERTIFIED SUPPLEMENTAL ADMINISTRATIVE RECORD**<br><br>The Honorable James Donato |

Defendants United States Department of Justice ("DOJ"), Pamela J. Bondi in her official capacity ("Bondi"), Office of Community Oriented Policing Services ("COPS"), and Cory D. Randolph in his official capacity ("Randolph," and together with DOJ, Bondi, and COPS, "Defendants"), file the attached Supplemental Administrative Record for the above-captioned case.

//

//

//

//

//

//

CERTIFIED SUPPLEMENTAL ADMINISTRATIVE RECORD
No. 3:25-cv-09277-JD                          1

DATED:  April 9, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Jevechius D. Bernardoni*
JEVECHIUS D. BERNARDONI
Assistant United States Attorney

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| City and County of San Francisco, *et al.;*<br><br>Plaintiffs,<br><br>v.<br><br>United States Department of Justice, *et al.*;<br><br>Defendants. | No. 3:25-cv-9277 |

## DESIGNATION AND CERTIFICATION OF SUPPLEMENTAL ADMINISTRATIVE RECORD

I, Cory Randolph, Deputy Director of the Office of Community Oriented Policing Services (COPS Office), hereby certify that, to the best of my knowledge (including my personal knowledge and information made available to me in the course of performing my official duties), the materials in the attached Supplemental Administrative Record constitute a true and complete copy of the non-privileged documents that were directly or indirectly considered in connection with the COPS Office's decision to include the challenged conditions and the funding restriction notice in the COPS Office FY 2025 applicable Notice of Funding Opportunity.

Executed on April 8, 2026, at Washington, D.C.

Digitally signed by CORY
RANDOLPH
Date: 2026.04.08 09:05:28 -04'00'

Cory Randolph

1

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| City and County of San Francisco, *et al.;*<br><br>Plaintiffs,<br><br>v.<br><br>United States Department of Justice, *et al.*;<br><br>Defendants. | No. 3:25-cv-9277 |

**Supplemental Administrative Record Index**

| Document Title/Description | Bates Number Range |
|---|---|
| 2024 COPS Office Law Enforcement Mental Health and Wellness ACT (LEMHWA) Program Award Owner's Manual | COPS-AR-0665-COPS-AR-0762 |
| 2024 COPS Office Community Policing Development (CPD) Program Award Owner's Manual | COPS-AR-0763-COPS-AR-0860 |
| DOJ Grants Financial Guide | COPS-AR-0861-COPS-AR-1010 |
| 2024 COPS Office Safer Outcomes Program Award Owner's Manual | COPS-AR-1011-COPS-AR-1109 |

1



# 2024 COPS Office Law Enforcement Mental Health and Wellness Act (LEMHWA) Program

## Award Owner's Manual

U.S. Department of Justice, Office of Community Oriented Policing Services

**https://cops.usdoj.gov**

COPS-AR-0665

# 2024 COPS Office LEMHWA Program Award Owner's Manual

This manual was created to assist COPS Office award recipients with the administrative and financial matters associated with their award.

For more information about your award, please contact your COPS Office Program Manager. If you do not know the name or telephone number of your COPS Office Program Manager, please contact the COPS Office Response Center at **AskCOPSRC@usdoj.gov** or 800-421-6770.



U.S. Department of Justice
Office of Community Oriented Policing Services
145 N Street NE
Washington, DC 20530
Visit the COPS Office online: **cops.usdoj.gov**
Published September 2024

COPS-AR-0666

# Contents

Getting Started ........................................................................................................................................1

I. Award Acceptance, Terms, and Conditions ..........................................................................................2

    Award package ...................................................................................................................................2

    The Cooperative Agreement .............................................................................................................3

    Accepting the award ..........................................................................................................................3

    Who should sign the award package for our organization?...............................................................4

    By when must the award package be signed? ...................................................................................4

    What are the specific rules regarding termination of award funding?..............................................4

    Award terms and conditions .............................................................................................................5

II. Accessing Award Funds.......................................................................................................................43

    Payment method..............................................................................................................................43

    Additional payment questions .........................................................................................................44

III. Procurement Process.........................................................................................................................46

IV. Financial Record Maintenance ..........................................................................................................47

    What accounting systems are required?...........................................................................................47

    What records must be kept?.............................................................................................................47

    How long must records be kept? ......................................................................................................47

    What if we have more than one award?...........................................................................................48

    Who may access our records?...........................................................................................................48

V. Federal Audit Requirements................................................................................................................49

    Single Audit Act (SAA) requirements................................................................................................49

    Office of Inspector General (OIG) recipient audits...........................................................................50

    Typical audit findings........................................................................................................................51

VI. Reporting Requirements ....................................................................................................................53

    Federal Financial Reports .................................................................................................................53

    Performance Reports .......................................................................................................................55

    Contact points to obtain technical assistance and report violations ................................................57

COPS-AR-0667

VII. When the Award Period Has Ended ..................................................................................................................58

    Final Federal Financial Report (SF-425) ...........................................................................................................58

    Final Performance (Closeout) Report................................................................................................................58

VIII. Conclusion ......................................................................................................................................................60

Appendices .............................................................................................................................................................61

    Appendix A. List of source documents ............................................................................................................61

    Appendix B. U.S. Department of Justice Certified Standard Assurances ...........................................................62

    Appendix C. U.S. Department of Justice Certifications Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; Drug-Free Workplace Requirements; Law Enforcement and Community Policing ..........64

    Appendix D. Conference and Event Guidance...................................................................................................68

    Appendix E. Enhancement of contractor protection from reprisal for disclosure of certain information (41 U.S.C. § 4712)..............................................................................................................................................................80

    Appendix F. 2 C.F.R. Appendix II to Part 200: Contract provisions for nonfederal entity contracts under federal awards ...............................................................................................................................................................84

    Appendix G. Remittance of Interest Earned Amounts ......................................................................................86

    Appendix H. Additional resources for Cooperative Agreement recipients .........................................................87

Glossary of Terms ...................................................................................................................................................88

COPS-AR-0668

# Getting Started

Congratulations on receiving an award from the U.S. Department of Justice (DOJ), Office of Community Oriented Policing Services (COPS Office). The 2024 COPS Office Law Enforcement Mental Health and Wellness Act (LEMHWA) Program awards include the following program:

- LEMHWA Implementation Projects

The LEMHWA Implementation Projects program aims to support state, local, tribal, or territorial enforcement agencies seeking to implement new or enhance existing programs that offer training and services on officer emotional and mental health, peer mentoring, suicide prevention, stress reduction, and support services for officers and their families. Proposed projects may serve one agency, a consortium of agencies, or personnel from agencies located within a county or state. According to the COPS Office, community policing is a philosophy that promotes organizational strategies that support the systematic use of partnerships and problem- solving techniques to proactively address the immediate conditions that give rise to public safety issues such as violent crime, nonviolent crime, and fear of crime. For a complete definition, please see *Community Policing Defined*, which can be found at **https://portal.cops.usdoj.gov/resourcecenter?item=cops-p157**.

Compliance with this Award Owner's Manual is a condition of your award and this manual is binding guidance. This manual will assist your organization with the administrative and financial matters associated with your award. It was developed to ensure that all award recipients are able to clearly understand and meet the requirements of their award. Please review this manual carefully because failure to follow award requirements can have serious ramifications. Please do not hesitate to contact your COPS Office Program Manager if you need assistance with the implementation of your award.

The Uniform Administrative Requirements, Cost Principles, and Audit requirements for Federal Awards (known as the "Uniform Guidance" or "Part 200"), have been updated. The updates will be codified in the Code of Federal Regulations at 2 C.F.R. Part 200 on October 1, 2024. The U.S. Department of Justice (DOJ) adopted the Uniform Guidance, first promulgated in 2013, via regulation at 2 C.F.R. Part 2800 and it includes "any subsequent changes" to Part 200.

DOJ is continuing to assess the impact of the OMB updates on its recipients of federal financial assistance. To the extent practicable, revisions to 2 C.F.R. Part 200 are incorporated into this Award Owner's Manual but may be subject to additional clarifications. Recipients remain responsible for complying with all Part 200 revisions, published in the Federal Register :: Guidance for Federal Financial Assistance, at **https://www.federalregister.gov/documents/2024/04/22/2024-07496/guidance-for-federal-financial-assistance**.

Thank you for providing us with the opportunity to work in partnership with you on this important project.

COPS-AR-0669

# I. Award Acceptance, Terms, and Conditions

Your entity must successfully set up their JustGrants account and enroll in the Automated Standard Application for Payments (ASAP) to accept and manage their award. Accepting or declining an award can only be done through the Justice Grants System (JustGrants). In JustGrants, you may print the PDF of the award for reference.

Prior to accepting an award, the entity administrator must assign a financial manager, a grant administrator, and two Authorized Representatives for each award in JustGrants. COPS Office recipients will have two Authorized Representatives assigned to each award; both are required to accept the award. When the Authorized Representative(s) log(s) into their JustGrants account, they can view accepted awards and awards that need to be accepted. An email notification will also be sent to the Application Submitter, the Authorized Representatives, and the Entity Administrator to sign and accept their award.

**To officially accept your award,** you must carefully review and electronically sign **the Award Package (which includes your Award Information, Financial Information, Award Conditions, and Other Award Documents including the cooperative agreement) within 45 days from the date shown on the award letter.** Please see the JustGrants training: **Grant Award Acceptance** for detailed information on accepting your award.

Your organization will **not** be able to draw down award funds until the COPS Office receives your signed award package and you have completed all steps in the ASAP system. For more information on drawing down award funds, please see the section titled "Accessing Award Funds" in this manual.

## Award package

The award package indicates your official award funding amount, the award number, the award terms and conditions, and the award start and end dates. Please note that the cooperative agreement is incorporated by reference into the award document and that by signing the award document, your organization has entered into the cooperative agreement with the COPS Office and agrees to abide by all the requirements in the cooperative agreement.

Be sure to familiarize yourself with all terms, conditions, and requirements of your award before signing the award package. Print and retain a copy of the award package including the award terms and conditions, the financial information, and the cooperative agreement and any other award documents for your records.

The Project Period start date on the award package means that your organization may be reimbursed for any allowable costs incurred on or after this date. Project Period end date shows the last date that allowable costs may be incurred.

Your award number is in the following format: 15JCOPS-24-GG-XXXXX-XXXX as shown in figure 1 on page 3. The COPS Office tracks award information based upon this number. Therefore, it is important to have your organization's award number (or your organization's System for Award Management (SAM) Unique Entity Identifier (UEI) number) readily available when corresponding with the COPS Office.

COPS-AR-0670

**Figure 1. Award number example**



## The Cooperative Agreement

If your project requires substantial involvement on the part of the COPS Office, a multipage cooperative agreement document will accompany your award package. Please note that the cooperative agreement is included in the award package, and by signing the award package, your organization has entered into the cooperative agreement with the COPS Office and agrees to abide by all the requirements in the cooperative agreement.

Under the Federal Grant and Cooperative Agreement Act of 1977, a cooperative agreement is the legal instrument used by a federal agency to enter into a relationship with a state, local government, or other recipient when the principal purpose of assistance is to carry out a public purpose of support or stimulation authorized by federal law and substantial involvement is expected between the federal agency and the recipient. See 31 U.S.C. § 6305.

To officially accept and begin your award, your organization will review and approve the cooperative agreement document along with the award package and electronically sign for all documents within 45 days of the date shown on the award letter.

Your organization will not be able to draw down funds until the COPS Office receives your electronically signed award package in JustGrants.

If you have any additional questions concerning your cooperative agreement, please contact your designated COPS Office Program Manager.

## Accepting the award

After you have reviewed the conditions of your award and your organization agrees with these conditions, you are ready to accept the award. The Director of the COPS Office or designee has signed the award package indicating approval of your award, an obligation of federal funds to your organization, and our commitment to the award. As stated at the beginning of this section, to officially begin your award and draw down your funds, the authorized representatives (see the Glossary of Terms following the appendices) of your organization must access the JustGrants website to log in, review, and electronically sign the award package and, if applicable, the special award conditions or high risk conditions in the award package supplement within 45 days of the date shown on the award letter.

Refer to the Job Aid Reference Guide titled **_Grantee Acceptance_**, which will walk you through the necessary steps to follow in accepting an award package.

COPS-AR-0671

## Who should sign the award package for our organization?

The authorized representatives are the authorized officials who have ultimate and final responsibility for all programmatic and financial decisions regarding this award as representatives of the legal recipient and those who have the ultimate signatory authority to sign contracts on behalf of your organization. Typically, these are the same executives who signed the forms in your COPS Office application.

For non–law enforcement agencies (institutions of higher education, school districts, private organizations, etc.), COPS Office awards require that both the programmatic official (e.g., executive director, chief executive officer, or equivalent) and financial official (e.g., chief financial officer, treasurer, or equivalent) sign the application, and (if awarded funding) accept the Award Package. The programmatic official must be assigned the role of Authorized Representative 1 and the financial official must be assigned the role of Authorized Representative 2 in JustGrants.

If the Authorized Representatives changes between the time of application submission and award receipt, the Entity Administrator (EA) will need to update the Authorized Representative in JustGrants.

## By when must the award package be signed?

Please electronically sign the award package within 45 days of the date on the award letter. Award funds will not be released until we have received your organization's signed award package, your budget has received final clearance, and any other relevant award conditions particular to your organization have been satisfied. Failure to electronically sign your original award document within the 45-day award acceptance period may result in your award being withdrawn and the funds deobligated without additional notification. If your organization requires an extension for accepting the award beyond the 45-day acceptance time frame, please contact your COPS Office program manager. Be sure to explain the circumstances that prevent your organization from electronically signing the award document within the 45-day period and identify the date by which the award package will be signed. The COPS Office will review such requests on a case-by-case basis. The COPS Office reserves the right to deny requests to extend the award acceptance period. If you have any questions, please contact your COPS Office Program Manager.

## What are the specific rules regarding termination of award funding?

The COPS Office may suspend, in whole or in part, or terminate funding or impose other sanctions on a recipient for the following reasons:

- Failure to substantially comply with the requirements or objectives of the Public Safety Partnership and Community Policing Act of 1994, program guidelines, or other provisions of federal law
- Failure to make satisfactory progress toward the goals or strategies set forth in the recipient's application
- Failure to adhere to award agreement requirements or special conditions
- Proposing substantial plan changes to the extent that, if originally submitted, would have resulted in the application not being selected for funding
- Failure to submit required or requested reports
- Filing a false statement or certification in this application or other report or document
- Other good cause shown

Prior to imposing sanctions, the COPS Office will provide reasonable notice to the recipient of its intent to impose sanctions and will attempt to resolve the problem informally. Appeal procedures will follow those in the U.S. Department of Justice regulations in 28 C.F.R. Part 18.

Awards terminated because of noncompliance with the federal statutes, regulations, or award terms and conditions will be reported to the integrity and performance system accessible through SAM.gov under Entity Information, Responsibility/Qualification (formerly FAPIIS.gov).

False statements or claims made in connection with COPS Office awards may result in fines, imprisonment, debarment from participating in federal awards or contracts, and any other remedy available by law.

Please be advised that recipients may not use COPS Office funding for the same item or service also funded by another U.S. Department of Justice award.

# Award terms and conditions

The award terms and conditions are included in the award package. By accepting this award, you are obtaining federal funds from the COPS Office. As part of that agreement, your organization acknowledges that it will comply with these terms and conditions (and, if applicable, any additional special or high-risk conditions specific to your organization). The section that follows describes, in detail, all of the award conditions, their rationales, and their implications. It also addresses many frequently asked questions. If you have additional questions concerning any of these award conditions, please contact your COPS Office Program Manager.

In limited circumstances, your award may be subject to special conditions that prevent your organization from drawing down or accessing award funds until the special conditions are satisfied as determined by the COPS Office. Any special or high-risk conditions will be included in the award conditions section of the award package. If you have questions about the special or high-risk conditions, please contact your assigned COPS Office Program Manager.

## Reasons for award terms and conditions

The requirements of your award are established within

- the Public Safety Partnership and Community Policing Act of 1994, which established the COPS Office;
- the applicable rules, regulations and policies issued by the U.S. Department of Justice, Office of Management and Budget (OMB), the Government Accountability Office (GAO), and the United States Treasury;
- the specific programmatic requirements established by the COPS Office.

A list of source documents for this manual is provided in the appendices. You may request copies of any source reference document from

**Office of Administration, Publication Unit**
**New Executive Office Building**
**725 17th Street NW, Room G 236**
**Washington, D.C. 20503**

COPS Office–specific documents may be requested directly from the COPS Office by contacting your COPS Office Program Manager.

COPS-AR-0673

## Review of award terms and conditions

By signing the award package to accept this award, your organization agrees to abide by the following award terms and conditions:

*1. Reporting Subawards and Executive Compensation*

**Condition:**

*The recipient agrees to comply with the following requirements of 2 C.F.R. Part 170, Appendix A to Part 170 – Award Term:*

*I. Reporting Subawards and Executive Compensation*

*(a) Reporting of first-tier subawards—(1) Applicability. Unless the recipient is exempt as provided in paragraph (d) of this award term, the recipient must report each subaward that equals or exceeds $30,000 in Federal funds for a subaward to an entity or Federal agency. The recipient must also report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000. All reported subawards should reflect the total amount of the subaward.*

*(2) Reporting Requirements. (i) The entity or Federal agency must report each subaward described in paragraph (a)(1) of this award term to  the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at https://www.fsrs.gov.*

*(ii) For subaward information, report no later than the end of the month following the month in which the subaward was issued. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025.)*

*(b) Reporting total compensation of recipient executives for entities—(1) Applicability. The recipient must report the total compensation for each of the recipient's five most highly compensated executives for the preceding completed fiscal year if:*

*(i) The total Federal funding authorized to date under this Federal award equals or exceeds $30,000;*

*(ii) in the preceding fiscal year, the recipient received:*

*(A) 80 percent or more of the recipient's annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and*

*(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,*

*(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at https://www.sec.gov/answers/execomp.htm.)*

COPS-AR-0674

*(2).Reporting Requirements. The recipient must report executive total compensation described in paragraph (b)(1) of this appendix:*

*(i) As part of the recipient's registration profile at https://www.sam.gov.*

*(ii) No later than the month following the month in which this Federal award is made, and annually after that. (For example, if this Federal award was made on November 7, 2025, the executive total compensation must be reported by no later than December 31, 2025.).*

*(c) Reporting of total compensation of subrecipient executives—(1) Applicability. Unless a first-tier subrecipient is exempt as provided in paragraph (d) of this appendix, the recipient must report the executive total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if:*

*(i) The total Federal funding authorized to date under the subaward equals or exceeds $30,000;*

*(ii) in the subrecipient's preceding fiscal year, the subrecipient received:*

*(A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,*

*(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal awards (and subawards) subject to the Transparency Act; and*

*(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at https://www.sec.gov/answers/execomp.htm.)*

*(2) Reporting Requirements. Subrecipients must report to the recipient their executive total compensation described in paragraph (c)(1) of this appendix. The recipient is required to submit this information to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at https://www.fsrs.gov/ no later than the end of the month following the month in which the subaward was made. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025.)*

*(d) Exemptions. (1) A recipient with gross income under $300,000 in the previous tax year is exempt from the requirements to report:*

*(i) Subawards, and*

*(ii) The total compensation of the five most highly compensated executives of any subrecipient.*

*(e) Definitions. For purposes of this award term:*

*Entity includes:*

*(1) Whether for profit or nonprofit:*

*(i) A corporation;*

COPS-AR-0675

*(ii) An association;*

*(iii) A partnership;*

*(iv) A limited liability company;*

*(v) A limited liability partnership;*

*(vi) A sole proprietorship;*

*(vii) Any other legal business entity;*

*(viii) Another grantee or contractor that is not excluded by subparagraph (2); and*

*(ix) Any State or locality;*

*(2) Does not include:*

*(i) An individual recipient of Federal financial assistance; or*

*(ii) A federal employee.*

*Executive means an officer, managing partner, or any other employee holding a management position.*

*Subaward has the meaning given in 2 C.F.R. 200.1.*

*Subrecipient has the meaning given in 2 C.F.R. 200.1.*

*Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 C.F.R. 299.402(c)(2).*

**Why this condition:**

To further federal spending transparency, the Federal Funding Accountability and Transparency Act of 2006 (FFATA) requires, among other things, that information on federal awards (federal financial assistance and expenditures) be made available to the public via a single, searchable website, which is www.USASpending.gov. Recipients are responsible for reporting their applicable executive compensation and subaward information, and the award term provides guidance to report the related information as required by FFATA.

**What you should do:**

At the time of award application, your organization was asked to ensure that it has the necessary processes and systems in place to comply with the applicable subaward and executive compensation reporting requirements should it receive funding. If your organization received awards of $30,000 or more, you are required to report award information on any first-tier subawards totaling $30,000 or more, and, in certain cases, to report information on the names and total compensation of the five most highly compensated executives of the recipient and first-tier subrecipients. The FFATA Subaward Reporting System (FSRS), accessible via the website at www.fsrs.gov, is the reporting tool that your organization will use to capture and report subaward information and any executive compensation data required by FFATA. The subaward information entered in FSRS will then be displayed on www.USASpending.gov associated with your organization's award, furthering federal spending transparency.

COPS-AR-0676

For additional information regarding the executive compensation and subaward reporting requirements, please see **https://www.federalregister.gov/documents/2024/04/22/2024-07496/guidance-for-federal-financial-assistance**.

## 2. Restrictions on Internal Confidentiality Agreements

**Condition:**

*No recipient or subrecipient under this award, or entity that receives a contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts the lawful reporting of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.* Further *Consolidated Appropriations Act, 2024, Public Law, 118-47 Division B, Title VII, Section 742.*

**Why this condition:**

Under the Appropriations Act, neither the recipient, subrecipient, nor any entity that receives a contract or subcontract with any funds under this or any other Act may require its employees or contractors to sign an internal confidentiality agreement or statement prohibiting or otherwise restricting their lawful reporting of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency. This provision protects the public interest and ensures the proper management and use of federal funds. This limitation is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

**What you should do:**

In accepting this award, the recipient

- represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above;

- represents that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict) reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the agency making this award, and will resume such obligations only if expressly authorized to do so by that agency.

If the recipient does or is authorized to make subawards or contracts under this award, in accepting, the recipient

- represents that it has or will determine that no other entity that the recipient proposes may or will receive award funds (whether through a subaward, contract, or subcontract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above;

- represents that it has or will make appropriate inquiry, or otherwise has an adequate factual basis, to support this representation;

COPS-AR-0677

- represents that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict) reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

## 3. Prohibited Conduct by Recipients and Subrecipients Related to Trafficking in Persons (Including Reporting Requirements and COPS Office Authority to Terminate Award)

**Condition:**

*The recipient and subrecipient agree to comply with the following requirements of 2 C.F.R. Part 175, Appendix A to Part 175) – Award Term:*

*I. Trafficking in Persons.*

*(a) Provisions applicable to a recipient that is a private entity. (1) Under this award, the recipient, its employees, subrecipients under this award, and subrecipients' employees must not engage in:*

*(i).Severe forms of trafficking in persons;*

*(ii) The procurement of a commercial sex act during the period of time that this award or any subaward is in effect;*

*(iii) The use of forced labor in the performance of this award or any subaward; or*

*(iv) Acts that directly support or advance trafficking in persons, including the following acts:*

*(A) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;*

*(B) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:*

*(1) Exempted from the requirement to provide or pay for such return transportation by the Federal department or agency providing or entering into the grant or cooperative agreement; or*

*(2) The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or a witness in a human trafficking enforcement action;*

*(C) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;*

*(D) Charging recruited employees a placement or recruitment fee; or*

*(E) Providing or arranging housing that fails to meet the hose country's housing and safety standards.*

COPS-AR-0678

*(2) The Federal agency may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. 7104b(c), without penalty, if any private entity under this award:*

*(i) Is determined to have violated a prohibition in paragraph (a)(1) of this appendix; or*

*(ii) Has an employee that is determined to have violated a prohibition in paragraph (a)(1) of this appendix through conduct that is either:*

*(A) Associated with performance under this award; or*

*(B) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 C.F.R. part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by DOJ at 2 C.F.R. Part 2867.*

*(b) Provision applicable to a recipient other than a private entity. (1) The Federal agency may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. 7104b(c), without penalty, if a subrecipient that is a private entity under this award:*

*(i). Is determined to have violated a prohibition in paragraph (a)(1) of this appendix; or*

*(ii) Has an employee that is determined to have violated a prohibition in paragraph (a)(1) of this appendix through conduct that is either:*

*(A) Associated with performance under this award; or*

*(B) Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 C.F.R. part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by 2 C.F.R. Part 2867.*

*(c) Provisions applicable to any recipient.*

*(1) The recipient must inform the Federal agency and the Inspector General of the Federal agency immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (a)(1) of this appendix.*

*(2) The Federal agency's right to unilaterally terminate this award as described in paragraphs (a)(2) or (b)(1) of this appendix:*

*(i) Implements the requirements of 22 U.S.C. 78, and*

*(ii) Is in addition to all other remedies for noncompliance that are available to the Federal agency under this award.*

*3. The recipient must include the requirements of paragraph (a)(1) of this award term in any subaward it makes to a private entity.*

*(4) If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 C.F.R. 175.105(b).*

*(d) Definitions. For purposes of this award term:*

*"Employee" means either:*

COPS-AR-0679

*(1) An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this award; or*

*(2) Another person engaged in the performance of the project or program under this award and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing requirements.*

*"Private entity" means any entity, including for-profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 C.F.R. 200.1.*

*The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. 7102).*

**Why this condition:**

The purpose of this government-wide award term is to implement the requirement in paragraph (g) of section 106 of the Trafficking Victims Protection Act of 2000 (TVPA), as amended, (22 U.S.C. § 7104(g)). The award term authorizes the COPS Office to terminate an award to a private entity, without penalty, if the recipient or a subrecipient:

(a) Engages in severe forms of trafficking in persons during the period of time that the award is in effect;

(b) Procures a commercial sex act during the period of time that the award is in effect;

(c) Uses forced labor in the performance of the award or subawards under the award; or

(d) Acts that directly support or advance trafficking in persons as described in the award term.

2 C.F.R. § 175.105.

**What you should do:**

During the time that the award is in effect, recipients, subrecipients at any tier, and their employees must not engage in severe forms of trafficking in persons, procure commercial sex acts, use forced labor in the performance of the award, or engage in acts that directly support or advance trafficking persons. The recipient must include the above award term in any subaward to a private entity. The recipient must also promptly notify the COPS Office of any information received from any source alleging a violation of prohibited conduct described in the award term.

## *4. Duplicative Funding*

**Condition:**

*The recipient understands and agrees to notify the COPS Office if it receives, from any other source, funding for the same item or service also funded under this award.*

COPS-AR-0680

**Why this condition:**

This award was made to your organization for approved project costs that are not funded with other funds, including federal, state, local, tribal, or BIA funds. Consequently, your organization may not use this funding for items or services that you already have funding for from other sources.

**What you should do:**

If your organization receives funding from another source for the same item(s) or services(s) also funded under this award, please contact your COPS Office Program Manager. If necessary, the COPS Office will work with your organization to reprogram funding for items or services that are allowable under this award program.

*5. Termination*

**Condition:**

*Recipient understands and agrees that the COPS Office may terminate funding, in whole or in part, for the following reasons:*

*(1) When the recipient fails to comply with the terms and conditions of a Federal award.*

*(2) When the recipient agrees to the termination and termination conditions.*

*(3) When the recipient provides the COPS Office written notification requesting termination including the reasons, effective date, and the portion of the award to be terminated. The COPS Office may terminate the entire award if the remaining portion will not accomplish the purposes of the award.*

*(4) Pursuant to any other award terms and conditions, including, when an award no longer effectuates the program goals or agency priorities to the extent such termination is authorized by law.*

*2. C.F.R. § 200.340.*

**Why this condition:**

This condition sets forth the circumstances under which your federal award may be terminated.

**What you should do:**

Carefully review the reasons for termination in this condition to ensure that your organization is aware of when award funding may be terminated. If you have any questions regarding the provisions, please contact your COPS Office Program Manager.

*6. Award Owner's Manual*

**Condition:**

*The recipient agrees to comply with the terms and conditions in the applicable award year COPS Office Program Award Owner's Manual; DOJ Grants Financial Guide; COPS Office statute (34 U.S.C. § 10381, et seq.) as applicable; Students, Teachers, and Officers Preventing (STOP) School Violence Act of 2018 (34 U.S.C. § 10551, et seq.) as applicable; the requirements of 2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards), including subsequent changes, as adopted by the U.S. Department of Justice in 2*

COPS-AR-0681

*C.F.R. § 2800.101; 48 C.F.R. Part 31 (FAR Part 31) as applicable (Contract Cost Principles and Procedures); the Cooperative Agreement as applicable; representations made in the application; and all other applicable program requirements, laws, orders, regulations, or circulars.*

*Failure to comply with one or more award requirements may result in remedial action including, but not limited to, withholding award funds, disallowing costs, suspending, or terminating the award, or other legal action as appropriate.*

*Should any provision of an award condition be deemed invalid or unenforceable by its terms, that provision will be applied to give it the maximum effect permitted by law. Should the provision be deemed invalid or unenforceable in its entirety, such provision will be severed from this award.*

**Why this condition:**

This manual has been designed to inform you of the requirements, laws, regulations, and policies that apply to your award. Your organization will be responsible for the information and rules contained in this manual and for implementing your award in compliance with the applicable terms, conditions, and regulations. Please note that in accordance with 2 C.F.R. § 200.101(a)(2), the COPS Office applies 2 C.F.R. Subparts A through E to for-profit (or commercial) entities. More detailed guidance regarding any particular award requirement or your organization's specific circumstances can be requested through your COPS Office Program Manager.

**What you should do:**

Please read the entire LEMHWA Award Owner's Manual carefully prior to signing the award package. If you have any questions, please contact your COPS Office Program Manager. When accepting your award, you should ensure that the proper reporting and financial systems are in place to satisfy the award requirements.

## 7. Authorized Representative Responsibility

**Condition:**

*The recipient understands that, in accepting this award, the Authorized Representatives declare and certify, among other things, that they possess the requisite legal authority to accept the award on behalf of the recipient entity and, in so doing, accept (or adopt) all material requirements throughout the period of performance under this award. The recipient further understands, and agrees, that it will not assign anyone to the role of Authorized Representative during the period of performance under the award without first ensuring that the individual has the requisite legal authority.*

**Why this condition:**

The Authorized Representatives are responsible for reviewing and accepting a recipient's COPS Office award and must possess the legal authority to accept awards. This action binds the recipient to the award requirements.

**What you should do:**

The recipient must ensure it assigns two officials as the required Authorized Representatives for its COPS Office award who have ultimate and final responsibility for all programmatic and financial decisions for the agency, as the legal recipient. For guidance on who should be assigned as your agency's two Authorized Representatives, please see the Award Acceptance, Terms, and Conditions section of the Award Owner's Manual.

COPS-AR-0682

## 8. Award Monitoring Activities

**Condition:**

*Federal law requires that recipients receiving federal funding from the COPS Office must be monitored to ensure compliance with their award conditions and other applicable statutes and regulations. The COPS Office is also interested in tracking the progress of our programs and the advancement of community policing. Both aspects of award implementation—compliance and programmatic benefits—are part of the monitoring process coordinated by the U.S. Department of Justice. Award monitoring activities conducted by the COPS Office include site visits, enhanced office-based grant reviews, alleged noncompliance reviews, financial and programmatic reporting, and audit resolution. As a COPS Office award recipient, you agree to cooperate with and respond to any requests for information pertaining to your award. This includes all financial records, such as general accounting ledgers and all supporting documents. All information pertinent to the implementation of the award is subject to agency review throughout the life of the award, during the close-out process and for three-years after submission of the final expenditure report. 34 U.S.C. § 10385(a) and 2 C.F.R. §§ 200.334 and 200.337.*

**Why this condition:**

The Public Safety Partnership and Community Policing Act of 1994 states that each award program must contain a monitoring component. The COPS Office actively monitors how recipients are complying with COPS Office award requirements. In addition, the monitoring component provides customer service and technical assistance to help ensure recipients understand how to remain in compliance while implementing their awards.

**What you should do:**

Your organization may be required to accommodate routine and nonroutine efforts by the COPS Office, or an entity designated by the COPS Office, to examine your organization's use of federal funds both programmatically and financially. The four primary means of ensuring recipients' compliance with the terms and conditions of their awards are as follows:

1. **Site visits.** The COPS Office strategically selects award recipients based on a variety of risk factors to conduct site visits to ensure compliance with award terms and conditions. The purpose of site visits is threefold:

    i.   To review for compliance with the terms and conditions of the award

    ii.  To review the recipient's community policing strategies

    iii. To provide customer service and technical assistance

    If selected, recipients will be notified in writing in advance with detailed instructions for how to prepare for the review of their COPS Office awards. This review is generally performed over a period of one to two days. Recipients will have an opportunity to resolve any identified noncompliance issues while on-site or, if necessary, following the site visit. In addition, recipients will also have an opportunity to seek customer service and/or technical assistance on the implementation of their award.

2. **Enhanced Office-Based Grant Reviews (EOBGR).** In lieu of a site visit, awards may be selected for an EOBGR conducted at the COPS Office via teleconference or video conference. EOBGRs serve as an alternative for conducting award monitoring reviews in support of the COPS Office's overall award monitoring strategy. The purpose of the EOBGR is threefold:

    i.  To review for compliance with the terms and conditions of the award

    ii. To review the recipient's community policing strategies

COPS-AR-0683

    iii.   To provide customer service and technical assistance

    If selected, the recipient will be notified in writing in advance of any EOBGR of its COPS Office awards. This review is generally performed over a one-to two-day period. Recipients will have an opportunity to resolve any identified noncompliance issues, if necessary, following the EOBGR interview. In addition, award recipients will also have an opportunity to seek customer service and/or technical assistance on the implementation of their award.

3. **Alleged Noncompliance Referral (ANCR).** An ANCR is an allegation of suspected noncompliance that originates from an internal source within the COPS Office or an external referral from one of many sources. Internal ANCRs generally originate from COPS Office Grants Administration Division, Finance Division, or the Office of General Counsel (OGC), although any COPS Office component may refer a noncompliance issue to the ANCR. External noncompliance referrals may be received from anonymous complainants, media, citizens, law enforcement agencies, other Federal agencies, or other outside sources. On a case-by-case basis, COPS Office ANCR staff members determine the appropriate course of action to take to investigate complaints of alleged noncompliance. This may include phone or letter contact or a site visit by COPS Office staff or the OIG. Each ANCR referral is resolved as a violation or nonviolation based upon the preponderance of the supporting documentation or other facts to determine if the award recipient is in compliance or noncompliance.

4. **Audit liaison.** The OIG may conduct a random audit for any recipient of a COPS Office award. In the event your organization has undergone an OIG audit and there are audit recommendations (findings) resulting from noncompliance or poor accountability practices, the COPS Office Grant Monitoring Division Audit Liaison Section will work with your organization to resolve and close these recommendations. Remedies to close recommendations may include repayment of award funds, providing adequate documentation to demonstrate compliance, or providing proof of policies or procedures that were created or revised to directly address the causes for the noncompliance as a proactive preventative measure to avoid future noncompliance.

Recipients are responsible for remedying any award noncompliance that is identified during site visits, EOBGRs, and/or ANCRs. In addition, recipients are responsible for remedying noncompliance stemming from audit recommendations identified in audits of COPS Office awards conducted by the OIG and the Office of the Chief Financial Officer (OCFO). Remedies for noncompliance may include but are not limited to repayment of award funds for unallowable or unsupported costs, providing adequate documentation to demonstrate compliance, suspending active award funding, voluntary withdrawal from or involuntary termination of remaining award funds, or a restriction from receiving future COPS Office awards for a period of time. Under certain conditions, additional actions may include referral and placement on the U.S. Department of Justice's High-Risk List, which will include mandatory completion of the Office of Justice Programs Financial Management Training and being subject to increased monitoring of current and future awards while on the list. In the event of criminal misuse of award funds, recipients may also be subject to fines and imprisonment. To avoid findings of noncompliance, recipients are strongly encouraged to become familiar with the ***COPS Office Grant Monitoring Division's Grant Monitoring Standards and Guidelines*** and Award Owner's Manual for the year in which the award was made. Recipients should also contact their COPS Office Program Manager at any time during the life of a COPS Office award with questions concerning award conditions, terms, or requirements to seek guidance to avoid noncompliance. It is necessary for recipients to maintain all relevant documentation (administrative, financial, and programmatic) used to develop the application and implement the award that may be necessary or required to demonstrate award compliance for a period of three-years from the date of submission of the final expenditure report. For more information, please contact the COPS Office Response Center at **AskCopsRC@usdoj.gov**.

COPS-AR-0684

2024 COPS Office Law Enforcement Mental Health and Wellness Act (LEMHWA) Program Award Owner's Manual

## 9. Contract Provision

**Condition:**

*All contracts made by the award recipients under the federal award must contain the provisions required under 2 C.F.R. Part 200, Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards. Please see appendices in the Award Owner's Manual for a full text of the contract provisions.*

**Why this condition:**

Federal regulations require recipients and subrecipients to comply with the necessary contract provisions in order to standardize and strengthen oversight of all contracts made under federal awards. This provision protects the public interest and ensures the proper management and use of federal funds as it relates to contracts entered into by the recipient.

**What you should do:**

The recipient should review all contracts made under the federal award to ensure that they contain the provisions required under *2 C.F.R. Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards* in the appendices of this manual.

## 10. Assurances and Certifications

**Condition:**

*The recipient acknowledges its agreement to comply with the Assurances and Certifications forms that were signed as part of its application.*

**Why this condition:**

Although the COPS Office has made every effort to simplify the process of applying for and receiving awards, several provisions of federal law require us to obtain the recipient's Assurances and Certifications regarding certain matters. Most of the Assurances and Certifications apply to all federal award programs.

**What you should do:**

Applicants to COPS Office award programs are required to sign the Assurances and Certifications forms at the time of application. Signing these documents assures the COPS Office that you have read, understood, and accepted the award terms and conditions outlined in the Assurances and Certifications. Please read these documents carefully, because signatures on these documents are treated as a material representation of fact upon which reliance will be placed when the U.S. Department of Justice determines to make an award. Additional copies of the Assurances and Certifications forms are contained in the appendices of this manual. If you have any questions about the Assurances and Certifications, please contact your assigned COPS Office Program Manager.

## 11. Conflict of Interest

**Condition:**

*Recipients and subrecipients must disclose in writing to the COPS Office or pass-through entity, as applicable, any potential conflict of interest affecting the awarded federal funding in accordance with 2 C.F.R. § 200.112.*

COPS-AR-0685

**Why this condition:**

Recipients and subrecipients are required to use federal funding in the best interest of their award program. Any decisions related to these funds must be free of hidden personal or organizational conflicts of interest, both in fact and in appearance.

This means that recipients and subrecipients should not participate in any award-related decisions or recommendations that involve any of the following people or groups:

- an immediate family member
- a partner
- an organization in which they are serving as an officer, director, partner, or employee
- any person or organization with whom they are negotiating or who has an arrangement concerning prospective employment, has a financial interest, or for other reasons can have less than an unbiased transaction with the recipient or subrecipient

This also means that recipients and subrecipients should avoid any action which might result in or create the appearance of

- using your official position for private gain;
- giving special treatment to any person;
- losing complete independence or objectivity;
- making an official decision outside official channels; or
- affecting negatively the confidence of the public in the integrity of the Federal Government or the program.

**What you should do:**

Ensure that you report in writing to the COPS Office or pass-through entity, as applicable, any potential conflict of interest that may affect your federal award.

## 12. Debarment and Suspension

**Condition:**

*The recipient agrees not to award federal funds under this program to any party which is debarred or suspended from participation in Federal assistance programs. 2 C.F.R. Part 180 (Governmentwide Nonprocurement Debarment and Suspension) and 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension).*

**Why this condition:**

Under federal regulations, recipients are required to ensure that federal funds are not given to parties that are debarred or suspended from participation in federal assistance programs. This is to protect the public interest and to ensure proper management and integrity in federal activities by conducting business only with responsible parties. For details regarding the debarment and suspension requirements, please see 2 C.F.R. Part 180 (Governmentwide Nonprocurement Debarment and Suspension), and 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension.)

COPS-AR-0686

**What you should do:**

If under a COPS Office award you enter into a contract for goods or services for $25,000 or more or any subaward, you must verify that the vendor or subrecipient and their respective principals (e.g., owners, top managers) with whom you intend to do business are not excluded or disqualified from participation in federal assistance programs. In addition, you must include a term or condition in the contract or subaward requiring the vendor or subrecipient to comply with subpart C of the OMB guidance in 2 C.F.R. Part 180 (Governmentwide Nonprocurement Debarment and Suspension) and subpart C of 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension).

## 13. Employment Eligibility

**Condition:**

*The recipient agrees to complete and keep on file, as appropriate, the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS) Employment Eligibility Verification Form (I-9). This form is to be used by recipients of federal funds to verify that persons are eligible to work in the United States. Immigration Reform and Control Act of 1986 (IRCA), Public Law 99-603.*

**Why this condition:**

Under federal immigration law, all employers are required to take certain steps to ensure that persons that are hired are legally permitted to work in the United States. The United States Citizenship and Immigration Services Employment Eligibility Verification Form (I-9) outlines the types of documents that an employer should review to confirm that a new hire is eligible for employment.

**What you should do:**

You do not need to submit any documentation to the COPS Office to satisfy this condition. Rather, you should complete and maintain the I-9 forms for all new employees under the guidelines set forth by the United States Citizenship and Immigration Services. For further information about this requirement, please visit **https://www.uscis.gov/i-9-central**.

## 14. Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information

**Condition:**

*Recipients and subrecipients agree not to discharge, demote, or otherwise discriminate against an employee as reprisal for the employee disclosing information that he or she reasonably believes is evidence of gross mismanagement of a federal contract or award; a gross waste of federal funds; an abuse of authority relating to a federal contract or award; a substantial and specific danger to public health or safety; or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or award. Recipients and subrecipients also agree to provide to their employees in writing (in the predominant native language of the workforce) of the rights and remedies provided in 41 U.S.C. § 4712. Please see appendices in the Award Owner's Manual for a full text of the statute.*

COPS-AR-0687

**Why this condition:**

Under "Enhancement of contractor protection from reprisal for disclosure of certain information" (41 U.S.C. § 4712), recipients and subrecipients are prohibited from taking reprisal actions against employees for certain whistleblowing activities in connection with federal awards and contracts. The law protects the public interest and ensures the proper management and use of federal funds.

**What you should do:**

Recipients and subrecipients must not take reprisal actions against an employee for disclosing misconduct under federal contracts and awards to certain persons and entities.

Recipients and subrecipients are prohibited from discharging, demoting, or otherwise discriminating against an employee as reprisal for disclosing information that he or she reasonably believes is evidence of

- gross mismanagement of a federal contract or award;
- a gross waste of federal funds;
- an abuse of authority relating to a federal contract or award;
- a substantial and specific danger to public health or safety; or
- a violation of law, rule, or regulation related to a federal contract (including the competition for or negotiation of a contract) or award.

In addition, the disclosure must also have been made to

- a member of Congress or a representative of a committee of Congress;
- an inspector general;
- the Government Accountability Office;
- a federal employee responsible for contract or award oversight or management at the relevant agency;
- an authorized official of the U.S. Department of Justice or other law enforcement agency;
- a court or grand jury; or
- a management official or other employee of the contractor, subcontractor, or recipient who has the responsibility
- to investigate, discover, or address misconduct.

An employee is deemed to have made a protected disclosure if he or she initiates or provides evidence of misconduct in any judicial or administrative proceeding relating to waste, fraud, or abuse on a federal contract or award.

Recipients and subrecipients must inform their employees in writing, in the predominant language of the workforce, of employee whistleblower rights, protections, and remedies under 41 U.S.C. § 4712. Recipients and subrecipients who wish to use the U.S. Department of Justice, Office of Inspector General whistleblower information brochure to inform their employees of their rights, may obtain a copy at **https://oig.justice.gov/sites/default/files/2020-04/NDAA-brochure.pdf**.

Please see the appendices in this manual for a full text of the "Enhancement of contractor protection from reprisal for disclosure of certain information" (41 U.S.C. § 4712).

COPS-AR-0688

## 15. Equal Employment Opportunity Plan (EEOP)

**Condition:**

*All recipients of funding from the COPS Office must comply with the federal regulations pertaining to the development and implementation of an Equal Employment Opportunity Plan. 28 C.F.R. Part 42 subpart E.*

**Why this condition:**

It is the experience of the U.S. Department of Justice in implementing its responsibilities under the Omnibus Crime Control and Safe Streets Act of 1968 (Safe Streets Act), the statute that established the COPS Office, that "the full and equal participation of women and minority individuals in employment opportunities in the criminal justice system is a necessary component to the Safe Streets Act's program to reduce crime and delinquency in the United States" 28 C.F.R. § 42.301. The Equal Employment Opportunity Plan (EEOP) does not impose quotas or hiring requirements on recipients of federal funds.

**What you should do:**

The obligations to comply with the EEOP requirement differ depending on your organization's legal status, the number of its employees, and the amount of the award. If your organization is a government agency or private business and has received a single award for $25,000 or more and has fifty or more employees (counting both full- and part-time employees but excluding political appointees), then it has to prepare a Utilization Report and submit it to the Office for Civil Rights (OCR) within 120 days from the date of the award. Although the OCR has discretion to review all submitted Utilization Reports, it will review the Utilization Reports from recipients that receive an award of $500,000 or more.

To begin developing a Utilization Report, please consult the OCR's website at **https://ojp.gov/about/ocr/eeop.htm** and click EEOP Reporting Tool Login. Additional assistance can be found online at the bottom of the same webpage by clicking the EEO Reporting Tool Job Aid and Frequently Asked Questions.

If your organization has fewer than 50 employees or receives an award of less than $25,000 or is a nonprofit organization, a medical institution, an educational institution, or an Indian tribe, then it is exempt from the EEOP requirement. To claim the exemption, however, your organization must certify that it is exempt by logging into the EEO Reporting Tool on the OCR website at **https://ojp.gov/about/ocr/eeop.htm**, providing the contact and organizational profile information, and then submitting a Certificate of Exemption.

If you have further questions regarding the EEOP requirements, you may contact an EEOP specialist at the OCR by telephone at 202-616-1771or by email at **EEOPforms@usdoj.gov**.

## 16. False Statements

**Condition:**

*False statements or claims made in connection with COPS Office awards may result in fines, imprisonment, debarment from participating in federal awards or contracts, and/or any other remedy available by law. 31 U.S.C. § 3729–3733.*

COPS-AR-0689

**Why this condition:**

This condition advises recipients of the consequences of submitting false claims or statements on applications, financial and programmatic reports, or other award documents.

**What you should do:**

Ensure that all documentation related to your organization's receipt and use of award funding (award applications, progress reports, Federal Financial Reports, etc.) is true and accurate.

## 17. Federal Civil Rights

**Condition:**

*The recipient and any subrecipient must comply with applicable federal civil rights and nondiscrimination statutes and regulations, including section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), as implemented in subparts C and D of 28 C.F.R. Part 42; section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), as implemented in subpart G of 28 C.F.R. Part 42; section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681), as implemented in subpart D of 28 C.F.R. Parts 42 and 54; section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102), as implemented in subpart I of 28 C.F.R. Part 42; and section 809(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. § 10228(c)), as implemented in subpart D of 28 C.F.R. part 42.*

*In addition to applicable federal statutes and regulations that pertain to civil rights and nondiscrimination, the recipient and any subrecipient must comply with the requirements in 28 C.F.R. Parts 22 (Confidentiality of Identifiable Research and Statistical Information); 28 C.F.R. Part 23 (Criminal Intelligence Systems Operating Policies); 28 C.F.R. Part 38 (Partnership with Faith-Based and Other Neighborhood Organizations); and 28 C.F.R. Part 46 (Protection of Human Subjects). For an overview of the civil rights laws and nondiscrimination requirements in connection with your award, please see https://www.ojp.gov/program/civil-rights/overview.*

**Why this condition:**

In establishing financial assistance programs, Congress linked the receipt of federal funding to compliance with federal civil rights and nondiscrimination laws. As a result, recipients are required to comply with the civil rights and nondiscrimination laws referenced above. A hold may be placed on your award if it is deemed that your organization is not in compliance with federal civil rights laws or is not cooperating with an ongoing federal civil rights investigation. If a hold is placed on your award, you will not be able to obligate or draw down federal funds under your organization's COPS Office award until you comply with federal civil rights laws or cooperate with any ongoing federal civil rights investigation.

**What you should do:**

The Office for Civil Rights (OCR), Office of Justice Programs, U.S. Department of Justice has been delegated the responsibility for ensuring that recipients of federal financial assistance from the COPS Office are not engaged in discrimination prohibited by law. Included with your award package is a memorandum from the OCR, which addresses the federal civil rights statutes and regulations applicable to your award. You should review this memorandum to understand your organization's civil rights responsibilities. For an overview of the civil rights laws and nondiscrimination requirements in connection with your award, please see **https://www.ojp.gov/program/civil-rights/overview**.

COPS-AR-0690

The recipient and any subrecipient must comply with all applicable requirements of 28 C.F.R. Part 38, which includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipients and subrecipients that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations. Recipients and subrecipients that provide social services under this award must give written notice to beneficiaries and prospective beneficiaries prior to the provision of services (if practicable) which shall include language substantially similar to the language in 28 C.F.R. Part 38, Appendix C, sections (1) through (4). A sample written notice and other important Part 38 information may be found at **https://www.ojp.gov/program/civil-rights-office/partnerships-faith-based-and-other-neighborhood-organizations**. In addition, a faith-based recipient or subrecipient *may* consider religion in hiring *provided* it satisfies particular requirements, which can be found at **https://www.ojp.gov/funding/explore/legaloverview2024/civilrightsrequirements**.

As a recipient of federal financial assistance from the COPS Office, you are required to comply with the applicable federal civil rights and nondiscrimination laws to collect data and information sufficient to permit effective enforcement of such laws, and to cooperate with any federal civil rights investigation, which includes providing access to records, accounts, documents, information, facilities, and staff.

## 18. Mandatory Disclosure

**Condition:**

*Recipients and subrecipients must timely disclose in writing to the COPS Office or pass-through entity, as applicable, all federal criminal law violations involving fraud, bribery, or gratuity that may potentially affect the awarded federal funding. Recipients that receive an award over $500,000 must also report certain civil, criminal, or administrative proceedings in SAM and are required to comply with the Term and Condition for Recipient Integrity and Performance Matters as set out in 2 C.F.R part 200, Appendix XII to Part 200. Failure to make required disclosures can result in any of the remedies, including suspension and debarment, described in 2 C.F.R. § 200.339.* 2 C.F.R. § 200.113.

**Why this condition:**

Federal regulations require recipients and subrecipients to report all federal violations involving fraud, bribery, or gratuity that may affect the awarded federal funds. In addition, recipients that receive an award of more than $500,000 must also report certain civil, criminal, or administrative proceedings in SAM and are required to comply with the Term and Condition for Recipient Integrity and Performance Matters as set out in 2 C.F.R. part 200, Appendix XII to Part 200. This condition advises your organization of the requirement and the consequences of failing to report such violations to the COPS Office or pass-through entity.

**What you should do:**

Ensure that you timely report in writing to the COPS Office or pass-through entity all federal violations involving fraud, bribery, or gratuity that may affect your federal award and, if applicable, report certain civil, criminal, or administrative proceedings in SAM.

COPS-AR-0691

## 19. Reports/Performance Goals

**Condition:**

*To assist the COPS Office in monitoring and tracking the performance of your award, your agency will be responsible for submitting semi-annual programmatic performance reports that describe project activities during the reporting period and quarterly Federal Financial Reports using Standard Form 425 (SF-425). 2 C.F.R. §§ 200.328–200.329. The performance report is used to track your agency's progress toward implementing community policing strategies and to collect data to gauge the effectiveness of increasing your agency's community policing capacity through COPS Office funding. The Federal Financial Report is used to track the expenditures of the recipient's award funds on a cumulative basis throughout the life of the award.*

**Why this condition:**

The Public Safety Partnership and Community Policing Act of 1994 and other federal regulations and policies require that financial assistance provided by the Federal Government must be monitored carefully to ensure the proper use of federal funds. In addition, the COPS Office seeks to document, on a continuing basis, the progress of our programs and recipients.

**What you should do:**

This award condition is designed to make your organization aware of reporting requirements associated with LEMHWA awards. Semi-annual programmatic performance reports and a final programmatic performance report must be submitted directly to the COPS Office through the JustGrants system. Your organization is also required to submit quarterly Federal Financial Reports using Standard Form 425 (SF-425) within 30 days after the end of each calendar quarter. A final SF-425 will be due within120 days after the end of the award period. This report reflects the actual cumulative federal expenditures incurred during the funding period, and the remaining unobligated balance of federal funds. Under federal regulations, your organization is not permitted to draw down federal funding for costs incurred after the official award end date; however, you will have a 120-day grace period after the award end date during which you can drawdown funds for eligible expenditures incurred before the award end date. Organizations with more than one delinquent programmatic or financial report submission per fiscal year may be subject to delays in receiving reimbursement for allowable expenses and may be required to receive technical assistance to improve compliance with reporting. These reports are discussed in greater detail in the section titled "Reports" in this manual. All reports should be submitted within the deadlines given to avoid suspension or possible termination of award funds or other remedial actions; failure to submit required reports may also impact future funding opportunities.

## 20. Recipient Integrity and Performance Matters

**Condition:**

*For awards over $500,000, the recipient agrees to comply with the following requirements of 2 C.F.R. Part 200, Appendix XII to Part 200 – Award Term and Condition for Recipient Integrity and Performance Matters:*

*I. Reporting of Matters Related to Recipient Integrity and Performance*

*(a) General Reporting Requirement.*

COPS-AR-0692

*(1) If the total value of your active grants, cooperative agreements, and procurement contracts from all Federal agencies exceeds $10,000,000 for any period of time during the period of performance of this Federal award, then you as the recipient must ensure the information available in the responsibility/qualification records through the System for Award Management (SAM.gov), about civil, criminal, or administrative proceedings described in paragraph (b) of this award term is current and complete. This is a statutory requirement under section 872 of Public Law 110–417, as amended (41 U.S.C. 2313). As required by section 3010 of Public Law 111–212, all information posted in responsibility/qualification records in SAM.gov on or after April 15, 2011 (except past performance reviews required for Federal procurement contracts) will be publicly available.*

*(b) Proceedings About Which You Must Report.*

*(1) You must submit the information required about each proceeding that—*

*(i) Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;*

*(ii) Reached its final disposition during the most recent five year period; and*

*(iii) Is one of the following—*

*(A) A criminal proceeding that resulted in a conviction;*

*(B) A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;*

*(C) An administrative proceeding that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or*

*(D) Any other criminal, civil, or administrative proceeding if—*

*(1) It could have led to an outcome described in paragraph (b)(1)(iii)(A) through (C);*

*(2) It had a different disposition arrived at by consent or compromise with an acknowledgment of fault on your part; and*

*(3) The requirement in this award term and condition to disclose information about the proceeding does not conflict with applicable laws and regulations.*

*(c) Reporting Procedures. Enter the required information in SAM.gov for each proceeding described in paragraph (b) of this award term. You do not need to submit the information a second time under grants and cooperative agreements that you received if you already provided the information in SAM.gov because you were required to do so under Federal procurement contracts that you were awarded.*

*(d) Reporting Frequency. During any period of time when you are subject to the requirement in paragraph (a) of this award term, you must report proceedings information in SAM.gov for the most recent five year period, either to report new information about a proceeding that you have not reported previously or affirm that there is no new information to report. If you have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000, you must disclose semiannually any information about the criminal, civil, and administrative proceedings.*

COPS-AR-0693

*(3) Definitions. For purposes of this award term—*

*Administrative proceeding means a nonjudicial process that is adjudicatory in nature to make a determination of fault or liability (for example, Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.*

*Conviction means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere. Total value of currently active grants, cooperative agreements, and procurement contracts includes the value of the Federal share already received plus any anticipated Federal share under those awards (such as continuation funding).*

**Why this condition:**

Under 2 C.F.R. § 200.211(c)(1)(iii), recipients of awards in excess of $500,000 are required to report certain civil, criminal, and administrative proceedings if they have active federal grants, cooperative agreements, or contracts (or any combination of these) that total more than $10,000,000 during the COPS Office award period. The purpose is to protect the public interest and to ensure proper management in federal activities by conducting business with responsible parties.

**What you should do:**

If the total value of your active grants, cooperative agreements, and contracts from all federal awarding agencies exceeds $10,000,000 during the COPS Office award period, then you must ensure that the proceedings described in paragraph 2 of this award term that are reported in the System for Award Management (SAM) are current. The information about the reported proceedings is made available in SAM via the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)).

During the award period, you must either report for the most recent five year period new information about any proceeding(s) that you have not reported previously or affirm that there is no new information to report. You must also disclose semiannually any information about criminal, civil, and administrative proceedings.

## 21. System for Award Management (SAM) and Universal Identifier Requirements

**Condition:**

*The recipient agrees to comply with the following requirements of 2 C.F.R. Part 25, Appendix A to Part 25 – Award Term:*

*I. System for Award Management and Universal Identifier Requirements*

*(a) Requirement for System for Award Management. (1) Unless exempt from this requirement under 2 C.F.R. 25.110, the recipient must maintain a current and active registration in SAM.gov. The recipient's registration must always be current and active until the recipient submits all final reports required under this Federal award or receives the final payment, whichever is later. The recipient must review and update its information in SAM.gov at least annually from the date of its initial registration or any subsequent updates to ensure it is current, accurate,*

COPS-AR-0694

*and complete. If applicable, this includes identifying the recipient's immediate and highest-level owner and subsidiaries and providing information about the recipient's predecessors that have received a Federal award or contract within the last three years.*

*(b) Requirement for Unique Entity Identifier (UEI). (1) If the recipient is authorized to make subawards under this Federal award, the recipient:*

*(i) Must notify potential subrecipients that no entity may receive a subaward until the entity has provided its UEI to the recipient.*

*(ii) Must not make a subaward to an entity unless the entity has provided its UEI to the recipient. Subrecipients are not required to complete full registration in SAM.gov to obtain a UEI.*

*(c) Definitions. For the purposes of this award term:*

*System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide the information required for the conduct of business as a recipient. Additional information about registration procedures may be found in SAM.gov (currently at https://www.sam.gov).*

*Unique entity identifier means the universal identifier assigned by SAM.gov to uniquely identify an entity.*

*Entity is defined at 2 C.F.R. 25.400 and includes all of the following types as defined in 2 C.F.R. 200.1::*

*1. Non-Federal entity;*

*2. Foreign organization;*

*3. Foreign public entity;*

*4. Domestic for-profit organization; and*

*5. Federal agency.*

*Subaward has the meaning given in 2 C.F.R. 200.1.*

*Subrecipient has the meaning given in 2 C.F.R. 200.1.*

**Why this condition:**

The purpose of this standard award term is to ensure government-wide uniformity in establishing a universal unique entity identifier for federal financial assistance applicants, as well as recipients and their direct subrecipients (if applicable) and to establish the SAM as the repository for standard information about applicants and recipients.

**What you should do:**

At the time of award application, your organization was required to provide its SAM unique entity identifier and be registered in the SAM database.

COPS-AR-0695

Your organization should continue to use the same unique entity identifier provided in your award application and update, as needed, the information associated with that unique entity identifier. If your organization is authorized to make subawards under its award, your organization may make subawards only to entities that have unique entity identifiers.

Your organization must maintain active registration and current information in the SAM until you submit the final financial report or receive the final payment under your award, whichever is later. **Your organization must review and update its SAM information at least once per year to maintain an active registration status.** For more information about SAM registration, please visit **www.sam.gov**.

## 22. Additional High-Risk Recipient Requirements

**Condition:**

*The recipient agrees to comply with any additional requirements that may be imposed during the award performance period if the awarding agency determines that the recipient is a high-risk recipient. 2 C.F.R. § 200.208.*

**Why this condition:**

In accordance with 2 C.F.R. § 200.208, the DOJ may impose additional requirements specific to your award, as needed, when it determines that there is unsatisfactory performance, financial or administrative instability, noncompliance with award terms and conditions, or other lack of responsibility risk factors. In such cases, the DOJ may impose special conditions or restrictions that may include requiring the production of documentation, financial award administration training, on-site monitoring, prior approval for expenditure of funds, quarterly progress reports, separate bank accounts, or other requirements.

**What you should do:**

In order to obtain a COPS Office award, recipients must agree to comply with any additional requirements that may be imposed during the award performance period if the awarding agency determines that the recipient is a high-risk recipient.

## 23. Supplementing, Not Supplanting

**Condition:**

*State, local, and tribal government recipients must use award funds to supplement, and not supplant, state, local, or Bureau of Indian Affairs (BIA) funds that are already committed or otherwise would have been committed for award purposes (hiring, training, purchases, and/or activities) during the award period. In other words, state, local, and tribal government recipients may not use COPS Office funds to supplant (replace) state, local, or BIA funds that would have been dedicated to the COPS Office-funded item(s) in the absence of the COPS Office award. 34 U.S.C. § 10384(a).*

**Why this condition:**

The COPS Office statutory nonsupplanting requirement mandates that award funds not be used to replace state or local funds (or, for tribal recipients, BIA funds) that would, in the absence of federal aid, be made available for the award purposes.

**What you should do:**

For state, local, and tribal recipients, LEMHWA funds may not be used to pay for any item or cost funded under the award (equipment, personnel, training, etc.) if that item or cost was otherwise budgeted with state, local, or BIA funds. In addition, recipients may not reallocate state, local, or BIA funds already budgeted for award purposes as a result of receiving LEMHWA award funds. If you have questions concerning this award term and how it pertains to your project budget, please contact your COPS Office Program Manager.

## 24. Sole Source Justification

**Condition:**

*Recipients who have been awarded funding for the procurement of an item (or group of items) or service in excess of $250,000 and who plan to seek approval for use of a noncompetitive procurement process must provide a written sole source justification to the COPS Office for approval prior to obligating, expending, or drawing down award funds for that item or service. 2 C.F.R. § 200.325(b)(2).*

**Why this condition:**

In general, recipients are required to procure funded items through open and free competition. However, in some instances, recipients may have already determined that competition is not feasible.

**What you should do:**

If you have received an award for an item (or group of items) or service in excess of $250,000 and have already determined that the award of a contract through a competitive process is infeasible, you must provide a justification in JustGrants that explains why it is necessary to contract noncompetitively (see ***Grant Award Modification Job Aid Reference Guide***).

The initial determination that competition is not feasible can be made if one of the following circumstances exists:

- Competition is determined inadequate after soliciting several sources.
- The COPS Office authorizes noncompetitive proposals in response to a written request from the recipient.
- The procurement transaction can only be fulfilled from a single source.
- The public exigency or emergency for the requirement will not permit a delay resulting from providing public notice of a competitive solicitation.

The COPS Office will review your request and the supporting information that you provide and will make a determination as to whether or not an exception can be made to the general rule regarding competition. If submitting a sole source justification request to the COPS Office, please use the format described in the *Sole Source Justification* fact sheet which can be found at the **Award Management Materials web page**.

## 25. Modifications

**Condition:**

*Award modifications are evaluated on a case-by-case basis in accordance with 2 C.F.R. § 200.308(i). For federal awards in excess of $250,000, any modification request involving the reallocation of funding between budget categories that exceed or are expected to exceed 10 percent (10%) of the total approved budget requires prior*

COPS-AR-0697

*written approval by the COPS Office. Regardless of the federal award amount or budget modification percentage, any reallocation of funding is limited to approved budget categories. In addition, any budget modification that changes the scope of the project requires prior written approval by the COPS Office.*

**Why this condition:**

The COPS Office realizes that organizations may need to reprogram award funds. Acceptable examples of such award modifications include purchasing additional equipment using cost-savings from approved items or purchasing a different type of equipment due to changing needs. Under federal regulations, you are required to expend federal funds only as approved in the award package. Requests to change or alter an award that meet certain threshold requirements must be submitted to the COPS Office for written approval prior to their purchase or implementation. Without prior written approval, you must continue to implement your award as it was originally outlined and accepted by your organization. Reprogrammed funds must be allocated for items covered within the original scope of the award. Please be advised that reprogramming requests for unallowable costs will not be approved.

Your organization may reprogram its budget up to an aggregate (over the course of your project) of 10 percent of the total project cost without prior written approval from the COPS Office. However, you should notify your COPS Office Program Manager of any reprogramming that falls below the 10 percent threshold as well. For awards in excess of the simplified acquisition threshold (currently $250,000), any reprogramming of funds that totals an aggregate of 10 percent or more of the approved budget requires prior written approval from the COPS Office.

**What you should do:**

You are required to notify your COPS Office Program Manager if you determine that your organization will need to reprogram award funds. If your modification exceeds an aggregated (over the course of your project) 10 percent of your overall award, your organization must log into JustGrants. Please contact your COPS Office Program Manager for further direction on any additional requirements that may apply to your modification request. The COPS Office will then evaluate your request and notify your organization of our decision in writing. Implementation of the modified award budget may begin following written approval from the COPS Office. Please note that modification approvals for active awards will be accompanied by a modified financial section reflecting the approved changes.

## 26. Evaluations

**Condition:**

*The COPS Office may conduct monitoring or sponsor national evaluations of its award programs. The recipient agrees to cooperate with the monitors and evaluators. 34 U.S.C. § 10385(b).*

**Why this condition:**

The Public Safety Partnership and Community Policing Act of 1994 states that evaluations of the program may be carried out or commissioned by the Attorney General for the furtherance of the purposes of the Act. The COPS Office conducts evaluations to determine which programs are working, how programs may be improved, and why certain programs are more successful than others. Specifically, the COPS Office may assess the way in which your organization implements its LEMHWA award. COPS Office staff or evaluators may study the effectiveness of funded programs, projects, and activities. Evaluators may collect information about the programs' effect on crime, victims

COPS-AR-0698

of crime, and the quality of life in communities. In addition, they may ask questions about the challenges encountered during project implementation, how residents feel about community policing, and how police feel about their work. This information will be useful to other communities and police agencies across the country.

**What you should do:**

When evaluations are undertaken, you may be contacted in writing with specific requests for information. In general, evaluators may need to speak with individuals in your organization, observe activities, and obtain written reports about and from your organization. You will be asked to facilitate any site visits and information-gathering activities. In addition, you will be asked to provide accurate and timely information about your award activities. You should fully comply with any requests made regarding these evaluations.

## 27. Allowable Costs

**Condition:**

*The funding under this award is for the payment of approved costs for program-specific purposes. The allowable costs approved for your agency's award are limited to those listed in your agency's award package. In accordance with 2 C.F.R. § 200.400(g), the recipient or subrecipient must not earn or keep any profit resulting from the award. Your agency may not use award funds for any costs not identified as allowable in the award package.*

**Why this condition:**

Funding may only be used to pay for items and services approved by the COPS Office as reflected in the financial information section of the award package. FY 2024 LEMHWA funds must be used as outlined in the approved cooperative agreement and budget. Please note that in accordance with 2 C.F.R. § 200.101(c), the COPS Office applies the cost principles set forth in 2 C.F.R. Part 200, Subpart E to for-profit organizations. In addition, in accordance with 2 C.F.R. § 200.400(g), the recipient or subrecipient must not earn or keep any profit resulting from the award.

To be eligible for payment under this award, the purchase of approved items must be made on or after the award start date and comply with the guidelines described in the section "Accessing Award Funds" in this manual. The section "Financial Record Maintenance" outlines the types of records you must keep to document that you followed this award condition. Purchases must also reflect the costs that were approved in the award package.

**What you should do:**

Refer to your award package for the list of approved allowable cost categories. Listed below are the budget categories that may appear. If your organization's operating budget categories differ from those approved in the award package, your organization should maintain a cross-reference to clearly identify where the funds were budgeted. As long as funds are spent during the award period on project costs that were documented in your application's budget summary and approved by the COPS Office through the issuance of the award package, this award condition will be satisfied. The award number should be included on all budgetary documentation including purchase orders, receipts, and other documentation. All recipients should keep and maintain the most recent, approved version of their 2024 LEMHWA application and award package for future reference.

COPS-AR-0699

*Civilian Personnel (salaries and benefits)*

Personnel expenses may be reimbursed for project activities that take place on or after the award start date. In addition, a position's salary must be reasonable for the services rendered and must be paid to a person appointed under the law or rules governing hiring by your organization. Salary payments must be based on payroll records. Time and attendance records or the equivalent must support payroll records. A recipient may not use federal funds to pay total cash compensation to any employee of the recipient at a rate that exceeds 110 percent of the maximum annual salary payable to a member of the Federal Government's Senior Executive Service (SES) at an agency with a Certified SES Performance Appraisal System for that year. The 2024 salary table for SES employees is available at the Office of Personnel Management website: **https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/**.

If any civilian personnel are employed on a part-time or temporary basis, your organization must specify the percentage of time that each person is working solely on the project identified in your organization's LEMHWA proposal. Fringe benefits may be paid if they are part of a reasonable compensation package offered to your employees. Particular items of fringe benefits must fall within the categories authorized by the COPS Office. Authorized fringe benefits include FICA, Social Security, health insurance, life insurance, vacation, sick leave, retirement, worker's compensation, and unemployment insurance.

*Travel*

Travel costs for transportation, lodging, meals, temporary dependent care, and incidental expenses incurred by personnel while on official business, such as attendance at an award-related meeting or conference when travel is further than 50 miles from program location, are allowable with prior approval from the COPS Office. In accordance with 2 C.F.R. § 200.475, travel costs for official business directly related to the award will be reimbursed based upon the recipient's written travel reimbursement policies if the costs are reasonable and allocable under the project. In the absence of an acceptable written policy regarding travel costs, allowable rates and amounts established by the U.S. General Services Administration (GSA) for the relevant geographic area will apply. The current GSA travel policy and per diem rates can be found at **www.gsa.gov**.

Allowable airfare costs will be reimbursed based upon the least expensive unrestricted accommodations class offered by commercial airlines—for example, lowest discount commercial airfare, the Federal Government contract airfare (if authorized and available), or standard coach airfare—unless otherwise authorized in advance by the COPS Office.

Temporary dependent care costs above and beyond regular dependent care that directly results from conference travels are allowable as long as the costs incurred (1) are a direct result of the individual's travel for the federal award; (2) are consistent with the recipient's documented travel policy for all entity travel; and (3) are only temporary during the travel period.

The LEMHWA program will fund award-related travel costs for the recipient agency or other (nonrecipient) individuals to attend training and technical assistance conferences, seminars, or classes or to visit a site specified in the application. Allowable award-related travel costs that were included in the application have been approved by the COPS Office as part of the LEMHWA award and final budget. Your organization should keep timely and accurate records of all travel expenses. If at any time these costs change, you should immediately contact your COPS Office Program Manager.

COPS-AR-0700

*Equipment*

To be eligible for payment under this award, the purchase of equipment and technology must occur on or after the award start date, the items must be those specifically applied for and approved by the COPS Office, and they must meet the guidelines described in 2 C.F.R. Part 200, Subpart E – Cost Principles. For recipients that are state, local, or tribal government entities, award-funded equipment and technology must supplement, not supplant (replace), locally funded items that would have been funded even in the absence of this award. Funds currently budgeted or obligated for the purchase of equipment and technology may not be reallocated to other purposes or reimbursed upon receiving the LEMHWA award. Organizations should establish practices to receive, label, inventory, and track the location of all purchases made for award-funded equipment and/or technology.

*Supplies*

All supplies must be solely used for the project identified in your project proposal. Reimbursements for office supplies that are consumed by routine administrative purposes instead of project-related activities are prohibited. Items must meet the guidelines described in 2 C.F.R. Part 200, Subpart E – Cost Principles. For any training awards, the COPS Office allows the purchase of flash drives or USB devices to distribute training materials with approval prior to purchasing.

*Sub-awards/Procurement Contracts*

The applicant should distinguish clearly between subawards and contracts in allocating any funds to other entities. Pursuant to 2 C.F.R. § 200.331, a subaward is for the purpose of carrying out a portion of the federal award, and a contract is for the purpose of obtaining goods and services for the recipient's own use. The substance of the relationship is more important than the form of the agreement in determining whether the recipient of the pass-through funds is a subrecipient or a contractor. Keep in mind that the awarding and monitoring of contracts must follow documented procurement procedures, including full and open competition, pursuant to the procurement standards in 2 C.F.R. §§ 200.318- 200.327, and the issuance of subawards must meet the requirements of 2 C.F.R. § 200.332.

Any recipient of an award will be responsible for monitoring subawards and contracts in accordance with all applicable statutes, regulations, and guidelines. Primary recipients will be responsible for oversight of subrecipient or partner spending and monitoring specific performance measures and outcomes attributable to the use of COPS Office funds.

All sole-source procurements of goods and services (those not awarded competitively) in excess of $250,000 require prior approval from the COPS Office. Please see the *Sole Source Justification* fact sheet, which can be found at the **Award Management Materials web page**.

Consultant expenses include goods or services that directly contribute to the implementation or enhancement of the project. The use of a consultant should be more economical than direct employment. Compensation for individual consultant services procured under a COPS Office award must be reasonable and allocable in accordance with Office of Management and Budget (OMB) cost principles, and consistent with that paid for similar services in the marketplace. The services should be commensurate with the rate or salary paid by the primary employer.

Unless otherwise approved by the COPS Office, independent consultant rates will be approved based on the salary a consultant receives from his or her primary employer, as applicable, up to $650 per day (or $81.25 per hour). Please note that this does not mean that the rate can or should be as high as $650 for all consultants. If individuals

receive fringe benefits from their primary employer, such fringe benefit costs should not be included in the calculation of consultant rates. A consultant rate justification will need to be submitted for review and approval to the COPS Office for any consultants paid more than $650 per day prior to incurring any costs. Determinations of approval will be made on a case-by-case basis. Please see the *Consultant Rate Justification* fact sheet, which can be found at the **Award Management Materials web page**.

Consultant travel costs follow the same guidelines as the "Travel" category but should be costs associated with consultant travel. These costs should not be reflected in the "Civilian Personnel" or "Travel" categories.

All other consultant-related expenses should be included in this section such as supply and equipment requests. The same guidelines as previously stated in the above sections will apply.

If an applicant proposes a program or activity that would deliver services or benefits to individuals, the costs of taking reasonable steps to provide meaningful access to those services or benefits for individuals with limited English proficiency may be allowable. Reasonable steps to provide meaningful access to services or benefits may include interpretation or translation services, where appropriate. For additional information, see the "Civil Rights Compliance."

*Other costs*

Items that do not conform to any of the category descriptions specific above but that have a direct correlation to the overall success of a recipient's project objectives and are necessary for the project to reach full implementation will be considered on a case-by-case basis by the COPS Office.

If at any time you are unsure if an item is considered allowable or unallowable, please contact your COPS Office Program Manager for further assistance.

*Indirect costs*

Indirect (facilities and administrative, or F&A) costs are costs that are incurred for a common or joint purpose benefiting more than one cost objective and not readily assignable to a particular project but are necessary to the operation of the agency and the performance of the project. Indirect costs are allowable for this program, but must adhere to the standards set forth in the applicable Office of Management and Budget (OMB) guidance as stated in 2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards) as adopted by the U.S. Department of Justice in 2 C.F.R. § 2800.101. Examples of indirect costs include those incurred for facility operation and maintenance, depreciation, and administrative salaries.

Indirect cost rates are federally negotiated and approved rates that are based on audited and documented expenses approved to be included within an indirect cost rate. It is important that your organization carefully track and update its indirect cost rate during the COPS Office award period.

The recipient understands that if they were approved for indirect costs based on an expired indirect cost rate at the time of application, a special condition may have been added to the award prohibiting the drawdown of funds for reimbursement of indirect costs until a current indirect cost rate has been determined by their cognizant agency and a copy of the "new" approved and signed Indirect Cost Negotiation Agreement has been submitted to the COPS Office.

COPS-AR-0702

The recipient understands that indirect costs may typically only be requested at the time of application. Transferring funds into or out of the indirect cost category is not allowable without prior approval from the COPS Office. A budget modification is required.

If your organization's approved indirect cost rate expires during the award period, a current approved rate must be submitted to the COPS Office in order to continue to draw down award funding for indirect costs. Your expired rate must be renegotiated or extended by your cognizant federal agency. An approved indirect cost rate may be extended one time for up to four years, and once the cognizant federal agency has approved your extension, you must abide by that rate for the agreed-upon time period. At the end of the extension period, you must renegotiate a new indirect cost rate. Your organization must advise the COPS Office in writing of any changes to your approved indirect cost rate during the award period and must request a budget modification with the COPS Office to reflect any rate change.

In addition, if a provisional indirect cost rate is in effect at award closeout, your organization shall proceed with closeout, but you will need to complete an expenditure analysis upon receipt of the approved final indirect cost rate to determine if an adjustment is necessary. If your organization drew down excess COPS Office funding for indirect costs, then your organization must return the overpayment to the COPS Office and submit a revised Federal Financial Report (SF-425). If your organization incurred additional indirect costs, then your organization may request a budget modification if the award is still open and award funds are available. If your organization returns or draws down COPS Office funding, then your organization will need to submit a revised final Federal Financial Report (SF-425).

Please see the *Indirect Costs* fact sheet*,* which can be found at the **Award Management Materials web page**.

*Please be advised that recipients may not use COPS Office funding for the same item or service also funded by another U.S. Department of Justice award.*

Please also see "Duplicative Funding" condition.

## 28. Extensions

**Condition:**

*Recipients may request an extension of the award period to receive additional time to implement their award program. Such extensions do not provide additional funding. Only those recipients that can provide a reasonable justification for delays will be granted no-cost extensions. Extension requests must be received prior to the end date of the award.* 2 C.F.R. §§ 200.308(f)(10) and 200.309.

**Why this condition:**

Under federal regulations, requests to extend the award period require prior written approval from the COPS Office. Without an approved extension, your organization is not permitted to draw down federal funding for costs incurred beyond the official award end date. When justified, the COPS Office will seek to accommodate reasonable requests for no-cost time extensions to fully implement the COPS Office award.

**What you should do:**

The COPS Office will contact your organization during the last quarter of the award period to determine whether a no-cost time extension is needed. Requests to extend the award period must be received by the COPS Office before the official award end date. Failure to submit a request for a no-cost time extension before the award end date may result in the immediate deobligation of any remaining award funds. Please note that the project period of performance will be extended, if necessary, until the deliverable is considered final. If the award is set to expire, prior to the final approval of the deliverable, a no-cost extension will be executed for a reasonable amount of time for the recipient to complete the final deliverable.

## 29. Computer Network Requirement

**Condition:**

*The recipient understands and agrees that no award funds may be used to maintain or establish a computer network unless such network blocks the viewing, downloading, and exchanging of pornography. Nothing in this requirement limits the use of funds necessary for any federal, state, tribal, or local law enforcement agency or any other entity carrying out criminal investigations, prosecution, or adjudication activities. Consolidated Appropriations Act, 2024, Public Law 118–42, Division C, Title V, Section 527.*

**Why this condition:**

The Appropriations Act prohibits the use of federal funds to maintain or establish a computer network that does not block the viewing, downloading, and exchanging of pornography. This provision protects the public interest in the proper management and use of federal funds.

**What you should do:**

The recipient must not use award funds to maintain or establish a computer network unless the network blocks pornography. This does not limit the use of funds for criminal investigations, prosecution, or adjudication activities.

## 30. Public Release Information

**Condition:**

*The recipient agrees to submit one copy of all reports and proposed publications resulting from this award ninety (90) days prior to public release. Any publications (written, curricula, visual, sound, reports, or websites) or computer programs, whether or not published at government expense, shall contain the following statement:*

> *"This project was supported, in whole or in part, by federal award number YYYY-XX-XXXX awarded to [entity] by the U.S. Department of Justice, Office of Community Oriented Policing Services. The opinions contained herein are those of the author(s) or contributor(s) and do not necessarily represent the official position or policies of the U.S. Department of Justice. References to specific individuals, agencies, companies, products, or services should not be considered an endorsement by the author(s) or the U.S. Department of Justice. Rather, the references are illustrations to supplement discussion of the issues.*
>
> *The internet references cited in this publication were valid as of the date of publication. Given that URLs and websites are in constant flux, neither the author(s) nor the COPS Office can vouch for their current validity."*

COPS-AR-0704

**Why this condition:**

The COPS Office wants to ensure the quality, objectivity, utility, and integrity of information in funded projects that are disseminated to the public. However, award-funded reports and publications are not works of authorship by the Federal Government and should not be construed to reflect the official policy or position of the U.S. Department of Justice.

**What you should do:**

Ensure that all publications developed under your award contain the required statement listed above.

### 31. Paperwork Reduction Act Clearance and Privacy Act Review

**Condition:**

*The recipient agrees, if required, to submit all surveys, interview protocols, and other information collections to the COPS Office for submission to the Office of Management and Budget (OMB) for clearance under the Paperwork Reduction Act (PRA). Before submission to OMB, all information collections that request personally identifiable information must be reviewed by the COPS Office to ensure compliance with the Privacy Act. The Privacy Act compliance review and the PRA clearance process may take several months to complete. 44 U.S.C. §§ 3501-3520 and 5 U.S.C. § 552a.*

**Why this condition:**

The purpose of the Paperwork Reduction Act is to reduce, minimize, and control paperwork burdens on the public while maximizing the practical utility and public benefit of information created, collected, disclosed, maintained, used, shared, and disseminated by or for the Federal Government. See 5 C.F.R. § 1320.1. In addition, the Privacy Act establishes a "code of fair information practices" that regulates the collection, maintenance, use, and disclosure of personally identifiable records. 5 U.S.C. § 552a.

A collection of information undertaken by a recipient is considered to be conducted or sponsored by a federal agency only if (1) the recipient is conducting the collection of information at the specific request of the agency, or (2) the terms and conditions of the award require specific approval by the agency of the collection of information or the collection procedures. See 5 C.F.R. § 1320.3(d).

**What you should do:**

When you undertake surveys, interviews, and other methods of information collection in furtherance of the objectives of the award, you should contact your COPS Office Program Manager. The COPS Office Program Manager will inform you whether Office of Management and Budget (OMB) approval of the information collection method is required and of the procedures necessary to obtain this approval. As part of the OMB approval process, a privacy assessment will be completed to determine if an information collection requires a privacy-related notice. OMB approval may take several months to receive, so recipients are advised to allow ample time for the processing of this request.

COPS-AR-0705

## 32. Copyright

**Condition:**

*If applicable, the recipient may copyright any work that is subject to copyright and was developed, or for which ownership was acquired, under this award in accordance with 2 C.F.R. § 200.315(b). The COPS Office reserves a royalty-free, nonexclusive and irrevocable license to reproduce, publish, or otherwise use the work, in whole or in part (including create derivative works), for Federal Government purposes, and to authorize others to do so. The COPS Office also reserves the right, at its discretion, not to publish deliverables and other materials developed under this award as a U.S. Department of Justice resource.*

*Products and deliverables developed with award funds and published as a U.S. Department of Justice resource will contain the following copyright notice:*

> *"This resource was developed under a federal award and may be subject to copyright. The U.S. Department of Justice reserves a royalty-free, nonexclusive, and irrevocable license to reproduce, publish, or otherwise use the work for Federal Government purposes and to authorize others to do so. This resource may be freely distributed and used for noncommercial and educational purposes only."*

**Why this condition:**

U.S. Department of Justice regulations allow the recipient of a LEMHWA award to copyright any work that is subject to copyright and was developed, or for which ownership was purchased, under an award.

As a Federal Government agency whose activities include producing and disseminating law enforcement materials to advance public safety through community policing across the nation, the COPS Office has an interest in making your deliverables and products widely available and accessible to the public. The COPS Office may make any work that was developed or purchased under this award publicly available by any means without restriction, including through designated public access repositories, a U.S. Department of Justice website, social media account, a hard copy, or in electronic form. The COPS Office also reserves the right, at its discretion, to not publish deliverables and other materials (e.g., reports, publications, manuals, and training curricula) developed under this award as a U.S. Department of Justice resource.

**What you should do:**

The recipient is responsible for acquiring the rights, and ensuring that its subrecipients/contractors/authors acquire the rights, including the payment of required fees, to use copyrighted material for inclusion in deliverables that are developed under this award. All licensing, publishing, or similar agreements with a copyright holder, publisher, or other relevant party must include provisions giving the COPS Office a royalty-free, nonexclusive, and irrevocable license to reproduce, publish, or otherwise use the work in whole or in part (including create derivative works) for Federal Government purposes and to authorize others to do so. If the recipient retains a contractor or consultant to author or coauthor a work under this award, the recipient must ensure that there is a written agreement with the contractor or consultant that explicitly (1) assigns and transfers all rights to the copyright in the work to the recipient for the full term of copyright and, if a copyright transfer is not feasible, (2) awards the COPS Office the same royalty-free, nonexclusive, and irrevocable license to use, and authorize others to use, the work for Federal Government purposes.

COPS-AR-0706

The U.S. Department of Justice is a nonexclusive licensee to copyrighted work that was developed, or for which ownership was purchased, under this award. Only the legal or beneficial owner of an exclusive right under a copyright is entitled to institute an infringement action. The recipient should therefore consult its own legal counsel with any copyright infringement questions. For more information about registering a copyright, please visit the U.S. Copyright Office at **www.copyright.gov**.

## 33. Human Subjects Research

**Condition:**

*The recipient agrees to comply with the provisions of the U.S. Department of Justice's common rule regarding Protection of Human Subjects, 28 C.F.R. Part 46, prior to the expenditure of Federal funds to perform such activities, if applicable. The recipient also agrees to comply with 28 C.F.R. Part 22 regarding the safeguarding of individually identifiable information collected from research participants.*

**Why this condition:**

Protections for human subjects of research are required under U.S. Department of Justice regulations at 28 C.F.R. Part 46. This regulation constitutes the Federal Policy (Common Rule) for the Protection of Human Subjects. Each institution engaged in (nonexempt) COPS Office–supported human subjects research must provide a written assurance of compliance, satisfactory to the COPS Office, that it will comply with the U.S. Department of Justice human subjects regulations.

**What you should do:**

If any part of your LEMHWA project contains research or statistical activities which involve human subjects that are not covered by an exemption set forth in 28 C.F.R. Part 46.101(b), you must comply with the requirements in the U.S. Department of Justice's common rule regarding the Protection of Human Subjects, 28 C.F.R. Part 46, including, but not limited to Institutional Review Board (IRB) approval and the appropriate assurances prior to the expenditure of federal funds to perform such activities. By signing the award document, you also agree to comply with 28 C.F.R. Part 22 regarding the confidentiality of identifiable research and statistical information including safeguarding of identifiable information collected from research participants.

## 34. Domestic Preferences for Procurements

**Condition:**

*Recipient agrees that it, and its subrecipients, to the greatest extent practicable, will provide a preference for the purchase, acquisition, or use of goods, products, and materials produced in, and services offered in, the United States. 2. C.F.R. § 200.322 and Executive Order 14005, Ensuring the Future is Made in All of America by All of America's Worker, January 25, 2021.*

**Why this condition:**

It is the policy of the United States Government to use federal funds to buy American whenever possible. This condition promotes domestic preferences in procurements under federal awards.

COPS-AR-0707

**What you should do:**

Ensure that your organization provides a preference for American goods and services funded under your award to the greatest extent practicable and consistent with applicable law.

### 35. Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment

**Condition:**

*Recipient agrees that it, and its subrecipients, will not use award funds to extend, renew, or enter into any contract to procure or obtain any covered telecommunication and video surveillance services or equipment as described in 2 CFR §200.216. Covered services and equipment include telecommunications or video surveillance services or equipment produced or provided by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities); Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities); or an entity that the Secretary of Defense, in consultation with the Director of the National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an entity owned or controlled by, or otherwise connected to, the government of China. The use of award funds on covered telecommunications or video surveillance services or equipment are unallowable. 2. C.F.R. § § 200.216 & 471. See also Section 889 of the John S. McCain National Defense Authorization Act of Fiscal Year 2019, Public Law 115–232.*

**Why this condition:**

Section 889 of the John S. McCain National Defense Authorization Act of Fiscal Year 2019, Public Law 115–232, as implemented by 2 C.F.R. §200.216, prohibits the use of award funds to extend, renew, or enter into any contract to procure or obtain any covered telecommunication and video surveillance services or equipment as explained in the condition.

**What you should do:**

Ensure that your organization does not use award funds to extend, renew, or enter into any contract to procure or obtain any covered telecommunication and video surveillance services or equipment.

### 36. Travel Costs

**Condition:**

*Travel costs for transportation, lodging and subsistence, and related items are allowable with prior approval from the COPS Office. Payment for allowable travel costs will be in accordance with 2 C.F.R. § 200.475.*

**Why this condition:**

LEMHWA funding will cover award-related travel costs for the recipient agency or other (nonrecipient) individuals to attend training and technical assistance conferences, seminars, or classes or to visit a site specified in the original application. Allowable expenses for award-related lodging, meals, temporary dependent care, and incidental expenses that were included in the application were approved by the COPS Office as part of your organization's LEMHWA award and final budget. For more information, please refer to the award condition on "Allowable Costs."

COPS-AR-0708

2024 COPS Office Law Enforcement Mental Health and Wellness Act (LEMHWA) Program Award Owner's Manual

**What you should do:**

Your organization should refer to your JustGrants approved budget for a list of approved travel costs and use LEMHWA funds only for approved travel costs incurred during the award period. In addition, your organization should keep timely and accurate records of all travel expenses. If at any time these costs change, you should immediately contact your COPS Office Program Manager.

## 37. Information Data Breach

**Condition:**

*The recipient (and any subrecipient at any tier) must have written procedures in place to respond in the event of an actual or imminent breach (as defined in OMB M-17-12) if it (or a subrecipient)-- 1) creates, collects, uses, processes, stores, maintains, disseminates, discloses, or disposes of personally identifiable information (PII) (as defined in 2 C.F.R. 200.1) within the scope of a COPS Office grant-funded program or activity, or 2) uses or operates a Federal information system (as defined in OMB Circular A-130). The recipient's breach procedures must include a requirement to report actual or imminent breach of PII to the recipient's COPS Office Program Manager no later than 24 hours after an occurrence of an actual breach, or the detection of an imminent breach. OMB Memorandum M-17-12, Preparing for and Responding to a Breach of Personally Identifiable Information.*

**Why this condition:**

OMB requires recipients and subrecipients to establish written procedures to respond to an actual breach, or the detection of an imminent breach involving personally identifiable information (PII), if within the scope of their award, they will create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII or will use or operate a Federal information system. Recipient breach procedures must include a requirement to notify the Federal awarding agency in the event of such a breach.

**What you should do:**

If any part of your COPS Office award involves your agency creating, collecting, using, processing, storing, maintaining, disseminating, disclosing, or disposing of PII, or the use or operation of a Federal information system, your agency must have written procedures in place to respond to an actual breach, or the detection of an imminent breach involving personally identifiable information (PII), including notification to your COPS Office Program Manager no later than 24 hours following such breach.

Written procedures should promote cooperation and the free exchange of information with the COPS Office, as needed, to properly escalate, refer, and respond to a breach.

## 38. Training Guiding Principles
**Condition:**

*Any training or training materials developed or delivered with award funding provided by the Office of Community Oriented Policing Services is to adhere to the following guiding principles–*

1. *Trainings must comply with applicable law.*

   *In developing and conducting training under the award, recipients (and any subrecipients) shall not violate the Constitution or any federal law, including any law prohibiting discrimination.*

COPS-AR-0709

2. *The content of trainings and training materials must be accurate, appropriately tailored, and focused.*

   *The content of training programs must be accurate, useful to those being trained, and well matched to the program's stated objectives. Training materials used or distributed at trainings must be accurate, relevant, and consistent with these guiding principles.*

3. *Trainers must be well-qualified and skilled in presenting the subject area.*

   *Trainers must possess the subject-matter knowledge and the subject-specific training experience necessary to meet the objectives of the training. In selecting or retaining a trainer, recipients (or subrecipients) should consider such factors as the trainer's resume and written materials, interviews with the trainer, observation of other trainings conducted by the trainer, feedback from other entities with which the trainer has worked, training participant feedback and evaluations, and the general reputation of the trainer.*

4. *Trainers must demonstrate the highest standards of professionalism.*

   *Trainers must comport themselves with professionalism. While trainings will necessarily entail varying teaching styles, techniques, and degrees of formality, as appropriate to the particular training goal, professionalism demands that trainers instruct in the manner that best communicates the subject matter while conveying respect for all.*

**Why this condition:**

This condition sets forth the Training Guiding Principles for the development and delivery of training and training materials funded under a COPS Office award to ensure that such deliverables meet the highest standards for compliance with applicable law, content accuracy and effectiveness, and skilled and professional trainers.

**What you should do:**

Recipients and subrecipients must ensure that any training or training materials supported with COPS Office award funding adhere to the Training Guiding Principles, which are incorporated into the COPS Office training guides. This includes, but is not limited to, the following: (1) **In-Person Curriculum Standards and Review Process Guide**; (2) **Instructor Quality Assurance Guide**; (3) **On-Demand Online Curriculum Process Guide**; and (4) **Video Development Process Guide**. To access these guides and other helpful resources, please visit **TRAINING | COPS OFFICE (usdoj.gov)**.

COPS-AR-0710

# II. Accessing Award Funds

This section provides answers to payment-related questions, including all the information needed to provide access to request payments from your COPS Office awards. For assistance with financial management and award administration, please contact the COPS Office Response Center at **AskCOPSRC@usdoj.gov** or visit our website at **https://cops.usdoj.gov**.

## Payment method

### What method of payment is used?

There is currently one payment system available for accessing federal award funds - The Automatic Standard Application for Payments (ASAP) which is the shared services payment system used by the Department of the Treasury. Through this platform, recipients of DOJ grant awards and other forms of federal assistance will be able to request and receive payments for grants managed through JustGrants.

To learn more about the ASAP registration process, please see the ***ASAP Registration Checklist***.

If you have questions or need help using ASAP, you can contact the OCFO Customer Service Center by email at **Ask.OCFO@usdoj.gov** or by phone at 800-458-0786.

### When should Federal Financial Reports be filed?

After your agency accepts the award, under current regulations, you are required to submit quarterly Federal Financial Reports (FFRs) using a Standard Form 425 (SF-425). This report reflects the actual monies spent and unliquidated obligations incurred by your agency. *You will not be able to make drawdowns from you ASAP account if the SF-425 for the most recent reporting quarter has not been submitted in JustGrants by the deadline date.* Recipients are required to submit their SF-425 reports in the JustGrants portal: **https://justicegrants.usdoj.gov/**

For more information on how to complete and where to submit your quarterly SF-425 report, see the section in this manual titled "Reporting Requirements."

*Filing the Federal Financial Report (SF-425) identifies your federal and local expenditures made during that calendar quarter. However, to receive actual payment, you must request it through ASAP.*

The FFR is submitted in JustGrants, and can only be submitted by someone with the role of "Financial Manager." FFRs may be submitted 10 calendar days or less from a reporting period end date until the due date. Once the due date passes, a delinquent report can still be submitted by a Financial Manager. A Financial Manager also has privileges to edit and resubmit FFRs. The most recent Quarterly FFR can be reopened and resubmitted if the due date has not passed. Similarly, a Final FFR can be reopened and resubmitted up to 120 days after the project period end date. You must contact your awarding office to reopen and resubmit a final FFR anytime beyond 120 days after the award end date. Funds are frozen one day after the due date if the report is not submitted. Funds are released once the delinquent FFR is submitted.

COPS-AR-0711

# Additional payment questions

## Can we receive advances?

Yes. If you receive funds through electronic transfer, the period allowed is 10 days in advance. In general, the concept of "minimum cash on hand" applies to COPS Office awards. This concept requires that your organization request funds based upon immediate cash disbursement needs. You should time your request for payment to ensure that federal cash on hand is the minimum that you need.

There should be no excess federal award funds on hand, except for advances not exceeding 10 days, as noted above.

The Federal Government has four basic rules regarding advances. Advances can be terminated if the recipient

1.  is unwilling or unable to attain project goals;

2.  maintains excess cash on hand;

3.  does not adhere to the terms and conditions of the award;

4.  fails to submit reliable or timely reports.

## How often can we request reimbursement of costs?

There are no limitations on how often your organization may request reimbursements; however, your reimbursement requests should cover a specific time frame and include only costs that were approved in the award package. As a general guideline, most organizations request reimbursement on a monthly or quarterly basis. Also, please note that a date range for a reimbursement request can only be used once.

## Can we earn interest on our award funds?

For nonfederal entities other than states, payment methods must minimize the time between your drawdown of federal funds and your payment of award costs to avoid earning excess interest on your award funds. You must account for interest earned on advances of federal funds as follows:

•   The Office of Management and Budget (OMB) uniform guidance at 2 C.F.R. § 200.305(b)(12) states that interest earned on federal advance payments deposited in interest-bearing accounts **up to $500 per year** may be retained by the nonfederal entity for administrative expenses.

•   Any interest earned on federal advance payments deposited in interest-bearing accounts that is **in excess of $500 per year** must be remitted annually to the Department of Health and Human Services Payment Management System (PMS) through an electronic medium using either Automated Clearing House (ACH) network or a Fedwire Funds Service payment. For detailed information on remittance, please see appendices for a full text of the electronic medium remittance options. Instructions for returning interest on can be found at **https://pms.psc.gov/grant-recipients/returning-funds-interest.html**.

- If you do not have access to an electronic medium option, then please make a check payable to "The Department of Health and Human Services" and mail the check to Treasury-approved lockbox: HHS Program Support Center, P.O. Box 530231, Atlanta, GA 30353-0231. (Please allow 4–6 weeks for processing of a payment by check to be applied to the appropriate Payment Management System (PMS) account).

- Please notify your COPS Office Staff Accountant in the COPS Office Finance Business Unit when any interest that is earned is remitted to the Department of Health and Human Services, Payment Management System.

## Matching funds

Under the COPS Office LEMHWA Program, no local match is required. The COPS Office is funding 100 percent of the allowable items approved in your award package. Any organization desiring to contribute additional funds to this project is encouraged to do so by reporting these funds on the SF-425 as a recipient share of expenditures (line 10j).

COPS-AR-0713

# III. Procurement Process

In general, recipients are required to procure funded items through open and free competition when feasible. When conducting a procurement transaction under a Federal award, a State or Indian Tribe must follow the same policies and procedures it uses for procurements with non-Federal funds. If such policies and procedures do not exist, States and Indian Tribes must follow the procurement standards in §§ 200.318 through 200.327. In addition to its own policies and procedures, a State or Indian Tribe must also comply with the procurement standards: §§ 200.321 (Contracting with small and minority businesses, women's business enterprises, veteran-owned businesses, and labor surplus area firms), 200.322 (Domestic preferences for procurement), and 200.323 (Procurement of recovered material) and ensure that every purchase order or other contract includes any clauses required by § 200.327 (Contract provisions). All other recipients and subrecipients, including subrecipients of a State or Indian Tribe, must follow the procurement standards in §§ 200.318 through 200.327. 2 C.F.R. § 200.317.

Consistent with the uniform administrative requirements that prohibit procurement practices that restrict competition, recipients and subrecipients may not discriminate against any person or entity on the basis of a person or entity's status as an "associate of the Federal Government" (or on the basis of a person or entity's status as a parent, affiliate, or subsidiary of an associate of the Federal Government). The term "associate of the Federal Government" means any person or entity engaged or employed (in the past or at present) by or on behalf of the Federal Government as an employee, contractor, subcontractor, award recipient, subrecipient, agent, or otherwise.

As described in the award condition titled "Sole Source Justification," recipients are required to submit a sole source justification (SSJ) request to the COPS Office for noncompetitive procurements in excess of $250,000 prior to purchasing equipment, technology, or services; obligating funding for a contract; or entering into a contract with award funds. If submitting a sole source justification request to the COPS Office, please follow the steps described in the *Sole Source Justification* fact sheet, which can be found at the **Award Management Materials web page**.

If you have any questions regarding the federal requirements that guide procurement procedures, please contact your COPS Office Program Manager.

COPS-AR-0714

# IV. Financial Record Maintenance

Your organization is required to establish and maintain accounting systems and financial records to accurately account for funds awarded and disbursed. These records must include both federal funds and any local funds contributed to this project.

## What accounting systems are required?

Your organization needs to establish and maintain accounting systems and financial records to accurately account for the funds awarded.

As required by 2 C.F.R. § 200.1, 200.302, and 200.303, internal controls and financial management systems must provide reasonable assurance that your organization is managing the Federal award in compliance with the U.S. Constitution, Federal statutes, regulations, and award terms and conditions and provide full accountability for expenditures including but not limited to:

- Transactions are properly recorded and accounted for to prepare reliable financial statements and federal reports and to maintain accountability over assets.

- Transactions are executed in compliance with all applicable federal statutes, regulations, and the award terms and conditions.

- Funds, property, and other assets are safeguarded against loss from unauthorized use or disposition.

## What records must be kept?

Your organization's fiscal control and accounting systems should enable you to make accurate, current, and complete disclosure of the financial activity under your award. Your accounting records should contain information showing expenditures under the award and must be supported by items such as payroll records, time and attendance records, canceled checks, purchase orders, or similar documents.

Your organization must adequately safeguard award funds and make sure that they are used for authorized purposes only. Your organization will be responsible for refunding any unallowable expenses.

## How long must records be kept?

All financial records and supporting documents associated with your award (including payroll, time and attendance records, canceled checks, and purchase orders) must be retained for a period of three years from the date of submission of the final expenditure report as stated in 2 C.F.R § 200.334 (Retention requirements for records).

Your organization should maintain records so that you can identify them by award year or by fiscal year, whichever you find more convenient. If any litigation, claim, negotiation, audit, or other action involving these records has been started before the end of the three-year period, the records should be kept until completion of the action. These records should be easily located and should be properly protected against fire or other damage. *Failure to maintain adequate records to document award expenditures may result in a requirement to repay all federal funds that cannot be supported with appropriate records.*

2024 COPS Office Law Enforcement Mental Health and Wellness Act (LEMHWA) Program Award Owner's Manual

## What if we have more than one award?

If your organization has more than one COPS Office award or an award from another federal agency, funds received under one project may not be used to support another project without specific written authorization from the COPS Office, or in the case of an award from another agency, from both awarding agencies. Your accounting systems and financial records must reflect expenditures for each project separately.

## Who may access our records?

Authorized federal representatives, including representatives from the U.S. Department of Justice, the Comptroller General of the United States, the COPS Office, and any entity designated by the COPS Office may access these records for the purposes of conducting audits, site visits, or other examinations.

COPS-AR-0716

# V. Federal Audit Requirements

In addition to oversight by the COPS Office, your award may be subject to an audit by independent examiners. The two primary types of audit are Single Audit Act (SAA) audits and U.S. Department of Justice, Office of the Inspector General (OIG) audits.

## Single Audit Act (SAA) requirements

### What are the regulations governing SAA requirements?

The Single Audit Act (SAA) of 1984 established uniform guidelines for state and local governments , and Indian tribal governments receiving federal financial assistance. The 1984 Act was amended in July 1996, by extending these requirements to all nonprofit recipients of federal financial assistance. The Office of Management and Budget (OMB) issued final guidance for 2 C.F.R. Part 200—Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards (Uniform Guidance) on December 26, 2013. This guidance applies to all federal awards or funding increments awarded on or after December 26, 2014, and provides additional guidelines regarding the implementation of SAA requirements. 2 C.F.R. Part 200, Subpart F – Audit Requirements, available at **https://www.ecfr.gov/current/title-2/subtitle-A/chapter-II/part-200/subpart-F**, establishes the requirements for organizational audits that apply to COPS Office award recipients. Recipients must arrange for the required organization-wide (not award-by-award) audit in accordance with the requirements of Subpart F.

### Who must have an SAA audit?

A recipient that expends $1,000,000 or more during the recipient's fiscal year in federal awards must have a single audit conducted in accordance with 2 C.F.R. § 200.514 (Scope of audit) except when it elects to have a program-specific audit conducted in accordance with 2 C.F.R. § 200.501(c). An auditee may be a recipient, a subrecipient, or a vendor.

SAA audits are required to be conducted annually, unless a state or local government, or Indian tribe is required (by constitution or statute that was in effect on January 1, 1987), to undergo audits less frequently than annually. The primary objective of an SAA audit is to express opinions on the recipient's financial statements, internal controls, major and nonmajor award programs, and compliance with government laws and regulations. Single Audits may also address specific compliance issues with respect to COPS Office award requirements.

In cases of continued inability or unwillingness to have an audit conducted in accordance with this part, federal agencies and pass-through entities must take appropriate action as provided in §200.339. Remedies for noncompliance. See 2 C.F.R. § 200.505.

If the Federal awarding agency or pass-through entity determines that noncompliance cannot be remedied by imposing additional conditions, the Federal awarding agency or pass-through entity may take one or more of the following actions, as appropriate in the circumstances: These sanctions under 2 C.F.R. § 200.339 could include the following:

- Temporarily withholding cash payments pending correction of the deficiency by the nonfederal entity or more severe enforcement action by the federal awarding agency or pass-through entity.

- Disallowing (that is, denying both use of funds and any applicable matching credit for) all or part of the cost of the activity or action not in compliance.

- Wholly or partly suspending or terminating the federal award.
- Initiating suspension or debarment proceedings as authorized under 2 C.F.R. part 180 and federal awarding agency regulations (or in the case of a pass-through entity, recommending such a proceeding be initiated by a federal awarding agency).
- Withholding further federal awards for the project or program.
- Taking other remedies that may be legally available.

**Your SAA reports should not be sent to the COPS Office.**

Your SAA reports should not be sent to the COPS Office. If the U.S. Department of Justice is your cognizant federal agency (see the Glossary of Terms in the appendices), they should be sent to the Federal Audit Clearinghouse at **https://www.fac.gov**.

The U.S. Department of Justice, Office of Justice Programs (OJP) Office of Audit Assessment and Management (OAAM) serves as the liaison between recipients and auditors in the conduct of resolving and closing SAA audits. Questions and comments regarding SAA audits may contact the OJP Customer Service Center at 800-458-0786.

# Office of Inspector General (OIG) recipient audits

## What is the role of the OIG for award audits?

The OIG is a separate component of the U.S. Department of Justice and is independent of the COPS Office. The primary objective of OIG recipient audits is to assess compliance with award terms and conditions. OIG audits are designed to prevent fraud, waste, and abuse of federal funds. The OIG audit process promotes efficiency and effectiveness in the administration and implementation of awards by evaluating compliance with the terms and conditions of awards.

## How are COPS Office awards selected for an OIG audit?

The OIG randomly selects awards to be audited or may conduct a COPS Office recipient audit in response to a referral that the OIG believes warrants further evaluation. The OIG also surveys DOJ award-making agencies on an annual basis to solicit input on suggested audit areas for the upcoming fiscal year. In most instances, however, the OIG generally selects awards to be audited based on a number of factors, including the geographical distribution of awards funded, award amount, population served, award status (active and expired), and type of award (hiring and non-hiring). As such, the fact that a recipient has been selected for an OIG audit is not necessarily indicative of a suspected concern or problem area.

## What are the steps in an OIG audit?

The COPS Office Grant Monitoring Division's Audit Liaison Section serves as the liaison between recipients and the OIG's Audit Division, which conducts the audit. The OIG steps in the audit process will determine the interactions between the OIG, the recipient, and the COPS Office Grant Monitoring Division Audit Liaison Section:

- **Call for award data.** The OIG requests award documentation from the COPS Office.
- **Entrance conference.** The OIG schedules to meet with the recipient to gather documentation and conduct audit.

- **Draft audit report.** The OIG reviews documentation and presents initial recommendations (findings) to the recipient and copies the COPS Office. The COPS Office interacts with the recipient to coordinate any repayments and/or policy or procedure documents to be submitted to the OIG before release of the Final Audit Report.

- **Final audit report.** The OIG has completed its direct interaction with the recipient. The COPS Office directs the recipient to formulate a Corrective Action Plan to address recommendations (findings). As each recommendation is successfully addressed by the recipient, the COPS Office requests closure on the recommendation.

- **Closing the audit.** When all recommendations have been closed, the COPS Office requests closure on the audit from the OIG and notifies the recipient that the audit is closed.

If you have any questions regarding an OIG audit, please contact the COPS Office Grant Monitoring Division's Audit Liaison Section via the COPS Office Response Center at **AskCOPSRC@usdoj.gov**. Questions and comments regarding the administration of your COPS Office LEMHWA award, not specifically related to an audit, should be referred to your COPS Office Program Manager.

## Typical audit findings

The OIG has typically reported the following audit findings pertaining to awards as a result of lack of proper documentation, poor business practices, or inadequate accounting and record keeping systems:

- **Unallowable costs.** Recipient incurred costs that were not approved in the original budget or a budget modification, were in excess of the approved budget, or were charged to the award after the expiration date and an award extension was not obtained.

- **Unsupported costs.** Specific award expenditures and reimbursements could not be supported by adequate documentation (including but not limited to receipts or purchase orders), that may have been allowable under the program, but for which no prior written approval was obtained from the COPS Office, or award expenditures were in excess of actual approved award costs.

- **Lack of complete/timely programmatic and financial reporting.** Recipient failed to submit required programmatic and financial reports in a timely manner and/or had inadequate record keeping systems.

- **Funds to better use.** Funds could be used more efficiently based on management actions such as reductions in outlays; deobligation of funds; withdrawal; costs not incurred by implementing recommended improvements; and other identified savings.

- **Questioned costs.** Costs that are questioned by the auditor because of an audit finding which resulted from a violation or possible violation of a provision of law, regulation, award terms and conditions, or other document governing the use of federal funds; or because costs incurred appear unreasonable and do not reflect the actions a prudent person would take under the same circumstances; or because costs at the time of the audit are not supported by adequate documentation.

- **Policy and procedure.** Weaknesses are identified in a recipient's accounting practices, fiscal stewardship, accuracy of data used in the development of the award applications, and/or inventory controls that led to the recommendation cited in the audit. The recipient is required to develop or revise policies and/or procedures consistent with their existing practices and submit to the COPS Office to forward to the OIG to close the recommendation.

After the final OIG audit report has been issued, the COPS Office Grant Monitoring Division's Audit Liaison Section will continue working as the liaison between your organization and the OIG to obtain closure on any audit findings. The COPS Office will issue a closure letter once all audit recommendations have been closed by the OIG.

# VI. Reporting Requirements

Your organization will be required to submit quarterly Federal Financial Reports as well as semiannual Performance Reports. Award recipients should be prepared to track and report award funding separately from all other funding sources (including other COPS Office awards) to ensure accurate financial and programmatic reporting on a timely basis. Your organization should ensure that you have adequate financial internal controls in place to monitor the use of all funding and also to ensure that its use is consistent with the award terms and conditions. Good stewardship in this area includes written accounting practices, use of an accounting system that adequately tracks all award drawdowns and expenditures, and has the ability to track when COPS Office award– funded positions are filled or approved purchases are made. *Failure to submit complete reports or submit them in a timely manner may result in the suspension and possible termination of your organization's COPS Office award funding or other remedial actions.*

## Federal Financial Reports

As a reminder, the only role within JustGrants that can submit the Federal Financial Report (FFR) is the Financial Manager. Individuals with that role in JustGrants should review JustGrants resources online for guidance on how to complete and submit FFRs in the JustGrants system.

Your organization is required to submit a quarterly FFR using Standard Form 425 (SF-425) within 30 days after the end of each calendar quarter. A final SF-425 will be due within 120 days after the end of the award period. This report reflects the actual cumulative federal expenditures incurred during the funding period and the remaining unobligated balance of federal funds. Under federal regulations, your organization is not permitted to draw down federal funding for costs incurred after the official award end date; however, you will have a 120-day period after the award end date during which you can draw down funds for eligible expenditures incurred before the award end date.

### How do we file Federal Financial Reports?

All COPS Office award recipients are strongly encouraged to submit the required quarterly SF-425 online.

To submit an FFR, follow these steps:

- Navigate to the JustGrants Home link on the left-hand side.
- Go to your Task List.
- Open the FFR you want to edit/submit.

  Once the FFR opens, the Recipient Information appears, select Continue to move to the next screen. Note: The data on this page is prepopulated from the award document and the entity profile.

  The Report Information screen contains several required fields.

    (a) Enter the Recipient Account Number.
    (b) Select the Report Type.
    (c) Select the Basis of Accounting. Scroll down to the Transactions section.

The following fields are not editable because they are not required for DOJ:

   (a)  10a. Cash Receipts

   (b)  10b. Cash Disbursements

   (c)  10c. Cash on Hand (line a minus b)

- Enter information in the following fields as appropriate:

   (a)  10d. Total Federal funds authorized

   (b)  10g. Total Federal share (sum lines e & f)

   (c)  10e. Federal share of expenditures

   (d)  10f. Federal share of unliquidated obligations

   (e)  10h. Unobligated balance of Federal funds (line d minus g)

   (f)  10j. Recipient share of expenditures

Cumulative expenditures must be entered in line 10e, 10j, 10f, 10j, 10m, and 10n. Cumulative expenditures are defined as: The amount from the awards inception to the end of the reporting period.

- Enter information in the following fields as appropriate:

   (a)  10k. Remaining recipient share to be provided (line i minus j)

   (b)  10l. Total Federal program income earned

   (c)  10m. Program Income expended in accordance with the deduction alternative

   (d)  10n. Program Income expended in accordance with the addition alternative

   (e)  10o. Unexpended program income

- Select Continue

   In the Remarks and Certification screen, enter text in box 12. Additional Information.

- Note: If the figures in line 10e or 10j are less than the previous reporting period, you are required to add additional narrative in box 12 "Remarks" explaining this discrepancy. Failure to do so will result in a validation error.

- Select Upload Supporting Documents to attach a document

- Review the certification information. Select the Submit button.

The FFR status will be changed to "Resolved-Completed" once the FFR data is transferred to the Unified Financial Management System (UFMS).

## When are Federal Financial Reports due?

An SF-425 report must be submitted for each COPS Office award at the end of every calendar quarter and no later than 30 days after the last day of each reporting period, as detailed in table 1.

**Table 1. Due dates of SF-425 by quarter**

| Reporting quarter | SF-425 due date |
| --- | --- |
| January 1–March 31 | April 30 |
| April 1–June 30 | July 30 |
| July 1–September 30 | October 30 |
| October 1–December 31 | January 30 |

COPS-AR-0722

For your initial SF-425 submission, determine when the SF-425 reporting period that includes your award start date ended and complete an SF-425 to cover the period from the award start date to the end of that period (regardless of when the award was accepted). **You are required to submit an SF-425 even if you have not spent any money or incurred any costs during a reporting period.**

**Example:**

If your award start date is 09-01-24 and the current date is 11-15-24, then your first SF-425 would be due no later than 10-30-24 and would cover the period 09-01-24 (award start date) through 09-30-24 (end of the initial reporting quarter for this award). This SF-425 must be on file with the COPS Office before the submission deadline so that you can avoid being delinquent and successfully complete a drawdown of funds through ASAP (submit report as soon as you accept the award and have access JustGrants and ASAP).

Award recipients who do not submit an SF-425 report by the due date each quarter will be unable to draw down funds. The payment system contains a function which checks for SF-425 delinquency and will reject a drawdown attempt if the SF-425 is not current. Subsequent outreach through email or hard copy reminders may be sent to the recipient if the SF-425 is delinquent.

For general information or assistance in completing the SF-425 reports, go to **https://cops.usdoj.gov** or contact the COPS Office Response Center by phone at **AskCopsRC@usdoj.gov**.

## How will award funds be monitored?

The COPS Office and designated representatives from the Office of the Chief Financial Officer, Office of Justice Programs monitor the financial aspects of your organization's award through financial reports, on-site visits, office-based award reviews, meetings, telephone contacts, reports, audits, reviews of award change requests, and special request submissions.

# Performance Reports

Semiannual Performance Reports and a Final Performance (Closeout) Report are required to be submitted directly to the COPS Office via JustGrants. Agencies must submit a separate performance report for each award.

## How do we file a Performance Report?

Only the Grants Award Administrator for your organization will be able to view and submit a performance report. For information on assigning a Grant Award Administrator to your award, see the Entity Management Job Aid Reference Guide on the **JustGrants website**.

To submit your performance report, please log in to JustGrants and check your worklist or the "Funded Award Performance Management" tab for performance reports. The Grant Award Administrator can locate the current report question set in JustGrants in two locations: My Worklist or on the Performance Management tab of the funded award. Information on JustGrants Performance Reporting is found **here.**

If you experience issues with submitting your performance report, please contact JustGrants Support at **JustGrants.Support@usdoj.gov** or 833-872-5175.

COPS-AR-0723

Important reminder: The only role within JustGrants that can submit a performance report is the Grant Award Administrator

You should complete a final performance report within 120 days of the period of performance end date. To submit a final report, the Grants Award Administrator should locate the report question set in My Worklist or on the Performance Management tab. The report cover page will ask whether the report is interim progress report or a final report – please select "final" to view final report questions.

## When are Performance Reports due?

Semiannual performance reports are due March 2 and August 31, as shown in table 2.

**Table 2. Due dates of Performance Reports by semiannual dates**

| Reporting period | Performance Report due date |
|---|---|
| **August 1 – January 31** | March 2 |
| **February 1 – July 31** | August 31 |

## What kind of information will these reports require?

These reports will request information about the status of your award in terms of purchasing equipment, hiring personnel, delivering services, and progress in meeting milestones identified in the cooperative agreement, as well as general information about your organization.

## What if we make a mistake or need to modify the report after it is submitted?

You may log in to JustGrants to reopen and make edits to your Performance Report.

## Will the data that we submit be publicly available?

Performance Reports submitted to the COPS Office may be reported publicly in response to a Freedom of Information Act (FOIA) request.

If your organization has any questions regarding the submission of these required reports, please call the COPS Office Response Center at **AskCOPSRC@usdoj.gov**.

## Entity management

If you do not have the ability to submit your federal financial report or performance report, this may indicate that the Entity Administrator for your organization has not made the correct work assignment to your award. To confirm the work assignment has been properly made, the Entity Administrator should follow the steps below to confirm: 1. Log in to JustGrants. 2. Click "Awards" from the left menu. 3. Click "Show/Hide Roles." 4. Click the "Financial Manager" and "Grant Award Administrator" check boxes. 5. Click "Confirm." If the Financial Manager and Grant Award Administrator's names appear under the respective columns, then the work assignment has been properly made and those users should be able to complete and submit the reports.

If the names do not appear in the respective columns, the Entity Administrator should take the following steps: 1. Click the check box next to the award ID. 2. Choose a role (e.g., Financial Manager, Grant Award Administrator) from the "Choose Role" dropdown menu (bottom of the screen). 3. Choose the individual's name from the "Assign to" drop-down menu. 4. Click "Assign." Once the Entity Administrator has completed these steps, the assigned Financial Manager and Grant Award Administrator should be able to access and submit the respective reports.

## Contact points to obtain technical assistance and report violations

Any alleged violations, serious irregularities, or acts that may result in the use of public funds in a manner inconsistent with the Public Safety Partnership and Community Policing Act of 1994 or the purposes of this award may be reported to the U.S. Department of Justice. Furthermore, the COPS Office welcomes the opportunity to provide assistance regarding the implementation of award provisions to help ensure that federal award funds are spent responsibly. As such, the following contacts are provided to address noncompliance and technical assistance issues:

- If you suspect violations of a criminal nature, please contact the U.S. Department of Justice, Office of the Inspector General (OIG) at **https://oig.justice.gov/hotline**, **OIG.hotline@usdoj.gov** or 800-869-4499.

- If you suspect award violations (not criminal in nature) related to the award conditions listed in this manual, please contact the COPS Office Grant Monitoring Division at 800-421-6770.

- If you have any questions or need assistance regarding your award, please contact your COPS Office Program Manager.

COPS-AR-0725

# VII. When the Award Period Has Ended

At the end of your organization's award period, the COPS Office is responsible for the closeout of your award. As part of this process, the COPS Office requires documentation demonstrating that your organization has met all the programmatic and financial requirements of the award.

After the end of the award period, your organization will be asked to submit a Final Federal Financial Report (SF-425) and any applicable final performance reports.

## Final Federal Financial Report (SF-425)

The final Federal Financial Report (SF-425) for your award is due to the COPS Office no later than 120 days after the end date of the award period. The final report should reflect the total amount of allowable federal expenditures that were incurred during the life of the award, as well as the amount of unobligated funds remaining, if any. The federal funds expended should reflect only the actual allowable costs incurred relative to the specific program requirements for that award. In addition, once you have completed your final drawdown, this report should reconcile with the total amount of federal funds drawn down by your organization. The final SF-425 should also include the required minimum total amount of local (recipient) cash match contributed, if applicable.

## When should all the award monies be spent?

Award funds reflecting allowable project costs must be obligated before the end of the award period. Obligated funds cover monies spent, and expenses incurred but not yet paid, for any approved items listed in the award package. Your organization has up to 120 days after the end of the award period to pay for eligible expenses previously incurred, and to request reimbursement for any remaining eligible balance.

*Please be advised that 2 C.F.R. § 200.344(b) requires recipients to submit final SF-425s within 120 days after the expiration of the award.*

It is possible that your organization may have unobligated and unspent award funds remaining in your account following the award period due to an overestimate of item costs during the application period. Your organization should review its records carefully to ensure that it draws down and expends only the amount required for actual costs incurred during the award period. Any remaining unobligated or unspent funds should remain in your account and will be deobligated during the closeout process.

## Final Performance (Closeout) Report

After your award period has ended, your organization will be sent a final performance report via JustGrants and asked to complete it. This report will serve as your organization's final programmatic report on the award, and the information your organization provides in this report will be used to make a final assessment of your award progress.

COPS-AR-0726

## Equipment disposition

Each recipient must use any equipment funded through a COPS Office award for approved award-related purposes and must retain the equipment for the life of the award. Property records must be maintained by the recipient, which should include a description of the property; a serial number or another identification number; the source of the property; the name of the person or entity that holds the title; the acquisition date and cost of the property; the percentage of federal agency contribution toward the original purchase; the location, use, and condition of the property; and any ultimate disposition data, including the date of disposal and sale price of the property. A control system must be developed to ensure adequate safeguards to prevent loss, damage, or theft of the property. A physical inventory of the property must be conducted, and the results must be reconciled with the property records at least once every two years. 2 C.F.R. § 200.313(d).

A State or an Indian Tribe must use, manage, and dispose of equipment acquired under a Federal award by the state or an Indian Tribe in accordance with state or tribal laws and procedures. If such laws and procedures do not exist in an Indian Tribe, they must follow the guidance in 2 C.F.R. § 200.313. 2 C.F.R. § 200.313(b).

When the award has expired and equipment obtained under the award is no longer needed for the original project, program, or for other activities currently or previously supported by a federal agency, disposition of the equipment shall be made as follows:

Items of equipment with a current per-unit fair market value of $10,000 or less may be retained, sold, or otherwise disposed of with no further obligation to the awarding agency.

Items of equipment with a current per-unit fair market value in excess of $10,000 may be retained or sold and the awarding agency is entitled to an amount calculated by multiplying the current market value or proceeds from sale by the awarding agency's federal share in the cost of the original purchase.

For more information, please see 2 C.F.R. §§ 200.1 and 200.313.

COPS-AR-0727

# VIII. Conclusion

We hope that this manual has assisted you and your organization with your award questions. We welcome and encourage any comments you have regarding the COPS Office LEMHWA Program and the materials we have developed for its administration. If you have specific comments regarding this manual or have any questions about your award, please call your COPS Office Program Manager.

Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," the COPS Office encourages recipients of U.S. Department of Justice funds to adopt and enforce policies that ban text messaging while driving and to establish workplace safety policies to decrease crashes caused by distracted drivers.

In addition, pursuant to Executive Order 13043, "Increasing Seat Belt Use in the United States," the COPS Office encourages recipients of U.S. Department of Justice funds to adopt and enforce on-the-job seat belt policies and programs for their employees when operating company-owned, rented, or personally owned vehicles.

COPS-AR-0728

2024 COPS Office Law Enforcement Mental Health and Wellness Act (LEMHWA) Program Award Owner's Manual

# Appendices

## Appendix A. List of source documents

### A. Primary Sources

Public Safety Partnership and Community Policing Act of 1994, 34 U.S.C. § 10381 et seq.

### B. Secondary Sources

*Code of Federal Regulations (CFR)/Office of Management and Budget (OMB):*

2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards) as adopted by the U.S. Department of Justice in 2 C.F.R. § 2800.101

4 C.F.R. Parts 101-105, U.S. Department of Justice/Government Accountability Office, "Joint Federal Claims Collections Standards"

5 C.F.R. Part 1320, "Controlling Paperwork Burdens on the Public"

5 C.F.R. Part 151, "Political Activity of State and Local Officers or Employees"

28 C.F.R. Part 23, "Criminal Intelligence Systems Operating Policies"

28 C.F.R. Part 61, "Procedures for Implementing the National Environmental Policy Act"

28 C.F.R. Part83, "Government-Wide Requirements for Drug-Free Workplaces (Grants)"

28 C.F.R. Part 69, "New Restrictions on Lobbying"

31 C.F.R. Part 205, "Rules and Procedures for Efficient Federal-State Funds Transfers"

OMB Circular A-129, "Policies for Federal Credit Programs and Non-Tax Receivables"

48 C.F.R. Part 31 (Federal Acquisition Regulation), "Contract Cost Principles and Procedures"

*Executive Orders:*

Executive Order 12291, "Regulations"

Executive Order 12372, 28 C.F.R. Part 30, "Intergovernmental Review of Federal Programs"

Executive Order 12547, "Non-Procurement Debarments and Suspension"

Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving,"

Executive Order 13043, "Increasing Seat Belt Use in the United States"

COPS-AR-0729

# Appendix B. U.S. Department of Justice Certified Standard Assurances

On behalf of the Applicant, and in support of this application for a grant or cooperative agreement, I certify under penalty of perjury to the U.S. Department of Justice ("Department"), that all of the following are true and correct:

(1) I have the authority to make the following representations on behalf of myself and the Applicant. I understand that these representations will be relied upon as material in any Department decision to make an award to the Applicant based on its application.

(2) I certify that the Applicant has the legal authority to apply for the federal assistance sought by the application, and that it has the institutional, managerial, and financial capability (including funds sufficient to pay any required non-federal share of project costs) to plan, manage, and complete the project described in the application properly.

(3) I assure that, throughout the period of performance for the award (if any) made by the Department based on the application--
   a. the Applicant will comply with all award requirements and all federal statutes and regulations applicable to the award;
   b. the Applicant will require all subrecipients to comply with all applicable award requirements and all applicable federal statutes and regulations; and
   c. the Applicant will maintain safeguards to address and prevent any organizational conflict of interest, and also to prohibit employees from using their positions in any manner that poses, or appears to pose, a personal or financial conflict of interest.

(4) The Applicant understands that the federal statutes and regulations applicable to the award (if any) made by the Department based on the application specifically include statutes and regulations pertaining to civil rights and nondiscrimination, and, in addition--
   A. the Applicant understands that the applicable statutes pertaining to civil rights will include section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d); section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681); and section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102);
   b. the Applicant understands that the applicable statutes pertaining to nondiscrimination may include section 809(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. § 10228(c)); section 1407(e) of the Victims of Crime Act of 1984 (34 U.S.C. § 20110(e)); section 299A(b) of the Juvenile Justice and Delinquency Prevention Act of 2002 (34 U.S.C. § 11182(b)); and that the grant condition set out at section 40002(b)(13) of the Violence Against Women Act (34 U.S.C. § 12291(b)(13)), which will apply to all awards made by the Office on Violence Against Women, also may apply to an award made otherwise;
   c. the Applicant understands that it must require any subrecipient to comply with all such applicable statutes (and associated regulations); and
   d. on behalf of the Applicant, I make the specific assurances set out in 28 C.F.R. §§ 42.105 and 42.204.

(5) The Applicant also understands that (in addition to any applicable program-specific regulations and to applicable federal regulations that pertain to civil rights and nondiscrimination) the federal regulations applicable to the award (if any) made by the Department based on the application may include, but are not limited to, 2 C.F.R. Part 2800 (the DOJ "Part 200 Uniform Requirements") and 28 C.F.R. Parts 22 (confidentiality - research and statistical information), 23 (criminal intelligence systems), 38 (regarding faith-based or religious organizations participating in federal financial assistance programs), and 46 (human subjects protection).

COPS-AR-0730

(6) I assure that the Applicant will assist the Department as necessary (and will require subrecipients and contractors to assist as necessary) with the Department's compliance with section 106 of the National Historic Preservation Act of 1966 (54 U.S.C. § 306108), the Archeological and Historical Preservation Act of 1974 (54 U.S.C. §§ 312501-312508), and the National Environmental Policy Act of 1969 (42 U.S.C. §§ 4321-4335), and 28 C.F.R. Parts 61 (NEPA) and 63 (floodplains and wetlands).

(7) I assure that the Applicant will give the Department and the Government Accountability Office, through any authorized representative, access to, and opportunity to examine, all paper or electronic records related to the award (if any) made by the Department based on the application.

(8) I assure that, if the Applicant is a governmental entity, with respect to the award (if any) made by the Department based on the application--

   A. it will comply with the requirements of the Uniform Relocation Assistance and Real Property Acquisitions Act of 1970 (42 U.S.C. §§ 4601-4655), which govern the treatment of persons displaced as a result of federal and federally-assisted programs; and

   B. it will comply with requirements of 5 U.S.C. §§ 1501-1508 and 7324-7328, which limit certain political activities of State or local government employees whose principal employment is in connection with an activity financed in whole or in part by federal assistance.

(9) If the Applicant applies for and receives an award from the Office of Community Oriented Policing Services (COPS Office), I assure that as required by 34 U.S.C. § 10382(c)(11), it will, to the extent practicable and consistent with applicable law—including, but not limited to, the Indian Self-Determination and Education Assistance Act—seek, recruit, and hire qualified members of racial and ethnic minority groups and qualified women in order to further effective law enforcement by increasing their ranks within the sworn positions, as provided under 34 U.S.C. § 10382(c)(11).

(10) If the Applicant applies for and receives a DOJ award under the STOP School Violence Act program, I assure as required by 34 U.S.C. § 10552(a)(3), that it will maintain and report such data, records, and information (programmatic and financial) as DOJ may reasonably require.

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the Applicant to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and 3801-3812). I also acknowledge that the Department's awards, including certifications provided in connection with such awards, are subject to review by the Department, including by its Office of the Inspector General.

_____          _____

Signature of Law Enforcement Executive/Agency Executive          Date

(For your electronic signature, please type in your name)

_____          _____

Signature of Government Executive/Financial Official          Date

(For your electronic signature, please type in your name)

COPS-AR-0731

# Appendix C. U.S. Department of Justice Certifications Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; Drug-Free Workplace Requirements; Law Enforcement and Community Policing

Applicants should refer to the regulations cited below to determine the certification to which they are required to attest. Applicants should also review the instructions for certification included in the regulations before completing this form. The certifications shall be treated as a material representation of fact upon which reliance will be placed when the U.S. Department of Justice ("Department") determines to award the covered transaction, grant, or cooperative agreement.

1. LOBBYING

   As required by 31 U.S.C. § 1352, as implemented by 28 C.F.R. Part 69, the Applicant certifies and assures (to the extent applicable) the following:

   i.   No Federal appropriated funds have been paid or will be paid, by or on behalf of the Applicant, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making of any Federal grant, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal grant or cooperative agreement;

   ii.  If the Applicant's request for Federal funds is in excess of $100,000, and any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with this Federal grant or cooperative agreement, the Applicant shall complete and submit Standard Form - LLL, "Disclosure of Lobbying Activities" in accordance with its (and any DOJ awarding agency's) instructions; and

   iii. The Applicant shall require that the language of this certification be included in the award documents for all subgrants and procurement contracts (and their subcontracts) funded with Federal award funds and shall ensure that any certifications or lobbying disclosures required of recipients of such subgrants and procurement contracts (or their subcontractors) are made and filed in accordance with 31 U.S.C. § 1352.

2. DEBARMENT, SUSPENSION, AND OTHER RESPONSIBILITY MATTERS

   A. Pursuant to Department regulations on nonprocurement debarment and suspension implemented at 2 C.F.R. Part 2867, and to other related requirements, the Applicant certifies, with respect to prospective participants in a primary tier "covered transaction," as defined at 2 C.F.R. § 2867.20(a), that neither it nor any of its principals—

   i.   is presently debarred, suspended, proposed for debarment, declared ineligible, sentenced to a denial of Federal benefits by a State or Federal court, or voluntarily excluded from covered transactions by any Federal department or agency;

        has within a three-year period preceding this application been convicted of a felony criminal violation under any Federal law, or been convicted or had a civil judgment rendered against it for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State, tribal, or local) transaction or private agreement or transaction; violation of

Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion or receiving stolen property, making false claims, or obstruction of justice, or commission of any offense indicating a lack of business integrity or business honesty that seriously and directly affects its (or its principals') present responsibility;

    ii.   is presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, tribal, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and/or

    iii.   has within a three-year period preceding this application had one or more public transactions (Federal, State, tribal, or local) terminated for cause or default.

B.   Where the Applicant is unable to certify to any of the statements in this certification, it shall attach an explanation to this application. Where the Applicant or any of its principals was convicted, within a three-year period preceding this application, of a felony criminal violation under any Federal law, the Applicant also must disclose such felony criminal conviction in writing to the Department (for OJP Applicants, to OJP at **Ojpcompliancereporting@usdoj.gov**; for OVW Applicants, to OVW at **OVW.GFMD@usdoj.gov**; or for COPS Applicants, to COPS at **AskCOPSRC@usdoj.gov**), unless such disclosure has already been made.

3.   FEDERAL TAXES

A.   If the Applicant is a corporation, it certifies either that (1) the corporation has no unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability, or (2) the corporation has provided written notice of such an unpaid tax liability (or liabilities) to the Department (for OJP Applicants, to OJP at **Ojpcompliancereporting@usdoj.gov**; for OVW Applicants, to OVW at **OVW.GFMD@usdoj.gov**; or for COPS Applicants, to COPS at **AskCOPSRC@usdoj.gov**).

B.   Where the Applicant is unable to certify to any of the statements in this certification, it shall attach an explanation to this application.

4.   DRUG-FREE WORKPLACE (GRANTEES OTHER THAN INDIVIDUALS)

As required by the Drug-Free Workplace Act of 1988, as implemented at 28 C.F.R. Part 83, Subpart F, for grantees, as defined at 28 C.F.R. §§ 83.620 and 83.650:

A.   The Applicant certifies and assures that it will, or will continue to, provide a drug-free workplace by—

    i.   Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in its workplace and specifying the actions that will be taken against employees for violation of such prohibition;

    ii.   Establishing an on-going drug-free awareness program to inform employees about—

        a.   The dangers of drug abuse in the workplace;

        b.   The Applicant's policy of maintaining a drug-free workplace;

        c.   Any available drug counseling, rehabilitation, and employee assistance programs; and

        d.   The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

    iii.   Making it a requirement that each employee to be engaged in the performance of the award be given a copy of the statement required by paragraph (a);

COPS-AR-0733

    iv.   Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the award, the employee will—

        a.   Abide by the terms of the statement; and

        b.   Notify the employer in writing of the employee's conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction;

    v.   Notifying the Department, in writing, within 10 calendar days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title of any such convicted employee to the Department, as follows:

> For COPS award recipients - COPS Office, 145 N Street, NE, Washington, DC, 20530;
>
> For OJP and OVW award recipients - U.S. Department of Justice, Office of Justice Programs, ATTN: Control Desk, 810 h Street, N.W., Washington, D.C. 20531.
> Notice shall include the identification number(s) of each affected award;

    vi.   Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted:

        a.   Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1973, as amended; or

        b.   Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency; and

    vii.   Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

LAW ENFORCEMENT AGENCY CERTIFICATION REQUIRED UNDER DEPARTMENT OF JUSTICE DISCRETIONARY GRANT PROGRAMS ("SAFE POLICING CERTIFICATION")

If this application is for a discretionary award pursuant to which award funds may be made available (whether by the award directly or by any subaward at any tier) to a State, local, college, or university law enforcement agency, the Applicant certifies that any such law enforcement agency to which funds will be made available has been certified by an approved independent credentialing body or has started the certification process. To become certified, a law enforcement agency must meet two mandatory conditions: (a) the agency's use of force policies adhere to all applicable federal, State, and local laws; and (b) the agency's use of force policies prohibit chokeholds except in situations where use of deadly force is allowed by law.

For detailed information on this certification requirement, see **https://cops.usdoj.gov/SafePolicingEO**. The Applicant acknowledges that compliance with this safe policing certification requirement does not ensure compliance with federal, state, or local law, and that such certification shall not constitute a defense in any federal lawsuit. Nothing in the safe policing certification process or safe policing requirement is intended to be (or may be) used by third parties to create liability by or against the United States or any of its officials, officers, agents or employees under any federal law. Neither the safe policing certification process nor the safe policing certification requirement is intended to (or does) confer any right on any third-person or entity seeking relief against the United States or any officer or employee thereof. No person or entity is intended to be (or is) a third-party beneficiary of the safe policing certification process, or, with respect to the safe policing certification requirement, such a beneficiary for purposes of any civil, criminal, or administrative action.

COPS-AR-0734

5.  COORDINATION REQUIRED UNDER PUBLIC SAFETY AND COMMUNITY POLICING PROGRAMS
    As required by the Public Safety Partnership and Community Policing Act of 1994, at 34 U.S.C. § 10382(c)(5), if this application is for a COPS award, the Applicant certifies that there has been appropriate coordination with all agencies that may be affected by its award. Affected agencies may include, among others, Offices of the United States Attorneys; State, local, or tribal prosecutors; or correctional agencies.

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the Applicant to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and 3801-3812). I also acknowledge that the Department's awards, including certifications provided in connection with such awards, are subject to review by the Department, including by its Office of the Inspector General.

_____          _____

Signature of Law Enforcement Executive/Agency Executive          Date

(For your electronic signature, please type in your name)

_____          _____

Signature of Government Executive/Financial Official          Date

(For your electronic signature, please type in your name)

COPS-AR-0735

# Appendix D. Conference and Event Guidance

## Conference and Event Approval, Planning, and Reporting FAQ

*Prior Approval*

i.  **Approximately how long should it take to adequately complete the Conference & Events Submission form?**

The amount of time required to adequately complete the Conference & Events Submission Form will vary depending on the complexity of the proposed event. A small event (in terms of number of attendees, total cost, etc.) may require only an hour or two to complete the form because the event is basic or routine and data are not required in all of the available categories. On the other hand, a large event (in terms of number of attendees, multiple sessions occurring at the same time, etc.) may require several hours or days depending on the amount of required data (categories) and level of justification needed to support the event. Regardless of the size of any event, the supporting justification should be sufficient to support the agency's mission for conducting the event.

ii.  **Which types of events do not require prior approval?**

Currently there are six types of events that do not require prior approval:

a.  Conferences held by grant recipients. (Note: Conferences held by cooperative agreement recipients do require prior approval.)
b.  Law enforcement operational activities, including staging, surveillance, investigation, intelligence, and undercover activities.
c.  Routine operational meetings (e.g., staff meetings or all-hands meetings) if held in a federal facility, if held by cooperative agreement recipients in a nonfederal facility that does not charge for its use, and if there are neither costs to the DOJ for logistical conference planning nor government-provided food or beverages. In all three of these instances, the answer to all the questions on the Prior Approval Not Required Checklist must be "No." Site visits are considered routine operational meetings regardless of location so long as there are no costs to the DOJ for meeting rooms, logistical conference planning, or food and beverages.
d.  Testing activities where the primary purpose of the event is to evaluate an applicant's qualifications to perform certain duties necessary to his or her job. This includes firearms and weaponry proficiency testing and certifications. A majority of the event must be devoted to administering and taking the test. Testing activities that are incidental to a training course or conference or are given upon its completion do require prior approval.
e.  Video conferences and webinars where there are neither costs to the DOJ for logistical conference planning nor government-provided food or beverages.
f.  Technical assistance visits where travel was made by an individual or a small group of project staff members to provide training or technical assistance to a particular entity; in this instance, the answer to all the questions on the Prior Approval Not Required Checklist must be "No."

iii. **Where should time staff spent working on the conference that is not related to planning be captured?**

Time spent working on a conference by staff or contractors can be classified as either logistical planning time or programmatic planning time. Programmatic planning includes time spent on activities such as developing the conference content and agenda, identifying and recruiting subject matter experts, and preparing written materials. Logistical planning includes time spent on tasks such as selecting a venue, ordering and setting up audio-video equipment, securing hotel rooms, processing registrations, providing onsite support during the event, and undertaking other nonprogrammatic functions.

iv. **If a cooperative agreement recipient or contractor is able to obtain a no-cost site for the event, are we still required to look into other facilities and provide justification for not selecting the other facilities?**

Yes. Cooperative agreement recipients and contractors should compare three or more facilities in a location. Facilities being compared should have provided a cost estimate and be able to accommodate the event as detailed in the requirements. A desired hotel may offer an incentive of no overall facility cost (e.g., for meeting rooms or audio-visual equipment) but may not be economical in other cost comparison items such as the availability of lodging at per diem rates, travel distance for attendees, etc. Also, recipients and contractors should maintain written documentation justifying their decision to select the chosen location in the event of a future audit.

v. **Is there a time frame after the COPS Office accepts a conference request that a cooperative agreement recipient or contractor can expect notification of approval?**

Each event request (meeting, conference, webinar, etc.) is unique with respect to how it will accomplish the COPS Office's mission. The key to any conference request moving through the review process is whether the package is complete. A complete package contains a detailed cost analysis and sufficient justification to support all categories within the package.

**Example:** An event is submitted for approval and consists of the following categories: printing and distribution, meals and incidental expenses (M&IE), lodging, transportation, and trainer or facilitator costs. The package contains a detailed cost analysis of each cost category (e.g., one trainer at $450 per day x 2 days = $900) and adequate justification explaining the purpose of the event and the role of the trainer. This package can move through the review process in a few days and allow ample time for travelers to make reservations, if the package is submitted within the required time frame. However, if the trainer or facilitator's costs in the submitted package exceed the COPS Office's threshold and if supporting justification is not included, a delay may occur while this justification is being retrieved.

To avoid delays in the approval process, all recipients and contractors should adhere to the time frame requirements for the dollar amount of their proposed event.

vi. **Once an event is approved, how do we handle any increases or decreases in the number of attendees originally proposed on the cost analysis spreadsheet submitted to the DOJ for approval?**

After receiving notification of approval from the COPS Office, all subsequent changes prior to the start day of the event should be sent to the COPS Office Conference Costs email address, as appropriate. **Example:** If the COPS Office approved on 9/1/2020 an event scheduled for 12/15/2020, the cooperative agreement recipient or contractor should notify the COPS Office of any changes in attendees as soon as possible (preferably 30 days or more in advance). This scenario holds true for changes to the start and end date, location, and any other cost-related category.

COPS-AR-0737

vii.  **Does the $25 per person per day limit for meeting rooms and audio-visual costs also include service fees and taxes?**

Yes. The cost allowed for conference space and audio-visual equipment and services (fees and taxes) is limited to $31.25 per day per attendee and is not to exceed a cumulative total cost of $25,000. Total costs are defined as direct and indirect costs.

viii.  **What if there are multiple meetings occurring within the larger event offered to all the attendees? Is the $31.25 per day per attendee limit applicable to each meeting? Example: A general session meeting contains all attendees and later breakout sessions are offered to the groups. Can each breakout session have its own $31.25 per person per day limit?**

No. Despite the multiple meetings offered within the larger event, the COPS Office considers and approves this type of situation to be a single event.

ix.  **Can we accept complimentary food and beverage?**

Yes. Complimentary food and beverages may be accepted if offered to everyone. **Example:** Hotel W offers a complimentary continental breakfast to all its overnight customers regardless of any status they may have with the hotel chain. This type of complimentary offer is considered a business strategy of the hotel to promote an increase in overnight stays. You are not required to reduce your M&IE by the value of the food and beverage it offered to all customers as noted in this example.

x.  **Are the thresholds ($8,750 for logistical planner, $35,000 for programmatic planner, and $20,000 for conference space and audio-visual equipment and services) a cumulative cost for the entire event or a per day cost?**

The cost allowed for conference space and audio-visual equipment and services (fees and taxes) is limited to $31.25 per day per attendee and is not to exceed a cumulative total cost of $25,000. The cost allowed for a logistical planner is the lesser of $62.50 per attendee or $11,000 per event. The cost allowed for a programmatic planner is the lesser of $250 per attendee or $43,750 per event.

xi.  **To whom should I submit event requests?**

For all COPS Office events, the form should be sent to the COPS Office Conference Costs email address (**COPS.Conferencecosts@usdoj.gov**). Please do not send questions or other correspondence to this email address. This mailbox should be used only for the submission of conference forms and supporting documentation (e.g., hotel contracts).

xii.  **How far in advance do I have to submit an event for review and approval?**

Requests for conferences costing $100,000 or less and not exceeding any cost thresholds (conference space and audio-visual equipment and services, logistical conference planner, and programmatic conference planner) must be submitted to the COPS Office 90 calendar days in advance of the earliest of the following:

- Start date of the conference
- Deadline for signing conference-related contracts
- Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request)

COPS-AR-0738

Requests for conferences costing more than $100,000, or exceeding any one cost threshold (conference space and audio-visual equipment and services, logistical conference planner, or programmatic conference planner), must be submitted to the COPS Office 120 calendar days in advance of the earliest of the following:

- Start date of the conference
- Deadline for signing conference-related contracts
- Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request)

If approval requests are submitted less than the required number of days in advance (as noted above), the COPS Office, in its sole discretion, may consider the late requests but cannot ensure the requests will receive a decision in time to avoid having to cancel the conference (particularly if any issues arise with specific items of cost in the request). Cancellation costs associated with conference requests that are submitted for late prior approval may be determined to be unallowable costs by the COPS Office.

**xiii. What are the most common mistakes made on the forms so that I can avoid them in the future and increase the likelihood of a quick review and approval decision for my event?**

The following are the most common mistakes found:

- *Inaccurate calculation of daily per diem*. Daily per diem rates for locations across the nation can be found on the GSA website. Ensure the daily rate used in the calculations corresponds to the specific location and dates of the meeting. In addition, remember that travel days are reimbursed at a slightly lower rate than meeting days. The lower rates must be used for days of travel both before and after the event. Table 3 includes these lower rates:

**Table 3. Per diem rates**

| Full per diem rate | Corresponding travel day rate (75%) |
|---|---|
| $46.00 | $34.50 |
| $51.00 | $38.25 |
| $56.00 | $42.00 |
| $61.00 | $45.75 |
| $66.00 | $49.50 |
| $71.00 | $53.25 |

**EXCEPTION:** If your organization has its own formal, written travel policy, your event submissions can reflect that policy instead of the rates in table 3. In these instances, state that you have a formal, written travel policy, and clearly explain the rates in the policy and how the corresponding numbers in your submission were derived.

- *Insufficient explanation and justification of transportation costs.* Remember to break out and briefly describe and justify the transportation costs that are included. **Example:** If participants are flying to your event and the tickets are being paid for with DOJ funding, you should include the anticipated number of people flying multiplied by the estimated cost per ticket. If cars will be rented, you should include a brief justification for why rental cars are being used instead of another form of ground transportation, such as taxis or shuttles.

COPS-AR-0739

- *Insufficient explanation and justification of audio-visual costs.* All audio-visual costs should be broken out and briefly described. The quantity of equipment to be rented (number of microphones, projectors, etc.) should be included, along with relevant costs and a brief justification for why the proposed equipment is required to conduct a successful meeting. A discussion of how the audio-visual services provider was selected should be included (for example, did you obtain three quotes?).

- *Insufficient explanation and justification of printing costs.* Proposed printing costs for participant materials should also be itemized and briefly described. Specifically, it is important to articulate why printed materials are needed instead of making materials available electronically (at low or no cost) to attendees before or after the event.

- *Insufficient explanation and justification of shipping costs.* Provide an itemization of these costs, along with a brief description of why the equipment and other materials being shipped are essential to hosting a successful conference.

- *Insufficient explanation and justification of consultant costs.* The maximum daily rate for subject matter experts who are being reimbursed for their time is noted in the Consultant/Contractor Fact Sheet at **https://cops.usdoj.gov/lemhwa#programdocuments**. Describe all consultant costs in detail and include a brief yet compelling justification for the proposed costs. Daily rates for subject matter experts above the maximum daily rate require prior approval by the COPS Office and DOJ. In cases where higher rates are included in the event submission, written documentation of prior approval is required and should be attached.

xiv. **Should I continue to exclude all food and beverage costs in my event submissions?**

Yes. The inclusion of food and beverage costs will delay the review process, and these costs are not likely to be approved. The only exception is when the location of the conference does not allow attendees to obtain food or beverages on their own or when this restriction would greatly disrupt the conference schedule. If you believe your event qualifies for such a rare exception, contact your Program Manager to discuss it before completing and submitting your form. If meals are included in your event submission, remember that attendees must subtract the meal costs from the M&IE reimbursement for the days on which the meals will occur.

xv. **Can you summarize what I can do to prevent follow-up questions about my submitted events that delay the review and approval process?**

As a general rule, explain how you derived every cost that you include in the conference submission form. For lines that do not provide space for you to add descriptive narrative, include your explanations and specific cost breakdowns in a separate tab or in a separate document that is submitted with the form. In addition, include the cooperative agreement or contract number on the form.

xvi. **What events qualify for the expedited review process?**

There is no expedited review process. Every effort is made to review all events as quickly as possible.

Most delays result from a need for additional information. Event requests are prioritized for review by balancing the following three criteria:

- The start date of the event
- The date the event submission was received by COPS Office

- The overall cost and complexity of the event

For example, conferences requiring approval by the assistant attorney general's administration and the deputy attorney general (over $100,000–$250,000) typically take longer to process, as they must go through COPS Office and DOJ reviews, result in more questions, and are more likely to have issues related to cost thresholds.

### Reporting

**xvii. Where can I find the most updated version of the conference reporting form to use for my submissions?**

The most updated version of the conference reporting form can be found under the Training Resources for award recipients section on the COPS Office Training page at **https://cops.usdoj.gov/training**.

**xviii.    If I have a question about conference reporting, to whom should I send it?**

Send your questions to your designated Program Manager. They are great resources and will be happy to assist you.

**xix. Are we expected to have our staff track their time hour for hour for time spent on the event for planning, etc., or are reasonable estimates adequate for cost reporting purposes?**

Post-event reports must contain actual costs, not estimates. These costs should include logistical and programmatic planner staff time spent on these activities and any contracted planner costs.

**xx. With conference cost reports now being due 30 days after the event, how should we handle costs for invoices that have not been received yet? Many invoices (such as for hotels) are not received within 30 days after the event. Should estimates be included on the cost report?**

All conference costs for events held by cooperative agreement recipients or contractors costing more than $20,000, or where more than 50% of attendees are DOJ employees, must be reported within *45 calendar days after the last day of the event*.

**xxi. On the DOJ Conference & Events Submission Form under "A. General Conference Information," is item 19, "Reporting Period," the period in which the actual cost of the event is being reported, or should this be based on the end date of the event?**

This reporting requirement is based on the end date of the event. All conference costs for events held by cooperative agreement recipients or contractors costing over $20,000, or where more than 50% of attendees are DOJ employees, must be reported within 45 calendar days after the last day of the event. Example: A COPS Office–approved conference was conducted from 3/16/2021 through 3/20/2021. A completed Conference & Events Submission Form must be submitted, showing the prior approval amounts compared to the actual costs and explaining all variances greater than 10% or $1,000. Reports should be emailed to the COPS Office Conference Cost email address at **COPS.Conferencecosts@usdoj.gov**.

The following pages contain the conference reporting form template.

COPS-AR-0741



## Department of Justice-Sponsored Conference
## Request and Report

*A **RED** cell indicates that your entry exceeds the DOJ meal threshold AND cannot be submitted unless within the meal threshold.*

*A **YELLOW** cell indicates that your entry exceeds the DOJ threshold, and additional justification must be provided.*

*A **GREY** box indicates that no entry is required.*

| JMD FINANCE STAFF USE ONLY: | |
|---|---|
| JMD Tracking Number | |
| Date  Received | |
| | |
| | |

| COMPONENT USE ONLY: | |
|---|---|
| Component Internal Tracking Number *(Optional)* : | |
| | |
| | |
| | |

| A.  GENERAL CONFERENCE INFORMATION: | |
|---|---|
| 1.  Name of Requestor | |
| 2.  Component Name  *(Drop Down)* | COPS - Office of Community Oriented Policing Services |
| 3.  Is this submission for a conference request or report? *(Drop Down)* | Conference Request |
| 4.  JMD Tracking # *(Report Only)* | |
| 5.  If this is a Re-Submission of a previously disapproved conference, indicate original JMD Tracking Number. | |
| 6. Official Title of the Conference *(No Abbreviations)* | |
| 7.  Is this a blanket request? (Y/N) *(Drop Down) If "YES" Skip A9-13,A16 and Sections C,D,& E1, If "NO" Skip A8* | |
| 8.  If this is a Blanket Request, indicate for each: 1) Number of occurrences this fiscal year, 2) Locations, and 3) Start and End Dates | |
| 9.  Conference Start Date *(MM/DD/YYYY)* | |
| 10. Conference End Date *(MM/DD/YYYY)* | |
| 11. Location: Country  *(Drop Down)* | |
| 12. Location: State / Territory / Possession *(Drop Down)* | |
| 13. Location: City | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
1 of 6

COPS-AR-0742

| | | |
|---|---|---|
| 14. Justification that conference is essential to accomplishing core mission | | |
| 15. Funding Appropriation Symbol | | |
| 16. Facility Name *(Specific)* | | |
| 17. Facility Type (Federal/Non-Federal) *(Drop Down)* | | |
| 18. Cooperative Agreement (Y/N) *(Drop Down)* | | |
| *(Required when reporting actuals) (Drop Down)* | | |
| | **Conference REQUEST Information** | **Conference REPORT Information** |
| 20. Number of DOJ Federal Attendees | | |
| 21. Number of Other Federal Attendees | | |
| 22. Number of Non-Federal Attendees | | |
| 23. Total Number of Attendees *(Auto-populates)* | 0 | |
| 24. Total number of attendees whose travel expenses are paid for by DOJ *(required)* | | |
| 25. Total Cost *(Auto-populates from entries below)* | $0 | |
| 26. Predominately Internal Event held at a Non-Federal Facility (Y/N) *(Auto-populates based on Facility Type and Number of Attendees)* | PLEASE PROVIDE NUMBER OF ATTENDEES | |

**Competitive Contracting:**

| | |
|---|---|
| *(Drop Down)* | |
| *(Drop Down)* | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To: JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
2 of 6

COPS-AR-0743

*When REPORTING quarterly conferences, only complete the request information if JMD approved your request and you have a JMD tracking number*

| B. TOTAL CONFERENCE COSTS: | Conference REQUEST Information | | | | Conference REPORT Information | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | ESTIMATED DIRECT COST | ESTIMATED INDIRECT COST *(Funding from Cooperative Agreement)* | ESTIMATED TOTAL COST *(Auto-populates)* | % OF TOTAL COST *(Auto-populates)* | ACTUAL DIRECT COST | ACTUAL INDIRECT COST *(Funding from Cooperative Agreement)* | ACTUAL TOTAL COST *(Auto-populates)* | VARIANCE *(Between Actual and Estimate) (Auto-populates)* | VARIANCE JUSTIFICATION (Provide justification if variance is >$1,000 and >10% as indicated by a light yellow cell OR exceeds cost thresholds, as indicated by a bright yellow cell) |
| 1. Conference Meeting Space (including rooms for break-out sessions) | | | $         - | 0.00% | | | | | |
| 2. Audio-visual Equipment and Services | | | - | 0.00% | | | | | |
| 3. Printing and Distribution | | | - | 0.00% | | | | | |
| 4. Meals Provided by DOJ | | | | | | | | | |
| a. Breakfast | | | - | 0.00% | | | | | |
| b. Lunch | | | - | 0.00% | | | | | |
| c. Dinner | | | - | 0.00% | | | | | |
| 5. Refreshments Provided by DOJ | | | - | 0.00% | | | | | |
| 6. M&IE for Attendees | | | - | 0.00% | | | | | |
| 7. Lodging | | | - | 0.00% | | | | | |
| 8. Common Carrier Transportation | | | - | 0.00% | | | | | |
| 9. Local Transportation | | | - | 0.00% | | | | | |
| 10. Conference Planner - Logistical | | | - | 0.00% | | | | | |
| 11. Conference Planner - Programmatic | | | - | 0.00% | | | | | |
| 12. Conference Trainer/Instructor/Presenter/Facilitator | | | - | 0.00% | | | | | |
| 13. Other Costs: *(Itemize Below)* | | | | | | | | | |
| | | | - | 0.00% | | | | | |
| | | | - | 0.00% | | | | | |
| | | | - | 0.00% | | | | | |
| | | | - | 0.00% | | | | | |
| | | | - | 0.00% | | | | | |
| 14. Total Conference Cost: *(Auto-populates)* | $         - | $         - | $         - | 0.00% | | | | | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
3 of 6

COPS-AR-0744

**C.  MEALS & REFRESHMENTS THRESHOLD CALCULATOR**

| CONFERENCE LOCATION: | PER DIEM RATE | |
|---|---|---|
| 1.  Continental United States MI&E | GSA Per-Diem Rates | |
| 2.  Hawaii, Alaska, US Territories & Possessions MI&E | DOD Per-Diem Rates | |
| 3.  Foreign Country MI&E | State Department Per-Diem Rates | |

| D.  MEALS | NUMBER OF TIMES MEAL IS SERVED | NUMBER OF ATTENDEES | PER PERSON THRESHOLD ($) | TOTAL JMD THRESHOLD ($) |
|---|---|---|---|---|
| 1.  Breakfast | | 0 | SELECT PER DIEM RATE | N/A |
| 2.  Lunch | | 0 | SELECT PER DIEM RATE | N/A |
| 3.  Dinner | | 0 | SELECT PER DIEM RATE | N/A |

**E.  OTHER THRESHOLDS CALCULATOR**

| COST CATEGORY: | NUMBER OF ATTENDEES | PER PERSON THRESHOLD ($) | TOTAL JMD THRESHOLD ($) |
|---|---|---|---|
| 1.  Conference Space & Audio-visual Equipment and Services | 0 | $            25 | $            - |
| 2.  Logistical Conference Planner | 0 | $            50 | $            - |
| 3.  Programmatic Conference Planner | 0 | $           200 | $            - |

**F. JUSTIFICATION IF SUBMITTING CONFERENCE REQUEST FORM WITH ESTIMATED COSTS OVER THRESHOLD** *(Complete if cells turn YELLOW):*

| | |
|---|---|
| 1. Conference Space & Audio-visual Equipment and Services | |
| 2. Refreshments | |
| 3. Logistical Conference Planner | |
| 4. Programmatic Conference Planner | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
4 of 6

COPS-AR-0745

**G.  JUSTIFICATION REQUIRED FOR CONFERENCES WITH MEALS (*Complete if cells turn YELLOW*):**

| Government Provided Meals | |
|---|---|

**H.  JUSTIFICATION FOR NON-FEDERAL FACILITY *(Complete if cells turn YELLOW)* :**

| Justification for Using a Non-Federal Facility *(Drop Down)* | |
|---|---|

**I. FACILITIES CONSIDERED**

| NAME | FACILITY TYPE *(Drop Down)* | TOTAL EST. CONFERENCE COST | SELECTED (Y/N) | REASON FOR USE OR NON-USE |
|---|---|---|---|---|
| | **0** | $            - | YES | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
5 of 6

COPS-AR-0746

**J. ESTIMATED ATTENDEE INFORMATION**

| ATTENDEE DUTY STATION | ATTENDEE ORGANIZATION | NUMBER OF ATTENDEES |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL - *(Breakout must match entry on line A23)* | | 0 |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
6 of 6

COPS-AR-0747

# Appendix E. Enhancement of contractor protection from reprisal for disclosure of certain information (41 U.S.C. § 4712)

**(a)** **Prohibition of reprisals**.--

**(1)** **In general**.--An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

**(2)** **Persons and bodies covered**.--The persons and bodies described in this paragraph are the persons and bodies as follows:

**(A)** A Member of Congress or a representative of a committee of Congress.

**(B)** An Inspector General.

**(C)** The Government Accountability Office.

**(D)** A Federal employee responsible for contract or grant oversight or management at the relevant agency.

**(E)** An authorized official of the Department of Justice or other law enforcement agency.

**(F)** A court or grand jury.

**(G)** A management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct.

**(3)** **Rules of construction**.--For the purposes of paragraph (1)--

**(A)** an employee who initiates or provides evidence of contractor, subcontractor, or grantee misconduct in any judicial or administrative proceeding relating to waste, fraud, or abuse on a Federal contract or grant shall be deemed to have made a disclosure covered by such paragraph; and

**(B)** a reprisal described in paragraph (1) is prohibited even if it is undertaken at the request of an executive branch official, unless the request takes the form of a non-discretionary directive and is within the authority of the executive branch official making the request.

**(b)** **Investigation of complaints**.--

**(1)** **Submission of complaint**.--A person who believes that the person has been subjected to a reprisal prohibited by subsection (a) may submit a complaint to the Inspector General of the executive agency involved. Unless the Inspector General determines that the complaint is frivolous, fails to allege a violation of the prohibition in subsection (a), or has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant, the Inspector General shall investigate the complaint and, upon completion of such investigation, submit a report of the findings of the investigation to the person, the contractor or grantee concerned, and the head of the agency.

COPS-AR-0748

**(2) Inspector General action**.--

**(A) Determination or submission of report on findings**.--Except as provided under subparagraph (B), the Inspector General shall make a determination that a complaint is frivolous, fails to allege a violation of the prohibition in subsection (a), or has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant or submit a report under paragraph (1) within 180 days after receiving the complaint.

**(B)** Extension of time.--If the Inspector General is unable to complete an investigation in time to submit a report within the 180-day period specified in subparagraph (A) and the person submitting the complaint agrees to an extension of time, the Inspector General shall submit a report under paragraph (1) within such additional period of time, up to 180 days, as shall be agreed upon between the Inspector General and the person submitting the complaint.

**(3) Prohibition on disclosure**.--The Inspector General may not respond to any inquiry or disclose any information from or about any person alleging the reprisal, except to the extent that such response or disclosure is--

**(A)** made with the consent of the person alleging the reprisal;

**(B)** made in accordance with the provisions of section 552a of title 5 or as required by any other applicable Federal law; or

**(C)** necessary to conduct an investigation of the alleged reprisal.

**(4) Time limitation**.--A complaint may not be brought under this subsection more than three years after the date on which the alleged reprisal took place.

**(c) Remedy and enforcement authority**.--

**(1)** In general.--Not later than 30 days after receiving an Inspector General report pursuant to subsection (b), the head of the executive agency concerned shall determine whether there is sufficient basis to conclude that the contractor or grantee concerned has subjected the complainant to a reprisal prohibited by subsection (a) and shall either issue an order denying relief or shall take one or more of the following actions:

**(A)** Order the contractor or grantee to take affirmative action to abate the reprisal.

**(B)** Order the contractor or grantee to reinstate the person to the position that the person held before the reprisal, together with compensatory damages (including back pay), employment benefits, and other terms and conditions of employment that would apply to the person in that position if the reprisal had not been taken.

**(C)** Order the contractor or grantee to pay the complainant an amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees) that were reasonably incurred by the complainant for, or in connection with, bringing the complaint regarding the reprisal, as determined by the head of the executive agency.

**Exhaustion of remedies**.--If the head of an executive agency issues an order denying relief under paragraph (1) or has not issued an order within 210 days after the submission of a complaint under subsection (b), or in the case of an extension of time under paragraph (b)(2)(B), not later than 30 days after the expiration of the extension of time, and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction

over such an action without regard to the amount in controversy. Such an action shall, at the request of either party to the action, be tried by the court with a jury. An action under this paragraph may not be brought more than two years after the date on which remedies are deemed to have been exhausted.

**(2) Admissibility of evidence**.--An Inspector General determination and an agency head order denying relief under paragraph (2) shall be admissible in evidence in any de novo action at law or equity brought pursuant to this subsection.

**(3) Enforcement of orders**.--Whenever a person fails to comply with an order issued under paragraph (1), the head of the executive agency concerned shall file an action for enforcement of such order in the United States district court for a district in which the reprisal was found to have occurred. In any action brought under this paragraph, the court may grant appropriate relief, including injunctive relief, compensatory and exemplary damages, and attorney fees and costs. The person upon whose behalf an order was issued may also file such an action or join in an action filed by the head of the executive agency.

**(4) Judicial review**.--Any person adversely affected or aggrieved by an order issued under paragraph (1) may obtain review of the order's conformance with this subsection, and any regulations issued to carry out this section, in the United States court of appeals for a circuit in which the reprisal is alleged in the order to have occurred. No petition seeking such review may be filed more than 60 days after issuance of the order by the head of the executive agency. Review shall conform to chapter 7 of title 5. Filing such an appeal shall not act to stay the enforcement of the order of the head of an executive agency, unless a stay is specifically entered by the court.

**(5) Burdens of proof**.--The legal burdens of proof specified in section 1221(e) of title 5 shall be controlling for the purposes of any investigation conducted by an Inspector General, decision by the head of an executive agency, or judicial or administrative proceeding to determine whether discrimination prohibited under this section has occurred.

**(6) Rights and remedies not waivable**.--The rights and remedies provided for in this section may not be waived by any agreement, policy, form, or condition of employment.

**(d) Notification of employees**.--The head of each executive agency shall ensure that contractors, subcontractors, and grantees of the agency inform their employees in writing of the rights and remedies provided under this section, in the predominant native language of the workforce.

**(e) Construction**.--Nothing in this section may be construed to authorize the discharge of, demotion of, or discrimination against an employee for a disclosure other than a disclosure protected by subsection (a) or to modify or derogate from a right or remedy otherwise available to the employee.

**(f) Exceptions**.--

**(1)** This section shall not apply to any element of the intelligence community, as defined in section 3(4) of the National Security Act of 1947 (50 U.S.C. § 401a(4)).

**(2)** This section shall not apply to any disclosure made by an employee of a contractor, subcontractor, or grantee of an element of the intelligence community if such disclosure--

**(A)** relates to an activity of an element of the intelligence community; or

**(B)** was discovered during contract, subcontract, or grantee services provided to an element of the intelligence community.

COPS-AR-0750

(g) **Definitions**.--In this section:

    (1) The term "abuse of authority" means an arbitrary and capricious exercise of authority that is inconsistent with the mission of the executive agency concerned or the successful performance of a contract or grant of such agency.

    (2) The term "Inspector General" means an Inspector General appointed under the Inspector General Act of 1978 and any Inspector General that receives funding from, or has oversight over contracts or grants awarded for or on behalf of, the executive agency concerned.

(h) **Construction**.--Nothing in this section, or the amendments made by this section, 1 shall be construed to provide any rights to disclose classified information not otherwise provided by law.

**[(i) Repealed by Pub.L. 114-261, § 1(a)(3)(A)(ii), Dec. 14, 2016, 130 Stat. 1362]**

COPS-AR-0751

# Appendix F. 2 C.F.R. Appendix II to Part 200: Contract provisions for nonfederal entity contracts under federal awards

In addition to other provisions required by the Federal agency or non-Federal entity, all contracts made by the non-Federal entity under the Federal award must contain provisions covering the following, as applicable.

(A) Contracts for more than the simplified acquisition threshold, which is the inflation adjusted amount determined by the Civilian Agency Acquisition Council and the Defense Acquisition Regulations Council (Councils) as authorized by 41 U.S.C. 1908, must address administrative, contractual, or legal remedies in instances where contractors violate or breach contract terms, and provide for such sanctions and penalties as appropriate.

(B) All contracts in excess of $10,000 must address termination for cause and for convenience by the non-Federal entity including the manner by which it will be effected and the basis for settlement.

(C) Equal Employment Opportunity. Except as otherwise provided under 41 CFR Part 60, all contracts that meet the definition of "federally assisted construction contract" in 41 CFR Part 60-1.3 must include the equal opportunity clause provided under 41 CFR 60-1.4(b), in accordance with Executive Order 11246, "Equal Employment Opportunity" (30 FR 12319, 12935, 3 CFR Part, 1964-1965 Comp., p. 339), as amended by Executive Order 11375, "Amending Executive Order 11246 Relating to Equal Employment Opportunity," and implementing regulations at 41 CFR part 60, "Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor."

(D) Davis-Bacon Act, as amended (40 U.S.C. 3141-3148). When required by Federal program legislation, all prime construction contracts in excess of $2,000 awarded by non-Federal entities must include a provision for compliance with the Davis-Bacon Act (40 U.S.C. 3141-3144, and 3146-3148) as supplemented by Department of Labor regulations (29 CFR Part 5, "Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction"). In accordance with the statute, contractors must be required to pay wages to laborers and mechanics at a rate not less than the prevailing wages specified in a wage determination made by the Secretary of Labor. In addition, contractors must be required to pay wages not less than once a week. The non-Federal entity must place a copy of the current prevailing wage determination issued by the Department of Labor in each solicitation. The decision to award a contract or subcontract must be conditioned upon the acceptance of the wage determination. The non-Federal entity must report all suspected or reported violations to the Federal awarding agency. The contracts must also include a provision for compliance with the Copeland "Anti-Kickback" Act (40 U.S.C. 3145), as supplemented by Department of Labor regulations (29 CFR Part 3, "Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States"). The Act provides that each contractor or subrecipient must be prohibited from inducing, by any means, any person employed in the construction, completion, or repair of public work, to give up any part of the compensation to which he or she is otherwise entitled. The non-Federal entity must report all suspected or reported violations to the Federal awarding agency.

(E) Contract Work Hours and Safety Standards Act (40 U.S.C. 3701-3708). Where applicable, all contracts awarded by the non-Federal entity in excess of $100,000 that involve the employment of mechanics or laborers must include a provision for compliance with 40 U.S.C. 3702 and 3704, as supplemented by Department of Labor regulations (29 CFR Part 5). Under 40 U.S.C. 3702 of the Act, each contractor must be required to compute the wages of every mechanic and laborer on the basis of a standard work week of 40 hours. Work in excess of the standard work week is permissible provided that the worker is compensated at a rate of not less than one and a half times the basic rate of pay for all hours worked in excess of 40 hours in the work week. The requirements of

40 U.S.C. 3704 are applicable to construction work and provide that no laborer or mechanic must be required to work in surroundings or under working conditions which are unsanitary, hazardous or dangerous. These requirements do not apply to the purchases of supplies or materials or articles ordinarily available on the open market, or contracts for transportation or transmission of intelligence.

(F) Rights to Inventions Made Under a Contract or Agreement. If the Federal award meets the definition of "funding agreement" under 37 CFR §401.2 (a) and the recipient or subrecipient wishes to enter into a contract with a small business firm or nonprofit organization regarding the substitution of parties, assignment or performance of experimental, developmental, or research work under that "funding agreement," the recipient or subrecipient must comply with the requirements of 37 CFR Part 401, "Rights to Inventions Made by Nonprofit Organizations and Small Business Firms Under Government Grants, Contracts and Cooperative Agreements," and any implementing regulations issued by the awarding agency.

(G) Clean Air Act (42 U.S.C. 7401-7671q.) and the Federal Water Pollution Control Act (33 U.S.C. 1251-1387), as amended—Contracts and subgrants of amounts in excess of $150,000 must contain a provision that requires the non-Federal award to agree to comply with all applicable standards, orders or regulations issued pursuant to the Clean Air Act (42 U.S.C. 7401-7671q) and the Federal Water Pollution Control Act as amended (33 U.S.C. 1251-1387). Violations must be reported to the Federal awarding agency and the Regional Office of the Environmental Protection Agency (EPA).

(H) Debarment and Suspension (Executive Orders 12549 and 12689)—A contract award (see 2 CFR 180.220) must not be made to parties listed on the government wide exclusions in the System for Award Management (SAM), in accordance with the OMB guidelines at 2 CFR 180 that implement Executive Orders 12549 (3 CFR part 1986 Comp., p. 189) and 12689 (3 CFR part 1989 Comp., p. 235), "Debarment and Suspension." SAM Exclusions contains the names of parties debarred, suspended, or otherwise excluded by agencies, as well as parties declared ineligible under statutory or regulatory authority other than Executive Order 12549.

(I) Byrd Anti-Lobbying Amendment (31 U.S.C. 1352)—Contractors that apply or bid for an award exceeding $100,000 must file the required certification. Each tier certifies to the tier above that it will not and has not used Federal appropriated funds to pay any person or organization for influencing or attempting to influence an officer or employee of any agency, a member of Congress, officer or employee of Congress, or an employee of a member of Congress in connection with obtaining any Federal contract, grant or any other award covered by 31 U.S.C. 1352. Each tier must also disclose any lobbying with non-Federal funds that takes place in connection with obtaining any Federal award. Such disclosures are forwarded from tier to tier up to the non-Federal award.

(J) See § 200.323.

(K) See § 200.216.

[78 FR 78608, Dec. 26, 201, as amended at 79 FR 75888, Dec. 19, 2014; 85 FR 49577, Aug. 13, 2020]

COPS-AR-0753

# Appendix G. Remittance of Interest Earned Amounts

## 2 CFR § 200.305 (b)(9) – Payment (remittance of interest earned)

1. *Interest earned amounts up to $500 per year may be retained by the non-federal entity for administrative expense. Any additional interest earned on federal advance payments deposited in interest-bearing accounts must be remitted annually to the Department of Health and Human Services Payment Management System (PMS) through an electronic medium using either Automated Clearing House (ACH) network or a Fedwire Funds Service payment. Remittances must include pertinent information of the payee and nature of payment in the memo area (often referred to as "addenda records" by Financial Institutions) as that will assist in the timely posting of interest earned on federal funds. Pertinent details include the Payee Account Number (PAN) if the payment originated from PMS, or Agency information if the payment originated from ASAP, NSF or another federal agency payment system. The remittance must be submitted as follows:*

   i.   For ACH Returns:

   Routing Number: 051036706
   Account number: 303000
   Bank Name and Location: Credit Gateway - ACH Receiver St. Paul, MN

   ii.   For Fedwire Returns*:

   Routing Number: 021030004
   Account number: 75010501
   Bank Name and Location: Federal Reserve Bank Treas NYC/Funds Transfer Division New York, NY

   (* Please note organization initiating payment is likely to incur a charge from your Financial Institution for this type of payment)

   iii.   For International ACH Returns:

   Beneficiary Account: Federal Reserve Bank of New York/ITS (FRBNY/ITS)
   Bank: Citibank N.A. (New York)
   Swift Code: CITIUS33
   Account Number: 36838868
   Bank Address: 388 Greenwich Street, New York, NY 10013
   Payment Details (Line 70): Agency Name (abbreviated when possible) and ALC
   Agency POC: Michelle Haney, 301-492-5065

   iv.   For recipients that do not have electronic remittance capability, please make check** payable to: "The Department of Health and Human Services."

   Mail Check to Treasury approved lockbox:
   HHS Program Support Center, P.O. Box 530231, Atlanta, GA 30353-0231

   (** Please allow 4-6 weeks for processing of a payment by check to be applied to the appropriate PMS account)

Any additional information/instructions may be found on the PMS Web site at **https://pms.psc.gov/**. Instructions for returning interest on can be found at **https://pms.psc.gov/grant-recipients/returning-funds-interest.html**.

COPS-AR-0754

# Appendix H. Additional resources for Cooperative Agreement recipients

All recipients must follow the guidance in the financial fact sheets as outlined in this manual. The following are the fact sheets that can be found on the **Award Management Materials web page**:

- *Grant Adjustment Modifications – Budget Modification Fact Sheet*

- *Consultant Contractor Fact Sheet*

- *Indirect Costs Fact Sheet*

- *Program Income Fact Sheet*

- *Sole Source Justification Fact Sheet*

In addition to the above fact sheets, recipients should also refer to **The DOJ Grants Financial Guide**. The DOJ Grants Financial Guide (the "Guide") serves as the primary reference manual to assist OJP, OVW, and COPS Office award recipients in fulfilling their fiduciary responsibility to safeguard grant funds and ensure funds are used for the purposes for which they were awarded. It compiles a variety of laws, rules and regulations that affect the financial and administrative management of your award. There may be instances where the requirements may differ among the three grant-making components; to the extent possible, those differences are spelled out throughout the Guide. However, recipients (and subrecipients) should refer to the award terms and conditions outlined in this Award Owner's Manual to determine the specific requirements that apply to your award.

Some recipients may be awarded Cooperative Agreements to develop reports, publications, manuals, training, videos, and other products. The Cooperative Agreement, which is included in the Award Document, includes customized tasks and deliverables that may require the recipient to follow one or more of these resource documents or fact sheets applicable to their project:

- ***COPS Office Logo Standards Manual***
- ***In Person Curriculum Standards Guide***
- ***Instructor Quality Assurance Guide***
- **Non-TOT Instructor Guide Template**
- **Non-TOT Participant Guide Template**
- **Non-TOT PowerPoint Background**
- ***Online Curriculum Process Guide***
- **TOT Instructor Guide Template**
- **TOT Participant Guide Template**
- **TOT PowerPoint Background**

- ***Video Development Process Guide***
- ***The ADDIE Model of Instructional Design Fact Sheet***
- ***The COPS Office Editorial and Graphics Style Manual: Guide for Authors, New Revised Third Edition***
- ***Training Fact Sheet***
- ***Section 508 of the Rehabilitation Act of 1973***
- ***Webinar Fact Sheet***
- **Webinar Template**

COPS-AR-0755

# Glossary of Terms

**allowable costs.** Allowable costs are costs that will be paid for by this award program. Upon review of your submitted budget, any unallowable costs were removed. The award financial information included in your award package specifies your allowable costs, contains the final budget category amounts for which your organization was approved, and notes any relevant revisions that were made to your original budget submission.

**assistance listing.** The assistance listing contains a description and index of all forms of federal assistance. Each program is assigned an assistance listing number, which is used by auditors to track award revenues. It is also used in participating states by State Single Points of Contact in conducting the required intergovernmental reviews under Executive Order 12372. The assistance listing number for COPS Office awards is 16.710.

**audit.** Work done by auditors, including both the Office of the Inspector General (OIG) and state or local auditors, to examine financial statements and to review

- compliance with laws and regulations;
- economy and efficiency of operations;
- effectiveness in achieving program results;
- allowability of costs claimed against the award.

**authorized representative.** The authorized representatives are the individuals in your organization who have final authority and responsibility for all programmatic and financial decisions regarding this award. At the time of award application, your agency listed the authorized representatives for your agency. For non–law enforcement agencies (institutions of higher education, private organizations, etc.), the authorized representatives are the programmatic and financial officials who have the ultimate signatory authority to sign contracts on behalf of your organization. These executives are listed on your award document and are understood to be your authorized representatives. If any of the executive information is incorrect, please **revise** the information via JustGrants. For any assistance, please reference the **https://justicegrants.usdoj.gov/training/jarg-entity-management.pdf**.

**award end date.** This is the date until which your agency is authorized to purchase items or hire positions that were approved by the COPS Office. The award end date is found on your award document. Recipients may not make any purchases or hire any positions prior to this date without written approval from the COPS Office.

**award number.** The award number identifies your organization's award and can be found on your award package. This number should be used as a reference when corresponding with the COPS Office. Your award number is in the format 15JCOPS-24-GG-XXXXX-XXXX for awards made in FY 2024. The COPS Office tracks award information based upon this number.

**award start date.** This is the date on or after which your agency is authorized to purchase or hire any allowable equipment, services, personnel, or other costs that were approved by the COPS Office. The award start date is found on your award package. Recipients may not expend funds prior to this date without written approval from the COPS Office.

**career law enforcement officer.** The COPS Office statute defines a career law enforcement officer as a person hired on a permanent basis who is authorized by law, or by a state or local public agency, to engage in or oversee the prevention, detection, or investigation of violations of criminal laws.

COPS-AR-0756

**closeout.** This is the process in which the awarding agency, the COPS Office, determines that all applicable administrative actions and all required work and conditions of the award have been completed and met by the recipient and awarding agency.

**cognizant federal agency.** Your cognizant federal agency is generally the federal agency that provides your agency with the most federal money. The Office of Management and Budget (OMB) may have already assigned your cognizant federal agency to you. If this is the first federal award that your organization has received, the U.S. Department of Justice (DOJ) is your cognizant federal agency.

**community policing.** Community policing is a philosophy that promotes organizational strategies that support the systematic use of partnerships and problem-solving techniques to proactively address the immediate conditions that give rise to public safety issues such as violent crime, nonviolent crime, and fear of crime.

**consortium.** A consortium is a group of two or more governmental entities that agree to form a partnership to provide law enforcement services to their constituent communities.

**computing devices.** Computing devices are machines used to acquire, store, analyze, process, and publish data and other information electronically, including accessories (or "peripherals") for printing, transmitting, and receiving, or storing electronic information.

**cooperative agreement.** A legal instrument of financial assistance between a federal awarding agency and a nonfederal entity to carry out a public purpose authorized by a law of the United States that, consistent with 31 U.S.C. § 6302-6305, provides for substantial involvement between the federal awarding agency and the non-federal entity in carrying out the activity contemplated by the federal award.

**COPS Office.** The Office of Community Oriented Policing Services (COPS Office) is the office within the U.S. Department of Justice that is the grantor or awarding agency for your award. The COPS Office is responsible for assisting your agency with the administration and maintenance of your award for the entire award period. You can reach the COPS Office at 800-421-6770.

**COPS Office finance staff accountants.** The COPS Office finance staff accountants are responsible for your agency's financial and budgetary needs related to this award. A staff accountant has been assigned to your state and is available to answer any questions that you may have concerning the Quarterly Financial Status Reports (SF_425) and other financial aspects of your award. To identify your staff accountant, please call the COPS Office Response Center at **AskCOPSRC@usdoj.gov**.

**COPS Office Program Manager.** COPS Office Program Managers are trained to assist you with implementing and maintaining your LEMHWA award. A Program Manager is assigned to your project and is available to answer any questions that you may have concerning the administrative, programmatic, and substantive aspects of your award. Your Program Manager can assist you with such matters as requesting an extension on your award or modifying the award and reviewing outlines for project deliverables. The name and phone number of your COPS Office Program Manager is provided on the award congratulatory letter and available by contacting the COPS Office Response Center at **AskCOPSRC@usdoj.gov**.

**disallowed costs.** Disallowed costs means those charges that are determined to be unallowable, in accordance with the applicable Federal statutes, regulations, or the terms and conditions of the federal award.

COPS-AR-0757

**Employer Identification Number (EIN) / OJP vendor number.** This number is usually your agency's nine-digit federal tax identification number as assigned to you by the Internal Revenue Service (IRS). Your accounting/bookkeeping department should have this number. In some cases, the EIN has been previously assigned to another agency within your jurisdiction. In this instance, a new vendor number will be assigned to you by the Office of the Chief Financial Officer. The newly assigned number is to be used for COPS Office administrative purposes only and should not be used for IRS purposes.

**equipment.** Equipment is tangible personal property (including information technology systems) having a useful life of more than one year and a per-unit acquisition cost that equals or exceeds $5,000.

**federally recognized tribe.** Tribal entities that are recognized and eligible for funding and services from the Bureau of Indian Affairs (BIA) by virtue of their status as Indian tribes. They are acknowledged to have the immunities and privileges available to other federally recognized Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, power, limitations, and obligations of such tribes. Only federally recognized tribes are eligible to apply for COPS Office tribal award funds. For further information, contact BIA, Division of Tribal Government Services, MS-4631 – MIB, 1849 C Street NW, Washington, DC 20240, 202-208-2475.

**grant.** A legal instrument of financial assistance between a federal awarding agency and a non-federal entity to carry out a public purpose authorized by a law of the United States that, consistent with 31 U.S.C. § 6302-6305, does not provide for substantial involvement between the federal awarding agency and the non-Federal entity in carrying out the activity contemplated by the federal award.

**Grant Operations Staff.** COPS Office Grant Operations Staff are trained and available to assist you in addressing any compliance-related questions regarding your award. Grant monitoring specialists plan and conduct site visits and enhanced office-based grant reviews. During the life of your award, you may be selected for a monitoring site visit to assess your compliance with the terms and agreements of the award program, to review your community policing initiatives, and to provide technical and administrative support for your award. Please contact the COPS Office Response Center at **AskCOPSRC@usdoj.gov** if you have any compliance-related questions.

**Indian tribe.** For purposes of COPS Office awards, Indian tribe means any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act, which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians. See Pub. L. 106–113, div. B, title I, §116, 113 Stat. 1501A–21.

**indirect costs.** If approved for your program, indirect costs means those costs incurred for a common or joint purpose benefitting more than one cost objective, and not readily assignable to the cost objectives specifically benefitted, without effort disproportionate to the results achieved.

**institutions of higher education (IHE).** Institution of higher education is defined at 20 U.S.C. 1001.

**local budget cycle.** Your agency's fiscal year. Some common examples include January 1 to December 31, October 1 to September 30, and July 1 to June 30. Some local budget cycles may extend up to 24 months.

**matching funds.** What a locality must contribute as a cash match toward total allowable project costs over the life of the program.

COPS-AR-0758

**mobile data computer/laptop.** A Mobile Data Computer (MDC) is a computer terminal mounted in a vehicle that is linked via wireless communication to a network that is often integrated with a CAD system. MDCs enable officers to complete previously handwritten reports on a computer. This often eliminates the need to enter duplicate information on multiple reports.

**modified total direct cost.** Modified total direct cost (MTDC) means all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and up to the first $50,000 of each subaward (regardless of the period of performance of the subawards under the award). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs and the portion of each subaward in excess of $50,000. Other items may only be excluded when necessary to avoid a serious inequity in the distribution of indirect costs, and with the approval of the cognizant agency for indirect costs.

**National Incident-Based Reporting System (NIBRS).** A comprehensive reporting database. Agencies provide individual records for eight index crimes and 38 other offenses.

**nonfederal entity.** Nonfederal entity means a state, local government, Indian tribe, institution of higher education, or nonprofit organization that carries out a federal award as a recipient or subrecipient.

**nonprofit organization.** Nonprofit organization means any corporation, trust, association, cooperative, or other organization, not including institutions of higher education, that is operated primarily for scientific, educational, service, charitable, or similar purposes in the public interest; is not organized primarily for profit; and uses net proceeds to maintain, improve, or expand the operations of the organization.

**obligation of funds.** The COPS Office obligates federal funds when the award document is signed by the COPS Office Director or their designated official. For the recipient, award funds are obligated when monies are spent or orders are placed for purchasing approved technology or services under your LEMHWA award. The term "encumbrance" is often used at the local and state levels to describe this type of transaction. Liquidated obligations are considered cash outlays or monies actually spent. Unliquidated obligations are obligations incurred and recorded but not yet paid (accrual basis of accounting) or not yet recorded and not yet paid (cash basis of accounting).

**OJP vendor number/EIN number.** This is your agency's nine-digit federal tax identification number assigned to you by the IRS. Your accounting/bookkeeping department should have this number.

If your EIN previously has been assigned to another agency within your jurisdiction, the Office of the Comptroller will assign a new OJP vendor number to you. The new assigned number is to be used for administrative purposes only, in connection with this award program, and should not be used for IRS purposes.

**participant support costs.** Participant support costs means direct costs for items such as stipends or subsistence allowances, travel allowances, and registration fees paid to or on behalf of participants or trainees (but not employees) in connection with conferences, or training projects.

**primary law enforcement authority.** An agency with primary law enforcement authority is the agency that is the first responder to calls for service, and has ultimate and final responsibility for the prevention, detection, or investigation of violations of criminal laws within its jurisdiction. Agencies are not considered to have primary law enforcement authority if they only respond to or investigate specific type(s) of crime(s), respond to or investigate

COPS-AR-0759

crimes within a correctional institution, serve warrants, provide courthouse security, transport prisoners, or have cases referred to them for investigation or investigational support.

**program income.** Program income means gross income earned by the nonfederal entity that is directly generated by a supported activity or earned as a result of the federal award during the period of performance.

**Public Safety Partnership and Community Policing Act of 1994.** The COPS Office is charged with fulfilling the mandates of this law. The purposes of the law are to

- increase the number of community policing officers on the beat;
- provide additional and more effective training to law enforcement officers to enhance their problem-solving, service, and other skills needed in interacting with members of the community;
- encourage the development and implementation of innovative programs to permit members of the community to assist law enforcement agencies in the prevention of crime;
- encourage the development of new technologies to assist law enforcement agencies in reorienting the emphasis of their activities from reacting to crime to preventing crime.

**recipient.** The Uniform Guidance defines it as "Recipient means a non-Federal entity that receives a Federal award directly from a Federal awarding agency to carry out an activity under a Federal program. The term recipient does not include subrecipients. See also § 200.1 Non-Federal entity." 2 C.F.R. § 200.1.

**research and development.** Research and development (R&D) means all research activities, both basic and applied, and all development activities that are performed by non-Federal entities. The term "research" also includes activities involving the training of individuals in research techniques where such activities use the same facilities as other research and development activities and where such activities are not included in the instruction function. "Research" is defined as a systematic study directed toward fuller scientific knowledge or understanding of the subject studied. "Development" is the systematic use of knowledge and understanding gained from research directed toward the production of useful materials, devices, systems, or methods, including design and development of prototypes and processes.

**simplified acquisition threshold.** Simplified acquisition threshold means the dollar amount below which a nonfederal entity may purchase property or services using small purchase methods. Nonfederal entities adopt small purchase procedures in order to expedite the purchase of items costing less than the simplified acquisition threshold. The simplified acquisition threshold is set by the Federal Acquisition Regulation at 48 C.F.R. Subpart 2.1 (Definitions) and in accordance with 41 U.S.C. § 1908. Currently, the simplified acquisition threshold is $250,000.

**subaward.** Subaward means an award provided by a pass-through entity to a subrecipient for the subrecipient to carry out part of a federal award received by the pass-through entity. It does not include payments to a contractor or payments to an individual that is a beneficiary of a federal program. A subaward may be provided through any form of legal agreement, including an agreement that the pass-through entity considers a contract.

**subrecipient.** Subrecipient means a nonfederal entity that receives a subaward from a pass-through entity to carry out part of a federal program; but does not include an individual that is a beneficiary of such program. A subrecipient may also be a recipient of other federal awards directly from a federal awarding agency.

**supplanting.** For the purposes of your COPS Office LEMHWA award, supplanting means replacing state, local, or Bureau of Indian Affairs (BIA) funds that otherwise would have been spent on award purposes with federal COPS Office funds. State, local, and tribal governments are prohibited from supplanting throughout the award period.

COPS-AR-0760

This means that your agency may not use COPS Office funds to pay for any equipment/technology, services, personnel, or other items which, in the absence of the COPS Office program, would otherwise have been funded with state or local funds or with funds supplied by the BIA. The COPS Office funds must instead be used to supplement, or increase, your budget on award purposes. For additional information on supplanting, please review the award condition titled "Supplementing, Not Supplanting" in this manual.

**supplies.** Supplies means all tangible personal property other than those described under equipment. A computing device is a supply if the acquisition cost is less than the lesser of the capitalization level established by the nonfederal entity for financial statement purposes or $5,000, regardless of the length of its useful life.

**System for Award Management (SAM).** The SAM database is the repository for standard information about federal financial assistance applicants, recipients, and subrecipients. Organizations that have previously submitted applications via **Grants.gov** are already registered with SAM, as it is a requirement for **Grants.gov** registration. Please note, however, that applicants must update or renew their SAM at least once per year to maintain an active status. Information about registration procedures can be accessed at **www.sam.gov**.

**unique entity identifier.** The Unique Entity ID (UEI) is a 12-character alpha-numeric value and once issued, will not change. Entities. A unique entity identifier is required of all applicants for COPS Office awards and must be updated every year in SAM.gov. This number will be used by the Federal Government to better track award recipient information throughout the award cycle and to provide consistent name and address data for electronic award application systems.

COPS-AR-0761

# 2024 COPS Office Law Enforcement Mental Health and Wellness Act (LEMHWA) Program Award Owner's Manual

This manual was created to assist COPS Office LEMHWA Program recipients with the administrative and financial matters associated with their award.

For more information about your award, please contact your COPS Office Program Manager. If you do not know the name or telephone number of your Program Manager, please contact the COPS Office Response Center at **AskCOPSRC@usdoj.gov**.



U.S. Department of Justice
Office of Community Oriented Policing Services
145 N Street NE
Washington, DC 20530

To obtain details on COPS Office programs,
call the COPS Office Response Center at 800-421-6770.
Visit the COPS Office online at **cops.usdoj.gov.**
Published September 2024

COPS-AR-0762



# 2024 COPS Office Community Policing Development (CPD) Program

Award Owner's Manual

---

U.S. Department of Justice, Office of Community Oriented Policing Services

**https://cops.usdoj.gov**

COPS-AR-0763

# 2024 COPS Office CPD Program Award Owner's Manual

This manual was created to assist COPS Office award recipients with the administrative and financial matters associated with their award.

For more information about your award, please contact your COPS Office Program Manager. If you do not know the name or telephone number of your COPS Office Program Manager, please contact the COPS Office Response Center at **AskCOPSRC@usdoj.gov** or 800-421-6770.



U.S. Department of Justice
Office of Community Oriented Policing Services
145 N Street NE
Washington, DC 20530
Visit the COPS Office online: **cops.usdoj.gov**
Published August 2024

2024 COPS Office Community Policing Development (CPD) Program Award Owner's Manual

# Contents

Getting Started ........................................................................................................................................1

I. Award Acceptance, Terms, and Conditions ........................................................................................2

    Award package ..................................................................................................................................2

    The Cooperative Agreement ............................................................................................................3

    Accepting the award .........................................................................................................................3

    Who should sign the award package for our organization?..............................................................4

    By when must the award package be signed? ..................................................................................4

    What are the specific rules regarding termination of award funding?.............................................4

    Award terms and conditions ............................................................................................................5

II. Accessing Award Funds....................................................................................................................43

    Payment method.............................................................................................................................43

    Additional payment questions ........................................................................................................44

III. Procurement Process......................................................................................................................46

IV. Financial Record Maintenance .......................................................................................................47

    What accounting systems are required?..........................................................................................47

    What records must be kept?............................................................................................................47

    How long must records be kept? .....................................................................................................47

    What if we have more than one award?...........................................................................................48

    Who may access our records?..........................................................................................................48

V. Federal Audit Requirements............................................................................................................49

    Single Audit Act (SAA) requirements...............................................................................................49

    Office of Inspector General (OIG) recipient audits..........................................................................50

    Typical audit findings.......................................................................................................................51

VI. Reporting Requirements ................................................................................................................53

    Federal Financial Reports ................................................................................................................53

    Performance Reports .......................................................................................................................55

    Contact points to obtain technical assistance and report violations ...............................................57

COPS-AR-0765

VII. When the Award Period Has Ended ................................................................................................58

   Final Federal Financial Report (SF-425) .......................................................................................58

   Final Performance (Closeout) Report ...........................................................................................58


VIII. Conclusion ......................................................................................................................................60


Appendices ..............................................................................................................................................61

   Appendix A. List of source documents .........................................................................................61

   Appendix B. U.S. Department of Justice Certified Standard Assurances ...............................................62

   Appendix C. U.S. Department of Justice Certifications Regarding Lobbying; Debarment, Suspension and Other
   Responsibility Matters; Drug-Free Workplace Requirements; Law Enforcement and Community Policing ..........64

   Appendix D. Conference and Event Guidance.................................................................................68

   Appendix E. Enhancement of contractor protection from reprisal for disclosure of certain information (41 U.S.C.
   § 4712)........................................................................................................................................80

   Appendix F. 2 C.F.R. Appendix II to Part 200: Contract provisions for nonfederal entity contracts under federal
   awards .......................................................................................................................................84

   Appendix G. Remittance of Interest Earned Amounts .......................................................................86

   Appendix H. Additional resources for Cooperative Agreement recipients ............................................87


Glossary of Terms ...................................................................................................................................88

COPS-AR-0766

2024 COPS Office Community Policing Development (CPD) Program Award Owner's Manual

# Getting Started

Congratulations on receiving an award from the U.S. Department of Justice (DOJ), Office of Community Oriented Policing Services (COPS Office). The 2024 COPS Office Community Policing Development (CPD) Program awards includes the following CPD programs:

- Accreditation

- De-Escalation Training

- Emerging Issues Forums

- Promoting Access to Crisis Teams (PACT)

- Innovations in Recruitment and Hiring

- Microgrants

- Tolerance, Diversity, and Anti-Bias Training

These programs are used to develop the capacity of law enforcement to implement community policing strategies by providing guidance on promising practices through the development and testing of innovative strategies; building knowledge about effective practices and outcomes; and supporting new, creative approaches to preventing crime and promoting safe communities. According to the COPS Office, community policing is a philosophy that promotes organizational strategies that support the systematic use of partnerships and problem-solving techniques to proactively address the immediate conditions that give rise to public safety issues such as violent crime, nonviolent crime, and fear of crime. For a complete definition, please see *Community Policing Defined*, which can be found at **https://portal.cops.usdoj.gov/resourcecenter?item=cops-p157**.

Compliance with this Award Owner's Manual is a condition of your award and this manual is binding guidance. This manual will assist your organization with the administrative and financial matters associated with your award. It was developed to ensure that all award recipients are able to clearly understand and meet the requirements of their award. Please review this manual carefully because failure to follow award requirements can have serious ramifications. Please do not hesitate to contact your COPS Office Program Manager if you need assistance with the implementation of your award.

The Uniform Administrative Requirements, Cost Principles, and Audit requirements for Federal Awards (known as the "Uniform Guidance" or "Part 200"), have been updated. The updates will be codified in the Code of Federal Regulations at 2 C.F.R. Part 200 on October 1, 2024. The U.S. Department of Justice (DOJ) adopted the Uniform Guidance, first promulgated in 2013, via regulation at 2 C.F.R. Part 2800 and it includes "any subsequent changes" to Part 200.

DOJ is continuing to assess the impact of the OMB updates on its recipients of federal financial assistance. To the extent practicable, revisions to 2 C.F.R. Part 200 are incorporated into this Award Owner's Manual but may be subject to additional clarifications. Recipients remain responsible for complying with all Part 200 revisions, published in the Federal Register :: Guidance for Federal Financial Assistance, at **https://www.federalregister.gov/documents/2024/04/22/2024-07496/guidance-for-federal-financial-assistance**.

Thank you for providing us with the opportunity to work in partnership with you on this important project.

COPS-AR-0767

# I. Award Acceptance, Terms, and Conditions

Your entity must successfully set up their JustGrants account and enroll in the Automated Standard Application for Payments (ASAP) to accept and manage their award. Accepting or declining an award can only be done through the Justice Grants System (JustGrants). In JustGrants, you may print the PDF of the award for reference.

Prior to accepting an award, the entity administrator must assign a financial manager, a grant administrator, and two Authorized Representatives for each award in JustGrants. COPS Office recipients will have two Authorized Representatives assigned to each award; both are required to accept the award. When the Authorized Representative(s) log(s) into their JustGrants account, they can view accepted awards and awards that need to be accepted. An email notification will also be sent to the Application Submitter, the Authorized Representatives, and the Entity Administrator to sign and accept their award.

**To officially accept your award,** you must carefully review and electronically sign **the Award Package (which includes your Award Information, Financial Information, Award Conditions, and Other Award Documents including the cooperative agreement) within 45 days from the date shown on the award letter.** Please see the JustGrants training: **Grant Award Acceptance** for detailed information on accepting your award.

Your organization will **not** be able to draw down award funds until the COPS Office receives your signed award package and you have completed all steps in the ASAP system. For more information on drawing down award funds, please see the section titled "Accessing Award Funds" in this manual.

## Award package

The award package indicates your official award funding amount, the award number, the award terms and conditions, and the award start and end dates. Please note that the cooperative agreement is incorporated by reference into the award document and that by signing the award document, your organization has entered into the cooperative agreement with the COPS Office and agrees to abide by all the requirements in the cooperative agreement.

Be sure to familiarize yourself with all terms, conditions, and requirements of your award before signing the award package. Print and retain a copy of the award package including the award terms and conditions, the financial information, and the cooperative agreement and any other award documents for your records.

The Project Period start date on the award package means that your organization may be reimbursed for any allowable costs incurred on or after this date. Project Period end date shows the last date that allowable costs may be incurred.

Your award number is in the following format: 15JCOPS-24-GG-XXXXX-XXXX as shown in figure 1 on page 3. The COPS Office tracks award information based upon this number. Therefore, it is important to have your organization's award number (or your organization's System for Award Management (SAM) Unique Entity Identifier (UEI) number) readily available when corresponding with the COPS Office.

COPS-AR-0768

2024 COPS Office Community Policing Development (CPD) Program Award Owner's Manual

**Figure 1. Award number example**



## The Cooperative Agreement

If your project requires substantial involvement on the part of the COPS Office, a multipage cooperative agreement document will accompany your award package. Please note that the cooperative agreement is included in the award package, and by signing the award package, your organization has entered into the cooperative agreement with the COPS Office and agrees to abide by all the requirements in the cooperative agreement.

Under the Federal Grant and Cooperative Agreement Act of 1977, a cooperative agreement is the legal instrument used by a federal agency to enter into a relationship with a state, local government, or other recipient when the principal purpose of assistance is to carry out a public purpose of support or stimulation authorized by federal law and substantial involvement is expected between the federal agency and the recipient. See 31 U.S.C. § 6305.

To officially accept and begin your award, your organization will review and approve the cooperative agreement document along with the award package and electronically sign for all documents within 45 days of the date shown on the award letter.

Your organization will not be able to draw down funds until the COPS Office receives your electronically signed award package in JustGrants.

If you have any additional questions concerning your cooperative agreement, please contact your designated COPS Office Program Manager.

## Accepting the award

After you have reviewed the conditions of your award and your organization agrees with these conditions, you are ready to accept the award. The Director of the COPS Office or designee has signed the award package indicating approval of your award, an obligation of federal funds to your organization, and our commitment to the award. As stated at the beginning of this section, to officially begin your award and draw down your funds, the authorized representatives (see the Glossary of Terms following the appendices) of your organization must access the JustGrants website to log in, review, and electronically sign the award package and, if applicable, the special award conditions or high risk conditions in the award package supplement within 45 days of the date shown on the award letter.

Refer to the Job Aid Reference Guide titled **_Grantee Acceptance_**, which will walk you through the necessary steps to follow in accepting an award package.

COPS-AR-0769

## Who should sign the award package for our organization?

The authorized representatives are the authorized officials who have ultimate and final responsibility for all programmatic and financial decisions regarding this award as representatives of the legal recipient and those who have the ultimate signatory authority to sign contracts on behalf of your organization. Typically, these are the same executives who signed the forms in your COPS Office application.

For non–law enforcement agencies (institutions of higher education, school districts, private organizations, etc.), COPS Office awards require that both the programmatic official (e.g., executive director, chief executive officer, or equivalent) and financial official (e.g., chief financial officer, treasurer, or equivalent) sign the application, and (if awarded funding) accept the Award Package. The programmatic official must be assigned the role of Authorized Representative 1 and the financial official must be assigned the role of Authorized Representative 2 in JustGrants.

If the Authorized Representatives changes between the time of application submission and award receipt, the Entity Administrator (EA) will need to update the Authorized Representative in JustGrants.

## By when must the award package be signed?

Please electronically sign the award package within 45 days of the date on the award letter. Award funds will not be released until we have received your organization's signed award package, your budget has received final clearance, and any other relevant award conditions particular to your organization have been satisfied. Failure to electronically sign your original award document within the 45-day award acceptance period may result in your award being withdrawn and the funds deobligated without additional notification. If your organization requires an extension for accepting the award beyond the 45-day acceptance time frame, please contact your COPS Office program manager. Be sure to explain the circumstances that prevent your organization from electronically signing the award document within the 45-day period and identify the date by which the award package will be signed. The COPS Office will review such requests on a case-by-case basis. The COPS Office reserves the right to deny requests to extend the award acceptance period. If you have any questions, please contact your COPS Office Program Manager.

## What are the specific rules regarding termination of award funding?

The COPS Office may suspend, in whole or in part, or terminate funding or impose other sanctions on a recipient for the following reasons:

- Failure to substantially comply with the requirements or objectives of the Public Safety Partnership and Community Policing Act of 1994, program guidelines, or other provisions of federal law
- Failure to make satisfactory progress toward the goals or strategies set forth in the recipient's application
- Failure to adhere to award agreement requirements or special conditions
- Proposing substantial plan changes to the extent that, if originally submitted, would have resulted in the application not being selected for funding
- Failure to submit required or requested reports
- Filing a false statement or certification in this application or other report or document
- Other good cause shown

Prior to imposing sanctions, the COPS Office will provide reasonable notice to the recipient of its intent to impose sanctions and will attempt to resolve the problem informally. Appeal procedures will follow those in the U.S. Department of Justice regulations in 28 C.F.R. Part 18.

Awards terminated because of noncompliance with the federal statutes, regulations, or award terms and conditions will be reported to the integrity and performance system accessible through SAM.gov under Entity Information, Responsibility/Qualification (formerly FAPIIS.gov).

False statements or claims made in connection with COPS Office awards may result in fines, imprisonment, debarment from participating in federal awards or contracts, and any other remedy available by law.

Please be advised that recipients may not use COPS Office funding for the same item or service also funded by another U.S. Department of Justice award.

# Award terms and conditions

The award terms and conditions are included in the award package. By accepting this award, you are obtaining federal funds from the COPS Office. As part of that agreement, your organization acknowledges that it will comply with these terms and conditions (and, if applicable, any additional special or high-risk conditions specific to your organization). The section that follows describes, in detail, all of the award conditions, their rationales, and their implications. It also addresses many frequently asked questions. If you have additional questions concerning any of these award conditions, please contact your COPS Office Program Manager.

In limited circumstances, your award may be subject to special conditions that prevent your organization from drawing down or accessing award funds until the special conditions are satisfied as determined by the COPS Office. Any special or high-risk conditions will be included in the award conditions section of the award package. If you have questions about the special or high-risk conditions, please contact your assigned COPS Office Program Manager.

## Reasons for award terms and conditions

The requirements of your award are established within

- the Public Safety Partnership and Community Policing Act of 1994, which established the COPS Office;
- the applicable rules, regulations and policies issued by the U.S. Department of Justice, Office of Management and Budget (OMB), the Government Accountability Office (GAO), and the United States Treasury;
- the specific programmatic requirements established by the COPS Office.

A list of source documents for this manual is provided in the appendices. You may request copies of any source reference document from

**Office of Administration, Publication Unit**
**New Executive Office Building**
**725 17th Street NW, Room G 236**
**Washington, D.C. 20503**

COPS Office–specific documents may be requested directly from the COPS Office by contacting your COPS Office Program Manager.

COPS-AR-0771

## Review of award terms and conditions

By signing the award package to accept this award, your organization agrees to abide by the following award terms and conditions:

*1. Reporting Subawards and Executive Compensation*

**Condition:**

*The recipient agrees to comply with the following requirements of 2 C.F.R. Part 170, Appendix A to Part 170 – Award Term:*

*I. Reporting Subawards and Executive Compensation*

*(a) Reporting of first-tier subawards—(1) Applicability. Unless the recipient is exempt as provided in paragraph (d) of this award term, the recipient must report each subaward that equals or exceeds $30,000 in Federal funds for a subaward to an entity or Federal agency. The recipient must also report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000. All reported subawards should reflect the total amount of the subaward.*

*(2) Reporting Requirements. (i) The entity or Federal agency must report each subaward described in paragraph (a)(1) of this award term to  the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at https://www.fsrs.gov.*

*(ii) For subaward information, report no later than the end of the month following the month in which the subaward was issued. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025.)*

*(b) Reporting total compensation of recipient executives for entities—(1) Applicability. The recipient must report the total compensation for each of the recipient's five most highly compensated executives for the preceding completed fiscal year if:*

*(i) The total Federal funding authorized to date under this Federal award equals or exceeds $30,000;*

*(ii) in the preceding fiscal year, the recipient received:*

*(A) 80 percent or more of the recipient's annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and*

*(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,*

*(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at https://www.sec.gov/answers/execomp.htm.)*

COPS-AR-0772

*(2).Reporting Requirements. The recipient must report executive total compensation described in paragraph (b)(1) of this appendix:*

*(i) As part of the recipient's registration profile at https://www.sam.gov.*

*(ii) No later than the month following the month in which this Federal award is made, and annually after that. (For example, if this Federal award was made on November 7, 2025, the executive total compensation must be reported by no later than December 31, 2025.).*

*(c) Reporting of total compensation of subrecipient executives—(1) Applicability. Unless a first-tier subrecipient is exempt as provided in paragraph (d) of this appendix, the recipient must report the executive total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if:*

*(i) The total Federal funding authorized to date under the subaward equals or exceeds $30,000;*

*(ii) in the subrecipient's preceding fiscal year, the subrecipient received:*

*(A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,*

*(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal awards (and subawards) subject to the Transparency Act; and*

*(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at https://www.sec.gov/answers/execomp.htm.)*

*(2) Reporting Requirements. Subrecipients must report to the recipient their executive total compensation described in paragraph (c)(1) of this appendix. The recipient is required to submit this information to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at https://www.fsrs.gov/ no later than the end of the month following the month in which the subaward was made. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025.)*

*(d) Exemptions. (1) A recipient with gross income under $300,000 in the previous tax year is exempt from the requirements to report:*

*(i) Subawards, and*

*(ii) The total compensation of the five most highly compensated executives of any subrecipient.*

*(e) Definitions. For purposes of this award term:*

*Entity includes:*

*(1) Whether for profit or nonprofit:*

*(i) A corporation;*

COPS-AR-0773

*(ii) An association;*

*(iii) A partnership;*

*(iv) A limited liability company;*

*(v) A limited liability partnership;*

*(vi) A sole proprietorship;*

*(vii) Any other legal business entity;*

*(viii) Another grantee or contractor that is not excluded by subparagraph (2); and*

*(ix) Any State or locality;*

*(2) Does not include:*

*(i) An individual recipient of Federal financial assistance; or*

*(ii) A federal employee.*

*Executive means an officer, managing partner, or any other employee holding a management position.*

*Subaward has the meaning given in 2 C.F.R. 200.1.*

*Subrecipient has the meaning given in 2 C.F.R. 200.1.*

*Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 C.F.R. 299.402(c)(2).*

**Why this condition:**

To further federal spending transparency, the Federal Funding Accountability and Transparency Act of 2006 (FFATA) requires, among other things, that information on federal awards (federal financial assistance and expenditures) be made available to the public via a single, searchable website, which is www.USASpending.gov. Recipients are responsible for reporting their applicable executive compensation and subaward information, and the award term provides guidance to report the related information as required by FFATA.

**What you should do:**

At the time of award application, your organization was asked to ensure that it has the necessary processes and systems in place to comply with the applicable subaward and executive compensation reporting requirements should it receive funding. If your organization received awards of $30,000 or more, you are required to report award information on any first-tier subawards totaling $30,000 or more, and, in certain cases, to report information on the names and total compensation of the five most highly compensated executives of the recipient and first-tier subrecipients. The FFATA Subaward Reporting System (FSRS), accessible via the website at www.fsrs.gov, is the reporting tool that your organization will use to capture and report subaward information and any executive compensation data required by FFATA. The subaward information entered in FSRS will then be displayed on www.USASpending.gov associated with your organization's award, furthering federal spending transparency.

COPS-AR-0774

For additional information regarding the executive compensation and subaward reporting requirements, please see **https://www.federalregister.gov/documents/2024/04/22/2024-07496/guidance-for-federal-financial-assistance**.

## *2. Restrictions on Internal Confidentiality Agreements*

**Condition:**

*No recipient or subrecipient under this award, or entity that receives a contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts the lawful reporting of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.* Further *Consolidated Appropriations Act, 2024, Public Law, 118-47 Division B, Title VII, Section 742.*

**Why this condition:**

Under the Appropriations Act, neither the recipient, subrecipient, nor any entity that receives a contract or subcontract with any funds under this or any other Act may require its employees or contractors to sign an internal confidentiality agreement or statement prohibiting or otherwise restricting their lawful reporting of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency. This provision protects the public interest and ensures the proper management and use of federal funds. This limitation is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

**What you should do:**

In accepting this award, the recipient

- represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above;

- represents that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict) reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the agency making this award, and will resume such obligations only if expressly authorized to do so by that agency.

If the recipient does or is authorized to make subawards or contracts under this award, in accepting, the recipient

- represents that it has or will determine that no other entity that the recipient proposes may or will receive award funds (whether through a subaward, contract, or subcontract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above;

- represents that it has or will make appropriate inquiry, or otherwise has an adequate factual basis, to support this representation;

COPS-AR-0775

- represents that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict) reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

### 3. Prohibited Conduct by Recipients and Subrecipients Related to Trafficking in Persons (Including Reporting Requirements and COPS Office Authority to Terminate Award)

**Condition:**

*The recipient and subrecipient agree to comply with the following requirements of 2 C.F.R. Part 175, Appendix A to Part 175) – Award Term:*

*I. Trafficking in Persons.*

*(a) Provisions applicable to a recipient that is a private entity. (1) Under this award, the recipient, its employees, subrecipients under this award, and subrecipients' employees must not engage in:*

*(i).Severe forms of trafficking in persons;*

*(ii) The procurement of a commercial sex act during the period of time that this award or any subaward is in effect;*

*(iii) The use of forced labor in the performance of this award or any subaward; or*

*(iv) Acts that directly support or advance trafficking in persons, including the following acts:*

*(A) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;*

*(B) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:*

*(1) Exempted from the requirement to provide or pay for such return transportation by the Federal department or agency providing or entering into the grant or cooperative agreement; or*

*(2) The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or a witness in a human trafficking enforcement action;*

*(C) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;*

*(D) Charging recruited employees a placement or recruitment fee; or*

*(E) Providing or arranging housing that fails to meet the hose country's housing and safety standards.*

COPS-AR-0776

2024 COPS Office Community Policing Development (CPD) Program Award Owner's Manual

*(2) The Federal agency may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. 7104b(c), without penalty, if any private entity under this award:*

*(i) Is determined to have violated a prohibition in paragraph (a)(1) of this appendix; or*

*(ii) Has an employee that is determined to have violated a prohibition in paragraph (a)(1) of this appendix through conduct that is either:*

*(A) Associated with performance under this award; or*

*(B) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 C.F.R. part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by DOJ at 2 C.F.R. Part 2867.*

*(b) Provision applicable to a recipient other than a private entity. (1) The Federal agency may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. 7104b(c), without penalty, if a subrecipient that is a private entity under this award:*

*(i). Is determined to have violated a prohibition in paragraph (a)(1) of this appendix; or*

*(ii) Has an employee that is determined to have violated a prohibition in paragraph (a)(1) of this appendix through conduct that is either:*

*(A) Associated with performance under this award; or*

*(B) Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 C.F.R. part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by 2 C.F.R. Part 2867.*

*(c) Provisions applicable to any recipient.*

*(1) The recipient must inform the Federal agency and the Inspector General of the Federal agency immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (a)(1) of this appendix.*

*(2) The Federal agency's right to unilaterally terminate this award as described in paragraphs (a)(2) or (b)(1) of this appendix:*

*(i) Implements the requirements of 22 U.S.C. 78, and*

*(ii) Is in addition to all other remedies for noncompliance that are available to the Federal agency under this award.*

*3. The recipient must include the requirements of paragraph (a)(1) of this award term in any subaward it makes to a private entity.*

*(4) If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 C.F.R. 175.105(b).*

*(d) Definitions. For purposes of this award term:*

*"Employee" means either:*

COPS-AR-0777

*(1) An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this award; or*

*(2) Another person engaged in the performance of the project or program under this award and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing requirements.*

*"Private entity" means any entity, including for-profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 C.F.R. 200.1.*

*The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. 7102).*

**Why this condition:**

The purpose of this government-wide award term is to implement the requirement in paragraph (g) of section 106 of the Trafficking Victims Protection Act of 2000 (TVPA), as amended, (22 U.S.C. § 7104(g)). The award term authorizes the COPS Office to terminate an award to a private entity, without penalty, if the recipient or a subrecipient:

(a) Engages in severe forms of trafficking in persons during the period of time that the award is in effect;

(b) Procures a commercial sex act during the period of time that the award is in effect;

(c) Uses forced labor in the performance of the award or subawards under the award; or

(d) Acts that directly support or advance trafficking in persons as described in the award term.

2 C.F.R. § 175.105.

**What you should do:**

During the time that the award is in effect, recipients, subrecipients at any tier, and their employees must not engage in severe forms of trafficking in persons, procure commercial sex acts, use forced labor in the performance of the award, or engage in acts that directly support or advance trafficking persons. The recipient must include the above award term in any subaward to a private entity. The recipient must also promptly notify the COPS Office of any information received from any source alleging a violation of prohibited conduct described in the award term.

## *4. Duplicative Funding*

**Condition:**

*The recipient understands and agrees to notify the COPS Office if it receives, from any other source, funding for the same item or service also funded under this award.*

COPS-AR-0778

2024 COPS Office Community Policing Development (CPD) Program Award Owner's Manual

**Why this condition:**

This award was made to your organization for approved project costs that are not funded with other funds, including federal, state, local, tribal, or BIA funds. Consequently, your organization may not use this funding for items or services that you already have funding for from other sources.

**What you should do:**

If your organization receives funding from another source for the same item(s) or services(s) also funded under this award, please contact your COPS Office Program Manager. If necessary, the COPS Office will work with your organization to reprogram funding for items or services that are allowable under this award program.

*5. Termination*

**Condition:**

*Recipient understands and agrees that the COPS Office may terminate funding, in whole or in part, for the following reasons:*

*(1) When the recipient fails to comply with the terms and conditions of a Federal award.*

*(2) When the recipient agrees to the termination and termination conditions.*

*(3) When the recipient provides the COPS Office written notification requesting termination including the reasons, effective date, and the portion of the award to be terminated. The COPS Office may terminate the entire award if the remaining portion will not accomplish the purposes of the award.*

*(4) Pursuant to any other award terms and conditions, including, when an award no longer effectuates the program goals or agency priorities to the extent such termination is authorized by law.*

*2. C.F.R. § 200.340.*

**Why this condition:**

This condition sets forth the circumstances under which your federal award may be terminated.

**What you should do:**

Carefully review the reasons for termination in this condition to ensure that your organization is aware of when award funding may be terminated. If you have any questions regarding the provisions, please contact your COPS Office Program Manager.

*6. Award Owner's Manual*

**Condition:**

*The recipient agrees to comply with the terms and conditions in the applicable award year COPS Office Program Award Owner's Manual; DOJ Grants Financial Guide; COPS Office statute (34 U.S.C. § 10381, et seq.) as applicable; Students, Teachers, and Officers Preventing (STOP) School Violence Act of 2018 (34 U.S.C. § 10551, et seq.) as applicable; the requirements of 2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards), including subsequent changes, as adopted by the U.S. Department of Justice in 2*

COPS-AR-0779

C.F.R. § 2800.101; 48 C.F.R. Part 31 (FAR Part 31) as applicable (Contract Cost Principles and Procedures); the Cooperative Agreement as applicable; representations made in the application; and all other applicable program requirements, laws, orders, regulations, or circulars.

Failure to comply with one or more award requirements may result in remedial action including, but not limited to, withholding award funds, disallowing costs, suspending, or terminating the award, or other legal action as appropriate.

Should any provision of an award condition be deemed invalid or unenforceable by its terms, that provision will be applied to give it the maximum effect permitted by law. Should the provision be deemed invalid or unenforceable in its entirety, such provision will be severed from this award.

**Why this condition:**

This manual has been designed to inform you of the requirements, laws, regulations, and policies that apply to your award. Your organization will be responsible for the information and rules contained in this manual and for implementing your award in compliance with the applicable terms, conditions, and regulations. Please note that in accordance with 2 C.F.R. § 200.101(a)(2), the COPS Office applies 2 C.F.R. Subparts A through E to for-profit (or commercial) entities. More detailed guidance regarding any particular award requirement or your organization's specific circumstances can be requested through your COPS Office Program Manager.

**What you should do:**

Please read the entire CPD Award Owner's Manual carefully prior to signing the award package. If you have any questions, please contact your COPS Office Program Manager. When accepting your award, you should ensure that the proper reporting and financial systems are in place to satisfy the award requirements.

## 7. Authorized Representative Responsibility

**Condition:**

The recipient understands that, in accepting this award, the Authorized Representatives declare and certify, among other things, that they possess the requisite legal authority to accept the award on behalf of the recipient entity and, in so doing, accept (or adopt) all material requirements throughout the period of performance under this award. The recipient further understands, and agrees, that it will not assign anyone to the role of Authorized Representative during the period of performance under the award without first ensuring that the individual has the requisite legal authority.

**Why this condition:**

The Authorized Representatives are responsible for reviewing and accepting a recipient's COPS Office award and must possess the legal authority to accept awards. This action binds the recipient to the award requirements.

**What you should do:**

The recipient must ensure it assigns two officials as the required Authorized Representatives for its COPS Office award who have ultimate and final responsibility for all programmatic and financial decisions for the agency, as the legal recipient. For guidance on who should be assigned as your agency's two Authorized Representatives, please see the Award Acceptance, Terms, and Conditions section of the Award Owner's Manual.

COPS-AR-0780

*8. Award Monitoring Activities*

**Condition:**

*Federal law requires that recipients receiving federal funding from the COPS Office must be monitored to ensure compliance with their award conditions and other applicable statutes and regulations. The COPS Office is also interested in tracking the progress of our programs and the advancement of community policing. Both aspects of award implementation—compliance and programmatic benefits—are part of the monitoring process coordinated by the U.S. Department of Justice. Award monitoring activities conducted by the COPS Office include site visits, enhanced office-based grant reviews, alleged noncompliance reviews, financial and programmatic reporting, and audit resolution. As a COPS Office award recipient, you agree to cooperate with and respond to any requests for information pertaining to your award. This includes all financial records, such as general accounting ledgers and all supporting documents. All information pertinent to the implementation of the award is subject to agency review throughout the life of the award, during the close-out process and for three-years after submission of the final expenditure report. 34 U.S.C. § 10385(a) and 2 C.F.R. §§ 200.334 and 200.337.*

**Why this condition:**

The Public Safety Partnership and Community Policing Act of 1994 states that each award program must contain a monitoring component. The COPS Office actively monitors how recipients are complying with COPS Office award requirements. In addition, the monitoring component provides customer service and technical assistance to help ensure recipients understand how to remain in compliance while implementing their awards.

**What you should do:**

Your organization may be required to accommodate routine and nonroutine efforts by the COPS Office, or an entity designated by the COPS Office, to examine your organization's use of federal funds both programmatically and financially. The four primary means of ensuring recipients' compliance with the terms and conditions of their awards are as follows:

1.  **Site visits.** The COPS Office strategically selects award recipients based on a variety of risk factors to conduct site visits to ensure compliance with award terms and conditions. The purpose of site visits is threefold:

    i.   To review for compliance with the terms and conditions of the award

    ii.  To review the recipient's community policing strategies

    iii. To provide customer service and technical assistance

    If selected, recipients will be notified in writing in advance with detailed instructions for how to prepare for the review of their COPS Office awards. This review is generally performed over a period of one to two days. Recipients will have an opportunity to resolve any identified noncompliance issues while on-site or, if necessary, following the site visit. In addition, recipients will also have an opportunity to seek customer service and/or technical assistance on the implementation of their award.

2.  **Enhanced Office-Based Grant Reviews (EOBGR).** In lieu of a site visit, awards may be selected for an EOBGR conducted at the COPS Office via teleconference or video conference. EOBGRs serve as an alternative for conducting award monitoring reviews in support of the COPS Office's overall award monitoring strategy. The purpose of the EOBGR is threefold:

    i.   To review for compliance with the terms and conditions of the award

    ii.  To review the recipient's community policing strategies

COPS-AR-0781

    iii.   To provide customer service and technical assistance

    If selected, the recipient will be notified in writing in advance of any EOBGR of its COPS Office awards. This review is generally performed over a one-to two-day period. Recipients will have an opportunity to resolve any identified noncompliance issues, if necessary, following the EOBGR interview. In addition, award recipients will also have an opportunity to seek customer service and/or technical assistance on the implementation of their award.

3. **Alleged Noncompliance Referral (ANCR).** An ANCR is an allegation of suspected noncompliance that originates from an internal source within the COPS Office or an external referral from one of many sources. Internal ANCRs generally originate from COPS Office Grants Administration Division, Finance Division, or the Office of General Counsel (OGC), although any COPS Office component may refer a noncompliance issue to the ANCR. External noncompliance referrals may be received from anonymous complainants, media, citizens, law enforcement agencies, other Federal agencies, or other outside sources. On a case-by-case basis, COPS Office ANCR staff members determine the appropriate course of action to take to investigate complaints of alleged noncompliance. This may include phone or letter contact or a site visit by COPS Office staff or the OIG. Each ANCR referral is resolved as a violation or nonviolation based upon the preponderance of the supporting documentation or other facts to determine if the award recipient is in compliance or noncompliance.

4. **Audit liaison.** The OIG may conduct a random audit for any recipient of a COPS Office award. In the event your organization has undergone an OIG audit and there are audit recommendations (findings) resulting from noncompliance or poor accountability practices, the COPS Office Grant Monitoring Division Audit Liaison Section will work with your organization to resolve and close these recommendations. Remedies to close recommendations may include repayment of award funds, providing adequate documentation to demonstrate compliance, or providing proof of policies or procedures that were created or revised to directly address the causes for the noncompliance as a proactive preventative measure to avoid future noncompliance.

Recipients are responsible for remedying any award noncompliance that is identified during site visits, EOBGRs, and/or ANCRs. In addition, recipients are responsible for remedying noncompliance stemming from audit recommendations identified in audits of COPS Office awards conducted by the OIG and the Office of the Chief Financial Officer (OCFO). Remedies for noncompliance may include but are not limited to repayment of award funds for unallowable or unsupported costs, providing adequate documentation to demonstrate compliance, suspending active award funding, voluntary withdrawal from or involuntary termination of remaining award funds, or a restriction from receiving future COPS Office awards for a period of time. Under certain conditions, additional actions may include referral and placement on the U.S. Department of Justice's High-Risk List, which will include mandatory completion of the Office of Justice Programs Financial Management Training and being subject to increased monitoring of current and future awards while on the list. In the event of criminal misuse of award funds, recipients may also be subject to fines and imprisonment. To avoid findings of noncompliance, recipients are strongly encouraged to become familiar with the ***COPS Office Grant Monitoring Division's Grant Monitoring Standards and Guidelines*** and Award Owner's Manual for the year in which the award was made. Recipients should also contact their COPS Office Program Manager at any time during the life of a COPS Office award with questions concerning award conditions, terms, or requirements to seek guidance to avoid noncompliance. It is necessary for recipients to maintain all relevant documentation (administrative, financial, and programmatic) used to develop the application and implement the award that may be necessary or required to demonstrate award compliance for a period of three-years from the date of submission of the final expenditure report. For more information, please contact the COPS Office Response Center at **AskCopsRC@usdoj.gov**.

COPS-AR-0782

## 9. Contract Provision

**Condition:**

*All contracts made by the award recipients under the federal award must contain the provisions required under 2 C.F.R. Part 200, Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards. Please see appendices in the Award Owner's Manual for a full text of the contract provisions.*

**Why this condition:**

Federal regulations require recipients and subrecipients to comply with the necessary contract provisions in order to standardize and strengthen oversight of all contracts made under federal awards. This provision protects the public interest and ensures the proper management and use of federal funds as it relates to contracts entered into by the recipient.

**What you should do:**

The recipient should review all contracts made under the federal award to ensure that they contain the provisions required under *2 C.F.R. Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards* in the appendices of this manual.

## 10. Assurances and Certifications

**Condition:**

*The recipient acknowledges its agreement to comply with the Assurances and Certifications forms that were signed as part of its application.*

**Why this condition:**

Although the COPS Office has made every effort to simplify the process of applying for and receiving awards, several provisions of federal law require us to obtain the recipient's Assurances and Certifications regarding certain matters. Most of the Assurances and Certifications apply to all federal award programs.

**What you should do:**

Applicants to COPS Office award programs are required to sign the Assurances and Certifications forms at the time of application. Signing these documents assures the COPS Office that you have read, understood, and accepted the award terms and conditions outlined in the Assurances and Certifications. Please read these documents carefully, because signatures on these documents are treated as a material representation of fact upon which reliance will be placed when the U.S. Department of Justice determines to make an award. Additional copies of the Assurances and Certifications forms are contained in the appendices of this manual. If you have any questions about the Assurances and Certifications, please contact your assigned COPS Office Program Manager.

## 11. Conflict of Interest

**Condition:**

*Recipients and subrecipients must disclose in writing to the COPS Office or pass-through entity, as applicable, any potential conflict of interest affecting the awarded federal funding in accordance with 2 C.F.R. § 200.112.*

COPS-AR-0783

**Why this condition:**

Recipients and subrecipients are required to use federal funding in the best interest of their award program. Any decisions related to these funds must be free of hidden personal or organizational conflicts of interest, both in fact and in appearance.

This means that recipients and subrecipients should not participate in any award-related decisions or recommendations that involve any of the following people or groups:

- an immediate family member
- a partner
- an organization in which they are serving as an officer, director, partner, or employee
- any person or organization with whom they are negotiating or who has an arrangement concerning prospective employment, has a financial interest, or for other reasons can have less than an unbiased transaction with the recipient or subrecipient

This also means that recipients and subrecipients should avoid any action which might result in or create the appearance of

- using your official position for private gain;
- giving special treatment to any person;
- losing complete independence or objectivity;
- making an official decision outside official channels; or
- affecting negatively the confidence of the public in the integrity of the Federal Government or the program.

**What you should do:**

Ensure that you report in writing to the COPS Office or pass-through entity, as applicable, any potential conflict of interest that may affect your federal award.

## 12. Debarment and Suspension

**Condition:**

*The recipient agrees not to award federal funds under this program to any party which is debarred or suspended from participation in Federal assistance programs. 2 C.F.R. Part 180 (Governmentwide Nonprocurement Debarment and Suspension) and 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension).*

**Why this condition:**

Under federal regulations, recipients are required to ensure that federal funds are not given to parties that are debarred or suspended from participation in federal assistance programs. This is to protect the public interest and to ensure proper management and integrity in federal activities by conducting business only with responsible parties. For details regarding the debarment and suspension requirements, please see 2 C.F.R. Part 180 (Governmentwide Nonprocurement Debarment and Suspension), and 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension.)

COPS-AR-0784

**What you should do:**

If under a COPS Office award you enter into a contract for goods or services for $25,000 or more or any subaward, you must verify that the vendor or subrecipient and their respective principals (e.g., owners, top managers) with whom you intend to do business are not excluded or disqualified from participation in federal assistance programs. In addition, you must include a term or condition in the contract or subaward requiring the vendor or subrecipient to comply with subpart C of the OMB guidance in 2 C.F.R. Part 180 (Governmentwide Nonprocurement Debarment and Suspension) and subpart C of 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension).

## 13. Employment Eligibility

**Condition:**

*The recipient agrees to complete and keep on file, as appropriate, the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS) Employment Eligibility Verification Form (I-9). This form is to be used by recipients of federal funds to verify that persons are eligible to work in the United States. Immigration Reform and Control Act of 1986 (IRCA), Public Law 99-603.*

**Why this condition:**

Under federal immigration law, all employers are required to take certain steps to ensure that persons that are hired are legally permitted to work in the United States. The United States Citizenship and Immigration Services Employment Eligibility Verification Form (I-9) outlines the types of documents that an employer should review to confirm that a new hire is eligible for employment.

**What you should do:**

You do not need to submit any documentation to the COPS Office to satisfy this condition. Rather, you should complete and maintain the I-9 forms for all new employees under the guidelines set forth by the United States Citizenship and Immigration Services. For further information about this requirement, please visit **https://www.uscis.gov/i-9-central**.

## 14. Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information

**Condition:**

*Recipients and subrecipients agree not to discharge, demote, or otherwise discriminate against an employee as reprisal for the employee disclosing information that he or she reasonably believes is evidence of gross mismanagement of a federal contract or award; a gross waste of federal funds; an abuse of authority relating to a federal contract or award; a substantial and specific danger to public health or safety; or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or award. Recipients and subrecipients also agree to provide to their employees in writing (in the predominant native language of the workforce) of the rights and remedies provided in 41 U.S.C. § 4712. Please see appendices in the Award Owner's Manual for a full text of the statute.*

COPS-AR-0785

**Why this condition:**

Under "Enhancement of contractor protection from reprisal for disclosure of certain information" (41 U.S.C. § 4712), recipients and subrecipients are prohibited from taking reprisal actions against employees for certain whistleblowing activities in connection with federal awards and contracts. The law protects the public interest and ensures the proper management and use of federal funds.

**What you should do:**

Recipients and subrecipients must not take reprisal actions against an employee for disclosing misconduct under federal contracts and awards to certain persons and entities.

Recipients and subrecipients are prohibited from discharging, demoting, or otherwise discriminating against an employee as reprisal for disclosing information that he or she reasonably believes is evidence of

- gross mismanagement of a federal contract or award;
- a gross waste of federal funds;
- an abuse of authority relating to a federal contract or award;
- a substantial and specific danger to public health or safety; or
- a violation of law, rule, or regulation related to a federal contract (including the competition for or negotiation of a contract) or award.

In addition, the disclosure must also have been made to

- a member of Congress or a representative of a committee of Congress;
- an inspector general;
- the Government Accountability Office;
- a federal employee responsible for contract or award oversight or management at the relevant agency;
- an authorized official of the U.S. Department of Justice or other law enforcement agency;
- a court or grand jury; or
- a management official or other employee of the contractor, subcontractor, or recipient who has the responsibility
- to investigate, discover, or address misconduct.

An employee is deemed to have made a protected disclosure if he or she initiates or provides evidence of misconduct in any judicial or administrative proceeding relating to waste, fraud, or abuse on a federal contract or award.

Recipients and subrecipients must inform their employees in writing, in the predominant language of the workforce, of employee whistleblower rights, protections, and remedies under 41 U.S.C. § 4712. Recipients and subrecipients who wish to use the U.S. Department of Justice, Office of Inspector General whistleblower information brochure to inform their employees of their rights, may obtain a copy at **https://oig.justice.gov/sites/default/files/2020-04/NDAA-brochure.pdf**.

Please see the appendices in this manual for a full text of the "Enhancement of contractor protection from reprisal for disclosure of certain information" (41 U.S.C. § 4712).

COPS-AR-0786

## 15. Equal Employment Opportunity Plan (EEOP)

**Condition:**

*All recipients of funding from the COPS Office must comply with the federal regulations pertaining to the development and implementation of an Equal Employment Opportunity Plan. 28 C.F.R. Part 42 subpart E.*

**Why this condition:**

It is the experience of the U.S. Department of Justice in implementing its responsibilities under the Omnibus Crime Control and Safe Streets Act of 1968 (Safe Streets Act), the statute that established the COPS Office, that "the full and equal participation of women and minority individuals in employment opportunities in the criminal justice system is a necessary component to the Safe Streets Act's program to reduce crime and delinquency in the United States" 28 C.F.R. § 42.301. The Equal Employment Opportunity Plan (EEOP) does not impose quotas or hiring requirements on recipients of federal funds.

**What you should do:**

The obligations to comply with the EEOP requirement differ depending on your organization's legal status, the number of its employees, and the amount of the award. If your organization is a government agency or private business and has received a single award for $25,000 or more and has fifty or more employees (counting both full- and part-time employees but excluding political appointees), then it has to prepare a Utilization Report and submit it to the Office for Civil Rights (OCR) within 120 days from the date of the award. Although the OCR has discretion to review all submitted Utilization Reports, it will review the Utilization Reports from recipients that receive an award of $500,000 or more.

To begin developing a Utilization Report, please consult the OCR's website at **https://ojp.gov/about/ocr/eeop.htm** and click EEOP Reporting Tool Login. Additional assistance can be found online at the bottom of the same webpage by clicking the EEO Reporting Tool Job Aid and Frequently Asked Questions.

If your organization has fewer than 50 employees or receives an award of less than $25,000 or is a nonprofit organization, a medical institution, an educational institution, or an Indian tribe, then it is exempt from the EEOP requirement. To claim the exemption, however, your organization must certify that it is exempt by logging into the EEO Reporting Tool on the OCR website at **https://ojp.gov/about/ocr/eeop.htm**, providing the contact and organizational profile information, and then submitting a Certificate of Exemption.

If you have further questions regarding the EEOP requirements, you may contact an EEOP specialist at the OCR by telephone at 202-616-1771or by email at **EEOPforms@usdoj.gov**.

## 16. False Statements

**Condition:**

*False statements or claims made in connection with COPS Office awards may result in fines, imprisonment, debarment from participating in federal awards or contracts, and/or any other remedy available by law. 31 U.S.C. § 3729–3733.*

**Why this condition:**

This condition advises recipients of the consequences of submitting false claims or statements on applications, financial and programmatic reports, or other award documents.

**What you should do:**

Ensure that all documentation related to your organization's receipt and use of award funding (award applications, progress reports, Federal Financial Reports, etc.) is true and accurate.

## 17. Federal Civil Rights

**Condition:**

*The recipient and any subrecipient must comply with applicable federal civil rights and nondiscrimination statutes and regulations, including section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), as implemented in subparts C and D of 28 C.F.R. Part 42; section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), as implemented in subpart G of 28 C.F.R. Part 42; section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681), as implemented in subpart D of 28 C.F.R. Parts 42 and 54; section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102), as implemented in subpart I of 28 C.F.R. Part 42; and section 809(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. § 10228(c)), as implemented in subpart D of 28 C.F.R. part 42.*

*In addition to applicable federal statutes and regulations that pertain to civil rights and nondiscrimination, the recipient and any subrecipient must comply with the requirements in 28 C.F.R. Parts 22 (Confidentiality of Identifiable Research and Statistical Information); 28 C.F.R. Part 23 (Criminal Intelligence Systems Operating Policies); 28 C.F.R. Part 38 (Partnership with Faith-Based and Other Neighborhood Organizations); and 28 C.F.R. Part 46 (Protection of Human Subjects). For an overview of the civil rights laws and nondiscrimination requirements in connection with your award, please see https://www.ojp.gov/program/civil-rights/overview.*

**Why this condition:**

In establishing financial assistance programs, Congress linked the receipt of federal funding to compliance with federal civil rights and nondiscrimination laws. As a result, recipients are required to comply with the civil rights and nondiscrimination laws referenced above. A hold may be placed on your award if it is deemed that your organization is not in compliance with federal civil rights laws or is not cooperating with an ongoing federal civil rights investigation. If a hold is placed on your award, you will not be able to obligate or draw down federal funds under your organization's COPS Office award until you comply with federal civil rights laws or cooperate with any ongoing federal civil rights investigation.

**What you should do:**

The Office for Civil Rights (OCR), Office of Justice Programs, U.S. Department of Justice has been delegated the responsibility for ensuring that recipients of federal financial assistance from the COPS Office are not engaged in discrimination prohibited by law. Included with your award package is a memorandum from the OCR, which addresses the federal civil rights statutes and regulations applicable to your award. You should review this memorandum to understand your organization's civil rights responsibilities. For an overview of the civil rights laws and nondiscrimination requirements in connection with your award, please see **https://www.ojp.gov/program/civil-rights/overview**.

COPS-AR-0788

The recipient and any subrecipient must comply with all applicable requirements of 28 C.F.R. Part 38, which includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipients and subrecipients that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations. Recipients and subrecipients that provide social services under this award must give written notice to beneficiaries and prospective beneficiaries prior to the provision of services (if practicable) which shall include language substantially similar to the language in 28 C.F.R. Part 38, Appendix C, sections (1) through (4). A sample written notice and other important Part 38 information may be found at **https://www.ojp.gov/program/civil-rights-office/partnerships-faith-based-and-other-neighborhood-organizations**. In addition, a faith-based recipient or subrecipient *may* consider religion in hiring *provided* it satisfies particular requirements, which can be found at **https://www.ojp.gov/funding/explore/legaloverview2024/civilrightsrequirements**.

As a recipient of federal financial assistance from the COPS Office, you are required to comply with the applicable federal civil rights and nondiscrimination laws to collect data and information sufficient to permit effective enforcement of such laws, and to cooperate with any federal civil rights investigation, which includes providing access to records, accounts, documents, information, facilities, and staff.

## 18. Mandatory Disclosure

**Condition:**

*Recipients and subrecipients must timely disclose in writing to the COPS Office or pass-through entity, as applicable, all federal criminal law violations involving fraud, bribery, or gratuity that may potentially affect the awarded federal funding. Recipients that receive an award over $500,000 must also report certain civil, criminal, or administrative proceedings in SAM and are required to comply with the Term and Condition for Recipient Integrity and Performance Matters as set out in 2 C.F.R part 200, Appendix XII to Part 200. Failure to make required disclosures can result in any of the remedies, including suspension and debarment, described in 2 C.F.R. § 200.339.* 2 C.F.R. § 200.113.

**Why this condition:**

Federal regulations require recipients and subrecipients to report all federal violations involving fraud, bribery, or gratuity that may affect the awarded federal funds. In addition, recipients that receive an award of more than $500,000 must also report certain civil, criminal, or administrative proceedings in SAM and are required to comply with the Term and Condition for Recipient Integrity and Performance Matters as set out in 2 C.F.R. part 200, Appendix XII to Part 200. This condition advises your organization of the requirement and the consequences of failing to report such violations to the COPS Office or pass-through entity.

**What you should do:**

Ensure that you timely report in writing to the COPS Office or pass-through entity all federal violations involving fraud, bribery, or gratuity that may affect your federal award and, if applicable, report certain civil, criminal, or administrative proceedings in SAM.

COPS-AR-0789

## 19. Reports/Performance Goals

**Condition:**

*To assist the COPS Office in monitoring and tracking the performance of your award, your agency will be responsible for submitting semi-annual programmatic performance reports that describe project activities during the reporting period and quarterly Federal Financial Reports using Standard Form 425 (SF-425). 2 C.F.R. §§ 200.328–200.329. The performance report is used to track your agency's progress toward implementing community policing strategies and to collect data to gauge the effectiveness of increasing your agency's community policing capacity through COPS Office funding. The Federal Financial Report is used to track the expenditures of the recipient's award funds on a cumulative basis throughout the life of the award.*

**Why this condition:**

The Public Safety Partnership and Community Policing Act of 1994 and other federal regulations and policies require that financial assistance provided by the Federal Government must be monitored carefully to ensure the proper use of federal funds. In addition, the COPS Office seeks to document, on a continuing basis, the progress of our programs and recipients.

**What you should do:**

This award condition is designed to make your organization aware of reporting requirements associated with CPD awards. Semi-annual programmatic performance reports and a final programmatic performance report must be submitted directly to the COPS Office through the JustGrants system. Your organization is also required to submit quarterly Federal Financial Reports using Standard Form 425 (SF-425) within 30 days after the end of each calendar quarter. A final SF-425 will be due within120 days after the end of the award period. This report reflects the actual cumulative federal expenditures incurred during the funding period, and the remaining unobligated balance of federal funds. Under federal regulations, your organization is not permitted to draw down federal funding for costs incurred after the official award end date; however, you will have a 120-day grace period after the award end date during which you can drawdown funds for eligible expenditures incurred before the award end date. Organizations with more than one delinquent programmatic or financial report submission per fiscal year may be subject to delays in receiving reimbursement for allowable expenses and may be required to receive technical assistance to improve compliance with reporting. These reports are discussed in greater detail in the section titled "Reports" in this manual. All reports should be submitted within the deadlines given to avoid suspension or possible termination of award funds or other remedial actions; failure to submit required reports may also impact future funding opportunities.

## 20. Recipient Integrity and Performance Matters

**Condition:**

*For awards over $500,000, the recipient agrees to comply with the following requirements of 2 C.F.R. Part 200, Appendix XII to Part 200 – Award Term and Condition for Recipient Integrity and Performance Matters:*

*I. Reporting of Matters Related to Recipient Integrity and Performance*

*(a) General Reporting Requirement.*

2024 COPS Office Community Policing Development (CPD) Program Award Owner's Manual

*(1) If the total value of your active grants, cooperative agreements, and procurement contracts from all Federal agencies exceeds $10,000,000 for any period of time during the period of performance of this Federal award, then you as the recipient must ensure the information available in the responsibility/qualification records through the System for Award Management (SAM.gov), about civil, criminal, or administrative proceedings described in paragraph (b) of this award term is current and complete. This is a statutory requirement under section 872 of Public Law 110–417, as amended (41 U.S.C. 2313). As required by section 3010 of Public Law 111–212, all information posted in responsibility/qualification records in SAM.gov on or after April 15, 2011 (except past performance reviews required for Federal procurement contracts) will be publicly available.*

*(b) Proceedings About Which You Must Report.*

*(1) You must submit the information required about each proceeding that—*

*(i) Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;*

*(ii) Reached its final disposition during the most recent five year period; and*

*(iii) Is one of the following—*

*(A) A criminal proceeding that resulted in a conviction;*

*(B) A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;*

*(C) An administrative proceeding that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or*

*(D) Any other criminal, civil, or administrative proceeding if—*

*(1) It could have led to an outcome described in paragraph (b)(1)(iii)(A) through (C);*

*(2) It had a different disposition arrived at by consent or compromise with an acknowledgment of fault on your part; and*

*(3) The requirement in this award term and condition to disclose information about the proceeding does not conflict with applicable laws and regulations.*

*(c) Reporting Procedures. Enter the required information in SAM.gov for each proceeding described in paragraph (b) of this award term. You do not need to submit the information a second time under grants and cooperative agreements that you received if you already provided the information in SAM.gov because you were required to do so under Federal procurement contracts that you were awarded.*

*(d) Reporting Frequency. During any period of time when you are subject to the requirement in paragraph (a) of this award term, you must report proceedings information in SAM.gov for the most recent five year period, either to report new information about a proceeding that you have not reported previously or affirm that there is no new information to report. If you have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000, you must disclose semiannually any information about the criminal, civil, and administrative proceedings.*

COPS-AR-0791

*(3) Definitions. For purposes of this award term—*

*Administrative proceeding means a nonjudicial process that is adjudicatory in nature to make a determination of fault or liability (for example, Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.*

*Conviction means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere. Total value of currently active grants, cooperative agreements, and procurement contracts includes the value of the Federal share already received plus any anticipated Federal share under those awards (such as continuation funding).*

**Why this condition:**

Under 2 C.F.R. § 200.211(c)(1)(iii), recipients of awards in excess of $500,000 are required to report certain civil, criminal, and administrative proceedings if they have active federal grants, cooperative agreements, or contracts (or any combination of these) that total more than $10,000,000 during the COPS Office award period. The purpose is to protect the public interest and to ensure proper management in federal activities by conducting business with responsible parties.

**What you should do:**

If the total value of your active grants, cooperative agreements, and contracts from all federal awarding agencies exceeds $10,000,000 during the COPS Office award period, then you must ensure that the proceedings described in paragraph 2 of this award term that are reported in the System for Award Management (SAM) are current. The information about the reported proceedings is made available in SAM via the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)).

During the award period, you must either report for the most recent five year period new information about any proceeding(s) that you have not reported previously or affirm that there is no new information to report. You must also disclose semiannually any information about criminal, civil, and administrative proceedings.

## 21. System for Award Management (SAM) and Universal Identifier Requirements

**Condition:**

*The recipient agrees to comply with the following requirements of 2 C.F.R. Part 25, Appendix A to Part 25 – Award Term:*

*I. System for Award Management and Universal Identifier Requirements*

*(a) Requirement for System for Award Management. (1) Unless exempt from this requirement under 2 C.F.R. 25.110, the recipient must maintain a current and active registration in SAM.gov. The recipient's registration must always be current and active until the recipient submits all final reports required under this Federal award or receives the final payment, whichever is later. The recipient must review and update its information in SAM.gov at least annually from the date of its initial registration or any subsequent updates to ensure it is current, accurate,*

COPS-AR-0792

*and complete. If applicable, this includes identifying the recipient's immediate and highest-level owner and subsidiaries and providing information about the recipient's predecessors that have received a Federal award or contract within the last three years.*

*(b) Requirement for Unique Entity Identifier (UEI). (1) If the recipient is authorized to make subawards under this Federal award, the recipient:*

*(i) Must notify potential subrecipients that no entity may receive a subaward until the entity has provided its UEI to the recipient.*

*(ii) Must not make a subaward to an entity unless the entity has provided its UEI to the recipient. Subrecipients are not required to complete full registration in SAM.gov to obtain a UEI.*

*(c) Definitions. For the purposes of this award term:*

*System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide the information required for the conduct of business as a recipient. Additional information about registration procedures may be found in SAM.gov (currently at https://www.sam.gov).*

*Unique entity identifier means the universal identifier assigned by SAM.gov to uniquely identify an entity.*

*Entity is defined at 2 C.F.R. 25.400 and includes all of the following types as defined in 2 C.F.R. 200.1::*

*1. Non-Federal entity;*

*2. Foreign organization;*

*3. Foreign public entity;*

*4. Domestic for-profit organization; and*

*5. Federal agency.*

*Subaward has the meaning given in 2 C.F.R. 200.1.*

*Subrecipient has the meaning given in 2 C.F.R. 200.1.*

**Why this condition:**

The purpose of this standard award term is to ensure government-wide uniformity in establishing a universal unique entity identifier for federal financial assistance applicants, as well as recipients and their direct subrecipients (if applicable) and to establish the SAM as the repository for standard information about applicants and recipients.

**What you should do:**

At the time of award application, your organization was required to provide its SAM unique entity identifier and be registered in the SAM database.

COPS-AR-0793

Your organization should continue to use the same unique entity identifier provided in your award application and update, as needed, the information associated with that unique entity identifier. If your organization is authorized to make subawards under its award, your organization may make subawards only to entities that have unique entity identifiers.

Your organization must maintain active registration and current information in the SAM until you submit the final financial report or receive the final payment under your award, whichever is later. **Your organization must review and update its SAM information at least once per year to maintain an active registration status.** For more information about SAM registration, please visit **www.sam.gov**.

## 22. Additional High-Risk Recipient Requirements

**Condition:**

*The recipient agrees to comply with any additional requirements that may be imposed during the award performance period if the awarding agency determines that the recipient is a high-risk recipient. 2 C.F.R. § 200.208.*

**Why this condition:**

In accordance with 2 C.F.R. § 200.208, the DOJ may impose additional requirements specific to your award, as needed, when it determines that there is unsatisfactory performance, financial or administrative instability, noncompliance with award terms and conditions, or other lack of responsibility risk factors. In such cases, the DOJ may impose special conditions or restrictions that may include requiring the production of documentation, financial award administration training, on-site monitoring, prior approval for expenditure of funds, quarterly progress reports, separate bank accounts, or other requirements.

**What you should do:**

In order to obtain a COPS Office award, recipients must agree to comply with any additional requirements that may be imposed during the award performance period if the awarding agency determines that the recipient is a high-risk recipient.

## 23. Supplementing, Not Supplanting

**Condition:**

*State, local, and tribal government recipients must use award funds to supplement, and not supplant, state, local, or Bureau of Indian Affairs (BIA) funds that are already committed or otherwise would have been committed for award purposes (hiring, training, purchases, and/or activities) during the award period. In other words, state, local, and tribal government recipients may not use COPS Office funds to supplant (replace) state, local, or BIA funds that would have been dedicated to the COPS Office-funded item(s) in the absence of the COPS Office award. 34 U.S.C. § 10384(a).*

**Why this condition:**

The COPS Office statutory nonsupplanting requirement mandates that award funds not be used to replace state or local funds (or, for tribal recipients, BIA funds) that would, in the absence of federal aid, be made available for the award purposes.

**What you should do:**

For state, local, and tribal recipients, CPD funds may not be used to pay for any item or cost funded under the award (equipment, personnel, training, etc.) if that item or cost was otherwise budgeted with state, local, or BIA funds. In addition, recipients may not reallocate state, local, or BIA funds already budgeted for award purposes as a result of receiving CPD award funds. If you have questions concerning this award term and how it pertains to your project budget, please contact your COPS Office Program Manager.

## 24. Sole Source Justification

**Condition:**

*Recipients who have been awarded funding for the procurement of an item (or group of items) or service in excess of $250,000 and who plan to seek approval for use of a noncompetitive procurement process must provide a written sole source justification to the COPS Office for approval prior to obligating, expending, or drawing down award funds for that item or service. 2 C.F.R. § 200.325(b)(2).*

**Why this condition:**

In general, recipients are required to procure funded items through open and free competition. However, in some instances, recipients may have already determined that competition is not feasible.

**What you should do:**

If you have received an award for an item (or group of items) or service in excess of $250,000 and have already determined that the award of a contract through a competitive process is infeasible, you must provide a justification in JustGrants that explains why it is necessary to contract noncompetitively (see ***Grant Award Modification Job Aid Reference Guide***).

The initial determination that competition is not feasible can be made if one of the following circumstances exists:

- Competition is determined inadequate after soliciting several sources.
- The COPS Office authorizes noncompetitive proposals in response to a written request from the recipient.
- The procurement transaction can only be fulfilled from a single source.
- The public exigency or emergency for the requirement will not permit a delay resulting from providing public notice of a competitive solicitation.

The COPS Office will review your request and the supporting information that you provide and will make a determination as to whether or not an exception can be made to the general rule regarding competition. If submitting a sole source justification request to the COPS Office, please use the format described in the *Sole Source Justification* fact sheet which can be found at the **Award Management Materials web page**.

## 25. Modifications

**Condition:**

*Award modifications are evaluated on a case-by-case basis in accordance with 2 C.F.R. § 200.308(i). For federal awards in excess of $250,000, any modification request involving the reallocation of funding between budget categories that exceed or are expected to exceed 10 percent (10%) of the total approved budget requires prior*

COPS-AR-0795

*written approval by the COPS Office. Regardless of the federal award amount or budget modification percentage, any reallocation of funding is limited to approved budget categories. In addition, any budget modification that changes the scope of the project requires prior written approval by the COPS Office.*

**Why this condition:**

The COPS Office realizes that organizations may need to reprogram award funds. Acceptable examples of such award modifications include purchasing additional equipment using cost-savings from approved items or purchasing a different type of equipment due to changing needs. Under federal regulations, you are required to expend federal funds only as approved in the award package. Requests to change or alter an award that meet certain threshold requirements must be submitted to the COPS Office for written approval prior to their purchase or implementation. Without prior written approval, you must continue to implement your award as it was originally outlined and accepted by your organization. Reprogrammed funds must be allocated for items covered within the original scope of the award. Please be advised that reprogramming requests for unallowable costs will not be approved.

Your organization may reprogram its budget up to an aggregate (over the course of your project) of 10 percent of the total project cost without prior written approval from the COPS Office. However, you should notify your COPS Office Program Manager of any reprogramming that falls below the 10 percent threshold as well. For awards in excess of the simplified acquisition threshold (currently $250,000), any reprogramming of funds that totals an aggregate of 10 percent or more of the approved budget requires prior written approval from the COPS Office.

**What you should do:**

You are required to notify your COPS Office Program Manager if you determine that your organization will need to reprogram award funds. If your modification exceeds an aggregated (over the course of your project) 10 percent of your overall award, your organization must log into JustGrants. Please contact your COPS Office Program Manager for further direction on any additional requirements that may apply to your modification request. The COPS Office will then evaluate your request and notify your organization of our decision in writing. Implementation of the modified award budget may begin following written approval from the COPS Office. Please note that modification approvals for active awards will be accompanied by a modified financial section reflecting the approved changes.

## 26. Evaluations

**Condition:**

*The COPS Office may conduct monitoring or sponsor national evaluations of its award programs. The recipient agrees to cooperate with the monitors and evaluators. 34 U.S.C. § 10385(b).*

**Why this condition:**

The Public Safety Partnership and Community Policing Act of 1994 states that evaluations of the program may be carried out or commissioned by the Attorney General for the furtherance of the purposes of the Act. The COPS Office conducts evaluations to determine which programs are working, how programs may be improved, and why certain programs are more successful than others. Specifically, the COPS Office may assess the way in which your organization implements its CPD award. COPS Office staff or evaluators may study the effectiveness of funded programs, projects, and activities. Evaluators may collect information about the programs' effect on crime, victims

of crime, and the quality of life in communities. In addition, they may ask questions about the challenges encountered during project implementation, how residents feel about community policing, and how police feel about their work. This information will be useful to other communities and police agencies across the country.

**What you should do:**

When evaluations are undertaken, you may be contacted in writing with specific requests for information. In general, evaluators may need to speak with individuals in your organization, observe activities, and obtain written reports about and from your organization. You will be asked to facilitate any site visits and information-gathering activities. In addition, you will be asked to provide accurate and timely information about your award activities. You should fully comply with any requests made regarding these evaluations.

*27. Allowable Costs*

**Condition:**

*The funding under this award is for the payment of approved costs for program-specific purposes. The allowable costs approved for your agency's award are limited to those listed in your agency's award package. In accordance with 2 C.F.R. § 200.400(g), the recipient or subrecipient must not earn or keep any profit resulting from the award. Your agency may not use award funds for any costs not identified as allowable in the award package.*

**Why this condition:**

Funding may only be used to pay for items and services approved by the COPS Office as reflected in the financial information section of the award package. FY 2024 CPD funds must be used as outlined in the approved cooperative agreement and budget. Please note that in accordance with 2 C.F.R. § 200.101(c), the COPS Office applies the cost principles set forth in 2 C.F.R. Part 200, Subpart E to for-profit organizations. In addition, in accordance with 2 C.F.R. § 200.400(g), the recipient or subrecipient must not earn or keep any profit resulting from the award.

To be eligible for payment under this award, the purchase of approved items must be made on or after the award start date and comply with the guidelines described in the section "Accessing Award Funds" in this manual. The section "Financial Record Maintenance" outlines the types of records you must keep to document that you followed this award condition. Purchases must also reflect the costs that were approved in the award package.

**What you should do:**

Refer to your award package for the list of approved allowable cost categories. Listed below are the budget categories that may appear. If your organization's operating budget categories differ from those approved in the award package, your organization should maintain a cross-reference to clearly identify where the funds were budgeted. As long as funds are spent during the award period on project costs that were documented in your application's budget summary and approved by the COPS Office through the issuance of the award package, this award condition will be satisfied. The award number should be included on all budgetary documentation including purchase orders, receipts, and other documentation. All recipients should keep and maintain the most recent, approved version of their 2024 CPD application and award package for future reference.

COPS-AR-0797

*Civilian Personnel (salaries and benefits)*

Personnel expenses may be reimbursed for project activities that take place on or after the award start date. In addition, a position's salary must be reasonable for the services rendered and must be paid to a person appointed under the law or rules governing hiring by your organization. Salary payments must be based on payroll records. Time and attendance records or the equivalent must support payroll records. A recipient may not use federal funds to pay total cash compensation to any employee of the recipient at a rate that exceeds 110 percent of the maximum annual salary payable to a member of the Federal Government's Senior Executive Service (SES) at an agency with a Certified SES Performance Appraisal System for that year. The 2024 salary table for SES employees is available at the Office of Personnel Management website: **https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/**.

If any civilian personnel are employed on a part-time or temporary basis, your organization must specify the percentage of time that each person is working solely on the project identified in your organization's CPD proposal. Fringe benefits may be paid if they are part of a reasonable compensation package offered to your employees. Particular items of fringe benefits must fall within the categories authorized by the COPS Office. Authorized fringe benefits include FICA, Social Security, health insurance, life insurance, vacation, sick leave, retirement, worker's compensation, and unemployment insurance.

*Travel*

Travel costs for transportation, lodging, meals, temporary dependent care, and incidental expenses incurred by personnel while on official business, such as attendance at an award-related meeting or conference when travel is further than 50 miles from program location, are allowable with prior approval from the COPS Office. In accordance with 2 C.F.R. § 200.475, travel costs for official business directly related to the award will be reimbursed based upon the recipient's written travel reimbursement policies if the costs are reasonable and allocable under the project. In the absence of an acceptable written policy regarding travel costs, allowable rates and amounts established by the U.S. General Services Administration (GSA) for the relevant geographic area will apply. The current GSA travel policy and per diem rates can be found at **www.gsa.gov**.

Allowable airfare costs will be reimbursed based upon the least expensive unrestricted accommodations class offered by commercial airlines—for example, lowest discount commercial airfare, the Federal Government contract airfare (if authorized and available), or standard coach airfare—unless otherwise authorized in advance by the COPS Office.

Temporary dependent care costs above and beyond regular dependent care that directly results from conference travels are allowable as long as the costs incurred (1) are a direct result of the individual's travel for the federal award; (2) are consistent with the recipient's documented travel policy for all entity travel; and (3) are only temporary during the travel period.

The CPD program will fund award-related travel costs for the recipient agency or other (nonrecipient) individuals to attend training and technical assistance conferences, seminars, or classes or to visit a site specified in the application. Allowable award-related travel costs that were included in the application have been approved by the COPS Office as part of the CPD award and final budget. Your organization should keep timely and accurate records of all travel expenses. If at any time these costs change, you should immediately contact your COPS Office Program Manager.

COPS-AR-0798

*Equipment*

To be eligible for payment under this award, the purchase of equipment and technology must occur on or after the award start date, the items must be those specifically applied for and approved by the COPS Office, and they must meet the guidelines described in 2 C.F.R. Part 200, Subpart E – Cost Principles. For recipients that are state, local, or tribal government entities, award-funded equipment and technology must supplement, not supplant (replace), locally funded items that would have been funded even in the absence of this award. Funds currently budgeted or obligated for the purchase of equipment and technology may not be reallocated to other purposes or reimbursed upon receiving the CPD award. Organizations should establish practices to receive, label, inventory, and track the location of all purchases made for award-funded equipment and/or technology.

*Supplies*

All supplies must be solely used for the project identified in your project proposal. Reimbursements for office supplies that are consumed by routine administrative purposes instead of project-related activities are prohibited. Items must meet the guidelines described in 2 C.F.R. Part 200, Subpart E – Cost Principles. For any training awards, the COPS Office allows the purchase of flash drives or USB devices to distribute training materials with approval prior to purchasing.

*Sub-awards/Procurement Contracts*

The applicant should distinguish clearly between subawards and contracts in allocating any funds to other entities. Pursuant to 2 C.F.R. § 200.331, a subaward is for the purpose of carrying out a portion of the federal award, and a contract is for the purpose of obtaining goods and services for the recipient's own use. The substance of the relationship is more important than the form of the agreement in determining whether the recipient of the pass-through funds is a subrecipient or a contractor. Keep in mind that the awarding and monitoring of contracts must follow documented procurement procedures, including full and open competition, pursuant to the procurement standards in 2 C.F.R. §§ 200.318- 200.327, and the issuance of subawards must meet the requirements of 2 C.F.R. § 200.332.

Any recipient of an award will be responsible for monitoring subawards and contracts in accordance with all applicable statutes, regulations, and guidelines. Primary recipients will be responsible for oversight of subrecipient or partner spending and monitoring specific performance measures and outcomes attributable to the use of COPS Office funds.

All sole-source procurements of goods and services (those not awarded competitively) in excess of $250,000 require prior approval from the COPS Office. Please see the *Sole Source Justification* fact sheet, which can be found at the **Award Management Materials web page**.

Consultant expenses include goods or services that directly contribute to the implementation or enhancement of the project. The use of a consultant should be more economical than direct employment. Compensation for individual consultant services procured under a COPS Office award must be reasonable and allocable in accordance with Office of Management and Budget (OMB) cost principles, and consistent with that paid for similar services in the marketplace. The services should be commensurate with the rate or salary paid by the primary employer.

Unless otherwise approved by the COPS Office, independent consultant rates will be approved based on the salary a consultant receives from his or her primary employer, as applicable, up to $650 per day (or $81.25 per hour). Please note that this does not mean that the rate can or should be as high as $650 for all consultants. If individuals

COPS-AR-0799

receive fringe benefits from their primary employer, such fringe benefit costs should not be included in the calculation of consultant rates. A consultant rate justification will need to be submitted for review and approval to the COPS Office for any consultants paid more than $650 per day prior to incurring any costs. Determinations of approval will be made on a case-by-case basis. Please see the *Consultant Rate Justification* fact sheet, which can be found at the **Award Management Materials web page**.

Consultant travel costs follow the same guidelines as the "Travel" category but should be costs associated with consultant travel. These costs should not be reflected in the "Civilian Personnel" or "Travel" categories.

All other consultant-related expenses should be included in this section such as supply and equipment requests. The same guidelines as previously stated in the above sections will apply.

If an applicant proposes a program or activity that would deliver services or benefits to individuals, the costs of taking reasonable steps to provide meaningful access to those services or benefits for individuals with limited English proficiency may be allowable. Reasonable steps to provide meaningful access to services or benefits may include interpretation or translation services, where appropriate. For additional information, see the "Civil Rights Compliance."

*Other costs*

Items that do not conform to any of the category descriptions specific above but that have a direct correlation to the overall success of a recipient's project objectives and are necessary for the project to reach full implementation will be considered on a case-by-case basis by the COPS Office.

If at any time you are unsure if an item is considered allowable or unallowable, please contact your COPS Office Program Manager for further assistance.

*Indirect costs*

Indirect (facilities and administrative, or F&A) costs are costs that are incurred for a common or joint purpose benefiting more than one cost objective and not readily assignable to a particular project but are necessary to the operation of the agency and the performance of the project. Indirect costs are allowable for this program, but must adhere to the standards set forth in the applicable Office of Management and Budget (OMB) guidance as stated in 2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards) as adopted by the U.S. Department of Justice in 2 C.F.R. § 2800.101. Examples of indirect costs include those incurred for facility operation and maintenance, depreciation, and administrative salaries.

Indirect cost rates are federally negotiated and approved rates that are based on audited and documented expenses approved to be included within an indirect cost rate. It is important that your organization carefully track and update its indirect cost rate during the COPS Office award period.

The recipient understands that if they were approved for indirect costs based on an expired indirect cost rate at the time of application, a special condition may have been added to the award prohibiting the drawdown of funds for reimbursement of indirect costs until a current indirect cost rate has been determined by their cognizant agency and a copy of the "new" approved and signed Indirect Cost Negotiation Agreement has been submitted to the COPS Office.

COPS-AR-0800

The recipient understands that indirect costs may typically only be requested at the time of application. Transferring funds into or out of the indirect cost category is not allowable without prior approval from the COPS Office. A budget modification is required.

If your organization's approved indirect cost rate expires during the award period, a current approved rate must be submitted to the COPS Office in order to continue to draw down award funding for indirect costs. Your expired rate must be renegotiated or extended by your cognizant federal agency. An approved indirect cost rate may be extended one time for up to four years, and once the cognizant federal agency has approved your extension, you must abide by that rate for the agreed-upon time period. At the end of the extension period, you must renegotiate a new indirect cost rate. Your organization must advise the COPS Office in writing of any changes to your approved indirect cost rate during the award period and must request a budget modification with the COPS Office to reflect any rate change.

In addition, if a provisional indirect cost rate is in effect at award closeout, your organization shall proceed with closeout, but you will need to complete an expenditure analysis upon receipt of the approved final indirect cost rate to determine if an adjustment is necessary. If your organization drew down excess COPS Office funding for indirect costs, then your organization must return the overpayment to the COPS Office and submit a revised Federal Financial Report (SF-425). If your organization incurred additional indirect costs, then your organization may request a budget modification if the award is still open and award funds are available. If your organization returns or draws down COPS Office funding, then your organization will need to submit a revised final Federal Financial Report (SF-425).

Please see the *Indirect Costs* fact sheet*,* which can be found at the **Award Management Materials web page**.

*Please be advised that recipients may not use COPS Office funding for the same item or service also funded by another U.S. Department of Justice award.*

Please also see "Duplicative Funding" condition.

## *28. Extensions*

**Condition:**

*Recipients may request an extension of the award period to receive additional time to implement their award program. Such extensions do not provide additional funding. Only those recipients that can provide a reasonable justification for delays will be granted no-cost extensions. Extension requests must be received prior to the end date of the award.* 2 C.F.R. §§ 200.308(f)(10) and 200.309.

**Why this condition:**

Under federal regulations, requests to extend the award period require prior written approval from the COPS Office. Without an approved extension, your organization is not permitted to draw down federal funding for costs incurred beyond the official award end date. When justified, the COPS Office will seek to accommodate reasonable requests for no-cost time extensions to fully implement the COPS Office award.

COPS-AR-0801

**What you should do:**

The COPS Office will contact your organization during the last quarter of the award period to determine whether a no-cost time extension is needed. Requests to extend the award period must be received by the COPS Office before the official award end date. Failure to submit a request for a no-cost time extension before the award end date may result in the immediate deobligation of any remaining award funds. Please note that the project period of performance will be extended, if necessary, until the deliverable is considered final. If the award is set to expire, prior to the final approval of the deliverable, a no-cost extension will be executed for a reasonable amount of time for the recipient to complete the final deliverable.

## 29. Computer Network Requirement

**Condition:**

*The recipient understands and agrees that no award funds may be used to maintain or establish a computer network unless such network blocks the viewing, downloading, and exchanging of pornography. Nothing in this requirement limits the use of funds necessary for any federal, state, tribal, or local law enforcement agency or any other entity carrying out criminal investigations, prosecution, or adjudication activities. Consolidated Appropriations Act, 2024, Public Law 118–42, Division C, Title V, Section 527.*

**Why this condition:**

The Appropriations Act prohibits the use of federal funds to maintain or establish a computer network that does not block the viewing, downloading, and exchanging of pornography. This provision protects the public interest in the proper management and use of federal funds.

**What you should do:**

The recipient must not use award funds to maintain or establish a computer network unless the network blocks pornography. This does not limit the use of funds for criminal investigations, prosecution, or adjudication activities.

## 30. Public Release Information

**Condition:**

*The recipient agrees to submit one copy of all reports and proposed publications resulting from this award ninety (90) days prior to public release. Any publications (written, curricula, visual, sound, reports, or websites) or computer programs, whether or not published at government expense, shall contain the following statement:*

> *"This project was supported, in whole or in part, by federal award number YYYY-XX-XXXX awarded to [entity] by the U.S. Department of Justice, Office of Community Oriented Policing Services. The opinions contained herein are those of the author(s) or contributor(s) and do not necessarily represent the official position or policies of the U.S. Department of Justice. References to specific individuals, agencies, companies, products, or services should not be considered an endorsement by the author(s) or the U.S. Department of Justice. Rather, the references are illustrations to supplement discussion of the issues.*

> *The internet references cited in this publication were valid as of the date of publication. Given that URLs and websites are in constant flux, neither the author(s) nor the COPS Office can vouch for their current validity."*

2024 COPS Office Community Policing Development (CPD) Program Award Owner's Manual

**Why this condition:**

The COPS Office wants to ensure the quality, objectivity, utility, and integrity of information in funded projects that are disseminated to the public. However, award-funded reports and publications are not works of authorship by the Federal Government and should not be construed to reflect the official policy or position of the U.S. Department of Justice.

**What you should do:**

Ensure that all publications developed under your award contain the required statement listed above.

## 31. Paperwork Reduction Act Clearance and Privacy Act Review

**Condition:**

*The recipient agrees, if required, to submit all surveys, interview protocols, and other information collections to the COPS Office for submission to the Office of Management and Budget (OMB) for clearance under the Paperwork Reduction Act (PRA). Before submission to OMB, all information collections that request personally identifiable information must be reviewed by the COPS Office to ensure compliance with the Privacy Act. The Privacy Act compliance review and the PRA clearance process may take several months to complete. 44 U.S.C. §§ 3501-3520 and 5 U.S.C. § 552a.*

**Why this condition:**

The purpose of the Paperwork Reduction Act is to reduce, minimize, and control paperwork burdens on the public while maximizing the practical utility and public benefit of information created, collected, disclosed, maintained, used, shared, and disseminated by or for the Federal Government. See 5 C.F.R. § 1320.1. In addition, the Privacy Act establishes a "code of fair information practices" that regulates the collection, maintenance, use, and disclosure of personally identifiable records. 5 U.S.C. § 552a.

A collection of information undertaken by a recipient is considered to be conducted or sponsored by a federal agency only if (1) the recipient is conducting the collection of information at the specific request of the agency, or (2) the terms and conditions of the award require specific approval by the agency of the collection of information or the collection procedures. See 5 C.F.R. § 1320.3(d).

**What you should do:**

When you undertake surveys, interviews, and other methods of information collection in furtherance of the objectives of the award, you should contact your COPS Office Program Manager. The COPS Office Program Manager will inform you whether Office of Management and Budget (OMB) approval of the information collection method is required and of the procedures necessary to obtain this approval. As part of the OMB approval process, a privacy assessment will be completed to determine if an information collection requires a privacy-related notice. OMB approval may take several months to receive, so recipients are advised to allow ample time for the processing of this request.

COPS-AR-0803

*32. Copyright*

**Condition:**

*If applicable, the recipient may copyright any work that is subject to copyright and was developed, or for which ownership was acquired, under this award in accordance with 2 C.F.R. § 200.315(b). The COPS Office reserves a royalty-free, nonexclusive and irrevocable license to reproduce, publish, or otherwise use the work, in whole or in part (including create derivative works), for Federal Government purposes, and to authorize others to do so. The COPS Office also reserves the right, at its discretion, not to publish deliverables and other materials developed under this award as a U.S. Department of Justice resource.*

*Products and deliverables developed with award funds and published as a U.S. Department of Justice resource will contain the following copyright notice:*

> *"This resource was developed under a federal award and may be subject to copyright. The U.S. Department of Justice reserves a royalty-free, nonexclusive, and irrevocable license to reproduce, publish, or otherwise use the work for Federal Government purposes and to authorize others to do so. This resource may be freely distributed and used for noncommercial and educational purposes only."*

**Why this condition:**

U.S. Department of Justice regulations allow the recipient of a CPD award to copyright any work that is subject to copyright and was developed, or for which ownership was purchased, under an award.

As a Federal Government agency whose activities include producing and disseminating law enforcement materials to advance public safety through community policing across the nation, the COPS Office has an interest in making your deliverables and products widely available and accessible to the public. The COPS Office may make any work that was developed or purchased under this award publicly available by any means without restriction, including through designated public access repositories, a U.S. Department of Justice website, social media account, a hard copy, or in electronic form. The COPS Office also reserves the right, at its discretion, to not publish deliverables and other materials (e.g., reports, publications, manuals, and training curricula) developed under this award as a U.S. Department of Justice resource.

**What you should do:**

The recipient is responsible for acquiring the rights, and ensuring that its subrecipients/contractors/authors acquire the rights, including the payment of required fees, to use copyrighted material for inclusion in deliverables that are developed under this award. All licensing, publishing, or similar agreements with a copyright holder, publisher, or other relevant party must include provisions giving the COPS Office a royalty-free, nonexclusive, and irrevocable license to reproduce, publish, or otherwise use the work in whole or in part (including create derivative works) for Federal Government purposes and to authorize others to do so. If the recipient retains a contractor or consultant to author or coauthor a work under this award, the recipient must ensure that there is a written agreement with the contractor or consultant that explicitly (1) assigns and transfers all rights to the copyright in the work to the recipient for the full term of copyright and, if a copyright transfer is not feasible, (2) awards the COPS Office the same royalty-free, nonexclusive, and irrevocable license to use, and authorize others to use, the work for Federal Government purposes.

COPS-AR-0804

The U.S. Department of Justice is a nonexclusive licensee to copyrighted work that was developed, or for which ownership was purchased, under this award. Only the legal or beneficial owner of an exclusive right under a copyright is entitled to institute an infringement action. The recipient should therefore consult its own legal counsel with any copyright infringement questions. For more information about registering a copyright, please visit the U.S. Copyright Office at **www.copyright.gov**.

## 33. Human Subjects Research

**Condition:**

*The recipient agrees to comply with the provisions of the U.S. Department of Justice's common rule regarding Protection of Human Subjects, 28 C.F.R. Part 46, prior to the expenditure of Federal funds to perform such activities, if applicable. The recipient also agrees to comply with 28 C.F.R. Part 22 regarding the safeguarding of individually identifiable information collected from research participants.*

**Why this condition:**

Protections for human subjects of research are required under U.S. Department of Justice regulations at 28 C.F.R. Part 46. This regulation constitutes the Federal Policy (Common Rule) for the Protection of Human Subjects. Each institution engaged in (nonexempt) COPS Office–supported human subjects research must provide a written assurance of compliance, satisfactory to the COPS Office, that it will comply with the U.S. Department of Justice human subjects regulations.

**What you should do:**

If any part of your CPD project contains research or statistical activities which involve human subjects that are not covered by an exemption set forth in 28 C.F.R. Part 46.101(b), you must comply with the requirements in the U.S. Department of Justice's common rule regarding the Protection of Human Subjects, 28 C.F.R. Part 46, including, but not limited to Institutional Review Board (IRB) approval and the appropriate assurances prior to the expenditure of federal funds to perform such activities. By signing the award document, you also agree to comply with 28 C.F.R. Part 22 regarding the confidentiality of identifiable research and statistical information including safeguarding of identifiable information collected from research participants.

## 34. Domestic Preferences for Procurements

**Condition:**

*Recipient agrees that it, and its subrecipients, to the greatest extent practicable, will provide a preference for the purchase, acquisition, or use of goods, products, and materials produced in, and services offered in, the United States. 2. C.F.R. § 200.322 and Executive Order 14005, Ensuring the Future is Made in All of America by All of America's Worker, January 25, 2021.*

**Why this condition:**

It is the policy of the United States Government to use federal funds to buy American whenever possible. This condition promotes domestic preferences in procurements under federal awards.

COPS-AR-0805

2024 COPS Office Community Policing Development (CPD) Program Award Owner's Manual

**What you should do:**

Ensure that your organization provides a preference for American goods and services funded under your award to the greatest extent practicable and consistent with applicable law.

## 35. Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment

**Condition:**

*Recipient agrees that it, and its subrecipients, will not use award funds to extend, renew, or enter into any contract to procure or obtain any covered telecommunication and video surveillance services or equipment as described in 2 CFR §200.216. Covered services and equipment include telecommunications or video surveillance services or equipment produced or provided by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities); Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities); or an entity that the Secretary of Defense, in consultation with the Director of the National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an entity owned or controlled by, or otherwise connected to, the government of China. The use of award funds on covered telecommunications or video surveillance services or equipment are unallowable. 2. C.F.R. § § 200.216 & 471. See also Section 889 of the John S. McCain National Defense Authorization Act of Fiscal Year 2019, Public Law 115–232.*

**Why this condition:**

Section 889 of the John S. McCain National Defense Authorization Act of Fiscal Year 2019, Public Law 115–232, as implemented by 2 C.F.R. §200.216, prohibits the use of award funds to extend, renew, or enter into any contract to procure or obtain any covered telecommunication and video surveillance services or equipment as explained in the condition.

**What you should do:**

Ensure that your organization does not use award funds to extend, renew, or enter into any contract to procure or obtain any covered telecommunication and video surveillance services or equipment.

## 36. Travel Costs

**Condition:**

*Travel costs for transportation, lodging and subsistence, and related items are allowable with prior approval from the COPS Office. Payment for allowable travel costs will be in accordance with 2 C.F.R. § 200.475.*

**Why this condition:**

CPD funding will cover award-related travel costs for the recipient agency or other (nonrecipient) individuals to attend training and technical assistance conferences, seminars, or classes or to visit a site specified in the original application. Allowable expenses for award-related lodging, meals, temporary dependent care, and incidental expenses that were included in the application were approved by the COPS Office as part of your organization's CPD award and final budget. For more information, please refer to the award condition on "Allowable Costs."

**What you should do:**

Your organization should refer to your JustGrants approved budget for a list of approved travel costs and use CPD funds only for approved travel costs incurred during the award period. In addition, your organization should keep timely and accurate records of all travel expenses. If at any time these costs change, you should immediately contact your COPS Office Program Manager.

## 37. Information Data Breach

**Condition:**

*The recipient (and any subrecipient at any tier) must have written procedures in place to respond in the event of an actual or imminent breach (as defined in OMB M-17-12) if it (or a subrecipient)-- 1) creates, collects, uses, processes, stores, maintains, disseminates, discloses, or disposes of personally identifiable information (PII) (as defined in 2 C.F.R. 200.1) within the scope of a COPS Office grant-funded program or activity, or 2) uses or operates a Federal information system (as defined in OMB Circular A-130). The recipient's breach procedures must include a requirement to report actual or imminent breach of PII to the recipient's COPS Office Program Manager no later than 24 hours after an occurrence of an actual breach, or the detection of an imminent breach. OMB Memorandum M-17-12, Preparing for and Responding to a Breach of Personally Identifiable Information.*

**Why this condition:**

OMB requires recipients and subrecipients to establish written procedures to respond to an actual breach, or the detection of an imminent breach involving personally identifiable information (PII), if within the scope of their award, they will create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII or will use or operate a Federal information system. Recipient breach procedures must include a requirement to notify the Federal awarding agency in the event of such a breach.

**What you should do:**

If any part of your COPS Office award involves your agency creating, collecting, using, processing, storing, maintaining, disseminating, disclosing, or disposing of PII, or the use or operation of a Federal information system, your agency must have written procedures in place to respond to an actual breach, or the detection of an imminent breach involving personally identifiable information (PII), including notification to your COPS Office Program Manager no later than 24 hours following such breach.

Written procedures should promote cooperation and the free exchange of information with the COPS Office, as needed, to properly escalate, refer, and respond to a breach.

## 38. Training Guiding Principles
**Condition:**

*Any training or training materials developed or delivered with award funding provided by the Office of Community Oriented Policing Services is to adhere to the following guiding principles–*

1. *Trainings must comply with applicable law.*

   *In developing and conducting training under the award, recipients (and any subrecipients) shall not violate the Constitution or any federal law, including any law prohibiting discrimination.*

2. *The content of trainings and training materials must be accurate, appropriately tailored, and focused.*

   *The content of training programs must be accurate, useful to those being trained, and well matched to the program's stated objectives. Training materials used or distributed at trainings must be accurate, relevant, and consistent with these guiding principles.*

3. *Trainers must be well-qualified and skilled in presenting the subject area.*

   *Trainers must possess the subject-matter knowledge and the subject-specific training experience necessary to meet the objectives of the training. In selecting or retaining a trainer, recipients (or subrecipients) should consider such factors as the trainer's resume and written materials, interviews with the trainer, observation of other trainings conducted by the trainer, feedback from other entities with which the trainer has worked, training participant feedback and evaluations, and the general reputation of the trainer.*

4. *Trainers must demonstrate the highest standards of professionalism.*

   *Trainers must comport themselves with professionalism. While trainings will necessarily entail varying teaching styles, techniques, and degrees of formality, as appropriate to the particular training goal, professionalism demands that trainers instruct in the manner that best communicates the subject matter while conveying respect for all.*

**Why this condition:**

This condition sets forth the Training Guiding Principles for the development and delivery of training and training materials funded under a COPS Office award to ensure that such deliverables meet the highest standards for compliance with applicable law, content accuracy and effectiveness, and skilled and professional trainers.

**What you should do:**

Recipients and subrecipients must ensure that any training or training materials supported with COPS Office award funding adhere to the Training Guiding Principles, which are incorporated into the COPS Office training guides. This includes, but is not limited to, the following: (1) **In-Person Curriculum Standards and Review Process Guide**; (2) **Instructor Quality Assurance Guide**; (3) **On-Demand Online Curriculum Process Guide**; and (4) **Video Development Process Guide**. To access these guides and other helpful resources, please visit **TRAINING | COPS OFFICE (usdoj.gov)**.

# II. Accessing Award Funds

This section provides answers to payment-related questions, including all the information needed to provide access to request payments from your COPS Office awards. For assistance with financial management and award administration, please contact the COPS Office Response Center at **AskCOPSRC@usdoj.gov** or visit our website at **https://cops.usdoj.gov**.

## Payment method

### What method of payment is used?

There is currently one payment system available for accessing federal award funds - The Automatic Standard Application for Payments (ASAP) which is the shared services payment system used by the Department of the Treasury. Through this platform, recipients of DOJ grant awards and other forms of federal assistance will be able to request and receive payments for grants managed through JustGrants.

To learn more about the ASAP registration process, please see the **_ASAP Registration Checklist_**.

If you have questions or need help using ASAP, you can contact the OCFO Customer Service Center by email at **Ask.OCFO@usdoj.gov** or by phone at 800-458-0786.

### When should Federal Financial Reports be filed?

After your agency accepts the award, under current regulations, you are required to submit quarterly Federal Financial Reports (FFRs) using a Standard Form 425 (SF-425). This report reflects the actual monies spent and unliquidated obligations incurred by your agency. _You will not be able to make drawdowns from you ASAP account if the SF-425 for the most recent reporting quarter has not been submitted in JustGrants by the deadline date._ Recipients are required to submit their SF-425 reports in the JustGrants portal: **https://justicegrants.usdoj.gov/**

For more information on how to complete and where to submit your quarterly SF-425 report, see the section in this manual titled "Reporting Requirements."

_Filing the Federal Financial Report (SF-425) identifies your federal and local expenditures made during that calendar quarter. However, to receive actual payment, you must request it through ASAP._

The FFR is submitted in JustGrants, and can only be submitted by someone with the role of "Financial Manager." FFRs may be submitted 10 calendar days or less from a reporting period end date until the due date. Once the due date passes, a delinquent report can still be submitted by a Financial Manager. A Financial Manager also has privileges to edit and resubmit FFRs. The most recent Quarterly FFR can be reopened and resubmitted if the due date has not passed. Similarly, a Final FFR can be reopened and resubmitted up to 120 days after the project period end date. You must contact your awarding office to reopen and resubmit a final FFR anytime beyond 120 days after the award end date. Funds are frozen one day after the due date if the report is not submitted. Funds are released once the delinquent FFR is submitted.

# Additional payment questions

## Can we receive advances?

Yes. If you receive funds through electronic transfer, the period allowed is 10 days in advance. In general, the concept of "minimum cash on hand" applies to COPS Office awards. This concept requires that your organization request funds based upon immediate cash disbursement needs. You should time your request for payment to ensure that federal cash on hand is the minimum that you need.

There should be no excess federal award funds on hand, except for advances not exceeding 10 days, as noted above.

The Federal Government has four basic rules regarding advances. Advances can be terminated if the recipient

1.  is unwilling or unable to attain project goals;
2.  maintains excess cash on hand;
3.  does not adhere to the terms and conditions of the award;
4.  fails to submit reliable or timely reports.

## How often can we request reimbursement of costs?

There are no limitations on how often your organization may request reimbursements; however, your reimbursement requests should cover a specific time frame and include only costs that were approved in the award package. As a general guideline, most organizations request reimbursement on a monthly or quarterly basis. Also, please note that a date range for a reimbursement request can only be used once.

## Can we earn interest on our award funds?

For nonfederal entities other than states, payment methods must minimize the time between your drawdown of federal funds and your payment of award costs to avoid earning excess interest on your award funds. You must account for interest earned on advances of federal funds as follows:

*   The Office of Management and Budget (OMB) uniform guidance at 2 C.F.R. § 200.305(b)(12) states that interest earned on federal advance payments deposited in interest-bearing accounts **up to $500 per year** may be retained by the nonfederal entity for administrative expenses.

*   Any interest earned on federal advance payments deposited in interest-bearing accounts that is **in excess of $500 per year** must be remitted annually to the Department of Health and Human Services Payment Management System (PMS) through an electronic medium using either Automated Clearing House (ACH) network or a Fedwire Funds Service payment. For detailed information on remittance, please see appendices for a full text of the electronic medium remittance options. Instructions for returning interest on can be found at **https://pms.psc.gov/grant-recipients/returning-funds-interest.html**.

COPS-AR-0810

- If you do not have access to an electronic medium option, then please make a check payable to "The Department of Health and Human Services" and mail the check to Treasury-approved lockbox: HHS Program Support Center, P.O. Box 530231, Atlanta, GA 30353-0231. (Please allow 4–6 weeks for processing of a payment by check to be applied to the appropriate Payment Management System (PMS) account).

- Please notify your COPS Office Staff Accountant in the COPS Office Finance Business Unit when any interest that is earned is remitted to the Department of Health and Human Services, Payment Management System.

## Matching funds

Under the COPS Office CPD Program, no local match is required. The COPS Office is funding 100 percent of the allowable items approved in your award package. Any organization desiring to contribute additional funds to this project is encouraged to do so by reporting these funds on the SF-425 as a recipient share of expenditures (line 10j).

COPS-AR-0811

# III. Procurement Process

In general, recipients are required to procure funded items through open and free competition when feasible. When conducting a procurement transaction under a Federal award, a State or Indian Tribe must follow the same policies and procedures it uses for procurements with non-Federal funds. If such policies and procedures do not exist, States and Indian Tribes must follow the procurement standards in §§ 200.318 through 200.327. In addition to its own policies and procedures, a State or Indian Tribe must also comply with the procurement standards: §§ 200.321 (Contracting with small and minority businesses, women's business enterprises, veteran-owned businesses, and labor surplus area firms), 200.322 (Domestic preferences for procurement), and 200.323 (Procurement of recovered material) and ensure that every purchase order or other contract includes any clauses required by § 200.327 (Contract provisions). All other recipients and subrecipients, including subrecipients of a State or Indian Tribe, must follow the procurement standards in §§ 200.318 through 200.327. 2 C.F.R. § 200.317.

Consistent with the uniform administrative requirements that prohibit procurement practices that restrict competition, recipients and subrecipients may not discriminate against any person or entity on the basis of a person or entity's status as an "associate of the Federal Government" (or on the basis of a person or entity's status as a parent, affiliate, or subsidiary of an associate of the Federal Government). The term "associate of the Federal Government" means any person or entity engaged or employed (in the past or at present) by or on behalf of the Federal Government as an employee, contractor, subcontractor, award recipient, subrecipient, agent, or otherwise.

As described in the award condition titled "Sole Source Justification," recipients are required to submit a sole source justification (SSJ) request to the COPS Office for noncompetitive procurements in excess of $250,000 prior to purchasing equipment, technology, or services; obligating funding for a contract; or entering into a contract with award funds. If submitting a sole source justification request to the COPS Office, please follow the steps described in the *Sole Source Justification* fact sheet, which can be found at the **Award Management Materials web page**.

If you have any questions regarding the federal requirements that guide procurement procedures, please contact your COPS Office Program Manager.

COPS-AR-0812

# IV. Financial Record Maintenance

Your organization is required to establish and maintain accounting systems and financial records to accurately account for funds awarded and disbursed. These records must include both federal funds and any local funds contributed to this project.

## What accounting systems are required?

Your organization needs to establish and maintain accounting systems and financial records to accurately account for the funds awarded.

As required by 2 C.F.R. § 200.1, 200.302, and 200.303, internal controls and financial management systems must provide reasonable assurance that your organization is managing the Federal award in compliance with the U.S. Constitution, Federal statutes, regulations, and award terms and conditions and provide full accountability for expenditures including but not limited to:

- Transactions are properly recorded and accounted for to prepare reliable financial statements and federal reports and to maintain accountability over assets.

- Transactions are executed in compliance with all applicable federal statutes, regulations, and the award terms and conditions.

- Funds, property, and other assets are safeguarded against loss from unauthorized use or disposition.

## What records must be kept?

Your organization's fiscal control and accounting systems should enable you to make accurate, current, and complete disclosure of the financial activity under your award. Your accounting records should contain information showing expenditures under the award and must be supported by items such as payroll records, time and attendance records, canceled checks, purchase orders, or similar documents.

Your organization must adequately safeguard award funds and make sure that they are used for authorized purposes only. Your organization will be responsible for refunding any unallowable expenses.

## How long must records be kept?

All financial records and supporting documents associated with your award (including payroll, time and attendance records, canceled checks, and purchase orders) must be retained for a period of three years from the date of submission of the final expenditure report as stated in 2 C.F.R § 200.334 (Retention requirements for records).

Your organization should maintain records so that you can identify them by award year or by fiscal year, whichever you find more convenient. If any litigation, claim, negotiation, audit, or other action involving these records has been started before the end of the three-year period, the records should be kept until completion of the action. These records should be easily located and should be properly protected against fire or other damage. *Failure to maintain adequate records to document award expenditures may result in a requirement to repay all federal funds that cannot be supported with appropriate records.*

COPS-AR-0813

## What if we have more than one award?

If your organization has more than one COPS Office award or an award from another federal agency, funds received under one project may not be used to support another project without specific written authorization from the COPS Office, or in the case of an award from another agency, from both awarding agencies. Your accounting systems and financial records must reflect expenditures for each project separately.

## Who may access our records?

Authorized federal representatives, including representatives from the U.S. Department of Justice, the Comptroller General of the United States, the COPS Office, and any entity designated by the COPS Office may access these records for the purposes of conducting audits, site visits, or other examinations.

COPS-AR-0814

# V. Federal Audit Requirements

In addition to oversight by the COPS Office, your award may be subject to an audit by independent examiners. The two primary types of audit are Single Audit Act (SAA) audits and U.S. Department of Justice, Office of the Inspector General (OIG) audits.

## Single Audit Act (SAA) requirements

### What are the regulations governing SAA requirements?

The Single Audit Act (SAA) of 1984 established uniform guidelines for state and local governments , and Indian tribal governments receiving federal financial assistance. The 1984 Act was amended in July 1996, by extending these requirements to all nonprofit recipients of federal financial assistance. The Office of Management and Budget (OMB) issued final guidance for 2 C.F.R. Part 200—Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards (Uniform Guidance) on December 26, 2013. This guidance applies to all federal awards or funding increments awarded on or after December 26, 2014, and provides additional guidelines regarding the implementation of SAA requirements. 2 C.F.R. Part 200, Subpart F – Audit Requirements, available at **https://www.ecfr.gov/current/title-2/subtitle-A/chapter-II/part-200/subpart-F**, establishes the requirements for organizational audits that apply to COPS Office award recipients. Recipients must arrange for the required organization-wide (not award-by-award) audit in accordance with the requirements of Subpart F.

### Who must have an SAA audit?

A recipient that expends $1,000,000 or more during the recipient's fiscal year in federal awards must have a single audit conducted in accordance with 2 C.F.R. § 200.514 (Scope of audit) except when it elects to have a program-specific audit conducted in accordance with 2 C.F.R. § 200.501(c). An auditee may be a recipient, a subrecipient, or a vendor.

SAA audits are required to be conducted annually, unless a state or local government, or Indian tribe is required (by constitution or statute that was in effect on January 1, 1987), to undergo audits less frequently than annually. The primary objective of an SAA audit is to express opinions on the recipient's financial statements, internal controls, major and nonmajor award programs, and compliance with government laws and regulations. Single Audits may also address specific compliance issues with respect to COPS Office award requirements.

In cases of continued inability or unwillingness to have an audit conducted in accordance with this part, federal agencies and pass-through entities must take appropriate action as provided in §200.339. Remedies for noncompliance. See 2 C.F.R. § 200.505.

If the Federal awarding agency or pass-through entity determines that noncompliance cannot be remedied by imposing additional conditions, the Federal awarding agency or pass-through entity may take one or more of the following actions, as appropriate in the circumstances: These sanctions under 2 C.F.R. § 200.339 could include the following:

- Temporarily withholding cash payments pending correction of the deficiency by the nonfederal entity or more severe enforcement action by the federal awarding agency or pass-through entity.

- Disallowing (that is, denying both use of funds and any applicable matching credit for) all or part of the cost of the activity or action not in compliance.

COPS-AR-0815

- Wholly or partly suspending or terminating the federal award.

- Initiating suspension or debarment proceedings as authorized under 2 C.F.R. part 180 and federal awarding agency regulations (or in the case of a pass-through entity, recommending such a proceeding be initiated by a federal awarding agency).

- Withholding further federal awards for the project or program.

- Taking other remedies that may be legally available.

**Your SAA reports should not be sent to the COPS Office.**

Your SAA reports should not be sent to the COPS Office. If the U.S. Department of Justice is your cognizant federal agency (see the Glossary of Terms in the appendices), they should be sent to the Federal Audit Clearinghouse at **https://www.fac.gov**.

The U.S. Department of Justice, Office of Justice Programs (OJP) Office of Audit Assessment and Management (OAAM) serves as the liaison between recipients and auditors in the conduct of resolving and closing SAA audits. Questions and comments regarding SAA audits may contact the OJP Customer Service Center at 800-458-0786.

# Office of Inspector General (OIG) recipient audits

## What is the role of the OIG for award audits?

The OIG is a separate component of the U.S. Department of Justice and is independent of the COPS Office. The primary objective of OIG recipient audits is to assess compliance with award terms and conditions. OIG audits are designed to prevent fraud, waste, and abuse of federal funds. The OIG audit process promotes efficiency and effectiveness in the administration and implementation of awards by evaluating compliance with the terms and conditions of awards.

## How are COPS Office awards selected for an OIG audit?

The OIG randomly selects awards to be audited or may conduct a COPS Office recipient audit in response to a referral that the OIG believes warrants further evaluation. The OIG also surveys DOJ award-making agencies on an annual basis to solicit input on suggested audit areas for the upcoming fiscal year. In most instances, however, the OIG generally selects awards to be audited based on a number of factors, including the geographical distribution of awards funded, award amount, population served, award status (active and expired), and type of award (hiring and non-hiring). As such, the fact that a recipient has been selected for an OIG audit is not necessarily indicative of a suspected concern or problem area.

## What are the steps in an OIG audit?

The COPS Office Grant Monitoring Division's Audit Liaison Section serves as the liaison between recipients and the OIG's Audit Division, which conducts the audit. The OIG steps in the audit process will determine the interactions between the OIG, the recipient, and the COPS Office Grant Monitoring Division Audit Liaison Section:

- **Call for award data.** The OIG requests award documentation from the COPS Office.

- **Entrance conference.** The OIG schedules to meet with the recipient to gather documentation and conduct audit.

- **Draft audit report.** The OIG reviews documentation and presents initial recommendations (findings) to the recipient and copies the COPS Office. The COPS Office interacts with the recipient to coordinate any repayments and/or policy or procedure documents to be submitted to the OIG before release of the Final Audit Report.

- **Final audit report.** The OIG has completed its direct interaction with the recipient. The COPS Office directs the recipient to formulate a Corrective Action Plan to address recommendations (findings). As each recommendation is successfully addressed by the recipient, the COPS Office requests closure on the recommendation.

- **Closing the audit.** When all recommendations have been closed, the COPS Office requests closure on the audit from the OIG and notifies the recipient that the audit is closed.

If you have any questions regarding an OIG audit, please contact the COPS Office Grant Monitoring Division's Audit Liaison Section via the COPS Office Response Center at **AskCOPSRC@usdoj.gov**. Questions and comments regarding the administration of your COPS Office CPD award, not specifically related to an audit, should be referred to your COPS Office Program Manager.

## Typical audit findings

The OIG has typically reported the following audit findings pertaining to awards as a result of lack of proper documentation, poor business practices, or inadequate accounting and record keeping systems:

- **Unallowable costs.** Recipient incurred costs that were not approved in the original budget or a budget modification, were in excess of the approved budget, or were charged to the award after the expiration date and an award extension was not obtained.

- **Unsupported costs.** Specific award expenditures and reimbursements could not be supported by adequate documentation (including but not limited to receipts or purchase orders), that may have been allowable under the program, but for which no prior written approval was obtained from the COPS Office, or award expenditures were in excess of actual approved award costs.

- **Lack of complete/timely programmatic and financial reporting.** Recipient failed to submit required programmatic and financial reports in a timely manner and/or had inadequate record keeping systems.

- **Funds to better use.** Funds could be used more efficiently based on management actions such as reductions in outlays; deobligation of funds; withdrawal; costs not incurred by implementing recommended improvements; and other identified savings.

- **Questioned costs.** Costs that are questioned by the auditor because of an audit finding which resulted from a violation or possible violation of a provision of law, regulation, award terms and conditions, or other document governing the use of federal funds; or because costs incurred appear unreasonable and do not reflect the actions a prudent person would take under the same circumstances; or because costs at the time of the audit are not supported by adequate documentation.

- **Policy and procedure.** Weaknesses are identified in a recipient's accounting practices, fiscal stewardship, accuracy of data used in the development of the award applications, and/or inventory controls that led to the recommendation cited in the audit. The recipient is required to develop or revise policies and/or procedures consistent with their existing practices and submit to the COPS Office to forward to the OIG to close the recommendation.

COPS-AR-0817

After the final OIG audit report has been issued, the COPS Office Grant Monitoring Division's Audit Liaison Section will continue working as the liaison between your organization and the OIG to obtain closure on any audit findings. The COPS Office will issue a closure letter once all audit recommendations have been closed by the OIG.

COPS-AR-0818

# VI. Reporting Requirements

Your organization will be required to submit quarterly Federal Financial Reports as well as semiannual Performance Reports. Award recipients should be prepared to track and report award funding separately from all other funding sources (including other COPS Office awards) to ensure accurate financial and programmatic reporting on a timely basis. Your organization should ensure that you have adequate financial internal controls in place to monitor the use of all funding and also to ensure that its use is consistent with the award terms and conditions. Good stewardship in this area includes written accounting practices, use of an accounting system that adequately tracks all award drawdowns and expenditures, and has the ability to track when COPS Office award–funded positions are filled or approved purchases are made. *Failure to submit complete reports or submit them in a timely manner may result in the suspension and possible termination of your organization's COPS Office award funding or other remedial actions.*

## Federal Financial Reports

As a reminder, the only role within JustGrants that can submit the Federal Financial Report (FFR) is the Financial Manager. Individuals with that role in JustGrants should review JustGrants resources online for guidance on how to complete and submit FFRs in the JustGrants system.

Your organization is required to submit a quarterly FFR using Standard Form 425 (SF-425) within 30 days after the end of each calendar quarter. A final SF-425 will be due within 120 days after the end of the award period. This report reflects the actual cumulative federal expenditures incurred during the funding period and the remaining unobligated balance of federal funds. Under federal regulations, your organization is not permitted to draw down federal funding for costs incurred after the official award end date; however, you will have a 120-day period after the award end date during which you can draw down funds for eligible expenditures incurred before the award end date.

### How do we file Federal Financial Reports?

All COPS Office award recipients are strongly encouraged to submit the required quarterly SF-425 online.

To submit an FFR, follow these steps:

- Navigate to the JustGrants Home link on the left-hand side.

- Go to your Task List.

- Open the FFR you want to edit/submit.

  Once the FFR opens, the Recipient Information appears, select Continue to move to the next screen. Note: The data on this page is prepopulated from the award document and the entity profile.

  The Report Information screen contains several required fields.

  (a)  Enter the Recipient Account Number.
  (b)  Select the Report Type.
  (c)  Select the Basis of Accounting. Scroll down to the Transactions section.

The following fields are not editable because they are not required for DOJ:

- (a) 10a. Cash Receipts
- (b) 10b. Cash Disbursements
- (c) 10c. Cash on Hand (line a minus b)

- Enter information in the following fields as appropriate:
    - (a) 10d. Total Federal funds authorized
    - (b) 10g. Total Federal share (sum lines e & f)
    - (c) 10e. Federal share of expenditures
    - (d) 10f. Federal share of unliquidated obligations
    - (e) 10h. Unobligated balance of Federal funds (line d minus g)
    - (f) 10j. Recipient share of expenditures

Cumulative expenditures must be entered in line 10e, 10j, 10f, 10j, 10m, and 10n. Cumulative expenditures are defined as: The amount from the awards inception to the end of the reporting period.

- Enter information in the following fields as appropriate:
    - (a) 10k. Remaining recipient share to be provided (line i minus j)
    - (b) 10l. Total Federal program income earned
    - (c) 10m. Program Income expended in accordance with the deduction alternative
    - (d) 10n. Program Income expended in accordance with the addition alternative
    - (e) 10o. Unexpended program income

- Select Continue

    In the Remarks and Certification screen, enter text in box 12. Additional Information.

- Note: If the figures in line 10e or 10j are less than the previous reporting period, you are required to add additional narrative in box 12 "Remarks" explaining this discrepancy. Failure to do so will result in a validation error.

- Select Upload Supporting Documents to attach a document

- Review the certification information. Select the Submit button.

The FFR status will be changed to "Resolved-Completed" once the FFR data is transferred to the Unified Financial Management System (UFMS).

## When are Federal Financial Reports due?

An SF-425 report must be submitted for each COPS Office award at the end of every calendar quarter and no later than 30 days after the last day of each reporting period, as detailed in table 1.

**Table 1. Due dates of SF-425 by quarter**

| Reporting quarter | SF-425 due date |
|---|---|
| January 1–March 31 | April 30 |
| April 1–June 30 | July 30 |
| July 1–September 30 | October 30 |
| October 1–December 31 | January 30 |

COPS-AR-0820

For your initial SF-425 submission, determine when the SF-425 reporting period that includes your award start date ended and complete an SF-425 to cover the period from the award start date to the end of that period (regardless of when the award was accepted). **You are required to submit an SF-425 even if you have not spent any money or incurred any costs during a reporting period.**

**Example:**

If your award start date is 09-01-24 and the current date is 11-15-24, then your first SF-425 would be due no later than 10-30-24 and would cover the period 09-01-24 (award start date) through 09-30-24 (end of the initial reporting quarter for this award). This SF-425 must be on file with the COPS Office before the submission deadline so that you can avoid being delinquent and successfully complete a drawdown of funds through ASAP (submit report as soon as you accept the award and have access JustGrants and ASAP).

Award recipients who do not submit an SF-425 report by the due date each quarter will be unable to draw down funds. The payment system contains a function which checks for SF-425 delinquency and will reject a drawdown attempt if the SF-425 is not current. Subsequent outreach through email or hard copy reminders may be sent to the recipient if the SF-425 is delinquent.

For general information or assistance in completing the SF-425 reports, go to **https://cops.usdoj.gov** or contact the COPS Office Response Center by phone at **AskCopsRC@usdoj.gov**.

## How will award funds be monitored?

The COPS Office and designated representatives from the Office of the Chief Financial Officer, Office of Justice Programs monitor the financial aspects of your organization's award through financial reports, on-site visits, office-based award reviews, meetings, telephone contacts, reports, audits, reviews of award change requests, and special request submissions.

# Performance Reports

Semiannual Performance Reports and a Final Performance (Closeout) Report are required to be submitted directly to the COPS Office via JustGrants. Agencies must submit a separate performance report for each award.

## How do we file a Performance Report?

Only the Grants Award Administrator for your organization will be able to view and submit a performance report. For information on assigning a Grant Award Administrator to your award, see the Entity Management Job Aid Reference Guide on the **JustGrants website**.

To submit your performance report, please log in to JustGrants and check your worklist or the "Funded Award Performance Management" tab for performance reports. The Grant Award Administrator can locate the current report question set in JustGrants in two locations: My Worklist or on the Performance Management tab of the funded award. Information on JustGrants Performance Reporting is found **here.**

If you experience issues with submitting your performance report, please contact JustGrants Support at **JustGrants.Support@usdoj.gov** or 833-872-5175.

COPS-AR-0821

Important reminder: The only role within JustGrants that can submit a performance report is the Grant Award Administrator

You should complete a final performance report within 120 days of the period of performance end date. To submit a final report, the Grants Award Administrator should locate the report question set in My Worklist or on the Performance Management tab. The report cover page will ask whether the report is interim progress report or a final report – please select "final" to view final report questions.

## When are Performance Reports due?

Semiannual performance reports are due March 2 and August 31, as shown in table 2.

**Table 2. Due dates of Performance Reports by semiannual dates**

| Reporting period | Performance Report due date |
|---|---|
| **August 1 – January 31** | March 2 |
| **February 1 – July 31** | August 31 |

## What kind of information will these reports require?

These reports will request information about the status of your award in terms of purchasing equipment, hiring personnel, delivering services, and progress in meeting milestones identified in the cooperative agreement, as well as general information about your organization.

## What if we make a mistake or need to modify the report after it is submitted?

You may log in to JustGrants to reopen and make edits to your Performance Report.

## Will the data that we submit be publicly available?

Performance Reports submitted to the COPS Office may be reported publicly in response to a Freedom of Information Act (FOIA) request.

If your organization has any questions regarding the submission of these required reports, please call the COPS Office Response Center at **AskCOPSRC@usdoj.gov**.

## Entity management

If you do not have the ability to submit your federal financial report or performance report, this may indicate that the Entity Administrator for your organization has not made the correct work assignment to your award. To confirm the work assignment has been properly made, the Entity Administrator should follow the steps below to confirm: 1. Log in to JustGrants. 2. Click "Awards" from the left menu. 3. Click "Show/Hide Roles." 4. Click the "Financial Manager" and "Grant Award Administrator" check boxes. 5. Click "Confirm." If the Financial Manager and Grant Award Administrator's names appear under the respective columns, then the work assignment has been properly made and those users should be able to complete and submit the reports.

If the names do not appear in the respective columns, the Entity Administrator should take the following steps: 1. Click the check box next to the award ID. 2. Choose a role (e.g., Financial Manager, Grant Award Administrator) from the "Choose Role" dropdown menu (bottom of the screen). 3. Choose the individual's name from the "Assign to" drop-down menu. 4. Click "Assign." Once the Entity Administrator has completed these steps, the assigned Financial Manager and Grant Award Administrator should be able to access and submit the respective reports.

# Contact points to obtain technical assistance and report violations

Any alleged violations, serious irregularities, or acts that may result in the use of public funds in a manner inconsistent with the Public Safety Partnership and Community Policing Act of 1994 or the purposes of this award may be reported to the U.S. Department of Justice. Furthermore, the COPS Office welcomes the opportunity to provide assistance regarding the implementation of award provisions to help ensure that federal award funds are spent responsibly. As such, the following contacts are provided to address noncompliance and technical assistance issues:

* If you suspect violations of a criminal nature, please contact the U.S. Department of Justice, Office of the Inspector General (OIG) at **https://oig.justice.gov/hotline**, **OIG.hotline@usdoj.gov** or 800-869-4499.

* If you suspect award violations (not criminal in nature) related to the award conditions listed in this manual, please contact the COPS Office Grant Monitoring Division at 800-421-6770.

* If you have any questions or need assistance regarding your award, please contact your COPS Office Program Manager.

COPS-AR-0823

# VII. When the Award Period Has Ended

At the end of your organization's award period, the COPS Office is responsible for the closeout of your award. As part of this process, the COPS Office requires documentation demonstrating that your organization has met all the programmatic and financial requirements of the award.

After the end of the award period, your organization will be asked to submit a Final Federal Financial Report (SF-425) and any applicable final performance reports.

## Final Federal Financial Report (SF-425)

The final Federal Financial Report (SF-425) for your award is due to the COPS Office no later than 120 days after the end date of the award period. The final report should reflect the total amount of allowable federal expenditures that were incurred during the life of the award, as well as the amount of unobligated funds remaining, if any. The federal funds expended should reflect only the actual allowable costs incurred relative to the specific program requirements for that award. In addition, once you have completed your final drawdown, this report should reconcile with the total amount of federal funds drawn down by your organization. The final SF-425 should also include the required minimum total amount of local (recipient) cash match contributed, if applicable.

### When should all the award monies be spent?

Award funds reflecting allowable project costs must be obligated before the end of the award period. Obligated funds cover monies spent, and expenses incurred but not yet paid, for any approved items listed in the award package. Your organization has up to 120 days after the end of the award period to pay for eligible expenses previously incurred, and to request reimbursement for any remaining eligible balance.

*Please be advised that 2 C.F.R. § 200.344(b) requires recipients to submit final SF-425s within 120 days after the expiration of the award.*

It is possible that your organization may have unobligated and unspent award funds remaining in your account following the award period due to an overestimate of item costs during the application period. Your organization should review its records carefully to ensure that it draws down and expends only the amount required for actual costs incurred during the award period. Any remaining unobligated or unspent funds should remain in your account and will be deobligated during the closeout process.

## Final Performance (Closeout) Report

After your award period has ended, your organization will be sent a final performance report via JustGrants and asked to complete it. This report will serve as your organization's final programmatic report on the award, and the information your organization provides in this report will be used to make a final assessment of your award progress.

COPS-AR-0824

## Equipment disposition

Each recipient must use any equipment funded through a COPS Office award for approved award-related purposes and must retain the equipment for the life of the award. Property records must be maintained by the recipient, which should include a description of the property; a serial number or another identification number; the source of the property; the name of the person or entity that holds the title; the acquisition date and cost of the property; the percentage of federal agency contribution toward the original purchase; the location, use, and condition of the property; and any ultimate disposition data, including the date of disposal and sale price of the property. A control system must be developed to ensure adequate safeguards to prevent loss, damage, or theft of the property. A physical inventory of the property must be conducted, and the results must be reconciled with the property records at least once every two years. 2 C.F.R. § 200.313(d).

A State or an Indian Tribe must use, manage, and dispose of equipment acquired under a Federal award by the state or an Indian Tribe in accordance with state or tribal laws and procedures. If such laws and procedures do not exist in an Indian Tribe, they must follow the guidance in 2 C.F.R. § 200.313. 2 C.F.R. § 200.313(b).

When the award has expired and equipment obtained under the award is no longer needed for the original project, program, or for other activities currently or previously supported by a federal agency, disposition of the equipment shall be made as follows:

Items of equipment with a current per-unit fair market value of $10,000 or less may be retained, sold, or otherwise disposed of with no further obligation to the awarding agency.

Items of equipment with a current per-unit fair market value in excess of $10,000 may be retained or sold and the awarding agency is entitled to an amount calculated by multiplying the current market value or proceeds from sale by the awarding agency's federal share in the cost of the original purchase.

For more information, please see 2 C.F.R. §§ 200.1 and 200.313.

COPS-AR-0825

# VIII. Conclusion

We hope that this manual has assisted you and your organization with your award questions. We welcome and encourage any comments you have regarding the COPS Office CPD Program and the materials we have developed for its administration. If you have specific comments regarding this manual or have any questions about your award, please call your COPS Office Program Manager.

Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," the COPS Office encourages recipients of U.S. Department of Justice funds to adopt and enforce policies that ban text messaging while driving and to establish workplace safety policies to decrease crashes caused by distracted drivers.

In addition, pursuant to Executive Order 13043, "Increasing Seat Belt Use in the United States," the COPS Office encourages recipients of U.S. Department of Justice funds to adopt and enforce on-the-job seat belt policies and programs for their employees when operating company-owned, rented, or personally owned vehicles.

COPS-AR-0826

# Appendices

## Appendix A. List of source documents

### A. Primary Sources

Public Safety Partnership and Community Policing Act of 1994, 34 U.S.C. § 10381 et seq.

### B. Secondary Sources

*Code of Federal Regulations (CFR)/Office of Management and Budget (OMB):*

2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards) as adopted by the U.S. Department of Justice in 2 C.F.R. § 2800.101

4 C.F.R. Parts 101-105, U.S. Department of Justice/Government Accountability Office, "Joint Federal Claims Collections Standards"

5 C.F.R. Part 1320, "Controlling Paperwork Burdens on the Public"

5 C.F.R. Part 151, "Political Activity of State and Local Officers or Employees"

28 C.F.R. Part 23, "Criminal Intelligence Systems Operating Policies"

28 C.F.R. Part 61, "Procedures for Implementing the National Environmental Policy Act"

28 C.F.R. Part83, "Government-Wide Requirements for Drug-Free Workplaces (Grants)"

28 C.F.R. Part 69, "New Restrictions on Lobbying"

31 C.F.R. Part 205, "Rules and Procedures for Efficient Federal-State Funds Transfers"

OMB Circular A-129, "Policies for Federal Credit Programs and Non-Tax Receivables"

48 C.F.R. Part 31 (Federal Acquisition Regulation), "Contract Cost Principles and Procedures"

*Executive Orders:*

Executive Order 12291, "Regulations"

Executive Order 12372, 28 C.F.R. Part 30, "Intergovernmental Review of Federal Programs"

Executive Order 12547, "Non-Procurement Debarments and Suspension"

Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving,"

Executive Order 13043, "Increasing Seat Belt Use in the United States"

# Appendix B. U.S. Department of Justice Certified Standard Assurances

On behalf of the Applicant, and in support of this application for a grant or cooperative agreement, I certify under penalty of perjury to the U.S. Department of Justice ("Department"), that all of the following are true and correct:

(1)  I have the authority to make the following representations on behalf of myself and the Applicant. I understand that these representations will be relied upon as material in any Department decision to make an award to the Applicant based on its application.

(2)  I certify that the Applicant has the legal authority to apply for the federal assistance sought by the application, and that it has the institutional, managerial, and financial capability (including funds sufficient to pay any required non-federal share of project costs) to plan, manage, and complete the project described in the application properly.

(3)  I assure that, throughout the period of performance for the award (if any) made by the Department based on the application--
   a.  the Applicant will comply with all award requirements and all federal statutes and regulations applicable to the award;
   b.  the Applicant will require all subrecipients to comply with all applicable award requirements and all applicable federal statutes and regulations; and
   c.  the Applicant will maintain safeguards to address and prevent any organizational conflict of interest, and also to prohibit employees from using their positions in any manner that poses, or appears to pose, a personal or financial conflict of interest.

(4)  The Applicant understands that the federal statutes and regulations applicable to the award (if any) made by the Department based on the application specifically include statutes and regulations pertaining to civil rights and nondiscrimination, and, in addition--
   A.  the Applicant understands that the applicable statutes pertaining to civil rights will include section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d); section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681); and section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102);
   b.  the Applicant understands that the applicable statutes pertaining to nondiscrimination may include section 809(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. § 10228(c)); section 1407(e) of the Victims of Crime Act of 1984 (34 U.S.C. § 20110(e)); section 299A(b) of the Juvenile Justice and Delinquency Prevention Act of 2002 (34 U.S.C. § 11182(b)); and that the grant condition set out at section 40002(b)(13) of the Violence Against Women Act (34 U.S.C. § 12291(b)(13)), which will apply to all awards made by the Office on Violence Against Women, also may apply to an award made otherwise;
   c.  the Applicant understands that it must require any subrecipient to comply with all such applicable statutes (and associated regulations); and
   d.  on behalf of the Applicant, I make the specific assurances set out in 28 C.F.R. §§ 42.105 and 42.204.

(5)  The Applicant also understands that (in addition to any applicable program-specific regulations and to applicable federal regulations that pertain to civil rights and nondiscrimination) the federal regulations applicable to the award (if any) made by the Department based on the application may include, but are not limited to, 2 C.F.R. Part 2800 (the DOJ "Part 200 Uniform Requirements") and 28 C.F.R. Parts 22 (confidentiality - research and statistical information), 23 (criminal intelligence systems), 38 (regarding faith-based or religious organizations participating in federal financial assistance programs), and 46 (human subjects protection).

COPS-AR-0828

(6)  I assure that the Applicant will assist the Department as necessary (and will require subrecipients and contractors to assist as necessary) with the Department's compliance with section 106 of the National Historic Preservation Act of 1966 (54 U.S.C. § 306108), the Archeological and Historical Preservation Act of 1974 (54 U.S.C. §§ 312501-312508), and the National Environmental Policy Act of 1969 (42 U.S.C. §§ 4321-4335), and 28 C.F.R. Parts 61 (NEPA) and 63 (floodplains and wetlands).

(7)  I assure that the Applicant will give the Department and the Government Accountability Office, through any authorized representative, access to, and opportunity to examine, all paper or electronic records related to the award (if any) made by the Department based on the application.

(8)  I assure that, if the Applicant is a governmental entity, with respect to the award (if any) made by the Department based on the application--

A.  it will comply with the requirements of the Uniform Relocation Assistance and Real Property Acquisitions Act of 1970 (42 U.S.C. §§ 4601-4655), which govern the treatment of persons displaced as a result of federal and federally-assisted programs; and

B.  it will comply with requirements of 5 U.S.C. §§ 1501-1508 and 7324-7328, which limit certain political activities of State or local government employees whose principal employment is in connection with an activity financed in whole or in part by federal assistance.

(9)  If the Applicant applies for and receives an award from the Office of Community Oriented Policing Services (COPS Office), I assure that as required by 34 U.S.C. § 10382(c)(11), it will, to the extent practicable and consistent with applicable law—including, but not limited to, the Indian Self-Determination and Education Assistance Act—seek, recruit, and hire qualified members of racial and ethnic minority groups and qualified women in order to further effective law enforcement by increasing their ranks within the sworn positions, as provided under 34 U.S.C. § 10382(c)(11).

(10) If the Applicant applies for and receives a DOJ award under the STOP School Violence Act program, I assure as required by 34 U.S.C. § 10552(a)(3), that it will maintain and report such data, records, and information (programmatic and financial) as DOJ may reasonably require.

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the Applicant to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and 3801-3812). I also acknowledge that the Department's awards, including certifications provided in connection with such awards, are subject to review by the Department, including by its Office of the Inspector General.

_____          _____

Signature of Law Enforcement Executive/Agency Executive          Date

(For your electronic signature, please type in your name)

_____          _____

Signature of Government Executive/Financial Official          Date

(For your electronic signature, please type in your name)

COPS-AR-0829

# Appendix C. U.S. Department of Justice Certifications Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; Drug-Free Workplace Requirements; Law Enforcement and Community Policing

Applicants should refer to the regulations cited below to determine the certification to which they are required to attest. Applicants should also review the instructions for certification included in the regulations before completing this form. The certifications shall be treated as a material representation of fact upon which reliance will be placed when the U.S. Department of Justice ("Department") determines to award the covered transaction, grant, or cooperative agreement.

1.  LOBBYING

    As required by 31 U.S.C. § 1352, as implemented by 28 C.F.R. Part 69, the Applicant certifies and assures (to the extent applicable) the following:

    i.   No Federal appropriated funds have been paid or will be paid, by or on behalf of the Applicant, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making of any Federal grant, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal grant or cooperative agreement;

    ii.  If the Applicant's request for Federal funds is in excess of $100,000, and any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with this Federal grant or cooperative agreement, the Applicant shall complete and submit Standard Form - LLL, "Disclosure of Lobbying Activities" in accordance with its (and any DOJ awarding agency's) instructions; and

    iii. The Applicant shall require that the language of this certification be included in the award documents for all subgrants and procurement contracts (and their subcontracts) funded with Federal award funds and shall ensure that any certifications or lobbying disclosures required of recipients of such subgrants and procurement contracts (or their subcontractors) are made and filed in accordance with 31 U.S.C. § 1352.

2.  DEBARMENT, SUSPENSION, AND OTHER RESPONSIBILITY MATTERS

    A.  Pursuant to Department regulations on nonprocurement debarment and suspension implemented at 2 C.F.R. Part 2867, and to other related requirements, the Applicant certifies, with respect to prospective participants in a primary tier "covered transaction," as defined at 2 C.F.R. § 2867.20(a), that neither it nor any of its principals—

        i.   is presently debarred, suspended, proposed for debarment, declared ineligible, sentenced to a denial of Federal benefits by a State or Federal court, or voluntarily excluded from covered transactions by any Federal department or agency;

             has within a three-year period preceding this application been convicted of a felony criminal violation under any Federal law, or been convicted or had a civil judgment rendered against it for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State, tribal, or local) transaction or private agreement or transaction; violation of

64

Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion or receiving stolen property, making false claims, or obstruction of justice, or commission of any offense indicating a lack of business integrity or business honesty that seriously and directly affects its (or its principals') present responsibility;

    ii.   is presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, tribal, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and/or

    iii.   has within a three-year period preceding this application had one or more public transactions (Federal, State, tribal, or local) terminated for cause or default.

B.   Where the Applicant is unable to certify to any of the statements in this certification, it shall attach an explanation to this application. Where the Applicant or any of its principals was convicted, within a three-year period preceding this application, of a felony criminal violation under any Federal law, the Applicant also must disclose such felony criminal conviction in writing to the Department (for OJP Applicants, to OJP at **Ojpcompliancereporting@usdoj.gov**; for OVW Applicants, to OVW at **OVW.GFMD@usdoj.gov**; or for COPS Applicants, to COPS at **AskCOPSRC@usdoj.gov**), unless such disclosure has already been made.

3.   FEDERAL TAXES

A.   If the Applicant is a corporation, it certifies either that (1) the corporation has no unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability, or (2) the corporation has provided written notice of such an unpaid tax liability (or liabilities) to the Department (for OJP Applicants, to OJP at **Ojpcompliancereporting@usdoj.gov**; for OVW Applicants, to OVW at **OVW.GFMD@usdoj.gov**; or for COPS Applicants, to COPS at **AskCOPSRC@usdoj.gov**).

B.   Where the Applicant is unable to certify to any of the statements in this certification, it shall attach an explanation to this application.

4.   DRUG-FREE WORKPLACE (GRANTEES OTHER THAN INDIVIDUALS)

As required by the Drug-Free Workplace Act of 1988, as implemented at 28 C.F.R. Part 83, Subpart F, for grantees, as defined at 28 C.F.R. §§ 83.620 and 83.650:

A.   The Applicant certifies and assures that it will, or will continue to, provide a drug-free workplace by—

    i.   Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in its workplace and specifying the actions that will be taken against employees for violation of such prohibition;

    ii.   Establishing an on-going drug-free awareness program to inform employees about—

       a.   The dangers of drug abuse in the workplace;

       b.   The Applicant's policy of maintaining a drug-free workplace;

       c.   Any available drug counseling, rehabilitation, and employee assistance programs; and

       d.   The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

    iii.   Making it a requirement that each employee to be engaged in the performance of the award be given a copy of the statement required by paragraph (a);

iv.  Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the award, the employee will—

    a.  Abide by the terms of the statement; and

    b.  Notify the employer in writing of the employee's conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction;

v.  Notifying the Department, in writing, within 10 calendar days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title of any such convicted employee to the Department, as follows:

> For COPS award recipients - COPS Office, 145 N Street, NE, Washington, DC, 20530;
>
> For OJP and OVW award recipients - U.S. Department of Justice, Office of Justice Programs, ATTN: Control Desk, 810 h Street, N.W., Washington, D.C. 20531.
>
> Notice shall include the identification number(s) of each affected award;

vi.  Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted:

    a.  Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1973, as amended; or

    b.  Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency; and

vii.  Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

LAW ENFORCEMENT AGENCY CERTIFICATION REQUIRED UNDER DEPARTMENT OF JUSTICE DISCRETIONARY GRANT PROGRAMS ("SAFE POLICING CERTIFICATION")

If this application is for a discretionary award pursuant to which award funds may be made available (whether by the award directly or by any subaward at any tier) to a State, local, college, or university law enforcement agency, the Applicant certifies that any such law enforcement agency to which funds will be made available has been certified by an approved independent credentialing body or has started the certification process. To become certified, a law enforcement agency must meet two mandatory conditions: (a) the agency's use of force policies adhere to all applicable federal, State, and local laws; and (b) the agency's use of force policies prohibit chokeholds except in situations where use of deadly force is allowed by law.

For detailed information on this certification requirement, see **https://cops.usdoj.gov/SafePolicingEO**. The Applicant acknowledges that compliance with this safe policing certification requirement does not ensure compliance with federal, state, or local law, and that such certification shall not constitute a defense in any federal lawsuit. Nothing in the safe policing certification process or safe policing requirement is intended to be (or may be) used by third parties to create liability by or against the United States or any of its officials, officers, agents or employees under any federal law. Neither the safe policing certification process nor the safe policing certification requirement is intended to (or does) confer any right on any third-person or entity seeking relief against the United States or any officer or employee thereof. No person or entity is intended to be (or is) a third-party beneficiary of the safe policing certification process, or, with respect to the safe policing certification requirement, such a beneficiary for purposes of any civil, criminal, or administrative action.

COPS-AR-0832

5.    COORDINATION REQUIRED UNDER PUBLIC SAFETY AND COMMUNITY POLICING PROGRAMS
As required by the Public Safety Partnership and Community Policing Act of 1994, at 34 U.S.C. § 10382(c)(5), if this application is for a COPS award, the Applicant certifies that there has been appropriate coordination with all agencies that may be affected by its award. Affected agencies may include, among others, Offices of the United States Attorneys; State, local, or tribal prosecutors; or correctional agencies.

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the Applicant to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and 3801-3812). I also acknowledge that the Department's awards, including certifications provided in connection with such awards, are subject to review by the Department, including by its Office of the Inspector General.

_____          _____

Signature of Law Enforcement Executive/Agency Executive          Date

(For your electronic signature, please type in your name)

_____          _____

Signature of Government Executive/Financial Official          Date

(For your electronic signature, please type in your name)

COPS-AR-0833

# Appendix D. Conference and Event Guidance

## Conference and Event Approval, Planning, and Reporting FAQ

### *Prior Approval*

**i.    Approximately how long should it take to adequately complete the Conference & Events Submission form?**

The amount of time required to adequately complete the Conference & Events Submission Form will vary depending on the complexity of the proposed event. A small event (in terms of number of attendees, total cost, etc.) may require only an hour or two to complete the form because the event is basic or routine and data are not required in all of the available categories. On the other hand, a large event (in terms of number of attendees, multiple sessions occurring at the same time, etc.) may require several hours or days depending on the amount of required data (categories) and level of justification needed to support the event. Regardless of the size of any event, the supporting justification should be sufficient to support the agency's mission for conducting the event.

**ii.    Which types of events do not require prior approval?**

Currently there are six types of events that do not require prior approval:

a.  Conferences held by grant recipients. (Note: Conferences held by cooperative agreement recipients do require prior approval.)

b.  Law enforcement operational activities, including staging, surveillance, investigation, intelligence, and undercover activities.

c.  Routine operational meetings (e.g., staff meetings or all-hands meetings) if held in a federal facility, if held by cooperative agreement recipients in a nonfederal facility that does not charge for its use, and if there are neither costs to the DOJ for logistical conference planning nor government-provided food or beverages. In all three of these instances, the answer to all the questions on the Prior Approval Not Required Checklist must be "No." Site visits are considered routine operational meetings regardless of location so long as there are no costs to the DOJ for meeting rooms, logistical conference planning, or food and beverages.

d.  Testing activities where the primary purpose of the event is to evaluate an applicant's qualifications to perform certain duties necessary to his or her job. This includes firearms and weaponry proficiency testing and certifications. A majority of the event must be devoted to administering and taking the test. Testing activities that are incidental to a training course or conference or are given upon its completion do require prior approval.

e.  Video conferences and webinars where there are neither costs to the DOJ for logistical conference planning nor government-provided food or beverages.

f.  Technical assistance visits where travel was made by an individual or a small group of project staff members to provide training or technical assistance to a particular entity; in this instance, the answer to all the questions on the Prior Approval Not Required Checklist must be "No."

COPS-AR-0834

iii. **Where should time staff spent working on the conference that is not related to planning be captured?**

Time spent working on a conference by staff or contractors can be classified as either logistical planning time or programmatic planning time. Programmatic planning includes time spent on activities such as developing the conference content and agenda, identifying and recruiting subject matter experts, and preparing written materials. Logistical planning includes time spent on tasks such as selecting a venue, ordering and setting up audio-video equipment, securing hotel rooms, processing registrations, providing onsite support during the event, and undertaking other nonprogrammatic functions.

iv. **If a cooperative agreement recipient or contractor is able to obtain a no-cost site for the event, are we still required to look into other facilities and provide justification for not selecting the other facilities?**

Yes. Cooperative agreement recipients and contractors should compare three or more facilities in a location. Facilities being compared should have provided a cost estimate and be able to accommodate the event as detailed in the requirements. A desired hotel may offer an incentive of no overall facility cost (e.g., for meeting rooms or audio-visual equipment) but may not be economical in other cost comparison items such as the availability of lodging at per diem rates, travel distance for attendees, etc. Also, recipients and contractors should maintain written documentation justifying their decision to select the chosen location in the event of a future audit.

v. **Is there a time frame after the COPS Office accepts a conference request that a cooperative agreement recipient or contractor can expect notification of approval?**

Each event request (meeting, conference, webinar, etc.) is unique with respect to how it will accomplish the COPS Office's mission. The key to any conference request moving through the review process is whether the package is complete. A complete package contains a detailed cost analysis and sufficient justification to support all categories within the package.

**Example:** An event is submitted for approval and consists of the following categories: printing and distribution, meals and incidental expenses (M&IE), lodging, transportation, and trainer or facilitator costs. The package contains a detailed cost analysis of each cost category (e.g., one trainer at $450 per day x 2 days = $900) and adequate justification explaining the purpose of the event and the role of the trainer. This package can move through the review process in a few days and allow ample time for travelers to make reservations, if the package is submitted within the required time frame. However, if the trainer or facilitator's costs in the submitted package exceed the COPS Office's threshold and if supporting justification is not included, a delay may occur while this justification is being retrieved.

To avoid delays in the approval process, all recipients and contractors should adhere to the time frame requirements for the dollar amount of their proposed event.

vi. **Once an event is approved, how do we handle any increases or decreases in the number of attendees originally proposed on the cost analysis spreadsheet submitted to the DOJ for approval?**

After receiving notification of approval from the COPS Office, all subsequent changes prior to the start day of the event should be sent to the COPS Office Conference Costs email address, as appropriate. **Example:** If the COPS Office approved on 9/1/2020 an event scheduled for 12/15/2020, the cooperative agreement recipient or contractor should notify the COPS Office of any changes in attendees as soon as possible (preferably 30 days or more in advance). This scenario holds true for changes to the start and end date, location, and any other cost-related category.

COPS-AR-0835

vii. **Does the $25 per person per day limit for meeting rooms and audio-visual costs also include service fees and taxes?**

Yes. The cost allowed for conference space and audio-visual equipment and services (fees and taxes) is limited to $31.25 per day per attendee and is not to exceed a cumulative total cost of $25,000. Total costs are defined as direct and indirect costs.

viii. **What if there are multiple meetings occurring within the larger event offered to all the attendees? Is the $31.25 per day per attendee limit applicable to each meeting? Example: A general session meeting contains all attendees and later breakout sessions are offered to the groups. Can each breakout session have its own $31.25 per person per day limit?**

No. Despite the multiple meetings offered within the larger event, the COPS Office considers and approves this type of situation to be a single event.

ix. **Can we accept complimentary food and beverage?**

Yes. Complimentary food and beverages may be accepted if offered to everyone. **Example:** Hotel W offers a complimentary continental breakfast to all its overnight customers regardless of any status they may have with the hotel chain. This type of complimentary offer is considered a business strategy of the hotel to promote an increase in overnight stays. You are not required to reduce your M&IE by the value of the food and beverage it offered to all customers as noted in this example.

x. **Are the thresholds ($8,750 for logistical planner, $35,000 for programmatic planner, and $20,000 for conference space and audio-visual equipment and services) a cumulative cost for the entire event or a per day cost?**

The cost allowed for conference space and audio-visual equipment and services (fees and taxes) is limited to $31.25 per day per attendee and is not to exceed a cumulative total cost of $25,000. The cost allowed for a logistical planner is the lesser of $62.50 per attendee or $11,000 per event. The cost allowed for a programmatic planner is the lesser of $250 per attendee or $43,750 per event.

xi. **To whom should I submit event requests?**

For all COPS Office events, the form should be sent to the COPS Office Conference Costs email address (**COPS.Conferencecosts@usdoj.gov**). Please do not send questions or other correspondence to this email address. This mailbox should be used only for the submission of conference forms and supporting documentation (e.g., hotel contracts).

xii. **How far in advance do I have to submit an event for review and approval?**

Requests for conferences costing $100,000 or less and not exceeding any cost thresholds (conference space and audio-visual equipment and services, logistical conference planner, and programmatic conference planner) must be submitted to the COPS Office 90 calendar days in advance of the earliest of the following:

- Start date of the conference
- Deadline for signing conference-related contracts
- Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request)

COPS-AR-0836

Requests for conferences costing more than $100,000, or exceeding any one cost threshold (conference space and audio-visual equipment and services, logistical conference planner, or programmatic conference planner), must be submitted to the COPS Office 120 calendar days in advance of the earliest of the following:

- Start date of the conference

- Deadline for signing conference-related contracts

- Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request)

If approval requests are submitted less than the required number of days in advance (as noted above), the COPS Office, in its sole discretion, may consider the late requests but cannot ensure the requests will receive a decision in time to avoid having to cancel the conference (particularly if any issues arise with specific items of cost in the request). Cancellation costs associated with conference requests that are submitted for late prior approval may be determined to be unallowable costs by the COPS Office.

**xiii. What are the most common mistakes made on the forms so that I can avoid them in the future and increase the likelihood of a quick review and approval decision for my event?**

The following are the most common mistakes found:

- *Inaccurate calculation of daily per diem*. Daily per diem rates for locations across the nation can be found on the GSA website. Ensure the daily rate used in the calculations corresponds to the specific location and dates of the meeting. In addition, remember that travel days are reimbursed at a slightly lower rate than meeting days. The lower rates must be used for days of travel both before and after the event. Table 3 includes these lower rates:

**Table 3. Per diem rates**

| Full per diem rate | Corresponding travel day rate (75%) |
|---|---|
| $46.00 | $34.50 |
| $51.00 | $38.25 |
| $56.00 | $42.00 |
| $61.00 | $45.75 |
| $66.00 | $49.50 |
| $71.00 | $53.25 |

**EXCEPTION:** If your organization has its own formal, written travel policy, your event submissions can reflect that policy instead of the rates in table 3. In these instances, state that you have a formal, written travel policy, and clearly explain the rates in the policy and how the corresponding numbers in your submission were derived.

- *Insufficient explanation and justification of transportation costs.* Remember to break out and briefly describe and justify the transportation costs that are included. **Example:** If participants are flying to your event and the tickets are being paid for with DOJ funding, you should include the anticipated number of people flying multiplied by the estimated cost per ticket. If cars will be rented, you should include a brief justification for why rental cars are being used instead of another form of ground transportation, such as taxis or shuttles.

- *Insufficient explanation and justification of audio-visual costs.* All audio-visual costs should be broken out and briefly described. The quantity of equipment to be rented (number of microphones, projectors, etc.) should be included, along with relevant costs and a brief justification for why the proposed equipment is required to conduct a successful meeting. A discussion of how the audio-visual services provider was selected should be included (for example, did you obtain three quotes?).

- *Insufficient explanation and justification of printing costs.* Proposed printing costs for participant materials should also be itemized and briefly described. Specifically, it is important to articulate why printed materials are needed instead of making materials available electronically (at low or no cost) to attendees before or after the event.

- *Insufficient explanation and justification of shipping costs.* Provide an itemization of these costs, along with a brief description of why the equipment and other materials being shipped are essential to hosting a successful conference.

- *Insufficient explanation and justification of consultant costs.* The maximum daily rate for subject matter experts who are being reimbursed for their time is noted in the Consultant/Contractor Fact Sheet at **https://cops.usdoj.gov/cpd#programdocuments**. Describe all consultant costs in detail and include a brief yet compelling justification for the proposed costs. Daily rates for subject matter experts above the maximum daily rate require prior approval by the COPS Office and DOJ. In cases where higher rates are included in the event submission, written documentation of prior approval is required and should be attached.

**xiv. Should I continue to exclude all food and beverage costs in my event submissions?**

Yes. The inclusion of food and beverage costs will delay the review process, and these costs are not likely to be approved. The only exception is when the location of the conference does not allow attendees to obtain food or beverages on their own or when this restriction would greatly disrupt the conference schedule. If you believe your event qualifies for such a rare exception, contact your Program Manager to discuss it before completing and submitting your form. If meals are included in your event submission, remember that attendees must subtract the meal costs from the M&IE reimbursement for the days on which the meals will occur.

**xv. Can you summarize what I can do to prevent follow-up questions about my submitted events that delay the review and approval process?**

As a general rule, explain how you derived every cost that you include in the conference submission form. For lines that do not provide space for you to add descriptive narrative, include your explanations and specific cost breakdowns in a separate tab or in a separate document that is submitted with the form. In addition, include the cooperative agreement or contract number on the form.

**xvi. What events qualify for the expedited review process?**

There is no expedited review process. Every effort is made to review all events as quickly as possible.

Most delays result from a need for additional information. Event requests are prioritized for review by balancing the following three criteria:

- The start date of the event
- The date the event submission was received by COPS Office

COPS-AR-0838

2024 COPS Office Community Policing Development (CPD) Program Award Owner's Manual

- The overall cost and complexity of the event

For example, conferences requiring approval by the assistant attorney general's administration and the deputy attorney general (over $100,000–$250,000) typically take longer to process, as they must go through COPS Office and DOJ reviews, result in more questions, and are more likely to have issues related to cost thresholds.

### Reporting

**xvii. Where can I find the most updated version of the conference reporting form to use for my submissions?**

The most updated version of the conference reporting form can be found under the Training Resources for award recipients section on the COPS Office Training page at **https://cops.usdoj.gov/training**.

**xviii.    If I have a question about conference reporting, to whom should I send it?**

Send your questions to your designated Program Manager. They are great resources and will be happy to assist you.

**xix. Are we expected to have our staff track their time hour for hour for time spent on the event for planning, etc., or are reasonable estimates adequate for cost reporting purposes?**

Post-event reports must contain actual costs, not estimates. These costs should include logistical and programmatic planner staff time spent on these activities and any contracted planner costs.

**xx. With conference cost reports now being due 30 days after the event, how should we handle costs for invoices that have not been received yet? Many invoices (such as for hotels) are not received within 30 days after the event. Should estimates be included on the cost report?**

All conference costs for events held by cooperative agreement recipients or contractors costing more than $20,000, or where more than 50% of attendees are DOJ employees, must be reported within *45 calendar days after the last day of the event*.

**xxi. On the DOJ Conference & Events Submission Form under "A. General Conference Information," is item 19, "Reporting Period," the period in which the actual cost of the event is being reported, or should this be based on the end date of the event?**

This reporting requirement is based on the end date of the event. All conference costs for events held by cooperative agreement recipients or contractors costing over $20,000, or where more than 50% of attendees are DOJ employees, must be reported within 45 calendar days after the last day of the event. Example: A COPS Office–approved conference was conducted from 3/16/2021 through 3/20/2021. A completed Conference & Events Submission Form must be submitted, showing the prior approval amounts compared to the actual costs and explaining all variances greater than 10% or $1,000. Reports should be emailed to the COPS Office Conference Cost email address at **COPS.Conferencecosts@usdoj.gov**.

The following pages contain the conference reporting form template.

COPS-AR-0839



# Department of Justice-Sponsored Conference
# Request and Report

*A **RED** cell indicates that your entry exceeds the DOJ meal threshold AND cannot be submitted unless within the meal threshold.*

*A **YELLOW** cell indicates that your entry exceeds the DOJ threshold, and additional justification must be provided.*

*A **GREY** box indicates that no entry is required.*

| JMD FINANCE STAFF USE ONLY: | |
|---|---|
| JMD Tracking Number | |
| Date  Received | |
| | |
| | |

| COMPONENT USE ONLY: | |
|---|---|
| Component Internal Tracking Number *(Optional)* : | |
| | |
| | |
| | |

| A.  GENERAL CONFERENCE INFORMATION: | |
|---|---|
| 1.  Name of Requestor | |
| 2.  Component Name *(Drop Down)* | COPS - Office of Community Oriented Policing Services |
| 3.  Is this submission for a conference request or report? *(Drop Down)* | Conference Request |
| 4.  JMD Tracking # *(Report Only)* | |
| 5.  If this is a Re-Submission of a previously disapproved conference, indicate original JMD Tracking Number. | |
| 6. Official Title of the Conference *(No Abbreviations)* | |
| 7.  Is this a blanket request? (Y/N) *(Drop Down) If "YES" Skip A9-13,A16 and Sections C,D,& E1, If "NO" Skip A8* | |
| 8.  If this is a Blanket Request, indicate for each: 1) Number of occurrences this fiscal year, 2) Locations, and 3) Start and End Dates | |
| 9.  Conference Start Date *(MM/DD/YYYY)* | |
| 10. Conference End Date *(MM/DD/YYYY)* | |
| 11. Location: Country  *(Drop Down)* | |
| 12. Location: State / Territory / Possession *(Drop Down)* | |
| 13. Location: City | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
1 of 6

COPS-AR-0840

| | Conference REQUEST Information | Conference REPORT Information |
|---|---|---|
| 14. Justification that conference is essential to accomplishing core mission | | |
| 15. Funding Appropriation Symbol | | |
| 16. Facility Name *(Specific)* | | |
| 17. Facility Type (Federal/Non-Federal) *(Drop Down)* | | |
| 18. Cooperative Agreement (Y/N) *(Drop Down)* | | |
| *(Required when reporting actuals) (Drop Down)* | | |
| | **Conference REQUEST Information** | **Conference REPORT Information** |
| 20. Number of DOJ Federal Attendees | | |
| 21. Number of Other Federal Attendees | | |
| 22. Number of Non-Federal Attendees | | |
| 23. Total Number of Attendees *(Auto-populates)* | 0 | |
| 24. Total number of attendees whose travel expenses are paid for by DOJ *(required)* | | |
| 25. Total Cost *(Auto-populates from entries below)* | $0 | |
| 26. Predominately Internal Event held at a Non-Federal Facility (Y/N) *(Auto-populates based on Facility Type and Number of Attendees)* | PLEASE PROVIDE NUMBER OF ATTENDEES | |

**Competitive Contracting:**

| | |
|---|---|
| *(Drop Down)* | |
| *(Drop Down)* | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To: JMD Finance Staff, TSG at Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
2 of 6

COPS-AR-0841

*When REPORTING quarterly conferences, only complete the request information if JMD approved your request and you have a JMD tracking number*

| B.  TOTAL CONFERENCE COSTS: | Conference REQUEST Information | | | | Conference REPORT Information | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | ESTIMATED DIRECT COST | ESTIMATED INDIRECT COST *(Funding from Cooperative Agreement)* | ESTIMATED TOTAL COST *(Auto-populates)* | % OF TOTAL COST *(Auto-populates)* | ACTUAL DIRECT COST | ACTUAL INDIRECT COST *(Funding from Cooperative Agreement)* | ACTUAL TOTAL COST *(Auto-populates)* | VARIANCE *(Between Actual and Estimate) (Auto-populates)* | VARIANCE JUSTIFICATION (Provide justification if variance is >$1,000 and >10% as indicated by a light yellow cell OR exceeds cost thresholds, as indicated by a bright yellow cell) |
| 1.  Conference Meeting Space (including rooms for break-out sessions) | | | $          - | 0.00% | | | | | |
| 2.  Audio-visual Equipment and Services | | | - | 0.00% | | | | | |
| 3.  Printing and Distribution | | | - | 0.00% | | | | | |
| 4.  Meals Provided by  DOJ | | | | | | | | | |
| a.  Breakfast | | | - | 0.00% | | | | | |
| b.  Lunch | | | - | 0.00% | | | | | |
| c.  Dinner | | | - | 0.00% | | | | | |
| 5.   Refreshments Provided by DOJ | | | - | 0.00% | | | | | |
| 6.   M&IE for Attendees | | | - | 0.00% | | | | | |
| 7.   Lodging | | | - | 0.00% | | | | | |
| 8.   Common Carrier Transportation | | | - | 0.00% | | | | | |
| 9.   Local Transportation | | | - | 0.00% | | | | | |
| 10.  Conference Planner - Logistical | | | - | 0.00% | | | | | |
| 11.  Conference Planner - Programmatic | | | - | 0.00% | | | | | |
| 12.  Conference Trainer/Instructor/Presenter/Facilitator | | | - | 0.00% | | | | | |
| 13.  Other Costs:  *( Itemize Below)* | | | | | | | | | |
| | | | - | 0.00% | | | | | |
| | | | - | 0.00% | | | | | |
| | | | - | 0.00% | | | | | |
| | | | - | 0.00% | | | | | |
| | | | - | 0.00% | | | | | |
| 14.   Total Conference Cost: *(Auto-populates)* | $          - | $          - | $          - | 0.00% | | | | | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
3 of 6

COPS-AR-0842

**C. MEALS & REFRESHMENTS THRESHOLD CALCULATOR**

| CONFERENCE LOCATION: | PER DIEM RATE | |
|---|---|---|
| 1. Continental United States MI&E | GSA Per-Diem Rates | |
| 2. Hawaii, Alaska, US Territories & Possessions MI&E | DOD Per-Diem Rates | |
| 3. Foreign Country MI&E | State Department Per-Diem Rates | |

| D. MEALS | NUMBER OF TIMES MEAL IS SERVED | NUMBER OF ATTENDEES | PER PERSON THRESHOLD ($) | TOTAL JMD THRESHOLD ($) |
|---|---|---|---|---|
| 1. Breakfast | | 0 | SELECT PER DIEM RATE | N/A |
| 2. Lunch | | 0 | SELECT PER DIEM RATE | N/A |
| 3. Dinner | | 0 | SELECT PER DIEM RATE | N/A |

**E. OTHER THRESHOLDS CALCULATOR**

| COST CATEGORY: | NUMBER OF ATTENDEES | PER PERSON THRESHOLD ($) | TOTAL JMD THRESHOLD ($) |
|---|---|---|---|
| 1. Conference Space & Audio-visual Equipment and Services | 0 | $ 25 | $ - |
| 2. Logistical Conference Planner | 0 | $ 50 | $ - |
| 3. Programmatic Conference Planner | 0 | $ 200 | $ - |

**F. JUSTIFICATION IF SUBMITTING CONFERENCE REQUEST FORM WITH ESTIMATED COSTS OVER THRESHOLD** *(Complete if cells turn YELLOW):*

| | |
|---|---|
| 1. Conference Space & Audio-visual Equipment and Services | |
| 2. Refreshments | |
| 3. Logistical Conference Planner | |
| 4. Programmatic Conference Planner | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To: JMD Finance Staff, TSG at Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
4 of 6

COPS-AR-0843

**G.  JUSTIFICATION REQUIRED FOR CONFERENCES WITH MEALS (*Complete if cells turn YELLOW*):**

| Government Provided Meals | |
|---|---|

**H.  JUSTIFICATION FOR NON-FEDERAL FACILITY *(Complete if cells turn YELLOW)* :**

| Justification for Using a Non-Federal Facility *(Drop Down)* | |
|---|---|

**I. FACILITIES CONSIDERED**

| NAME | FACILITY TYPE *(Drop Down)* | TOTAL EST. CONFERENCE COST | SELECTED (Y/N) | REASON FOR USE OR NON-USE |
|---|---|---|---|---|
| | **0** | $           - | YES | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
5 of 6

COPS-AR-0844

**J. ESTIMATED ATTENDEE INFORMATION**

| ATTENDEE DUTY STATION | ATTENDEE ORGANIZATION | NUMBER OF ATTENDEES |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL - *(Breakout must match entry on line A23)* | | 0 |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
6 of 6

COPS-AR-0845

# Appendix E. Enhancement of contractor protection from reprisal for disclosure of certain information (41 U.S.C. § 4712)

**(a)** **Prohibition of reprisals**.--

**(1)** **In general**.--An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

**(2)** **Persons and bodies covered**.--The persons and bodies described in this paragraph are the persons and bodies as follows:

**(A)** A Member of Congress or a representative of a committee of Congress.

**(B)** An Inspector General.

**(C)** The Government Accountability Office.

**(D)** A Federal employee responsible for contract or grant oversight or management at the relevant agency.

**(E)** An authorized official of the Department of Justice or other law enforcement agency.

**(F)** A court or grand jury.

**(G)** A management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct.

**(3)** **Rules of construction**.--For the purposes of paragraph (1)--

**(A)** an employee who initiates or provides evidence of contractor, subcontractor, or grantee misconduct in any judicial or administrative proceeding relating to waste, fraud, or abuse on a Federal contract or grant shall be deemed to have made a disclosure covered by such paragraph; and

**(B)** a reprisal described in paragraph (1) is prohibited even if it is undertaken at the request of an executive branch official, unless the request takes the form of a non-discretionary directive and is within the authority of the executive branch official making the request.

**(b)** **Investigation of complaints**.--

**(1)** **Submission of complaint**.--A person who believes that the person has been subjected to a reprisal prohibited by subsection (a) may submit a complaint to the Inspector General of the executive agency involved. Unless the Inspector General determines that the complaint is frivolous, fails to allege a violation of the prohibition in subsection (a), or has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant, the Inspector General shall investigate the complaint and, upon completion of such investigation, submit a report of the findings of the investigation to the person, the contractor or grantee concerned, and the head of the agency.

COPS-AR-0846

**(2) Inspector General action**.--

**(A) Determination or submission of report on findings**.--Except as provided under subparagraph (B), the Inspector General shall make a determination that a complaint is frivolous, fails to allege a violation of the prohibition in subsection (a), or has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant or submit a report under paragraph (1) within 180 days after receiving the complaint.

**(B)** Extension of time.--If the Inspector General is unable to complete an investigation in time to submit a report within the 180-day period specified in subparagraph (A) and the person submitting the complaint agrees to an extension of time, the Inspector General shall submit a report under paragraph (1) within such additional period of time, up to 180 days, as shall be agreed upon between the Inspector General and the person submitting the complaint.

**(3) Prohibition on disclosure**.--The Inspector General may not respond to any inquiry or disclose any information from or about any person alleging the reprisal, except to the extent that such response or disclosure is--

**(A)** made with the consent of the person alleging the reprisal;

**(B)** made in accordance with the provisions of section 552a of title 5 or as required by any other applicable Federal law; or

**(C)** necessary to conduct an investigation of the alleged reprisal.

**(4) Time limitation**.--A complaint may not be brought under this subsection more than three years after the date on which the alleged reprisal took place.

**(c) Remedy and enforcement authority**.--

**(1)** In general.--Not later than 30 days after receiving an Inspector General report pursuant to subsection (b), the head of the executive agency concerned shall determine whether there is sufficient basis to conclude that the contractor or grantee concerned has subjected the complainant to a reprisal prohibited by subsection (a) and shall either issue an order denying relief or shall take one or more of the following actions:

**(A)** Order the contractor or grantee to take affirmative action to abate the reprisal.

**(B)** Order the contractor or grantee to reinstate the person to the position that the person held before the reprisal, together with compensatory damages (including back pay), employment benefits, and other terms and conditions of employment that would apply to the person in that position if the reprisal had not been taken.

**(C)** Order the contractor or grantee to pay the complainant an amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees) that were reasonably incurred by the complainant for, or in connection with, bringing the complaint regarding the reprisal, as determined by the head of the executive agency.

**Exhaustion of remedies**.--If the head of an executive agency issues an order denying relief under paragraph (1) or has not issued an order within 210 days after the submission of a complaint under subsection (b), or in the case of an extension of time under paragraph (b)(2)(B), not later than 30 days after the expiration of the extension of time, and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction

COPS-AR-0847

over such an action without regard to the amount in controversy. Such an action shall, at the request of either party to the action, be tried by the court with a jury. An action under this paragraph may not be brought more than two years after the date on which remedies are deemed to have been exhausted.

**(2)** **Admissibility of evidence**.--An Inspector General determination and an agency head order denying relief under paragraph (2) shall be admissible in evidence in any de novo action at law or equity brought pursuant to this subsection.

**(3)** **Enforcement of orders**.--Whenever a person fails to comply with an order issued under paragraph (1), the head of the executive agency concerned shall file an action for enforcement of such order in the United States district court for a district in which the reprisal was found to have occurred. In any action brought under this paragraph, the court may grant appropriate relief, including injunctive relief, compensatory and exemplary damages, and attorney fees and costs. The person upon whose behalf an order was issued may also file such an action or join in an action filed by the head of the executive agency.

**(4)** **Judicial review**.--Any person adversely affected or aggrieved by an order issued under paragraph (1) may obtain review of the order's conformance with this subsection, and any regulations issued to carry out this section, in the United States court of appeals for a circuit in which the reprisal is alleged in the order to have occurred. No petition seeking such review may be filed more than 60 days after issuance of the order by the head of the executive agency. Review shall conform to chapter 7 of title 5. Filing such an appeal shall not act to stay the enforcement of the order of the head of an executive agency, unless a stay is specifically entered by the court.

**(5)** **Burdens of proof**.--The legal burdens of proof specified in section 1221(e) of title 5 shall be controlling for the purposes of any investigation conducted by an Inspector General, decision by the head of an executive agency, or judicial or administrative proceeding to determine whether discrimination prohibited under this section has occurred.

**(6)** **Rights and remedies not waivable**.--The rights and remedies provided for in this section may not be waived by any agreement, policy, form, or condition of employment.

**(d)** **Notification of employees**.--The head of each executive agency shall ensure that contractors, subcontractors, and grantees of the agency inform their employees in writing of the rights and remedies provided under this section, in the predominant native language of the workforce.

**(e)** **Construction**.--Nothing in this section may be construed to authorize the discharge of, demotion of, or discrimination against an employee for a disclosure other than a disclosure protected by subsection (a) or to modify or derogate from a right or remedy otherwise available to the employee.

**(f)** **Exceptions**.--

**(1)** This section shall not apply to any element of the intelligence community, as defined in section 3(4) of the National Security Act of 1947 (50 U.S.C. § 401a(4)).

**(2)** This section shall not apply to any disclosure made by an employee of a contractor, subcontractor, or grantee of an element of the intelligence community if such disclosure--

**(A)** relates to an activity of an element of the intelligence community; or

**(B)** was discovered during contract, subcontract, or grantee services provided to an element of the intelligence community.

COPS-AR-0848

2024 COPS Office Community Policing Development (CPD) Program Award Owner's Manual

(g) **Definitions**.--In this section:

    **(1)** The term "abuse of authority" means an arbitrary and capricious exercise of authority that is inconsistent with the mission of the executive agency concerned or the successful performance of a contract or grant of such agency.

    **(2)** The term "Inspector General" means an Inspector General appointed under the Inspector General Act of 1978 and any Inspector General that receives funding from, or has oversight over contracts or grants awarded for or on behalf of, the executive agency concerned.

(h) **Construction**.--Nothing in this section, or the amendments made by this section, 1 shall be construed to provide any rights to disclose classified information not otherwise provided by law.

**[(i) Repealed by Pub.L. 114-261, § 1(a)(3)(A)(ii), Dec. 14, 2016, 130 Stat. 1362]**

COPS-AR-0849

# Appendix F. 2 C.F.R. Appendix II to Part 200: Contract provisions for nonfederal entity contracts under federal awards

In addition to other provisions required by the Federal agency or non-Federal entity, all contracts made by the non-Federal entity under the Federal award must contain provisions covering the following, as applicable.

(A) Contracts for more than the simplified acquisition threshold, which is the inflation adjusted amount determined by the Civilian Agency Acquisition Council and the Defense Acquisition Regulations Council (Councils) as authorized by 41 U.S.C. 1908, must address administrative, contractual, or legal remedies in instances where contractors violate or breach contract terms, and provide for such sanctions and penalties as appropriate.

(B) All contracts in excess of $10,000 must address termination for cause and for convenience by the non-Federal entity including the manner by which it will be effected and the basis for settlement.

(C) Equal Employment Opportunity. Except as otherwise provided under 41 CFR Part 60, all contracts that meet the definition of "federally assisted construction contract" in 41 CFR Part 60-1.3 must include the equal opportunity clause provided under 41 CFR 60-1.4(b), in accordance with Executive Order 11246, "Equal Employment Opportunity" (30 FR 12319, 12935, 3 CFR Part, 1964-1965 Comp., p. 339), as amended by Executive Order 11375, "Amending Executive Order 11246 Relating to Equal Employment Opportunity," and implementing regulations at 41 CFR part 60, "Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor."

(D) Davis-Bacon Act, as amended (40 U.S.C. 3141-3148). When required by Federal program legislation, all prime construction contracts in excess of $2,000 awarded by non-Federal entities must include a provision for compliance with the Davis-Bacon Act (40 U.S.C. 3141-3144, and 3146-3148) as supplemented by Department of Labor regulations (29 CFR Part 5, "Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction"). In accordance with the statute, contractors must be required to pay wages to laborers and mechanics at a rate not less than the prevailing wages specified in a wage determination made by the Secretary of Labor. In addition, contractors must be required to pay wages not less than once a week. The non-Federal entity must place a copy of the current prevailing wage determination issued by the Department of Labor in each solicitation. The decision to award a contract or subcontract must be conditioned upon the acceptance of the wage determination. The non-Federal entity must report all suspected or reported violations to the Federal awarding agency. The contracts must also include a provision for compliance with the Copeland "Anti-Kickback" Act (40 U.S.C. 3145), as supplemented by Department of Labor regulations (29 CFR Part 3, "Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States"). The Act provides that each contractor or subrecipient must be prohibited from inducing, by any means, any person employed in the construction, completion, or repair of public work, to give up any part of the compensation to which he or she is otherwise entitled. The non-Federal entity must report all suspected or reported violations to the Federal awarding agency.

(E) Contract Work Hours and Safety Standards Act (40 U.S.C. 3701-3708). Where applicable, all contracts awarded by the non-Federal entity in excess of $100,000 that involve the employment of mechanics or laborers must include a provision for compliance with 40 U.S.C. 3702 and 3704, as supplemented by Department of Labor regulations (29 CFR Part 5). Under 40 U.S.C. 3702 of the Act, each contractor must be required to compute the wages of every mechanic and laborer on the basis of a standard work week of 40 hours. Work in excess of the standard work week is permissible provided that the worker is compensated at a rate of not less than one and a half times the basic rate of pay for all hours worked in excess of 40 hours in the work week. The requirements of

COPS-AR-0850

40 U.S.C. 3704 are applicable to construction work and provide that no laborer or mechanic must be required to work in surroundings or under working conditions which are unsanitary, hazardous or dangerous. These requirements do not apply to the purchases of supplies or materials or articles ordinarily available on the open market, or contracts for transportation or transmission of intelligence.

(F) Rights to Inventions Made Under a Contract or Agreement. If the Federal award meets the definition of "funding agreement" under 37 CFR §401.2 (a) and the recipient or subrecipient wishes to enter into a contract with a small business firm or nonprofit organization regarding the substitution of parties, assignment or performance of experimental, developmental, or research work under that "funding agreement," the recipient or subrecipient must comply with the requirements of 37 CFR Part 401, "Rights to Inventions Made by Nonprofit Organizations and Small Business Firms Under Government Grants, Contracts and Cooperative Agreements," and any implementing regulations issued by the awarding agency.

(G) Clean Air Act (42 U.S.C. 7401-7671q.) and the Federal Water Pollution Control Act (33 U.S.C. 1251-1387), as amended—Contracts and subgrants of amounts in excess of $150,000 must contain a provision that requires the non-Federal award to agree to comply with all applicable standards, orders or regulations issued pursuant to the Clean Air Act (42 U.S.C. 7401-7671q) and the Federal Water Pollution Control Act as amended (33 U.S.C. 1251-1387). Violations must be reported to the Federal awarding agency and the Regional Office of the Environmental Protection Agency (EPA).

(H) Debarment and Suspension (Executive Orders 12549 and 12689)—A contract award (see 2 CFR 180.220) must not be made to parties listed on the government wide exclusions in the System for Award Management (SAM), in accordance with the OMB guidelines at 2 CFR 180 that implement Executive Orders 12549 (3 CFR part 1986 Comp., p. 189) and 12689 (3 CFR part 1989 Comp., p. 235), "Debarment and Suspension." SAM Exclusions contains the names of parties debarred, suspended, or otherwise excluded by agencies, as well as parties declared ineligible under statutory or regulatory authority other than Executive Order 12549.

(I) Byrd Anti-Lobbying Amendment (31 U.S.C. 1352)—Contractors that apply or bid for an award exceeding $100,000 must file the required certification. Each tier certifies to the tier above that it will not and has not used Federal appropriated funds to pay any person or organization for influencing or attempting to influence an officer or employee of any agency, a member of Congress, officer or employee of Congress, or an employee of a member of Congress in connection with obtaining any Federal contract, grant or any other award covered by 31 U.S.C. 1352. Each tier must also disclose any lobbying with non-Federal funds that takes place in connection with obtaining any Federal award. Such disclosures are forwarded from tier to tier up to the non-Federal award.

(J) See § 200.323.

(K) See § 200.216.

[78 FR 78608, Dec. 26, 201, as amended at 79 FR 75888, Dec. 19, 2014; 85 FR 49577, Aug. 13, 2020]

COPS-AR-0851

# Appendix G. Remittance of Interest Earned Amounts

## 2 CFR § 200.305 (b)(9) – Payment (remittance of interest earned)

1. *Interest earned amounts up to $500 per year may be retained by the non-federal entity for administrative expense. Any additional interest earned on federal advance payments deposited in interest-bearing accounts must be remitted annually to the Department of Health and Human Services Payment Management System (PMS) through an electronic medium using either Automated Clearing House (ACH) network or a Fedwire Funds Service payment. Remittances must include pertinent information of the payee and nature of payment in the memo area (often referred to as "addenda records" by Financial Institutions) as that will assist in the timely posting of interest earned on federal funds. Pertinent details include the Payee Account Number (PAN) if the payment originated from PMS, or Agency information if the payment originated from ASAP, NSF or another federal agency payment system. The remittance must be submitted as follows:*

    i.    For ACH Returns:

    Routing Number: 051036706
    Account number: 303000
    Bank Name and Location: Credit Gateway - ACH Receiver St. Paul, MN

    ii.   For Fedwire Returns*:

    Routing Number: 021030004
    Account number: 75010501
    Bank Name and Location: Federal Reserve Bank Treas NYC/Funds Transfer Division New York, NY

    (* Please note organization initiating payment is likely to incur a charge from your Financial Institution for this type of payment)

    iii.  For International ACH Returns:

    Beneficiary Account: Federal Reserve Bank of New York/ITS (FRBNY/ITS)
    Bank: Citibank N.A. (New York)
    Swift Code: CITIUS33
    Account Number: 36838868
    Bank Address: 388 Greenwich Street, New York, NY 10013
    Payment Details (Line 70): Agency Name (abbreviated when possible) and ALC
    Agency POC: Michelle Haney, 301-492-5065

    iv.   For recipients that do not have electronic remittance capability, please make check** payable to: "The Department of Health and Human Services."

    Mail Check to Treasury approved lockbox:
    HHS Program Support Center, P.O. Box 530231, Atlanta, GA 30353-0231

    (** Please allow 4-6 weeks for processing of a payment by check to be applied to the appropriate PMS account)

Any additional information/instructions may be found on the PMS Web site at **https://pms.psc.gov/**. Instructions for returning interest on can be found at **https://pms.psc.gov/grant-recipients/returning-funds-interest.html**.

COPS-AR-0852

# Appendix H. Additional resources for Cooperative Agreement recipients

All recipients must follow the guidance in the financial fact sheets as outlined in this manual. The following are the fact sheets that can be found on the **Award Management Materials web page**:

- *Grant Adjustment Modifications – Budget Modification Fact Sheet*

- *Consultant Contractor Fact Sheet*

- *Indirect Costs Fact Sheet*

- *Program Income Fact Sheet*

- *Sole Source Justification Fact Sheet*

In addition to the above fact sheets, recipients should also refer to **The DOJ Grants Financial Guide**. The DOJ Grants Financial Guide (the "Guide") serves as the primary reference manual to assist OJP, OVW, and COPS Office award recipients in fulfilling their fiduciary responsibility to safeguard grant funds and ensure funds are used for the purposes for which they were awarded. It compiles a variety of laws, rules and regulations that affect the financial and administrative management of your award. There may be instances where the requirements may differ among the three grant-making components; to the extent possible, those differences are spelled out throughout the Guide. However, recipients (and subrecipients) should refer to the award terms and conditions outlined in this Award Owner's Manual to determine the specific requirements that apply to your award.

Some recipients may be awarded Cooperative Agreements to develop reports, publications, manuals, training, videos, and other products. The Cooperative Agreement, which is included in the Award Document, includes customized tasks and deliverables that may require the recipient to follow one or more of these resource documents or fact sheets applicable to their project:

- ***COPS Office Logo Standards Manual***
- ***In Person Curriculum Standards Guide***
- ***Instructor Quality Assurance Guide***
- **Non-TOT Instructor Guide Template**
- **Non-TOT Participant Guide Template**
- **Non-TOT PowerPoint Background**
- ***Online Curriculum Process Guide***
- **TOT Instructor Guide Template**
- **TOT Participant Guide Template**
- **TOT PowerPoint Background**

- ***Video Development Process Guide***
- ***The ADDIE Model of Instructional Design Fact Sheet***
- ***The COPS Office Editorial and Graphics Style Manual: Guide for Authors, New Revised Third Edition***
- ***Training Fact Sheet***
- ***Section 508 of the Rehabilitation Act of 1973***
- ***Webinar Fact Sheet***
- **Webinar Template**

COPS-AR-0853

# Glossary of Terms

**allowable costs.** Allowable costs are costs that will be paid for by this award program. Upon review of your submitted budget, any unallowable costs were removed. The award financial information included in your award package specifies your allowable costs, contains the final budget category amounts for which your organization was approved, and notes any relevant revisions that were made to your original budget submission.

**assistance listing.** The assistance listing contains a description and index of all forms of federal assistance. Each program is assigned an assistance listing number, which is used by auditors to track award revenues. It is also used in participating states by State Single Points of Contact in conducting the required intergovernmental reviews under Executive Order 12372. The assistance listing number for COPS Office awards is 16.710.

**audit.** Work done by auditors, including both the Office of the Inspector General (OIG) and state or local auditors, to examine financial statements and to review

- compliance with laws and regulations;
- economy and efficiency of operations;
- effectiveness in achieving program results;
- allowability of costs claimed against the award.

**authorized representative.** The authorized representatives are the individuals in your organization who have final authority and responsibility for all programmatic and financial decisions regarding this award. At the time of award application, your agency listed the authorized representatives for your agency. For non–law enforcement agencies (institutions of higher education, private organizations, etc.), the authorized representatives are the programmatic and financial officials who have the ultimate signatory authority to sign contracts on behalf of your organization. These executives are listed on your award document and are understood to be your authorized representatives. If any of the executive information is incorrect, please **revise** the information via JustGrants. For any assistance, please reference the **https://justicegrants.usdoj.gov/training/jarg-entity-management.pdf**.

**award end date.** This is the date until which your agency is authorized to purchase items or hire positions that were approved by the COPS Office. The award end date is found on your award document. Recipients may not make any purchases or hire any positions prior to this date without written approval from the COPS Office.

**award number.** The award number identifies your organization's award and can be found on your award package. This number should be used as a reference when corresponding with the COPS Office. Your award number is in the format 15JCOPS-24-GG-XXXXX-XXXX for awards made in FY 2024. The COPS Office tracks award information based upon this number.

**award start date.** This is the date on or after which your agency is authorized to purchase or hire any allowable equipment, services, personnel, or other costs that were approved by the COPS Office. The award start date is found on your award package. Recipients may not expend funds prior to this date without written approval from the COPS Office.

**career law enforcement officer.** The COPS Office statute defines a career law enforcement officer as a person hired on a permanent basis who is authorized by law, or by a state or local public agency, to engage in or oversee the prevention, detection, or investigation of violations of criminal laws.

**closeout.** This is the process in which the awarding agency, the COPS Office, determines that all applicable administrative actions and all required work and conditions of the award have been completed and met by the recipient and awarding agency.

**cognizant federal agency.** Your cognizant federal agency is generally the federal agency that provides your agency with the most federal money. The Office of Management and Budget (OMB) may have already assigned your cognizant federal agency to you. If this is the first federal award that your organization has received, the U.S. Department of Justice (DOJ) is your cognizant federal agency.

**community policing.** Community policing is a philosophy that promotes organizational strategies that support the systematic use of partnerships and problem-solving techniques to proactively address the immediate conditions that give rise to public safety issues such as violent crime, nonviolent crime, and fear of crime.

**consortium.** A consortium is a group of two or more governmental entities that agree to form a partnership to provide law enforcement services to their constituent communities.

**computing devices.** Computing devices are machines used to acquire, store, analyze, process, and publish data and other information electronically, including accessories (or "peripherals") for printing, transmitting, and receiving, or storing electronic information.

**cooperative agreement.** A legal instrument of financial assistance between a federal awarding agency and a nonfederal entity to carry out a public purpose authorized by a law of the United States that, consistent with 31 U.S.C. § 6302-6305, provides for substantial involvement between the federal awarding agency and the non-federal entity in carrying out the activity contemplated by the federal award.

**COPS Office.** The Office of Community Oriented Policing Services (COPS Office) is the office within the U.S. Department of Justice that is the grantor or awarding agency for your award. The COPS Office is responsible for assisting your agency with the administration and maintenance of your award for the entire award period. You can reach the COPS Office at 800-421-6770.

**COPS Office finance staff accountants.** The COPS Office finance staff accountants are responsible for your agency's financial and budgetary needs related to this award. A staff accountant has been assigned to your state and is available to answer any questions that you may have concerning the Quarterly Financial Status Reports (SF_425) and other financial aspects of your award. To identify your staff accountant, please call the COPS Office Response Center at **AskCOPSRC@usdoj.gov**.

**COPS Office Program Manager.** COPS Office Program Managers are trained to assist you with implementing and maintaining your CPD award. A Program Manager is assigned to your project and is available to answer any questions that you may have concerning the administrative, programmatic, and substantive aspects of your award. Your Program Manager can assist you with such matters as requesting an extension on your award or modifying the award and reviewing outlines for project deliverables. The name and phone number of your COPS Office Program Manager is provided on the award congratulatory letter and available by contacting the COPS Office Response Center at **AskCOPSRC@usdoj.gov**.

**disallowed costs.** Disallowed costs means those charges that are determined to be unallowable, in accordance with the applicable Federal statutes, regulations, or the terms and conditions of the federal award.

COPS-AR-0855

**Employer Identification Number (EIN) / OJP vendor number.** This number is usually your agency's nine-digit federal tax identification number as assigned to you by the Internal Revenue Service (IRS). Your accounting/bookkeeping department should have this number. In some cases, the EIN has been previously assigned to another agency within your jurisdiction. In this instance, a new vendor number will be assigned to you by the Office of the Chief Financial Officer. The newly assigned number is to be used for COPS Office administrative purposes only and should not be used for IRS purposes.

**equipment.** Equipment is tangible personal property (including information technology systems) having a useful life of more than one year and a per-unit acquisition cost that equals or exceeds $5,000.

**federally recognized tribe.** Tribal entities that are recognized and eligible for funding and services from the Bureau of Indian Affairs (BIA) by virtue of their status as Indian tribes. They are acknowledged to have the immunities and privileges available to other federally recognized Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, power, limitations, and obligations of such tribes. Only federally recognized tribes are eligible to apply for COPS Office tribal award funds. For further information, contact BIA, Division of Tribal Government Services, MS-4631 – MIB, 1849 C Street NW, Washington, DC 20240, 202-208-2475.

**grant.** A legal instrument of financial assistance between a federal awarding agency and a non-federal entity to carry out a public purpose authorized by a law of the United States that, consistent with 31 U.S.C. § 6302-6305, does not provide for substantial involvement between the federal awarding agency and the non-Federal entity in carrying out the activity contemplated by the federal award.

**Grant Operations Staff.** COPS Office Grant Operations Staff are trained and available to assist you in addressing any compliance-related questions regarding your award. Grant monitoring specialists plan and conduct site visits and enhanced office-based grant reviews. During the life of your award, you may be selected for a monitoring site visit to assess your compliance with the terms and agreements of the award program, to review your community policing initiatives, and to provide technical and administrative support for your award. Please contact the COPS Office Response Center at **AskCOPSRC@usdoj.gov** if you have any compliance-related questions.

**Indian tribe.** For purposes of COPS Office awards, Indian tribe means any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act, which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians. See Pub. L. 106–113, div. B, title I, §116, 113 Stat. 1501A–21.

**indirect costs.** If approved for your program, indirect costs means those costs incurred for a common or joint purpose benefitting more than one cost objective, and not readily assignable to the cost objectives specifically benefitted, without effort disproportionate to the results achieved.

**institutions of higher education (IHE).** Institution of higher education is defined at 20 U.S.C. 1001.

**local budget cycle.** Your agency's fiscal year. Some common examples include January 1 to December 31, October 1 to September 30, and July 1 to June 30. Some local budget cycles may extend up to 24 months.

**matching funds.** What a locality must contribute as a cash match toward total allowable project costs over the life of the program.

COPS-AR-0856

**mobile data computer/laptop.** A Mobile Data Computer (MDC) is a computer terminal mounted in a vehicle that is linked via wireless communication to a network that is often integrated with a CAD system. MDCs enable officers to complete previously handwritten reports on a computer. This often eliminates the need to enter duplicate information on multiple reports.

**modified total direct cost.** Modified total direct cost (MTDC) means all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and up to the first $50,000 of each subaward (regardless of the period of performance of the subawards under the award). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs and the portion of each subaward in excess of $50,000. Other items may only be excluded when necessary to avoid a serious inequity in the distribution of indirect costs, and with the approval of the cognizant agency for indirect costs.

**National Incident-Based Reporting System (NIBRS).** A comprehensive reporting database. Agencies provide individual records for eight index crimes and 38 other offenses.

**nonfederal entity.** Nonfederal entity means a state, local government, Indian tribe, institution of higher education, or nonprofit organization that carries out a federal award as a recipient or subrecipient.

**nonprofit organization.** Nonprofit organization means any corporation, trust, association, cooperative, or other organization, not including institutions of higher education, that is operated primarily for scientific, educational, service, charitable, or similar purposes in the public interest; is not organized primarily for profit; and uses net proceeds to maintain, improve, or expand the operations of the organization.

**obligation of funds.** The COPS Office obligates federal funds when the award document is signed by the COPS Office Director or their designated official. For the recipient, award funds are obligated when monies are spent or orders are placed for purchasing approved technology or services under your CPD award. The term "encumbrance" is often used at the local and state levels to describe this type of transaction. Liquidated obligations are considered cash outlays or monies actually spent. Unliquidated obligations are obligations incurred and recorded but not yet paid (accrual basis of accounting) or not yet recorded and not yet paid (cash basis of accounting).

**OJP vendor number/EIN number.** This is your agency's nine-digit federal tax identification number assigned to you by the IRS. Your accounting/bookkeeping department should have this number.

If your EIN previously has been assigned to another agency within your jurisdiction, the Office of the Comptroller will assign a new OJP vendor number to you. The new assigned number is to be used for administrative purposes only, in connection with this award program, and should not be used for IRS purposes.

**participant support costs.** Participant support costs means direct costs for items such as stipends or subsistence allowances, travel allowances, and registration fees paid to or on behalf of participants or trainees (but not employees) in connection with conferences, or training projects.

**primary law enforcement authority.** An agency with primary law enforcement authority is the agency that is the first responder to calls for service, and has ultimate and final responsibility for the prevention, detection, or investigation of violations of criminal laws within its jurisdiction. Agencies are not considered to have primary law enforcement authority if they only respond to or investigate specific type(s) of crime(s), respond to or investigate crimes within a correctional institution, serve warrants, provide courthouse security, transport prisoners, or have cases referred to them for investigation or investigational support.

COPS-AR-0857

**program income.** Program income means gross income earned by the nonfederal entity that is directly generated by a supported activity or earned as a result of the federal award during the period of performance.

**Public Safety Partnership and Community Policing Act of 1994.** The COPS Office is charged with fulfilling the mandates of this law. The purposes of the law are to

- increase the number of community policing officers on the beat;

- provide additional and more effective training to law enforcement officers to enhance their problem-solving, service, and other skills needed in interacting with members of the community;

- encourage the development and implementation of innovative programs to permit members of the community to assist law enforcement agencies in the prevention of crime;

- encourage the development of new technologies to assist law enforcement agencies in reorienting the emphasis of their activities from reacting to crime to preventing crime.

**recipient.** The Uniform Guidance defines it as "Recipient means a non-Federal entity that receives a Federal award directly from a Federal awarding agency to carry out an activity under a Federal program. The term recipient does not include subrecipients. See also § 200.1 Non-Federal entity." 2 C.F.R. § 200.1.

**research and development.** Research and development (R&D) means all research activities, both basic and applied, and all development activities that are performed by non-Federal entities. The term "research" also includes activities involving the training of individuals in research techniques where such activities use the same facilities as other research and development activities and where such activities are not included in the instruction function. "Research" is defined as a systematic study directed toward fuller scientific knowledge or understanding of the subject studied. "Development" is the systematic use of knowledge and understanding gained from research directed toward the production of useful materials, devices, systems, or methods, including design and development of prototypes and processes.

**simplified acquisition threshold.** Simplified acquisition threshold means the dollar amount below which a nonfederal entity may purchase property or services using small purchase methods. Nonfederal entities adopt small purchase procedures in order to expedite the purchase of items costing less than the simplified acquisition threshold. The simplified acquisition threshold is set by the Federal Acquisition Regulation at 48 C.F.R. Subpart 2.1 (Definitions) and in accordance with 41 U.S.C. § 1908. Currently, the simplified acquisition threshold is $250,000.

**subaward.** Subaward means an award provided by a pass-through entity to a subrecipient for the subrecipient to carry out part of a federal award received by the pass-through entity. It does not include payments to a contractor or payments to an individual that is a beneficiary of a federal program. A subaward may be provided through any form of legal agreement, including an agreement that the pass-through entity considers a contract.

**subrecipient.** Subrecipient means a nonfederal entity that receives a subaward from a pass-through entity to carry out part of a federal program; but does not include an individual that is a beneficiary of such program. A subrecipient may also be a recipient of other federal awards directly from a federal awarding agency.

**supplanting.** For the purposes of your COPS Office CPD award, supplanting means replacing state, local, or Bureau of Indian Affairs (BIA) funds that otherwise would have been spent on award purposes with federal COPS Office funds. State, local, and tribal governments are prohibited from supplanting throughout the award period. This means that your agency may not use COPS Office funds to pay for any equipment/technology, services, personnel, or other items which, in the absence of the COPS Office program, would otherwise have been funded with state or

local funds or with funds supplied by the BIA. The COPS Office funds must instead be used to supplement, or increase, your budget on award purposes. For additional information on supplanting, please review the award condition titled "Supplementing, Not Supplanting" in this manual.

**supplies.** Supplies means all tangible personal property other than those described under equipment. A computing device is a supply if the acquisition cost is less than the lesser of the capitalization level established by the nonfederal entity for financial statement purposes or $5,000, regardless of the length of its useful life.

**System for Award Management (SAM).** The SAM database is the repository for standard information about federal financial assistance applicants, recipients, and subrecipients. Organizations that have previously submitted applications via **Grants.gov** are already registered with SAM, as it is a requirement for **Grants.gov** registration. Please note, however, that applicants must update or renew their SAM at least once per year to maintain an active status. Information about registration procedures can be accessed at **www.sam.gov**.

**unique entity identifier.** The Unique Entity ID (UEI) is a 12-character alpha-numeric value and once issued, will not change. Entities. A unique entity identifier is required of all applicants for COPS Office awards and must be updated every year in SAM.gov. This number will be used by the Federal Government to better track award recipient information throughout the award cycle and to provide consistent name and address data for electronic award application systems.

COPS-AR-0859

# 2024 COPS Office Community Policing Development (CPD) Program Award Owner's Manual

This manual was created to assist COPS Office CPD Program recipients with the administrative and financial matters associated with their award.

For more information about your award, please contact your COPS Office Program Manager. If you do not know the name or telephone number of your Program Manager, please contact the COPS Office Response Center at **AskCOPSRC@usdoj.gov**.



U.S. Department of Justice
Office of Community Oriented Policing Services
145 N Street NE
Washington, DC 20530

To obtain details on COPS Office programs,
call the COPS Office Response Center at 800-421-6770.
Visit the COPS Office online at **cops.usdoj.gov.**
Published August 2024

COPS-AR-0860



# DOJ Grants Financial Guide



**UNITED STATES DEPARTMENT OF JUSTICE**

OFFICE OF JUSTICE PROGRAMS

OFFICE ON VIOLENCE AGAINST WOMEN

OFFICE OF COMMUNITY ORIENTED POLICING SERVICES

Last Updated September 2025



COPS-AR-0861

## Table of Contents

FOREWORD ...............................................................................................II

## I. GENERAL INFORMATION ....................................................................1

1.1 Users ..................................................................................................1

1.2 Resources ..........................................................................................3

## II. PREAWARD REQUIREMENTS .............................................................5

2.1 Application Process ............................................................................5

2.2 Acceptance of Award and Award Conditions ....................................10

2.3 Standards For financial Management Systems ..................................12

## III. POSTAWARD REQUIREMENTS .........................................................16

3.1 Payments ............................................................................................16

3.2 Period of Availability of Funds ...........................................................20

3.3 Cost Sharing Requirements ...............................................................25

3.4 Program Income .................................................................................31

3.5 Adjustments to Awards ......................................................................36

3.6 Costs Requiring Prior Approval .........................................................40

3.7 Property Standards ............................................................................44

3.8 Procurement Under Awards of Federal Assistance ..........................52

3.9 Allowable Costs .................................................................................58

3.10 OJP/COPS Office Conference Approval, Planning, and Reporting ...66

3.11 Indirect Costs ...................................................................................89

3.12 OJP's Confidential Funds .................................................................93

3.13 Unallowable Costs ............................................................................100

3.14 Subrecipient Management and Monitoring .......................................104

3.15 Reporting Requirements ...................................................................111

3.16 Retention and Access Requirements for Records ...........................115

3.17 Remedies for Noncompliance ..........................................................117

3.18 Closeout ...........................................................................................119

3.19 Audit Requirements ..........................................................................122

3.20 Grant Fraud, Waste, and Abuse ......................................................128

3.21 OJP's Payment Programs .................................................................133

3.22 Financial Management Training Requirements .................................138

## IV. ORGANIZATION STRUCTURE ...........................................................139

4.1 Organization Charts ...........................................................................139

## V. APPENDICES .......................................................................................140

5.1 Acronyms ...........................................................................................140

5.2 Glossary of Terms ..............................................................................142

5.3 Appendices I and II .............................................................................146

COPS-AR-0862

# Welcome to the *DOJ Grants Financial Guide*

## Foreword

We hope you find this guide useful and informative. If you have any questions or comments, please contact your appropriate DOJ Funding Source.

| TOP 10 TOPICS | |
| --- | --- |
| 1. **Financial Management Systems** | 6. **Audit Requirements** |
| 2. **Allowable Costs** | 7. **Conference Costs** |
| 3. **Unallowable Costs** | 8. **Adjustments to Awards** |
| 4. **Federal Financial Reports** | 9. **Accounting by Approved Budget Category** |
| 5. **Performance Reports** | 10. **Subrecipient Monitoring** |

The Department of Justice (DOJ) has three primary grant-making components, the Office of Justice Programs (OJP), the Office on Violence Against Women (OVW) and the Office of Community Oriented Policing Services (COPS Office). The mission of OJP is to provide innovative leadership to federal, state, local, and tribal justice systems by disseminating state-of-the-art knowledge and practices across America, and providing grants for the implementation of these crime fighting strategies. The mission of OVW is to provide federal leadership in developing the national capacity to reduce violence against women, and administer justice for and strengthen services to victims of domestic violence, dating violence, sexual assaults, and stalking. The mission of the COPS Office is to advance the practice of community policing by the nation's state, local, territory, and tribal law enforcement agencies through information and resources.

These three grant-making components provide Federal leadership in developing the nation's capacity to prevent and control crime, administer justice, and assist crime victims. they also provide policy guidance, financial control, and support services to their recipients in the areas of grants, accounting, and financial management.

Each grant-making component conducts programmatic monitoring through site visits and desk reviews, and provides technical assistance and training to recipients. Additionally, OJP's Office of the Chief Financial Officer (OCFO) conducts financial monitoring through site visits and desk reviews, and provides training to OJP's recipients in the Grants Financial Management Training Seminars.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> The DOJ Grants Financial Management Online Training is available to all DOJ grant-making component recipients.

The *DOJ Grants Financial Guide* (the *"Guide"*) serves as the primary reference manual to assist OJP, OVW, and COPS Office award recipients in fulfilling their fiduciary responsibility to safeguard grant funds and ensure funds are used for the purposes for which they were awarded. It compiles a variety of laws, rules and regulations that affect the financial and administrative management of your award. there may be instances where the requirements may differ among the three grant-making components; to the extent possible, those differences are spelled out throughout this *Guide*. However, recipients (and subrecipients) should refer to their award terms and conditions to determine the specific requirements that apply to their award. We have provided references to the underlying laws and regulations as much as possible.

COPS-AR-0863

Foreword

This *Guide* should be the starting point for all recipients and subrecipients of DOJ grants and cooperative agreements in ensuring the effective day-to-day management of awards.

For additional information on grants management, please visit the website of the Results-Oriented Accountability for Grants Council on Financial Assistance Reform at https://www.performance.gov/. The Government Printing Office also maintains electronic copies of the Code of Federal Regulations at https://ecfr.federalregister.gov and e-CFR at https://www.ecfr.gov.

We are pleased to respond to any questions not covered by this *Guide* and welcome suggestions to improve the utility of the Guide and its content. Please feel free to contact the OCFO's Customer Service Center at 1-800- 458-0786, OVW Grants Financial Management Division at 1-888-514-8556, or COPS Office Response Center at 1-800-421-6770 with any financial management questions or suggested revisions. In addition, questions and comments can also be directed to the OCFO via e-mail at ask.ocfo@usdoj.gov, OVW via email at OVW.GFMD@usdoj.gov, or COPS Office via email at askCopsRC@usdoj.gov.

| | | |
|---|---|---|
| Cory Randolph | Maureen Henneberg | **Ginger Baran Lyons** |
| Deputy Director | Deputy Assistant Attorney General | Supervisory Offical |
| COPS Office | OJP | OVW |

COPS-AR-0864

# I. General Information

## 1.1 USERS

This *Guide* is provided for the use of all recipients and their subrecipients of Federal grant programs administered by the three primary Department of Justice (DOJ)grant-making components. The *Guide* was developed to serve as a compilation of the various laws and regulations governing DOJ grants financial management and administration. Any individual who works for a recipient or subrecipient should use this Guide as a reference for financial and administrative management of DOJ-funded grant programs or projects. These individuals may include administrators, financial management specialists, grants management specialists, accountants, and auditors. This Guide also may be used as a training resource for new employees.

### Recipients

- A recipient is an entity that receives a Federal award directly from a Federal agency to carry out an activity under a Federal program. The term does not include subrecipients or individuals that are participants or beneficiaries of the award.
- Recipients are required to adhere to the applicable law of their jurisdiction, and the financial and administrative rules in this *Guide*. However, other programmatic and technical requirements (for example, as set out in award conditions or contained in program-specific guidelines) may also apply.
- Recipients are required to adhere to all applicable uniform (grants) administrative requirements, cost principles, and audit requirements set forth in 2 C.F.R. Part 200 and other applicable law.

### Subrecipients

- A subrecipient is an entity that receives a subaward from a pass-through entity to carry out part of a Federal award. The term subrecipient does not include  a beneficiary or participant. A subrecipient may also be a recipient of other Federal awards directly from a Federal agency.
- Subrecipients are required to adhere to the applicable law of their jurisdiction and the financial and administrative rules in this Guide. The pass-through entity may also impose additional financial and administrative requirements.
- Subrecipients are also required to adhere to all applicable uniform (grant) administrative requirements, cost principles, and audit requirements set forth in 2 C.F.R. § 200 and other applicable law.

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> When determining whether an entity receiving federal award funds is a subrecipient or a contractor, the legal document executed is NOT the driving determinant. See the definitions of contractor and subrecipient in 2 C.F.R. § 200.1. The substance of the relationship is more important than the form of the agreement. If program activities are delegated to another entity that delegation will generally be considered a subaward. On the other hand, if goods or services are purchased or procured from another entity for the recipient or subrecipient's own use, that activity will generally be considered a contract. For additional information on this topic, please refer to 2 C.F.R. § 200.331, subrecipient and contractor determinations.

# I. General Information

## 1.1 USERS

### For-Profit (or Commercial) Entities

For-profit organization generally means an organization or entity organized for the purpose of earning a profit. The term includes but is not limited to:

(1) An "S corporation" incorporated under subchapter S of the Internal Revenue Code;

(2) A corporation incorporated under another authority;

(3) A partnership;

(4) A limited liability company or partnership; and

(5) A sole proprietorship

In accordance with 2 C.F.R. § 200.101(a)(2), OJP/OVW applies 2 C.F.R. Part 200, subparts A through E (excluding 2 C.F.R. § 200.317 through 200.327), to for-profit (or commercial) entities. However, for-profit (or commercial) entities receiving funding through the COPS Office must comply with 2 C.F.R. Part 200, subparts A through E. In addition, in accordance with 2 C.F.R. § 200.400(g), the recipient or subrecipient must not earn or keep any profit resulting from Federal financial assistance unless expressly authorized by the terms and conditions of the Federal award.

To the extent allowable and consistent with applicable law, and unless expressed explicitly otherwise herein, this Guide applies to any recipient or subrecipient that is a for-profit (or commercial) entity. As used throughout the Guide, the term "recipients or subrecipients" includes for-profit entities.

### A Note about Payment Programs

Payment programs (also known as reimbursement- or reimbursable payment programs) provide payments to eligible participating jurisdictions for designated purposes but do not involve the post-award activities that take place under grants. Three examples of DOJ payment programs are the Bulletproof Vest Partnership (BVP) program and the State Criminal Alien Assistance Program (SCAAP), both administered by OJP's Bureau of Justice Assistance, and the Special Tribal Criminal Jurisdiction Reimbursement Program, administered by OVW. Under the BVP program, for instance, certain costs that a jurisdiction incurs to purchase body armor may be reimbursed. This Guide generally does not apply to payment programs, except where it discusses certain requirements applicable to payments made under those programs, according to their terms and conditions. Please visit the applicable payment program website for information about each program's specific requirements.

COPS-AR-0866

## I. General Information

### 1.2 RESOURCES

#### Government-Wide Grants Management Requirements and DOJ Regulatory Adoption

This DOJ Grants Financial Guide (Guide) includes references to the policies and guidance issued by the Office of Management and Budget (OMB). The largest division of the Executive Office of the President, OMB is responsible for implementing and enforcing the President's policies across the entire Federal Government.

OMB issued a government-wide framework for grants management, the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (2 C.F.R. Part 200), also known as the Uniform Guidance, in 2013.  DOJ has implemented the Uniform Guidance via DOJ regulation at 2 C.F.R. Part 2800.  OMB updates the Uniform Guidance from time-to-time.  This version of the Guide reflects the version of the Uniform Guidance in effect as of October 1, 2024.

The 2013 guidance superseded the following OMB requirements:

- OMB Circular A-21, Cost Principles for Educational Institutions;
- OMB Circular A-87, Cost Principles for State, Local, and Indian Tribal Governments;
- OMB Circular A-89, Federal Domestic Assistance Program Information;
- OMB Circular A-102, Grant Awards and Cooperative Agreements with State and Local Governments (Common Rule);
- OMB Circular A-110, Uniform Administrative Requirements for Awards and other Agreements, Institutions of Higher Education, Hospitals and other Non-Profit Organizations;
- OMB Circular A-122, Cost Principles for Non-Profit Organizations;
- OMB Circular A-133, Audits of States, Local Governments, and Non-Profit Organizations; and
- Sections of OMB Circular A-50, Audit Follow-up.

The following requirements remain in place:
- Government-wide Debarment and Suspension (Non-procurement) are codified at 2 C.F.R. Part 180, with DOJ-specific rules at 2 C.F.R. Part 2867.
- Government-wide Requirements for Drug-Free Workplace (Grants) is codified at 28 C.F.R. Part 83.
- Restrictions on lobbying are codified at 28 C.F.R. Part 69.

#### Applicability of the DOJ Grants Financial Guide

Refer to your award conditions for specific applicability of 2 C.F.R. Part 200 and this Guide. In general, you should follow the requirements in effect at the time of award.

This version of the Guide reflects the government-wide grant rules that went into effect (and were implemented by DOJ) on October 1, 2024. These requirements apply to Federal awards active on or after October 1, 2024 (with respect to actions after that date), and Federal awards made on or after that date.

COPS-AR-0867

# I. General Information

## 1.2 RESOURCES

Updates to specific provisions between major version updates will be noted in the affected provision, and/or in a Change History available online. Prior versions of the DOJ Grants Financial Guide are available for reference online.

For additional information on grants management, please visit the website of the United States Chief Financial Officers Council at Financial Assistance (cfo.gov). The most recently updated version of the CFR can be found at the following link: 2 C.F.R. Part 200.

### Office of the Inspector General Fraud Hotline

Recipients should report any allegations of fraud, waste, and abuse of grant funds to the appropriate DOJ grant-making component. In addition to reporting allegations to the grant-making component, allegations should be reported to the DOJ office of the Inspector General online at https://oig.justice.gov/hotline, by fax (202) 616-9881, or by mail:

U.S. Department of Justice office
of the Inspector General
Investigations Division
ATTN: Fraud Detection office
950 Pennsylvania Avenue N.W.
Washington, DC 20530

### Other Available Resources

- *Guide to Procurements Under DOJ Grants and Cooperative Agreements [PDF -563 Kb]*
- OVW Recipient Resources available at https://www.justice.gov/ovw/after-receiving-ovw-funds.
- JustGrants Resources and Training can be found at https//justicegrants.usdoj.gov.
- The OJP Support Team is available via email at JustGrants.Support@usdoj.gov or phone at 838-872-5175.
- OJP Recipient Resources can be found at https://www.ojp.gov/funding/implement/overview.
- The OVW JustGrants Helpdesk Support Team is available via email at OVW.JustGrantsSupport@usdoj.gov or phone at 1-866-655-4482.
- The COPS office Response Center is available at askCopsRC@usdoj.gov or phone at 1-800-421-6770.
- The Federal Funding Accountability and Transparency Act (FFATA) is available at https://www.fsrs.gov.
- Federal grant information is available at https://www.grants.gov.
- Federal Government regulation information is accessible at https://www.regulations.gov

COPS-AR-0868

## II. Preaward Requirements

### 2.1 APPLICATION PROCESS

#### Eligible Recipients

Eligibility requirements for DOJ awards can be found in the notices of funding opportunities, previously referred to as solicitations, available on awarding agency websites. Eligible applicants vary by program and may include one or more of the following categories: States (including the District of Columbia and U.S. territories), units of local government, Indian tribes and tribal organizations, institutions of higher education, hospitals, nonprofit organizations, courts, for-profit organizations, and (in limited circumstances) individuals.

OVW's website contains brief descriptions of OVW programs to assist potential OVW applicants in identifying programs for which they are eligible to apply. OVW program NOFOs will provide additional eligibility information each fiscal year.

#### Funding Opportunity Announcements

DOJ grant-making components announce notice of funding opportunities via Grants.gov. Applications are submitted through Grants.gov and JustGrants. A collection of available assistance programs can be found in the Assistance Listings available at https://sam.gov/content/assistance-listings. To view each grant-making DOJ component's available funding opportunities, visit the websites below:

- OJP — Current Funding Opportunities
- OVW — https://www.justice.gov/ovw/grant-programs
- COPS Office — https://cops.usdoj.gov/grants

#### Nondiscrimination Requirements

**Non-discrimination assurance:** Applicants must assure and certify, on the applicable awarding agency assurance form, compliance with all civil rights nondiscrimination requirements. These assurances and certifications are made by signing an assurances form that addresses various cross-cutting federal requirements, including those prohibiting unlawful discrimination. The applicable form typically is referenced in the program solicitation and signed during the application process (electronically for most programs).

**Office for Civil Rights:** The DOJ Office for Civil Rights (OCR) ensures that recipients of financial assistance from OJP, OVW, and COPS Office comply with federal laws that prohibit discrimination in both employment and the delivery of services or benefits based on race, color, national origin, sex, religion, and disability. In addition, federal law prohibits recipients of federal financial assistance from discriminating on the basis of age in the delivery of services or benefits. For more information see the OCR website.

**Discrimination findings:** In the event of a finding of discrimination, send a copy of the hearing findings to OCR. This applies to recipients of Federal funds if a Federal or State court or administrative agency finds through a due process hearing that a recipient, subrecipient, or contractor, has unlawfully discriminated.

COPS-AR-0869

# II. Preaward Requirements

## 2.1 APPLICATION PROCESS

**Other civil rights requirements:** Depending on the size of the organization, how much federal funding is received, and the program under which funds are received, recipients (and subrecipients in certain cases) may be required to submit an Equal Employment Opportunity Plan to OCR. If awarded Federal funds, more specific information on civil rights compliance, including requirements regarding submission of Equal Employment Opportunity Plan will be provided in the award documents. For additional information see Equal Employment Opportunity Plans.

### Intergovernmental Review

Intergovernmental review is a process described in Executive Order 12372 [PDF - 12 Kb], through which governments at the State and local levels coordinate in the review of proposed Federal financial assistance and direct Federal development.

For those DOJ grant programs that are subject to Executive Order 12372, applicants must access the SPOC-list-as-of-2023.pdf.  to find out about and, as applicable, comply with the applicant's State process under Executive Order 12372. As part of the grant application process, to complete the SF-424, applicants must make the appropriate selection (and provide any required information) in response to the question, "Is Application Subject to Review by State Under Executive Order 12372 Process?"

To determine if a DOJ program is subject to Executive Order 12372, look in the notice of funding opportunity (NOFO) or program announcement, check the program's Assistance listing entry, or contact the DOJ awarding agency.

### Application Submittal

Applicants for DOJ funding will submit an Application for Federal Assistance (SF-424) and if applicable, Disclosure of Lobbying Activities (SF-LLL) online through the federal grants portal Grants.Gov (www.grants.gov) and submit their full application including attachments in DOJ's JustGrants (https://justgrants.usdoj.gov/). Each NOFO will contain detailed technical instructions on how to register and apply for funding, as well as application submission deadlines for both systems.

**Note regarding applicant type on the SF-424:** Generally, applicants for DOJ grants are one of the following types of entities: States, units of local government, Indian tribes, nonprofit organizations, for-profit organizations, institutions of higher education, and (in limited circumstances) individuals. It is possible to select other applicant types, as appropriate.

### Application Review

DOJ awarding agencies are required to ensure that awards meet certain legislative, regulatory, and administrative requirements. This requires that each DOJ awarding agency review and assess each application to determine the following:

- The applicant is eligible for the specified program.
- The costs and activities in the application are for allowable, allocable, necessary, and reasonable costs.
- The applicant possesses the responsibility, financial management, fiscal integrity, and financial capability to administer Federal funds adequately and appropriately.

COPS-AR-0870

## II. Preaward Requirements

### 2.1 APPLICATION PROCESS

#### Pre-Award Risk Assessment

DOJ is required to review and assess the potential risks presented by applicants for Federal grants prior to making an award (2 C.F.R. § 200.206). DOJ will use a variety of factors, which may include financial capabilities and past performance, in a risk-based approach. To facilitate part of the risk assessment, DOJ applicants (other than an individual) may be required to complete a questionnaire to assess their financial capability and submit it to DOJ before they can be approved for an award.

#### DOJ High-Risk Grantee Designation

The DOJ's High-Risk Grantee Policy was adopted by its three-primary grant-making components: the Office of Justice Programs (OJP), the Office of Community Oriented Policing Services (COPS), and the Office on Violence Against Women (OVW). OJP's Office of Audit, Assessment, and Management (OAAM) is charged with administering the high-risk grantee (recipient) process on behalf of DOJ. When a recipient is designated as high-risk, all DOJ grant-making components must consider the recipient as high-risk.

The purpose of the high-risk policy is to provide DOJ with a means of continuing to fund much needed programs benefiting communities across the U.S., while maintaining proper stewardship of Federal funds and mitigating risk in the administration of DOJ-funded grant programs. It is important to note that high-risk recipients are not prohibited from applying for or receiving new awards from DOJ. However, high-risk recipients are managed and monitored closely, and any new awards these recipients receive are subject to additional restrictions, typically imposed through the inclusion of high-risk award conditions. Such conditions may be imposed not just at the beginning of an award, but at any time throughout the period of the award, if appropriate.

In general, a recipient may be designated as high-risk if any of the following apply to the recipient:

- Has a history of unsatisfactory performance;
- Is not financially stable;
- Has a management system that does not meet the standards set forth in 2 C.F.R. Part 200 (Subpart D-Post Federal Award Requirements (Standards for Financial and Program Management));
- Has not conformed to the award conditions of previous awards; or
- Is otherwise not responsible.

COPS-AR-0871

# II. Preaward Requirements

## 2.1 APPLICATION PROCESS

Under DOJ's policy, recipients may be designated as high-risk automatically, or as a result of a referral from sources such as a DOJ grant-making component or other federal grant-making organization.

- High-risk referrals can be made by any DOJ personnel who work with grants, and can result from a wide variety of reasons, including, but not limited to:
  - ▶ issues identified during programmatic or financial monitoring reviews, budget reviews, financial capability reviews, etc.;
  - ▶ concerns noted during the routine administration of awards;
  - ▶ audits/investigative issues;
  - ▶ complaints by recipient personnel, third parties, and/or the media, etc.
- Automatic high-risk designations are made by DOJ if *any* of the following conditions apply:
  - ▶ Recipient has open audit reports (OIG and Single Audit) with recommendation(s) that have been open for more than one year, and has not submitted documentation adequate to close the recommendation(s).*
  - ▶ Recipient has not provided a corrective action plan to the DOJ within 105 days of transmission of the audit report to the recipient.*
  - ▶ Recipient has audit reports with questioned costs in excess of $500,000 (regardless of the amount of time the audit report has been open).
  - ▶ Recipient has been referred to the Department of Treasury for collection because of their failure to timely repay funds owed on a DOJ award.
  - ▶ Recipient has been placed on the COPS Restricted Grantees List due to non-compliance with a previous COPS award(s).
  - ▶ Recipient has been recommended for government-wide suspension or debarment by a DOJ office or component.

The "*" associated with bullets 1 and 2, is that "Exceptions" to time-related automatic designations may be granted in limited circumstances (e.g. delays resulting from circumstances beyond grantee's control), if appropriately justified and documented.

If high-risk recipients do not comply with the additional conditions/restrictions imposed, or fail to make timely progress in addressing the issues that resulted in their high-risk designation, DOJ can consider more substantial sanctions, such as: withholding payments on current DOJ awards; suspension or termination of existing awards; barring the recipient from receiving future DOJ awards; and/or recommending the recipient for (non- procurement) government-wide suspension or debarment.

### Audit Issues

- DOJ may choose not to approve an applicant for an award if the applicant has an overdue audit report, an open audit report that has not been responded to, or if the applicant has not tried to resolve the issues identified in the audit.
- Failure to comply with audit requirements may cause an application to be rejected, or funds to be withheld until audit compliance is achieved.

COPS-AR-0872

## II. Preaward Requirements

### 2.1 APPLICATION PROCESS

#### Review of Applicant Federal Debt

The SF-424 asks if the applicant is delinquent on any Federal debt.

- The applicant is the organization that is requesting Federal assistance, not the person who signs the application as the authorized representative of the organization.
- Federal debt includes delinquent audit disallowances, loans, taxes, and any outstanding debts with the Treasury.

#### Unique Entity Identifier

Unless an exception applies, all applicants and recipients must have a unique entity identifier when applying for Federal awards and cooperative agreements (initial or supplemental awards) (2 C.F.R. Part 25 - Universal Identifier and System of Award Management). Refer to the applicable solicitation for requirements and instructions on how to obtain a unique entity identifier.

#### Maintaining an Active Registration in System for Award Management

The System for Award Management (SAM) is the Official U.S. Government system that collects, validates, stores, and disseminates data on organizations to help agencies in their acquisition missions, including Federal agency contract and assistance awards. The term "assistance awards" includes grants, cooperative agreements, and other forms of Federal assistance. Organizations must maintain an "active" registration in www.SAM.gov for the entire period of the award, which requires an annual update.

## Financial Analysis

DOJ will complete a financial review of the grant application to ensure that recipients are financially capable and have the financial integrity to administer Federal funds. As part of this review, each grant-making component will take all of the following steps:

- Perform a cost analysis of the project (may not be applicable to some formula programs).
- Obtain cost breakdowns, verify cost data, evaluate specific elements of cost, and examine data to determine the necessity, reasonableness, allowability, allocability, and appropriateness of the proposed cost.
- Review indirect cost rates and calculations if applicable. See Chapter 3.11 indirect costs.
- Determine the adequacy of the accounting system and operations to ensure that Federal funds, if awarded, will be expended in a reasonable manner.
- Applicants that have not received an award within the past 3 years may require an additional financial review.
- Review the status of any Federal debt that the applicant may have to ensure the debt is not delinquent, and other prescreening information, including checking SAM to ensure the organization is not suspended or debarred from receiving Federal funds.

COPS-AR-0873

## 2.2 ACCEPTANCE OF AWARD AND AWARD CONDITIONS

### Award Notification and Acceptance Procedures

After applications have gone through the review process and have been approved, the next step in this process is award notification. Here are the details:

- An email notification will be sent to the Application Submitter, the Authorized Representative(s) and the Entity Administrator to sign and accept their award.
- The entity must successfully set up their JustGrants account and enroll in the Automated Standard Application for Payments (ASAP) in order to manage their award.
- The email notification includes detailed instructions on how to access and accept the award in JustGrants.

> ☑ **ACTION ITEM**
>
> Recipients have 45 days from the award date to accept the award or the award may be rescinded.
>
> Prior to accepting an award, the Entity Administrator must assign a Financial Manager, a Grant Award Administrator and an Authorized Representative with the authority to accept on behalf of the organization for each award (COPS Office recipients must assign two Authorized Representatives). Additional instructions regarding accepting an award and assigning or changing roles in JustGrants can be found on the JustGrants Training page.
>
> Federal funds will not be disbursed to a recipient until the award is accepted. To decline the award, please contact the program manager identified in the award to discuss the reasons for this decision
>
> Direct questions concerning award notification and acceptance to the appropriate DOJ contact(s).

### Award Conditions

Award conditions are terms and conditions that are included with the award. Award conditions may include additional requirements covering areas such as programmatic and financial reporting, prohibited uses of Federal funds, consultant rates, changes in key personnel, and proper disposition of program income.

Some award conditions may be based on the program or the nature of the award itself. Regardless of the grant- making component or the award, there are several mandatory award conditions that will be included on any DOJ award. A list of all the mandatory award conditions for each DOJ grant-making component is available at the following links.

- OJP – https://ojp.gov/funding/Explore/SolicitationRequirements/MandatoryTermsConditions.htm
- OVW – https://www.justice.gov/ovw/award-conditions
- The COPS Office - standard award conditions are available at the COPS Office website.

II. Preaward Requirements

## 2.2 ACCEPTANCE OF AWARD AND AWARD CONDITIONS

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Failure to comply with award conditions may result in remedial action, which may include (but is not limited to) withholding award funds, disallowing costs, or suspending or terminating the award. DOJ also may take other legal action as appropriate.

COPS-AR-0875

## 2.3 STANDARDS FOR FINANCIAL MANAGEMENT SYSTEMS

### Accounting System

All recipients and subrecipients are required to establish and maintain adequate accounting systems and financial records and to accurately account for funds awarded to them. Recipients must have a financial management system in place that is able to record and report on the receipt, obligation, and expenditure of award funds. Keep detailed accounting records and documentation to track all of the following information:

- Federal funds awarded
- Federal funds drawn down
- Assistance Listings title and number
- Federal award identification number
- Year award issued
- Name of DOJ grant-making component or pass-through agency
- Cost sharing funds of State, local, and private organizations, when applicable
- Program income
- Subawards (amount, purpose, award conditions, and current status)
- Contracts expensed against the award
- Expenditures

Please consult Subpart D of 2 C.F.R. Part 200, including 2 C.F.R. § 200.302, for more information.

> **▶ OJP SPECIFIC TIP**
>
> For the OVC Victim Compensation Program, there is no financial requirement to identify the source of **individual payments** to crime victims as either federal or state dollars, nor is there any requirement that restitution recoveries or other refunds be tracked to federal or state dollars paid out to victims. However, the state agency administering funds under this program must have in place an adequate accounting system to capture and track all financial transactions related to the victim compensation grant; and upon request, must provide authorized representatives with access to and the right to examine all records, books, paper or documents related to the victim compensation grant per the VOCA Victim Compensation Program Guidelines [ PDF - 162 Kb] – 66 Fed. Reg. 27158 (May 16, 2001), Sections V.G and IX.A.

### What Is An Adequate Accounting System?

- An adequate accounting system can be used to generate reports required by award and Federal regulations. The system must support all of the following:
  - Financial reporting that is accurate, current, complete, and compliant with all financial reporting requirements of the award or subaward.
  - Recipients must establish reasonable procedures to ensure the receipt of reports on subrecipients' cash balances and cash disbursements in sufficient time to enable them to prepare complete and accurate cash transactions reports to the Federal agency.
  - Accounting systems must be able to account for award funds separately (no commingling of funds).
- An adequate accounting system allows recipients to maintain documentation to support all receipts and expenditures and obligations of Federal funds.
- An adequate accounting system collects and reports financial data for planning, controlling, measuring, and evaluating direct and indirect costs.

COPS-AR-0876

## II. Preaward Requirements

### 2.3 STANDARDS FOR FINANCIAL MANAGEMENT SYSTEMS

- The system should have all of the following capabilities:
  - ▶ **Internal control.** The system must allow for effective control and accountability for all award and subaward cash, real and personal property, and other assets. Recipients and subrecipients must adequately safeguard all such property and assure that it is used solely for authorized purposes. Please consult 2 C.F.R. § 200.303 for additional information.
  - ▶ **Budget control.** The system must compare actual expenditures or outlays with budgeted amounts for each award and subaward. It also must relate financial information to performance or productivity data, including the development of unit cost information whenever appropriate or specifically required in the award or subaward agreement.
  - ▶ **Allowable cost.** The system must support making sure that Federal cost principles, agency program regulations, and the terms of award and subaward agreements are followed in determining the reasonableness, allowability, and allocability of costs.
  - ▶ **Source documentation.** The system must require support for accounting records with source documentation (e.g., cancelled checks, paid bills, payrolls, time and attendance records, and contract and subaward documents).
  - ▶ **Cash management.** An adequate system must require following procedures for minimizing the time between the transfer of funds from the U.S. Department of the Treasury and disbursement by recipients and subrecipients whenever advance payment procedures are used.
- An adequate accounting system for a recipient must be able to accommodate a fund and account structure to separately track receipts, expenditures, assets, and liabilities for awards, programs, and subrecipients.

The adequacy of the financial management system may be reviewed as part of the application process or at any time subsequent to the award. For additional information see Subpart D of 2 C.F.R. Part 200.

**Separate Tracking of Awards**

To properly account for all awards, recipients should establish and maintain program accounts which will enable separate identification and accounting for:

- Award funds expended through subrecipients
- Formula funds utilized to develop a State plan and to pay that portion of expenditures necessary for administration
- Receipt and disposition of all funds (including program income)
- Funds applied to each budget category included within the approved award
- Expenditures governed by any specific and/or general requirements
- Cost sharing contribution

For additional information see Subpart D of 2 C.F.R. Part 200.

### Project Cost Budgeting and Accounting

To ensure adequate fiscal administration, accounting, and auditability of all awards, recipients must maintain records to track the total project costs, which include the following types of funding sources:

COPS-AR-0877

## II. Preaward Requirements

### 2.3 STANDARDS FOR FINANCIAL MANAGEMENT SYSTEMS

- Federal funds
- State funds
- Cost Sharing
- Program income
- Any other funds received for the project

In addition, recipients must maintain records to track project cost by budget category. If the recipient's or subrecipient's automated general ledger accounting system cannot comply with this requirement, a system should be established to adequately track funds according to each budget category.

Budgets should be based upon the total estimated costs for the project including all funding sources.

### Preventing Commingling of Funds

Although separate depository accounts for award funds generally are not required, the accounting systems of all recipients and subrecipients must track funds received, obligated, and expended under each award:

- Recipients and subrecipients must account for each award separately.
- Funds received for one award may not be used to support a different award unless specific policy guidance directs otherwise (e.g. AEAP funds).

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Some programs, such as the Justice Assistance Grant program, require the deposit of funds into a trust fund. In addition, a high-risk designation may require a recipient to segregate awards into separate bank accounts.
>
> If the recipient's or subrecipient's accounting system does not make it possible to identify funds and expenditures with a particular award (with the identification supported by source documentation), those costs will be questioned or may be disallowed.

### Supplanting

Recipients that receive awards under programs that prohibit supplanting by law must ensure that federal funds do not supplant funds that have been budgeted for the same purpose through non-federal sources..

- Supplanting will be reviewed during post-award monitoring and audit.
- If reviewers think that supplanting may have occurred, then the recipient will be required to supply documentation demonstrating that the reduction in non-Federal resources occurred for reasons other than the receipt or expected receipt of Federal funds.
- For certain programs, a written certification may be requested by the Federal agency or pass-through entity stating that Federal funds will not be used to supplant State or local funds.

COPS-AR-0878

## II. Preaward Requirements

### 2.3 STANDARDS FOR FINANCIAL MANAGEMENT SYSTEMS

---

**Example**

To help clarify the difference between supplementing and supplanting, we provide the following example:

**Supplementing:** State funds are appropriated to hire 50 new police officers, and Federal funds are awarded to hire 60 new police officers. At the end of the year, the State has hired 50 new officers with State funds and 60 new police officers with Federal funds. Under this scenario, there is no supplanting violation because the State used the Federal funds to supplement (rather than to supplant) the hiring of the new police officers.

**Supplanting:** State funds are appropriated to hire 50 new police officers, and Federal funds are awarded to hire 60 new police officers. At the end of the year, the State has hired 60 new police officers with Federal funds and none with State funds. Under this scenario, it may be considered a supplanting violation because the State used the Federal funds to supplant (rather than to supplement) the hiring of new police officers.

COPS-AR-0879

# III. Postaward Requirements

## 3.1 PAYMENTS

The Automated Standard Application for Payments (ASAP) is the payment system used for Department of Justice award payments. ASAP allows organizations to drawdown funds securely from pre-authorized accounts established by the Federal agency issuing the payment.

ASAP is used by many U.S. Government agencies therefore recipients can leverage their single ASAP profile to access funds from other agencies. For questions related to the use of the ASAP system, please contact the DOJ grant-making component:

- ovw.gfmd@usdoj.gov or by phone: (888) 514-8556
- Ask.OCFO@usdoj.gov or by phone: (800) 458-0786
- askcopsrc@usdoj.gov or by phone: (800)421-6770

ASAP enables viewing of active award balances and history of drawdowns to date (only drawdowns made in ASAP). The ASAP Point of Contact (POC) is the entity's Electronic Business POC (E-Biz POC) designated in the System for Award Management (SAM). ASAP can be accessed at https://www.asap.gov. For additional instructions on how to navigate the ASAP, please refer to the ASAP User Guide.

Some benefits of ASAP:

- No fees to use the system.
- Easy online access to all accounts in ASAP.
- Ability to view current balances, account history and status of payments.
- Rapid payment processing times, including same or next-day payment options.
- Self-service banking allows the ability to request and receive payments online.
- Secure electronic processes which offer both security and efficiency.
- Electronic funding return options which reduce cost and time compared to paper-based return processes.

### The ASAP Process and Timeline for Payment Transactions

The ASAP process and timeline for payment transactions is as follows:

- Recipients access ASAP via the web to request payment of funds.
- Once a request has been made, ASAP disburses the funds either the same day or next day (based on the option selected on the payment request.
- Payment is electronically deposited into the recipient's bank account the same day (if requested before 2:30 pm and selected during the payment request, or next day).

In order to timely close out financial records at the end of each month, DOJ will temporarily suspend all open ASAP accounts in order to meet the federal financial statement reporting requirements for the Office of Management and Budget. For each month except September, access will not be available for the last 3 business days. For September (fiscal year end) access will not be available for the last 5 business days. All DOJ recipients should withdraw necessary funds prior to the cutoff day each month.

Prior to using ASAP award recipients will need to register by completing the following steps as outlined in the ASAP Registration Checklist.

COPS-AR-0880

# III. Postaward Requirements

## 3.1 PAYMENTS

### Drawing Only What is Needed

Recipients should request funds based upon immediate disbursement/reimbursement requirements. Funds will not be paid in a lump sum, but rather disbursed over time as project costs are incurred or anticipated.

Draw down requests should be timed to ensure that Federal cash on hand is the minimum needed for disbursements/reimbursements to be made immediately or within 10 days. If not spent or disbursed within 10 days, funds must be returned to the awarding agency.

Fund requests from subrecipients create a continuing cash demand on award balances of the recipient. Recipients should keep in mind that idle funds in the hands of subrecipients will impair the goals of effective cash management.

Develop written procedures for cash management of funds to ensure that Federal cash on hand is kept at or near zero. DOJ periodically conducts financial reviews to ensure that this requirement is met.

---

**▶ OJP SPECIFIC TIP**

Award funds under a few grant programs may be drawn down or paid out in a lump sum. Program examples include the Byrne Justice Assistance Grant [JAG] Program, and State Criminal Alien Assistance Program [SCAAP] awards.

The Debt Collection Improvement Act of 1996 states that all eligible recipients of Federal payments must receive funds electronically. In addition to the payment, the bank also receives what is called an addendum record which provides payment information and gives details necessary for accurate posting into the correct amount.

---

The Cash Management Improvement Act of 1990 (Public Law No. 101-453) was an amendment to the Intergovernmental Cooperation Act of 1968 (31 USC § 6503). Under the CMIA, States are no longer exempt from returning interest to the Federal Government for drawing down funds prior to the need to pay of obligations incurred. Rather, States are required to pay interest in the event that the State draws down funds before the funds are needed to pay for program expenses.

### Managing Interest Earned

Both recipients and subrecipients should minimize the time elapsed between receiving Federal funds and the disbursement of those funds to pay for program expenses. Various laws and regulations affect how interest income earned on Federal funds should be accounted for, used, and returned to the Federal Government.

The recipient or subrecipient may retain up to $500 per year of interest earned on Federal funds to use for administrative expenses of the recipient or subrecipient. Any additional interest earned on Federal funds must be returned annually to the Department of Health and Human Services Payment Management System (PMS) through either the Automated Clearing House (ACH) network or a Fedwire Funds Service payment.

Please refer to the How to Manage Interest Income table on the next page.

COPS-AR-0881

## III. Postaward Requirements

### 3.1 PAYMENTS

#### How to Manage Interest Income

| Award Type | Regulatory Reference | How to Manage Interest Income | Where to Send Interest Income |
|---|---|---|---|
| **Non-Federal Entities** | | | |
| All Entities | 2 C.F.R. § 200.305 | Up to $500 in interest may be retained for administrative purposes.<br><br>Return interest income in excess of $500. | Department of Health and Human Services Payment Management Services (PMS) Instructions provided at https://pms.psc.gov/grant-recipients/returning-funds-interest.html |
| JAG State | 31 U.S.C. 6503 (reflecting the Cash Management Improvement Act of 1990); 2 C.F.R. 200.305(a); 31 C.F.R. part 205. | Account for and report as program income.<br><br>Use for program purposes.<br><br>Return unused interest income. | Office of Justice Programs Office of the Chief Financial Officer Attn: Accounting Control Branch Washington, D.C. 20531 |
| Byrne Justice Assistance Grants (states and units of local government; OJP only) | 34 U.S.C. 10158 | Account for and report as program income. Use for program purposes. | Office of Justice Programs Office of the Chief Financial Officer Attn: Accounting Control Branch Washington, D.C. 20531 |

COPS-AR-0882

# III. Postaward Requirements

## 3.1 PAYMENTS

### Frequently Asked Questions

| Frequently Asked Questions | |
|---|---|
| **Q** | What is meant by the term "draw down"? |
| **A** | "Draw down" is the term used to describe the process when a recipient requests and receives money under an award agreement. |
| **Q** | How does the money reach our organization? |
| **A** | Electronic funds transfer from the U.S. Department of the Treasury based on the information you provided in ASAP. |
| **Q** | How do I request payment for my organization's award? |
| **A** | Through the Automated Standard Application for Payments (ASAP). |
| **Q** | I tried to draw down funds but the system will not let me. What do I do? |
| **A** | We suggest that you follow up in one or more of the following ways:<br>• Check for any error messages you may have received in ASAP and document the error message. Sometimes minor data entry errors will cause error messages. Also, if you need to call Customer Service, having the error messages will assist us in determining how to resolve your issues.<br>• Check to see if all award conditions, including high-risk award conditions, if applicable, have been met. Many award conditions lead to the withholding of funds until the conditions have been met and cleared.<br>• Check to see that all Federal Financial Reports (FFRs) and performance reports have been submitted. The system has automatic verification features in place that prevent drawdowns if all the required reports have not been submitted. |
| **Q** | What is my ASAP ID (ROID)? |
| **A** | Your ASAP ID is a 7-digit number that you received when you enrolled in ASAP. |
| **Q** | What if I forget my user ID or my password? |
| **A** | On the ASAP.gov login screen, click on the option you need:<br>• Forgot User ID<br>• Forgot Password<br>Follow the instructions on the screens that appear. |
| **Q** | Why are my funds withheld? |
| **A** | Under certain circumstances, an award recipient may be unable to access or draw down funds on an award. The awarding agency may withhold funds from the organization if any of the following conditions exist:<br>• Program or project goals have not been timely met.<br>• Cash has been drawn down in excess of immediate needs for disbursement.<br>• Award terms and conditions or guidelines have not been met.<br>• Programmatic/financial monitoring, Office of the Inspector General Audits, or single audits revealed serious concerns regarding the administration of the award, subawards, or contracts.<br>• FFRs, Performance Reports, OIG, and/or Single Audit reports have not been submitted by the due date.<br>• A closeout of the award has not been initiated within 120 days of the end of the project period.<br>• The recipient has been designated as a DOJ high-risk grantee.<br>• When a closeout is submitted funds are frozen |

For more information visit ASAP FAQs | JustGrants Resources | U.S. Department of Justice.

COPS-AR-0883

## 3.2 PERIOD OF AVAILABILITY OF FUNDS

### Availability of Funds

The Department of Justice (DOJ) makes awards for a specified period of time, usually referred to as the "Period of performance", also known as "award period" or "project period". See 2 C.F.R. § 200.1. The period of performance is established for each award and is included in the award package.

Periods of performance generally range from 12 to 36 months (the period can be shorter or longer depending on the specific program). Review the award document in detail and pay particular attention to the period of performance start and end dates. In some cases, periods of performance may be extended if specific criteria are met. See the discussion of no-cost extensions in the Criteria for Award Extension section for more information.

> ▶ **OJP SPECIFIC TIP**
>
> Some formula awards administered by the Bureau of Justice Assistance (BJA) are awarded for the federal fiscal year of the appropriation plus two additional federal fiscal years.
>
> Some grants administered by the Office for Victims of Crime (OVC) are available for the federal fiscal year of the award plus the following three fiscal years. The Victims of Crime Act (VOCA) of 1984 states that VOCA funds are available during the federal fiscal year in which the award is actually made, plus the following three fiscal years. At the end of this period, VOCA funds will be de obligated. (E.g., VOCA funds awarded in FY 2021, are available until the end of FY 2024). Extensions beyond the statutory period may be granted at the discretion of DOJ, and may be requested in accordance with OJP processes, but are not assured.

### Obligation of Funds

Financial obligations, when referencing a recipient's or subrecipient's use of funds under a Federal award, means orders placed for property and services, contracts and subawards made, and similar transactions that require payment.

Financial obligations must occur during the period of performance stated on the award document. A financial obligation occurs when there is a binding agreement, such as in a valid purchase order or requisition, that covers the cost of purchasing an authorized item on or after the begin date and up to the last day of the period of performance. See 2 C.F.R. § 200.1 (definition of "Period of Performance").
.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> With the exception of administrative closeout costs, financial obligations must occur during the period of performance. If funds are obligated (e.g., enter into a contract) prior to the start of the period of performance, that financial obligation may not be an allowable expense, unless the award recipient notifies the awarding agency in advance in writing and receives prior written approval from the awarding agency.

COPS-AR-0884

## III. Postaward Requirements

### 3.2 PERIOD OF AVAILABILITY OF FUNDS

If the funds are not used within statutory or other time limits, or any funds not obligated and expended by the recipient by the end of the period of performance will lapse and revert to the awarding agency. The financial obligation deadline is the last day of the period of performance unless otherwise stipulated. With the exception of administrative closeout costs, no additional financial obligations can be incurred after the end of the period of performance. For example, if the period of performance is October 1, 2021 to September 30, 2023, the financial obligation and expenditure deadline is September 30, 2023.

### Expenditure of Funds

An expenditure is a charge made by a recipient or subrecipient to a project or program for which a Federal award is received. Expenditures may be reported on a cash or accrual basis as long as the methodology is disclosed and consistently applied. See 2 C.F.R. § 200.1 (definition of "Expenditures").

All allowable financial obligations, properly incurred by the end of the period of performance, for the Federal award, must be liquidated no later than **120** days after the end date of the award. See 2. C.F.R. §200.344.

The **120** day liquidation period, exists to allow non-Federal entities, an opportunity to receive reimbursement for allowable goods and services, ordered and received. With the exception of administrative closeout costs, no new financial obligations may be incurred outside the period of performance.

Disbursements made by recipients or subrecipients after the end of the period of performance but within the liquidation period MUST have documentation to demonstrate that the financial obligation and expenditure was incurred BEFORE the end of the period of performance. For example, an invoice paid 25 days after the end of the period of performance must have an invoice date, purchase order date, or other documentation showing the date services were rendered prior to the end of the period of performance.

> ▶ **OJP SPECIFIC TIP:**
>
> OJP recipients and subrecipients must complete performance during the award or obligation period. Performance evaluations as a result of a contract under a formula award may be completed during the liquidation period not to exceed 120 days after the end date of the award.

**Example of Obligation, Expenditure, and Liquidation Periods**

| Period | Example |
|---|---|
| Award Period of Performance/Obligation | 10/01/21 - 9/30/23 |
| Period Recipient's Books | 10/01/21 – 9/30/23 |
| Federal Books | 12/01/21 (Award Date) |
| Liquidation Period (120 days after award end date) | 10/01/23 – 1/28/24 |

COPS-AR-0885

## III. Postaward Requirements

### 3.2 PERIOD OF AVAILABILITY OF FUNDS



---

ⓘ **FINANCIAL MANAGEMENT TIP**

Automated Standard Application for Payments automatically freezes funds 120 days after the end of the award!

---

### Criteria for Award Extension

Recipients may request an extension to receive additional time to achieve the goals and objectives of the grant program. These extensions do not provide additional funding. All extension requests will be evaluated on a case- by-case basis.

Requests for an extension of a period of performance must be submitted through JustGrants. Recipients are to use the Grant Award Modification (GAM) to request the extension.

---

☑ **ACTION ITEM**

For DOJ awards, recipients may request a no-cost extension by submitting a GAM at least 30 calendar days prior to the end of the award.

For extension request in the final 30 days of the award, the recipient must request the extension via email to their Grant Manager.

The recipient should act as soon as possible to obtain their organization's approval to submit an extension request and ensure that they submit the GAM via JustGrants at least 30 days prior to the end of the award period, allowing the managing office sufficient time to process the GAM.

---

COPS-AR-0886

## 3.2 PERIOD OF AVAILABILITY OF FUNDS

> ▶ **OJP SPECIFIC TIP**
>
> Most awards are eligible to be considered for an extension of the award period in response to a GAM request. The request for extension must justify the need for the extension and indicate the additional time required. The grant-making component's ability to grant an extension may be limited by statute for some programs. For example: Awards funded by the Office for Victims of Crime (OVC) (or any other OJP bureau/program office) under the provisions of the Victims of Crime Act (VOCA) of 1984, are available during the federal fiscal year in which the award is actually made, plus the following three fiscal years. At the end of this period, VOCA funds will be de obligated. (E.g., VOCA funds awarded in FY 2021 are available until the end of FY 2024). Extensions beyond the statutory period may be granted at the discretion of DOJ, and may be requested in accordance with OJP processes, but are not assured.

The criteria for extending the period of performance include the following:

- All applicable Federal Financial Reports and Performance Reports must be on file and current.
- All award conditions attached to the award must be satisfied. This also includes the performance and resolution of audits in a timely manner. A narrative justification must be submitted with the extension request. Complete details must be provided, including the justification and the circumstances which require the proposed extension. The recipient must explain the effect a denial of the request will have on the project.

> ▶ **OJP SPECIFIC TIP**
>
> To avoid the need to make a request to extend the obligation or expenditure deadline of a formula program, it is recommended that all subawards should be completed at least six months prior to the end of the obligation deadline for the award. Justice Assistance Grant (JAG) Program awards, in which the total period of performance does not exceed 4 years, have specific requirements for requesting no-cost extensions. The recipient should contact the BJA grant manager for the additional requirements.

## Project Extension Guidance *

***Note**: not applicable to COPS Office and OVW awards.

Generally, the following shall apply to all grants and cooperative agreements:

- no more than one no-cost extension may be made to an award;
- a no-cost extension may not exceed 12 months;
- a no-cost extension may be made only if the period of performance has not expired;
- a no-cost extension may be made only for award recipients that have no significant performance or compliance issues;

COPS-AR-0887

# III. Postaward Requirements

## 3.2 PERIOD OF AVAILABILITY OF FUNDS

- a no-cost extension may be made only if supported by a robust narrative justification establishing that the extension is for the benefit of the Federal government, and contains a plan and timeline for completion within the period of the no-cost extension;

- a no-cost extension may not be made merely for the benefit of the recipient or for the purpose of the enabling the recipient to use unobligated balances; and

- any provisions of the DOJ Grants Financial Guide relating to no-cost extensions shall be complied with (e.g., a no-cost extension must be requested via a Grant Award Modification (GAM) in the grant system of records at least 30 calendar days before the project end date); and

- extension of the liquidation period may be allowable for awards if approved by the awarding agency (this includes the OVC State Victim Assistance Formula Grant Program and State Victim Compensation Formula Grant Program).

### Periods of Performance for Research, Evaluation, and Statistics Awards

Due to the nature of the work to be carried out by the recipient, the usual periods of performance may not routinely be appropriate for research, evaluation, and statistics awards. (For example, long-term research or data collection efforts require sufficient time for activities such as institutional review board and Office of Management and Budget reviews (as appropriate), staff training, field work, data collection and analysis, presentation of findings, archiving of data, and dissemination of findings.) Accordingly, a research, evaluation, or statistics award may exceed a 3-year initial period of performance (and/or a 5-year total period of performance, and more than two continuations awards), when appropriate under the particular circumstances of that project.

COPS-AR-0888

## 3.3 COST SHARING REQUIREMENTS

### Cost Sharing Requirements

Cost sharing (matching) means the portion of project costs not paid by Federal funds (unless otherwise authorized by Federal statute). This term includes matching which refers to required levels of cost share that must be provided. See 2 C.F.R. § 200.1. (definition of "cost sharing"). Cost sharing requirements vary across the different Department of Justice (DOJ) programs. Recipients should read the award announcement and award notice carefully to understand the specific cost sharing requirements applicable to their award. Recipients unclear about the cost sharing requirements for their awards should contact their grant manager. Voluntary committed cost sharing is not expected an is not used as a factor during the merit review of applications.

Recipient's or subrecipient's cost share funds must be:

- Verifiable in the recipient's or subrecipient's records;
- Not included as contribution for any other Federal award;
- Necessary and reasonable for achieving the objectives of the federal award;
- Allowable under 2 CFR 200 subpart E;
- Not paid by the Federal Government under another Federal award, except where the program's Federal authorizing statute specifically provides that Federal funds made available for the program can be applied to cost sharing requirements of other Federal programs;

Provided for in the approved budget when required by the DOJ awarding agency

For general government-wide rules regarding cost sharing, see 2 C.F.R. § 200.306.

Any departure from the program guidelines must receive prior written approval from the DOJ grant-making component.

---

#### ⓘ FINANCIAL MANAGEMENT TIP

Cost Sharing funds are restricted to the same use of funds as allowed for the Federal funds. If a cost is **not allowable** under the Federal award, it is **not allowable** as cost sharing.

---

#### ▶ OVW SPECIFIC TIP

The OVW STOP Program cost sharing requirements are available under the Resources section at: https://www.justice.gov/ovw/grantees.

Frequently Asked Questions (FAQs) are available under the Frequently Asked Questions section at: https://www.justice.gov/ovw/grantees.

---

COPS-AR-0889

## III. Postaward Requirements

### 3.3 COST SHARING REQUIREMENTS

#### Types of Cost Sharing

Cost sharing includes:

- Cash cost sharing includes cash spent for project-related costs. An allowable cash cost share must include costs which are allowable with Federal funds, except acquisition of land, when applicable.

- Third party in-kind cost sharing includes, but is not limited to, the valuation of non-cash contributions. "In-kind" may be in the form of services, supplies, real property, and equipment.

- Cost sharing may also include funds committed by the recipient, subrecipient, or third parties.

For example, if in-kind cost sharing is permitted by law, then the value of donated services can be used to comply with the cost sharing requirement. Also, third party in-kind contributions may count toward satisfying cost sharing requirements, provided the recipient of the contributions expends them as allowable costs.

COPS-AR-0890

## 3.3 COST SHARING REQUIREMENTS

**How to Calculate Match**

Cost sharing requirements are typically stated as a percentage of the total project costs for an award. For example, a 20 percent (20%) cost share on a $100,000 project would be $20,000, where $80,000 is provided by the Federal Government and $20,000 is provided by the recipient.

| Formula | | | | | |
|---------|---|---|---|---|---|
| Step 1 | Award Amount | ÷ | % of Federal Share | = | Total (Adjusted) Project Cost |
| Step 2 | Total (Adjusted) Project Cost | x | % of Recipient's Share | = | Required Cost share |
| **Example** | | | | | |
| Match Requirement - 80/20 (Federal/Recipient)<br>Federal Award = $100,000 | | | | | |
| Step 1 | $100,000 | ÷ | 80% Federal Share | = | $125,000 |
| Step 2 | $125,000 | x | 20% Recipient's Share | = | $25,000 |

> ▶ **COPS OFFICE SPECIFIC TIP**
>
> Recipients of COPS Hiring Program and School Violence Prevention Program grants are required to contribute a local cost share of at least 25% toward the total cost of the approved grant project, unless waived in writing by the COPS Office.
>
> The local cost share must be a cash cost share and must be paid during the grant award period.

COPS-AR-0891

III. Postaward Requirements

## 3.3 COST SHARING REQUIREMENTS

### Source and Type of Funds

Cash cost sharing may be applied from the following sources:

- Funds from States and units of local government that have a binding commitment of cost sharing funds for programs or projects (meaning the State or unit of local government has legally appropriated and obligated the funds).

- Housing and Community Development Act of 1974, 42 U.S.C. 5301, et seq. (subject to the applicable policies and restrictions of the U.S. Department of Housing and Urban Development).

- Appalachian Regional Development Act of 1965, 40 U.S.C. 214.

- Equitable Sharing Program, 21 U.S.C. §881(e) (current guidelines developed by the U.S. Department of Justice Asset Forfeiture Office apply). Forfeited assets used as cost sharing from the Equitable Sharing Program would be adjudicated by a Federal court.

- Program income funds earned from assets forfeitures (adjudicated by a State court, as State law permits).

- Funds contributed from private sources.

- Program income generated from projects and the related interest earned on that program income, provided these projects are identified and approved as part of the budget and award application.

- Funds appropriated by Federal law for the activities of any agency of a tribal government or the Bureau of Indian Affairs for performing law enforcement functions on tribal lands

- Sources otherwise authorized by law.

### Records for Match

Recipients and subrecipients must maintain records which clearly show the source, amount, and timing for all cost sharing contributions.

- If a recipient or subrecipient has included a cost share within the approved budget that exceeds the required cost sharing amount, the records of those additional amounts must be included and maintained as if they are a part of the regular cost sharing amount.

- The award recipient has primary responsibility for meeting the cost sharing requirement and for ensuring subrecipient compliance with the cost sharing requirements.

- Recipients must maintain records that clearly demonstrate the amount, source, and when the funds were contributed.

- Recipients are required to report cost sharing on the Federal Financial Report (SF-425/line i)

- Supporting documentation does not have to be provided to DOJ, but such records must be available in the event of an audit or site visit.

☑ **ACTION ITEM**

The most common error found during the final financial reconciliation and closeout of an award is the failure to properly report cost sharing funds. The full cost sharing provided (both cash and in-kind) must be reported on the Federal Financial Report (FFR) submitted at the end of the period of performance. If the cost share is not reported, DOJ will assume the recipient did not meet the required cost sharing and will initiate collection of a cash cost share from the recipient.

Documentation supporting the market value of in-kind cost share must be maintained in the recipient's or subrecipient's records.

COPS-AR-0892

## III. Postaward Requirements

### 3.3 COST SHARING REQUIREMENTS

#### Valuation of Donated Goods and Services

Valuation of in-kind cost sharing may take one of the following forms:

- Valuation of donated services. Volunteer services furnished by third-party professional and technical personnel, consultants, and other labor may be counted as cost sharing if the service is necessary for the program.

  - **Volunteer services.** Recipient or subrecipient rates for third-party volunteer services must be consistent with those rates ordinarily paid for similar work in the recipient's or subrecipient's organization. If the recipient or subrecipient does not have employees performing similar work, the rates will be consistent with those ordinarily paid by other employers for similar work in the same labor market. In either case, fringe benefits that are allowable, allocable, and reasonable may be included in the valuation.

  - **Employees of other organizations.** When an employer other than a recipient or subrecipient furnishes free of charge the services of an employee in the employee's normal line of work, the services will be valued at the employee's regular rate of pay plus an amount of fringe benefits, but exclusive of overhead costs. For additional guidance on cost sharing , please review 2 C.F.R. § 200.306.

- Valuation of third party donated supplies, equipment, or space.

  - If a third party donates supplies, equipment, or space, the value must not exceed the fair market value of the property at the time of donation.

- Valuation of third party donated equipment, buildings, and land.

  - If a third party donates equipment, buildings, or land, and title passes to a recipient or subrecipient, the treatment of the donated property will depend upon the purpose of the Federal award.

  - **Awards for capital expenditures.** If the purpose of the award is to assist the recipient or subrecipient in the acquisition of equipment, buildings or land, the aggregate value of the donated property may be counted as cost sharing.

  - If the purpose of the award is to support activities that require the use of the equipment, buildings, or land, only depreciation for equipment and buildings can be charged. However, the fair market value of equipment or other capital assets and fair rental charges for land may be allowed, if provided in the terms and conditions of the Federal award.

Please refer to 2 C.F.R. § 200.306 for more information about types of cost sharing requirements.

#### Timing of Matching Contributions

Cost sharing contributions do not need to be applied at the exact time or in proportion to the obligation of the Federal funds. However, the full cost share must be contributed by the end of the period of performance.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Time-phased cost sharing may be required as a special condition by the grant-making component on awards to non-federal entities.

COPS-AR-0893

## III. Postaward Requirements

### 3.3 COST SHARING REQUIREMENTS

> ▶ **COPS OFFICE SPECIFIC TIP**
>
> For COPS Office Hiring Program, cost sharing funds must be made on an increasing basis during each year of the project with the federal share decreasing accordingly.
>
> The local cost sharing must be paid in full during the period of performance; payments made prior to or after the period of performance do not qualify as cost sharing funds.
>
> It is highly recommended that cash cost sharing funds are paid during each quarter of the award to ensure the required cost sharing funds are fully paid by the end of the period of performance.
>
> Agencies that must withdraw from the project prior to the end of the period of performance are responsible for ensuring that the federal share of funds expended is limited to a maximum of 75% of the total project costs expended.
>
> For any additional questions about the timing of cost sharing, please contact a COPS Office Staff Accountant at 800-421-6770.

### Waiver of Match

- The grant-making DOJ component will waive any requirement for cost sharing funds (including in-kind) under $200,000 for all awards made to American Samoa, Guam, U.S. Virgin Islands, and Northern Mariana Islands unless otherwise required by law to be provided; and may waive any requirement for cost sharing funds equal to or over $200,000 for all awards made to those territories, or to the Trust Territory of the Pacific Islands. The $200,000 amount is determined on a grant-by-grant basis, not by the aggregate total of all cost sharing requirements applicable to an insular area (48 U.S.C. § 1469a [PDF - 116 Kb]).

**Waivers specific to COPS Office awards:** To maximize the number of communities that will be able to take advantage of COPS Office funding only a limited number of waiver requests (if any) will be granted to applicants who are able to demonstrate severe fiscal distress.

The COPS Office utilizes the "Fiscal Health" data provided in the application with other applicant's waiver request to make a final decision.

**Waivers specific to OVW STOP Formula grant awards:** Cost Sharing may be waived based on demonstration of financial hardship. In addition, awards to victim service providers for victim services or to tribes are subtracted from the Federal award amount for purposes of calculating required cost share. States may not require tribes or victim service providers providing victim services to provide cost sharing funds for their projects

COPS-AR-0894

III. Postaward Requirements

## 3.4 PROGRAM INCOME

### Introduction

Program income means gross income earned by the recipient or subrecipient that is directly generated by a supported activity or earned as a result of the Federal award during the period of performance. See 2 C.F.R. § 200.1 (definition of "Program Income"). The recipient or subrecipient is encouraged to earn income to defray program costs when appropriate. See 2 C.F.R. § 200.307(a).

There are three methods of applying program income:

- Deduction – Program income is deducted from the total allowable costs, reducing the overall total amount of the Federal award.
- Addition – Program income is added to the total allowable costs, increasing the overall total amount of the Federal award.
- Cost sharing – Program income is used to meet the Federal award's cost sharing requirement.

Award recipients must use program income for the original purpose of the Federal award.  Program income earned during the period of performance may only be used for costs incurred during the period of performance or allowable closeout costs. Program income must be expended prior to requesting additional Federal funds. Absent specific instructions in the award terms and conditions from the DOJ grant-making component, most recipients or subrecipients must use program income to offset total allowable costs and reduce the Federal award (i.e., the deduction method). Institutions of Higher Education (IHE) and non-profit research institutions, absent specific guidance, must use program income to add to the total allowable costs for the project (i.e., the addition method). See 2 C.F.R. § 200.307(b).

> ▶ **OJP SPECIFIC TIP**
>
> The draw down restriction **does not** apply to Justice Assistance Grant (JAG) awards.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> If the cost is allowable under the program award, then it is allowable to apply program income to that cost.

### Accounting Processes for Program Income

If program income is earned, it must be accounted for up to the same ratio of Federal participation as funded in the project or program. For example:

- An award project funded with 100% Federal funds must account for and report on 100% of the total program income earned. If the total program income earned was $20,000, the recipient must account for and report the $20,000 as program income on the Federal Financial Report (FFR), SF-425.
- If a recipient was funded by an award at 75% Federal funds and 25% non-Federal (cost share) funds, and the total income earned by the award activities was $100,000, then $75,000 must be accounted for and reported by the recipient as program income on the FFR.  The $25,000 balance of income earned may either be retained by the recipient or used to meet the cost sharing requirement.

COPS-AR-0895

## III. Postaward Requirements

### 3.4 PROGRAM INCOME

Unless otherwise stipulated in the award terms and conditions, any program income earned during the project period but not utilized for the project must be refunded to the DOJ agency. If authorized by the DOJ grant-making component, costs incidental to the generation of program income may be deducted from gross income to determine program income, provided these costs have not been charged to the Federal award. See 2 C.F.R. § 200.307(d).

Unless otherwise instructed by the DOJ grant-making component in the terms and conditions of the award, there are no requirements on the disposition of program income earned after the end of the period of performance of the award.

### Examples of Program Income

#### License Fees and Royalties

All **license fees and** royalties received from copyrights or other works developed under projects or from patents and inventions may be kept by the recipient unless  specified in Federal statutes, regulations, the terms and conditions of the Federal award, or a specific agreement governing such royalties has been negotiated between the awarding DOJ agency and the recipient. See 2 C.F.R. § 200.1  (definition of "Program income"); 2 C.F.R. §200.307(e)(3).

#### Attorney's Fees and Costs

Income received after completion of the project related to a court-ordered award of attorney's fees or costs, is considered program income to the extent that it represents a reimbursement for attorney's fees and costs originally paid under the award. This type of program income is subject to the restrictions stated in the award. See 2 C.F.R.§ 200.1 (definition of "Program income").

---

▶ **OVW SPECIFIC TIP**

In the following circumstances, OVW recipients may accept attorney's fees as program income under 2 CFR 200.307(e)(2) and add them to the federal award: (1) Fees that are issued by a judge in an OVW-supported case without the request of the OVW-funded attorney. (2) Fees that are sought by the OVW-funded attorney for the purpose of deterring repeated or abusive flings by the offender of the domestic violence, dating violence, sexual assault, or stalking.

In any other circumstances, recipients must seek approval from their OVW program manager via a (GAM). Any program income added to the federal award must be used to support activities that were approved in the budget and follow the conditions of the OVW award. Any program income added to the federal award must also be approved via budget modification GAM by the end of the project period. If a recipient receives fees that do not fall within one of the circumstances above or does not receive prior approval via GAM, then the resulting program income must be deducted from the OVW award pursuant to 2 CFR 200.307(e)(1).

---

COPS-AR-0896

## 3.4 PROGRAM INCOME

### Registration/Tuition Fees

These types of program income (e.g., Higher Education registration and tuition fees) must be treated in accordance with the instructions stated in the project's terms and conditions. See 2 C.F.R. § 200.1 (definition of "Program income").

### Asset Forfeitures

A. U.S. Department of Justice and U.S. Department of the Treasury Equitable Sharing Programs

Department of Justice ( Justice) or U.S. Department of the Treasury (Treasury) Equitable Sharing Programs are not considered program income. For guidance on the use and accounting of equitable sharing funds, including the use of shared funds as a local match to certain types of federal grant programs, please refer to the Justice and Treasury **Guide to Equitable Sharing for State, Local, and Tribal Law Enforcement Agencies** at https://www.justice.gov/criminal-afmls/file/794696/download

B. State Asset Forfeiture Programs

A recipient earns program income through a state asset forfeiture program when the forfeiture is directly generated as a result of the Federal award activities, excluding federal equitable sharing, during the period of performance and the asset has been adjudicated to the benefit of the recipient law enforcement entity. Program income generated from the sale of personal property, real property or currency forfeited under state law must follow the "Addition Method" of handling program income unless an alternative method is designated in the recipient's award document

Recipients may use the non-federal share of program income generated from state asset forfeiture programs as match funding as state law permits.

> **▶ OJP SPECIFIC TIP**
>
> Due to the unique nature of BJA's DNA Capacity Enhancement and Backlog Reduction (DNA CEBR) and Forensic DNA Laboratory Efficiency Improvement and Capacity Enhancement (DNA EICE) Programs, award recipients of these programs must follow a more detailed program income policy that is available online at: https://bja.ojp.gov/sites/g/fles/xyckuh186/fles/media/document/dna-program-income-policy.pdf.
>
> Award recipients generating program income under the referenced grant programs are *strongly encouraged* to use the program income calculator available at https://bja.ojp.gov/sites/g/fles/xyckuh186/fles/media/document/dna-program-income-calculator.xlsx. Recipients that do not use this calculator *must* be able to demonstrate a consistent methodology for calculating program income that is transparent, justifiable, ensures costs are reasonable and allocable, and is consistent with the BJA Program Income Policy and all applicable guidance referenced therein.

COPS-AR-0897

## 3.4 PROGRAM INCOME

▶ **OJP SPECIFIC TIP**

**Interest Earned on JAG**

Unlike most DOJ funding, JAG income earned from advances of federal funds is considered program income. See 34 U.S.C. § 10158. Interest income earned should only be spent on allowable purpose areas under these programs. Recipients are required to use all funds within the fixed expenditure period. No extension to the project period will be approved. JAG recipients are not required to spend program income before spending Federal funds.

ⓘ **FINANCIAL MANAGEMENT TIP**

If an organization's only source of income is Federal award funds, then when it receives membership fees, those fees will generally be considered program income.

Fines as a result of law enforcement activities are not considered program income.

### Procedures for Recovery of Costs Incurred

In some instances, a State or local law enforcement agency provides information to the Internal Revenue Service (IRS) that substantially contributes to the recovery of Federal taxes owed, with respect to illegal drug-related activities (or money laundering in connection with such activities).

- In these cases, the IRS may reimburse the State or local law enforcement agency for costs incurred in the investigation (including but not limited to reasonable expenses, per diem, salary, and overtime). The total reimbursement will not exceed 10% of the amount recovered.

- State or local law enforcement agencies that provide such information to the IRS will receive notification from the IRS when monies have been recovered as a result of the information supplied. Following such notification, and based on documentation, the agency will be required to submit a statement detailing the investigative costs it incurred.

- If more than one State or local agency has provided information, the IRS shall equitably allocate investigative costs among the agencies not to exceed an aggregate amount of 10% of the taxes recovered.

- No State or local agency may receive reimbursement for investigative expenses under Internal Revenue Code Section 7624 if reimbursement has been received from another source, such as a Federal or State forfeiture program or under State revenue laws.

- If the information/investigation is performed with awarding agency funds, the reimbursement received from the IRS is considered to be program income and subject to the aforementioned guidelines.

COPS-AR-0898

## 3.4 PROGRAM INCOME

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> 1. Spend program income prior to requesting additional award funds.
>
> 2. Expend program income in accordance with instructions included in the award terms and condition.
>
> 3. Return any unused program income funds

COPS-AR-0899

## III. Postaward Requirements

### 3.5 ADJUSTMENTS TO AWARDS

#### Grant Award Modification

A Grant Award Modification (GAM) is a request to modify a key fact or detail of the award. There are three types of GAMs in JustGrants; project period extension, programmatic, and financial GAMs--that may be submitted by the recipient, or grant manager, or DOJ financial staff. All GAMs must be submitted electronically through JustGrants.

Once the DOJ grant making component has made a decision on the proposed award modification, the recipient is sent a notification via JustGrants and that becomes a permanent part of their award file, and the record is updated as appropriate.

Recipients are limited to specific grant award modification(s). The following sections describe situations in which recipients must or may initiate a GAM.

See 2 C.F.R. § 200.308.

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> After submission of a GAM, recipients should monitor the system for returned or change requested GAMs in case additional information or changes are required. Untimely responses could delay the processing of the GAM. An untimely response may also result in the request being denied, and the recipient having to restart the GAM process. This can be a problem, especially if the request is to extend the grant period and the project end date is near.

#### Changes to the Award Necessitating a GAM

Recipients must initiate a GAM for changes in scope, duration, activities, or other significant areas awards. See 2 C.F.R. § 200.308(f).

These changes generally include but are not limited to:

- Altering programmatic activities
- Changing the objective of the project or program.
- Changing the project site or service area
- Changing key personnel (including employees and contractors) that are identified by name or position in the Federal award.
- The disengagement from a project for more than three months, or a 25 percent reduction in time and effort devoted to the Federal award over the course of the period of performance, by the approved project director or principal investigator.
- Inclusion of costs requiring prior approval under 2 C.F.R. § 200.407 that had not previously been approved by the DOJ agency.
- The transfer of funds budgeted for participant support costs as defined in §200.1 participant support costs to other budget categories.

COPS-AR-0900

## III. Postaward Requirements

### 3.5 ADJUSTMENTS TO AWARDS

- Subaward activities not proposed in the application and approved in the Federal award. A change in subrecipient only requires prior approval if the DOJ component or pass-through entity includes the requirement in the terms and conditions of the Federal award.

- Changes in the total approved cost-sharing amount.. To determine if a change would be considered a change in scope, contact the grant manager.

**Budget Modifications**

A GAM may be initiated for a budget modification if the request is to modify an approved budget to reallocate funds among the budget categories.

Award recipients **must** initiate a GAM for budget modification if:

- The proposed cumulative change is greater than 10% of the total award amount. The 10% rule does not apply to an award of less than $250,000. See 2 C.F.R. § 200.308(i)(2).

- A proposed budget change affects a cost category that was not included in the original budget. For example, if the direct cost category "Travel" did not exist in the original budget, the adjustment to transfer funds from Equipment to Travel requires a GAM.

See 2 C.F.R. § 200.308.

> ▶ **OJP/COPS SPECIFIC TIP**
>
> OJP/COPS Office recipients must initiate a GAM for a budget modification if there is any dollar increase or decrease to the indirect cost category of an approved budget.

> ▶ **OJP/COPS SPECIFIC TIP**
>
> For recordkeeping purposes and audit documentation, it is advised to submit a GAM even if the proposed budget modification is less than 10% of the total award amount. This also provides the grant manager with notification.

> ☑ **ACTION ITEM**
>
> Many awards require **prior approval** for changes in key staff. See 2 C.F.R. § 200.308(f)(2) (requiring prior approval where key staff member is specified in the Federal award).

COPS-AR-0901

## 3.5 ADJUSTMENTS TO AWARDS

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> **Change in Period of Performance:**
>
> A Project Period Extension GAM is used to extend the length of the period of performance.
>
> A request to change the project **end date** may be submitted via a GAM in JustGrants by either the recipient or the grant manager no later than 30 calendar days before the period of performance end date. Any request to change the project end date after that time can be made via email but the GAM must be initiated in JustGrants by the grant manager.

For COPS Office awards, recipients may request a no-cost extension by submitting a GAM prior to the last day of the award period of performance. To request an extension at least 30 calendar days prior to the end of the award, the recipient submits the request in JustGrants. For extension requests in the final 30 days of the award, the recipient must request the extension via email to their COPS Office Grant Manager.

For additional information on this topic, please refer to Project Extension Guidance section in Chapter 3.2.

See 2 C.F.R. § 200.309.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Some awards have statutory maximum grant periods beyond which they cannot be extended.

**Sole Source Approval**

A GAM must be initiated to request to enter into a non-competitive contractual relationship with a contractor under a award where the contracted cost exceeds the simplified acquisition threshold. Please see Chapter 3.8: Procurement Under Awards of Federal Assistance for more information.

## Prior Approval of Certain Costs

Written prior approval must be obtained for some costs, as specified in 2 C.F.R. Part 200 (specifically in 2.C.F.R.§ 200.407) and as discussed in Chapter 3.6: Costs Requiring Prior Approval.

> ▶ **OJP SPECIFIC TIP**
>
> Retroactive approval will be considered only in extenuating circumstances. The awarding agency may question/disallow costs, or take other remedies, as appropriate, for unauthorized use of funds.

For general information concerning the online processing for GAMs, please contact the appropriate grant-making agency.

COPS-AR-0902

## III. Postaward Requirements

### 3.5 ADJUSTMENTS TO AWARDS

- OJP – email at JustGrants.Support@usdoj.gov or by phone at 1-833-872-5175
- OVW – email at OVW.JustGrantsSupport@usdoj.gov or by phone at 1-866-655-4482
- COPS Office – email at askCOPSRC@usdoj.gov or by phone at 1-800-421-6770

COPS-AR-0903

# III. Postaward Requirements

## 3.6 COSTS REQUIRING PRIOR APPROVAL

### Introduction

2 C.F.R. § 200.407 sets out costs that require prior, written approval. Prior approval means the written approval obtained in advance by an authorized official of a Federal agency or pass-through entity of certain costs. A list of the most common of these costs for DOJ recipients and subrecipients is also included below. Award recipients and subrecipients must obtain prior written approval for any of these costs.

### Responsibility for Prior Approval

The DOJ grant-making component reviews all costs requiring prior approval before the recipient incurs the cost. The direct recipient (or pass-through entity) reviews all costs requiring prior approval before the subrecipient incurs the cost.

### Procedures for Requesting Prior Approval

In general, requests for costs requiring prior approval must be in writing and must include an explanation justifying the expenditure. Contact the DOJ grant-making component for specific guidance.

### Listing of Costs Requiring Prior Approval

DOJ highlights the following costs as requiring prior approval, though please see 2 C.F.R. 200.407 for the full list of costs requiring prior approval.

#### Equipment and Other Capital Expenditures

Capital expenditures for improvements to land, buildings, or equipment that materially increase their value or useful life are allowable as a direct cost but only with the prior written approval of the Federal agency, or pass-through entity. See 2 C.F.R. § 200.439(b)(3).

- Expenditures for equipment must be fully justified in the budget and budget narrative; and may include the type, quantity estimated, unit, or other information.
- In reviewing equipment acquisition budgets and proposals, the following principles should be followed:
  - No other equipment owned by the recipient/subrecipient is suitable for the project;
  - Federal funds are not used to provide reimbursement for the purchase of equipment already owned by the recipient/subrecipient; and
  - Equipment purchased and used commonly for two or more programs should be appropriately divided among each activity.
- An expenditure for equipment purchased for a common pool is generally allowable as a charge to the award at cost value.
- Equipment that has already been purchased and charged to other activities of the organization is not an allowable expense to the award.
- A request to purchase a vehicle must be fully justified in the budget and budget narrative; the grant- making component may require that a vehicle be leased instead of a purchase:
  - No luxury vehicles will be approved;
  - If the vehicle purchase request is approved, the vehicle should be reasonable and the recipient must follow the Internal Revenue Service guidelines; and

COPS-AR-0904

## 3.6 COSTS REQUIRING PRIOR APPROVAL

▶ If the vehicle(s) was purchased as part of a unit of government feet by the State local central procurement activities, it is generally accepted as reasonable.

### Computing Devices and Software, and Information Technology Systems

The costs of computing devices, software, and information technology systems that are characterized as *equipment* (typically a per-unit acquisition cost of $10,000 or more) require prior written approval; those that are characterized as *supplies* typically do not. *See* 2 C.F.R. Part 200.1 definitions, and 2 C.F.R. 200.439 and 200.453. Computing devices, software, and information technology systems must be procured in a manner providing full and open competition, consistent with the standards in 2 C.F.R. 200.319 and 2 C.F.R. 200.320.

Brand names should not be specified in most cases (see Chapter 3.8 Procurement Standards and 2. C.F.R. § 200.319(c)(6)) for more information).

### Pre-Award Costs

Pre-award costs are costs incurred before the start date of the period of performance and in anticipation of the award where such costs are necessary for efficient and timely performance of the scope of the work. These costs are allowable only to the extent that they would be allowed if incurred after the start date of the Federal award and only with prior written approval of the DOJ awarding agency. Direct recipients may approve pre-award costs for subrecipients if incurred after the start date of the Federal award. If approved, these costs must be charged to the initial budget period of the Federal award, unless otherwise specified by the DOJ awarding agency. See 2 CFR §§ 200.210 and 200.458.

Any and all pre-award costs are incurred at the sole risk of an applicant, and will be reimbursed only to the extent that the costs were approved before they were incurred and provided that an award ultimately is made.

### Consultant Rates

Compensation for individual consultant services is to be reasonable and consistent with that paid for similar services in the marketplace.

- Each grant-making component periodically establishes a prior approval threshold consultant rate. The current rate for each grant-making DOJ component is $650 per day or $81.25 per hour.
- Tis limit is specified in the terms and special conditions of the award.
- When the rate exceeds the limit for an 8-hour day, or a proportionate hourly rate (excluding travel and subsistence costs), a written prior approval is required from the grant-making component. Prior approval requests require additional justification.
- An 8-hour day may include preparation, evaluation, and travel time in addition to the time required for actual performance.
- Please note, however, that this does not mean that the rate can or should be the maximum limit for all consultants.
- Rates above the established maximum threshold rate will be reviewed on a case-by-case basis. Justification for exceeding the established maximum rate may include where a rate is established through a competitive bidding process.

COPS-AR-0905

## III. Postaward Requirements

### 3.6 COSTS REQUIRING PRIOR APPROVAL

- In order to calculate a rate of compensation for consultants associated with and employed by institutions of higher learning, divide the total compensation projected for 12 months by 260.
  - If the resulting rate of compensation exceeds the maximum consultant rate established by the grant-making component, written prior approval must be obtained.
- Compensation for consultants employed by State and local government will only be allowed when the unit of government will not provide these services without cost.
  - If a State or local government employee has been contracted to provide services that are related to his or her employment with the State or local government, the rate of compensation is not to exceed the daily salary rate for the employee paid by the unit of government.
  - If the State or local government employee has been contracted to provide services that are unrelated to his or her employment with the State or local government, then the rate of compensation is based on the necessary and reasonable cost principles which cannot exceed the maximum rate allowed by the awarding agency without prior written approval.

#### Conference Costs

All conferences (events whose primary purpose is to disseminate technical information beyond the recipient or subrecipient and is necessary and reasonable for successful performance under the Federal award, e.g., meetings, retreats, seminars, events, trainings) conducted by Cooperative Agreement recipients or contractors funded by DOJ must receive written prior approval. An approved award budget is not a prior approval. All prior approval requests must be submitted within the required number of days (90 or 120) in advance of the start date. See Chapter 3.10: Conference Approval, Planning, and Reporting for more information.

#### Foreign Travel (Not Applicable to OVW)

Foreign travel is defined as any travel outside of the United States and its Territories and possessions. However, for organizations located in foreign countries, foreign travel means travel outside of the organization's country. Some requirements for foreign travel:

- Each separate foreign trip must be pre-approved.
- Direct charges for foreign travel costs are not allowable unless the travel has prior approval from the awarding DOJ agency.
- Indirect charges for foreign travel are allowable without prior approval from the awarding agency when they are included as part of a federally approved indirect cost rate and have a beneficial relationship to the project.

Travel (see Ch. 3.9 Allowable Costs, for more details)

COPS-AR-0906

III. Postaward Requirements

## 3.6 COSTS REQUIRING PRIOR APPROVAL

### Moving Money between Categories

Moving monies into any budget category with a zero dollar amount is not allowable without prior approval from the grant-making component. A budget modification is required. See 2 C.F.R. § 200.308(f).

> ▶ **OJP SPECIFIC TIP**
>
> Recipients with a federally-approved indirect cost rate may not transfer funds into or out of the indirect cost category without prior approval. A budget modification is required as indicated in Chapter 3.5 Adjustment to Awards. A copy of the current approved indirect cost agreement from the Cognizant Federal Agency must be attached.

### Confidential Funds

Confidential funds are subject to prior approval. See section 3.12, OJP's Confidential Funds.

COPS-AR-0907

III. Postaward Requirements

## 3.7 PROPERTY STANDARDS

### General Principles for Property Acquisition and Management

Property includes both *real property* and *personal property*. Real property means land, including land improvements, structures, and appurtenances thereto, and legal interests in land, including fee interest, licenses, rights of way, and easements. Personal property includes both tangible personal property, which is classified as either *equipment or supplies*; and intangible personal property, which includes things having no physical existence, like trademarks, copyrights, and patents. See definitions in 2 C.F.R. § 200.1. Each of these is addressed in further detail below.

DOJ expects recipients and subrecipients of Federal funds to use good judgment when purchasing, managing, and disposing of property paid for by Federal funds. If a recipient or subrecipient uses award funds to purchase new property when suitable property is already available within the relevant organization, this use will be considered an unnecessary expenditure.

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> Organizations may use their own capitalization policy for classification of equipment and supplies, but only where it is less than the Federal policy threshold of $10,000.
>
> *Equipment* means tangible personal property (including information technology systems) having 1) a useful life of more than one year and 2) a per-unit acquisition cost of $10,000 or greater (or the organization's capitalization policy, if it is less than $10,000). If the organization does not have a capitalization policy in place, the Federal policy amount of $10,000 must be followed.
>
> *Supplies* are all other items of tangible personal property that are not equipment. This includes computing devices that cost less than $10,000 per unit (or the organization's capitalization threshold, if that is less than $10,000).

### Screening and Property Management Systems

Careful screening should take place before purchasing property to ensure that it is needed. Organizations should establish and maintain an effective property management system to avoid incurring property acquisition costs that are later disallowed by the awarding agency (e.g., acquiring unreasonable, duplicative, or unnecessary property). Recommended screening practices include:

- Take stock of the equipment that recipient or subrecipient already has and see if it meets the identified needs.
- Consider establishing a screening committee to make decisions about purchases.
- Utilize effective management techniques as a basis for determining that property/equipment is needed.
- Initiate a screening process to ensure that effective controls are in place for property management.

### Equipment Ownership, Use, Management, and Disposition

DOJ recipients must follow the standards and procedures for ownership (title), use, management, and disposition of equipment set out below, with the exception of recipients and subrecipients of Byrne Justice Assistance Grant (JAG) Program formula grant funds from the Bureau of Justice Assistance. JAG award recipients must follow slightly different standards and procedures set out in 34 U.S.C. 10227. (See the "Equipment and Supplies Acquired With Edward Byrne Memorial Justice Assistance Grant Program Funds" below).

COPS-AR-0908

## III. Postaward Requirements

### 3.7 PROPERTY STANDARDS

#### Ownership of Equipment

Unless more specific rules are identified for a particular grant program, title to equipment acquired under a Federal award will vest in the recipient or subrecipient organization. The legal right of ownership and conditions for use, management, and disposal of equipment are set forth in 2 C.F.R. § 200.313, and are described below.

#### Use of Equipment

A *State* must use equipment acquired under a Federal award in accordance with State laws and procedures

An *Indian Tribe* must use equipment acquired under a Federal award in accordance with tribal laws and procedures. If such laws and procedures do not exist, Indian Tribes must follow the guidance in 2 C.F.R. § 200.313(c-e), and described below.

*Other recipients and subrecipients, including subrecipients of States and Indian Tribes* must use equipment acquired under an award (or subaward) for the authorized program or project purposes for which it was acquired and for as long as needed, whether or not the project or program continues to be supported by the Federal award. When no longer needed for the original program or project, the equipment may be used in other activities..

- *Use for other Federal projects.* Equipment must be made available for use on other projects or programs currently or previously supported by the Federal government, provided the use does not interfere with the work on the projects or programs for which it was originally acquired. First preference for other use should be given to other programs or projects supported by the DOJ agency.

- *User fees.* User fees should be considered and treated as program income to the project, when appropriate.

- See 2 C.F.R. § 200.307 (Program Income). During the time the Federal government retains an interest in the equipment the recipients or subrecipients must not use equipment acquired with a Federal award to provide services for a fee that is less than a private company would charge for similar services, unless doing so is specifically authorized by law. See 2 C.F.R. § 200.313(c)(3).

- *Replacement equipment.* When acquiring replacement equipment, recipients or subrecipients may either trade-in or sell the equipment and use the proceeds to offset the cost of the replacement equipment, subject to the written approval of the awarding DOJ agency.

- *Encumbrances.* A recipient or subrecipient must not encumber equipment acquired under a Federal award without approval of the awarding DOJ agency or pass-through entity

#### Management of Equipment

A *State* must manage equipment acquired under a Federal award in accordance with State laws and procedures. DOJ encourages the States to follow the procedures that are in this *Guide.*
An *Indian Tribe* must manage equipment acquired under a Federal award in accordance with tribal laws and procedures. If such laws and procedures do not exist, Indian Tribes must follow the guidance in 2 C.F.R. § 200.313(d), and described below.

*Other than States an Indian Tribes, recipients and subrecipients (including subrecipients of States and Indian Tribes)* regardless of whether equipment is acquired in part or its entirety under the Federal award must manage equipment (including replacement equipment) utilizing procedures that meet the following requirements:

- **Property records.** Property records must include all of the following information:
  - Description of the property
  - Serial number or other identification number

COPS-AR-0909

## III. Postaward Requirements

### 3.7 PROPERTY STANDARDS

- ▶ Source of the property, including the federal award identification number
- ▶ Identification of the title holder
- ▶ Acquisition date
- ▶ Cost of the property
- ▶ Percentage of Federal agency contribution towards the original purchase
- ▶ Location of the property
- ▶ Use and condition of the property
- ▶ Disposition data, including the date of disposal and sale price

The recipient and subrecipient are responsible for maintaining and updating property records when there is a change in the status of the property.

- *Inventory.* A physical inventory of the property must be conducted and the results must be reconciled with the property records at least once every 2 years.
- *Maintenance procedures.* Regular maintenance procedures must be in place to ensure the property is in proper working condition.
- *Control system.* A control system must be in place to ensure safeguards for preventing property loss, damage, and theft.
  - ▶ Promptly and properly investigate and fully document any loss, damage, or theft, and make the documentation part of the official project records. 2 C.F.R. § 200.313 (d)(3).
  - ▶ The recipient or subrecipient must notify the DOJ agency or pass-through entity of any loss, damage, or theft of equipment that will have an impact on the program.
  - ▶ Provide at a minimum, the equivalent insurance coverage for equipment acquired with Federal funds that the recipient or subrecipient owns. Insurance is not required for Federally-owned property unless required by the award. 2.C.F.R. § 200.310.
  - ▶ Recipients and subrecipients are responsible for replacing or repairing property that is willfully or negligently lost, stolen, damaged, or destroyed.
- *Proper sales procedures.* If authorized or required to sell the property, the recipient or subrecipient must have proper sales procedures in place to ensure the highest possible return.

### Disposition of Equipment

A *State* recipient must dispose of equipment acquired under the award in accordance with State laws and procedures.

An *Indian Tribe* recipient must dispose of equipment acquired under the award in accordance with tribal laws and procedures. If such laws and procedures do not exist, Indian Tribes must follow the guidance in 2 C.F.R. § 200.313(e), and described below.

*Other recipients and subrecipients (including subrecipients of States and Indian Tribes)* must dispose of the equipment when equipment acquired under the award or subaward is no longer needed for the original projector program, or other activities currently or previously supported by a Federal agency, as follows:

- If the item to be disposed of has a current fair market value of $10,000 or less (per unit), the item may be retained, sold, or otherwise disposed of with no further obligation to the DOJ agency or pass-through entity.

COPS-AR-0910

**3.7 PROPERTY STANDARDS**

- If the item has a current per-unit fair market value of more than $10,000 (per unit), the item may be retained or sold, but the awarding DOJ agency will have a right to a specific dollar amount. Calculate this amount by multiplying the percentage of the DOJ agency's contribution towards the original purchase price by the current market value or proceeds from the sale. The seller is also eligible to retain $1,000 of the proceeds to cover expenses associated with the selling and handling of the equipment.

In cases where the recipient or subrecipient fails to take appropriate disposition actions, the awarding DOJ agency may direct other disposition actions.

When included in the award, the DOJ agency may permit the recipient to retain equipment, or authorize a pass-through entity to permit the subrecipient to retain equipment with no further obligation to the Federal government unless prohibited by Federal statute or regulation.

COPS-AR-0911

## 3.7 PROPERTY STANDARDS

### Equipment and Supplies Acquired With Edward Byrne Memorial Justice Assistance Grant Program Funds

Special rules, set out in 34 U.S.C. 10227 (a provision of the Omnibus Crime Control and Safe Streets Act of 1968), apply to the ownership, use, and disposition of equipment and supplies purchased with Edward Byrne Memorial Justice Assistance Grant Program (Byrne JAG) funds awarded by the Bureau of Justice Assistance (BJA). These rules supersede any conflicting provision of 2 C.F.R. Part 200. See 2 C.F.R. Part 2800.

- Title to all equipment and supplies purchased with Byrne JAG funds vests in the criminal justice agency or non-profit organization that purchased the property, if it certifies to the State Office that it will use the property for criminal justice purposes.
- If such certification is not made, title to the property shall vest in the State Office, which shall seek to have the property used for criminal justice purposes elsewhere in the State prior to using it or disposing of it in any other manner.
- When equipment is no longer needed for criminal justice purposes, a State should dispose of equipment (for both the State and subrecipients) in accordance with State procedures, with no further obligation to the awarding agency.
- The procedures on *use* and *management* of equipment set out above apply to the extent that they do not conflict with 34 U.S.C. 10227.

### Federal Equipment

When federally owned equipment is provided, the following requirements apply:

- Title remains vested in the Federal Government.
- The equipment must be managed in accordance with the grant-making DOJ component's rules and procedures and an annual inventory listing must be submitted.
- When the equipment is no longer needed, disposition instructions must be requested from the grant-making DOJ component.

### Replacement of Equipment

When an item of property is no longer efficient or serviceable but continues to be needed in the program or project for which it was acquired, or other programs permitted under 2 C.F.R. § 200.313(c), the property may be replaced through trade-in or sale and subsequent purchase of new property. In this case, the following conditions must be met:

- *Same function and character.* Replacement property must serve the same function as the original property and be of the same nature or character, although not necessarily of the same grade or quality.
- *Timing.* Purchase of replacement property must take place soon enough after the sale of the property to show that the sale and the purchase are related.
- *Trade-ins.* When acquiring replacement property, the recipient or subrecipient may use the property to be replaced as a trade-in. Value credited for the property, if the property is traded in, must be related to its fair market value. The recipient or subrecipient also may use the proceeds from the sale of the property to offset the cost of the new property.
- *Subrecipients of States.* State subrecipients must obtain the written permission of the State to use the provisions of this section prior to entering into negotiation for the replacement or trade-in of property.

COPS-AR-0912

## III. Postaward Requirements

### 3.7 PROPERTY STANDARDS

#### Supplies

For supplies acquired under an award, the title to the supplies vests with the recipient upon acquisition. For supplies acquired under a subaward, the title vests with the subrecipient upon acquisition.

- The DOJ component or pass-through entity is entitled to compensation in an amount calculated by multiplying the percentage of the Federal agency's or pass-through entity's contribution towards the costs of the original purchase(s) by the current market value or proceeds from the sale if both of the following apply:
  - The residual inventory of unused supplies exceeds $10,000 in aggregate fair market value at the end of the period of performance.
    - Unused supplies means supplies that are in new condition, not having been used or opened before.
    - The aggregate value of unused supplies consists of all supply types, not just like-item supplies.
  - The supplies are not needed for any other federal award.

**Note:** Special rules apply for supplies purchased with Byrne JAG funds – see previous discussion.

#### Real Property Acquired With Federal Funds

*Real property* means land, including land improvements, structures, and appurtenances thereto, and legal interests in land, including fee interest, licenses, rights of way, and easements. See 2 C.F.R. § 200.1. DOJ funds generally cannot be used for land acquisition unless specifically permitted under the program or terms of the award.

*Title.* Subject to the obligations and conditions in the award, title to real property acquired or improved under an award or subaward vests upon acquisition in the recipient or subrecipient, as applicable.

*Use.* Recipients and subrecipients are to use real property acquired, in whole or in part, with Federal funds for the authorized purposes of the original award or subaward as long as needed for that purpose. In some cases, a recipient or subrecipient may receive approval from the agency for a change in use, if the property is no longer needed for its originally funded purpose.

- An inventory report should be maintained which identifies real property acquired, in whole or in part, with Federal funds.
- While the property is being used for the originally authorized purpose, the recipient or subrecipient must not dispose of or encumber its title or other interests, except as provided by the DOJ agency.
  - Easements for utility, cable, and similar services that benefit the real property and are consistent with the authorized use are not considered an encumbrance.

*Disposition.* When real property is no longer needed for the original award purposes (or another awarding agency-approved purpose), the recipient or subrecipient should obtain disposition instructions from the grant-making DOJ component or pass-through entity, as appropriate. The instructions may allow one of the following:

COPS-AR-0913

## III. Postaward Requirements

### 3.7 PROPERTY STANDARDS

- ***Retain title after compensating the Federal awarding agency.*** When the recipient or subrecipient retains title to the property, it must pay the Federal agency an amount calculated by multiplying the percentage of the Federal agency's contribution towards the original purchase (and costs of any improvements) by the current fair market value of the property. However, in situations where the recipient or subrecipient is disposing of real property acquired or improved with the Federal award and acquiring replacement real property under the same Federal award, the net proceeds from the disposition may be used as an offset to the cost of the replacement property.

- ***Sell the property and compensate the Federal awarding agency.*** When a recipient or subrecipient sells the property, it must pay the Federal agency an amount calculated by multiplying the percentage of the Federal agency's contribution towards the original purchase (and cost of any improvements) by the proceeds of the sale after deducting any actual and reasonable expenses paid to sell or fix up the property for sale. When the Federal award has not been closed out, the net proceeds from the sale may be offset against the original cost of the property. When directed to sell the property, the recipient or subrecipient must sell the property utilizing procedures that provide for competition to the extent practicable and that result in the highest possible return.

- ***Transfer title to the Federal agency or a third party designated/approved by the Federal agency.*** When a recipient or subrecipient transfers title to the property to a Federal agency or third party designated or approved by the Federal agency, the recipient or subrecipient is entitled to be paid an amount calculated by multiplying the percentage of the recipient's or subrecipient's contribution towards the original purchase of the real property (and cost of any improvements) by the current fair market value of the property.

### Retention of Property Records

Records for equipment, nonexpendable personal property, and real property must be retained for a period of 3 years from the date of disposition, replacement, or transfer at the discretion of the grant-making component.

- If any litigation, claim, or audit is started before the expiration of the 3-year period, records must be retained until all litigation, claims, or audit findings involving the records have been resolved.

- The grant record retention period is typically for 3 years, but the reporting rules affecting real property acquired or improved with federal funds continue throughout the useful life of the property. See Chapter 3.15 Reporting Requirements.

### Intangible Property

Intangible property means property having no physical existence, such as trademarks, copyrights, data (including data licenses), websites, IP licenses, trade secrets, patents, patent applications and property, such as loans, notes and other debt instruments, lease agreements, stocks and other instruments of property ownership of either tangible or intangible. ). 2 C.F.R. § 200.1.

***Title.*** Intangible property acquired under a Federal award vests upon acquisition in the recipient or subrecipient.

***Use.*** The recipient or subrecipient must use that intangible property for the originally-authorized purpose, and must not encumber the property without the approval of the Federal agency or pass-through entity.

COPS-AR-0914

## III. Postaward Requirements

### 3.7 PROPERTY STANDARDS

*Disposition.* When no longer needed for the originally authorized purpose, intangible property is treated similarly to equipment for disposition purposes. Disposition must occur in accordance with 2 C.F.R. § 200.313(e). In general, intangible property (e.g., a securities instrument or a patent) with a fair market value of $10,000 or less may be retained, sold, or otherwise disposed of with no further obligation to the component; while intangible property valued above $10,000 may be retained or sold, but the component is entitled to compensation for its share of contribution to the cost of the original purchase, minus some selling and handling expenses. See the provisions for disposition of equipment (above) for a summary of these requirements.

See 2 C.F.R. § 200.315 and 2 C.F.R. § 200.448 for additional detailed rules regarding intangible and intellectual property.

#### Copyrights

To the extent permitted by law, the recipient or subrecipient may copyright any work that is subject to copyright and was developed, or for which ownership was acquired, under a Federal award.

The grant-making DOJ component reserves a royalty-free, nonexclusive, and irrevocable right to reproduce, publish, or otherwise use, for Federal Government purposes (and to authorize others to do so. This includes the right to require recipients and subrecipients to make such works available through agency-designated public access repositories), the following:

- Any work subject to copyright that was developed under an award or subaward; and
- Any work for which ownership was acquired under an award or subaward.

#### Data Produced Under A Federal Award

With respect to data produced under a Federal award and/or subaward, the grant-making DOJ component has the right to do the following:

- Obtain, reproduce, publish, or otherwise use the data produced under an award; and
- Authorize others to receive, reproduce, publish, or otherwise use such data for Federal purposes.

#### Patents, Patent Rights, and Inventions

The recipient or subrecipient is subject to applicable regulations governing patents and inventions, including government-wide regulations issued in 37 C.F.R. 401, 2 C.F.R. § 200.315(c) and 2 C.F.R. § 200.448.

COPS-AR-0915

## 3.8 PROCUREMENT UNDER AWARDS OF FEDERAL ASSISTANCE

### Procurement Standards—General Guidance

The Procurement Standards in the Uniform Guidance at 2 C.F.R. § 200.317 through 2 C.F.R. § 200.327 detail requirements and restrictions imposed on States, Indian Tribes, and other recipients and subrecipients that use Federal assistance funds to procure property or services needed to carry out the grant-funded project.

**Procurements by States and Indian Tribes (2 C.F.R. § 200.317)**

When conducting procurement transactions under a Federal award, a State or Indian Tribe must follow the same policies and procedures it uses for procurements with non-Federal funds. If such policies and procedures do not exist, States and Indian tribes must follow the procurement standards in 2 C.F.R. § 200.318 through 2 C.F.R. § 200.327. In addition to its own policies and procedures, a State or Indian Tribe must also comply with the following procurement standards: 2 C.F.R. § 200.321, 2 C.F.R. § 200.322, 2 C.F.R. § 200.323, and 2 C.F.R. § 200.327. All other recipients and subrecipients, including subrecipients of a State or Indian Tribe, must follow the procurement standards in 2 C.F.R. § 200.318 through 2 C.F.R. § 200.327.

**General Procurement Standards and Other Procurement Standards (2 C.F.R. § 200.318-327)**

For procurement transactions using Federal award funds, the recipient or subrecipient must maintain and use documented procedures for procurement transactions under a Federal award or subaward, including for acquisition of property or services. These documented procurement procedures must be consistent with applicable State, local, and Indian tribal laws and regulations, and with the regulations and standards identified in 2 C.F.R. Part 200.317 through 200.327.

Recipients and subrecipients must maintain written standards of conduct covering conflict of interest and employee participation in selection, award and administration of contracts. Recipients or subrecipients must also ensure that contractors perform in accordance with the terms, conditions and specifications of their contracts. Contracts should only be awarded to responsible contractors possessing the ability to perform successfully under the terms and conditions of proposed procurements. Records that detail the history of all procurements must be maintained and should include, but not limited to:

- Rationale for the method of procurement;
- Selection of contract type;
- Contractor selection and/or rejection process; and
- Basis for the contract prices.

Recipients and subrecipients are responsible, in accordance with good administrative practice and sound business judgment, for the settlement of all contractual and administrative issues arising out of the procurement.

Award recipients and subrecipients must:

- Have a documented process to check for organizational conflict of interest with potential contractors;
- Have a process in place to ensure that contracts are not awarded to contractors or individuals on the List of Parties Excluded from Federal Procurement and Non-procurement Programs;
- Perform a System for Award Management (SAM) review of potential contractors or individuals; and
- Not award or permit any award at any level to any party which is debarred or suspended.

For details regarding debarment procedures, see the government-wide guidelines for debarment and suspension codified in 2 C.F.R. Part 180, and 2 C.F.R. Part 2867 , which adopts the OMB guidance in subparts A through I of Title 2 CFR Part 180, as supplemented by Title 2 Part 2867, as the DOJ policies and procedures for non-procurement debarment and suspension.

COPS-AR-0916

## III. Postaward Requirements

### 3.8 PROCUREMENT UNDER AWARDS OF FEDERAL ASSISTANCE

Recipients' and subrecipients' procedures must avoid the acquisition of unnecessary or duplicative items. When appropriate, an analysis should be made between leasing and purchasing property or equipment to determine the most economical approach. Recipients and subrecipients are encouraged to use excess and surplus Federal property when possible and when appropriate for the procurement or use of common or shared goods and services, to enter into State and local intergovernmental agreements or inter-entity agreements for procurement transactions.

Recipients and subrecipients must include any applicable provisions found at 2 C.F.R. § 200 Appendix II ("Contract Provisions for Non-Federal Entity Contracts Under Federal Awards") in all contracts made by recipients and subrecipients under the Federal grant award.

For additional guidance please see the Guide to Procurements Under DOJ Grants and Cooperative Agreements  [PDF - 700 Kb].
.

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> When conducting procurements using Federal award funds, a subrecipient of a State or Indian Tribe must use its own documented procurement procedures and must adhere to all applicable requirements found in 2 C.F.R. § 200.318 through 200.327 of the Procurement Standards.
>
> As used in this section (3.8) and elsewhere throughout the Guide, the term "recipients and subrecipients" includes for-profit recipients and for-profit subrecipients of DOJ grant or cooperative agreement funds.
>
> As specified in this section (3.8) and as applied elsewhere throughout the Guide, the "simplified acquisition threshold" is $250,000 and the "micro-purchase threshold" is $50,000 (with exceptions as set out in 2 C.F.R. Part 200). See 2 CFR 200.1 (definitions of "simplified acquisition threshold" and "micro-purchase threshold") and 2 C.F.R. 200.320.

### Methods of Procurement

There are several methods of procurement that may be used by recipients and subrecipients including:

- Informal procurement methods:
  - ▸ Micro-purchases (see 2 C.F.R. § 200.320(a)(1));
  - ▸ Simplified acquisitions (see 2 C.F.R. § 200.320(a)(2));
- Formal procurement methods;
  - ▸ Sealed bids (see 2 C.F.R. § 200.320(b)(1));
  - ▸ Proposals (see 2 C.F.R. § 200.320(b)(2)); and
- Noncompetitive procurement (see 2 C.F.R. § 200.320(c)

COPS-AR-0917

## 3.8 PROCUREMENT UNDER AWARDS OF FEDERAL ASSISTANCE

### Competition

Recipients and subrecipients must conduct all procurement transactions in a manner that provides full and open competition and is consistent with the Procurement Standards in the Uniform Guidance. To avoid unfair competitive advantage, contractors that develop or draft specifications, requirements, statements of work, and invitations for bids must be excluded from competing on those procurements.

Examples of situations that may restrict competition include, but are not limited to:

- Placing unreasonable requirements on firms for them to qualify to do business;
- Requiring unnecessary experience or excessive bonding;
- Noncompetitive pricing practices between firms or between affiliated companies;
- Noncompetitive contracts to consultants that are on retainer contracts;
- Organizational conflicts of interest;
- Specifying a "brand name" product instead of allowing "an equal" product to be offered; and
- Any arbitrary action in the procurement process.

Written procedures for procurement transactions must ensure that all solicitations are made in accordance with 2 C.F.R. § 200.319(b), incorporate a clear and accurate description of the technical requirements for the property, equipment, or service being procured.

Solicitations should also identify any additional requirements which offerors must fulfill and all other factors that will be used in evaluating bids and proposals

### Noncompetitive Procurement

Recipients or subrecipients may use noncompetitive procurement when one or more of the following circumstances apply:

- The aggregate amount of the property or services to be acquired does not exceed the micro-purchase threshold;
- The procurement transaction can only be fulfilled by a single source;
- The public exigency or emergency for the requirement will not permit a delay resulting from providing public notice of a competitive solicitation;
- The recipient or subrecipient requests in writing to use a noncompetitive procurement method, and the DOJ or pass-through entity provides written approval; or
- After soliciting several sources, competition is determined to be inadequate.

Noncompetitive procurement should be used only when use of competitive solicitation procedures like sealed bids, or competitive proposals are not applicable to the requirement or is impracticable.

All noncompetitive procurements in excess of the simplified acquisition threshold must receive prior approval from the grant-making DOJ component before entering into the contract. 2 C.F.R. § 200.325(b)(2).

ⓘ **FINANCIAL MANAGEMENT TIP**

Noncompetitive procurement is also known as "*sole source*".

## 3.8 PROCUREMENT UNDER AWARDS OF FEDERAL ASSISTANCE

**Noncompetitive Procurement Justification Sample Outline**

| Paragraph | Content |
|---|---|
| 1 | Brief description of program and the product or service being procured, to include the expected procurement amount. |
| 2 | Explanation of why it is necessary to contract non-competitively, including at least one of the four circumstances listed above. The justification may also include the following contractor qualities:<br>a. Organizational expertise<br>b. Management<br>c. Knowledge of the program<br>d. Responsiveness<br>e. Expertise of personnel |
| 3 | Description of and the results of any market survey or research conducted to help determine whether a full and open competition consistent with applicable law could be conducted (or, if no market survey or research was conducted, explain why not). |
| 4 | Statement of when contractual coverage is required and, if dates are not met, what impact it will have on the program (for example, how long it would take another contractor to reach the same level of competence). Make sure to include the financial impact in dollars. |
| 5 | Other points to "sell the case". |
| 6 | Declaration that this action is in the "best interest" of the grantor agency and/or the Federal Government. |
| 7 | Conflict of Interest Review |
| **Note:** Time constraints will not be considered a factor if the award recipient has not sought competitive bids in a timely manner. | |

The following "Do's and Don'ts" lists are non-exhaustive and highlight a few elements from the Procurement Standards. To help ensure that recipients conduct procurement transactions in full compliance with the Procurement Standards and other applicable law, the use of these highlights are considered as a starting point only, and should not be relied upon as though they fully cover all aspects of the law, rules, policies, or procurement procedures that may apply to procurement transactions conducted using Federal award funds.

### Contracting Do's

1. Provide for full and open competition consistent with the Procurement Standards.

2. Develop and incorporate clear and accurate descriptions for technical requirements, specifications, statements of work, or other required documents used in procurement transactions.

3. Ensure any prequalified lists of persons, forms, or products used in acquiring goods and services are current and include enough qualified sources to ensure maximum open and free competition consistent with the Procurement Standards.

4. Only make procurement contracts to responsible contractors that can perform successfully in accordance with contract terms and conditions.

5. Maintain records sufficient to detail the history of any procurement action.

COPS-AR-0919

## 3.8 PROCUREMENT UNDER AWARDS OF FEDERAL ASSISTANCE

### Contracting Don'ts

1. Don't include unreasonable (or otherwise unjustifiable) requirements that would be restrictive of competition.

2. Don't require unnecessary experience or other unnecessary criteria or elements that cannot be justified or supported with procurement procedures and the Procurement Standards.

3. Don't allow for, engage in, or facilitate noncompetitive pricing between firms or affiliated companies.

4. Don't forget to include all applicable contract provisions described in Appendix II to Part 200 in any procurement contracts.

5. Don't require unreasonable time frames or performance.

### Contracting with Small Businesses, Minority Businesses, Women's Business Enterprises, Veteran-owned Businesses and Labor Surplus Area Firms

Consistent with the national goal of expanding the opportunities for women-owned and minority-owned business enterprises, when possible recipients or subrecipients, should ensure that small businesses, women's business enterprises, minority businesses, veteran-owned businesses, and labor surplus area firms are considered. For more information see 2 C.F.R. § 200.321.

### OJP Construction Requirements

#### Qualifications

Recipients or subrecipients considering the use of federal grant award funds for construction must be aware of the following qualifications:

- Costs incurred as an incidental and necessary part of a program for renovation, remodeling, maintenance, and repair costs that do not constitute capital expenditures are generally allowable, but may be subject to provisions, including restrictions or limitations, contained in program-authorizing legislation.

- The total cost of a construction project includes the cost of site preparation and demolition of existing structures. Any proceeds (program income) realized for site preparation activities (e.g., salvage value of structures demolished or proceeds from the sale of timber) must be applied to the project. These proceeds should be used to reduce the total cost of the construction project.

- Relocation costs are paid in accordance with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4601-4655.

- Funds will not be obligated for construction until OJP has been contacted and assisted in satisfactorily completing any applicable OJP procedures by complying with the National Historic Preservation Act, the National Environmental Policy Act, and other related Federal environmental impact analysis requirements.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> All income earned that is generated as a direct result of a federal-award-funded project during the award's period of performance is considered program income (see Chapter 3.4).

COPS-AR-0920

## 3.8 PROCUREMENT UNDER AWARDS OF FEDERAL ASSISTANCE

### Special Fiscal Conditions for Construction Projects

The DOJ grant-making component or recipients (e.g., pass-through entities such as States) may accept the bonding policy and requirements of recipients or subrecipients, respectively, if they adequately protect the Federal interest. If DOJ or the pass-through entity determines that a recipient or subrecipient, as applicable, does not have adequate bonding policies and requirements that protect the Federal interest, the DOJ grant-making component or pass-through entity must require all of the following, consistent with 2 C.F.R. § 200.326

- A bid guarantee equivalent to 5 percent of the bid price.
  - ▶ The bid guarantee must consist of a firm commitment—such as bid bond, certified check, or other negotiable instrument accompanying a bid—as assurance that the bidder will, upon bid acceptance, execute any required contractual documents within the specified timeframe.
- A performance bond on the contractor's part for 100 percent of the contract price.
  - ▶ A "performance bond" is a bond executed in connection with a contract to secure the fulfillment of all the contractor's requirements under a contract.
- A payment bond on the contractor's part for 100 percent of the contract price.
  - ▶ A "payment bond" is a bond executed in connection with a contract to ensure payment as required by the law of all persons supplying labor and material in the execution of the work provided for under a contract

---

ⓘ **FINANCIAL MANAGEMENT TIP**

The customary fixed fee or profit allowance in cost-type contracts may not exceed 10 percent of the total estimated costs. This rule applies to procurement contracts executed under grants.

---

### Guarantee of Payment of Money

In situations where the Federal Government guarantees the payment of money borrowed by a recipient or subrecipient, the State may, at its discretion, require bonding and insurance to protect the interest of the Federal Government.

- If a project is considering construction of facility improvements for less than $100,000 and the subrecipient does not have any requirements for bid guarantees, performance bonds, and payments bonds, the subrecipient must meet the requirements of the State.

COPS-AR-0921

## 3.9 ALLOWABLE COSTS

### Introduction

Costs are allowable when they are reasonable, allocable to, and necessary for the performance of the federal award, and when they comply with the funding statute and agency requirements (to include the conditions of the award), including the cost principles set out in the Uniform Requirements 2 C.F.R. Part 200, Subpart E.

> ▶ **OJP SPECIFIC TIP**
>
> For OJP awards for-profit entities and hospitals follow different cost principles – see FAR 31.2, and 2 C.F.R. Part 200 Appendix IX, respectively.

This chapter highlights selected costs that are often allowable under DOJ awards. For more information about specific factors that affect whether costs are allowable, refer to 2 C.F.R. § 200, Subpart E, including the list of specific items of cost in 2 C.F.R. § 200.420 through 200.476. Mentioning, or failing to mention, including as an example in certain sections, a cost is not intended to imply that a cost is either allowable or unallowable in the performance of a specific federal award.

### Compensation for Personal Services (Personnel Expenses)

#### Salaries, Wages, and Fringe Benefits

Compensation for personal services "includes all remuneration, paid currently or accrued, for services of employees rendered during the period of performance under the Federal award, including but not necessarily limited to wages and salaries [and] fringe benefits" 2 C.F.R. 200.430.

Subject to the requirement of the specific award, costs of compensation for personal services generally are allowable where they —

- are reasonable for the services rendered;
- conform to the established written policy of the recipient or subrecipient consistently applied to both Federal and non-Federal activities;
- follow an appointment made in accordance with a recipient's or subrecipient's laws, rules, or written policies and meet the requirements of the Federal statute, where applicable; and
- are adequately supported under 2 C.F.R. 200.430(g).

DOJ agencies disallow the use of award funds to compensate for personal services where such compensation exceeds certain amounts.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Any additional compensation beyond 110 percent of the U.S. Government SES level will not be considered matching funds where matching requirements apply.

COPS-AR-0922

## III. Postaward Requirements

### 3.9 ALLOWABLE COSTS

**Support of Salaries, Wages, and Fringe Benefits**

Charges made to Federal awards for salaries, wages, and fringe benefits must be based on records that accurately reflect the work performed and comply with the established policies and practices of the organization. See 2 C.F.R. § 200.430 and § 200.431.

- Charges must be supported by a system of internal controls that provides reasonable assurance that the charges are accurate, allowable, and properly allocated.

- Documentation for charges must be incorporated into the official records of the organization.

- Support must reasonably reflect the total activity for which the employee is compensated by the organization and cover both federally funded and all other activities. The records may include the use of subsidiary records as defined in the organization's written policies.

- Where grant recipients work on multiple grant programs or cost activities, documentation must support a reasonable allocation or distribution of costs among specific activities or cost objectives.

- In cases where two or more grants constitute one identified activity or program, salary charges to one grant may be allowable after written permission is obtained from the awarding agency.

- The recipient must complete and keep on file, as appropriate in accordance with Federal law, the U.S. Citizenship and Immigration Services' Employment Eligibility Verification Form I-9 for individuals working under the award. This form is to be used by recipients (and any subrecipients) of Federal funds to verify that persons hired under the award are eligible to work in the United States.

---

ⓘ FINANCIAL MANAGEMENT TIP

Examples of items that may support salaries and wages can include timesheets, time and effort reports, or activity reports that have been certified by the employee and approved by a supervisor with firsthand knowledge of the work performed. Payroll records should also reflect either after the fact distribution of actual activities or certifications of employee's actual work performed.

---

▶ OJP SPECIFIC TIP

**Added Work**

A recipient or subrecipient may employ a State or local government worker to complete tasks in addition to his or her full-time job, provided the work is performed on the employee's own time;

Compensation paid should be reasonable and consistent with that paid for similar work in other activities of State or local government;

The employment arrangement is approved and proper under State or local regulations (e.g., no conflict of interest); and

The time and/or services provided are supported by adequate documentation.

COPS-AR-0923

## III. Postaward Requirements

### 3.9 ALLOWABLE COSTS

**Limit on Use of Award Funds for Employee Compensation**

DOJ grant funds may not be used to pay cash compensation (salary plus bonuses) to any employee at a rate that exceeds 110 percent of the annual maximum salary payable to a member of the Federal Government's Senior Executive Service (SES) at an agency with a Certified SES Performance Appraisal System for that year.

> ▶ **OJP SPECIFIC TIP**
>
> With respect to the limitation, compensation for salary plus bonuses are applicable to any award of more than $250,000.

The latest salary table for SES employees is available on the U.S. Office of Personnel Management's Salaries & Wages (opm.gov).

A recipient may compensate an employee at a higher rate, provided the amount in excess of the limitation is paid with non-Federal funds. For employees who charge only a portion of their time to an award, the allowable amount to be charged to that award is equal to the percentage of time worked on the grant times the maximum salary limit (110% of SES salary.

> ▶ **OJP SPECIFIC TIP**
>
> The Assistant Attorney General for OJP (or, for certain awards, the official listed in the applicable program solicitation) may exercise discretion to waive, on an individual basis, the limitation on compensation rates allowable under an award. An applicant requesting a waiver should include a detailed justification in the budget narrative of the application. Unless the applicant submits a waiver request and justification with the application, the applicant should anticipate that OJP will request the applicant to adjust and resubmit the budget. The justification should include the particular qualifications and expertise of the individual, the uniqueness of the service the individual will provide, the individual's specific knowledge of the program or project being undertaken with award funds, and a statement explaining that the individual's salary is commensurate with the regular and customary rate for an individual with his/her qualifications and expertise, and for the work to be done.

**Overtime Compensation**

Unless specifically exempted under the Fair Labor Standards Act, recipient and subrecipient employees should be compensated with overtime payments for work performed in excess of the established work week (usually 40 hours).

- Payment of more than occasional overtime is subject to periodic review by the awarding agency.
- In addition, overtime compensation is typically reviewed during programmatic, financial monitoring and audits.

Executive, administrative and professional employees who meet the criteria for an exemption from the overtime requirements of the Fair Labor Standards Act may not be reimbursed for overtime under grants and cooperative agreements. More information on overtime exemptions under the Fair Labor Standards Act is available on the Department of Labor's website at https://www.dol.gov/whd/overtime.

COPS-AR-0924

III. Postaward Requirements

## 3.9 ALLOWABLE COSTS

> **ⓘ FINANCIAL MANAGEMENT TIP**
>
> In no case is dual compensation allowable. That is, an employee may not receive compensation from his/her organization AND from an award for a single period of time (e.g., 1 to 5 p.m.), even though such work may benefit both activities.

**Compensation of Federal Employees** (Generally unallowable, see Ch. 13 Unallowable Costs)

**Bonuses** (see Ch. 13 Unallowable Costs, for more details)

**Post-Employment Benefits**

Post-employment benefits are allowable costs if funded in accordance with actuarial requirements.

## Consultants

Please refer to Ch. 3.6 (Prior Approval), Consultant Rates, for a more complete discussion of the requirements and restrictions for these costs.

## Conferences and Workshops

All recipients should see Chapter 3.10: Conference Approval, Planning, and Reporting for more information.

All conferences (defined an event whose primary purpose is to disseminate technical information beyond the recipient or subrecipient, e.g., meetings, retreats, seminars, symposiums, events, and group trainings) conducted by Cooperative Agreement recipients or contractors funded by DOJ must receive written prior approval. An approved award budget is not a prior approval. All prior approval requests must be submitted within the required number of days (90 or 120) in advance of the start date. See Chapter 3.10

> **▶ OJP SPECIFIC TIP**
>
> All contracts under an award funded by OJP awards for events that include 30 or more participants (both Federal and non-Federal) must ensure that lodging costs for any number of attendees do not exceed the prevailing Federal per diem rate for lodging. If the lodging rate is not the Federal per diem rate or less, none of the lodging costs associated with the event are allowable costs to the award. As a result, the recipient would be required to pay for all lodging costs for the event with non-award funds, not just the amount in excess of the Federal per diem. For example, if the Federal per diem for lodging is $78 per night, and the event lodging rate is $100 per night, the recipient would be required to pay the full $100 per night, not just the difference of $22 per night.

## Travel

Travel expenses are allowable costs for employees who are in travel status on official business related to the award. These costs must be reasonable and in accordance with the organization's established travel policy.

COPS-AR-0925

## III. Postaward Requirements

### 3.9 ALLOWABLE COSTS

In the absence of an established travel policy, the organization must comply with the Federal travel regulations (48 C.F.R. 31.205-46(a), most easily accessible via the U.S. General Services Administration website). See 2 C.F.R. § 200.475.

- The DOJ awarding agency reserves the right to determine the reasonableness of an organization's travel policy.
- Recipients and subrecipients must follow their own established travel policies.
- If a recipient or subrecipient does not have an established travel policy, they must abide by the Federal travel policy including per diem rates.
- The current per diem rate information is available at the Per Diem rates section of the U.S. General Services Administration (GSA) website.

Cost for tips (for example, tips paid to taxi or shuttle services) are allowable. Tips typically must be within the applicable per diem rate for incidental expenses, unless a different organizational travel policy applies.

### Tribal Eligibility for Government Travel Related Discounts

Tribal organizations carrying out a contract, grant, or cooperative agreement are eligible to have access to Federal sources of supply, including lodging providers, airlines, and other transportation providers.

Section 201(a) of the Federal Property and Administrative Services Act of 1949, 40 U.S.C. 481(a), indicates that employees of tribal organizations are eligible to have access to sources of supply on the same basis as employees of an executive agency if a request is made by the tribal organization.

> **▶ OJP SPECIFIC TIP**
>
> Foreign travel requires prior approval by OJP (see Chapter 3.6).
>
> For organizations located inside of the U.S. (including territories and possessions), foreign travel means travel outside of the U.S.
>
> For organizations located outside of the U.S., foreign travel means travel outside that country.)

### Federal Agency Employee Travel

- DOJ employee travel is not an allowable use of award funds. (See Ch. 13 Unallowable Costs)
- DOJ does consider to be allowable the travel expenses of other Federal employees, such as those persons serving on advisory committees or other program or project duties or assistance, if travel expenses have been:
  - ▶ Approved by the Federal employee's department or agency; and
  - ▶ Included as an identifiable item in the funds budgeted approved budget for the project or subsequently approved by the awarding agency.

COPS-AR-0926

## III. Postaward Requirements

### 3.9 ALLOWABLE COSTS

### Project Site

**Rental costs.** The rental cost of space in privately or publicly owned buildings used for the benefit of the project is allowable subject to the conditions stated below:

- The total cost of space does not exceed the rental cost of comparable space and facilities in a privately-owned building in the same locality. See 2 C.F.R. 200.465(a).

- The cost of space procured for project usage is not charged to the program for periods of non-occupancy without authorization of the grant making DOJ component. See 2 C.F.R. 200.446 Idle facilities and idle capacity.

- Rental costs may not be charged to the grant if the recipient owns the building or has a financial interest in the property. See 2 C.F.R. 200.465(b) and (c) . (However, the cost of ownership (i.e., depreciation) is an allowable expense – see below and 2 C.F.R. 200.436 Depreciation.)

- Rental costs may not be charged for building purchases or construction originally financed by the Federal Government, during the pendency of the federal interest.

- The rental of any property owned by any individuals or entities affiliated with the recipient or subrecipient, including commercial or residential real estate, for purposes such as the home office is unallowable. See 2 C.F.R 200.465(f).

The cost of space procured under rental-purchase or a lease-with-option to purchase agreement is allowable with prior written approval by the awarding DOJ agency. See 2 C.F.R. 200.439(b)(1); 200.1 (definitions of *capital expenditures* and *capital assets*.) This type of arrangement may require application of special matching share requirements under construction programs.

### Ownership costs

- Where the organization owns the facility, the cost of ownership (e.g. depreciation) is an allowable expense.

- Ownership expenses must be determined on the basis of actual cost (including depreciation based on the useful life of the building, operation and maintenance, and other allowable costs). Where these costs are charged elsewhere such as rental costs, they cannot be charged to the federal award.

- Cost of ownership expenses for a publicly owned building are allowable where "rental rate" systems, or equivalent systems that adequately reflect actual costs, are employed.

- Depreciation or use allowance on idle or excess facilities is not allowable, except when specifically authorized by the Federal awarding agency. See 2 C.F.R. § 200.446.

- Recipients may not use an accelerated method to calculate depreciation without clear evidence indicating that the expected consumption of the asset will be significantly greater in the early portion than in the later portion of its useful life.

### Utilities, maintenance, repair, and other facility costs

- The cost of utilities, insurance, security, janitorial services, elevator service, upkeep of grounds, ordinary repairs and maintenance, and the like are allowable to the extent they are not otherwise included in rental or other charges for space. See 2 C.F.R. 200.452.

COPS-AR-0927

## 3.9 ALLOWABLE COSTS

Costs incurred for rearrangement and alteration of facilities required specifically for the award program, or that materially increase the value or useful life of the facility (i.e., capital improvements), are allowable with prior written approval by the awarding agency. See 2 C.F.R. § 200.462 and § 200.439(b)(3). (NEPA requirements may also be applicable; contact the awarding agency for additional information.)

**Land Acquisition** (generally unallowable – see Ch. 3.13 Unallowable Costs).

### State and Local Sales Taxes

State and local state taxes are generally allowable, subject to the restrictions in 2 C.F.R. 200.470(a)(1).

### Publication and Printing

Project costs for publication and printing, including distribution, promotion, and general handling of electronic or print media are allowable. These costs should be allocated as indirect costs to all benefiting activities of the organization. To be considered allowable, publication costs must be incurred in accordance with the terms of the project. Additional guidance for publication and printing costs is set out in 2 C.F.R. § 200.461.

### Publication

Recipients publicizing project activities and results must follow applicable conditions on their awards, including those related to required publication disclaimers and to the reservation on the part of the federal agency under 2 C.F.R. 200.315(b) of a royalty-free, nonexclusive and irrevocable right to reproduce, publish, or otherwise use the work for federal purposes, and to authorize others to do so. This includes the right to require recipients and subrecipients to make such works available through agency-designated public access repositories.

All publication and distribution agreements with a publisher must include provisions giving the Federal Government a royalty-free, nonexclusive, and irrevocable license to reproduce, publish, or otherwise use and to authorize others to use the publication for Federal Government purposes (see Chapter 3.7). The agreements with a publisher should contain also information on any additional agency requirements specific to the project.

Unless otherwise specified in the award, recipients/subrecipients may copyright any books, publications, films, or other copyrightable material developed or purchased as a result of award activities. Copyrighted material will be subject to the same provisions giving the Federal Government a license as described above. See 2 C.F.R. § 200.315 and Chapter 3.7.

> **▶ OJP SPECIFIC TIP**
>
> Recipients/subrecipients are permitted to display the official awarding agency logo, seal, or any other official awarding agency (or office) insignia in connection with the activities supported by the award, only with the prior written approval of the awarding agency. OJP recipients/subrecipients are expected to review, become familiar with, and adhere to the "Terms of Use" information and all other applicable requirements in the Office of Justice Programs Brand Guidelines.
>
> The logo (or seal or insignia) must appear in a separate space, apart from any other symbol or credit. The words "Funded/Funded in part by DOJ" shall be printed either below or beside the logo (or seal or insignia), each time it is displayed.

COPS-AR-0928

## III. Postaward Requirements

### 3.9 ALLOWABLE COSTS

#### Printing and Duplication

Pursuant to the Government Printing and Binding Regulations, no project may be awarded primarily or substantially for the purpose of having material printed for the awarding agency. The Government Printing and Binding Regulations allow:

- The issuance of a project for the support of non-Government publications, provided such projects were issued pursuant to an authorization of law, and were not made primarily or substantially for the purpose of having material printed for the awarding agency.

- The publication of findings by recipients/subrecipients within the terms of their project provided such publication is not primarily or substantially for the purpose of having such findings printed for the awarding agency.

  - If recipients/subrecipients need to duplicate less than 5,000 units of only one (1) page, or less than 25,000 units in the aggregate of multiple pages, of its findings for the awarding agency, DOJ will not consider this duplication to constitute printing primarily or substantially for the awarding agency (e.g., 5,000 copies of 5 pages, etc.).

  - Duplicated pages may not exceed a maximum image size of 10¾ by 14¼ inches.

#### Equipment and Other Capital Expenditures (Prior Approval Required)

Equipment and other capital expenditures are allowable with the prior written approval of the awarding DOJ agency or pass-through entity. Please refer to Ch. 3.6 (Prior Approval), Equipment and Other Capital Expenditures, Ch. 3.7 (Property Standards), and Ch. 3.8 (Procurement) for a more complete discussion of the requirements and restrictions for these costs.

#### Software Development

Recipients can expense costs associated with software development in the period the costs are incurred, subject to the limits outlined in the budget and budget narrative. See 2 C.F.R. 200.439(b)(4). Please refer to Ch. 3.6 (Prior Approval), *Equipment and Other Capital Expenditures*, Ch. 3.7 (Property Standards), and Ch. 3.8 (Procurement) for a more complete discussion of the requirements and restrictions for these costs.

#### Other Allowable Costs

In accordance with 2 C.F.R. § 200.428, costs incurred by a recipient or subrecipient to recover improper payments, including improper overpayments, are allowable as either direct or indirect cost, as appropriate.

#### Closeout Costs

In accordance with 2 C.F.R. § 200.403(h), The recipient or subrecipient may charge the Federal award during the closeout for the necessary administrative costs of that Federal award (for example, salaries of personnel preparing final reports, publication and printing costs, costs associated with the disposition of equipment and property, and related indirect costs). These costs may be incurred until the due date of the final report(s). If incurred, these costs must be liquidated prior to the due date of the final report(s) and charged to the final budget period of the award unless otherwise specified by the Federal agency.

COPS-AR-0929

## 3.10    OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

> **▶ OVW SPECIFIC CONFERENCE GUIDANCE**
>
> The section below does not apply to recipients of OVW funds. Guidance on conference approval, planning, and reporting for OVW recipients is available here.

### Introduction

The purpose of this section is to provide guidance to OJP/COPS Office recipients (including cooperative agreement recipients and subrecipients) and contractors that conduct training sessions, meetings, or conferences.

For purposes of this chapter (OJP/COPS Office Conference Approval, Planning, and Reporting) references to "contractor" means a Federal contractor, unless context indicates otherwise. To sign up for email notifications for any changes to the Conference Cost Policy Email Notification (Click to Subscribe).

### Policy Overview

**Cooperative Agreements and Federal Procurement Contracts**

All conferences (see definition below) conducted by cooperative agreement recipients or federal procurement contractors funded by OJP/COPS Office must receive written prior approval. An approved award budget is not a prior approval. All prior approval requests for conferences costing $100,000 or less and not exceeding any cost thresholds must be submitted a minimum of 90 days in advance of the start date. All conferences costing more than $100,000 or exceeding any one cost threshold must be submitted a minimum of 120 days in advance of the start date. See the Prior Approval Required section for more information.

Cooperative agreement recipients must comply with the approval process regarding logistical conference planning (see section on logistical conference planning), and must keep their program manager informed of all decisions being made during the conference planning process.

In addition, cooperative agreement recipients and federal procurement contractors conducting conferences that cost more than $20,000 must report actual conference expenses within 45 days after the last day of the event. See the Post-Event Reporting section for more information.

No hotel/venue or audio-visual contracts may be entered into before such prior approval has been obtained in writing from OJP/COPS Office.

**Grants**

Conferences conducted by grant recipients do not require prior approval. However, grant recipients must ensure compliance with the food/beverage, meeting room/audio-visual, logistical planner, and programmatic planner limitations and cost thresholds.

COPS-AR-0930

III. Postaward Requirements

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

### Cost Thresholds

Cost thresholds and limitations are in place for the following items:

- Meeting room/audio-visual services (lesser of $31.25 per day per attendee or $25,000)
- Logistical planners (lesser of $62.50 per attendee or $11,000)
- Programmatic planners (lesser of $250 per attendee or $43,750)
- Food and beverage (generally not allowed)
- Refreshments (generally not allowed)

While there are exceptions to these thresholds and limitations, they are rare and require extraordinary justification as well as approval outside and above OJP/COPS Office. See the Conference Costs and Prior Approval Required sections for more information.

### Definitions

The following definitions pertain specifically to conference costs. Additional definitions can be found in the Glossary of Terms, Appendix 5.2. See 41 C.F.R. § 300-3.1 for a glossary of travel terms.

**Agenda** means a *formal agenda* that provides a list of all activities that shall occur during the event, using an hour-by-hour timeline. If food and/or beverages will be provided, it must specify when during the event this will occur.

**Conference** is an event whose primary purpose is to disseminate technical information beyond the recipient or subrecipient and is necessary and reasonable for successful performance under the Federal award (e.g., meeting, seminar, symposium, training activity, etc.). See 2 C.F.R. § 200.432 for general cost principles that apply to conferences.

- A conference typically is a prearranged formal event with at least some of the following characteristics: designated participants and/or registration; a published substantive agenda; and scheduled speakers or discussion panels on a particular topic.
- A conference typically is not a routine operational meeting, a law enforcement operation or prosecutorial activity in connection with a specific case or criminal activity, a testing activity, or a technical assistance visit. Please refer to the definitions of these set out below to decide whether the event requires prior approval and reporting under this guidance.

**Conference costs and conference expenses** mean all costs using DOJ funds associated with planning, hosting, sponsoring, or otherwise holding any conference, including all of the categories of costs listed below:

- Conference meeting space (including rooms for breakout sessions)
- Audio-visual equipment and services
- Printing and distribution
- Meals provided at the event (generally unallowable)
- Refreshments (generally unallowable)
- Meals and incidental expenses (M&IE portion of per diem)
- Lodging
- Air travel to/from conference

COPS-AR-0931

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

- Local transportation (e.g., rental car, privately owned vehicle to-and-from-the airport, taxi)

- Logistical conference planner

- Programmatic conference planner

- Trainers, instructors, presenters, or facilitators

- Other costs which must be identified individually

- Staff time associated with planning and holding the conference

- Indirect costs/overhead rates applied to direct costs associated with the conference (In accordance with negotiated agreements, all indirect costs associated with a conference must be applied to the above categories as appropriate and reported as conference costs.)

**Law enforcement operation** means events that involve staging (as well as victim service provider staging related to a law enforcement operation), surveillance, investigation, intelligence, and undercover activities, and other activities directly related to active law enforcement operations. For example:

- A meeting between the police department and local tracking service providers related to an impending raid on a labor tracking site would be a law enforcement operation.

- However, a conference about human tracking that brought together the police department and local tracking service providers to train, discuss their overall tracking initiatives, and develop professional relationships, would not be a law enforcement operation.

A **routine operational meeting** typically does not have a formal published agenda, scheduled speakers, or discussion panels, and is defined as an event where the:

- Primary focus is the recipient's day-to-day operations and concerns (e.g., staff meetings, all hands meetings);

- Attendees overwhelmingly are internal to the organization holding the meeting; and

- Answer to all ten questions on the checklist on the No Prior Approval Required page is "No."

**Technical assistance visit** means travel by an individual or a small group of recipient/contractor staff members or consultants to provide training or technical assistance to a particular entity, where there are no costs to DOJ funds for meeting rooms, conference planning, or trinkets. Reasonable travel costs (lodging, transportation, local transportation, audio-visual, printing, and meals and incidental expenses [M&IE]) for technical assistance staff may be reimbursed.

**Testing activity** means an event where the primary purpose is to evaluate an individual's qualifications to perform certain duties necessary to perform his or her job. The most common examples include events held for firearms and weaponry proficiency testing and certifications. A majority of the event must be devoted to the administration and taking of the test. An event that includes testing that is merely incidental to the event, or where such testing is given upon the completion of the event to evaluate the event or determine participation in the event, is not a testing activity.

**Federal facility** means property or building space owned, leased, or substantially controlled by the Federal Government or the government of the District of Columbia.

**Non-Federal facility** is any facility that is not a Federal facility. State and local facilities are considered "non-federal facilities". For further clarification see 5 U.S.C. § 4101(6).

COPS-AR-0932

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Logistical conference planners** perform the logistical planning necessary to hold a conference, which may include: recommending venues, advertising, setting the stage and arranging for audio-visual equipment, securing hotel rooms, interacting with caterers, and other non-programmatic functions.

**Programmatic conference planners** develop the conference agenda, content, and written materials. They may also identify and/or provide appropriate subject matter experts and conference participants.

**Total Costs** are defined as direct and indirect costs.

**Per Attendee Costs** means costs divided by *all* attendees, both federal and non-federal.

**Subaward/Subcontract** (as used in this Chapter) includes any agreement under which the award recipient outsources work, goods, or services related to the conference. Indirect cost rates typically may be charged only to the first $50,000 of each such agreement. See 2 C.F.R. § 200.1 (definition of Modified Total Direct Cost); 2 C.F.R. § 200 Appendix III C.2 (IHE); 2 C.F.R. § 200 Appendix IV. B.2.c (non-profits); and 2 C.F.R. § 200 Appendix VII C.2.c (State and local and Indian Tribes).

### No Prior Approval Required

Prior approval is not required for the following types of award recipients and/or activities.

#### Recipients That Do NOT Have a Cooperative Agreement Type of Award

Reasonable conference-related activity costs are allowable uses of OJP/COPS Office funding as long as the grant budget has been approved by OJP/COPS Office. Meals, refreshments, and trinkets generally are not allowable.

- OJP/COPS Office does not require non-cooperative agreement recipients to obtain additional prior approval from OJP/COPS Office for specific conference costs.
- Cost limits apply. Even though prior approval of most conference costs by OJP/COPS Office is not required, OJP/COPS Office expects grantees to make every effort to stay within the cost limitation thresholds on meeting space, audio-visual equipment/services, and conference planning, as set out in this guidance. Where recipients plan to exceed (or do exceed) these cost limitations, they must maintain adequate documentation that such costs were reviewed by the recipient through some internal process, and that the costs were determined to be justified by the grantee. Tis documentation will be subject to review during monitoring and audits.

> ☑ **ACTION ITEM**
>
> In very limited circumstances, grantees may seek prior approval for an exception to provide meals, refreshments, or trinkets with grant funds. OJP/COPS Office rarely approves such requests.

#### Operational Meetings and Technical Assistance

In response to questions regarding what qualifies as operational meetings and technical assistance visits, OJP/COPS Office developed a checklist to alleviate some of the uncertainty regarding whether an event requires

COPS-AR-0933

## III. Postaward Requirements

**3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING**

prior approval. Incorporated onto the top of Sheet A of the Conference & Events Submission Form are nine questions. If the answers to all of the nine questions are "No," the event does not require prior approval:

1.  Is the cost of the event greater than $20,000?

2.  Are there meeting room costs?

3.  Are audio-visual costs greater than $31.25 per attendee or more than $1,250 in total?

4.  Are there any food and beverage costs?

5.  Did the request for the meeting come from multiple jurisdictions or agencies?

6.  Are there trinkets being purchased?

7.  Is there a formal published agenda?

8.  Are formal discussions or presentation panels planned?

9.  Are there logistical planning costs beyond incidental internal administrative costs necessary to arrange travel and lodging for a small number of individuals (i.e., planning/managing attendee registration and/or travel)?

The above checklist should be utilized to assist with questions regarding the definition and differences between technical assistant visits and trainings. If the answers to the above questions for an event are all "No" it does not require prior approval.

### Law Enforcement Activity

Events that involve staging (as well as victim service provider staging related to a law enforcement operation), surveillance, investigation, intelligence, and undercover activities, and other activities directly related to active law enforcement operations, do not require prior approval.

### Training or Speaking at a Non-DOJ-Sponsored Conference

Providing training at or speakers for a non-DOJ-sponsored conference, but not contributing to overall conference planning or costs is generally considered a technical assistance event. These events do not require prior approval if the answer to all the following questions is "No":

1.  Is the cost of the event greater than $20,000?

2.  Are there meeting room costs that will be paid for with DOJ federal or match funds?

3.  Are the audio-visual costs (if any) greater than $31.25 per attendee or more than $1,250 in total for this specific event?

4.  Are there any food and beverage costs that will be paid for with federal funds? (does not include per diem reimbursements to grantee staff or consultants)

5.  Are there logistical planning costs beyond incidental internal administrative costs necessary to arrange travel and lodging?

Is any other type of participation being provided in the event (e.g., exhibit booth sponsorship, overall conference sponsorship, sponsorship or provision of non-workshop good/services)?

COPS-AR-0934

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

Note: Providing multiple speakers to a conference (generally exceeding $20,000 in total costs) or providing other types of direct or indirect support (e.g., sponsoring an exhibit booth using federal funding) that offsets the costs of the non-DOJ sponsored conference hosted by a third-party may be considered a federally-funded "sponsor," which some may construe as OJP/COPS Office-sponsorship of the overall conference. For these reasons, OJP/ COPS Office may require these types of situations be approved as a "DOJ-sponsored" event, on a case by case basis.

**Testing Activity**

The primary purpose is to evaluate an individual's qualifications to perform certain duties necessary to his or her job. The majority of the event must be devoted to the administration and taking of the test. The most common examples include events held for firearms and weaponry proficiency testing and certification. An event that includes testing that is merely incidental to the event, or where such testing is given upon the completion of the event to evaluate the event or determine participation in the event, is not a testing activity.

**Video Conferences and Webinars**

Webinars and video conferences do not require prior approval if there are no costs for logistical conference planning or for Government-provided food or beverages.

### Prior Approval Required

Prior approval is required for the following types of award recipients and/or activities.

**Recipients That Have a Cooperative Agreement Type of Award**

Cooperative agreement recipients must seek and obtain OJP's/COPS Office's prior written approval for each event held with OJP/COPS Office funds, and for all conference costs associated with that event that are paid by OJP/COPS Office funds.

- No conference (regardless of the number of attendees) can proceed, nor can conference-related contracts (e.g., hotel contracts and travel arrangements/reservations) be signed, or conference implementation funding be obligated/work authorized (whether performed by cooperative agreement staff or outside staff), until the cooperative agreement recipient has obtained DOJ's approval in writing.

- Approval of the overall cooperative agreement proposal or budget does not grant prior approval to use federal funds for events anticipated in the budget.

- The reasonable minimal costs of identifying conference locations and developing the itemized cost estimates required to assemble and submit a conference cost approval request are allowable without prior approval by OJP/COPS Office. However, cooperative agreement recipients should work with the relevant program office to ensure that any costs authorized are reasonable and minimal.

- Those entities with conference planning contracts providing support for planning as well as implementation logistics should only authorize the tasks absolutely necessary to identify the most cost-effective conference locations/services, and to prepare and negotiate cost proposals for submission to DOJ.

COPS-AR-0935

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Federal Procurement Contracts**

Federal procurement contractors must seek and obtain OJP's/COPS Office's prior written approval for each event held with OJP/COPS Office funds, and for all conference costs associated with that event that are paid with OJP/ COPS Office funds.

**Timing of Requests for Prior Approval**

| Event Parameters | Mandatory Timeframe for Prior Approval Request |
|---|---|
| Conferences costing **$100,000 or less, and not exceeding any cost thresholds** (conference space & audio-visual equipment/services, logistical conference planner, <u>and</u> programmatic conference planner) | Requests **must** be submitted to OJP/COPS Office **90 calendar days** in advance of the <u>earliest</u> of the following:<br><br>• Start date of the conference;<br>• Deadline for signing conference-related contracts, or<br>• Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request.) |
| Conferences costing **over $100,000, or exceeding any one cost threshold** (conference space & audio-visual equipment/services, logistical conference planner, or programmatic conference planner) | Requests must be submitted to OJP/COPS Office **120 calendar days** in advance of the <u>earliest</u> of the following:<br>• Start date of the conference;<br>• Deadline for signing conference-related contracts, or<br>• Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request). |

☑ **ACTION ITEM**

OJP/COPS Office may, at its sole discretion, consider prior approval event requests that are submitted late, but cannot assure that such requests will receive a decision in time to avoid having to cancel the conference (particularly if there are any issues that arise with specific items of cost in the request). Cancellation costs associated with conferences that are submitted for late prior approval may be determined to be unallowable costs by OJP/COPS Office.

**Submitting an Event Request**

All cooperative agreement and contract recipients must complete the Conference & Events Submission Form and obtain OJP's/COPS Office's prior written approval for each event held with OJP/COPS Office funds. Each submission must contain all the applicable information (e.g., start date, end date, conference planner, M&IE) to assist in a thorough review. The recipient must provide justification where required by the form. If additional space is needed, please add a tab to the form. All supporting documentation should be embedded and included within the spreadsheet file. This ensures one file per submission, reduces the number of questions, and reduces the possibility of necessary information getting lost or separated from the main submission file. Note: Supporting calculations and agendas (submitted on a separate tab) must be included in all submissions.

To obtain a blank copy of the form click here.

COPS-AR-0936

III. Postaward Requirements

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Submitting a Blanket Request**

A Conference & Events Submission Form may be completed to host a series of the same or similar pre-arranged events containing multiple delivery dates scheduled to take place within the same fiscal year. The recipient must first estimate the average cost of each event and select the highest cost from each event to complete the submission form. Click here to obtain instructions for submitting a blanket request.

Submit completed prior approval requests on the Conference & Events Submission Form to the following email addresses:

Bureau of Justice Assistance (BJA): BJAConferencereport@usdoj.gov

All other OJP Bureaus and Offices: OJPConferencecosts@ojp.usdoj.gov

COPS Office: COPSConferencecosts@usdoj.gov

**Prior Approval Submission Issues**

- The conference has not occurred and additional costs have been identified.
  - ▶ If additional costs not represented in the submitted prior approval request are estimated to exceed 10% and $1,000 of the original prior approval amount in any conference cost category or in total, the contractor/cooperative agreement recipient should submit an amended conference request form containing the new amounts for prior approval.
  - ▶ If the conference now exceeds $100,000 in total costs, or if any cost category thresholds are exceeded, additional review is required beyond OJP/COPS Office. The new request for prior approval should be submitted 120 days prior to the conference date. If the resubmission is outside of that timeframe, OJP/COPS Office may not have adequate time for the review and approval process.
- Conference was not approved in advance.
  - ▶ If the conference has occurred without advance approval, the contractor/cooperative agreement recipient must submit the required conference approval form with detailed justification as to why the event was not submitted for advance approval. The conference approval form must be reviewed/approved by the bureaus and program offices. OJP/COPS Office may, in its sole discretion, consider approving the event retroactively. If OJP/COPS Office considers costs ineligible for approval, the costs will be unallowable.
- Cost estimates.
  - ▶ Cooperative agreement and contract recipients must provide detailed cost estimates for each conference cost category (e.g., lodging rate per attendee, itemized audio-visual cost, transportation). Cost comparisons should be conducted to minimize costs of contracts for services, unless a specific provider is required by a facility. See Location Selection for a discussion of facility and venue selection.

**Determining Costs**

When determining the total cost of a DOJ-funded conference, all costs incurred by the recipient under the award must be included (see specific categories below).

- Actual or estimated costs.
  - ▶ Recipients must provide actual costs where possible, but may provide estimates for purposes of submitting requests for prior approval. For post-event reporting, actual costs must be provided.

COPS-AR-0937

# III. Postaward Requirements

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

- Co-sponsors.
  - ▶ Costs covered by non-DOJ co-sponsors are not subject to the conference cost limits and restrictions, do not require prior approval by OJP/COPS Office, and do not have to be reported as part of the DOJ- funded event. Such co-sponsor funding generally is not considered program income.

- Program income/fees.
  - ▶ Conference costs covered by program income (for example, from conference fees) are not subject to the conference cost thresholds and restrictions, do not require prior approval by OJP/COPS Office, and do not have to be reported as part of the DOJ-funded event. For purposes of overall conference prior approval, however, if program income will be used to offset a conference cost line item, please demonstrate that in the supporting calculations. Also ensure that any agendas with meals or refreshments funded by program income or other non-DOJ funding are clearly labeled as not funded by DOJ. Recipients that are permitted to charge fees, or otherwise generate program income, must account for those funds up to the same ratio of Federal participation as funded in the project or program. Example: A discretionary award project funded with 100% Federal must account for and report on 100% of the total program income earned. If the total program income earned was $20,000, the recipient must account for and report the $20,000 as program income on the Federal Financial Report (FFR), SF-425.

- Individual purchases.
  - ▶ Individual purchases of goods or services by attendees of the conference at the conference location are not considered to be "conference fees." An independent contractor (e.g., hotel, vendor), without any federal involvement whatsoever, may collect fees from recipients to cover the costs of specific goods or services that cannot be purchased with federal funding or are otherwise not approvable, so long as the good or service is not prohibited (e.g., alcoholic beverages). These fees are not considered program income and should only be collected to offset the costs incurred.

- Ticketed events.
  - ▶ Related to individual purchases, a recipient may hold a session where attendees have the option of purchasing a meal or refreshment directly from the hotel (a "ticketed event"). A recipient may
  - ▶ communicate the availability of such a session to conference attendees, and as long as the recipient is not involved in the collection of the fees, the fees are not considered program income. The costs for services provided by the independent vendor with such fees are not subject to the conference cost thresholds and restrictions, do not require prior approval by OJP/COPS Office, and do not have to be reported as part of the DOJ-funded event.

- Attendee costs.
  - ▶ For prior approval and reporting purposes, a cooperative agreement recipient must report all costs of attendance supported by the award, including conference scholarships where that recipient administers the scholarships. (When determining overall conference costs, OJP/COPS Office may supplement the recipient's data with available data on attendance costs related to DOJ employees, and non-DOJ attendees whose attendance is supported by scholarships administered by an entity other than that primarily responsible for planning and/or hosting the conference.)

### Event Planning Guidance

#### Minimize Costs Where Possible

All OJP/COPS Office funding recipients must thoroughly review all planned conference costs to ensure that such costs are reasonable and absolutely necessary. **Every effort should be made to conduct conferences via webinar, teleconference, or video conference.** In-person, face-to-face conferences should only be held when necessary and no other option exists to conduct the business without travel and related costs. Note: Each submission should include a statement discussing why the event cannot be conducted via webinar, teleconference, or video conference.

COPS-AR-0938

# III. Postaward Requirements

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

This can be done on a separate tab on the Conference & Events Submission form.

**Location Selection**

- Cost comparisons.
  - ▶ All funding recipients should conduct pricing comparisons of multiple facilities in multiple *locations*. Minimizing costs must be a critical consideration when determining the city and facility in which to hold a conference. Cost comparisons should include the following:
    - Overall facility cost;
    - Availability of lodging at per diem rates;
    - Convenience of location;
    - Availability of meeting space, equipment, and supplies, and
    - Commuting/travel distance for attendees.

In conducting cost comparisons of facilities, recipients should send the same detailed requirements to all potential facilities, and refrain from making commitments to any particular facility until the comparison is complete (and written approvals have been obtained):

- Location.
  - ▶ Recipients should compare multiple locations.
    - Cooperative agreement and contract recipients must consider multiple locations (i.e., multiple cities). Where cooperative agreement and contract recipients consider only facilities in one city, they must include in their request for approval a written justification for that location.
    - Grant recipients *should* consider multiple locations, and should maintain written documentation justifying their decision to select the chosen location in the event of a future audit.

- Facility.
  - ▶ Recipients should compare three or more facilities in a location. Facilities in the comparison should have given a positive response/quote and be able to accommodate the event as detailed in the requirements.
    - *Federal facilities or no-cost facilities preferred.* Recipients must make every effort to use no-cost facilities, including available governmental facilities, to the extent practicable. (See links to two different listings of federal facilities at the end of this chapter under Resources.) Grantees may use non-federal facilities.
    - Grantees are not required to consider or use federal facilities, but are encouraged to do so where feasible.
    - *Non-federal facilities.* If no federal facility is available, or the federal facility would be more costly or otherwise does not meet the requirements of the event, a cooperative agreement or contract recipient may use a non-federal facility. Grantees may use non-federal facilities. Grantees are not required to consider or use federal facilities, but are encouraged to do so where feasible.
    - *Primarily federal events.* If the conference attendees will be primarily federal employees (more than 50%, based on a reasonable estimate), recipients may be required to submit additional justification for a non- federal facility, and should contact their OJP/COPS Office point of contact for additional information

- Appearance considerations.
  - ▶ Conference planners must exercise special care when considering holding a conference in any location that may give rise to appearance issues. Conference planners must ensure that the choice to hold a conference in such a location is made only when there is a determination that it is the most cost-effective option.

September 2025

COPS-AR-0939

# III. Postaward Requirements

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

### Conference Fees

Grant and cooperative agreement recipients may charge fees to cover part or all conference costs if prior approval from the awarding agency is obtained. Such fees are considered program income and are subject to the rules applicable to program income (see Chapter 3.4 Program Income).

### Conference Planning Services and Staff Time

All cooperative agreement and federal procurement contract recipients (but not grant recipients) must obtain prior written approval from OJP/COPS Office before incurring conference planning costs in accordance with the previously described approval process, except for such costs that are the reasonable minimal costs of identifying conference locations and developing the itemized cost estimates required to assemble and submit a conference cost approval request. Tis requirement applies whether the work is performed by the recipient's staff or contracted out.

- In-house versus contracted planning.

  - Recipients often provide conference planning services either through their own staff and resources, or through contracted external conference planners. Minimizing costs must be a critical consideration in this decision.

  - Recipients often are selected based on their ability to provide programmatic conference planning services (e.g., developing the conference agenda), but may also need to undertake logistical planning functions as well. In some cases, such logistical planning functions (e.g., negotiating hotel contracts, sending invitations, managing registration) may be performed at lower cost by a logistical planning service, which may be able to charge lower rates than the funding recipient for staff time, and may be more experienced in negotiating hotel and other necessary conference-related contracts.

  - Generally, a recipient should consider procuring logistical conference planning services when it does not have in-house expertise in such logistical planning, and when such services would result in lower overall costs to the Federal Government.

- Cost limits.

  - All conference planner costs must be reasonable for the scale of the conference. Cooperative agreement and contract recipients providing conference planning, either in-house, or through sub contracted planning services, must adhere to the following cost limits:

    - *Logistical conference planners* perform the logistical planning necessary to hold a conference, which may include: recommending venues, advertising, setting the stage and audio-visual equipment, securing hotel rooms, interacting with caterers, and other non-programmatic functions. The cost of *logistical* conference planners may not exceed $62.50 per attendee, not to exceed $11,000. For example, if the number of attendees at a 2-day conference is 100, the maximum cost allowed for a logistical planner is $6,250 ($62.50 x 100 attendees). Logistical planning costs anticipated to exceed this amount require additional justification and approval prior to incurring the costs.

    - *Programmatic conference planners* develop the conference agenda, content, and written materials. They may also identify and/or provide appropriate subject matter experts and conference participants. The cost of programmatic conference planners may not exceed $250 per attendee, not to exceed $43,750. For example, if the number of attendees at a 2-day conference is 100, the maximum cost allowed for a logistical planner is $25,000 ($250 x 100 attendees). Programmatic planning costs anticipated to exceed this amount require additional justification and approval prior to incurring the costs.

COPS-AR-0940

# III. Postaward Requirements

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

### Conference Cost Categories

The following cost categories relating to conferences and events are items included on the Conference & Events Submission Form.

#### Meeting Rooms and Audio-Visual

- Total cost limit, $31.25 per day per attendee, not to exceed a cumulative total cost of $25,000.
  - The cost allowed for conference space and audio-visual equipment and services is limited to $31.25 per day per attendee not to exceed a cumulative total cost of $25,000. Total costs are defined as direct and indirect costs. Costs in excess of these established limits require additional justification and approval outside of OJP/COPS Office.

#### Printing

Every effort should be made to provide conference materials to participants electronically or via print-on-demand services/options. Printed materials should maximize paper usage (printing on both sides) and minimize higher cost options (color printing) where possible.

#### Meals and Refreshments

- Generally unallowable.
  - Meals and refreshments are generally not allowable costs for conferences funded under OJP/COPS Office awards, unless the recipient obtains written prior approval from OJP/COPS Office. This applies to all awards, including contracts, grants, and cooperative agreements. In general, DOJ may approve such costs only in cases where:
    - Sustenance is not otherwise available (e.g., extremely remote areas);
    - The size of the event and nearby food/beverage vendors would make it impractical to not provide meals and/or refreshments; or
    - A special presentation at a conference requires a plenary address where there is no other time for sustenance to be obtained.
  - Water provided at no cost to the OJP/COPS Office award is, of course, allowable without prior approval.
- Cost limits on meals.
  - If prior approval is obtained to provide food and/or beverages at an event, the DOJ and its grantees, cooperative agreement recipients, and contractors must all follow the limits in the Food and Beverage Policy on meals.

#### Meals and Incidental Expenses Reimbursement

- Deduction of meals from requests for Meals and Incidental Expenses reimbursement (M&IE).
  - All conference attendees must ensure that any provided meal is deducted from their claimed M&IE. For example, if lunch is provided, the recipient must deduct the value of the lunch from the amount of M&IE claimed (even if non-DOJ funds are used to provide the meal). The General Services Administration (GSA) M&IE breakdown can be found on the GSA website.

COPS-AR-0941

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

#### Lodging

- Federal per diem rates preferred.
  - OJP and COPS recipients must use either the Federal per diem rate (preferred) or the recipient's organizational per diem rate (if applicable). Per diem rates for DOJ Federal personnel must not exceed the Federal per diem rate.
  - See Chapter 3.9 Allowable Costs for more guidance on travel costs.

> **▶ OJP SPECIFIC TIP**
>
> All contracts under an award funded by OJP awards for events that include 30 or more participants (both Federal and non-Federal) must ensure that lodging costs for any number of attendees do not exceed the prevailing Federal per diem rate for lodging. If the lodging rate is not the Federal per diem rate or less, none of the lodging costs associated with the event are allowable costs to the award. As a result, the recipient would be required to pay for all lodging costs for the event with non-award funds, not just the amount in excess of the Federal per diem. For example, if the Federal per diem for lodging is $78 per night, and the event lodging rate is $100 per night, the recipient would be required to pay the full $100 per night, not just the difference of $22 per night.

#### Transportation

Include all costs, including baggage fees, related to common carrier transportation to and from the conference location paid with OJP/COPS Office funds.

#### Local Transportation

Include rental car, mileage to-and-from the airport or the conference (if local), and taxi charges.

#### Logistical Conference Planner

- The total cost limit is $62.50 per attendee or $11,000, whichever is lower.
- Cooperative agreement recipients should include all staff time related to logistical planning in this category and should be able to track these costs separately in their accounting records. All contracted, subcontracted, or sub awarded logistical planning costs should also be included in this category. Total costs are defined as direct and indirect costs. Costs in excess of the established limits require additional justification and approval outside of OJP/COPS Office.

#### Programmatic Conference Planner

- The total cost limit is $250 per attendee or $43,750, whichever is lower.
- Cooperative agreement recipients should include all staff time related to programmatic planning in this category and should be able to track these costs separately in their accounting records. All contracted, subcontracted or sub awarded programmatic planning costs should be also be included in this category. Total costs are defined as direct and indirect costs. Costs in excess of the established limits require additional justification and approval outside of OJP/COPS Office.

COPS-AR-0942

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

### Conference Facilitator/Trainer/Instructor/Presenter

Include all trainer and speaker fees. If the fee exceeds the maximum consultant rate, please include a copy of the consultant rate approval with the Conference & Events Submission Form on one of the available extra tabs. Also include a copy of the agenda (a draft version is acceptable) in one of the available tabs with the prior approval submission.

### Other

All "Other" costs must be itemized on the Conference & Events Submission Form. Detailed descriptions and justification of the Other cost line items must be provided in the additional tabs.

### Indirect Rate Costs

Indirect costs associated with the direct costs necessary to plan and hold a conference must be included in all conference cost reporting. The submission form contains a column allowing for the allocation of indirect rate cost to each category.

Cooperative agreement recipients should pay particular attention to the two areas listed below to ensure that the application of indirect cost rate is in compliance with the existing requirements of the Government-wide grant rules set out by the Office of Management and Budget (OMB).

*$50,000 Contract Under the Award/Subaward Limitation.* Indirect cost rates negotiated *on the basis of* modified total direct costs may only be applied against the first $50,000 of any *contract under the award* or subaward under the agreement. Tis limitation must be applied to all conference-related *contract under the award* and subawards. For purposes of this chapter, a *contract under the award* or subaward is any agreement under which the awardee outsources work, goods, or services related to the conference, including those with hotels and travel agents. See 2 C.F.R. § 200.1 (definition of *Modified Total Direct Cost*); 2 C.F.R. § 200 Appendix III C.2 (IHE); 2 C.F.R. § 200 Appendix IV. B.2.c (non-profits); and 2 C.F.R. § 200 Appendix VII C.2.c (State and local and Indian Tribes).

*Participant Support Costs.* Participant support costs are generally excluded from the distribution base. Therefore, indirect costs may not be applied against participant support costs. Participant support costs are direct costs that support participants and their involvement in a Federal award, such as stipends, subsistence allowances, travel allowances, registration fees, temporary dependent care, and per diem paid directly to or on behalf of participants. See 2 C.F.R. § 200.1 (definition of *Participant support costs*). This exclusion applies to the entirety of any *contract under the award* for the lodging and travel of conference participants or trainees (but not employees).

Costs related to contractors of the recipient who are acting in the capacity of a "Conference Trainer/Instructor/ Presenter/Facilitator" are considered participant support costs.

### Gifts/Trinkets/Memorabilia/Commemorative Items

Trinkets (items such as hats, mugs, portfolios, t-shirts, coins, gift bags, etc., regardless of whether they include the conference name or OJP/COPS Office logo) must not be purchased with DOJ funds as giveaways for conferences. Basic supplies that are necessary for use during the conference (e.g., folders, name tags) may be purchased.

COPS-AR-0943

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

#### Post Event Reporting

All conference costs for events held by cooperative agreement recipients or contractors costing more than $20,000, or where more than 50% of attendees are DOJ employees, must be reported within 45 calendar days after the last day of the event.

*Cooperative agreement recipients and contractors* must submit the completed Conference & Events Submission Form showing the prior approval amounts compared to the actual costs and explain all variances greater than 10% and $1,000. Completed reports for OJP recipients should be emailed to OJPConferenceCostReporting@ojp.usdoj.gov, and completed reports for the COPS Office should be emailed to COPS.Conferencecosts@usdoj.gov.

If the pre-approved costs were exceeded by more than 10% and $1,000, the contractor or cooperative agreement recipient should submit a detailed explanation with their post event Conference & Events Submission Form to support the additional costs.

The following situations and costs require additional explanation and will be considered unauthorized until OJP/COPS Office has reviewed the additional documentation:

- If the prior approval cost category contains no cost, but the post event report contains costs in that category.
- If the prior approval audio-visual/meeting room, logistical, and programmatic planner costs are less than the thresholds, but actual costs exceed the thresholds.
- If the prior approval total cost is less than $100,000, but the actual costs exceed $100,000.
- If the prior approval total cost is less than $500,000, but the actual costs exceed $500,000.

*Grant recipients* are not required to file post event reports, but should maintain documentation for purposes of monitoring and audit.

#### Deadlines

All conference costs must be reported no later than 45 calendar days after the end of any event that meets the following criteria:

- Total cost of the event exceeds $20,000, or
- More than 50% of attendees are DOJ employees.

The conference report should include the purpose of the conference, number of participants in attendance, a detailed breakout of all cost categories, etc. Other costs must be detailed on the form. If extra lines are needed, please list in one of the additional spreadsheet tabs.

When a prior approval amount exceeds $20,000, OJP/COPS Office expects a post event report. If the actual costs are less than $20,000, please either file the report with the actual costs or notify the program manager or OJP/COPS Office point of contact that a report is not required. Note: After the prior approval portion of the submission form has been approved, a copy of the submission form which contains the OJP/COPS Office event identifier will be returned to the submitter. It is important to use this form for the post event report.

COPS-AR-0944

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Delinquent Submissions and Non-Reporters**

The Conference & Events Submission Form must be emailed to either OJPConferenceCostReporting@ojp.usdoj.gov or COPS.Conferencecosts@usdoj.gov within 45 calendar days after the last day of the event. If the Conference & Events Form is not submitted by the due date, the report is considered to be delinquent and, for cooperative agreement recipients, drawing down funds through the Automated Standard Application for Payments (ASAP) may not be permitted. An automatic email notification will be sent if this occurs. For non-reporters, a hold may be placed on the remaining funds associated with the award and any future payment requests will be denied. For contractors, remedies for non-compliance are outlined in the contract.

**Reporting Exemption**

If any item(s) are paid for with registration fees or other non-award funds, then that portion of expenses does not need to be reported on the Conference & Events Submission Form. Federal procurement contractors may not charge registration fees.

**Determining Costs**

When determining the total cost of a DOJ-funded conference, all costs incurred by the recipient under the award must be included (see specific categories below).

- *Actual.* Post event reports must contain actual costs.

- *Fees/program income.* Post event conference reporting should exclude costs covered by other non-DOJ funding (e.g., non-DOJ co-sponsors) or program income.

- *Logistical and programmatic planner costs.* These costs should include cooperative agreement staff time spent on these activities and any contracted planner costs.

- *Attendee costs.* For post event reporting purposes, a cooperative agreement recipient or contractor must report all costs of attendance supported by the contract or award, or by DOJ-funded conference scholarships where that recipient administers the scholarships. (When determining overall conference costs, OJP/COPS Office may supplement the recipient's data with available data on attendance costs related to DOJ employees, and non-DOJ attendees whose attendance is supported by scholarships administered by an entity other than that primarily responsible for planning and/or hosting the conference.)

- *Indirect costs.* Recipients are required to include indirect costs when determining how much was spent in each conference cost category. For example, where a recipient has a 10% indirect cost rate, the reported cost of each conference item against which this indirect cost rate is charged should be augmented by 10% to take into account the rate charged.

**Public Reporting**

- All post event reports for conferences costing more than $100,000 in Federal funding will be posted publicly on the DOJ website.

If the pre-event Conference & Events Submission Form was approved for less than $100,000, the actual costs reported on the post event report cannot exceed $100,000 without additional review and approval.

COPS-AR-0945

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

#### FAQs

**Prior Approval**

1. Approximately how long should it take to adequately complete the Conference & Events Submission form?

2. Which types of events DO NOT require prior approval?

3. Where should staff time working on the conference, which is not related to planning, be captured?

4. If a cooperative agreement recipient/federal procurement contractor is able to obtain a no-cost site for the event, are we still required to look into other facilities and provide justification for not selecting the other facilities?

5. Is there a timeframe after OJP/COPS Office accepts a conference request that a recipient/ federal procurement contractor can expect notification of approval?

6. Once an event is approved, how do we handle any increases and/or decreases in the amount of attendees originally proposed on the cost analysis spreadsheet submitted to DOJ for approval?

7. Does the $31.25 per person per day limit for meeting rooms and audio-visual costs also include service fees and taxes?

8. What if there are multiple meetings occurring within the larger event offered to all the attendees? Is the $31.25 per day per attendee limit applicable to each meeting? Example: A general session meeting contains all attendees and later breakout sessions are offered to the groups. Can each breakout/meeting have its own $31.25 per person per day limit?

9. Can we accept complimentary food and beverage?

10. Are the thresholds ($11,000 for logistical planner, $43,750 for programmatic planner, and $25,000 for conference space and audio-visual equipment) a cumulative cost for the entire event or a per day cost?

11. To whom should I submit event requests?

12. How far in advance do I have to submit an event for review and approval?

13. What are the most common mistakes made on the forms, so that I can avoid them in the future and increase the likelihood of a quick review and approval decision for my event?

14. Should I continue to exclude all food and beverage costs in my event submissions?

15. Can you summarize what I can do to prevent follow-up questions about my submitted event(s) that delay the review and approval process?

16. What events qualify for the expedited review process?

**Reporting**

17. Where can I find the most updated version of the conference reporting form to use for my submissions?

18. If I have a question about conference reporting, to whom should I send it?

19. Are we expected to have our staff track their time hour for hour for time spent on the event for planning, etc., or are reasonable estimates adequate for cost reporting purposes?

20. With conference cost reports now being due 30 days after the event, how should we handle costs for invoices that have not been received yet? Many invoices (such as hotels) are not received within 30 days of the end of the event. Should estimates be included on the cost report?

21. On the DOJ Conference & Events Submission Form, Item #19 Reporting Period under A. General Conference Information — is this the period in which the actual cost of the event is being reported or should this be based on the end date of the event?

COPS-AR-0946

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

*Prior Approval*

Question 1: <u>Approximately how long should it take to adequately complete the Conference & Events Submission form?</u>

**Answer:** The amount of time required to adequately complete the Conference & Events Submission Form will vary depending on the complexity of the proposed event. A small event (in terms of number of attendees, total cost, etc.) may only require an hour or two to complete the form because the event is basic/routine and data are not required in all of the available categories. On the other hand, a large event (in terms of number of attendees, multiple sessions occurring at the same time, etc.) may require several hours and/or days depending on the amount of required data (categories) and level of justification needed to support the event. Regardless of the size of any event, the supporting justification should be sufficient to support the agency's mission for conducting the event.

Question 2: <u>Which types of events DO NOT require prior approval?</u>

**Answer:** Currently there are six types of events which DO NOT require prior approval:

1. Conferences held by grant recipients (Note: conferences held by cooperative agreement recipients do require prior approval).

2. Law enforcement operational activities, including staging, surveillance, investigation, intelligence, and undercover activities.

3. Routine operational meetings (e.g., staff meetings, all-hands meetings), if held in a federal facility. In addition, meetings that are held by cooperative agreement recipients in a non-federal facility that does not charge for its use, and where there are no costs to DOJ for logistical conference planning or Government-provided food or beverages; in this instance, the answer to all the questions on the Prior Approval Not Required Checklist must be "No." Site visits are considered routine operational meetings regardless of location so long as there are no costs to DOJ for meeting rooms, logistical conference planning, or food and beverages.

4. Testing activities where the primary purpose of the event is to evaluate an applicant's qualifications to perform certain duties necessary to perform his or her job. This includes firearms and weaponry proficiency testing and certifications. A majority of the event must be devoted to the administration and taking of the test. Testing activities that are incidental to a training course or conference or are given upon its completion to determine satisfactory participation are not exempt from this policy.

5. Video conferences and webinars where there are no costs to DOJ for logistical conference planning and/or Government-provided food or beverages.

6. Technical assistance visits where travel made by an individual or a small group of project staff members to provide training or technical assistance to a particular entity; in this instance, the answer to all the questions on the Prior Approval Not Required Checklist must be "No."

Question 3: <u>Where should staff time working on the conference that is not related to planning be captured?</u>

**Answer:** Time spent working on a conference by staff or contractors can be classified as either Logistical planning time or Programmatic planning time. Programmatic planning includes time spent on activities such as developing the conference content and agenda, identifying and recruiting subject matter experts, and preparing written materials. Logistical planning includes time spent on tasks such as venue selection, ordering and setting up of audio-video equipment, securing hotel rooms, processing registrations, onsite support during the event, and other non-programmatic functions.

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Question 4:** If a cooperative agreement recipient/ federal procurement contractor is able to obtain a no-cost site for the event, are we still required to look into other facilities and provide justification for  not selecting the other facilities?

**Answer:** Yes. Cooperative Agreement recipients and federal procurement contractors should compare three or more facilities in a location. Facilities in the comparison should have given a positive response/quote and be able to accommodate the event as detailed in the requirements. A desired hotel may offer an incentive of no overall facility cost (meeting room[s] and/or audio-visual), but may not be economical in other cost comparison items such as the availability of lodging at per diem rates, commuting/travel distance for attendees, etc. Also, the recipient/ federal procurement contractor should maintain written documentation justifying their decision to select the chosen location in the event of a future audit.

**Question 5:** Is there a timeframe after OJP/COPS Office accepts a conference request that a recipient/  federal procurement contractor can expect notification of approval?

**Answer:** Each conference request is unique in reference to how the event will accomplish OJP's/COPS Office's mission (meeting, conference, webinar, etc.). The key to any conference/event moving through the review process will depend on whether the package is complete. A complete package contains a detailed cost analysis and sufficient justification to support all categories within the package. Example: An event is submitted for approval which consists of the following categories: printing and distribution, M&IE, lodging, transportation, and trainer/facilitator costs. The package contains a detailed cost analysis of each cost category (e.g., one trainer at $650 per day x 2 days = $1,300) and adequate justification explaining the purpose of the event and the role of the trainer. This package can move through the review process in a few days and allow ample time for travelers to make reservations, if the package was submitted within the required timeframe. However, based on the example above, if the package was submitted and the trainer/facilitator's costs exceeded OJP's/COPS Office's threshold, and supporting justification was not included with the package, a delay may occur while this justification is being retrieved. To avoid delays in the approval process, all recipients/federal procurement contractors should adhere to the timeframe requirements for the dollar amount of their proposed event.

**Question 6:** Once an event is approved, how do we handle any increases and/or decreases in the amount of  attendees originally proposed on the cost analysis spreadsheet submitted to DOJ for approval?

**Answer:** After receiving notification of approval from DOJ/OJP/COPS Office, all subsequent changes prior to the start day of the event should be sent to either the OJP or COPS Office Conference Costs email address, as appropriate. Example: If an event was approved by OJP/COPS Office on 9/1/20XX for an event scheduled for 12/15/20XX, the recipient/ federal procurement contractor should notify OJP/ COPS Office as soon as possible of any changes in attendees (preferably 30 days or more in advance). This scenario holds true for changes to start and end date, location, and any other cost-related category.

**Question 7:** Does the $31.25 per person per day limit for meeting rooms and audio-visual costs also include service fees and taxes?

**Answer:** Yes. The cost allowed for conference space and audio-visual equipment and services (fees and taxes) is limited to $31.25 per day per attendee not to exceed a cumulative total cost of $25,000. Total costs are defined as direct and indirect costs.

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

Question 8: What if there are multiple meetings occurring within the larger event offered to all the attendees? Is the $31.25 per day per attendee limit applicable to each meeting? Example: A general session meeting contains all attendees and later breakout sessions are offered to the groups. Can each breakout/meeting have its own $31.25 per person per day limit?

Answer: No. Despite the multiple meetings offered within the larger event, DOJ/OJP/COPS Office considers and approves this type of event as a single event.

Question 9: Can we accept complimentary food and beverage?

Answer: Yes. Complimentary food and beverages may be accepted if offered to everyone. Example: Hotel W offers a complimentary continental breakfast to all its overnight customers regardless of any status they may have with the hotel chain. This type of complimentary offer is considered a business strategy of the hotel to promote an increase in overnight stays. You are not required to reduce your M&IE by the value of the food and beverage if offered to all customers as noted in this example.

Question 10: Are the thresholds ($11,000 for logistical planner, $43,750 for programmatic planner, and $25,000 for conference space and audio-visual equipment/services) a cumulative cost for the entire event or a per day cost?

Answer: The cost allowed for conference space and audio-visual equipment and services (fees and taxes) is limited to $31.25 per day per attendee not to exceed a cumulative total cost of $25,000. The cost allowed for a logistical planner is the lesser of $62.50 per attendee or $11,000 per event. The cost allowed for a programmatic planner is the lesser of $250 per attendee or $43,750 per event.

Question 11: To whom should I submit event requests?

Answer: For all BJA events, the forms should be sent to: BJAConferencereport@usdoj.gov. All other OJP event forms should be sent to: OJPConferencecosts@ojp.usdoj.gov. For all COPS Office events, the form should be sent to: COPSConferencecosts@usdoj.gov. Please do not send questions or other correspondence to these email addresses. These mailboxes should be used only for the submission of conference forms and supporting documentation (e.g., hotel contracts).

Question 12: How far in advance do I have to submit an event for review and approval?

Answer: Requests for conferences costing *$100,000 or less, and not exceeding any cost thresholds* (conference space and audio-visual equipment and services, logistical conference planner, and programmatic conference planner) must be submitted to OJP/COPS Office 90 calendar days in advance of the earliest of the following:

- Start date of the conference;

- Deadline for signing conference-related contracts, or

- Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request).

Requests for conferences costing *more than $100,000, or exceeding any one cost threshold* (conference space and audio-visual equipment and services, logistical conference planner, or programmatic conference planner), must be submitted to OJP/COPS Office 120 calendar days in advance of the earliest of the following:

- Start date of the conference;

COPS-AR-0949

## 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

- Deadline for signing conference-related contracts, or
- Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request).

*Approval Requests Submitted Less than the Required Number of Days in Advance (as noted above)*—OJP/ COPS Office may, in its sole discretion, consider requests that are submitted late, but cannot assure that these requests will receive a decision in time to avoid having to cancel the conference (particularly if there are any issues that arise with specific items of cost in the request). Cancellation costs associated with conferences that are submitted for late prior approval may be determined to be unallowable costs by OJP/COPS Office.

**Question 13:** <u>What are the most common mistakes made on the forms, so that I can avoid them in the future and increase the likelihood of a quick review and approval decision for my event?</u>

**Answer:** Below are the most common mistakes found:

- *Inaccurate calculation of daily per diem.* Daily per diem rates for locations across the Nation can be found on the GSA website. Please ensure the daily rate utilized in the calculations corresponds to the specific location and dates of the meeting. In addition, please remember that travel days are reimbursed at a slightly lower rate than meeting days. The lower rates must be used for days of travel both before and after the event. The following chart includes these lower rates

| Full Per Diem Rate | Corresponding Travel Day Rate (75%) |
|---|---|
| $46.00 | $34.50 |
| $51.00 | $38.25 |
| $56.00 | $42.00 |
| $61.00 | $45.75 |
| $66.00 | $49.50 |
| $71.00 | $53.25 |

**EXCEPTION:** If your organization has its own formal, written travel policy, your event submissions can reflect that policy, instead of the rates in the chart above. In these instances, please state that you have a formal, written travel policy, and clearly explain the rates in the policy, and how the corresponding numbers in your submission were derived.

- *Insufficient explanation and justification of transportation costs.* . Please remember to "break out" and briefly describe/justify the transportation costs that are included. Example: If participants are flying to your event and the tickets are being paid for with DOJ funding, you should include the anticipated number of people flying multiplied by the estimated cost per ticket. If cars will be rented you should include a brief justification for why rental cars are being used instead of another form of ground transportation, such as taxis or shuttles.

- *Insufficient explanation and justification of audio-visual costs.* All audio-visual costs should be "broken out" and briefly described. The quantity of equipment to be rented (e.g., number of microphones, projectors, etc.) should be included, along with relevant costs and a brief justification for why the proposed equipment is required to conduct a successful meeting. A discussion of how the audio- visual services provider was selected should be included (for example, was it a micro purchase, or, if required under 2 C.F.R. 200.320, did you obtain three quotes).

## III. Postaward Requirements

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

- *Insufficient explanation and justification of printing costs.* Proposed printing costs for participant materials should also be itemized and briefly described. Specifically, it is important to articulate why printed materials are needed instead of making materials available electronically (at low or no cost) to attendees before and/or after the event.

- *Insufficient explanation and justification of shipping costs.* . Please provide an itemization of these costs, along with a brief description of why the equipment and other materials being shipped are essential to hosting a successful conference.

- *Insufficient explanation and justification of consultant costs.* The maximum daily rate for subject matter experts who are being reimbursed for their time is noted here. Please describe all consultant costs in detail and include a brief yet compelling justification for the proposed costs. Daily rates for subject matter experts above the maximum daily rate require prior approval by DOJ/OJP/COPS Office.

  In cases where higher rates are included in the event submission, written documentation of prior approval is required and should be attached.

**Question 14:** Should I continue to exclude all food and beverage costs in my event submissions?

**Answer:** Yes. The inclusion of food and beverage costs will delay the review process and these costs are not likely to be approved. The only exception is when the location of the conference does not allow attendees to obtain food or beverages on their own, or when this restriction would greatly disrupt the conference schedule. If you believe your event qualifies for such a rare exception, please contact your program manager to discuss it before completing and submitting your form. If meals are included in your event submission, please remember that attendees must subtract the meal costs from the M&IE reimbursement for the days on which the meals will occur.

**Question 15:** Can you summarize what I can do to prevent follow-up questions about my submitted event(s) that delay the review and approval process?

**Answer:** *As a general rule*, please explain how you derived every cost that you include in the conference submission form. The form can be challenging to complete and there are lines where it is not possible to add descriptive narrative. Please include your explanations and specific cost breakdowns in a separate tab, or in a separate document that is submitted with the form. In addition, please include the cooperative agreement or federal procurement contract number on the form.

**Question 16:** What events qualify for the expedited review process?

**Answer:** There is no "expedited review process." Every effort is made to review all events as quickly as possible. Most delays result from a need for additional information. Events are prioritized for review by balancing the following three criteria:

- The start date of the event;

- The date the event submission was received by OJP/COPS Office; AND

- The overall cost and complexity of the conference. For example, conferences requiring Deputy Assistant Attorney General/Controller (over $250,000-500,000) and Assistant Attorney General for Administration approval typically take longer to process as they have to go through OJP/COPS Office and DOJ reviews, result in more questions, and are more likely to have issues related to cost thresholds.

COPS-AR-0951

## III. Postaward Requirements

### 3.10 OJP/COPS OFFICE CONFERENCE APPROVAL, PLANNING, AND REPORTING

**Reporting**

Question 17: Where can I find the most updated version of the conference reporting form to use for my submissions?

Answer: The most updated version of the conference reporting form can be found under the Resources section at the end of this chapter.

Question 18: If I have a question about conference reporting, to whom should I send it?

Answer: Please send your questions to your designated Program Manager. They are great resources and will be happy to assist you. You may also direct your question to Ask.OCFO@usdoj.gov.

Question 19: Are we expected to have our staff track their time hour for hour for time spent on the event for planning, etc., or are reasonable estimates adequate for cost reporting purposes?

Answer: Post event reports must contain actual costs. These costs should include *logistical* and *programmatic planner* staff time spent on these activities and any *contracted planner* costs.

Question 20: With conference cost reports now being due 30 days after the event, how should we handle costs for invoices that have not been received yet? Many invoices (such as hotels) are not received within 30 days of the end of the event. Should estimates be included on the cost report?

Answer: All conference costs for events held by cooperative agreement recipients or federal procurement contractors costing over $20,000, or where more than 50% of attendees are DOJ employees, must be reported within *45 calendar days after the last day of the event*.

Question 21: On the DOJ Conference & Events Submission Form, Item #19 Reporting Period under A. General Conference Information — is this the period in which the actual cost of the event is being reported or should this be based on the end date of the event?

Answer: This reporting requirement is based on the end date of the event. All conference costs for events held by cooperative agreement recipients or federal procurement contractors costing over $20,000, or where more than 50% of attendees are DOJ employees, must be reported within 45 calendar days after the last day of the event. Example: An OJP/COPS Office-approved conference/event was conducted from 3/16/20XX through 3/20/20XX. A completed Conference & Events Submission Form must be submitted showing the prior approval amounts compared to the actual costs and explain all variances greater than 10% and $1,000. Reports should be emailed to the appropriate conference cost email address.

### Resources

- Conference & Events Submission Instructions
- Conference & Events Submission Form
- Federal Facilities List 1
- Food and Beverage Policy

COPS-AR-0952

## III. Postaward Requirements

### 3.11 INDIRECT COSTS

### Introduction

Indirect costs means those costs incurred for a common or joint purpose benefitting more than one cost objective, and not readily assignable to the cost objectives specifically benefitted, without effort disproportionate to the results achieved. Examples of costs usually treated as indirect include those incurred for facility operation and maintenance, depreciation, and administrative salaries.

> ▶ **OJP/COPS SPECIFIC TIP**
>
> Transferring funds into or out of the indirect cost category requires budget review and may require modification of the approved budget. Recipients are to contact the OJP/COPS Office promptly in the event of any change in the approved negotiated indirect cost rate to be applied under the award.

### Federal Indirect Cost Rate—Negotiated Agreements

If a Federal agency has approved an indirect cost rate or allocation plan, then another agency must accept the same indirect cost rate or allocation plan, provided the rate or plan is current and based on allocation methods substantially in accord with those set forth in the OMB Uniform Guidance for grant requirements. There are limited circumstances where a Federal agency may deviate from negotiated rates as discussed in 2 C.F.R. § 200.414 (Indirect (F&A) costs).

A recipient or subrecipient that has a federally negotiated indirect cost rate, which has expired during the funding period cannot draw down funds budgeted for indirect costs until a new rate is approved and a copy is submitted to the awarding agency, or they are eligible for and elect the de minimis rate.

Any recipient or subrecipient that has a Federal negotiated indirect cost rate may request a one-time extension of that agreement for up to four years. This extension request is subject to review and approval from the cognizant agency for indirect costs. If the extension is granted, the recipient or subrecipient may not request a rate review until the extension period ends. The recipient or subrecipient must re-apply to negotiate a new rate when the extension ends. After a new rate has been negotiated, the recipient or subrecipient, may again apply for a one-time extension of the rate in accordance with this paragraph.

> ▶ **OJP SPECIFIC TIP**
>
> A request for a one-time extension of a current negotiated rate may be approved for a period of one year..

### Establishment of Indirect Cost Rates

The requirements for the development and submission of indirect cost proposals and cost allocation plans are set out in Appendices III – VII of 2 C.F.R. Part 200. A recipient or subrecipient should follow the guidelines applicable to its type of organization:

- 2 C.F.R. § 200, Appendix III for Institutions of Higher Education;
- 2 C.F.R. § 200, Appendix IV for Non-Profit Organizations;

COPS-AR-0953

## III. Postaward Requirements

### 3.11 INDIRECT COSTS

- 2 C.F.R. § 200, Appendix V for State/Local Government Central Service Cost Allocation Plans;
- 2 C.F.R. § 200, Appendix VI for Public Assistance Cost Allocation Plans;
- 2 C.F.R. § 200, Appendix VII for State/Local/Tribal Indirect Cost Proposals.

If a recipient determines that OJP is their cognizant agency for indirect cost negotiation, refer to Indirect Costs resource document [PDF – 32Kb] for instructions on how to prepare an indirect cost proposal for submission to OJP. If it is determined that OVW is the cognizant agency for indirect costs, instructions on how to prepare and submit an indirect cost proposal may be found at https://www.justice.gov/ovw/grantees.

---

ⓘ **FINANCIAL MANAGEMENT TIP**

- **Submission of rate proposals:** Submission requirements for indirect cost rate proposals vary by type of organization. In general—**Non-profit organizations** must submit their proposal to their cognizant agency for indirect costs. See 2 C.F.R. Part 200, Appendix IV, sec. C.2.a.

- **Local governments** and **state agencies** that receive less than $35M in federal funding per year are required to prepare the proposal and retain it on file for review. Those above the annual threshold must prepare the proposal and submit it to its cognizant agency for indirect costs. See 2 C.F.R. Part 200 Appendix VII, sec. D.

- **Tribes** generally must submit indirect cost rate proposals to the Department of the Interior. See 2 C.F.R. Part 200, Appendix VII, sec. D.

- **Institutions of Higher Education** should refer to Appendix III, sec. C.11.a.2.

---

▶ **OJP SPECIFIC TIP**

Generally, if an indirect cost proposal is not submitted within 90 days after the award date, indirect costs may not be recovered for the period prior to submission of the proposal.

---

- To support the indirect cost proposal, recipients are responsible for ensuring that independent organizational audits are conducted in accordance with existing Federal auditing and reporting standards set forth in the applicable audit requirements. A copy of the audit report must be submitted to the cognizant Federal agency to support the indirect cost proposal.

- As part of requesting an indirect cost rate, a signed certification stating that the plan only includes allowable costs must be submitted with the proposal.

- Additional guidance for completing an indirect cost proposal as an award recipient, as well as examples of how certain information should be provided, is available through the U.S. Department of Health and Human Services (HHS) Program Support Center website. Indirect Cost Negotiations | HHS.gov.

After negotiations, the cognizant Federal agency will establish either a provisional, final, or fixed-with-carry-forward indirect cost rate.

COPS-AR-0954

## 3.11 INDIRECT COSTS

### Indirect Cost Distribution Bases

Regardless of the allocation method used by the organization, the following "direct cost" bases may be used as a distribution bas:

- **Modified Total Direct Cost, or MTDC.** This base includes all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and up to the first $50,000 of each subaward (regardless of the period of performance of the subawards under the award). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs, and the portion of each subaward in excess of $50,000. Other items may only be excluded when necessary to avoid a serious inequity in the distribution of indirect costs, and with the approval of the cognizant agency.

- **Direct Salaries and Wages.** This base includes the costs of direct salaries and wages incurred by the organization.

- **Direct Salaries and Wages plus Fringe Benefits.** This base includes the costs of direct salary and wages and the direct fringe benefits incurred by the organization.

### Cost Allocation Plans—Central Support Services

- State agencies and units of local government may charge to an award the cost of central support services supplied by the State or units of local government, pursuant to a cost allocation plan approved by HHS (for States), or the cognizant agency (for major local governments), or retained on file (for non-major local governments). The rate to be applied may be on a fixed rate with carry forward provision.

- Additional information can be found in 2 C.F.R. Part 200 Appendix V.

### Lobbying Costs and the Indirect Cost Pool

When a recipient or subrecipient seeks reimbursement for indirect costs, total lobbying costs must be separately identified in the indirect cost rate proposal and thereafter treated as other unallowable activity costs in accordance with the procedures in 2 C.F.R. § 200.413 (Direct Costs).

Requirements for recipient organizations:

- Unallowable costs associated with the indirect cost pool (e.g., lobbying) must be added to the direct cost base.

- Recipients or subrecipients must submit, as part of their annual indirect cost rate proposal, a certification that they are in compliance with all the requirements and standards under 2 C.F.R. § 200.450 (Lobbying).

### No Approved Plan

Recipients that do not have an approved Federal indirect cost rate may either negotiate an indirect cost rate with their cognizant Federal agency for indirect cost or elect to charge a de minimis rate up to 15% of modified total direct costs.

If the recipient decides to negotiate an indirect cost rate with a DOJ component or has a rate pending with another Federal agency, an award condition will be added to the award prohibiting the obligation, expenditure, or drawdown of funds reimbursement for indirect costs until an indirect cost rate has been approved by the cognizant Federal agency, and a Grant Award Modification has been issued.

COPS-AR-0955

## III. Postaward Requirements

**3.11 INDIRECT COSTS**

Recipients or subrecipients that do not have a current negotiated (including provisional) indirect cost rate, may elect to charge a de minimis rate up to 15% of modified total direct costs (MTDC) which may be used indefinitely. When using this method, cost must be consistently charged as either indirect or direct costs, but may not be double charged or inconsistently charged as both. Also, if this method is chosen then it must be used consistently for all Federal awards until such time as the recipient or subrecipient chooses to receive a negotiated rate. See 2 C.F.R. § 200.414(f ).

### Indirect Cost Rates for Subrecipients

If a subrecipient has negotiated an indirect cost rate with the Federal government, then that rate applies. (E.g., some subrecipients also are direct recipients of Federal awards.)

If no approved rate exists, a pass-through entity must determine the appropriate rate in collaboration with the subrecipient. Such rates must be consistent with the requirements of 2 C.F.R. Part 200, and are either a rate negotiated between the pass-through entity and the subrecipient (the pass-through entity may rely on a prior negotiated rate between the subrecipient and another pass-through entity), or the de minimis indirect cost rate. See 2 C.F.R. 200.332(b)(4).

The Federal awarding agency will not negotiate indirect cost rates beyond the direct recipient.

COPS-AR-0956

## III. Postaward Requirements

### 3.12 OJP'S CONFIDENTIAL FUNDS

#### Introduction

The provisions outlined in this chapter apply to all awarding agency professional personnel, recipients, and subrecipients involved in the administration of grants containing confidential funds. Confidential funds are those monies allocated to:

- **Purchase of Services (P/S).** This category includes travel or transportation of a non-Federal officer or an informant; the lease of an apartment, business front, luxury-type automobile, aircraft or boat, or similar effects to create or establish the appearance of affluence; and/or meals, beverages, entertainment, and similar expenses (including buy money, cash rolls, etc.) for undercover purposes, within reasonable limits.
- **Purchase of Evidence (P/E).** This category is for purchase of evidence and/or contraband, such as narcotics and dangerous drugs, firearms, stolen property, counterfeit tax stamps, and so forth, required to determine the existence of a crime or to establish the identity of a participant in a crime.
- **Purchase of Specific Information (P/I).** This category includes the payment of monies to an informant for specific information. All other informant expenses would be classified under P/S and charged accordingly

---

ⓘ **FINANCIAL MANAGEMENT TIP**

Confidential funds should only be allocated when 1) the merit of a program/ investigation warrants the expenditure of these funds, and 2) the recipient is unable to obtain these funds from other sources.

---

Confidential funds are subject to prior approval.

- Approval for confidential fund expenditures will be provided if it is found that the requested expenditures are reasonable and necessary elements of project operations.
- The approving agency must also ensure that the controls over disbursement of confidential funds are adequate to safeguard against the misuse of such funds.

#### Approval Authorities

The approval authority for the allocation of confidential funds is the awarding agency. (This includes Regional Information Sharing Systems (RISS) Program projects).

The approval authority for subrecipients is the original recipient agency.

#### Confidential Funds Certification

For all projects involved with confidential funds from either Federal or matching funds, DOJ requires signed certification that the Project Director has read, understands, and agrees to abide by the conditions described below. The signed certification must be submitted at the time of grant application. A sample Confidential Funds Certification form for use is included here.

Download sample Confidential Funds Certification form [PDF - 116 Kb].

COPS-AR-0957

## 3.12 OJP'S CONFIDENTIAL FUNDS

☑ **ACTION ITEM**

Each Project Director involved with confidential funds from either Federal or matching funds must provide signed certification to show that he or she has read, understands, and agrees to abide by conditions for confidential funds.

### Written Procedures

Each Project Director and Regional Information Sharing Systems (RISS) member agency authorized to disburse confidential funds must develop and follow internal procedures which incorporate the elements listed below. If the Project Director and/or RISS member agency deviates from these elements, they must receive prior approval of the awarding agency.

- The funds authorized will be established in an impress fund which is controlled by a bonded cashier.
- The supervisor of the unit to which the impress fund is assigned must authorize all advances of funds for the purchase of information. In the authorization the supervisor must specify the information to be received, the amount of expenditures, and the assumed name of the informant.
- Informant files are confidential files of the true names, assumed names, and signatures of all informants to whom payments of confidential expenditures have been made. To the extent possible, pictures and/or fingerprints of the informant payee(s) should also be maintained. In the RISS Program, the informant files are to be maintained at the member agencies only. Project headquarters may maintain case files.
- The agent or officer authorized to make a confidential payment will provide the cashier with a receipt for cash advanced for such purposes. The informant payee must provide the agent or officer a receipt for cash paid to them. A sample informant payee receipt [PDF - 153 Kb] is provided as an example.

An informant payee receipt must identify the exact amount paid to and received by the informant payee on the date executed. Cumulative or anticipatory receipts are not permitted. Once the receipt has been completed, **no alteration is allowed.** As shown in the sample above, the agent must prepare an informant payee receipt containing all of the following information:

- The jurisdiction initiating the payment
- A description of the information/evidence received
- The amount of payment in both numerical and word format (e.g., one hundred dollars [$100.00])
- The date on which the payment was made
- The signature of the informant payee
- The signature of the case agent or officer making payment
- The signature of at least one other officer witnessing the payment
- The signature of the first-line supervisor authorizing and certifying the payment

The signed receipt from the informant payee with a memorandum detailing the information received must be forwarded to the agent or officer in charge.

- The agent or officer in charge must compare the signatures
- He/she must also evaluate the information received in relation to the expense incurred and enter his/her evaluation remarks in the report of the agent or officer who made the expenditure from the interest fund.
- The certification will be witnessed by the agent or officer in charge on the basis of the report and informant payee's receipt.

COPS-AR-0958

## III. Postaward Requirements

### 3.12 OJP'S CONFIDENTIAL FUNDS

Each Project Director must prepare a reconciliation report on the interest fund on a quarterly basis.

- The reconciliation report must include the assumed name of each informant given and to what extent each informant contributed to the investigation.

- The recipient should retain the reconciliation report in its files and have it available for review.

- Subrecipients should retain the reconciliation report in their files and have it available for review unless the State agency requests that the report be submitted to them on a quarterly basis.

Each Project Director and member agency must maintain specific records of each confidential fund transaction. At a minimum, these records must consist of all documentation concerning the request for funds, processing (including the review and approval/disapproval), modifications, closure or impact material, and receipts and/or other documentation necessary to justify and track all expenditures.

- Refer to the documentation in the Informant Files section of this chapter for a list of documents which should be included in the informant files.

- In projects where award funds are used for confidential expenditures, please note that all of the above records are subject to the record retention and audit requirements of the awarding agency and program legislation.

- However, only under extraordinary and rare circumstances would such access include a review of the true name of confidential informants.

- When access to the true name of confidential informants is necessary, appropriate steps to protect this sensitive information must and will be taken by the organization, the awarding agency, and the auditing agency.

- Any such access, other than under a court order or subpoena pursuant to a bona fide confidential investigation, must be approved by both the OJP Program Office Head and the OJP Chief Financial Officer.

---

☑ **ACTION ITEM**

If the project director and RISS member agency authorized to disburse confidential funds deviate from these written procedures, they must receive prior approval of the awarding agency.

---

### Informant Files

A separate file should be securely established for each informant for accounting purposes.

- Informant files should be kept in a separate and secure storage facility and under the exclusive control of the Project Director, manager, or an employee designated by him/her.

- The facility should be locked at all times when unattended.

- Access to these files should be limited to those employees who have a necessary and legitimate need.

- An informant file should not leave its immediate area within the storage facility, except for review by a management official or the handling agent, and should be returned prior to the close of business on the day of its review.

- Sign-out logs should be kept indicating the date, informant number, time in and out, and the signature of the person reviewing the file

## 3.12 OJP'S CONFIDENTIAL FUNDS

Each file should include the following documentation:

- Informant Payment Record easily accessible on top of the file. Tis record provides a summary of informant payments.
- Informant Establishment Record, including complete identifying and locating data, plus any other documents connected with the informant's establishment.
- Current photograph and fingerprint card (or Federal Bureau of Investigation [FBI]/State criminal identification number).
- Agreement with cooperating individual.
- Receipt for P/I.
- Copies of all debriefing reports (except for the headquarters case file).
- Copies of case initiation reports showing the use of an informant (except for the headquarters case file).
- Copies of statements signed by the informant (unsigned copies will be placed in appropriate investigative files).
- Any administrative correspondence pertaining to the informant, including documentation of any representations made on his behalf or any other nonmonetary considerations furnished.
- Any deactivation report or declaration of an unsatisfactory informant.

### Regional Information Sharing Systems (RISS) Program

RISS is a national federally funded program of regionally oriented services designed to enhance the ability of local, State, Federal, and tribal criminal justice agencies to:

- Identify, target, and remove criminal conspiracies and activities spanning multijurisdictional, multistate, and sometimes international boundaries.
- Facilitate rapid exchange and sharing of information among the agencies pertaining to known suspected criminals or criminal activity.
- Enhance coordination and communication among agencies that are in pursuit of criminal conspiracies determined to be interjurisdictional in nature.

### RISS Processing Procedures

The agency must provide a statement agreeing to establish control, accounting, and reporting procedures consistent with the procedures outlined in this chapter. The project policy board establishes the maximum level the Project Director may authorize in disbursements to member agencies.

- The Project Director, or his/her designee, may authorize payment of funds to member agencies and their officers for P/I and evidence up to this maximum level.
- The Project Director must refer all requests for amounts in excess of the maximum level to the project policy board for review and approval.
- Any member agency requesting funds from the project will do so in writing. The request must contain the amount needed, the purpose of the funds, and a statement that the funds requested are to be used to further the project's objectives

# III. Postaward Requirements

## 3.12 OJP'S CONFIDENTIAL FUNDS

The Project Director, or his/her designee when appropriate, will approve or disapprove the request in writing.

- If approved, the request will be forwarded to the project cashier, who will record the request and transmit the monies, along with a receipt form, to the member agency.

- Upon receipt of the monies, the member agency will immediately sign and return the receipt form to the cashier.

Each Project Director must record and maintain on file the assumed name and signature of all informants to whom member agencies make payments from project funds for all transactions involving P/I.

- The original signed informant payee receipt, with a summary of the information received, will be forwarded to the Project Director by the member agency.

- The Project Director will then verify the receipt by comparing the signature of the informant payee on the receipt with the signature maintained by the project in a secure and confidential file.

- If discrepancies exist, the Project Director, or his/her designee, will take immediate steps to notify the member agency and find out the reason(s) for the discrepancies.

- The member agency must forward written justification to deal with discrepancies identified by the Project Director. If the justification is sufficient, it will be attached to the informant payee receipt.

### Informant Management and Utilization

Anyone used as an informant should be identified as such. The specific procedures required in establishing a person as an informant may vary from jurisdiction to jurisdiction but, at a minimum, should include the following:

- Assign an informant code name to protect the informant's identity.
- Create an informant code book controlled by the Project Director or their designee containing:
  - ▶ Informant's code name;
  - ▶ Type of informant (i.e., informant, defendant/informant, restricted-use informant);
  - ▶ Informant's true name;
  - ▶ Name of establishing law enforcement officer;
  - ▶ Date the establishment of the informant is approved; and
  - ▶ Date of deactivation.
- Establish each informant's files in accordance with the documentation listing under the Informant Files section of this chapter.
- Search all available criminal records for informants.
  - ▶ If a verified FBI number is available, request a copy of the criminal records from the FBI.
  - ▶ Where a verified FBI number is not available, fingerprint the informant and send a copy to the FBI and appropriate State authorities for analysis.
  - ▶ The informant may be used on a temporary basis while awaiting a response from the FBI.
- Review all active-status informant files on a quarterly basis to assure they contain all relevant and current information.
  - ▶ Where a substantive fact that was earlier reported on the Establishment Record is no longer correct (e.g., a change in criminal status or in means of locating the informant), a supplemental establishing report should be submitted with the correct entry.

COPS-AR-0961

## 3.12 OJP'S CONFIDENTIAL FUNDS

### Payment to Informants

Anyone who receives payments charged against P/E or P/I funds should be established as an informant.

- This includes anyone who may otherwise be categorized as a source of information or an informant under the control of another agency.
- The amount of payment should match the value of services and/or information provided and should be based on the following factors:
  - The level of the targeted individual, organization, or operation.
  - The amount of the actual or potential seizure.
  - The significance of the contribution made by the informant to the desired objectives.
- Payments to informants may be made under various circumstances:
  - When an informant assists in developing an investigation, either through supplying information or actively participating in it, they may be paid for their service either in a lump sum or in staggered payments. Payments for information leading to a seizure, with no defendants, should be on a minimum basis.
  - When an informant needs protection, law enforcement agencies (LEAs) may absorb the expenses of relocation. These expenses may include travel for the informant and their immediate family, movement and/or storage of household goods, and living expenses at the new location for a specific period of time (not to exceed 6 months). Payments for these expenses may be either lump-sum or as they occur and should not exceed the amounts authorized by law enforcement employees for these activities.
  - To use or pay another agency's informant, the person should be identified as an informant. These payments should not be a duplication of a payment from another agency; however, sharing a payment is acceptable.
- Documentation of payments to informants is critical and must be noted on a receipt for P/I.
  - Payment should be made and witnessed by two law enforcement officers and authorized payment amounts should be established and reviewed by at least the first-line supervisory level.
  - In unusual circumstances, a non-officer employee or an officer of another LEA may serve as a witness.
  - In all instances, the original signed receipt must be submitted to the Project Director for review and recordkeeping

---

☑ **ACTION ITEM**

Stress with staff the importance of maintaining complete records for informants, including documentation of payments.

---

COPS-AR-0962

## III. Postaward Requirements

### 3.12 OJP'S CONFIDENTIAL FUNDS

#### Accounting and Control Procedures

Special accounting and control procedures should direct the use and handling of confidential expenditures. We describe these procedures below:

- It is important that expenditures identified as P/E, P/I, and P/S expenses are in fact allocated and charged to the proper category. This is the only way that these funds may be properly managed at all levels and accurate projections of future needs be made.

- Each law enforcement entity should apportion its P/E, P/I, or P/S allowance throughout its jurisdiction and delegate authority to approve P/E, P/I, and P/S expenditures to those offices as necessary.

- Headquarters management should establish guidelines authorizing offices to spend up to a predetermined limit of their total allowance on any one investigation.

- In exercising their authority to approve these expenditures, the supervisor should consider:

  ▸ The significance of the investigation;

  ▸ The need for this expenditure to further that investigation; and

  ▸ Anticipated expenditures in other investigations.

- Funds for P/E, P/I, and P/S expenditures should be advanced to the officer for a specific purpose. If they are not expended for that purpose, they should be returned to the cashier. The funds should not be used for another purpose (including another category) without first returning them and repeating the authorization and advance process based on the new purpose.

- Funds for P/E, P/I, or P/S expenditures should be advanced to the officer on a suitable receipt form. A receipt for P/I or a voucher for P/E should be completed to document funds used in P/E or funds paid or advanced to an informant.

- For security purposes, there should be a 48-hour limit on the amount of time for which funds advanced for P/E, P/I, or P/S expenditure may be held outstanding.

  ▸ If it becomes apparent at any point within the 48-hour period that the funds will not be used, then the funds should be returned to the advancing cashier as soon as possible. An extension to the 48-hour limit may be granted by the level of management that approved the advance.

  ▸ Factors to consider in granting an extension are the amount of funds involved, safeguarding of funds, length of extension required, and importance of the expenditure.

  ▸ Extensions are generally limited to no more than an additional 48 hours. Recipients should consult with the program office prior to determining the final course of action. Beyond this time period, the funds should be returned and re-advanced, if necessary.

  ▸ Regardless of circumstances, within 48 hours of the advance, the fund cashier should be presented with either the unexpended funds, an executed receipt for P/I or P/E, or written notification by management that an extension has been granted.

- P/S expenditures, when not endangering the safety of the officer or informant, need to be supported by cancelled tickets, receipts, lease agreements, and any other relevant documentation. If supporting documents are unavailable, the Project Director or his or her immediate subordinate must certify that the expenditures were necessary and justify why supporting materials were not obtained

---

**☑ ACTION ITEM**

For security purposes, establish a limit of 48 hours on the amount of time for which funds advanced for P/E, P/I, or P/S expenditure may be held outstanding..

---

COPS-AR-0963

## III. Postaward Requirements

### 3.13 UNALLOWABLE COSTS

#### Introduction

Federal awards generally provide recipients and/or subrecipients with the funds necessary to cover costs associated with the award program. There are other costs, however, categorized as unallowable costs, that will not be reimbursed. Recipients and subrecipients must not use award or match funding for unallowable costs. Also within the category of unallowable costs are any costs considered inappropriate by the awarding DOJ agency. See 2 C.F.R. § 200.1 (Disallowed Cost)

The allowability of certain costs is discussed in 2 C.F.R. § 200, Subpart E - Cost Principles. (For-profit entities and hospitals follow different cost principles – see FAR 31.2, and 2 C.F.R. Part 200b Appendix. IX, respectively; and certain nonprofit organizations are exempted from the cost principles in Subpart E, see 2 C.F.R. Part 200  Appendix VIII).

Unallowable cost items that may be of particular relevance for DOJ-funded programs are highlighted below.

#### Land Acquisition

DOJ grant funds may not be used for land acquisition. See, e.g., 34 U.S.C. 10233.

#### Compensation of Federal Employees

This category of unallowable costs includes salary payments, consulting fees, or other compensation to full-time Federal employees.

#### Travel of Department of Justice (DOJ) Employees

Award funds may not be spent on transportation, lodging, subsistence, and related travel expenses of agency DOJ employees.

#### Bonuses or Commissions

Recipients and subrecipients cannot pay any bonus or commission to any individual or organization to obtain approval of an application for award assistance.

Distribution of earnings in excess of costs, such as when used for bonuses and commissions for certain positions for non-profit organizations, may be unallowable. See 2 C.F.R. § 200.430(h)

> ☑ **ACTION ITEM**
>
> Be sure to check the award package to determine which salaries, fringe benefits, and other personnel costs are allowable under the specific award.

#### Lobbying

Recipients and subrecipients must comply with the provisions in 2 C.F.R. § 200.450 (Lobbying) and 18 U.S.C. 1913, as appropriate. Also, see Chapter 2.1 of this *Guide* for more specifics about restrictions on lobbying.

- The lobbying cost prohibition applies to all award recipients and subrecipients.
- Award funds cannot be used for the following purposes:
  - ▸ Attempting to influence the outcome of any Federal, State, or local election, referendum, initiative, or

COPS-AR-0964

## III. Postaward Requirements

### 3.13 UNALLOWABLE COSTS

similar procedure, through in-kind or cash contributions, endorsements, publicity, or similar activity;

- ▶ Establishing, administering, contributing to, or paying for the expenses of a political party, campaign, political action committee, or other organization established to influence the outcome of elections;

- ▶ Attempting to influence (a) the introduction of Federal or State legislation; or (b) the enactment or modification of any pending Federal or State legislation through communication with any member or employee of the Congress or State legislature (including efforts to influence State or local officials to engage in similar lobbying activity), (c) the enactment or modification of any pending Federal or State legislation by preparing, distributing, or using publicity or propaganda, or by urging members of the general public, or any segment thereof, to contribute to or participate in any mass demonstration, march, rally, fund raising drive, lobbying campaign or letter writing or telephone campaign, or (d) with any Government official or employee in connection with a decision to sign or veto enrolled legislation;

- ▶ Engaging in or supporting the development of publicity or propaganda designed to support or defeat legislation pending before legislative bodies;

- ▶ Paying, directly or indirectly, for any personal service, advertisement, telephone, letter, printed or written matter, or other device, intended or designed to influence a member of Congress or of a State legislature to favor or oppose, by vote or otherwise, any legislation or appropriation by either Congress or a State legislature, whether before or after the introduction of any bill or resolution proposing such legislation or appropriation;

- ▶ Engaging in legislative liaison activities, including attendance at legislative sessions or committee hearings, gathering information regarding legislation, and analyzing the effect of legislation, when such activities are carried out in support of or in knowing preparation for an effort to engage in unallowable lobbying;

- ▶ Paying a publicity expert for purposes unallowable under the anti-lobbying rules; or

- ▶ Attempting to improperly influence, either directly or indirectly, an employee or officer of the executive branch of the Federal Government to give consideration or to act regarding a sponsored agreement or a regulatory matter.

- ■ The Anti-Lobbying Act, 18 U.S.C. § 1913, contains significant restrictions on the use of appropriated funding for lobbying.

  - ▶ These anti-lobbying restrictions are enforceable via large civil penalties, with civil fines between $10,000 and $100,000 per each individual occurrence of lobbying activity.

  - ▶ These restrictions are in addition to the anti-lobbying and lobbying disclosure restrictions imposed by 31 U.S.C. § 1352.

- ■ All recipients must understand that no federally appropriated funding made available under the grant program may be used, either directly or indirectly, to support the enactment, repeal, modification, or adoption of any law, regulation, or policy, at any level of government, without the express approval of DOJ.

- ■ Any violation of this prohibition is subject to a minimum $10,000 fine for each occurrence. Tis prohibition applies to all activity, even if currently allowed within the parameters of the existing OMB guidance.

- ■ Any question(s) relating to the lobbying restrictions should be submitted in writing to the DOJ agency's ethics official (typically in the awarding DOJ agency's Office of the General Counsel) through the DOJ program manager.

COPS-AR-0965

## III. Postaward Requirements

### 3.13 UNALLOWABLE COSTS

> **▶ OVW SPECIFIC TIP**
>
> OVW has some programs with purpose areas that expressly authorize "developing and promoting state, local, or tribal legislation and policies that enhance best practices for responding to domestic violence, dating violence, sexual assault, and stalking." Recipients with questions on specific authorized activities should contact their grant manager.

**Fundraising**

The costs of organized fundraising, including financial campaigns, endowment drives, solicitation of gifts and bequests, and similar expenses incurred solely to raise capital or obtain contributions may not be charged as direct or indirect costs against awards. However, certain fundraising costs for meeting the Federal program objectives may be allowable with the prior approval of the DOJ awarding agency. See 2 C.F.R. § 200.442 for more details.

- The portion of a person's salary that covers time spent engaged in unallowable fundraising, and any indirect costs associated with those salaries, may not be charged to the award.

- An organization may accept donations (e.g., goods, space, services) towards fundraising, as long as the value of the donations is not charged as a direct or indirect cost to the award.

- Nothing in this section should be read to prohibit a recipient from engaging in fundraising activities, as long as such activities are not financed by Federal or matching funds.

**Corporate Formation**

The cost for corporate formation (startup costs) may not be charged as either direct or indirect costs against the award except with prior approval from the awarding DOJ agency. See 2 C.F.R. 200.455.

> **▶ OVW SPECIFIC TIP**
>
> OVW's Grants to Tribal Domestic Violence and Sexual Assault Coalitions may allow for corporate formation costs to be charged directly to the award.

**Legal Services for Aliens**

Except as indicated in the following sentence, costs of providing legal services (that is, professional services of the kind lawfully provided only by individuals licensed to practice law) to any removable alien (see 8 U.S.C. § 1229a(e)(2)) or any alien otherwise unlawfully present in the United States are disallowed and may not be charged against the award.

Costs for legal services disallowed under the preceding sentence do not include costs for legal services— (1) to obtain protection orders for victims of crime (including associated or related orders (e.g., custody orders), arising from the victimization); (2) that are associated with or relate to actions under 18 U.S.C. ch. 77 (peonage, slavery, and trafficking in persons); (3) to obtain T-visas, U-visas, or "continued presence" immigration status (see, e.g., 8 U.S.C. § 1101(a)(15)(T) & (U); 22 U.S.C. § 7105(c)(3)(A)); or (4) as to which such disallowance would contravene any express requirement of any law, or of any judicial ruling, governing or applicable to the award.

COPS-AR-0966

## III. Postaward Requirements

### 3.13 UNALLOWABLE COSTS

**Other Unallowable Costs**

Other categories of unallowable costs include:

- Entertainment, including amusement, diversion, social activities, and any associated costs (e.g., gifts, tickets to shows or sports events, meals, lodging, rentals, transportation, and gratuities) are unallowable. Certain exceptions may apply when such costs have a specific and direct programmatic purpose and have been approved by the awarding DOJ agency (2 C.F.R. 200.438);

- Fines and penalties, except when incurred as a result of compliance with specific provisions of an award or contract, or with prior written approval from the awarding DOJ agency (2 C.F.R. 200.441);

- Honoraria is unallowable when the primary intent is to confer distinction on, or to symbolize respect, esteem, or admiration for the recipient of the honorarium. A payment for services rendered, such as a speaker's fee under an award is allowable.

- Bar charges/alcoholic beverages (2 C.F.R. 200.423), and

- Membership fees to organizations whose primary activity is lobbying (2 C.F.R. 200.454(e))

**Costs Incurred Outside the Project Period**

Any costs that are incurred either before the start of the project period or after the expiration of the project period (except for closeout costs, see 2.C.F.R.200.471(b) are not allowable, unless written approval covering these costs is granted by the awarding DOJ agency. See Section 3.2, Period of Availability of Funds.

COPS-AR-0967

## III. Postaward Requirements

### 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

### Introduction

A subaward is an award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. The pass-through entity may use any form of legal agreement for making a subaward, including an agreement that the pass-through entity considers a contract. It does not include payments to a contractor, beneficiary, or participant.   See 2 C.F.R. § 200.1 ("Definition").

Under 2 C.F.R. § 200.331 (Subrecipient and Contractor Determinations), the pass-through entity is responsible for making case-by-case determinations to determine whether the entity receiving federal funds is a subrecipient or contractor. All of the characteristics listed below may not be present in all cases, and some from both categories may be present at the same time. The pass-through entity must use judgment in classifying each agreement as a subaward or a procurement contract.

The following characteristics that support the classification of an entity as a subrecipient include, but are not limited to, when the entity:

- Determines who is eligible to receive what Federal assistance;
- Has its performance measured in relation to whether the objectives of the Federal program were met;
- Has responsibility for programmatic decision-making;
- Is responsible for adhering to applicable program requirements under the Federal award; and
- Implements a program for a public purpose specified in the authorizing statute, as opposed to providing goods or services for the benefit of the pass-through entity.

In contrast, a contract is for the purpose of obtaining goods and services for the recipient's or subrecipient's use and creates a procurement relationship with the contractor. The following characteristics that support the classification as a contractor include, but are not limited to, when the contractor

- Provides the goods and services within normal business operations;
- Provides similar goods or services to many different purchasers;
- Normally operates in a competitive environment;
- Provides goods or services that are ancillary to the implementation of a Federal program; and
- Is not subject to the compliance requirements of the Federal program as a result of the agreement, however similar requirements may apply for other reasons.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> In determining whether an agreement between a pass-through entity and non- federal entity creates a subrecipient or a contractor relationship, the substance of the relationship is more important than the form of the agreement.

The contract or other written agreement must not affect the recipient's overall responsibility and accountability to the Federal Government as the award recipient for the duration of the project. The recipient of the award is responsible for monitoring the subrecipient and ascertaining that all fiscal and programmatic responsibilities are fulfilled.

COPS-AR-0968

# III. Postaward Requirements

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

### Subrecipient Monitoring

The purpose of subrecipient monitoring is to ensure that the subaward is being used for the authorized purpose, in compliance with the federal program and grant requirements, laws, and regulations, and the subaward performance goals are achieved. All pass-through entities must verify that the subrecipient is not excluded or disqualified from receiving Federal funds. See 2 C.F.R. § 200.332(a).

All pass-through entities are required to monitor their subrecipients. The requirements for subrecipient monitoring can be found in 2 C.F.R. § 200.332(e), (f), and (g). See also the audit requirements applicable to subrecipients contained in Subpart F of 2 C.F.R. Part 200.

Under 2 C.F.R. § 200.415(b), all pass-through entities must require subrecipients of all tiers certify to them whenever applying for funds, requesting payment, and submitting financial reports: "I certify to the best of my knowledge and belief that the information provided herein is true, complete, and accurate. I am aware that the provision of false, fictitious, or fraudulent information, or the omission of any material fact, may subject me to criminal, civil, or administrative consequences including, but not limited to violations of U.S. Code Title 18, Sections 2, 1001, 1343 and Title 31, Sections 3729-3730 and 3801-3812." Each such certification must be maintained pursuant to the requirements of 2 C.F.R. § 200.334.

Additional requirements can be found in the program legislation and the terms and conditions of the award. As part of the organization's subrecipient monitoring process, it is important to develop systems, policies, and procedures to ensure that subrecipient reviews are conducted in accordance with Federal program and grant requirements, laws, and regulations. Additionally, organizations should develop, implement, and perform procedures to ensure that the subrecipient obtains the required audits, and that audit findings identified in subrecipient audit reports are timely and effectively resolved and corrected.

### Subrecipient Agreements

When a pass-through entity makes an award to a subrecipient, the Federal award information and applicable compliance requirements, including applicable special conditions, must be clearly identified in the subrecipient award agreement. Pass-through entities must ensure subaward documents include the following information at the time of the subaward (2 C.F.R. § 200.332(b)). If any of these data elements change during the period of performance, the changes must be included in subsequent subaward modifications. The subaward must include the following information:

- Federal Award Identification;
  - Subrecipient's Name (must match the name associated with its unique entity identifier);
  - Subrecipient's unique entity identifier);
  - Federal Award Identification Number (FAIN);
  - Federal Award Date;
  - Subaward Period of Performance Start and End Date;
  - Subaward Budget Period Start and End Date;
  - Amount of Federal Funds Obligated in the subaward;
  - Total Amount of Federal Funds Obligated to the Subrecipient including the current financial obligation;
  - Total amount of the Federal Award committed to the subrecipient;
  - Federal Award Project Description;
- Name of the Federal Agency, Pass-through entity, and contact information for the awarding official of the pass-through agency.

COPS-AR-0969

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

- Assistance listings title and number (the pass-through entity must identify the dollar amount under each Federal award and the Assistance Listings Number at the time of disbursement);

- Identification of whether the Federal award is for research and development;

- Indirect cost rate for the Federal award (including if the de minimis rate is used in accordance with 2 C.F.R. § 200.414);

- All requirements of the subaward, including requirements imposed by Federal statutes, regulations, and the terms and conditions of the Federal award;

- Any additional requirements that the pass-through entity imposes on the subrecipient for the pass- through entity to meet its responsibilities under the Federal award. This includes information and certifications (See 2 C.F.R. § 200.415) required for submitting financial and performance reports that the pass-through agency must provide to the DOJ agency;

- Indirect cost rate to be used by the subrecipient (either a federally-approved rate, a rate negotiated between the pass-through entity and the subrecipient, or the de minimis indirect cost rate);

- A requirement that the subrecipient permit the pass-through entity and auditors t o access the subrecipient's records and financial statements for the pass-through entity to fulfill its monitoring requirements of 2 C.F.R. Part 200; and

- Appropriate terms and conditions concerning the closeout of the subaward.

Additional elements to consider including in the agreement are listed in this chapter in the Best Practices section.

### Subrecipient Monitoring Procedures

The pass-through entity must have established written policies on subrecipient monitoring, as described in 2 C.F.R. § 200.332. The pass-through entity is required to monitor the subrecipient's use of Federal funds during the program period. The pass-through entity must evaluate each subrecipient's fraud risk and risk of non-compliance with a subaward to determine the appropriate subrecipient monitoring. When evaluating a subrecipient's risk, a pass-through entity should consider the following:

- Subrecipient's prior experience with the same or similar subawards;

- Results of previous audits;

- Whether the subrecipient has new personnel or a new or substantially changed systems; and

- The extent and results of any Federal agency monitoring. See 2 C.F.R. § 200.332(c).

Subrecipients may be evaluated as higher risk or lower risk to determine the need for closer monitoring. Generally, new subrecipients require closer monitoring. For existing subrecipients, closer monitoring may be warranted based on results noted during monitoring and subrecipient audits, (e.g., the subrecipient has a history of non-compliance as either a recipient or subrecipient, new personnel, or new or substantially changed systems).

- Programs with complex compliance requirements have a higher risk of non-compliance;

- The larger the percentage of program awards passed through, the greater the need for subrecipient monitoring;

- Larger dollar awards are of greater risk.

Some of the mechanisms that may be used to monitor subrecipient activities throughout the year include regular communication with subrecipients, and appropriate inquiries concerning program activities; performing subrecipient site visits to examine financial and programmatic records and observe operations; and reviewing detailed financial and program data and information submitted by the subrecipient.

COPS-AR-0970

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

However, when no site visit is conducted, the pass-through entity should be familiar with the subrecipient's financial operations and procedures, as well as their maintenance of current financial data such as timesheets, invoices, contracts, and ledgers that tie back to financial reports.

The pass-through entity is responsible for monitoring the overall performance of a subrecipient to ensure that the goals and objectives of the subaward are achieved. In monitoring a subrecipient, a pass-through entity, must:

- Review financial and performance reports submitted by the subrecipient;
- Ensure the subrecipient takes corrective action on all significant developments that negatively affect the subaward.
- Issue a management decision for audit findings pertaining to the award (see below, and 2 C.F.R. §§ 200.332(e) and 200.521(c)).
- Resolve audit findings specifically related to the subaward.

The purpose of these monitoring activities is to provide reasonable assurance that the subrecipient has administered the pass-through funding in compliance with the laws, regulations, and the provisions of the award and that the required performance goals are being achieved.

> ☑ **ACTION ITEM**
>
> Recipients must have written subrecipient monitoring policies and procedures.

### Subrecipient Audits

The pass-through entity needs to develop procedures to ensure that subrecipients expending $1,000,000 or more in Federal awards during the subrecipient's fiscal year submit the required completed audit within the earlier of 9 months after the end of the audit period or 30 calendar days after receipt of the audit report. See 2 C.F.R. § 200.512. Upon receipt of the subrecipient audit, the pass- through entity needs to:

- Evaluate the impact of subrecipient activities on the recipient organization's ability to comply with applicable Federal regulations,
- Issue a management decision on audit findings pertaining to their subrecipient's subaward within 6 months after receipt of the subrecipient's audit report, and
- Ensure that the subrecipient takes corrective action on all significant developments that negatively affect the award.

In cases of continued inability or unwillingness of a subrecipient to have the required audits conducted, the pass- through entity shall take appropriate action as provided in 2 C.F.R. § 200.339 (Remedies for Noncompliance). See 2 C.F.R. § 200.505. It is important to have policies and procedures in place to properly exercise the fiduciary responsibility in executing the award requirements should a subrecipient not comply with requirements, laws, and regulations.

As prescribed in 2 C.F.R. § 200 Subpart F, subrecipients are not required to submit a copy of the reporting package when there are "no audit findings," i.e., when the schedule of findings and questioned costs does not disclose audit findings relating to the Federal award requirements that was provided in the agreement with the subrecipient, and the summary schedule of prior audit findings does not report the status of audit findings relating to Federal award.

COPS-AR-0971

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

> ### ⓘ FINANCIAL MANAGEMENT TIP
>
> The information in the Federal Audit Clearinghouse (FAC) database may be used as evidence to verify that the required audit was performed and the subrecipient had "no audit findings." This verification is in lieu of reviewing submissions from the subrecipient when there are no audit findings. The FAC database is available online.

### Best Practices

Listed below are best practices that pass-through entities may consider in developing policies and procedures around making subawards and monitoring subrecipients.

#### Subrecipient Pre-Award and Monitoring Procedures

- Develop a request for applications (proposals) that clearly defines the work to be accomplished in furtherance of the Federal award purpose(s).
- Require subrecipients to include in their applications a time-phased milestone plan of action based on clearly-stated accomplishments defined in the proposal.
- Integrate budget line items into the performance plan.
- Require performance reports and supporting documentation with monthly invoices. Performance reports should discuss:
  - ▶ Milestones achieved/to be achieved;
  - ▶ Any significant problem, issues, or concerns;
  - ▶ Timely accomplishments and delays, and
  - ▶ Actual cost incurred compared to each budget line item with variances explained.

#### Remedies for Subrecipient Noncompliance

If a subrecipient fails to comply with Federal statutes, regulations, or the terms and conditions of a Federal award, the pass-through entity may impose additional conditions. However, if it is determined that noncompliance cannot be remedied by imposing additional conditions, the pass-through entity may take one or more actions set forth in Section 3.17 [Remedies for Noncompliance].

### Avoiding Business with Debarred and Suspended Organizations

Recipients and subrecipients must not award or permit any award at any level to any party which is debarred or suspended from participation in Federal assistance programs.

For details regarding debarment procedures, see the government-wide guidelines for debarment and suspension codified in 2 C.F.R. Part 180, and 2 C.F.R. Part 2867, which adopts the OMB guidance in subparts A through I of Title 2 CFR Part 180, as supplemented by Title 2 Part 2867, as the DOJ policies and procedures for non- procurement debarment and suspension.

COPS-AR-0972

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

> ### ⓘ FINANCIAL MANAGEMENT TIP
>
> To proactively monitor subrecipients:
>
> • Read subaward documents carefully.
>
> • Ask for explanation and clarity; don't assume.
>
> • Document transactions, agency guidance, performance evaluations, etc., in writing.
>
> • Keep documentation on hand.
>
> • Document, document, document! If it isn't documented, it doesn't exist!

### Reviewing Financial Operations

- Direct recipients should be familiar with, and periodically monitor, their subrecipients' financial operations, records, systems, and procedures.
- Recipients should direct particular attention to the subrecipient's maintenance of current financial data.

### Recording Financial Activities

- The recipient should record in its financial records in summary form the subrecipient's award or contract obligation, as well as cash advances and other financial activities.
- The recipient should record in its records the expenditures of its subrecipients. Alternatively the subrecipient may file report forms for tracking of its financial activities.
- Non-Federal contributions applied to programs or projects by subrecipients should likewise be recorded, as should any program income resulting from program operations.

### Budgeting and Budget Review

- The recipient should ensure that each subrecipient prepares an adequate budget on which its award commitment will be based.
- The detail of each project budget should be kept on file by the recipient..

### Accounting for Non-Federal Contributions

- Non-Federal contributions may include in-kind services (donated services such as volunteered time) or cash.
- Recipients should ensure that the requirements, limitations, and regulations pertinent to non-Federal contributions are applied.

### Ensuring Subrecipients Meet All Award Requirements

- Recipients must ensure that subrecipients have met the necessary audit requirements contained in this *Guide* (see Chapter 3.19: Audit Requirements). For additional information, see 2 C.F.R. § 200.332(g).

III. Postaward Requirements

## 3.14 SUBRECIPIENT MANAGEMENT AND MONITORING

> ☑ **ACTION ITEM**
>
> Where the conduct of a program or one of its components is delegated to a subrecipient, the direct recipient is responsible for all aspects of the program including proper accounting and financial recordkeeping by the subrecipient. The recipient is responsible for the accounting of receipts and expenditures, cash management, maintenance of adequate financial records, and refunding of expenditures disallowed by audits.

COPS-AR-0974

## III. Postaward Requirements

### 3.15 REPORTING REQUIREMENTS

#### Introduction

The Department of Justice (DOJ) requires award recipients to submit both financial and performance reports. Before either report can be submitted in JustGrants, the award must be accepted and active. These reports describe the status of the funds or the project, compare actual accomplishments to objectives, and provide other pertinent information. The specific requirements, reporting periods, and submission deadlines are identified below. The award documents may also include information regarding reporting requirements specific to the particular award.

---

☑ **ACTION ITEM**

Be sure to read ALL the special conditions in the award carefully!

---

#### SF-425 Federal Financial Reports

The SF-425 Federal Financial Report (FFR) must show the actual funds that have been spent (expenditures) and any bills that will be paid (unliquidated obligations incurred) at the recipient/subrecipient level for each award.

Recipients will report on a quarterly basis the cumulative information on expenditures on line 10e, 10f, 10j, 10m, and 10n of the FFR. However, the expenditures for indirect costs (IDC) will be reported on a quarterly basis, only if IDC applies to the grant and is approved. Also the FFR should indicate whether the recipient's accounting system operates on a cash or accrual-basis for accounting.

All DOJ award recipients must submit their FFR online in JustGrants. This system will allow authorized users to view current and past FFRs and file or amend the FFR for the current quarter.

The quarterly FFR must be submitted online no later than 30 days after the last day of each quarter. If the FFR is not submitted by the due date, JustGrants will automatically consider it to be delinquent and draw down of funds through the Automated Standard Application for Payments (ASAP) will not be permitted. An automatic email notification will be sent if this occurs.

---

ⓘ **FINANCIAL MANAGEMENT TIP**

If the award date is after the start date of the award period, the first FFR submitted to DOJ should cover the time period from the actual start date of the award to the end of the calendar quarter. Recipients will be required to submit FFRs for all due dates which have passed upon acceptance of the award. For example, an award's period of performance is October 1, 2024 to September 30, 2025. The recipient is awarded the grant on October 20, 2024. The first FFR covers the period from October 1, 2024 to December 31, 2024.

---

COPS-AR-0975

## III. Postaward Requirements

### 3.15 REPORTING REQUIREMENTS

| SF-425 Federal Financial Reports—Due Quarterly | | |
|---|---|---|
| Reporting Period | Due By Date | Delinquent After |
| October 1-December 31 | January 30 | January 30 |
| January 1-March 31 | April 30 | April 30 |
| April 1-June 30 | July 30 | July 30 |
| July 1-September 30 | October 30 | October 30 |

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> If the Federal Financial Report (SF-425) or performance report is delinquent, an **automatic hold will be placed on the remaining funds associated with the award** and payments cannot be requested through ASAP. In addition, any new awards or adjustments to current awards may be restricted until all reports are current.

The final FFR is due within 120 days after the end date of the period of performance, but may be submitted as soon as all outstanding expenditures have been completed. A subrecipient must submit a final financial report to a pass-through entity no later than 90 calendar days after the conclusion of the period of performance.

**Important Reminders**

- Report actual funds expensed, NOT the draw down amounts from the Federal Government.
- Report all allowable costs incurred, both at the recipient and subrecipient level.
- Report the cumulative expenditures by providing a sum of expenditures for the life of the grant. To arrive at your cumulative total, add all expenses incurred to date.
- Report program income as the cumulative amount, NOT the quarterly amount.
- Report correct indirect cost rate and base approved by the cognizant Federal agency.
- Report correct indirect cost rate type (provisional, final, de minimis, or fixed).

See 2 C.F.R. § 200.328.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> For information concerning online filing of SF-425 reports, go to JustGrants Training; Financial Reporting or OJP recipients should contact the OCFO Customer Service Center by phone at 1-800-458-0786 (option 2) or by email at ask.ocfo@usdoj.gov. OVW recipients should contact the OVW Grants Financial Management Division at 1-888-514-8556 or OVW.GFMD@usdoj.gov. COPS Office recipients should go to https://cops.usdoj.gov/contactcops or call the COPS Office Response Center at 800-421-6770.

COPS-AR-0976

## III. Postaward Requirements

### 3.15 REPORTING REQUIREMENTS

#### Performance Reports

Performance reports provide information relevant to the performance and activities of a plan, program, or project. Performance reports are submitted by recipients annually or semi-annually, depending on the award type. DOJ recipients' semi-annual performance reports must be submitted within 30 days after the end of the reporting periods. For OJP and OVW, due dates are: June 30 and December 31, for the life of the award. For COPS Office recipients' due dates please visit the Performance Management tab of the funded award in JustGrants. Unless otherwise indicated, the final report is due within 120 days after the end date of the period of performance. Reporting requirements are specified in the solicitation and in the award conditions specified in the award. Performance Reports must be submitted via JustGrants. Questions concerning performance reporting should be directed to the Program Manager for the award.

---

ⓘ **FINANCIAL MANAGEMENT TIP**

Technical questions concerning JustGrants should be addressed to JustGrants Support at 1-833-872-5175 for OJP and COPS Office awards, and 1-866-655-4482 for OVW awards. Programmatic questions should be directed to the program office grant manager identified in the award documents.

---

▶ **OJP SPECIFIC TIP**

FFRs and performance reports are not applicable to awards under the State Criminal Alien Assistance Program, and Bulletproof Vest Partnership Program.

---

#### Special Reporting Requirements

In the review and approval process for plans and applications, it is sometimes necessary for the awarding agency to impose special or unique reporting requirements. These requirements may vary from award to award.

#### Government Performance and Results Act (GPRA), Modernization Act (GPRAMA)

Award recipients must agree to collect data appropriate for facilitating reporting requirements established by the Government Performance and Results Act Modernization Act.

- Ensure that valid and auditable source documentation is available to support all data collected for each performance measure required by the program including those specified in the program solicitation or award.

#### Reports Required under the Federal Funding Accountability and Transparency Act (FFATA)

The Federal Funding Accountability and Transparency Act of 2006 (referred to as FFATA or The Transparency Act) requires the office of Management and Budget to maintain a single, searchable website that provides the public with information about how tax dollars are spent and gives them the ability to hold the Federal Government accountable for each spending decision. That site is https://www.usaspending.gov.

COPS-AR-0977

III. Postaward Requirements

## 3.15 REPORTING REQUIREMENTS

Effective November 12, 2020, pass-through entities that award $30,000 or more to subrecipients are required to submit data in the Subaward Reporting in SAM.gov system. Pursuant to 2 C.F.R. Part 170, Appendix A (Reporting Subaward and Executive Compensation Information), prime award - recipients awarded a new Federal award greater than or equal to $30,000 are subject to FFATA subaward reporting requirements. The prime awardee is required to file a FFATA subaward report through the Subaward Reporting in SAM.gov system, located at https://sam.gov/fsrs., by the end of the month following the month in which the direct recipient awards any subgrant greater than or equal to $30,000. Pass-through entities should also review and carefully consider 2 C.F.R. § 200.331 (Subrecipient and Contractor Determinations), as it includes guidance in making an appropriate determination that is relevant not only with regard to subrecipient reporting under FFATA, but also is key to the proper financial and programmatic administration and management of federal award funds.

The reporting requirements for Federal award recipients of both formula and discretionary grants are:

- All subaward information must be reported by the Federal recipient.

- If the initial subaward is at least $30,000, the award recipient must report the subawards and the names and annual compensation of the sub awardee's five highest paid executives.

- If the initial award is below $30,000 but subsequent award modifications result in a total award equal to or over $30,000, the award will be subject to the reporting requirements as of the date the award reaches $30,000.

- If the initial award is equal to or greater than $30,000 but de-obligation of funding causes the total award amount to fall below $30,000, recipients will continue to be subject to the reporting requirements.

The reporting requirements do NOT apply to the following:

- Awards to individuals

- Recipients that had a gross income of $300,000 or less in their previous tax year

- Classified information

☑ **ACTION ITEM**

Reporting requirements for DOJ awards may change from year to year. Please read the award documents.

COPS-AR-0978

## III. Postaward Requirements

**3.16 RETENTION AND ACCESS REQUIREMENTS FOR RECORDS**

### Retention of Records

Recipients and subrecipients must retain all federal award records for a period of 3 years from the date of submission of the final expenditure report (Federal Financial Report/SF-425). For more information, see 2 C.F.R. §200.334.

- Retention is required for purposes of Federal examination and audit.
- Records may be retained in an electronic format.

### Coverage

The retention requirement includes, if applicable, books of original entry, source documents, supporting accounting transactions, the general ledger, subsidiary ledgers, personnel and payroll records, cancelled checks, and related documents and records.

- Source documents may include copies of all awards, applications, and required recipient financial and narrative reports.
- Charges to Federal awards for salaries and wages must be based on records that accurately reflect the work performed.
- Time and effort reports are also required for consultants.

### Exception to the 3-Year Retention Period

The 3-year retention period starts from the date of submission of the final expenditure report. The following are exceptions to the standard record retention period:

The records must be retained until all issues involving the records have been resolved and final action taken, if any litigation, claim, or audit is started before the expiration of the 3-year period.

- When notified by the DOJ grant-making component, cognizant agency for audit, oversight agency for audit, cognizant agency for indirect costs, or pass-through entity to extend the retention period.
- Records for real property and equipment acquired with the support of Federal funds must be retained for 3 years after the final disposition.
- The 3-year retention requirement does not apply to the recipient or subrecipient when records are transferred to or maintained by the DOJ grant-making component or pass-through entity.
- The records for program income earned after the period of performance must be retained 3 years from the end of the recipient's or subrecipient's fiscal year in which the program income is earned.
- Indirect cost proposals submitted for negotiation must be retained for 3 years from the date of submission.
- Indirect cost proposals not required to be submitted for negotiation must be maintained for 3 years from the end of the fiscal year covered by the proposal.

COPS-AR-0979

## III. Postaward Requirements

### 3.16 RETENTION AND ACCESS REQUIREMENTS FOR RECORDS

#### Maintenance of Records

Maintain and separately identify all records for each Federal fiscal period so that information desired may be readily located. See 2 C.F.R. §200.336.

- Protect the records adequately against fire or other damage.
- Whenever practicable, information should be collected, transmitted and stored in open and machine-readable formats.

#### Access to Records

The DOJ grant-making component, or pass-through entity, the DOJ Office of the Inspector General, the Comptroller General of the United States, or any of their authorized representatives, must have the right of access to any records of recipients or subrecipients pertinent to the award to perform audits, to execute site visits, or for any other official use. See 2 C.F.R. §200.337.

- The DOJ agency or pass-through entity's right of access are not limited to the required retention period; it will last as long as the records are retained.
- The recipient or subrecipient and DOJ agency or pass-through entity must take measures to protect the name of victims of crime when access to the victim's name is necessary. Only under extraordinary and rare circumstances would such access include a review of information that would personally identify victims of crime. Routine monitoring cannot be considered extraordinary and rare circumstances that would necessitate access to this information.
- Any such access, other than under a court order or subpoena pursuant to a bona fide confidential investigation, must be approved by the head or delegate of the DOJ component.

> ▶ **OVW SPECIFIC TIP**
>
> - Unless required by statute, OVW will not place restrictions on recipients that limit public access to records of recipients that are pertinent to an award, except when OVW can demonstrate that such records must be kept confidential and would have been exempted from disclosure pursuant to the Freedom of Information Act (FOIA) if the records had belonged to OVW.
>
> - In addition, under 34 U.S.C. §12291(b)(2), OVW grantees and subgrantees may not disclose identifying information about victims served with VAWA funds without a written, informed, time-limited release from the victim. Such a release may not be a condition of receiving services. Grantees and subgrantees can also release information if compelled by a statutory or court mandate. In that case, they are required to make reasonable attempts to provide notice to affected victims and take steps to protect the privacy and safety of the persons affected by the release of information. Grantees and subgrantees are required to document their compliance with this provision.

COPS-AR-0980

## III. Postaward Requirements

### 3.17 REMEDIES FOR NONCOMPLIANCE

#### Introduction

The Department of Justice (DOJ) grant-making component or pass-through entity may implement specific conditions if the recipient or subrecipient fails to comply with the U.S. Constitution, Federal statutes, regulations, or terms and conditions of the award. See 2 C.F.R. § 200.208 for addition information on specific conditions. However, if it is determined that noncompliance cannot be remedied by imposing additional conditions, the DOJ grant-making component or pass- through entity may take one or more of the following actions under C.F.R. § 200.339:

- Temporarily withhold payments until the recipient or subrecipient takes corrective action;

- Disallow cost for all or part of the activity associated with the noncompliance of the recipient or subrecipient;

-  Suspend or terminate the Federal award in part or in its entirety;

- Initiate suspension or debarment proceedings as authorized in 2 C.F.R. Part 180 and DOJ's implementing regulations at 2 C.F.R. Part 2867 (or for pass-through entities, recommend suspension or debarment proceedings be initiated by the DOJ grant-making component);

- Designate the award recipient as a high-risk recipient under the DOJ high-risk policy;

- Withhold further DOJ funds (new awards or continuation of funding) for the project or program; or

- Pursue other legally available remedies:

#### Termination

Pursuant to 2 C.F.R. § 200.340, a Federal award may be terminated in in part or its entirety as follows:

- By the DOJ awarding agency or pass-through entity for failure to comply with the terms and conditions of an award;

- By the DOJ awarding agency or pass-through entity with consent of the recipient or subrecipient, in which case the two parties must agree upon termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated;

- By the DOJ awarding agency or pass-through entity pursuant to the terms and conditions of  the Federal award including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities; or

- By the recipient or subrecipient upon sending the DOJ awarding agency or pass-through entity a written notification of the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. However, if the DOJ awarding agency or pass-through agency determines that remaining portion of the award or subaward will not accomplish the purposes for which the award was made, then DOJ or the pass-through entity may terminate the award in its entirety.

The awarding DOJ agency or pass-through entity will provide the recipient or subrecipient written notice of termination. The written notice of termination will include the reasons for termination, the effective date, and the portion of the award to be terminated, if applicable.

If the award is terminated for failure to comply with the award, the notification must state that the termination decision must be considered in evaluating future applications received from the non-Federal entity.

COPS-AR-0981

## III. Postaward Requirements

### 3.17 REMEDIES FOR NONCOMPLIANCE

When an award is terminated or partially terminated, the awarding agency or pass-through entity and the recipient or subrecipient remain responsible for compliance with the requirements in 2 C.F.R. § 200.344 (Closeout) and 2 C.F.R. § 200.345 (Post-closeout adjustments and continuing responsibilities).

#### Hearings and Appeals

Upon taking a remedy for noncompliance, the DOJ awarding agency will provide the recipient with an opportunity to object and provide information and documentation challenging the suspension or termination action (2 C.F.R. § 200.342). Refer to Office of Justice Programs (OJP) Hearing and Appeal Procedures for appeal rights in event of termination (Title 28 C.F.R. Part 18).

#### Effects of Suspension and Termination

Costs incurred during a suspension or after termination of a Federal award or subaward are not allowable unless the DOJ awarding agency or pass-through entity expressly authorizes them in the notice of suspension or termination, or subsequently. However, costs during suspension or after termination are allowable if:

- The costs result from financial obligations which were properly incurred before the effective date of suspension or termination, are not in anticipation of it; and
- The costs would be allowable if the Federal award was not suspended or expired normally at the end of the period of performance in which the termination takes effect:

COPS-AR-0982

## III. Postaward Requirements

### 3.18 CLOSEOUT

#### Introduction

Closeout means the process that takes place when the DOJ grant-making component or pass-through entity determines that all applicable administrative actions and all required work of the Federal award have been completed by the recipient or subrecipient. See 2. C.F.R. § 200.344 (Closeout) for the actions to be taken as part of the closeout process. Administrative closeout costs may be incurred until the due date of the final report(s). If incurred, these costs must be liquidated prior to the due date of the final report(s) and charged to the final budget period of the award unless otherwise specified by the Federal agency. The following chapter provides guidance on closeout procedures applicable to DOJ awards.

#### First Step

The Grant Award Administrator will initiate the closeout process once programmatic and financial requirements have been met by using the JustGrants Module.

- A recipient must submit all reports (financial, performance, and other reports required by the Federal award) no later than 120 calendar days after the conclusion of the period of performance.

- A subrecipient must submit all reports (financial, performance, and other reports required by a subaward) to the pass-through entity, no later than 90 calendar days after the conclusion of the period of performance of the subaward (or an earlier date as agreed upon by the pass-through entity and subrecipient). See 2. C.F.R. § 200.344(b).

- If the award recipient does not submit all required reports within 120 calendar days of the end of the period of performance, the DOJ component will begin the closeout process based on the information available.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Award recipients should start the closeout process as soon as the program is completed and all Federal and matching funds have been spent.

#### Closeout of Awards

##### Cash Reconciliation and Final Draw Down

Award recipients must conduct a financial reconciliation of their accounting records to the final Federal Financial Report (FFR/SF-425) at closeout. Recipients must:

- Report final Federal share of cumulative expenditures and recipient share, if required, on the final FFR.

- Liquidate all financial obligations incurred under the Federal award no later than 120 calendar days after the conclusion of the period of performance.

- Subrecipients must liquate all financial obligations incurred under a subaward no later than 90 calendar days after the conclusion of the period of performance of the subaward (or an earlier date as agreed by the pass-through entity and subrecipient).

- Request final reimbursement (draw down) of Federal expenditures made within the approved period of performance in conjunction with the final SF-425. This request must be submitted prior to the end of the liquidation period (120 days or 90 days after the end of the period of performance for recipients or subrecipients, respectively). Failure to request final payment by this date will cause delays and result in additional administrative paperwork.

COPS-AR-0983

# III. Postaward Requirements

## 3.18 CLOSEOUT

### Recipient Closeout Requirements

Within 120 days of the end of the period of performance the recipient must submit the following to the DOJ grant-making component:

- Final Federal Financial Report (FFR) (submitted on SF-425)
  - ▶ The FINAL report of cumulative expenditures must have no unliquidated obligations.
  - ▶ Any unobligated or unexpended funds will be de-obligated from the award amount.
  - ▶ Recipient share requirements must be met by the end of the period of performance and included in the report.
  - ▶ Recipients who have drawn down funds in excess of their Federal expenditures must return those funds to the DOJ grant-making component when they submit the final report.
  - ▶ Be sure to reconcile the final FFR against the internal accounting records. All entries in the accounting system must be supported by adequate source documentation (for example, original invoices and contracts).
  - ▶ Report all allowable costs incurred, both at the recipient and subrecipient level.
- Final performance report must be prepared in accordance with instructions provided by the DOJ grant-making component.
- Any award conditions must have been met.
- Inventions that were conceived or first introduced to practice during the course of work under the award project must be listed on an invention report before closeout.
- Real or personal property reports must be submitted in accordance with the terms of the award.

See 2 C.F.R. § 200.344

> ☑ **ACTION ITEM**
>
> Submit the final SF-425, final performance report, and invention or equipment reports (if applicable) well in advance of the end of the 120-day period. After the liquidation period, recipients are unable to draw down any additional funds on the award.

If the recipient does not comply with the requirements set forth above including submitting all final reports, the DOJ component must report the recipient's material failure to comply with the terms and conditions of the award in SAM.gov. The DOJ grant-making component may also pursue other enforcement actions per 2 C.F.R. §200.339, as appropriate. See 2 C.F.R. § 200.344(i).

The recipient or subrecipient may charge the Federal award during the closeout for the necessary administrative costs of that Federal award (for example, salaries of personnel preparing final reports, publication and printing costs, costs associated with the disposition of equipment and property, and related indirect costs). These costs may be incurred until the due date of the final report(s). If incurred, these costs must be liquidated prior to the due date of the final report(s) and charged to the final budget period of the award unless otherwise specified by the DOJ.

COPS-AR-0984

## III. Postaward Requirements

**3.18 CLOSEOUT**

### Refund of Federal Grant Monies and/or Program Income

Award recipients must report the amount of Federal funds returned (unobligated balance of Federal funds) on line 10(h) of the final SF-425, and any unexpended program income returned on line 10(o) of the final FFR DOJ strongly encourages submission of refunds electronically using either the Automated Clearing House (ACH) or Fed wire. For instructions on how to complete either form click here.

If the Electronic Fund Transfer (EFT) is returned for insufficient funds, DOJ will attempt to process two more times and may charge a processing fee.

If funds must be returned at award closeout, remit using ASAP. For more information on the ASAP system, see Chapter 3.1 Payments.":

### Failure to Remit Funds Owed

Any Federal funds paid to the recipient or subrecipient that exceeds the amount to which the organization is determined to be entitled to under the Federal award constitutes a debt to the Federal government.  DOJ must collect all debts arising out of its Federal awards in accordance with the Standards for the Administrative Collection of Claims (31 CFR part 901). See 2 C.F.R. § 200.346

If the recipient does not pay funds owed to DOJ, the debt may be referred to the U.S. Department of the Treasury for collection, as provided by Federal laws.

- Treasury may add fees, fines, and penalties to the original amount of the debt owed to the Federal agency.
- Failure to return any funds due to DOJ may result in a high-risk designation for future awards, withholding or freezing of funds, or award conditions on all other awards to the organization. It may also impact future financial integrity reviews, which in turn will affect future grant awards

COPS-AR-0985

## III. Postaward Requirements

### 3.19 AUDIT REQUIREMENTS

#### Audit Threshold

**For fiscal years beginning on or after December 26, 2014.** Non-Federal entities that expend $1,000,000 or more in Federal funds (from all sources including pass-through subawards) in the organization's fiscal year are required to arrange for a single organization-wide audit conducted in accordance with the provisions of 2 C.F.R. Subpart F.

**For fiscal years beginning on or after December 26, 2014, but before October 1, 2024**. Non-Federal entities that expend $750,000 or more in Federal funds (from all sources including pass-through subawards) in the organization's fiscal year are required to arrange for a single organization-wide audit conducted in accordance with the provisions of 2 C.F.R. Subpart F.

Non-Federal entities that expend less than the applicable audit threshold a year in Federal awards are exempt from Federal audit requirements for that year. However, non-Federal entities must keep records that are available for review or audit by appropriate officials including the Federal agency, pass-through entity, and U.S. Government Accountability Office (GAO).

#### Audit Objectives

Awards are subject to conditions of fiscal, program, and general administration to which the recipient expressly agrees upon acceptance of the award. See 2 C.F.R. § 200.514.

- The audit objective is to review the recipient's accountability of funds and required non-Federal contributions to determine whether the recipient has done all of the following:
  - ▶ Established an accounting system with adequate internal controls that provide full accountability for revenues, expenditures, assets, and liabilities.
  - ▶ Prepared financial statements which are presented fairly and in accordance with generally accepted accounting principles.
  - ▶ Submitted financial reports (including Federal Finance Reports (FFRs/SF-425s); cash reports; and claims for advances and reimbursements that contain accurate and reliable financial data and are presented in accordance with the terms of applicable agreements.
  - ▶ Expended Federal funds in accordance with the terms of award agreements and those provisions of Federal law or regulations that could have a material effect on the financial statements or on the awards tested.

#### Audit Reporting Requirements

Independent auditors should follow the requirements prescribed in 2 C.F.R. Subpart F or OMB Circular A-133, as applicable.

- The recipient's accounting records must support all amounts reported to the Department of Justice (DOJ).
- The recipient's financial activity reported to DOJ should reconcile to the amounts reported on the recipient's audited financial statements.
- If there are any differences between the recipient's audited financial statements and the financial activity reported to DOJ, the recipient must be able to explain the differences.

COPS-AR-0986

## III. Postaward Requirements

### 3.19 AUDIT REQUIREMENTS

- If the auditor becomes aware of illegal acts or other irregularities, he or she must give prompt notice to the recipient's management officials above the level of involvement.

- The recipient, in turn, must promptly notify the Federal cognizant agency and/or awarding agency of the illegal acts or irregularities and of proposed and actual actions, if any.

- All awarding agency personnel are responsible for informing the following individuals and groups of any known violations of the law within their respective area of jurisdiction:

  - OJP Office of the Chief Financial Officer

  - OJP Office of the General Counsel

  - U.S. Department of Justice Office of the Inspector General (OIG)

  - State and local law enforcement agencies or prosecuting authorities, as appropriate (see Chapter 3.20: Grant Fraud, Waste, and Abuse).

---

ⓘ **FINANCIAL MANAGEMENT TIP**

Costs for audits not required or not performed in accordance with 2 C.F.R. Part 200 Subpart F, are unallowable. If a non-Federal entity did not meet the applicable expenditure threshold in 2 C.F.R 200.501 for Federal funds during the non-Federal entity's fiscal year, but contracted with a certified public accountant to perform a Single or program specific audit, those costs may not be charged to the grant. Audit costs, if allowable by the award, should be allocated appropriately to the grant. See 2 C.F.R. § 200.405 and 2 C.F.R. § 200.425.

---

### Audit Due Dates and Submission Requirements

Audit reports must be submitted within the earlier of 30 calendar days after the auditee receives the auditor's, report(s), or nine months after the end of the audit period (whichever is earlier). See 2 C.F.R. § 200.512(a).

The General Service Administration (GSA) requires all grant award recipients to use the Internet Data Entry System (IDES) to submit Standard Form-Single Audit Component (SF-SAC) and the Single Audit Reporting package online.

- To review the submission requirements and create an online report ID, visit GSA's website at fac.gov .

---

ⓘ **FINANCIAL MANAGEMENT TIP**

Completed audit reports for State and local governments, institutions of higher education, and nonprofit institutions, should not be mailed to DOJ unless requested by an agency official.

---

COPS-AR-0987

## 3.19 AUDIT REQUIREMENTS

- Commercial organizations and individuals should mail one copy of all completed audit reports to:

  U.S. Department of Justice Office of Justice Programs
  Office of Audit, Assessment, and Management
  Audit and Review Division
  999 N. Capitol St., NE
  Washington, DC 20531

### Audit Report Confirmation Requests

When an independent audit is being conducted, on OJP/COPS Office awards, audit confirmation requests should be emailed to auditconfrmation@ojp.usdoj.gov.

Audit confirmation requests for OVW awards should be emailed to ovw.gfmd@usdoj.gov.

### Resolution of Audit Reports

For an audit to be effective, it is important for a recipient to have policies and procedures in place to ensure timely corrective action on audit recommendations.

Each recipient must designate officials responsible for the following tasks:

- Following up on audit recommendations.
- Maintaining a record of the corrective action taken on recommendations, including time schedules for completing corrective action, such as those stated in a Corrective Action Plan (CAP).
  - Typically, the CAP letter will include a description of the funding, specific steps to take to implement the recommendation, including written formal procedures; a timetable for performance of each corrective action; and a description of monitoring to be performed to ensure implementation of the CAP.
  - The recipient must generate a response to the CAP letter within the specified timeframe, usually within 30 days after receipt of the letter.
- Implementing audit recommendations.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> Audit reports for commercial organizations are forwarded to OJP. If the report contains findings, OJP will forward the report to the Office of the Inspector General (OIG). The OIG will process the report and transmit it to OJP for follow-up with the commercial organization. OJP will track the audit report until all findings are closed.

### Top Audit Findings (Fiscal Year 2021)

Below are the most common findings from audits of DOJ awards in Fiscal Year 2021, the most recent year for which this information is available. These findings are provided to make recipients aware of some areas to monitor closely in managing their award so that they are in compliance with all requirements and their audits go smoothly.

COPS-AR-0988

## III. Postaward Requirements

### 3.19 AUDIT REQUIREMENTS

| Top Audit Findings (Fiscal Year 2021) | |
|---|---|
| 1 | Procedures not documented or need improvement. |
| 2 | Financial and performance reports not accurately prepared. |
| 3 | Special condition not met by recipient. |
| 4 | Questioned costs – Unsupported costs charged to award. |
| 5 | Questioned costs – Unallowable costs charged to award. |
| 6 | Drawdowns not adequately supported / Excess cash-on-hand identified. |
| 7 | Matching funds not provided and/or not adequately supported. |
| 8 | Procurement not supported (e.g., RFP's, bids, etc.). |
| 9 | Suspension and Debarment – verification not performed or not properly documented. |
| 10 | Accounting system inadequate or not effectively utilized to account for grant funds. |

### Audit of Subrecipients

When subawards are made by the pass-through entity to another organization or organizations, the pass-through entity is responsible for making sure that subrecipients comply with the audit requirements set forth in this chapter. See 2 C.F.R. § 200.332(g).

- It is the pass-through entity responsibility to ensure that subrecipient audit reports are received and that corrective actions on all audit findings have been implemented.

- The pass-through entity must require the subrecipient to convey to the pass-through entity any known or suspected violations of law encountered during audits, including fraud, theft, embezzlement, forgery, or other serious irregularities.

- The pass-through entity must include all audit requirements in each subaward

---

☑ **ACTION ITEM**

If a subrecipient is not required to have an audit, as stipulated in 2 C.F.R Subpart F, the pass-through entity is still responsible for monitoring the subrecipient's activities to provide reasonable assurance that the subrecipient administers Federal awards in compliance with Federal requirements. See 2 C.F.R. § 200.331 through 200.333 – (Subrecipient Monitoring and Management).

---

### Technical Assistance

If DOJ is the assigned cognizant agency or has oversight responsibilities because it has provided the preponderance of direct Federal funding to an organization, then the DOJ Office of the Inspector General (OIG) is available to provide technical assistance in implementing the audit requirements of this chapter. Requests for technical assistance should be addressed to the OIG Chicago Regional Audit Office.

This assistance is available for areas such as:

- Review of the audit arrangements and/or negotiations

- Review of the audit program or guide to be used for conducting the audit

COPS-AR-0989

## III. Postaward Requirements

### 3.19 AUDIT REQUIREMENTS

- Onsite assistance in the performance of the audit, when deemed necessary, as a result of universal or complex problems that may arise.

### Full-Scope Auditing

In addition to arranging and providing for the organizational, financial, and compliance audits required by 2 C.F.R. Subpart F, direct recipients and subrecipients are encouraged to provide for additional audit coverage, as deemed appropriate.

- The additional audit coverage to be provided should be determined based on the circumstances surrounding the particular organization, function, program, or activity to be audited; management needs; and available audit capability.

- Direct recipients and subrecipients can determine the need for additional audit coverage by considering answers to the following questions about the organization that may need the coverage:
  - ▶ Are resources managed and used economically and efficiently?
  - ▶ Are desired results and objectives achieved effectively?
  - ▶ Are the accounting system and system of internal controls acceptable prior to the receipt of awarding agency funds? At a minimum, internal controls should include documented written procedures of the direct recipient or subrecipient.
  - ▶ Are the systems and controls adequate to detect fraud, waste, and abuse?

### Commercial (For-Profit) Organizations

These organizations must have financial and compliance audits conducted by qualified individuals who are organizationally, personally, and externally independent from those who authorize the expenditure of Federal funds.

- This audit must be performed in accordance with the Government Auditing Standards ( July 2018 Revision) [PDF - 867 Kb], as found on the GAO website.

- The purpose of this audit is to ascertain the effectiveness of the financial management systems and internal procedures that have been established to meet the terms and conditions of the award.

- Usually, these audits must be conducted annually. They must be conducted no less frequently than every 2 years. The dollar threshold that is established for audit reports in 2 C.F.R. § 200.501 applies, as amended

### Failure to Comply

Failure to have audits performed as required will result in the awarding agency taking remedial action, as allowed under law. This may include, but not be limited to, the withholding of new discretionary awards and/or withholding of funds, or a change in the method of payment on active awards.

COPS-AR-0990

## III. Postaward Requirements

### 3.19 AUDIT REQUIREMENTS

### Office of Inspector General Regional Offices

As mentioned previously, if DOJ is the assigned cognizant agency or has oversight responsibilities because it has provided the preponderance of direct Federal funding to an organization, then the organization is eligible to receive technical assistance from the DOJ OIG. Direct the request to the Chicago regional audit office of the DOJ OIG in the table in this section.

| Regional Audit Office | Geographical Area |
|---|---|
| **Atlanta Region (40)**<br>Ferris B. Polk, Regional Audit Manager<br>75 Spring Street, Suite 1130<br>Atlanta, GA 30303<br>Phone: 404-331-5928<br>Fax: 404-331-5046 | Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, North Carolina, Puerto Rico, South Carolina, Tennessee, and Virgin Islands |
| **Chicago Region (50)**<br>Carol S. Taraszka, Regional Audit Manager<br>500 West Madison, Suite 1121<br>Chicago, IL 60661<br>Phone: 312-353-1203<br>Fax: 312-886-0513 | Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Missouri, Ohio, and Wisconsin |
| **Denver Region (60)**<br>David M. Sheeren, Regional Audit Manager<br>1120 Lincoln Street, Suite 1500<br>Denver, CO 80203<br>Phone: 303-864-2000<br>Fax: 303-864-2004 | Arizona, Colorado, Idaho, Kansas, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota, Texas, Utah, and Wyoming |
| **Philadelphia Region (70)**<br>Thomas O. Puerzer, Regional Audit Manager 701 Market Street, Suite 201<br>Philadelphia, PA 19106<br>Phone: 215-580-2111<br>Fax: 215-597-1348 | Connecticut, Delaware, Maine, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island, and Vermont |
| **San Francisco Region (90)**<br>David J. Gaschke, Regional Audit Manager<br>90 7th Street, Suite 3-100<br>San Francisco, CA 94103<br>Phone: 650-876-9220<br>Fax: 650-876-0902 | Alaska, American Samoa, California, Guam, Hawaii, Nevada, Oregon, Trust Territory of the Commonwealth of Northern Mariana Islands, and Washington |
| **Washington Region (30)**<br>John J. Manning, Regional Audit Manager<br>1300 North 17th Street, Suite 3400<br>Arlington, VA 22209<br>Phone: 202-616-4688<br>Fax: 202-616-4581 | District of Columbia, Maryland, Virginia, and West Virginia |

COPS-AR-0991

## 3.20 GRANT FRAUD, WASTE, AND ABUSE

### Introduction

The U.S. Department of Justice (DOJ) awards Federal funds to recipients for specific purposes and requires them to use the funds within established guidelines. Unfortunately, some recipients and subrecipients have misused award funds in multiple ways ranging from award mismanagement to intentional criminal fraud. With this chapter, DOJ aims to help recipients avoid the misuse of award funds and the resulting penalties.

### Detection of Grant Fraud

Non-Federal entities are encouraged to:

- Be aware of common grant fraud schemes. This knowledge is the best way to reduce or even eliminate the risk of fraud.
- Adopt effective fraud risk-management efforts within the organization, and encourage subrecipients to do the same in order to prevent and detect fraud as early as possible.

> ### (i) FINANCIAL MANAGEMENT TIP
>
> Detecting grant fraud schemes early allows every chance of success with the award and ensures taxpayer dollars are used as efficiently and effectively as possible.

### Reporting Irregularities

- Recipients and their subrecipients are responsible for promptly notifying the awarding agency and the Federal cognizant audit agency of any illegal acts, irregularities, and/or proposed or actual actions (see 2 C.F.R. § 200.112 and 200.113).
- Illegal acts and irregularities include conflicts of interest, falsification of records or reports, and misappropriation of funds or other assets.
- Please notify the appropriate DOJ awarding agency of any irregularities that occur.

### Penalties for Grand Fraud

If found guilty of grant fraud, recipients may be subject to various remedies available under Federal law, including any or all of the following:

- A ban from receiving future Federal funding;
- Administrative recoveries of funds;
- Civil lawsuits and criminal prosecution; or
- A combination of all or some of these remedies.

COPS-AR-0992

# III. Postaward Requirements

## 3.20 GRANT FRAUD, WASTE, AND ABUSE

### Fraud Indicators

The indicators or markers of fraud, waste, and/or abuse of award funds are varied and can be due to a range of causes. Follow-up on all such concerns is important.



Mistakes      Gross Negligence      Criminal Fraud

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> As the award is being managed, it may be necessary to investigate an area or activity for possible fraud. Look for clues or hints of possible fraud in the following three areas: employee behavior; employee communications; and employee performance.

### Common Grant Fraud Schemes

Most misuse of funds falls into one or more of three general categories:

- Conflicts of Interest
- Misapplication of Award Funds
- Theft/Embezzlement

Each of these categories will be examined in the sections that follow.

### Conflicts of Interest

Recipients and subrecipients are required to use Federal funds in the best interest of the award program. Decisions related to these funds must be free of undisclosed personal or organizational conflicts of interest, both in fact and in appearance. Recipients and subrecipients are required to disclose in writing any potential conflict of interest to the DOJ agency or pass-through entity, as applicable. See 2 C.F.R. § 200.112

- **Conflict in Fact.** In the use of award funds (direct or indirect), a recipient or subrecipient should not participate in any decisions, approval, disapproval, recommendations, investigation decisions, or any other proceeding concerning any of the following people or groups:
  - ▸ An immediate family member;
  - ▸ A partner;
  - ▸ An organization in which they are serving as an officer, director, trustee, partner, or employee;
  - ▸ Any person or organization with whom they are negotiating or who has an arrangement concerning prospective employment, has a financial interest, or for other reasons can have less than an unbiased transaction with the recipient or subrecipient.

COPS-AR-0993

## 3.20 GRANT FRAUD, WASTE, AND ABUSE

- **Conflict in Appearance.** In the use of award funds, recipients and subrecipients should avoid any action which might result in, or create the appearance of:
  - ▶ Using an official position for private gain;
  - ▶ Giving special treatment to any person;
  - ▶ Losing complete independence or objectivity;
  - ▶ Making an official decision outside official channels; or
  - ▶ Affecting negatively the confidence of the public in the integrity of the Government or the program

Typical conflict-of-interest issues may include:

- Less-than-arm's-length transactions—the act of purchasing goods or services or hiring an individual from a related party such as a family member or a business associate of the recipient.
- Not using fair and transparent processes for subrecipient decisions and vendor selection. These processes must be free of undue influence, and fair and transparent. Most procurement requires full and open competition.
- Consultants can play an important role in award programs; however, recipients and subrecipients must ensure that their work conforms to all applicable regulations governing the selection process, reasonable pay rates, and specific verifiable work product.

Case Example #1

| Background | Possible Fraud Indicator | Scheme Identified | Result |
|---|---|---|---|
| An individual was assigned to purchase equipment using a Federal award. | Circumvention of the established procurement process; vendor complaints. | Individual stole over $100,000 by directing contracts to bogus companies that he had established. | 240-month prison sentence |

### Failure to Properly Support the Use of Award Funds

A Federal award agreement creates a legal and binding obligation. Recipients and subrecipients are obligated to:

- Use the award as outlined in the agreement.
- Act with integrity when applying for and reporting the actual use of funds.
- Properly track the use of funds and maintain adequate supporting documentation.

Typical issues involving failure to properly support the use of award funds include:

- Deliberate redirection of the use of funds in a manner different from the purpose outlined in the award agreement.
- Failure to adequately account for, track, or support transactions such as personnel costs, contracts, indirect cost rates, matching funds, program income, or other sources of revenue.

COPS-AR-0994

## III. Postaward Requirements

### 3.20 GRANT FRAUD, WASTE, AND ABUSE

---

**ⓘ FINANCIAL MANAGEMENT TIP**

Applicants and recipients must represent their eligibility for funding accurately and cannot provide false or misleading information in their application, subsequent narrative performance reports, or federal financial reports.

---

**Case Example #2**

| Background | Possible Fraud Indicator | Scheme Identified | Result |
|---|---|---|---|
| A recipient received a Federal award for specific purposes. | An inability to provide sufficient and verifiable supporting documentation concerning the actual use of those funds. | | Recipient paid the Federal government over $300,000 to settle civil fraud allegations. |

### Theft/Embezzlement

Teft/Embezzlement is a potential risk in almost all organizations—including those that receive Federal awards. Non- federal entities are encouraged to keep the following in mind:

- People who embezzle funds can be extremely creative, while often appearing very trustworthy. These abilities are precisely why they can do so much damage to an organization and remain undetected for extended periods of time.

- Poor or no internal controls provide an opening for theft. A lack of proper separation of duties is one of the most common weaknesses.

---

**☑ ACTION ITEM**

Checks routinely written to employees for the "reimbursement" of expenses, and the routine use of ATM/debit/gift/credit cards for award costs, must be carefully controlled and require strong oversight.

---

Case Example #3

| Background | Possible Fraud Indicator | Scheme Identified | Result |
|---|---|---|---|
| A nonprofit received $2.7 million in Federal award funds to assist underprivileged children. | Unsuccessful program, lack of internal controls, unexplained income. | Funds had been diverted to pay for a wedding reception, building construction, plasma TV, and personal credit card bills, with an estimated total loss of $450,000. | 36- and 66-month prison sentences and full restitution. |

COPS-AR-0995

## III. Postaward Requirements

### 3.20 GRANT FRAUD, WASTE, AND ABUSE

#### Ways to Reduce the Risk of Fraud

There are several things that can be done to reduce or even eliminate the risk of fraudulent use of the Federal award:

- Examine operations and internal controls to identify fraud vulnerabilities.

- Implement specific fraud prevention strategies including educating others about the risks. The more people are aware of the issues, the more they can help prevent problems or detect them as early as possible.

- Maintain a well-designed and tested system of internal controls.

- Ensure all financial or other certifications and performance reports are adequately supported with appropriate documentation and evidence.

- Identify any potential conflict-of-interest issues and disclose them to the awarding agency for specific guidance and advice.

- Follow a fair and transparent procurement process. Ensure that the rate of pay for professional services is reasonable and justifiable, and that the work product is well-defined and documented.

Contact the DOJ Office of the Inspector General for more information.

---

**ⓘ FINANCIAL MANAGEMENT TIP**

Information on designing and testing internal controls may be found in the following references:

- 2 CFR Part 200 Appendix XI, Compliance Supplement, Part 6, Internal Control (PDF) (updated annually).

- OMB Circular A-123, Management's Responsibility for Internal Control (main portion). Please also see multiple appendices to this circular. Although this is written for Federal Agencies, its guidance on internal control systems and testing those systems may be a useful reference resource.

- Committee of Sponsoring Organizations of the Treadway Commission (COSO), (https://www.coso.org/guidance-on-ic). This site has guidance available on internal control framework and testing and has been designed for the private sector, but may be a useful reference resource.

---

COPS-AR-0996

# III. Postaward Requirements

## 3.21 OJP'S PAYMENT PROGRAMS

### Introduction

The Office of Justice Programs (OJP) has several payment or reimbursement programs that are available to eligible applicants: the Bulletproof Vest Partnership (BVP), the State Criminal Alien Assistance Program (SCAAP), the Northern Border Prosecution Initiative (NBPI), and the Southwest Border Prosecution Initiative (SWBPI). This section briefly introduces each of these programs; please visit the related websites for recently updated information and each program's specific guidelines.

### Bulletproof Vest Partnership

The BVP was created for the sole purpose of purchasing bullet-resistant body armor for sworn law enforcement officers. The program is administered by OJP's Bureau of Justice Assistance (BJA). It was enacted in 1998 by the Bulletproof Vest Partnership Grant Act (Public Law 105-181).

#### Eligibility and Guidelines

- Eligible jurisdictions that employ law enforcement officers may participate in this program. A jurisdiction is a State, town, city, village, borough, parish, or Indian tribe.

- Trough the BVP program, recipients are reimbursed for up to 50 percent of the cost of each unit of eligible body armor purchased for law enforcement officers.

- Under current legislation, jurisdictions with fewer than 100,000 residents receive priority funding. Any remaining funds are distributed on a pro rata basis to jurisdictions with 100,000 residents or more.

- In order to qualify for this reimbursement, body armor must comply with the National Institute of Justice (NIJ) standards as of the date the body armor was ordered. Information pertaining to the current NIJ standards is available online at the NIJ Definition of Eligible Body Armor web page.

#### Application and Funding Process

Obtain current information and manage the entire BVP program process from application through payment using the online BVP system located at https://www.ojp.gov/program/bulletproof-vest-partnership/overview. To participate in the BVP program, State, local, and tribal jurisdictions must follow four steps:

- Register as a jurisdiction
  - Jurisdictions that have never participated in the BVP program can register at any time throughout the year by contacting BVP Customer Support via phone at 1-877-758-3787 or email at vests@usdoj.gov.
  - If an eligible jurisdiction has more than one law enforcement agency (LEA), each LEA should register in the BVP system, and the application will be submitted by the jurisdiction on behalf of all of its LEAs.
  - Once registered with the BVP program, jurisdictions are responsible for regularly updating their own critical information.
- Submit application
  - When submitting an application, jurisdictions must make sure to identify the total number, type, and projected cost of vests for all eligible, participating law enforcement officers.
  - Applications may be submitted only during the annual 6-week open application period.
  - Funding decisions are made within 3 months after the application period closes.

COPS-AR-0997

# III. Postaward Requirements

## 3.21 OJP'S PAYMENT PROGRAMS

- ▸ Applicants are notified via email regarding approved funding levels.
- ▸ BVP funds are dispersed when the LEA receives the vests and the jurisdiction submits a request for payment through the BVP system.

- Purchase vests
  - ▸ BVP funds may only be used to purchase vests that meet the current NIJ bullet-resistant body armor standards.
  - ▸ A list of vest models that meet the current NIJ standards is available on the BVP website.

- Submit receipt information
  - ▸ Once vests are received, jurisdictions can submit a request for payment through the BVP system.
  - ▸ Recipients have up to 2 years from the date of the award to submit payment requests.
  - ▸ Once the payment request is submitted, BJA reviews the request for accuracy and processes payments on a monthly schedule.

| Key Points about the BVP Program | |
|---|---|
| 1 | All purchased body armor must comply with NIJ body armor standards, which are available at the NIJ Definition of Eligible Body Armor web page. |
| 2 | BVP funds can be used to purchase only one vest per officer during the jurisdiction's stated replacement cycle. |
| 3 | BVP funds may be used toward the purchase of tactical-level vests, but if a tactical-level vest is purchased for an officer, it must be the officer's primary vest; a regular-duty vest cannot be purchased for the same officer, during the same replacement cycle, using BVP funds. |
| 4 | Beginning in fiscal year 2009, during the payment request process, jurisdictions may request, based on financial hardship, a waiver of the 50 percent match requirement. Jurisdictions that request the waiver must cite the nature of the financial hardship and maintain documentation pertaining to the hardship. |
| 5 | BJA strongly recommends that every LEA implement a mandatory body armor wear policy, if one is not currently in place. A mandatory wear concepts and issues paper and model policy are avail-able by contacting the International Association of Chiefs of Police at policycenter@theiacp.org. |
| 6 | BJA recognizes that LEA operational and equipment needs may change. Consequently, participating agencies are not required to purchase the exact number, type, or model of vests contained in the approved application. Vests may be purchased at any threat level, make, or model and from any distributor or manufacturer, as long as the vests have been tested and found to comply with applicable NIJ ballistic or stab standards. |

ⓘ **FINANCIAL MANAGEMENT TIP**

Justice Assistance Grant funds also may be used to purchase vests for an agency, but they may not be used to pay for that portion of the bulletproof vest (50 percent) that is not covered by BVP funds.

COPS-AR-0998

# III. Postaward Requirements

### 3.21 OJP'S PAYMENT PROGRAMS

## State Criminal Alien Assistance Program

Trough SCAAP, the U.S. Government provides payments to States and localities that incurred correctional officer salary costs for incarcerating undocumented criminal aliens who had at least one felony or two misdemeanor convictions for violations of State or local law, and were incarcerated for at least 4 consecutive days during a reporting period. BJA administers SCAAP in cooperation with the U.S. Department of Homeland Security (DHS).

### Eligibility and Guidelines

Beginning with Federal fiscal year 2007, SCAAP awards must be used for correctional purposes only. To be considered for SCAAP funding, States and localities must prove that inmate records, convictions, and length of custody to meet the following eligibility requirements:

- **Inmate records**. For the purposes of SCAAP, an inmate is defined as a person who did one of the following things or was in one of the following situations:
  - ▶ Entered the United States without inspection or at any time or place other than as designated by the Attorney General.
  - ▶ Was in deportation or exclusion proceedings at the time he or she was taken into custody.
  - ▶ Is a nonimmigrant who failed to maintain his or her nonimmigrant status at the time he or she was taken into custody.
  - ▶ Is part of a subset of Mariel Cubans who otherwise meet these requirements.

- **Convictions and custody information.** To apply for SCAAP funds, an entity must be a State or unit of government with authority over correctional facilities that incarcerate or detain undocumented criminal aliens for terms of 4 or more consecutive days. Applicants may submit records of eligible inmates in their custody during the reporting period who meet all of the following criteria:
  - ▶ Were born outside the United States or one of its Territories and have no reported or documented claim to
  - ▶ U.S. citizenship;
  - ▶ Were in the applicant's custody for 4 or more consecutive days during the reporting period;
  - ▶ Were convicted of a felony or second misdemeanor for violations of State or local law; and
  - ▶ Were identified and reported using due diligence.
- DHS makes the final determination on whether the documentation submitted supports the status of the inmate as an undocumented alien.

### Application and Funding Process

- The application and payment process for SCAAP is managed using the JustGrants.
- The SCAAP system is available through the main JustGrants log-in page.
- SCAAP payments must go directly to eligible States and localities.
- Authorized jurisdiction employees for SCAAP purposes must be listed as either the Authorized Representative or Alternate Contact in the JustGrants  user profile

COPS-AR-0999

# III. Postaward Requirements

## 3.21 OJP'S PAYMENT PROGRAMS

- The chief executive officer (CEO) of an eligible jurisdiction may apply directly or delegate authority to another jurisdiction official. The CEO is generally considered the highest ranking elected or appointed official of a unit of government.

> ⓘ **FINANCIAL MANAGEMENT TIP**
>
> A SCAAP application without the CEO information included will be significantly delayed.

| | Key Points about the SCAAP |
|---|---|
| 1 | Each SCAAP reporting period is based on the previous year's cases and salary. For example, the reporting period for fiscal year 2010 was July 1, 2008 through June 30, 2009. |
| 2 | Correctional officer salaries reported in the SCAAP application may only include base salary, overtime, and shift differential pay. Fringe benefits should not be included in the total salary. |
| 3 | The "total all inmate days" is the cumulative number of incarceration or detention days attributable to all inmates housed in the jurisdiction's facilities during the reporting period. It includes all inmates, regardless of their status, citizenship, disposition, or length of stay, including inmates held at contract facilities. A jurisdiction can use the sum of all nightly facility head counts for the 365 days in the reporting period. |
| 4 | All SCAAP payments must go to the jurisdiction's general fund. Please use the jurisdiction's Employer Identification Number (tax identification), jurisdiction name, and vendor number when applying for SCAAP funds. For example, police department and sheriff's offices may not apply directly for SCAAP funding. |
| 5 | See the 2015 SCAAP Program Guidelines located on the BJA website for more information. |

### Northern Border Prosecution Initiative and Southwest Border Prosecution Initiative

The NBPI and SWBPI programs were created to reimburse eligible State and local jurisdictions for prosecution and pretrial detention costs for cases that the Federal Government declined and referred to these jurisdictions. While applicant jurisdictions may use funds from NBPI/SWBPI Federal payments for any purpose not otherwise prohibited by Federal law, the programs encourage the jurisdictions to use the funds to support and enhance prosecutorial and detention services.

Note: Beginning in Fiscal Year 2013, BJA will only reimburse prosecution costs and will no longer reimburse detention costs under the Northern Border Prosecution Initiative and the Southwest Border Prosecution Initiative.

### Eligibility and Guidelines

- A federally initiated and referred criminal case is eligible if it was prosecuted by a State or county prosecutor and disposed of during one of the eligibility periods.

- An applicant must be the chief executive or an authorized designee of any eligible jurisdiction.

- Only employees, such as a sheriff or county prosecutor, of the applicant jurisdiction can serve as an authorized designee for SWBPI or NBPI applications.

## III. Postaward Requirements

### 3.21 OJP'S PAYMENT PROGRAMS

- The following border State and county governments are eligible to receive funding under the border prosecution initiatives:
  - ▸ Northern border: Alaska, Idaho, Maine, Michigan, Minnesota, Montana, New Hampshire, New York, North Dakota, Ohio, Pennsylvania, Vermont, Washington, and Wisconsin
  - ▸ Southwest Border: Arizona, California, New Mexico, and Texas

- In addition to being an approved border State, submitted cases must meet the following criteria to be considered for NBPI and SWBPI funding:
  - ▸ The criminal case was federally initiated.
  - ▸ The case was declined or referred to a county or State jurisdiction after October 1, 2005.
  - ▸ The case was prosecuted by a State or county prosecutor.
  - ▸ The case was disposed of during a designated reporting period.

- Each defendant listed represents a separate case. If one case has multiple defendants, each defendant should be listed as a separate case.
- If one defendant was charged in multiple cases and the cases were investigated or prosecuted during concurrent periods of time, all cases are claimed as one case.

#### Application and Funding Process

- The annual application-through-payment processes for the NBPI and SWBPI programs are managed via online systems.
- The NBPI program is available at https://www.ojp.gov/nbpi, and guidelines are available in the document Northern Border Prosecution Initiative 2013 Guidelines (PDF).
- The SWBPI program can be found at https://www.ojp.gov/swbpi, and guidelines are available in the document Southwest Border Prosecution Initiative 2013 Guidelines (PDF)

| | |
|---|---|
| 1 | Each NBPI/SWBPI reporting period is based on the previous year's cases and salary. For example, the reporting period for fiscal year 2010 was October 1, 2008 through September 30, 2009. |
| 2 | Court and arrest records for each case submitted for NBPI/SWBPI funding may be requested by BJA for pre- and post-award review. Any cases that do not have the corresponding court and arrest records will not be considered for funding. |
| 3 | Documentation must be maintained to support that NBPI/SWBPI funds, when combined with other Federal prosecution funds, do not exceed 100 percent of the prosecution costs for the cases. |
| 4 | Time spent by prosecutors on judicial appeals and incarceration time for sentenced offenders are not allowable program costs and should not be reported on the application. |

COPS-AR-1001

## III. Postaward Requirements

### 3.22 FINANCIAL MANAGEMENT TRAINING REQUIREMENTS

#### Introduction

Both the Grant Award Administrator and the Financial Manager for OJP awards must complete the required DOJ Grants Financial Management Trainings within 120 calendar days after the date of the recipient's acceptance of the award. New recipients, recipients with a "high" pre-award risk, and DOJ high-risk recipients will receive a withholding of funds special condition until the Grant Award Administrator and Financial Manager have completed the training.

OVW and COPS Office recipients are not required, but highly encouraged, to complete the DOJ Grants Financial Management Online Training. In some cases, a high-risk recipient may be required to complete the online training.

#### Requirement for Compliance

Successful completion of the required DOJ Grants Financial Management Trainings every three (3) years is required.

In the event that either the Grant Award Administrator or the Financial Manager for an award changes during the period of performance, the new Grant Award Administrator or Financial Manager must successfully complete a financial management training by 120 calendar days after the date the Entity Administrator enters updated Grant Award Administrator or Financial Manager information in JustGrants.

Non-compliance with the training requirements will result in placing a withholding of funds on all applicable awards.

#### Expiration of Training Certificates

Grant Award Administrator and the Financial Manager for the award will be required to re-certify their compliance with the financial management training requirement by successfully completing required Financial Management Training every (3) three years.

#### List of Financial Management Trainings

Award recipients can register for financial management trainings at the following website: https://www.ojp.gov/training/financial-management-training-webinars.

# IV. Organization Structure

**4.1 ORGANIZATION CHARTS**

**United States Department of Justice Organization Chart**

COPS-AR-1003

# V. Appendices

## 5.1 ACRONYMS

### A Note for Readers

To reduce clutter and ease reading, DOJ has used acronyms instead of the full phrasings for organizations, positions, and other items referenced more than once in the Guide. For the reader's convenience, the list of acronyms is organized alphabetically.

| A | |
|---|---|
| ACH | Automated Clearing House |
| ADP | Automatic Data Processing |
| ASAP | Automated Standard Application for Payments |

| B | |
|---|---|
| BJA | Bureau of Justice Assistance |
| BPIs | Border Prosecution Initiatives |
| BVP | Bulletproof Vest Partnership |

| C | |
|---|---|
| CAP | Corrective Action Plan |
| CEO | Chief Executive Officer |
| CFDA | Catalog of Federal Domestic Assistance |
| CFR | Code of Federal Regulations |
| CJICS | Criminal Justice Information and Communication Systems |
| COPS | Office of Community Oriented Policing Services |
| CSB | Customer Service Branch (of the Office of the Chief Financial Officer) |

| D | |
|---|---|
| DHS | U.S. Department of Homeland Security |
| DOJ | U.S. Department of Justice |
| DUNS | Data Universal Numbering System |

| E | |
|---|---|
| EFT | Electronic funds transfer |
| EIN | Employer Identification Number |

| F | |
|---|---|
| FAC | Federal Audit Clearinghouse |
| FAQs | Frequently Asked Questions |
| FAR | Federal Acquisition Regulation |
| FBI | Federal Bureau of Investigation |
| FFATA | Federal Funding Accountability and Transparency Act |
| FFR | Federal Financial Report (SF-425) |
| FSRS | FFATA Subaward Reporting System |
| FTR | Federal Travel Regulation |
| FY | Fiscal Year |

| G | |
|---|---|
| GAM | Grant Award Modification |
| GAO | U.S. Government Accountability Office |
| GSA | U.S. General Services Administration |

| H | |
|---|---|
| HHS | U.S. Department of Health and Human Services |

| I | |
|---|---|
| ICAC | Internet Crimes Against Children |
| IDES | Internet Data Entry System |
| IFB | Invitation for Bid |
| IRS | Internal Revenue Service |
| IT | Information Technology |

| J | |
|---|---|
| JABG | Juvenile Accountability Block Grant |
| JAG | Justice Assistance Grant |
| JJA | Juvenile Justice Act |

| L | |
|---|---|
| LEA | Law Enforcement Agency |

| M | |
|---|---|
| M&IE | Meals and Incidental Expenses |
| MPIN | Marketing Partner Identification Number |
| MTDC | Modified Total Direct Cost |

| N | |
|---|---|
| NBPI | Northern Border Prosecution Initiative |
| NEPA | National Environmental Policy Act |
| NIJ | National Institute of Justice |

| O | |
|---|---|
| OCFO | Office of the Chief Financial Officer |
| OCR | Office for Civil Rights (of the Office of Justice Programs) |
| OIG | Office of the Inspector General |
| OJJDP | Office of Juvenile Justice and Delinquency Prevention |
| OJP | Office of Justice Programs |
| OMB | Office of Management and Budget |
| OVC | Office for Victims of Crime |
| OVW | Office on Violence Against Women |

COPS-AR-1004

# V. Appendices

**5.1 ACRONYMS**

| P | |
|---|---|
| P/E | Purchase of Evidence |
| P/I | Purchase of Specific Information |
| PMT | Performance Measurement Tool |
| POV | Privately owned vehicle |
| P/S | Purchase of Services |
| **R** | |
| RFP | Request for Proposal |
| RISS | Regional Information Sharing Systems |
| **S** | |
| SAM | System for Award Management |
| SCAAP | State Criminal Alien Assistance Program |
| SES | Senior Executive Service |
| SF-424 | Standard Form 424 |
| SF-425 | Standard Form 425 (FFR) |
| SF-SAC | Standard Form-Single Audit Component |
| SOW | Statement of Work |
| STOP | Services Training Officers Prosecutors (Violence Against Women OVW formula grant program) |
| SWBPI | Southwest Border Prosecution Initiative |
| **T** | |
| Treasury | U.S. Department of the Treasury |
| **U** | |
| U.S.C. | United States Code |
| **V** | |
| VAWA | Violence Against Women Act |
| VOCA | Victims of Crime Act |
| **X** | |
| XML | Extensible Markup Language |

COPS-AR-1005

# V. Appendices

## 5.2 GLOSSARY OF TERMS

### A

**ACCRUAL BASIS** is the method of recording revenues in the period in which they are earned, regardless of when cash is received, and reporting expenses in the period when the charges are incurred, regardless of when payment is made.

**ADDENDUM RECORD** is what the bank receives that explains what a payment is for and gives the detail necessary for accurate posting into the correct account.

**ADMINISTRATIVE REQUIREMENTS** are set forth at 2C.F.R. Part 200.

**AMUSEMENT/SOCIAL EVENT** is an informal gathering which is not mandatory for all participants to attain the necessary information. An indicator of a social/amusement event is a cash bar.

**AUTOMATED STANDARD APPLICATION FOR PAYMENTS (ASAP)** is a system that allows entities receiving federal funds to draw funding securely from pre-authorized accounts established by the agency issuing the payment

**AWARDS** typically means grants or cooperative agreements for financial assistance that a non-Federal entity receives directly from a Federal agency, or indirectly via a pass-through entity.

### B

**BLANKET REQUEST** a series of the same or similar pre-arranged events containing multiple delivery dates scheduled to take place within the same fiscal year.

**BREAK FOODS** consist of cookies, sodas, and fruits or other snack items, and may be served at a training program, a meeting, or a conference.

**BREAKS** are short pauses in an ongoing informational program at trainings, meetings, conferences, or retreats. Typically, an all-day event may include one break during a morning session and one break during an afternoon session.

**BUDGET PERIOD** means the time interval from the start date of a funded portion of an award to the end date of that funded portion during which recipients and subrecipients are authorized to incur financial obligations of the funds awarded, including any funds carried forward or other revisions pursuant to § 200.308.

### C

**CASH BASIS** is the method of reporting revenues and expenses when cash is actually received or paid out.

**CLOSEOUT** is the process by which the Federal agency or pass-through entity determines that all applicable administrative actions and all required work of the Federal award have been  completed and take actions as described in § 200.344.

**COGNIZANT AGENCY FOR AUDITS** means

the Federal agency designated to carry out the responsibilities described in § 200.513(a). The cognizant agency for audit is not necessarily the same as the cognizant agency for indirect costs. A list of Federal agency Single Audit contacts can be found on the Federal Audit Clearinghouse (FAC) website.

**COGNIZANT AGENCY FOR INDIRECT COSTS** means the Federal agency responsible for reviewing, negotiating, and approving cost allocation plans or indirect cost proposals developed under this part on behalf of all Federal agencies. The cognizant agency for indirect cost is not necessarily the same as the cognizant agency for audit. For assignments of cognizant agencies refer to the appropriate Appendices.

**CONFERENCE** includes meetings, retreats, seminars, symposia, or training activities, it means an event whose primary purpose is to disseminate technical information beyond the recipient or subrecipient. See 41 CF.R § 300-3.1; 2 CF.R § 200.432.

**CONSULTANT** is an individual who provides professional advice or services.

**CONTINENTAL BREAKFAST** means a light breakfast that may include a selection of coffees, teas, juices, fruits, and assorted pastries, and is allowable provided several hours of substantive material directly follows the continental breakfast. Grant recipients are reminded that the least expensive of the available selections should be chosen.

**CONTRACT** means a legal instrument by which a recipient or subrecipient conducts procurement transactions under a Federal award. The term does not include a legal instrument, even if recipient or subrecipient considers it a contract, when the substance of the transaction meets the definition of a Federal award or subaward. See 2 CF.R § 200.1.

**COOPERATIVE AGREEMENTS** means a legal instrument of financial assistance between a Federal agency and a recipient or a pass-through entity and a subrecipient that, consistent with 31 U.S.C.6302-6305.

**COST SHARING** means the portion of project costs not paid by Federal funds or contributions (unless authorized by Federal statute). This term includes matching, which refers to required levels of cost share that must be provided.

September 2025

COPS-AR-1006

# V. Appendices

## D

**DISCRETIONARY AWARDS** is an award in which the Federal agency, in keeping with specific statutory authority that enables the agency to exercise judgment ("discretion"), selects the recipient or the amount of Federal funding awarded through a competitive process or based on merit of proposals. A discretionary award may be selected on a noncompetitive basis, as appropriate.

**DOMESTIC TRAVEL** includes travel within and between the United States and its territories and possessions. However, for organizations located in foreign countries, domestic travel means travel inside of the organization's country.

**DRAW OR DRAWING DOWN** is the term used to describe the process when a recipient requests and receives money under an award agreement.

## E

**EQUIPMENT** is tangible personal property (including information technology systems) having a useful life of more than 1 year and a per-unit acquisition cost that equals or exceeds the lesser of the capitalization level established by the recipient or subrecipient for financial statement purposes, or $10,000.

**EXPENDITURE** is a charge made by a recipient or subrecipient to a project or program for which a Federal award is received

## F

**FEDERAL AGENCY** generally refers to the agency that provides a Federal award directly to a recipient unless the context indicates otherwise.

**FEDERAL CONTRACTOR** is a person or entity that contracts with the Federal Government to provide supplies, services, or experimental, developmental, or research work. Entities may include commercial organizations, educational institutions, construction and architect-engineer companies, State and local governments, and nonprofit organizations. See Title 48 C.F.R. § 31.103-105, § 31.107-108.

**FEDERAL EMPLOYEES** are those persons employed in or under an agency of the United States Federal Government or the District of Columbia. See 5 U.S.C. 4101 (1994) [PDF – 35.9 Kb].

**FOOD AND/OR BEVERAGES** retain their common meanings. Food or beverages are considered in the context of formal meals and in the context of refreshments served at short, intermittent breaks during an activity. Beverages do not include alcoholic drinks.

**FOREIGN TRAVEL** includes any travel outside of the United States and its territories and possessions. For an organization located in a foreign country, this means travel outside that country.

**FORMAL AGENDA** provides a list of all activities that shall occur during the event, using an hour-by-hour timeline. It must specifically include the times during the event when food and beverages will be provided.

**FORMULA AWARDS** are awarded to the States to provide assistance to State and local units of government for programs in accordance with legislative requirements.

## G

**GRANT AGREEMENT or grant** is a legal instrument of financial assistance between a Federal agency or pass through entity and a recipient or subrecipient to carry out a public purpose. See 2 C.F.R. § 200.1.

## H

**HIGH RISK** is a determination made by the agency of a recipient's ability to administer Federal project funds based on issues such as a history of unsatisfactory performance; financial instability; inadequate financial management system; non conformance to terms and conditions of previous awards; or is otherwise not responsible. Additional reporting or other requirements may be placed on high- risk recipients.

## I

**INTEREST FUNDS** are fixed- or petty-cash funds in the form of currency or coin that have been advanced as funds held outside of the usual secure account. Agencies typically use interest funds to reimburse employees for expenses, to make small purchases, to make emergency beneficiary payments, and to pay informants, among other uses.

**INCIDENTAL** means (in the conference context) relating to a formal event where full participation by participants mandates the provision of food and beverages.

**INDIRECT COST** means those costs incurred for a common or joint purpose benefitting more than one cost objective, and not readily assignable to the cost objectives specifically benefitted, without effort disproportionate to the results achieved.

**INTERNAL CONTROL** means processes, implemented by a recipient or subrecipient, designed to provide reasonable assurance regarding the achievement of objectives in the following categories:

(a)    Effectiveness and efficiency of operations;

(b)    Reliability of reporting for internal and external use; and

(c)    Compliance with applicable laws and regulations. See 2 C.F.R. § 200.61.

## J

**JUSTICE GRANTS SYSTEM** (JustGrants) represents a significant IT modernization effort to develop and implement a single grants management system for all three DOJ grant-making components. It also gives applicants and award recipients new ways to manage their own entity information and users in the system. JustGrants offers the ability for applicants and award recipients to:

COPS-AR-1007

# V. Appendices

(a) authenticate each user with their own login and password,

(b) manage multiple users and associate individual roles which govern access to information and tasks in the system, and

(c) assign users to one or many applications and award tasks and activities.

## L

**LIQUIDATION PERIOD** provides awardees time to receive ordered goods or services, and make final payments on trailing costs. It is usually a 120 day period after award end date.

**LOBBYING** is generally considered to be the act of trying to influence legislation. An organization will be regarded as attempting to influence legislation if it contacts, or urges the public to contact, members or employees of a legislative body for the purpose of proposing, supporting, or opposing legislation, or if the organization advocates the adoption or rejection of legislation. See 2 C.F.R. § 200.450.

## M

**MODIFIED TOTAL DIRECT COST (MTDC)** means all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and up to the first $50,000 of each subaward (regardless of the period of performance of the subawards under the award). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs, and the portion of each subaward in excess of $50,000.

## N

**NONEXPENDABLE PERSONAL PROPERTY** (i.e., equipment) includes tangible personal property (including information technology systems) having a useful life of more than 1 year and an acquisition cost of $10,000 or more per unit. A recipient may use its own definition of nonexpendable personal property provided that the definition would at least include all tangible personal property as defined below. See 2 C.F.R. § 200.1.

## O

**OBLIGATION** means orders placed for property and services, contracts and subawards made, and similar transactions during a given period that require payment by the recipient or subrecipient during the same or a future period (i.e., a legal liability to pay under a grant, subgrant, and/or contract determinable sums for services or goods incurred during the period of performance). See 2 C.F.R. § 200.1.

## P

**PASS-THROUGH ENTITY** means a recipient or subrecipient that provides a subaward to a subrecipient (including lower tier subrecipients) to carry out part of a program.

**PERSONAL PROPERTY** means property of any kind except real property. It may be tangible or intangible. See 2 C.F.R. § 200.1.

**PREAGREEMENT COSTS** are defined as those costs which are considered necessary to the project but occur prior to the starting date of the period of performance.

**PRIOR APPROVAL** means written approval obtained in advance by an authorized official of a Federal agency or pass-through entity of certain costs or programmatic decisions.

**PROGRAM INCOME** is gross income earned by the recipient or subrecipient that is directly generated by a supported activity or earned as a result of the Federal award during the period of performance except as provided in § 200.307(c). See 2 C.F.R.§ 200.1. Program income includes but is not limited to income from fees for services performed, the use or rental or real or personal property acquired under Federal awards, the sale of commodities or items fabricated under a Federal award, license fees and royalties on patents and copyrights, and principal and interest on loans made with Federal award funds. Interest earned on advances of Federal funds is not program income. Except as otherwise provided in Federal statutes, regulations, or the terms and conditions of the Federal award, program income does not include rebates, credits, discounts, and interest earned on any of them.

**PERIOD OF PERFORMANCE** is the period for which implementation of a project is authorized. The project period may be equal to or longer than the budget period for an award, but cannot be shorter than the budget period.

**PURCHASE OF EVIDENCE (P/E)** is the purchase of evidence and/or contraband, such as narcotics and dangerous drugs, firearms, stolen property, counterfeit tax stamps, and so forth, required to determine the existence of a crime or to establish the identity of a participant in a crime.

**PURCHASE OF SERVICES (P/S)** includes travel or transportation of a non-Federal officer or an informant; the lease of an apartment, business front, luxury-type automobiles, aircraft or boat, or similar effects to create or establish the appearance of affluence; and/or meals, beverages, entertainment, and similar expenses (including buy money and cash rolls, etc.) for undercover purposes, within reasonable limits.

**PURCHASE OF SPECIFIC INFORMATION (P/I)** includes the payment of monies to an informant for specific information. All other informant expenses would be classified under P/S and charged accordingly.

COPS-AR-1008

# V. Appendices

## R

**REAL PROPERTY** means land, including land improvements, structures, and appurtenances thereto, and legal interests in land, including fee interest, licenses, rights of way, and easements. Real property excludes movable machinery and equipment.

**REASONABLE** means those costs that a prudent person would have incurred under the circumstances prevailing at the time the decision to incur the cost was made.

**RECEPTION** means an informal gathering which is not mandatory for all event participants to obtain necessary information. Indicators of a reception include a cash bar, inadequate seating for the entire group, food items from a reception menu (such as finger foods), and a longer break (than utilized throughout the day) between the substantive meetings and the reception. Receptions are expressly prohibited and are considered to be an unallowable cost with Federal funds.

**RECIPIENT** means an entity that receives a Federal award directly from a Federal agency to carry out an activity under a Federal program. The term recipient does not include subrecipients or individuals that are participants or beneficiaries of the award.

**REGIONAL INFORMATION SHARING SYSTEMS (RISS)** is a national program of regionally oriented services designed to facilitate the coordination and communication capabilities of local, state, federal, and tribal criminal justice agencies.

## S

**SEPARATION OF DUTIES** is a key internal control concept that establishes procedures for certain types of financial transactions where no one person is able to execute the entire procedure alone. The most commonly used example concerns initiating a payment (writing the check) and authorizing a payment (signing the check).

**SOCIAL EVENT** is any event with alcoholic beverages served, available, or present.

**SPECIAL CONDITIONS** are contractual terms and conditions that are included with the award. Examples of special conditions include additional reports, audits, conferences, and disposition of program income.

**STIPEND** is an allowance to defray expenses. Examples of these expenses include, but are not limited to, rent, utilities, travel, incidentals, etc.

**SUBAWARD** means an award provided by a pass-through entity to a subrecipient for the subrecipient to contribute to the goals and objectives of the project by carrying out part of a Federal award received by the pass-through entity. It does not include payments to a contractor, beneficiary, or participant of a Federal program. A subaward may be provided through any form of legal agreement consistent with criteria in 200.331, including an agreement the pass-through entity considers a contract.

**SUBRECIPIENT** an entity, that receives a subaward from a pass-through entity to carry out part of a Federal program; but does not include a beneficiary or participant. A subrecipient may also be a recipient of other Federal awards directly from a Federal agency.

**SUPPLANTING** is to deliberately reduce State or local funds because of the existence of Federal funds. For example, when State funds are appropriated for a stated purpose and Federal funds are awarded for that same purpose, the State replaces its State funds with Federal funds, thereby reducing the total amount available for the stated purpose.

## U

**UNIQUE ENTITY IDENTIFIER** is the official identifier for doing business with the U.S. Government as of April 4, 2022. All entities (public and private companies, individuals, institutions, or organizations) must register in SAM.gov to obtain a **12-character unique number** to do business with the Federal government.

**UNALLOWABLE COSTS** are costs the government is unwilling to pay as a direct charge or through an indirect cost pool applied to the federal grant or contract. An organization is not prohibited from incurring unallowable costs but they cannot be recovered either directly or indirectly under federal grants or contracts.

## W

**WORKING DINNER** means a formal and mandatory dinner necessary for all participants to have full participation in the conference or event. A working dinner must include a formal agenda including a program or speakers that will impart necessary information important for full understanding of the subject matter of the conference. There should be several hours of informative sessions providing substantive information scheduled both before and after a working dinner. Indicators of a working dinner include seating for all participants. A cash bar is expressly prohibited.

**WORKING LUNCH** is a formal and mandatory lunch necessary for all participants to have full participation in the conference or event. A working lunch must include a formal agenda including a program or speakers that will impart necessary information important for full understanding of the subject matter of the conference. There should be several hours of informative sessions providing substantive information scheduled both before and after a working lunch (exhibits are not included). Indicators of a working lunch include seating for all participants. A cash bar is expressly prohibited.

**WORK-RELATED EVENT** is a conference or meeting involving a topical matter of interest within the purview of the agency's mission and function.

COPS-AR-1009

## V. Appendices

**5.2 APPENDICES**

### Appendix I: Sample ACH Template Instructions

The sample ACH template should be completed by the recipient's Financial Institution for the remittance of Automated Clearing House (ACH) credits to the US Department of Justice, Office of Justice Programs.

Sample ACH Template Instructions

### Appendix II: Sample Fedwire Template Instructions

The sample Fedwire template should be completed by the recipient's Financial Institution for the remittance of Fedwire payments to the US Department of Justice, Office of Justice Programs.

Sample Fedwire Template Instructions

COPS-AR-1010



# 2024 COPS Office Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement Program

Award Owner's Manual

# 2024 COPS Office Safer Outcomes Program Award Owner's Manual

This manual was created to assist COPS Office award recipients with the administrative and financial matters associated with their award.

For more information about your award, please contact your COPS Office Program Manager. If you do not know the name or telephone number of your COPS Office Program Manager, please contact the COPS Office Response Center at **AskCOPSRC@usdoj.gov** or 800-421-6770.



U.S. Department of Justice
Office of Community Oriented Policing Services
145 N Street NE
Washington, DC 20530
Visit the COPS Office online: **cops.usdoj.gov**
Published November 2024

2024 COPS Office Safer Outcomes Program Award Owner's Manual

# Contents

Getting Started ............................................................................................................................................1

I. Award Acceptance, Terms, and Conditions ...........................................................................................3

   Award package ....................................................................................................................................3

   The Cooperative Agreement ...............................................................................................................4

   Accepting the award ...........................................................................................................................4

   Who should sign the award package for our organization?.................................................................5

   By when must the award package be signed? .....................................................................................5

   What are the specific rules regarding termination of award funding? ...............................................5

   Award terms and conditions ...............................................................................................................6

II. Accessing Award Funds.......................................................................................................................44

   Payment method...............................................................................................................................44

   Additional payment questions ..........................................................................................................45

III. Procurement Process.........................................................................................................................47

IV. Financial Record Maintenance ..........................................................................................................48

   What accounting systems are required?............................................................................................48

   What records must be kept?..............................................................................................................48

   How long must records be kept? .......................................................................................................48

   What if we have more than one award?............................................................................................49

   Who may access our records?...........................................................................................................49

V. Federal Audit Requirements...............................................................................................................50

   Single Audit Act (SAA) requirements................................................................................................50

   Office of Inspector General (OIG) recipient audits............................................................................51

   Typical audit findings........................................................................................................................52

VI. Reporting Requirements ...................................................................................................................54

   Federal Financial Reports ..................................................................................................................54

   Performance Reports ........................................................................................................................56

   Contact points to obtain technical assistance and report violations .................................................58

COPS-AR-1013

2024 COPS Office Safer Outcomes Program Award Owner's Manual

VII. When the Award Period Has Ended ............................................................................................................59

   Final Federal Financial Report (SF-425) .......................................................................................................59

   Final Performance (Closeout) Report ...........................................................................................................59


VIII. Conclusion ...............................................................................................................................................61


Appendices .......................................................................................................................................................62

   Appendix A. List of source documents .........................................................................................................62

   Appendix B. U.S. Department of Justice Certified Standard Assurances ..............................................................63

   Appendix C. U.S. Department of Justice Certifications Regarding Lobbying; Debarment, Suspension and Other
   Responsibility Matters; Drug-Free Workplace Requirements; Law Enforcement and Community Policing ..........65

   Appendix D. Conference and Event Guidance...............................................................................................69

   Appendix E. Enhancement of contractor protection from reprisal for disclosure of certain information (41 U.S.C.
   § 4712)..............................................................................................................................................81

   Appendix F. 2 C.F.R. Appendix II to Part 200: Contract provisions for nonfederal entity contracts under federal
   awards ............................................................................................................................................85

   Appendix G. Remittance of Interest Earned Amounts ...................................................................................87

   Appendix H. Additional resources for Cooperative Agreement recipients ..........................................................88


Glossary of Terms .............................................................................................................................................89

COPS-AR-1014

# Getting Started

Congratulations on receiving an award from the U.S. Department of Justice (DOJ), Office of Community Oriented Policing Services (COPS Office). The 2024 Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement Program awards include the following programs:

- Expansion of Regional De-Escalation Training Centers
- Support for Law Enforcement Agencies
- Curriculum Integration for Law Enforcement Academies and State-Level Training Commissions

The Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement program seeks to promote safe outcomes during police encounters with persons in crisis through relevant training. Supported training programs must address one or more of the following areas of focus:

- De-escalation tactics and alternatives to use of force
- Safely responding to an individual experiencing a mental or behavioral health or suicidal crisis
- Safe encounters with individuals with disabilities
- Successfully participating on a crisis intervention team
- Making referrals to community-based services and support

The COPS Office Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement—Expansion of Regional De-Escalation Training Centers program provides funding to institutions of higher education and nonprofit organizations to support training of law enforcement officers, support personnel employed by law enforcement agencies, and mental health professionals working on a crisis intervention team as an employee of a law enforcement agency or under a legal agreement with a law enforcement agency.

The COPS Office Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement—Support for Law Enforcement Agencies program provides funding to state, local, tribal, and territorial law enforcement agencies with the goal of promoting safe outcomes during police encounters with persons in crisis through relevant training of law enforcement officers, support personnel employed by law enforcement agencies, and mental health professionals working on crisis intervention teams as employees of a law enforcement agency or under a legal agreement with a law enforcement agency.

The COPS Office Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement—Curriculum Integration for Law Enforcement Academies and State-Level Training Commissions program provides funding to law enforcement training academies and state-level regulatory bodies with the goal of promoting safe outcomes during police encounters with persons in crisis through the integration of de-escalation and crisis response training into their curricula.

According to the COPS Office, community policing is a philosophy that promotes organizational strategies that support the systematic use of partnerships and problem- solving techniques to proactively address the immediate conditions that give rise to public safety issues such as violent crime, nonviolent crime, and fear of crime. For a complete definition, please see *Community Policing Defined*, which can be found at **https://portal.cops.usdoj.gov/resourcecenter?item=cops-p157**.

COPS-AR-1015

Compliance with this Award Owner's Manual is a condition of your award and this manual is binding guidance. This manual will assist your organization with the administrative and financial matters associated with your award. It was developed to ensure that all award recipients are able to clearly understand and meet the requirements of their award. Please review this manual carefully because failure to follow award requirements can have serious ramifications. Please do not hesitate to contact your COPS Office Program Manager if you need assistance with the implementation of your award.

The Uniform Administrative Requirements, Cost Principles, and Audit requirements for Federal Awards (known as the "Uniform Guidance" or "Part 200"), have been updated. The updates will be codified in the Code of Federal Regulations at 2 C.F.R. Part 200 on October 1, 2024. The U.S. Department of Justice (DOJ) adopted the Uniform Guidance, first promulgated in 2013, via regulation at 2 C.F.R. Part 2800 and it includes "any subsequent changes" to Part 200.

DOJ is continuing to assess the impact of the OMB updates on its recipients of federal financial assistance. To the extent practicable, revisions to 2 C.F.R. Part 200 are incorporated into this Award Owner's Manual but may be subject to additional clarifications. Recipients remain responsible for complying with all Part 200 revisions, published in the Federal Register :: Guidance for Federal Financial Assistance, at **https://www.federalregister.gov/documents/2024/04/22/2024-07496/guidance-for-federal-financial-assistance**.

Thank you for providing us with the opportunity to work in partnership with you on this important project.

COPS-AR-1016

# I. Award Acceptance, Terms, and Conditions

Your entity must successfully set up their JustGrants account and enroll in the Automated Standard Application for Payments (ASAP) to accept and manage their award. Accepting or declining an award can only be done through the Justice Grants System (JustGrants). In JustGrants, you may print the PDF of the award for reference.

Prior to accepting an award, the entity administrator must assign a financial manager, a grant administrator, and two Authorized Representatives for each award in JustGrants. COPS Office recipients will have two Authorized Representatives assigned to each award; both are required to accept the award. When the Authorized Representative(s) log(s) into their JustGrants account, they can view accepted awards and awards that need to be accepted. An email notification will also be sent to the Application Submitter, the Authorized Representatives, and the Entity Administrator to sign and accept their award.

**To officially accept your award,** you must carefully review and electronically sign **the Award Package (which includes your Award Information, Financial Information, Award Conditions, and Other Award Documents including the cooperative agreement) within 45 days from the date shown on the award letter.** Please see the JustGrants training: <u>Grant Award Acceptance</u> for detailed information on accepting your award.

Your organization will **not** be able to draw down award funds until the COPS Office receives your signed award package and you have completed all steps in the ASAP system. For more information on drawing down award funds, please see the section titled "Accessing Award Funds" in this manual.

## Award package

The award package indicates your official award funding amount, the award number, the award terms and conditions, and the award start and end dates. Please note that the cooperative agreement is incorporated by reference into the award document and that by signing the award document, your organization has entered into the cooperative agreement with the COPS Office and agrees to abide by all the requirements in the cooperative agreement.

Be sure to familiarize yourself with all terms, conditions, and requirements of your award before signing the award package. Print and retain a copy of the award package including the award terms and conditions, the financial information, and the cooperative agreement and any other award documents for your records.

The Project Period start date on the award package means that your organization may be reimbursed for any allowable costs incurred on or after this date. Project Period end date shows the last date that allowable costs may be incurred.

Your award number is in the following format: 15JCOPS-24-GG-XXXXX-XXXX as shown in figure 1 on page 4. The COPS Office tracks award information based upon this number. Therefore, it is important to have your organization's award number (or your organization's System for Award Management (SAM) Unique Entity Identifier (UEI) number) readily available when corresponding with the COPS Office.

COPS-AR-1017

**Figure 1. Award number example**



## The Cooperative Agreement

If your project requires substantial involvement on the part of the COPS Office, a multipage cooperative agreement document will accompany your award package. Please note that the cooperative agreement is included in the award package, and by signing the award package, your organization has entered into the cooperative agreement with the COPS Office and agrees to abide by all the requirements in the cooperative agreement.

Under the Federal Grant and Cooperative Agreement Act of 1977, a cooperative agreement is the legal instrument used by a federal agency to enter into a relationship with a state, local government, or other recipient when the principal purpose of assistance is to carry out a public purpose of support or stimulation authorized by federal law and substantial involvement is expected between the federal agency and the recipient. See 31 U.S.C. § 6305.

To officially accept and begin your award, your organization will review and approve the cooperative agreement document along with the award package and electronically sign for all documents within 45 days of the date shown on the award letter.

Your organization will not be able to draw down funds until the COPS Office receives your electronically signed award package in JustGrants.

If you have any additional questions concerning your cooperative agreement, please contact your designated COPS Office Program Manager.

## Accepting the award

After you have reviewed the conditions of your award and your organization agrees with these conditions, you are ready to accept the award. The Director of the COPS Office or designee has signed the award package indicating approval of your award, an obligation of federal funds to your organization, and our commitment to the award. As stated at the beginning of this section, to officially begin your award and draw down your funds, the authorized representatives (see the Glossary of Terms following the appendices) of your organization must access the JustGrants website to log in, review, and electronically sign the award package and, if applicable, the special award conditions or high risk conditions in the award package supplement within 45 days of the date shown on the award letter.

Refer to the Job Aid Reference Guide titled ***Grantee Acceptance***, which will walk you through the necessary steps to follow in accepting an award package.

# Who should sign the award package for our organization?

The authorized representatives are the authorized officials who have ultimate and final responsibility for all programmatic and financial decisions regarding this award as representatives of the legal recipient and those who have the ultimate signatory authority to sign contracts on behalf of your organization. Typically, these are the same executives who signed the forms in your COPS Office application.

For non–law enforcement agencies (institutions of higher education, school districts, private organizations, etc.), COPS Office awards require that both the programmatic official (e.g., executive director, chief executive officer, or equivalent) and financial official (e.g., chief financial officer, treasurer, or equivalent) sign the application, and (if awarded funding) accept the Award Package. The programmatic official must be assigned the role of Authorized Representative 1 and the financial official must be assigned the role of Authorized Representative 2 in JustGrants.

If the Authorized Representatives changes between the time of application submission and award receipt, the Entity Administrator (EA) will need to update the Authorized Representative in JustGrants.

# By when must the award package be signed?

Please electronically sign the award package within 45 days of the date on the award letter. Award funds will not be released until we have received your organization's signed award package, your budget has received final clearance, and any other relevant award conditions particular to your organization have been satisfied. Failure to electronically sign your original award document within the 45-day award acceptance period may result in your award being withdrawn and the funds deobligated without additional notification. If your organization requires an extension for accepting the award beyond the 45-day acceptance time frame, please contact your COPS Office program manager. Be sure to explain the circumstances that prevent your organization from electronically signing the award document within the 45-day period and identify the date by which the award package will be signed. The COPS Office will review such requests on a case-by-case basis. The COPS Office reserves the right to deny requests to extend the award acceptance period. If you have any questions, please contact your COPS Office Program Manager.

# What are the specific rules regarding termination of award funding?

The COPS Office may suspend, in whole or in part, or terminate funding or impose other sanctions on a recipient for the following reasons:

- Failure to substantially comply with the requirements or objectives of the Public Safety Partnership and Community Policing Act of 1994, program guidelines, or other provisions of federal law
- Failure to make satisfactory progress toward the goals or strategies set forth in the recipient's application
- Failure to adhere to award agreement requirements or special conditions
- Proposing substantial plan changes to the extent that, if originally submitted, would have resulted in the application not being selected for funding
- Failure to submit required or requested reports
- Filing a false statement or certification in this application or other report or document
- Other good cause shown

Prior to imposing sanctions, the COPS Office will provide reasonable notice to the recipient of its intent to impose sanctions and will attempt to resolve the problem informally. Appeal procedures will follow those in the U.S. Department of Justice regulations in 28 C.F.R. Part 18.

Awards terminated because of noncompliance with the federal statutes, regulations, or award terms and conditions will be reported to the integrity and performance system accessible through SAM.gov under Entity Information, Responsibility/Qualification (formerly FAPIIS.gov).

False statements or claims made in connection with COPS Office awards may result in fines, imprisonment, debarment from participating in federal awards or contracts, and any other remedy available by law.

Please be advised that recipients may not use COPS Office funding for the same item or service also funded by another U.S. Department of Justice award.

# Award terms and conditions

The award terms and conditions are included in the award package. By accepting this award, you are obtaining federal funds from the COPS Office. As part of that agreement, your organization acknowledges that it will comply with these terms and conditions (and, if applicable, any additional special or high-risk conditions specific to your organization). The section that follows describes, in detail, all of the award conditions, their rationales, and their implications. It also addresses many frequently asked questions. If you have additional questions concerning any of these award conditions, please contact your COPS Office Program Manager.

In limited circumstances, your award may be subject to special conditions that prevent your organization from drawing down or accessing award funds until the special conditions are satisfied as determined by the COPS Office. Any special or high-risk conditions will be included in the award conditions section of the award package. If you have questions about the special or high-risk conditions, please contact your assigned COPS Office Program Manager.

## Reasons for award terms and conditions

The requirements of your award are established within

- the Public Safety Partnership and Community Policing Act of 1994, which established the COPS Office;
- the applicable rules, regulations and policies issued by the U.S. Department of Justice, Office of Management and Budget (OMB), the Government Accountability Office (GAO), and the United States Treasury;
- the specific programmatic requirements established by the COPS Office.

A list of source documents for this manual is provided in the appendices. You may request copies of any source reference document from

**Office of Administration, Publication Unit**
**New Executive Office Building**
**725 17th Street NW, Room G 236**
**Washington, D.C. 20503**

COPS Office–specific documents may be requested directly from the COPS Office by contacting your COPS Office Program Manager.

COPS-AR-1020

## Review of award terms and conditions

By signing the award package to accept this award, your organization agrees to abide by the following award terms and conditions:

### 1. Reporting Subawards and Executive Compensation

**Condition:**

The recipient agrees to comply with the following requirements of 2 C.F.R. Part 170, Appendix A to Part 170 – Award Term:

I. Reporting Subawards and Executive Compensation

(a) Reporting of first-tier subawards—(1) Applicability. Unless the recipient is exempt as provided in paragraph (d) of this award term, the recipient must report each subaward that equals or exceeds $30,000 in Federal funds for a subaward to an entity or Federal agency. The recipient must also report a subaward if a modification increases the Federal funding to an amount that equals or exceeds $30,000. All reported subawards should reflect the total amount of the subaward.

(2) Reporting Requirements. (i) The entity or Federal agency must report each subaward described in paragraph (a)(1) of this award term to  the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at https://www.fsrs.gov.

(ii) For subaward information, report no later than the end of the month following the month in which the subaward was issued. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025.)

(b) Reporting total compensation of recipient executives for entities—(1) Applicability. The recipient must report the total compensation for each of the recipient's five most highly compensated executives for the preceding completed fiscal year if:

(i) The total Federal funding authorized to date under this Federal award equals or exceeds $30,000;

(ii) in the preceding fiscal year, the recipient received:

(A) 80 percent or more of the recipient's annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and

(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,

(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at https://www.sec.gov/answers/execomp.htm.)

COPS-AR-1021

*(2).Reporting Requirements. The recipient must report executive total compensation described in paragraph (b)(1) of this appendix:*

*(i) As part of the recipient's registration profile at https://www.sam.gov.*

*(ii) No later than the month following the month in which this Federal award is made, and annually after that. (For example, if this Federal award was made on November 7, 2025, the executive total compensation must be reported by no later than December 31, 2025.).*

*(c) Reporting of total compensation of subrecipient executives—(1) Applicability. Unless a first-tier subrecipient is exempt as provided in paragraph (d) of this appendix, the recipient must report the executive total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if:*

*(i) The total Federal funding authorized to date under the subaward equals or exceeds $30,000;*

*(ii) in the subrecipient's preceding fiscal year, the subrecipient received:*

*(A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal awards (and subawards) subject to the Transparency Act; and,*

*(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal awards (and subawards) subject to the Transparency Act; and*

*(iii) The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986 after receiving this subaward. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at https://www.sec.gov/answers/execomp.htm.)*

*(2) Reporting Requirements. Subrecipients must report to the recipient their executive total compensation described in paragraph (c)(1) of this appendix. The recipient is required to submit this information to the Federal Funding Accountability and Transparency Act Subaward Reporting System (FSRS) at https://www.fsrs.gov/ no later than the end of the month following the month in which the subaward was made. (For example, if the subaward was made on November 7, 2025, the subaward must be reported by no later than December 31, 2025.)*

*(d) Exemptions. (1) A recipient with gross income under $300,000 in the previous tax year is exempt from the requirements to report:*

*(i) Subawards, and*

*(ii) The total compensation of the five most highly compensated executives of any subrecipient.*

*(e) Definitions. For purposes of this award term:*

*Entity includes:*

*(1) Whether for profit or nonprofit:*

*(i) A corporation;*

*(ii) An association;*

*(iii) A partnership;*

*(iv) A limited liability company;*

*(v) A limited liability partnership;*

*(vi) A sole proprietorship;*

*(vii) Any other legal business entity;*

*(viii) Another grantee or contractor that is not excluded by subparagraph (2); and*

*(ix) Any State or locality;*

*(2) Does not include:*

*(i) An individual recipient of Federal financial assistance; or*

*(ii) A federal employee.*

*Executive means an officer, managing partner, or any other employee holding a management position.*

*Subaward has the meaning given in 2 C.F.R. 200.1.*

*Subrecipient has the meaning given in 2 C.F.R. 200.1.*

*Total Compensation means the cash and noncash dollar value an executive earns during an entity's preceding fiscal year. This includes all items of compensation as prescribed in 17 C.F.R. 299.402(c)(2).*

**Why this condition:**

To further federal spending transparency, the Federal Funding Accountability and Transparency Act of 2006 (FFATA) requires, among other things, that information on federal awards (federal financial assistance and expenditures) be made available to the public via a single, searchable website, which is www.USASpending.gov. Recipients are responsible for reporting their applicable executive compensation and subaward information, and the award term provides guidance to report the related information as required by FFATA.

**What you should do:**

At the time of award application, your organization was asked to ensure that it has the necessary processes and systems in place to comply with the applicable subaward and executive compensation reporting requirements should it receive funding. If your organization received awards of $30,000 or more, you are required to report award information on any first-tier subawards totaling $30,000 or more, and, in certain cases, to report information on the names and total compensation of the five most highly compensated executives of the recipient and first-tier subrecipients. The FFATA Subaward Reporting System (FSRS), accessible via the website at www.fsrs.gov, is the reporting tool that your organization will use to capture and report subaward information and any executive compensation data required by FFATA. The subaward information entered in FSRS will then be displayed on www.USASpending.gov associated with your organization's award, furthering federal spending transparency.

For additional information regarding the executive compensation and subaward reporting requirements, please see **https://www.federalregister.gov/documents/2024/04/22/2024-07496/guidance-for-federal-financial-assistance**.

## 2. Restrictions on Internal Confidentiality Agreements

**Condition:**

*No recipient or subrecipient under this award, or entity that receives a contract or subcontract with any funds under this award, may require any employee or contractor to sign an internal confidentiality agreement or statement that prohibits or otherwise restricts the lawful reporting of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency authorized to receive such information.* Further *Consolidated Appropriations Act, 2024, Public Law, 118-47 Division B, Title VII, Section 742.*

**Why this condition:**

Under the Appropriations Act, neither the recipient, subrecipient, nor any entity that receives a contract or subcontract with any funds under this or any other Act may require its employees or contractors to sign an internal confidentiality agreement or statement prohibiting or otherwise restricting their lawful reporting of waste, fraud, or abuse to an investigative or law enforcement representative of a federal department or agency. This provision protects the public interest and ensures the proper management and use of federal funds. This limitation is not intended, and shall not be understood by the agency making this award, to contravene requirements applicable to Standard Form 312 (which relates to classified information), Form 4414 (which relates to sensitive compartmented information), or any other form issued by a federal department or agency governing the nondisclosure of classified information.

**What you should do:**

In accepting this award, the recipient

- represents that it neither requires nor has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above;

- represents that, if it learns or is notified that it is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict) reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds, will provide prompt written notification to the agency making this award, and will resume such obligations only if expressly authorized to do so by that agency.

If the recipient does or is authorized to make subawards or contracts under this award, in accepting, the recipient

- represents that it has or will determine that no other entity that the recipient proposes may or will receive award funds (whether through a subaward, contract, or subcontract) either requires or has required internal confidentiality agreements or statements from employees or contractors that currently prohibit or otherwise restrict (or purport to prohibit or restrict) employees or contractors from reporting waste, fraud, or abuse as described above;

- represents that it has or will make appropriate inquiry, or otherwise has an adequate factual basis, to support this representation;

- represents that, if it learns or is notified that any subrecipient, contractor, or subcontractor entity that receives funds under this award is or has been requiring its employees or contractors to execute agreements or statements that prohibit or otherwise restrict (or purport to prohibit or restrict) reporting of waste, fraud, or abuse as described above, it will immediately stop any further obligations of award funds to or by that entity, will provide prompt written notification to the agency making this award, and will resume (or permit resumption of) such obligations only if expressly authorized to do so by that agency.

## 3. Prohibited Conduct by Recipients and Subrecipients Related to Trafficking in Persons (Including Reporting Requirements and COPS Office Authority to Terminate Award)

**Condition:**

*The recipient and subrecipient agree to comply with the following requirements of 2 C.F.R. Part 175, Appendix A to Part 175) – Award Term:*

*I. Trafficking in Persons.*

*(a) Provisions applicable to a recipient that is a private entity. (1) Under this award, the recipient, its employees, subrecipients under this award, and subrecipients' employees must not engage in:*

*(i).Severe forms of trafficking in persons;*

*(ii) The procurement of a commercial sex act during the period of time that this award or any subaward is in effect;*

*(iii) The use of forced labor in the performance of this award or any subaward; or*

*(iv) Acts that directly support or advance trafficking in persons, including the following acts:*

*(A) Destroying, concealing, removing, confiscating, or otherwise denying an employee access to that employee's identity or immigration documents;*

*(B) Failing to provide return transportation or pay for return transportation costs to an employee from a country outside the United States to the country from which the employee was recruited upon the end of employment if requested by the employee, unless:*

*(1) Exempted from the requirement to provide or pay for such return transportation by the Federal department or agency providing or entering into the grant or cooperative agreement; or*

*(2) The employee is a victim of human trafficking seeking victim services or legal redress in the country of employment or a witness in a human trafficking enforcement action;*

*(C) Soliciting a person for the purpose of employment, or offering employment, by means of materially false or fraudulent pretenses, representations, or promises regarding that employment;*

*(D) Charging recruited employees a placement or recruitment fee; or*

*(E) Providing or arranging housing that fails to meet the hose country's housing and safety standards.*

COPS-AR-1025

*(2) The Federal agency may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. 7104b(c), without penalty, if any private entity under this award:*

*(i) Is determined to have violated a prohibition in paragraph (a)(1) of this appendix; or*

*(ii) Has an employee that is determined to have violated a prohibition in paragraph (a)(1) of this appendix through conduct that is either:*

*(A) Associated with performance under this award; or*

*(B) Imputed to the recipient or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 C.F.R. part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by DOJ at 2 C.F.R. Part 2867.*

*(b) Provision applicable to a recipient other than a private entity. (1) The Federal agency may unilaterally terminate this award or take any remedial actions authorized by 22 U.S.C. 7104b(c), without penalty, if a subrecipient that is a private entity under this award:*

*(i). Is determined to have violated a prohibition in paragraph (a)(1) of this appendix; or*

*(ii) Has an employee that is determined to have violated a prohibition in paragraph (a)(1) of this appendix through conduct that is either:*

*(A) Associated with performance under this award; or*

*(B) Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 C.F.R. part 180, "OMB Guidelines to Agencies on Government-wide Debarment and Suspension (Nonprocurement)," as implemented by 2 C.F.R. Part 2867.*

*(c) Provisions applicable to any recipient.*

*(1) The recipient must inform the Federal agency and the Inspector General of the Federal agency immediately of any information you receive from any source alleging a violation of a prohibition in paragraph (a)(1) of this appendix.*

*(2) The Federal agency's right to unilaterally terminate this award as described in paragraphs (a)(2) or (b)(1) of this appendix:*

*(i) Implements the requirements of 22 U.S.C. 78, and*

*(ii) Is in addition to all other remedies for noncompliance that are available to the Federal agency under this award.*

*3. The recipient must include the requirements of paragraph (a)(1) of this award term in any subaward it makes to a private entity.*

*(4) If applicable, the recipient must also comply with the compliance plan and certification requirements in 2 C.F.R. 175.105(b).*

*(d) Definitions. For purposes of this award term:*

*"Employee" means either:*

*(1) An individual employed by the recipient or a subrecipient who is engaged in the performance of the project or program under this award; or*

*(2) Another person engaged in the performance of the project or program under this award and not compensated by the recipient including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing requirements.*

*"Private entity" means any entity, including for-profit organizations, nonprofit organizations, institutions of higher education, and hospitals. The term does not include foreign public entities, Indian Tribes, local governments, or states as defined in 2 C.F.R. 200.1.*

*The terms "severe forms of trafficking in persons," "commercial sex act," "sex trafficking," "Abuse or threatened abuse of law or legal process," "coercion," "debt bondage," and "involuntary servitude" have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. 7102).*

**Why this condition:**

The purpose of this government-wide award term is to implement the requirement in paragraph (g) of section 106 of the Trafficking Victims Protection Act of 2000 (TVPA), as amended, (22 U.S.C. § 7104(g)). The award term authorizes the COPS Office to terminate an award to a private entity, without penalty, if the recipient or a subrecipient:

(a) Engages in severe forms of trafficking in persons during the period of time that the award is in effect;

(b) Procures a commercial sex act during the period of time that the award is in effect;

(c) Uses forced labor in the performance of the award or subawards under the award; or

(d) Acts that directly support or advance trafficking in persons as described in the award term.

2 C.F.R. § 175.105.

**What you should do:**

During the time that the award is in effect, recipients, subrecipients at any tier, and their employees must not engage in severe forms of trafficking in persons, procure commercial sex acts, use forced labor in the performance of the award, or engage in acts that directly support or advance trafficking persons. The recipient must include the above award term in any subaward to a private entity. The recipient must also promptly notify the COPS Office of any information received from any source alleging a violation of prohibited conduct described in the award term.

## *4. Duplicative Funding*

**Condition:**

*The recipient understands and agrees to notify the COPS Office if it receives, from any other source, funding for the same item or service also funded under this award.*

COPS-AR-1027

**Why this condition:**

This award was made to your organization for approved project costs that are not funded with other funds, including federal, state, local, tribal, or BIA funds. Consequently, your organization may not use this funding for items or services that you already have funding for from other sources.

**What you should do:**

If your organization receives funding from another source for the same item(s) or services(s) also funded under this award, please contact your COPS Office Program Manager. If necessary, the COPS Office will work with your organization to reprogram funding for items or services that are allowable under this award program.

*5. Termination*

**Condition:**

*Recipient understands and agrees that the COPS Office may terminate funding, in whole or in part, for the following reasons:*

*(1) When the recipient fails to comply with the terms and conditions of a Federal award.*

*(2) When the recipient agrees to the termination and termination conditions.*

*(3) When the recipient provides the COPS Office written notification requesting termination including the reasons, effective date, and the portion of the award to be terminated. The COPS Office may terminate the entire award if the remaining portion will not accomplish the purposes of the award.*

*(4) Pursuant to any other award terms and conditions, including, when an award no longer effectuates the program goals or agency priorities to the extent such termination is authorized by law.*

*2. C.F.R. § 200.340.*

**Why this condition:**

This condition sets forth the circumstances under which your federal award may be terminated.

**What you should do:**

Carefully review the reasons for termination in this condition to ensure that your organization is aware of when award funding may be terminated. If you have any questions regarding the provisions, please contact your COPS Office Program Manager.

*6. Award Owner's Manual*

**Condition:**

*The recipient agrees to comply with the terms and conditions in the applicable award year COPS Office Program Award Owner's Manual; DOJ Grants Financial Guide; COPS Office statute (34 U.S.C. § 10381, et seq.) as applicable; Students, Teachers, and Officers Preventing (STOP) School Violence Act of 2018 (34 U.S.C. § 10551, et seq.) as applicable; the requirements of 2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards), including subsequent changes, as adopted by the U.S. Department of Justice in 2*

*C.F.R. § 2800.101; 48 C.F.R. Part 31 (FAR Part 31) as applicable (Contract Cost Principles and Procedures); the Cooperative Agreement as applicable; representations made in the application; and all other applicable program requirements, laws, orders, regulations, or circulars.*

*Failure to comply with one or more award requirements may result in remedial action including, but not limited to, withholding award funds, disallowing costs, suspending, or terminating the award, or other legal action as appropriate.*

*Should any provision of an award condition be deemed invalid or unenforceable by its terms, that provision will be applied to give it the maximum effect permitted by law. Should the provision be deemed invalid or unenforceable in its entirety, such provision will be severed from this award.*

**Why this condition:**

This manual has been designed to inform you of the requirements, laws, regulations, and policies that apply to your award. Your organization will be responsible for the information and rules contained in this manual and for implementing your award in compliance with the applicable terms, conditions, and regulations. Please note that in accordance with 2 C.F.R. § 200.101(a)(2), the COPS Office applies 2 C.F.R. Subparts A through E to for-profit (or commercial) entities. More detailed guidance regarding any particular award requirement or your organization's specific circumstances can be requested through your COPS Office Program Manager.

**What you should do:**

Please read the entire Safer Outcomes Award Owner's Manual carefully prior to signing the award package. If you have any questions, please contact your COPS Office Program Manager. When accepting your award, you should ensure that the proper reporting and financial systems are in place to satisfy the award requirements.

## 7. Authorized Representative Responsibility

**Condition:**

*The recipient understands that, in accepting this award, the Authorized Representatives declare and certify, among other things, that they possess the requisite legal authority to accept the award on behalf of the recipient entity and, in so doing, accept (or adopt) all material requirements throughout the period of performance under this award. The recipient further understands, and agrees, that it will not assign anyone to the role of Authorized Representative during the period of performance under the award without first ensuring that the individual has the requisite legal authority.*

**Why this condition:**

The Authorized Representatives are responsible for reviewing and accepting a recipient's COPS Office award and must possess the legal authority to accept awards. This action binds the recipient to the award requirements.

**What you should do:**

The recipient must ensure it assigns two officials as the required Authorized Representatives for its COPS Office award who have ultimate and final responsibility for all programmatic and financial decisions for the agency, as the legal recipient. For guidance on who should be assigned as your agency's two Authorized Representatives, please see the Award Acceptance, Terms, and Conditions section of the Award Owner's Manual.

## 8. Award Monitoring Activities

**Condition:**

*Federal law requires that recipients receiving federal funding from the COPS Office must be monitored to ensure compliance with their award conditions and other applicable statutes and regulations. The COPS Office is also interested in tracking the progress of our programs and the advancement of community policing. Both aspects of award implementation—compliance and programmatic benefits—are part of the monitoring process coordinated by the U.S. Department of Justice. Award monitoring activities conducted by the COPS Office include site visits, enhanced office-based grant reviews, alleged noncompliance reviews, financial and programmatic reporting, and audit resolution. As a COPS Office award recipient, you agree to cooperate with and respond to any requests for information pertaining to your award. This includes all financial records, such as general accounting ledgers and all supporting documents. All information pertinent to the implementation of the award is subject to agency review throughout the life of the award, during the close-out process and for three-years after submission of the final expenditure report. 34 U.S.C. § 10385(a) and 2 C.F.R. §§ 200.334 and 200.337.*

**Why this condition:**

The Public Safety Partnership and Community Policing Act of 1994 states that each award program must contain a monitoring component. The COPS Office actively monitors how recipients are complying with COPS Office award requirements. In addition, the monitoring component provides customer service and technical assistance to help ensure recipients understand how to remain in compliance while implementing their awards.

**What you should do:**

Your organization may be required to accommodate routine and nonroutine efforts by the COPS Office, or an entity designated by the COPS Office, to examine your organization's use of federal funds both programmatically and financially. The four primary means of ensuring recipients' compliance with the terms and conditions of their awards are as follows:

1. **Site visits.** The COPS Office strategically selects award recipients based on a variety of risk factors to conduct site visits to ensure compliance with award terms and conditions. The purpose of site visits is threefold:

   i. To review for compliance with the terms and conditions of the award

   ii. To review the recipient's community policing strategies

   iii. To provide customer service and technical assistance

   If selected, recipients will be notified in writing in advance with detailed instructions for how to prepare for the review of their COPS Office awards. This review is generally performed over a period of one to two days. Recipients will have an opportunity to resolve any identified noncompliance issues while on-site or, if necessary, following the site visit. In addition, recipients will also have an opportunity to seek customer service and/or technical assistance on the implementation of their award.

2. **Enhanced Office-Based Grant Reviews (EOBGR).** In lieu of a site visit, awards may be selected for an EOBGR conducted at the COPS Office via teleconference or video conference. EOBGRs serve as an alternative for conducting award monitoring reviews in support of the COPS Office's overall award monitoring strategy. The purpose of the EOBGR is threefold:

   i. To review for compliance with the terms and conditions of the award

   ii. To review the recipient's community policing strategies

   iii.   To provide customer service and technical assistance

   If selected, the recipient will be notified in writing in advance of any EOBGR of its COPS Office awards. This review is generally performed over a one-to two-day period. Recipients will have an opportunity to resolve any identified noncompliance issues, if necessary, following the EOBGR interview. In addition, award recipients will also have an opportunity to seek customer service and/or technical assistance on the implementation of their award.

3. **Alleged Noncompliance Referral (ANCR).** An ANCR is an allegation of suspected noncompliance that originates from an internal source within the COPS Office or an external referral from one of many sources. Internal ANCRs generally originate from COPS Office Grants Administration Division, Finance Division, or the Office of General Counsel (OGC), although any COPS Office component may refer a noncompliance issue to the ANCR. External noncompliance referrals may be received from anonymous complainants, media, citizens, law enforcement agencies, other Federal agencies, or other outside sources. On a case-by-case basis, COPS Office ANCR staff members determine the appropriate course of action to take to investigate complaints of alleged noncompliance. This may include phone or letter contact or a site visit by COPS Office staff or the OIG. Each ANCR referral is resolved as a violation or nonviolation based upon the preponderance of the supporting documentation or other facts to determine if the award recipient is in compliance or noncompliance.

4. **Audit liaison.** The OIG may conduct a random audit for any recipient of a COPS Office award. In the event your organization has undergone an OIG audit and there are audit recommendations (findings) resulting from noncompliance or poor accountability practices, the COPS Office Grant Monitoring Division Audit Liaison Section will work with your organization to resolve and close these recommendations. Remedies to close recommendations may include repayment of award funds, providing adequate documentation to demonstrate compliance, or providing proof of policies or procedures that were created or revised to directly address the causes for the noncompliance as a proactive preventative measure to avoid future noncompliance.

Recipients are responsible for remedying any award noncompliance that is identified during site visits, EOBGRs, and/or ANCRs. In addition, recipients are responsible for remedying noncompliance stemming from audit recommendations identified in audits of COPS Office awards conducted by the OIG and the Office of the Chief Financial Officer (OCFO). Remedies for noncompliance may include but are not limited to repayment of award funds for unallowable or unsupported costs, providing adequate documentation to demonstrate compliance, suspending active award funding, voluntary withdrawal from or involuntary termination of remaining award funds, or a restriction from receiving future COPS Office awards for a period of time. Under certain conditions, additional actions may include referral and placement on the U.S. Department of Justice's High-Risk List, which will include mandatory completion of the Office of Justice Programs Financial Management Training and being subject to increased monitoring of current and future awards while on the list. In the event of criminal misuse of award funds, recipients may also be subject to fines and imprisonment. To avoid findings of noncompliance, recipients are strongly encouraged to become familiar with the ***COPS Office Grant Monitoring Division's Grant Monitoring Standards and Guidelines*** and Award Owner's Manual for the year in which the award was made. Recipients should also contact their COPS Office Program Manager at any time during the life of a COPS Office award with questions concerning award conditions, terms, or requirements to seek guidance to avoid noncompliance. It is necessary for recipients to maintain all relevant documentation (administrative, financial, and programmatic) used to develop the application and implement the award that may be necessary or required to demonstrate award compliance for a period of three-years from the date of submission of the final expenditure report. For more information, please contact the COPS Office Response Center at **AskCopsRC@usdoj.gov**.

COPS-AR-1031

## 9. Contract Provision

**Condition:**

*All contracts made by the award recipients under the federal award must contain the provisions required under 2 C.F.R. Part 200, Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards. Please see appendices in the Award Owner's Manual for a full text of the contract provisions.*

**Why this condition:**

Federal regulations require recipients and subrecipients to comply with the necessary contract provisions in order to standardize and strengthen oversight of all contracts made under federal awards. This provision protects the public interest and ensures the proper management and use of federal funds as it relates to contracts entered into by the recipient.

**What you should do:**

The recipient should review all contracts made under the federal award to ensure that they contain the provisions required under *2 C.F.R. Appendix II to Part 200—Contract Provisions for Non-Federal Entity Contracts Under Federal Awards* in the appendices of this manual.

## 10. Assurances and Certifications

**Condition:**

*The recipient acknowledges its agreement to comply with the Assurances and Certifications forms that were signed as part of its application.*

**Why this condition:**

Although the COPS Office has made every effort to simplify the process of applying for and receiving awards, several provisions of federal law require us to obtain the recipient's Assurances and Certifications regarding certain matters. Most of the Assurances and Certifications apply to all federal award programs.

**What you should do:**

Applicants to COPS Office award programs are required to sign the Assurances and Certifications forms at the time of application. Signing these documents assures the COPS Office that you have read, understood, and accepted the award terms and conditions outlined in the Assurances and Certifications. Please read these documents carefully, because signatures on these documents are treated as a material representation of fact upon which reliance will be placed when the U.S. Department of Justice determines to make an award. Additional copies of the Assurances and Certifications forms are contained in the appendices of this manual. If you have any questions about the Assurances and Certifications, please contact your assigned COPS Office Program Manager.

## 11. Conflict of Interest

**Condition:**

*Recipients and subrecipients must disclose in writing to the COPS Office or pass-through entity, as applicable, any potential conflict of interest affecting the awarded federal funding in accordance with 2 C.F.R. § 200.112.*

COPS-AR-1032

**Why this condition:**

Recipients and subrecipients are required to use federal funding in the best interest of their award program. Any decisions related to these funds must be free of hidden personal or organizational conflicts of interest, both in fact and in appearance.

This means that recipients and subrecipients should not participate in any award-related decisions or recommendations that involve any of the following people or groups:

- an immediate family member
- a partner
- an organization in which they are serving as an officer, director, partner, or employee
- any person or organization with whom they are negotiating or who has an arrangement concerning prospective employment, has a financial interest, or for other reasons can have less than an unbiased transaction with the recipient or subrecipient

This also means that recipients and subrecipients should avoid any action which might result in or create the appearance of

- using your official position for private gain;
- giving special treatment to any person;
- losing complete independence or objectivity;
- making an official decision outside official channels; or
- affecting negatively the confidence of the public in the integrity of the Federal Government or the program.

**What you should do:**

Ensure that you report in writing to the COPS Office or pass-through entity, as applicable, any potential conflict of interest that may affect your federal award.

## 12. Debarment and Suspension

**Condition:**

*The recipient agrees not to award federal funds under this program to any party which is debarred or suspended from participation in Federal assistance programs. 2 C.F.R. Part 180 (Governmentwide Nonprocurement Debarment and Suspension) and 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension).*

**Why this condition:**

Under federal regulations, recipients are required to ensure that federal funds are not given to parties that are debarred or suspended from participation in federal assistance programs. This is to protect the public interest and to ensure proper management and integrity in federal activities by conducting business only with responsible parties. For details regarding the debarment and suspension requirements, please see 2 C.F.R. Part 180 (Governmentwide Nonprocurement Debarment and Suspension), and 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension.)

COPS-AR-1033

**What you should do:**

If under a COPS Office award you enter into a contract for goods or services for $25,000 or more or any subaward, you must verify that the vendor or subrecipient and their respective principals (e.g., owners, top managers) with whom you intend to do business are not excluded or disqualified from participation in federal assistance programs. In addition, you must include a term or condition in the contract or subaward requiring the vendor or subrecipient to comply with subpart C of the OMB guidance in 2 C.F.R. Part 180 (Governmentwide Nonprocurement Debarment and Suspension) and subpart C of 2 C.F.R. Part 2867 (DOJ Nonprocurement Debarment and Suspension).

## 13. Employment Eligibility

**Condition:**

*The recipient agrees to complete and keep on file, as appropriate, the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS) Employment Eligibility Verification Form (I-9). This form is to be used by recipients of federal funds to verify that persons are eligible to work in the United States. Immigration Reform and Control Act of 1986 (IRCA), Public Law 99-603.*

**Why this condition:**

Under federal immigration law, all employers are required to take certain steps to ensure that persons that are hired are legally permitted to work in the United States. The United States Citizenship and Immigration Services Employment Eligibility Verification Form (I-9) outlines the types of documents that an employer should review to confirm that a new hire is eligible for employment.

**What you should do:**

You do not need to submit any documentation to the COPS Office to satisfy this condition. Rather, you should complete and maintain the I-9 forms for all new employees under the guidelines set forth by the United States Citizenship and Immigration Services. For further information about this requirement, please visit **https://www.uscis.gov/i-9-central**.

## 14. Enhancement of Contractor Protection from Reprisal for Disclosure of Certain Information

**Condition:**

*Recipients and subrecipients agree not to discharge, demote, or otherwise discriminate against an employee as reprisal for the employee disclosing information that he or she reasonably believes is evidence of gross mismanagement of a federal contract or award; a gross waste of federal funds; an abuse of authority relating to a federal contract or award; a substantial and specific danger to public health or safety; or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or award. Recipients and subrecipients also agree to provide to their employees in writing (in the predominant native language of the workforce) of the rights and remedies provided in 41 U.S.C. § 4712. Please see appendices in the Award Owner's Manual for a full text of the statute.*

COPS-AR-1034

**Why this condition:**

Under "Enhancement of contractor protection from reprisal for disclosure of certain information" (41 U.S.C. § 4712), recipients and subrecipients are prohibited from taking reprisal actions against employees for certain whistleblowing activities in connection with federal awards and contracts. The law protects the public interest and ensures the proper management and use of federal funds.

**What you should do:**

Recipients and subrecipients must not take reprisal actions against an employee for disclosing misconduct under federal contracts and awards to certain persons and entities.

Recipients and subrecipients are prohibited from discharging, demoting, or otherwise discriminating against an employee as reprisal for disclosing information that he or she reasonably believes is evidence of

- gross mismanagement of a federal contract or award;
- a gross waste of federal funds;
- an abuse of authority relating to a federal contract or award;
- a substantial and specific danger to public health or safety; or
- a violation of law, rule, or regulation related to a federal contract (including the competition for or negotiation of a contract) or award.

In addition, the disclosure must also have been made to

- a member of Congress or a representative of a committee of Congress;
- an inspector general;
- the Government Accountability Office;
- a federal employee responsible for contract or award oversight or management at the relevant agency;
- an authorized official of the U.S. Department of Justice or other law enforcement agency;
- a court or grand jury; or
- a management official or other employee of the contractor, subcontractor, or recipient who has the responsibility
- to investigate, discover, or address misconduct.

An employee is deemed to have made a protected disclosure if he or she initiates or provides evidence of misconduct in any judicial or administrative proceeding relating to waste, fraud, or abuse on a federal contract or award.

Recipients and subrecipients must inform their employees in writing, in the predominant language of the workforce, of employee whistleblower rights, protections, and remedies under 41 U.S.C. § 4712. Recipients and subrecipients who wish to use the U.S. Department of Justice, Office of Inspector General whistleblower information brochure to inform their employees of their rights, may obtain a copy at **https://oig.justice.gov/sites/default/files/2020-04/NDAA-brochure.pdf**.

Please see the appendices in this manual for a full text of the "Enhancement of contractor protection from reprisal for disclosure of certain information" (41 U.S.C. § 4712).

---

COPS-AR-1035

## 15. Equal Employment Opportunity Plan (EEOP)

**Condition:**

*All recipients of funding from the COPS Office must comply with the federal regulations pertaining to the development and implementation of an Equal Employment Opportunity Plan. 28 C.F.R. Part 42 subpart E.*

**Why this condition:**

It is the experience of the U.S. Department of Justice in implementing its responsibilities under the Omnibus Crime Control and Safe Streets Act of 1968 (Safe Streets Act), the statute that established the COPS Office, that "the full and equal participation of women and minority individuals in employment opportunities in the criminal justice system is a necessary component to the Safe Streets Act's program to reduce crime and delinquency in the United States" 28 C.F.R. § 42.301. The Equal Employment Opportunity Plan (EEOP) does not impose quotas or hiring requirements on recipients of federal funds.

**What you should do:**

The obligations to comply with the EEOP requirement differ depending on your organization's legal status, the number of its employees, and the amount of the award. If your organization is a government agency or private business and has received a single award for $25,000 or more and has fifty or more employees (counting both full- and part-time employees but excluding political appointees), then it has to prepare a Utilization Report and submit it to the Office for Civil Rights (OCR) within 120 days from the date of the award. Although the OCR has discretion to review all submitted Utilization Reports, it will review the Utilization Reports from recipients that receive an award of $500,000 or more.

To begin developing a Utilization Report, please consult the OCR's website at **https://ojp.gov/about/ocr/eeop.htm** and click EEOP Reporting Tool Login. Additional assistance can be found online at the bottom of the same webpage by clicking the EEO Reporting Tool Job Aid and Frequently Asked Questions.

If your organization has fewer than 50 employees or receives an award of less than $25,000 or is a nonprofit organization, a medical institution, an educational institution, or an Indian tribe, then it is exempt from the EEOP requirement. To claim the exemption, however, your organization must certify that it is exempt by logging into the EEO Reporting Tool on the OCR website at **https://ojp.gov/about/ocr/eeop.htm**, providing the contact and organizational profile information, and then submitting a Certificate of Exemption.

If you have further questions regarding the EEOP requirements, you may contact an EEOP specialist at the OCR by telephone at 202-616-1771or by email at **EEOPforms@usdoj.gov**.

## 16. False Statements

**Condition:**

*False statements or claims made in connection with COPS Office awards may result in fines, imprisonment, debarment from participating in federal awards or contracts, and/or any other remedy available by law. 31 U.S.C. § 3729–3733.*

COPS-AR-1036

**Why this condition:**

This condition advises recipients of the consequences of submitting false claims or statements on applications, financial and programmatic reports, or other award documents.

**What you should do:**

Ensure that all documentation related to your organization's receipt and use of award funding (award applications, progress reports, Federal Financial Reports, etc.) is true and accurate.

## 17. Federal Civil Rights

**Condition:**

*The recipient and any subrecipient must comply with applicable federal civil rights and nondiscrimination statutes and regulations, including section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), as implemented in subparts C and D of 28 C.F.R. Part 42; section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), as implemented in subpart G of 28 C.F.R. Part 42; section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681), as implemented in subpart D of 28 C.F.R. Parts 42 and 54; section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102), as implemented in subpart I of 28 C.F.R. Part 42; and section 809(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. § 10228(c)), as implemented in subpart D of 28 C.F.R. part 42.*

*In addition to applicable federal statutes and regulations that pertain to civil rights and nondiscrimination, the recipient and any subrecipient must comply with the requirements in 28 C.F.R. Parts 22 (Confidentiality of Identifiable Research and Statistical Information); 28 C.F.R. Part 23 (Criminal Intelligence Systems Operating Policies); 28 C.F.R. Part 38 (Partnership with Faith-Based and Other Neighborhood Organizations); and 28 C.F.R. Part 46 (Protection of Human Subjects). For an overview of the civil rights laws and nondiscrimination requirements in connection with your award, please see https://www.ojp.gov/program/civil-rights/overview.*

**Why this condition:**

In establishing financial assistance programs, Congress linked the receipt of federal funding to compliance with federal civil rights and nondiscrimination laws. As a result, recipients are required to comply with the civil rights and nondiscrimination laws referenced above. A hold may be placed on your award if it is deemed that your organization is not in compliance with federal civil rights laws or is not cooperating with an ongoing federal civil rights investigation. If a hold is placed on your award, you will not be able to obligate or draw down federal funds under your organization's COPS Office award until you comply with federal civil rights laws or cooperate with any ongoing federal civil rights investigation.

**What you should do:**

The Office for Civil Rights (OCR), Office of Justice Programs, U.S. Department of Justice has been delegated the responsibility for ensuring that recipients of federal financial assistance from the COPS Office are not engaged in discrimination prohibited by law. Included with your award package is a memorandum from the OCR, which addresses the federal civil rights statutes and regulations applicable to your award. You should review this memorandum to understand your organization's civil rights responsibilities. For an overview of the civil rights laws and nondiscrimination requirements in connection with your award, please see **https://www.ojp.gov/program/civil-rights/overview**.

The recipient and any subrecipient must comply with all applicable requirements of 28 C.F.R. Part 38, which includes rules that prohibit specific forms of discrimination on the basis of religion, a religious belief, a refusal to hold a religious belief, or refusal to attend or participate in a religious practice. Part 38 also sets out rules and requirements that pertain to recipients and subrecipients that engage in or conduct explicitly religious activities, as well as rules and requirements that pertain to recipients and subrecipients that are faith-based or religious organizations. Recipients and subrecipients that provide social services under this award must give written notice to beneficiaries and prospective beneficiaries prior to the provision of services (if practicable) which shall include language substantially similar to the language in 28 C.F.R. Part 38, Appendix C, sections (1) through (4). A sample written notice and other important Part 38 information may be found at **https://www.ojp.gov/program/civil-rights-office/partnerships-faith-based-and-other-neighborhood-organizations**. In addition, a faith-based recipient or subrecipient *may* consider religion in hiring *provided* it satisfies particular requirements, which can be found at **https://www.ojp.gov/funding/explore/legaloverview2024/civilrightsrequirements**.

As a recipient of federal financial assistance from the COPS Office, you are required to comply with the applicable federal civil rights and nondiscrimination laws to collect data and information sufficient to permit effective enforcement of such laws, and to cooperate with any federal civil rights investigation, which includes providing access to records, accounts, documents, information, facilities, and staff.

## 18. Mandatory Disclosure

**Condition:**

*Recipients and subrecipients must timely disclose in writing to the COPS Office or pass-through entity, as applicable, all federal criminal law violations involving fraud, bribery, or gratuity that may potentially affect the awarded federal funding. Recipients that receive an award over $500,000 must also report certain civil, criminal, or administrative proceedings in SAM and are required to comply with the Term and Condition for Recipient Integrity and Performance Matters as set out in 2 C.F.R part 200, Appendix XII to Part 200. Failure to make required disclosures can result in any of the remedies, including suspension and debarment, described in 2 C.F.R. § 200.339.* 2 C.F.R. § 200.113.

**Why this condition:**

Federal regulations require recipients and subrecipients to report all federal violations involving fraud, bribery, or gratuity that may affect the awarded federal funds. In addition, recipients that receive an award of more than $500,000 must also report certain civil, criminal, or administrative proceedings in SAM and are required to comply with the Term and Condition for Recipient Integrity and Performance Matters as set out in 2 C.F.R. part 200, Appendix XII to Part 200. This condition advises your organization of the requirement and the consequences of failing to report such violations to the COPS Office or pass-through entity.

**What you should do:**

Ensure that you timely report in writing to the COPS Office or pass-through entity all federal violations involving fraud, bribery, or gratuity that may affect your federal award and, if applicable, report certain civil, criminal, or administrative proceedings in SAM.

COPS-AR-1038

## 19. Reports/Performance Goals

**Condition:**

*To assist the COPS Office in monitoring and tracking the performance of your award, your agency will be responsible for submitting semi-annual programmatic performance reports that describe project activities during the reporting period and quarterly Federal Financial Reports using Standard Form 425 (SF-425). 2 C.F.R. §§ 200.328–200.329. The performance report is used to track your agency's progress toward implementing community policing strategies and to collect data to gauge the effectiveness of increasing your agency's community policing capacity through COPS Office funding. The Federal Financial Report is used to track the expenditures of the recipient's award funds on a cumulative basis throughout the life of the award.*

**Why this condition:**

The Public Safety Partnership and Community Policing Act of 1994 and other federal regulations and policies require that financial assistance provided by the Federal Government must be monitored carefully to ensure the proper use of federal funds. In addition, the COPS Office seeks to document, on a continuing basis, the progress of our programs and recipients.

**What you should do:**

This award condition is designed to make your organization aware of reporting requirements associated with Safer Outcomes awards. Semi-annual programmatic performance reports and a final programmatic performance report must be submitted directly to the COPS Office through the JustGrants system. Your organization is also required to submit quarterly Federal Financial Reports using Standard Form 425 (SF-425) within 30 days after the end of each calendar quarter. A final SF-425 will be due within120 days after the end of the award period. This report reflects the actual cumulative federal expenditures incurred during the funding period, and the remaining unobligated balance of federal funds. Under federal regulations, your organization is not permitted to draw down federal funding for costs incurred after the official award end date; however, you will have a 120-day grace period after the award end date during which you can drawdown funds for eligible expenditures incurred before the award end date. Organizations with more than one delinquent programmatic or financial report submission per fiscal year may be subject to delays in receiving reimbursement for allowable expenses and may be required to receive technical assistance to improve compliance with reporting. These reports are discussed in greater detail in the section titled "Reports" in this manual. All reports should be submitted within the deadlines given to avoid suspension or possible termination of award funds or other remedial actions; failure to submit required reports may also impact future funding opportunities.

## 20. Recipient Integrity and Performance Matters

**Condition:**

*For awards over $500,000, the recipient agrees to comply with the following requirements of 2 C.F.R. Part 200, Appendix XII to Part 200 – Award Term and Condition for Recipient Integrity and Performance Matters:*

*I. Reporting of Matters Related to Recipient Integrity and Performance*

*(a) General Reporting Requirement.*

*(1) If the total value of your active grants, cooperative agreements, and procurement contracts from all Federal agencies exceeds $10,000,000 for any period of time during the period of performance of this Federal award, then you as the recipient must ensure the information available in the responsibility/qualification records through the System for Award Management (SAM.gov), about civil, criminal, or administrative proceedings described in paragraph (b) of this award term is current and complete. This is a statutory requirement under section 872 of Public Law 110–417, as amended (41 U.S.C. 2313). As required by section 3010 of Public Law 111–212, all information posted in responsibility/qualification records in SAM.gov on or after April 15, 2011 (except past performance reviews required for Federal procurement contracts) will be publicly available.*

*(b) Proceedings About Which You Must Report.*

*(1) You must submit the information required about each proceeding that—*

*(i) Is in connection with the award or performance of a grant, cooperative agreement, or procurement contract from the Federal Government;*

*(ii) Reached its final disposition during the most recent five year period; and*

*(iii) Is one of the following—*

*(A) A criminal proceeding that resulted in a conviction;*

*(B) A civil proceeding that resulted in a finding of fault and liability and payment of a monetary fine, penalty, reimbursement, restitution, or damages of $5,000 or more;*

*(C) An administrative proceeding that resulted in a finding of fault and liability and your payment of either a monetary fine or penalty of $5,000 or more or reimbursement, restitution, or damages in excess of $100,000; or*

*(D) Any other criminal, civil, or administrative proceeding if—*

*(1) It could have led to an outcome described in paragraph (b)(1)(iii)(A) through (C);*

*(2) It had a different disposition arrived at by consent or compromise with an acknowledgment of fault on your part; and*

*(3) The requirement in this award term and condition to disclose information about the proceeding does not conflict with applicable laws and regulations.*

*(c) Reporting Procedures. Enter the required information in SAM.gov for each proceeding described in paragraph (b) of this award term. You do not need to submit the information a second time under grants and cooperative agreements that you received if you already provided the information in SAM.gov because you were required to do so under Federal procurement contracts that you were awarded.*

*(d) Reporting Frequency. During any period of time when you are subject to the requirement in paragraph (a) of this award term, you must report proceedings information in SAM.gov for the most recent five year period, either to report new information about a proceeding that you have not reported previously or affirm that there is no new information to report. If you have Federal contract, grant, and cooperative agreement awards with a cumulative total value greater than $10,000,000, you must disclose semiannually any information about the criminal, civil, and administrative proceedings.*

COPS-AR-1040

*(3) Definitions. For purposes of this award term—*

*Administrative proceeding means a nonjudicial process that is adjudicatory in nature to make a determination of fault or liability (for example, Securities and Exchange Commission Administrative proceedings, Civilian Board of Contract Appeals proceedings, and Armed Services Board of Contract Appeals proceedings). This includes proceedings at the Federal and State level but only in connection with performance of a Federal contract or grant. It does not include audits, site visits, corrective plans, or inspection of deliverables.*

*Conviction means a judgment or conviction of a criminal offense by any court of competent jurisdiction, whether entered upon a verdict or a plea, and includes a conviction entered upon a plea of nolo contendere. Total value of currently active grants, cooperative agreements, and procurement contracts includes the value of the Federal share already received plus any anticipated Federal share under those awards (such as continuation funding).*

**Why this condition:**

Under 2 C.F.R. § 200.211(c)(1)(iii), recipients of awards in excess of $500,000 are required to report certain civil, criminal, and administrative proceedings if they have active federal grants, cooperative agreements, or contracts (or any combination of these) that total more than $10,000,000 during the COPS Office award period. The purpose is to protect the public interest and to ensure proper management in federal activities by conducting business with responsible parties.

**What you should do:**

If the total value of your active grants, cooperative agreements, and contracts from all federal awarding agencies exceeds $10,000,000 during the COPS Office award period, then you must ensure that the proceedings described in paragraph 2 of this award term that are reported in the System for Award Management (SAM) are current. The information about the reported proceedings is made available in SAM via the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)).

During the award period, you must either report for the most recent five year period new information about any proceeding(s) that you have not reported previously or affirm that there is no new information to report. You must also disclose semiannually any information about criminal, civil, and administrative proceedings.

## 21. System for Award Management (SAM) and Universal Identifier Requirements

**Condition:**

*The recipient agrees to comply with the following requirements of 2 C.F.R. Part 25, Appendix A to Part 25 – Award Term:*

*I. System for Award Management and Universal Identifier Requirements*

*(a) Requirement for System for Award Management. (1) Unless exempt from this requirement under 2 C.F.R. 25.110, the recipient must maintain a current and active registration in SAM.gov. The recipient's registration must always be current and active until the recipient submits all final reports required under this Federal award or receives the final payment, whichever is later. The recipient must review and update its information in SAM.gov at least annually from the date of its initial registration or any subsequent updates to ensure it is current, accurate,*

COPS-AR-1041

*and complete. If applicable, this includes identifying the recipient's immediate and highest-level owner and subsidiaries and providing information about the recipient's predecessors that have received a Federal award or contract within the last three years.*

*(b) Requirement for Unique Entity Identifier (UEI). (1) If the recipient is authorized to make subawards under this Federal award, the recipient:*

*(i) Must notify potential subrecipients that no entity may receive a subaward until the entity has provided its UEI to the recipient.*

*(ii) Must not make a subaward to an entity unless the entity has provided its UEI to the recipient. Subrecipients are not required to complete full registration in SAM.gov to obtain a UEI.*

*(c) Definitions. For the purposes of this award term:*

*System for Award Management (SAM.gov) means the Federal repository into which a recipient must provide the information required for the conduct of business as a recipient. Additional information about registration procedures may be found in SAM.gov (currently at https://www.sam.gov).*

*Unique entity identifier means the universal identifier assigned by SAM.gov to uniquely identify an entity.*

*Entity is defined at 2 C.F.R. 25.400 and includes all of the following types as defined in 2 C.F.R. 200.1::*

*1. Non-Federal entity;*

*2. Foreign organization;*

*3. Foreign public entity;*

*4. Domestic for-profit organization; and*

*5. Federal agency.*

*Subaward has the meaning given in 2 C.F.R. 200.1.*

*Subrecipient has the meaning given in 2 C.F.R. 200.1.*

**Why this condition:**

The purpose of this standard award term is to ensure government-wide uniformity in establishing a universal unique entity identifier for federal financial assistance applicants, as well as recipients and their direct subrecipients (if applicable) and to establish the SAM as the repository for standard information about applicants and recipients.

**What you should do:**

At the time of award application, your organization was required to provide its SAM unique entity identifier and be registered in the SAM database.

COPS-AR-1042

Your organization should continue to use the same unique entity identifier provided in your award application and update, as needed, the information associated with that unique entity identifier. If your organization is authorized to make subawards under its award, your organization may make subawards only to entities that have unique entity identifiers.

Your organization must maintain active registration and current information in the SAM until you submit the final financial report or receive the final payment under your award, whichever is later. **Your organization must review and update its SAM information at least once per year to maintain an active registration status.** For more information about SAM registration, please visit **www.sam.gov**.

## 22. Additional High-Risk Recipient Requirements

**Condition:**

*The recipient agrees to comply with any additional requirements that may be imposed during the award performance period if the awarding agency determines that the recipient is a high-risk recipient. 2 C.F.R. § 200.208.*

**Why this condition:**

In accordance with 2 C.F.R. § 200.208, the DOJ may impose additional requirements specific to your award, as needed, when it determines that there is unsatisfactory performance, financial or administrative instability, noncompliance with award terms and conditions, or other lack of responsibility risk factors. In such cases, the DOJ may impose special conditions or restrictions that may include requiring the production of documentation, financial award administration training, on-site monitoring, prior approval for expenditure of funds, quarterly progress reports, separate bank accounts, or other requirements.

**What you should do:**

In order to obtain a COPS Office award, recipients must agree to comply with any additional requirements that may be imposed during the award performance period if the awarding agency determines that the recipient is a high-risk recipient.

## 23. Supplementing, Not Supplanting

**Condition:**

*State, local, and tribal government recipients must use award funds to supplement, and not supplant, state, local, or Bureau of Indian Affairs (BIA) funds that are already committed or otherwise would have been committed for award purposes (hiring, training, purchases, and/or activities) during the award period. In other words, state, local, and tribal government recipients may not use COPS Office funds to supplant (replace) state, local, or BIA funds that would have been dedicated to the COPS Office-funded item(s) in the absence of the COPS Office award. 34 U.S.C. § 10384(a).*

**Why this condition:**

The COPS Office statutory nonsupplanting requirement mandates that award funds not be used to replace state or local funds (or, for tribal recipients, BIA funds) that would, in the absence of federal aid, be made available for the award purposes.

COPS-AR-1043

**What you should do:**

For state, local, and tribal recipients, Safer Outcomes funds may not be used to pay for any item or cost funded under the award (equipment, personnel, training, etc.) if that item or cost was otherwise budgeted with state, local, or BIA funds. In addition, recipients may not reallocate state, local, or BIA funds already budgeted for award purposes as a result of receiving Safer Outcomes award funds. If you have questions concerning this award term and how it pertains to your project budget, please contact your COPS Office Program Manager.

## 24. Sole Source Justification

**Condition:**

*Recipients who have been awarded funding for the procurement of an item (or group of items) or service in excess of $250,000 and who plan to seek approval for use of a noncompetitive procurement process must provide a written sole source justification to the COPS Office for approval prior to obligating, expending, or drawing down award funds for that item or service. 2 C.F.R. § 200.325(b)(2).*

**Why this condition:**

In general, recipients are required to procure funded items through open and free competition. However, in some instances, recipients may have already determined that competition is not feasible.

**What you should do:**

If you have received an award for an item (or group of items) or service in excess of $250,000 and have already determined that the award of a contract through a competitive process is infeasible, you must provide a justification in JustGrants that explains why it is necessary to contract noncompetitively (see ***Grant Award Modification Job Aid Reference Guide***).

The initial determination that competition is not feasible can be made if one of the following circumstances exists:

- Competition is determined inadequate after soliciting several sources.
- The COPS Office authorizes noncompetitive proposals in response to a written request from the recipient.
- The procurement transaction can only be fulfilled from a single source.
- The public exigency or emergency for the requirement will not permit a delay resulting from providing public notice of a competitive solicitation.

The COPS Office will review your request and the supporting information that you provide and will make a determination as to whether or not an exception can be made to the general rule regarding competition. If submitting a sole source justification request to the COPS Office, please use the format described in the *Sole Source Justification* fact sheet which can be found at the **Award Management Materials web page**.

## 25. Modifications

**Condition:**

*Award modifications are evaluated on a case-by-case basis in accordance with 2 C.F.R. § 200.308(i). For federal awards in excess of $250,000, any modification request involving the reallocation of funding between budget categories that exceed or are expected to exceed 10 percent (10%) of the total approved budget requires prior*

COPS-AR-1044

*written approval by the COPS Office. Regardless of the federal award amount or budget modification percentage, any reallocation of funding is limited to approved budget categories. In addition, any budget modification that changes the scope of the project requires prior written approval by the COPS Office.*

**Why this condition:**

The COPS Office realizes that organizations may need to reprogram award funds. Acceptable examples of such award modifications include purchasing additional equipment using cost-savings from approved items or purchasing a different type of equipment due to changing needs. Under federal regulations, you are required to expend federal funds only as approved in the award package. Requests to change or alter an award that meet certain threshold requirements must be submitted to the COPS Office for written approval prior to their purchase or implementation. Without prior written approval, you must continue to implement your award as it was originally outlined and accepted by your organization. Reprogrammed funds must be allocated for items covered within the original scope of the award. Please be advised that reprogramming requests for unallowable costs will not be approved.

Your organization may reprogram its budget up to an aggregate (over the course of your project) of 10 percent of the total project cost without prior written approval from the COPS Office. However, you should notify your COPS Office Program Manager of any reprogramming that falls below the 10 percent threshold as well. For awards in excess of the simplified acquisition threshold (currently $250,000), any reprogramming of funds that totals an aggregate of 10 percent or more of the approved budget requires prior written approval from the COPS Office.

**What you should do:**

You are required to notify your COPS Office Program Manager if you determine that your organization will need to reprogram award funds. If your modification exceeds an aggregated (over the course of your project) 10 percent of your overall award, your organization must log into JustGrants. Please contact your COPS Office Program Manager for further direction on any additional requirements that may apply to your modification request. The COPS Office will then evaluate your request and notify your organization of our decision in writing. Implementation of the modified award budget may begin following written approval from the COPS Office. Please note that modification approvals for active awards will be accompanied by a modified financial section reflecting the approved changes.

## 26. Evaluations

**Condition:**

*The COPS Office may conduct monitoring or sponsor national evaluations of its award programs. The recipient agrees to cooperate with the monitors and evaluators. 34 U.S.C. § 10385(b).*

**Why this condition:**

The Public Safety Partnership and Community Policing Act of 1994 states that evaluations of the program may be carried out or commissioned by the Attorney General for the furtherance of the purposes of the Act. The COPS Office conducts evaluations to determine which programs are working, how programs may be improved, and why certain programs are more successful than others. Specifically, the COPS Office may assess the way in which your organization implements its Safer Outcomes award. COPS Office staff or evaluators may study the effectiveness of funded programs, projects, and activities. Evaluators may collect information about the programs' effect on crime,

COPS-AR-1045

victims of crime, and the quality of life in communities. In addition, they may ask questions about the challenges encountered during project implementation, how residents feel about community policing, and how police feel about their work. This information will be useful to other communities and police agencies across the country.

**What you should do:**

When evaluations are undertaken, you may be contacted in writing with specific requests for information. In general, evaluators may need to speak with individuals in your organization, observe activities, and obtain written reports about and from your organization. You will be asked to facilitate any site visits and information-gathering activities. In addition, you will be asked to provide accurate and timely information about your award activities. You should fully comply with any requests made regarding these evaluations.

## 27. Allowable Costs

**Condition:**

*The funding under this award is for the payment of approved costs for program-specific purposes. The allowable costs approved for your agency's award are limited to those listed in your agency's award package. In accordance with 2 C.F.R. § 200.400(g), the recipient or subrecipient must not earn or keep any profit resulting from the award. Your agency may not use award funds for any costs not identified as allowable in the award package.*

**Why this condition:**

Funding may only be used to pay for items and services approved by the COPS Office as reflected in the financial information section of the award package. FY 2024 Safer Outcomes funds must be used as outlined in the approved cooperative agreement and budget. Please note that in accordance with 2 C.F.R. § 200.101(c), the COPS Office applies the cost principles set forth in 2 C.F.R. Part 200, Subpart E to for-profit organizations. In addition, in accordance with 2 C.F.R. § 200.400(g), the recipient or subrecipient must not earn or keep any profit resulting from the award.

To be eligible for payment under this award, the purchase of approved items must be made on or after the award start date and comply with the guidelines described in the section "Accessing Award Funds" in this manual. The section "Financial Record Maintenance" outlines the types of records you must keep to document that you followed this award condition. Purchases must also reflect the costs that were approved in the award package.

**What you should do:**

Refer to your award package for the list of approved allowable cost categories. Listed below are the budget categories that may appear. If your organization's operating budget categories differ from those approved in the award package, your organization should maintain a cross-reference to clearly identify where the funds were budgeted. As long as funds are spent during the award period on project costs that were documented in your application's budget summary and approved by the COPS Office through the issuance of the award package, this award condition will be satisfied. The award number should be included on all budgetary documentation including purchase orders, receipts, and other documentation. All recipients should keep and maintain the most recent, approved version of their 2024 Safer Outcomes application and award package for future reference.

COPS-AR-1046

*Civilian Personnel (salaries and benefits)*

Personnel expenses may be reimbursed for project activities that take place on or after the award start date. In addition, a position's salary must be reasonable for the services rendered and must be paid to a person appointed under the law or rules governing hiring by your organization. Salary payments must be based on payroll records. Time and attendance records or the equivalent must support payroll records. A recipient may not use federal funds to pay total cash compensation to any employee of the recipient at a rate that exceeds 110 percent of the maximum annual salary payable to a member of the Federal Government's Senior Executive Service (SES) at an agency with a Certified SES Performance Appraisal System for that year. The 2024 salary table for SES employees is available at the Office of Personnel Management website: **https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/**.

If any civilian personnel are employed on a part-time or temporary basis, your organization must specify the percentage of time that each person is working solely on the project identified in your organization's Safer Outcomes proposal. Fringe benefits may be paid if they are part of a reasonable compensation package offered to your employees. Particular items of fringe benefits must fall within the categories authorized by the COPS Office. Authorized fringe benefits include FICA, Social Security, health insurance, life insurance, vacation, sick leave, retirement, worker's compensation, and unemployment insurance.

*Travel*

Travel costs for transportation, lodging, meals, temporary dependent care, and incidental expenses incurred by personnel while on official business, such as attendance at an award-related meeting or conference when travel is further than 50 miles from program location, are allowable with prior approval from the COPS Office. In accordance with 2 C.F.R. § 200.475, travel costs for official business directly related to the award will be reimbursed based upon the recipient's written travel reimbursement policies if the costs are reasonable and allocable under the project. In the absence of an acceptable written policy regarding travel costs, allowable rates and amounts established by the U.S. General Services Administration (GSA) for the relevant geographic area will apply. The current GSA travel policy and per diem rates can be found at **www.gsa.gov**.

Allowable airfare costs will be reimbursed based upon the least expensive unrestricted accommodations class offered by commercial airlines—for example, lowest discount commercial airfare, the Federal Government contract airfare (if authorized and available), or standard coach airfare—unless otherwise authorized in advance by the COPS Office.

Temporary dependent care costs above and beyond regular dependent care that directly results from conference travels are allowable as long as the costs incurred (1) are a direct result of the individual's travel for the federal award; (2) are consistent with the recipient's documented travel policy for all entity travel; and (3) are only temporary during the travel period.

The Safer Outcomes program will fund award-related travel costs for the recipient agency or other (nonrecipient) individuals to attend training and technical assistance conferences, seminars, or classes or to visit a site specified in the application. Allowable award-related travel costs that were included in the application have been approved by the COPS Office as part of the Safer Outcomes award and final budget. Your organization should keep timely and accurate records of all travel expenses. If at any time these costs change, you should immediately contact your COPS Office Program Manager.

COPS-AR-1047

*Equipment*

To be eligible for payment under this award, the purchase of equipment and technology must occur on or after the award start date, the items must be those specifically applied for and approved by the COPS Office, and they must meet the guidelines described in 2 C.F.R. Part 200, Subpart E – Cost Principles. For recipients that are state, local, or tribal government entities, award-funded equipment and technology must supplement, not supplant (replace), locally funded items that would have been funded even in the absence of this award. Funds currently budgeted or obligated for the purchase of equipment and technology may not be reallocated to other purposes or reimbursed upon receiving the Safer Outcomes award. Organizations should establish practices to receive, label, inventory, and track the location of all purchases made for award-funded equipment and/or technology.

*Supplies*

All supplies must be solely used for the project identified in your project proposal. Reimbursements for office supplies that are consumed by routine administrative purposes instead of project-related activities are prohibited. Items must meet the guidelines described in 2 C.F.R. Part 200, Subpart E – Cost Principles. For any training awards, the COPS Office allows the purchase of flash drives or USB devices to distribute training materials with approval prior to purchasing.

*Sub-awards/Procurement Contracts*

The applicant should distinguish clearly between subawards and contracts in allocating any funds to other entities. Pursuant to 2 C.F.R. § 200.331, a subaward is for the purpose of carrying out a portion of the federal award, and a contract is for the purpose of obtaining goods and services for the recipient's own use. The substance of the relationship is more important than the form of the agreement in determining whether the recipient of the pass-through funds is a subrecipient or a contractor. Keep in mind that the awarding and monitoring of contracts must follow documented procurement procedures, including full and open competition, pursuant to the procurement standards in 2 C.F.R. §§ 200.318- 200.327, and the issuance of subawards must meet the requirements of 2 C.F.R. § 200.332.

Any recipient of an award will be responsible for monitoring subawards and contracts in accordance with all applicable statutes, regulations, and guidelines. Primary recipients will be responsible for oversight of subrecipient or partner spending and monitoring specific performance measures and outcomes attributable to the use of COPS Office funds.

All sole-source procurements of goods and services (those not awarded competitively) in excess of $250,000 require prior approval from the COPS Office. Please see the *Sole Source Justification* fact sheet, which can be found at the **Award Management Materials web page**.

Consultant expenses include goods or services that directly contribute to the implementation or enhancement of the project. The use of a consultant should be more economical than direct employment. Compensation for individual consultant services procured under a COPS Office award must be reasonable and allocable in accordance with Office of Management and Budget (OMB) cost principles, and consistent with that paid for similar services in the marketplace. The services should be commensurate with the rate or salary paid by the primary employer.

Unless otherwise approved by the COPS Office, independent consultant rates will be approved based on the salary a consultant receives from his or her primary employer, as applicable, up to $650 per day (or $81.25 per hour). Please note that this does not mean that the rate can or should be as high as $650 for all consultants. If individuals

receive fringe benefits from their primary employer, such fringe benefit costs should not be included in the calculation of consultant rates. A consultant rate justification will need to be submitted for review and approval to the COPS Office for any consultants paid more than $650 per day prior to incurring any costs. Determinations of approval will be made on a case-by-case basis. Please see the *Consultant Rate Justification* fact sheet, which can be found at the **Award Management Materials web page**.

Consultant travel costs follow the same guidelines as the "Travel" category but should be costs associated with consultant travel. These costs should not be reflected in the "Civilian Personnel" or "Travel" categories.

All other consultant-related expenses should be included in this section such as supply and equipment requests. The same guidelines as previously stated in the above sections will apply.

If an applicant proposes a program or activity that would deliver services or benefits to individuals, the costs of taking reasonable steps to provide meaningful access to those services or benefits for individuals with limited English proficiency may be allowable. Reasonable steps to provide meaningful access to services or benefits may include interpretation or translation services, where appropriate. For additional information, see the "Civil Rights Compliance."

*Other costs*

Items that do not conform to any of the category descriptions specific above but that have a direct correlation to the overall success of a recipient's project objectives and are necessary for the project to reach full implementation will be considered on a case-by-case basis by the COPS Office.

If at any time you are unsure if an item is considered allowable or unallowable, please contact your COPS Office Program Manager for further assistance.

*Indirect costs*

Indirect (facilities and administrative, or F&A) costs are costs that are incurred for a common or joint purpose benefiting more than one cost objective and not readily assignable to a particular project but are necessary to the operation of the agency and the performance of the project. Indirect costs are allowable for this program, but must adhere to the standards set forth in the applicable Office of Management and Budget (OMB) guidance as stated in 2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards) as adopted by the U.S. Department of Justice in 2 C.F.R. § 2800.101. Examples of indirect costs include those incurred for facility operation and maintenance, depreciation, and administrative salaries.

Indirect cost rates are federally negotiated and approved rates that are based on audited and documented expenses approved to be included within an indirect cost rate. It is important that your organization carefully track and update its indirect cost rate during the COPS Office award period.

The recipient understands that if they were approved for indirect costs based on an expired indirect cost rate at the time of application, a special condition may have been added to the award prohibiting the drawdown of funds for reimbursement of indirect costs until a current indirect cost rate has been determined by their cognizant agency and a copy of the "new" approved and signed Indirect Cost Negotiation Agreement has been submitted to the COPS Office.

COPS-AR-1049

The recipient understands that indirect costs may typically only be requested at the time of application. Transferring funds into or out of the indirect cost category is not allowable without prior approval from the COPS Office. A budget modification is required.

If your organization's approved indirect cost rate expires during the award period, a current approved rate must be submitted to the COPS Office in order to continue to draw down award funding for indirect costs. Your expired rate must be renegotiated or extended by your cognizant federal agency. An approved indirect cost rate may be extended one time for up to four years, and once the cognizant federal agency has approved your extension, you must abide by that rate for the agreed-upon time period. At the end of the extension period, you must renegotiate a new indirect cost rate. Your organization must advise the COPS Office in writing of any changes to your approved indirect cost rate during the award period and must request a budget modification with the COPS Office to reflect any rate change.

In addition, if a provisional indirect cost rate is in effect at award closeout, your organization shall proceed with closeout, but you will need to complete an expenditure analysis upon receipt of the approved final indirect cost rate to determine if an adjustment is necessary. If your organization drew down excess COPS Office funding for indirect costs, then your organization must return the overpayment to the COPS Office and submit a revised Federal Financial Report (SF-425). If your organization incurred additional indirect costs, then your organization may request a budget modification if the award is still open and award funds are available. If your organization returns or draws down COPS Office funding, then your organization will need to submit a revised final Federal Financial Report (SF-425).

Please see the *Indirect Costs* fact sheet*,* which can be found at the **Award Management Materials web page**.

*Please be advised that recipients may not use COPS Office funding for the same item or service also funded by another U.S. Department of Justice award.*

Please also see "Duplicative Funding" condition.

## 28. Extensions

**Condition:**

*Recipients may request an extension of the award period to receive additional time to implement their award program. Such extensions do not provide additional funding. Only those recipients that can provide a reasonable justification for delays will be granted no-cost extensions. Extension requests must be received prior to the end date of the award.* 2 C.F.R. §§ 200.308(f)(10) and 200.309.

**Why this condition:**

Under federal regulations, requests to extend the award period require prior written approval from the COPS Office. Without an approved extension, your organization is not permitted to draw down federal funding for costs incurred beyond the official award end date. When justified, the COPS Office will seek to accommodate reasonable requests for no-cost time extensions to fully implement the COPS Office award.

**What you should do:**

The COPS Office will contact your organization during the last quarter of the award period to determine whether a no-cost time extension is needed. Requests to extend the award period must be received by the COPS Office before the official award end date. Failure to submit a request for a no-cost time extension before the award end date may result in the immediate deobligation of any remaining award funds. Please note that the project period of performance will be extended, if necessary, until the deliverable is considered final. If the award is set to expire, prior to the final approval of the deliverable, a no-cost extension will be executed for a reasonable amount of time for the recipient to complete the final deliverable.

## 29. Computer Network Requirement

**Condition:**

*The recipient understands and agrees that no award funds may be used to maintain or establish a computer network unless such network blocks the viewing, downloading, and exchanging of pornography. Nothing in this requirement limits the use of funds necessary for any federal, state, tribal, or local law enforcement agency or any other entity carrying out criminal investigations, prosecution, or adjudication activities. Consolidated Appropriations Act, 2024, Public Law 118–42, Division C, Title V, Section 527.*

**Why this condition:**

The Appropriations Act prohibits the use of federal funds to maintain or establish a computer network that does not block the viewing, downloading, and exchanging of pornography. This provision protects the public interest in the proper management and use of federal funds.

**What you should do:**

The recipient must not use award funds to maintain or establish a computer network unless the network blocks pornography. This does not limit the use of funds for criminal investigations, prosecution, or adjudication activities.

## 30. Public Release Information

**Condition:**

*The recipient agrees to submit one copy of all reports and proposed publications resulting from this award ninety (90) days prior to public release. Any publications (written, curricula, visual, sound, reports, or websites) or computer programs, whether or not published at government expense, shall contain the following statement:*

> *"This project was supported, in whole or in part, by federal award number YYYY-XX-XXXX awarded to [entity] by the U.S. Department of Justice, Office of Community Oriented Policing Services. The opinions contained herein are those of the author(s) or contributor(s) and do not necessarily represent the official position or policies of the U.S. Department of Justice. References to specific individuals, agencies, companies, products, or services should not be considered an endorsement by the author(s) or the U.S. Department of Justice. Rather, the references are illustrations to supplement discussion of the issues.*
>
> *The internet references cited in this publication were valid as of the date of publication. Given that URLs and websites are in constant flux, neither the author(s) nor the COPS Office can vouch for their current validity."*

COPS-AR-1051

**Why this condition:**

The COPS Office wants to ensure the quality, objectivity, utility, and integrity of information in funded projects that are disseminated to the public. However, award-funded reports and publications are not works of authorship by the Federal Government and should not be construed to reflect the official policy or position of the U.S. Department of Justice.

**What you should do:**

Ensure that all publications developed under your award contain the required statement listed above.

### 31. Paperwork Reduction Act Clearance and Privacy Act Review

**Condition:**

*The recipient agrees, if required, to submit all surveys, interview protocols, and other information collections to the COPS Office for submission to the Office of Management and Budget (OMB) for clearance under the Paperwork Reduction Act (PRA). Before submission to OMB, all information collections that request personally identifiable information must be reviewed by the COPS Office to ensure compliance with the Privacy Act. The Privacy Act compliance review and the PRA clearance process may take several months to complete. 44 U.S.C. §§ 3501-3520 and 5 U.S.C. § 552a.*

**Why this condition:**

The purpose of the Paperwork Reduction Act is to reduce, minimize, and control paperwork burdens on the public while maximizing the practical utility and public benefit of information created, collected, disclosed, maintained, used, shared, and disseminated by or for the Federal Government. See 5 C.F.R. § 1320.1. In addition, the Privacy Act establishes a "code of fair information practices" that regulates the collection, maintenance, use, and disclosure of personally identifiable records. 5 U.S.C. § 552a.

A collection of information undertaken by a recipient is considered to be conducted or sponsored by a federal agency only if (1) the recipient is conducting the collection of information at the specific request of the agency, or (2) the terms and conditions of the award require specific approval by the agency of the collection of information or the collection procedures. See 5 C.F.R. § 1320.3(d).

**What you should do:**

When you undertake surveys, interviews, and other methods of information collection in furtherance of the objectives of the award, you should contact your COPS Office Program Manager. The COPS Office Program Manager will inform you whether Office of Management and Budget (OMB) approval of the information collection method is required and of the procedures necessary to obtain this approval. As part of the OMB approval process, a privacy assessment will be completed to determine if an information collection requires a privacy-related notice. OMB approval may take several months to receive, so recipients are advised to allow ample time for the processing of this request.

COPS-AR-1052

## 32. Copyright

**Condition:**

*If applicable, the recipient may copyright any work that is subject to copyright and was developed, or for which ownership was acquired, under this award in accordance with 2 C.F.R. § 200.315(b). The COPS Office reserves a royalty-free, nonexclusive and irrevocable license to reproduce, publish, or otherwise use the work, in whole or in part (including create derivative works), for Federal Government purposes, and to authorize others to do so. The COPS Office also reserves the right, at its discretion, not to publish deliverables and other materials developed under this award as a U.S. Department of Justice resource.*

*Products and deliverables developed with award funds and published as a U.S. Department of Justice resource will contain the following copyright notice:*

> *"This resource was developed under a federal award and may be subject to copyright. The U.S. Department of Justice reserves a royalty-free, nonexclusive, and irrevocable license to reproduce, publish, or otherwise use the work for Federal Government purposes and to authorize others to do so. This resource may be freely distributed and used for noncommercial and educational purposes only."*

**Why this condition:**

U.S. Department of Justice regulations allow the recipient of a Safer Outcomes award to copyright any work that is subject to copyright and was developed, or for which ownership was purchased, under an award.

As a Federal Government agency whose activities include producing and disseminating law enforcement materials to advance public safety through community policing across the nation, the COPS Office has an interest in making your deliverables and products widely available and accessible to the public. The COPS Office may make any work that was developed or purchased under this award publicly available by any means without restriction, including through designated public access repositories, a U.S. Department of Justice website, social media account, a hard copy, or in electronic form. The COPS Office also reserves the right, at its discretion, to not publish deliverables and other materials (e.g., reports, publications, manuals, and training curricula) developed under this award as a U.S. Department of Justice resource.

**What you should do:**

The recipient is responsible for acquiring the rights, and ensuring that its subrecipients/contractors/authors acquire the rights, including the payment of required fees, to use copyrighted material for inclusion in deliverables that are developed under this award. All licensing, publishing, or similar agreements with a copyright holder, publisher, or other relevant party must include provisions giving the COPS Office a royalty-free, nonexclusive, and irrevocable license to reproduce, publish, or otherwise use the work in whole or in part (including create derivative works) for Federal Government purposes and to authorize others to do so. If the recipient retains a contractor or consultant to author or coauthor a work under this award, the recipient must ensure that there is a written agreement with the contractor or consultant that explicitly (1) assigns and transfers all rights to the copyright in the work to the recipient for the full term of copyright and, if a copyright transfer is not feasible, (2) awards the COPS Office the same royalty-free, nonexclusive, and irrevocable license to use, and authorize others to use, the work for Federal Government purposes.

COPS-AR-1053

The U.S. Department of Justice is a nonexclusive licensee to copyrighted work that was developed, or for which ownership was purchased, under this award. Only the legal or beneficial owner of an exclusive right under a copyright is entitled to institute an infringement action. The recipient should therefore consult its own legal counsel with any copyright infringement questions. For more information about registering a copyright, please visit the U.S. Copyright Office at **www.copyright.gov**.

## 33. Human Subjects Research

**Condition:**

*The recipient agrees to comply with the provisions of the U.S. Department of Justice's common rule regarding Protection of Human Subjects, 28 C.F.R. Part 46, prior to the expenditure of Federal funds to perform such activities, if applicable. The recipient also agrees to comply with 28 C.F.R. Part 22 regarding the safeguarding of individually identifiable information collected from research participants.*

**Why this condition:**

Protections for human subjects of research are required under U.S. Department of Justice regulations at 28 C.F.R. Part 46. This regulation constitutes the Federal Policy (Common Rule) for the Protection of Human Subjects. Each institution engaged in (nonexempt) COPS Office–supported human subjects research must provide a written assurance of compliance, satisfactory to the COPS Office, that it will comply with the U.S. Department of Justice human subjects regulations.

**What you should do:**

If any part of your Safer Outcomes project contains research or statistical activities which involve human subjects that are not covered by an exemption set forth in 28 C.F.R. Part 46.101(b), you must comply with the requirements in the U.S. Department of Justice's common rule regarding the Protection of Human Subjects, 28 C.F.R. Part 46, including, but not limited to Institutional Review Board (IRB) approval and the appropriate assurances prior to the expenditure of federal funds to perform such activities. By signing the award document, you also agree to comply with 28 C.F.R. Part 22 regarding the confidentiality of identifiable research and statistical information including safeguarding of identifiable information collected from research participants.

## 34. Domestic Preferences for Procurements

**Condition:**

*Recipient agrees that it, and its subrecipients, to the greatest extent practicable, will provide a preference for the purchase, acquisition, or use of goods, products, and materials produced in, and services offered in, the United States. 2. C.F.R. § 200.322 and Executive Order 14005, Ensuring the Future is Made in All of America by All of America's Worker, January 25, 2021.*

**Why this condition:**

It is the policy of the United States Government to use federal funds to buy American whenever possible. This condition promotes domestic preferences in procurements under federal awards.

COPS-AR-1054

**What you should do:**

Ensure that your organization provides a preference for American goods and services funded under your award to the greatest extent practicable and consistent with applicable law.

### 35. Prohibition on Certain Telecommunications and Video Surveillance Services or Equipment

**Condition:**

*Recipient agrees that it, and its subrecipients, will not use award funds to extend, renew, or enter into any contract to procure or obtain any covered telecommunication and video surveillance services or equipment as described in 2 CFR §200.216. Covered services and equipment include telecommunications or video surveillance services or equipment produced or provided by Huawei Technologies Company or ZTE Corporation (or any subsidiary or affiliate of such entities); Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities); or an entity that the Secretary of Defense, in consultation with the Director of the National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an entity owned or controlled by, or otherwise connected to, the government of China. The use of award funds on covered telecommunications or video surveillance services or equipment are unallowable. 2. C.F.R. § § 200.216 & 471. See also Section 889 of the John S. McCain National Defense Authorization Act of Fiscal Year 2019, Public Law 115–232.*

**Why this condition:**

Section 889 of the John S. McCain National Defense Authorization Act of Fiscal Year 2019, Public Law 115–232, as implemented by 2 C.F.R. §200.216, prohibits the use of award funds to extend, renew, or enter into any contract to procure or obtain any covered telecommunication and video surveillance services or equipment as explained in the condition.

**What you should do:**

Ensure that your organization does not use award funds to extend, renew, or enter into any contract to procure or obtain any covered telecommunication and video surveillance services or equipment.

### 36. Travel Costs

**Condition:**

*Travel costs for transportation, lodging and subsistence, and related items are allowable with prior approval from the COPS Office. Payment for allowable travel costs will be in accordance with 2 C.F.R. § 200.475.*

**Why this condition:**

Safer Outcomes funding will cover award-related travel costs for the recipient agency or other (nonrecipient) individuals to attend training and technical assistance conferences, seminars, or classes or to visit a site specified in the original application. Allowable expenses for award-related lodging, meals, temporary dependent care, and incidental expenses that were included in the application were approved by the COPS Office as part of your organization's Safer Outcomes award and final budget. For more information, please refer to the award condition on "Allowable Costs."

---

41

**What you should do:**

Your organization should refer to your JustGrants approved budget for a list of approved travel costs and use Safer Outcomes funds only for approved travel costs incurred during the award period. In addition, your organization should keep timely and accurate records of all travel expenses. If at any time these costs change, you should immediately contact your COPS Office Program Manager.

## 37. Information Data Breach

**Condition:**

*The recipient (and any subrecipient at any tier) must have written procedures in place to respond in the event of an actual or imminent breach (as defined in OMB M-17-12) if it (or a subrecipient)-- 1) creates, collects, uses, processes, stores, maintains, disseminates, discloses, or disposes of personally identifiable information (PII) (as defined in 2 C.F.R. 200.1) within the scope of a COPS Office grant-funded program or activity, or 2) uses or operates a Federal information system (as defined in OMB Circular A-130). The recipient's breach procedures must include a requirement to report actual or imminent breach of PII to the recipient's COPS Office Program Manager no later than 24 hours after an occurrence of an actual breach, or the detection of an imminent breach. OMB Memorandum M-17-12, Preparing for and Responding to a Breach of Personally Identifiable Information.*

**Why this condition:**

OMB requires recipients and subrecipients to establish written procedures to respond to an actual breach, or the detection of an imminent breach involving personally identifiable information (PII), if within the scope of their award, they will create, collect, use, process, store, maintain, disseminate, disclose, or dispose of PII or will use or operate a Federal information system. Recipient breach procedures must include a requirement to notify the Federal awarding agency in the event of such a breach.

**What you should do:**

If any part of your COPS Office award involves your agency creating, collecting, using, processing, storing, maintaining, disseminating, disclosing, or disposing of PII, or the use or operation of a Federal information system, your agency must have written procedures in place to respond to an actual breach, or the detection of an imminent breach involving personally identifiable information (PII), including notification to your COPS Office Program Manager no later than 24 hours following such breach.

Written procedures should promote cooperation and the free exchange of information with the COPS Office, as needed, to properly escalate, refer, and respond to a breach.

## 38. Training Guiding Principles
**Condition:**

*Any training or training materials developed or delivered with award funding provided by the Office of Community Oriented Policing Services is to adhere to the following guiding principles–*

1.  *Trainings must comply with applicable law.*

    *In developing and conducting training under the award, recipients (and any subrecipients) shall not violate the Constitution or any federal law, including any law prohibiting discrimination.*

COPS-AR-1056

2. *The content of trainings and training materials must be accurate, appropriately tailored, and focused.*

   *The content of training programs must be accurate, useful to those being trained, and well matched to the program's stated objectives. Training materials used or distributed at trainings must be accurate, relevant, and consistent with these guiding principles.*

3. *Trainers must be well-qualified and skilled in presenting the subject area.*

   *Trainers must possess the subject-matter knowledge and the subject-specific training experience necessary to meet the objectives of the training. In selecting or retaining a trainer, recipients (or subrecipients) should consider such factors as the trainer's resume and written materials, interviews with the trainer, observation of other trainings conducted by the trainer, feedback from other entities with which the trainer has worked, training participant feedback and evaluations, and the general reputation of the trainer.*

4. *Trainers must demonstrate the highest standards of professionalism.*

   *Trainers must comport themselves with professionalism. While trainings will necessarily entail varying teaching styles, techniques, and degrees of formality, as appropriate to the particular training goal, professionalism demands that trainers instruct in the manner that best communicates the subject matter while conveying respect for all.*

**Why this condition:**

This condition sets forth the Training Guiding Principles for the development and delivery of training and training materials funded under a COPS Office award to ensure that such deliverables meet the highest standards for compliance with applicable law, content accuracy and effectiveness, and skilled and professional trainers.

**What you should do:**

Recipients and subrecipients must ensure that any training or training materials supported with COPS Office award funding adhere to the Training Guiding Principles, which are incorporated into the COPS Office training guides. This includes, but is not limited to, the following: (1) **In-Person Curriculum Standards and Review Process Guide**; (2) **Instructor Quality Assurance Guide**; (3) **On-Demand Online Curriculum Process Guide**; and (4) **Video Development Process Guide**. To access these guides and other helpful resources, please visit **TRAINING | COPS OFFICE (usdoj.gov)**.

COPS-AR-1057

# II. Accessing Award Funds

This section provides answers to payment-related questions, including all the information needed to provide access to request payments from your COPS Office awards. For assistance with financial management and award administration, please contact the COPS Office Response Center at **AskCOPSRC@usdoj.gov** or visit our website at **https://cops.usdoj.gov**.

## Payment method

### What method of payment is used?

There is currently one payment system available for accessing federal award funds - The Automatic Standard Application for Payments (ASAP) which is the shared services payment system used by the Department of the Treasury. Through this platform, recipients of DOJ grant awards and other forms of federal assistance will be able to request and receive payments for grants managed through JustGrants.

To learn more about the ASAP registration process, please see the ***ASAP Registration Checklist***.

If you have questions or need help using ASAP, you can contact the OCFO Customer Service Center by email at **Ask.OCFO@usdoj.gov** or by phone at 800-458-0786.

### When should Federal Financial Reports be filed?

After your agency accepts the award, under current regulations, you are required to submit quarterly Federal Financial Reports (FFRs) using a Standard Form 425 (SF-425). This report reflects the actual monies spent and unliquidated obligations incurred by your agency. *You will not be able to make drawdowns from you ASAP account if the SF-425 for the most recent reporting quarter has not been submitted in JustGrants by the deadline date.* Recipients are required to submit their SF-425 reports in the JustGrants portal: **https://justicegrants.usdoj.gov/**

For more information on how to complete and where to submit your quarterly SF-425 report, see the section in this manual titled "Reporting Requirements."

*Filing the Federal Financial Report (SF-425) identifies your federal and local expenditures made during that calendar quarter. However, to receive actual payment, you must request it through ASAP.*

The FFR is submitted in JustGrants, and can only be submitted by someone with the role of "Financial Manager." FFRs may be submitted 10 calendar days or less from a reporting period end date until the due date. Once the due date passes, a delinquent report can still be submitted by a Financial Manager. A Financial Manager also has privileges to edit and resubmit FFRs. The most recent Quarterly FFR can be reopened and resubmitted if the due date has not passed. Similarly, a Final FFR can be reopened and resubmitted up to 120 days after the project period end date. You must contact your awarding office to reopen and resubmit a final FFR anytime beyond 120 days after the award end date. Funds are frozen one day after the due date if the report is not submitted. Funds are released once the delinquent FFR is submitted.

COPS-AR-1058

# Additional payment questions

## Can we receive advances?

Yes. If you receive funds through electronic transfer, the period allowed is 10 days in advance. In general, the concept of "minimum cash on hand" applies to COPS Office awards. This concept requires that your organization request funds based upon immediate cash disbursement needs. You should time your request for payment to ensure that federal cash on hand is the minimum that you need.

There should be no excess federal award funds on hand, except for advances not exceeding 10 days, as noted above.

The Federal Government has four basic rules regarding advances. Advances can be terminated if the recipient

1. is unwilling or unable to attain project goals;

2. maintains excess cash on hand;

3. does not adhere to the terms and conditions of the award;

4. fails to submit reliable or timely reports.

## How often can we request reimbursement of costs?

There are no limitations on how often your organization may request reimbursements; however, your reimbursement requests should cover a specific time frame and include only costs that were approved in the award package. As a general guideline, most organizations request reimbursement on a monthly or quarterly basis. Also, please note that a date range for a reimbursement request can only be used once.

## Can we earn interest on our award funds?

For nonfederal entities other than states, payment methods must minimize the time between your drawdown of federal funds and your payment of award costs to avoid earning excess interest on your award funds. You must account for interest earned on advances of federal funds as follows:

- The Office of Management and Budget (OMB) uniform guidance at 2 C.F.R. § 200.305(b)(12) states that interest earned on federal advance payments deposited in interest-bearing accounts **up to $500 per year** may be retained by the nonfederal entity for administrative expenses.

- Any interest earned on federal advance payments deposited in interest-bearing accounts that is **in excess of $500 per year** must be remitted annually to the Department of Health and Human Services Payment Management System (PMS) through an electronic medium using either Automated Clearing House (ACH) network or a Fedwire Funds Service payment. For detailed information on remittance, please see appendices for a full text of the electronic medium remittance options. Instructions for returning interest on can be found at **https://pms.psc.gov/grant-recipients/returning-funds-interest.html**.

COPS-AR-1059

2024 COPS Office Safer Outcomes Program Award Owner's Manual

- If you do not have access to an electronic medium option, then please make a check payable to "The Department of Health and Human Services" and mail the check to Treasury-approved lockbox: HHS Program Support Center, P.O. Box 530231, Atlanta, GA 30353-0231. (Please allow 4–6 weeks for processing of a payment by check to be applied to the appropriate Payment Management System (PMS) account).

- Please notify your COPS Office Staff Accountant in the COPS Office Finance Business Unit when any interest that is earned is remitted to the Department of Health and Human Services, Payment Management System.

## Matching funds

Under the COPS Office Safer Outcomes Program, no local match is required. The COPS Office is funding 100 percent of the allowable items approved in your award package. Any organization desiring to contribute additional funds to this project is encouraged to do so by reporting these funds on the SF-425 as a recipient share of expenditures (line 10j).

COPS-AR-1060

# III. Procurement Process

In general, recipients are required to procure funded items through open and free competition when feasible. When conducting a procurement transaction under a Federal award, a State or Indian Tribe must follow the same policies and procedures it uses for procurements with non-Federal funds. If such policies and procedures do not exist, States and Indian Tribes must follow the procurement standards in §§ 200.318 through 200.327. In addition to its own policies and procedures, a State or Indian Tribe must also comply with the procurement standards: §§ 200.321 (Contracting with small and minority businesses, women's business enterprises, veteran-owned businesses, and labor surplus area firms), 200.322 (Domestic preferences for procurement), and 200.323 (Procurement of recovered material) and ensure that every purchase order or other contract includes any clauses required by § 200.327 (Contract provisions). All other recipients and subrecipients, including subrecipients of a State or Indian Tribe, must follow the procurement standards in §§ 200.318 through 200.327. 2 C.F.R. § 200.317.

Consistent with the uniform administrative requirements that prohibit procurement practices that restrict competition, recipients and subrecipients may not discriminate against any person or entity on the basis of a person or entity's status as an "associate of the Federal Government" (or on the basis of a person or entity's status as a parent, affiliate, or subsidiary of an associate of the Federal Government). The term "associate of the Federal Government" means any person or entity engaged or employed (in the past or at present) by or on behalf of the Federal Government as an employee, contractor, subcontractor, award recipient, subrecipient, agent, or otherwise.

As described in the award condition titled "Sole Source Justification," recipients are required to submit a sole source justification (SSJ) request to the COPS Office for noncompetitive procurements in excess of $250,000 prior to purchasing equipment, technology, or services; obligating funding for a contract; or entering into a contract with award funds. If submitting a sole source justification request to the COPS Office, please follow the steps described in the *Sole Source Justification* fact sheet, which can be found at the **Award Management Materials web page**.

If you have any questions regarding the federal requirements that guide procurement procedures, please contact your COPS Office Program Manager.

COPS-AR-1061

# IV. Financial Record Maintenance

Your organization is required to establish and maintain accounting systems and financial records to accurately account for funds awarded and disbursed. These records must include both federal funds and any local funds contributed to this project.

## What accounting systems are required?

Your organization needs to establish and maintain accounting systems and financial records to accurately account for the funds awarded.

As required by 2 C.F.R. § 200.1, 200.302, and 200.303, internal controls and financial management systems must provide reasonable assurance that your organization is managing the Federal award in compliance with the U.S. Constitution, Federal statutes, regulations, and award terms and conditions and provide full accountability for expenditures including but not limited to:

- Transactions are properly recorded and accounted for to prepare reliable financial statements and federal reports and to maintain accountability over assets.
- Transactions are executed in compliance with all applicable federal statutes, regulations, and the award terms and conditions.
- Funds, property, and other assets are safeguarded against loss from unauthorized use or disposition.

## What records must be kept?

Your organization's fiscal control and accounting systems should enable you to make accurate, current, and complete disclosure of the financial activity under your award. Your accounting records should contain information showing expenditures under the award and must be supported by items such as payroll records, time and attendance records, canceled checks, purchase orders, or similar documents.

Your organization must adequately safeguard award funds and make sure that they are used for authorized purposes only. Your organization will be responsible for refunding any unallowable expenses.

## How long must records be kept?

All financial records and supporting documents associated with your award (including payroll, time and attendance records, canceled checks, and purchase orders) must be retained for a period of three years from the date of submission of the final expenditure report as stated in 2 C.F.R § 200.334 (Retention requirements for records).

Your organization should maintain records so that you can identify them by award year or by fiscal year, whichever you find more convenient. If any litigation, claim, negotiation, audit, or other action involving these records has been started before the end of the three-year period, the records should be kept until completion of the action. These records should be easily located and should be properly protected against fire or other damage. *Failure to maintain adequate records to document award expenditures may result in a requirement to repay all federal funds that cannot be supported with appropriate records.*

COPS-AR-1062

## What if we have more than one award?

If your organization has more than one COPS Office award or an award from another federal agency, funds received under one project may not be used to support another project without specific written authorization from the COPS Office, or in the case of an award from another agency, from both awarding agencies. Your accounting systems and financial records must reflect expenditures for each project separately.

## Who may access our records?

Authorized federal representatives, including representatives from the U.S. Department of Justice, the Comptroller General of the United States, the COPS Office, and any entity designated by the COPS Office may access these records for the purposes of conducting audits, site visits, or other examinations.

COPS-AR-1063

# V. Federal Audit Requirements

In addition to oversight by the COPS Office, your award may be subject to an audit by independent examiners. The two primary types of audit are Single Audit Act (SAA) audits and U.S. Department of Justice, Office of the Inspector General (OIG) audits.

## Single Audit Act (SAA) requirements

### What are the regulations governing SAA requirements?

The Single Audit Act (SAA) of 1984 established uniform guidelines for state and local governments , and Indian tribal governments receiving federal financial assistance. The 1984 Act was amended in July 1996, by extending these requirements to all nonprofit recipients of federal financial assistance. The Office of Management and Budget (OMB) issued final guidance for 2 C.F.R. Part 200—Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal Awards (Uniform Guidance) on December 26, 2013. This guidance applies to all federal awards or funding increments awarded on or after December 26, 2014, and provides additional guidelines regarding the implementation of SAA requirements. 2 C.F.R. Part 200, Subpart F – Audit Requirements, available at **https://www.ecfr.gov/current/title-2/subtitle-A/chapter-II/part-200/subpart-F**, establishes the requirements for organizational audits that apply to COPS Office award recipients. Recipients must arrange for the required organization-wide (not award-by-award) audit in accordance with the requirements of Subpart F.

### Who must have an SAA audit?

A recipient that expends $1,000,000 or more during the recipient's fiscal year in federal awards must have a single audit conducted in accordance with 2 C.F.R. § 200.514 (Scope of audit) except when it elects to have a program-specific audit conducted in accordance with 2 C.F.R. § 200.501(c). An auditee may be a recipient, a subrecipient, or a vendor.

SAA audits are required to be conducted annually, unless a state or local government, or Indian tribe is required (by constitution or statute that was in effect on January 1, 1987), to undergo audits less frequently than annually. The primary objective of an SAA audit is to express opinions on the recipient's financial statements, internal controls, major and nonmajor award programs, and compliance with government laws and regulations. Single Audits may also address specific compliance issues with respect to COPS Office award requirements.

In cases of continued inability or unwillingness to have an audit conducted in accordance with this part, federal agencies and pass-through entities must take appropriate action as provided in §200.339. Remedies for noncompliance. See 2 C.F.R. § 200.505.

If the Federal awarding agency or pass-through entity determines that noncompliance cannot be remedied by imposing additional conditions, the Federal awarding agency or pass-through entity may take one or more of the following actions, as appropriate in the circumstances: These sanctions under 2 C.F.R. § 200.339 could include the following:

- Temporarily withholding cash payments pending correction of the deficiency by the nonfederal entity or more severe enforcement action by the federal awarding agency or pass-through entity.
- Disallowing (that is, denying both use of funds and any applicable matching credit for) all or part of the cost of the activity or action not in compliance.

COPS-AR-1064

- Wholly or partly suspending or terminating the federal award.

- Initiating suspension or debarment proceedings as authorized under 2 C.F.R. part 180 and federal awarding agency regulations (or in the case of a pass-through entity, recommending such a proceeding be initiated by a federal awarding agency).

- Withholding further federal awards for the project or program.

- Taking other remedies that may be legally available.

**Your SAA reports should not be sent to the COPS Office.**

Your SAA reports should not be sent to the COPS Office. If the U.S. Department of Justice is your cognizant federal agency (see the Glossary of Terms in the appendices), they should be sent to the Federal Audit Clearinghouse at **https://www.fac.gov**.

The U.S. Department of Justice, Office of Justice Programs (OJP) Office of Audit Assessment and Management (OAAM) serves as the liaison between recipients and auditors in the conduct of resolving and closing SAA audits. Questions and comments regarding SAA audits may contact the OJP Customer Service Center at 800-458-0786.

# Office of Inspector General (OIG) recipient audits

## What is the role of the OIG for award audits?

The OIG is a separate component of the U.S. Department of Justice and is independent of the COPS Office. The primary objective of OIG recipient audits is to assess compliance with award terms and conditions. OIG audits are designed to prevent fraud, waste, and abuse of federal funds. The OIG audit process promotes efficiency and effectiveness in the administration and implementation of awards by evaluating compliance with the terms and conditions of awards.

## How are COPS Office awards selected for an OIG audit?

The OIG randomly selects awards to be audited or may conduct a COPS Office recipient audit in response to a referral that the OIG believes warrants further evaluation. The OIG also surveys DOJ award-making agencies on an annual basis to solicit input on suggested audit areas for the upcoming fiscal year. In most instances, however, the OIG generally selects awards to be audited based on a number of factors, including the geographical distribution of awards funded, award amount, population served, award status (active and expired), and type of award (hiring and non-hiring). As such, the fact that a recipient has been selected for an OIG audit is not necessarily indicative of a suspected concern or problem area.

## What are the steps in an OIG audit?

The COPS Office Grant Monitoring Division's Audit Liaison Section serves as the liaison between recipients and the OIG's Audit Division, which conducts the audit. The OIG steps in the audit process will determine the interactions between the OIG, the recipient, and the COPS Office Grant Monitoring Division Audit Liaison Section:

- **Call for award data.** The OIG requests award documentation from the COPS Office.

- **Entrance conference.** The OIG schedules to meet with the recipient to gather documentation and conduct audit.

COPS-AR-1065

- **Draft audit report.** The OIG reviews documentation and presents initial recommendations (findings) to the recipient and copies the COPS Office. The COPS Office interacts with the recipient to coordinate any repayments and/or policy or procedure documents to be submitted to the OIG before release of the Final Audit Report.

- **Final audit report.** The OIG has completed its direct interaction with the recipient. The COPS Office directs the recipient to formulate a Corrective Action Plan to address recommendations (findings). As each recommendation is successfully addressed by the recipient, the COPS Office requests closure on the recommendation.

- **Closing the audit.** When all recommendations have been closed, the COPS Office requests closure on the audit from the OIG and notifies the recipient that the audit is closed.

If you have any questions regarding an OIG audit, please contact the COPS Office Grant Monitoring Division's Audit Liaison Section via the COPS Office Response Center at **AskCOPSRC@usdoj.gov**. Questions and comments regarding the administration of your COPS Office Safer Outcomes award, not specifically related to an audit, should be referred to your COPS Office Program Manager.

## Typical audit findings

The OIG has typically reported the following audit findings pertaining to awards as a result of lack of proper documentation, poor business practices, or inadequate accounting and record keeping systems:

- **Unallowable costs.** Recipient incurred costs that were not approved in the original budget or a budget modification, were in excess of the approved budget, or were charged to the award after the expiration date and an award extension was not obtained.

- **Unsupported costs.** Specific award expenditures and reimbursements could not be supported by adequate documentation (including but not limited to receipts or purchase orders), that may have been allowable under the program, but for which no prior written approval was obtained from the COPS Office, or award expenditures were in excess of actual approved award costs.

- **Lack of complete/timely programmatic and financial reporting.** Recipient failed to submit required programmatic and financial reports in a timely manner and/or had inadequate record keeping systems.

- **Funds to better use.** Funds could be used more efficiently based on management actions such as reductions in outlays; deobligation of funds; withdrawal; costs not incurred by implementing recommended improvements; and other identified savings.

- **Questioned costs.** Costs that are questioned by the auditor because of an audit finding which resulted from a violation or possible violation of a provision of law, regulation, award terms and conditions, or other document governing the use of federal funds; or because costs incurred appear unreasonable and do not reflect the actions a prudent person would take under the same circumstances; or because costs at the time of the audit are not supported by adequate documentation.

- **Policy and procedure.** Weaknesses are identified in a recipient's accounting practices, fiscal stewardship, accuracy of data used in the development of the award applications, and/or inventory controls that led to the recommendation cited in the audit. The recipient is required to develop or revise policies and/or procedures consistent with their existing practices and submit to the COPS Office to forward to the OIG to close the recommendation.

COPS-AR-1066

2024 COPS Office Safer Outcomes Program Award Owner's Manual

After the final OIG audit report has been issued, the COPS Office Grant Monitoring Division's Audit Liaison Section will continue working as the liaison between your organization and the OIG to obtain closure on any audit findings. The COPS Office will issue a closure letter once all audit recommendations have been closed by the OIG.

COPS-AR-1067

# VI. Reporting Requirements

Your organization will be required to submit quarterly Federal Financial Reports as well as semiannual Performance Reports. Award recipients should be prepared to track and report award funding separately from all other funding sources (including other COPS Office awards) to ensure accurate financial and programmatic reporting on a timely basis. Your organization should ensure that you have adequate financial internal controls in place to monitor the use of all funding and also to ensure that its use is consistent with the award terms and conditions. Good stewardship in this area includes written accounting practices, use of an accounting system that adequately tracks all award drawdowns and expenditures, and has the ability to track when COPS Office award–funded positions are filled or approved purchases are made. *Failure to submit complete reports or submit them in a timely manner may result in the suspension and possible termination of your organization's COPS Office award funding or other remedial actions.*

## Federal Financial Reports

As a reminder, the only role within JustGrants that can submit the Federal Financial Report (FFR) is the Financial Manager. Individuals with that role in JustGrants should review JustGrants resources online for guidance on how to complete and submit FFRs in the JustGrants system.

Your organization is required to submit a quarterly FFR using Standard Form 425 (SF-425) within 30 days after the end of each calendar quarter. A final SF-425 will be due within 120 days after the end of the award period. This report reflects the actual cumulative federal expenditures incurred during the funding period and the remaining unobligated balance of federal funds. Under federal regulations, your organization is not permitted to draw down federal funding for costs incurred after the official award end date; however, you will have a 120-day period after the award end date during which you can draw down funds for eligible expenditures incurred before the award end date.

### How do we file Federal Financial Reports?

All COPS Office award recipients are strongly encouraged to submit the required quarterly SF-425 online.

To submit an FFR, follow these steps:

- Navigate to the JustGrants Home link on the left-hand side.
- Go to your Task List.
- Open the FFR you want to edit/submit.

  Once the FFR opens, the Recipient Information appears, select Continue to move to the next screen. Note: The data on this page is prepopulated from the award document and the entity profile.

  The Report Information screen contains several required fields.

    (a)  Enter the Recipient Account Number.
    (b)  Select the Report Type.
    (c)  Select the Basis of Accounting. Scroll down to the Transactions section.

The following fields are not editable because they are not required for DOJ:

  (a)   10a. Cash Receipts
  (b)   10b. Cash Disbursements
  (c)   10c. Cash on Hand (line a minus b)

- Enter information in the following fields as appropriate:
  (a)   10d. Total Federal funds authorized
  (b)   10g. Total Federal share (sum lines e & f)
  (c)   10e. Federal share of expenditures
  (d)   10f. Federal share of unliquidated obligations
  (e)   10h. Unobligated balance of Federal funds (line d minus g)
  (f)   10j. Recipient share of expenditures

Cumulative expenditures must be entered in line 10e, 10j, 10f, 10j, 10m, and 10n. Cumulative expenditures are defined as: The amount from the awards inception to the end of the reporting period.

- Enter information in the following fields as appropriate:
  (a)   10k. Remaining recipient share to be provided (line i minus j)
  (b)   10l. Total Federal program income earned
  (c)   10m. Program Income expended in accordance with the deduction alternative
  (d)   10n. Program Income expended in accordance with the addition alternative
  (e)   10o. Unexpended program income

- Select Continue

  In the Remarks and Certification screen, enter text in box 12. Additional Information.

- Note: If the figures in line 10e or 10j are less than the previous reporting period, you are required to add additional narrative in box 12 "Remarks" explaining this discrepancy. Failure to do so will result in a validation error.

- Select Upload Supporting Documents to attach a document

- Review the certification information. Select the Submit button.

The FFR status will be changed to "Resolved-Completed" once the FFR data is transferred to the Unified Financial Management System (UFMS).

## When are Federal Financial Reports due?

An SF-425 report must be submitted for each COPS Office award at the end of every calendar quarter and no later than 30 days after the last day of each reporting period, as detailed in table 1.

**Table 1. Due dates of SF-425 by quarter**

| Reporting quarter | SF-425 due date |
|---|---|
| January 1–March 31 | April 30 |
| April 1–June 30 | July 30 |
| July 1–September 30 | October 30 |
| October 1–December 31 | January 30 |

COPS-AR-1069

2024 COPS Office Safer Outcomes Program Award Owner's Manual

For your initial SF-425 submission, determine when the SF-425 reporting period that includes your award start date ended and complete an SF-425 to cover the period from the award start date to the end of that period (regardless of when the award was accepted). **You are required to submit an SF-425 even if you have not spent any money or incurred any costs during a reporting period.**

**Example:**

If your award start date is 09-01-24 and the current date is 11-15-24, then your first SF-425 would be due no later than 10-30-24 and would cover the period 09-01-24 (award start date) through 09-30-24 (end of the initial reporting quarter for this award). This SF-425 must be on file with the COPS Office before the submission deadline so that you can avoid being delinquent and successfully complete a drawdown of funds through ASAP (submit report as soon as you accept the award and have access JustGrants and ASAP).

Award recipients who do not submit an SF-425 report by the due date each quarter will be unable to draw down funds. The payment system contains a function which checks for SF-425 delinquency and will reject a drawdown attempt if the SF-425 is not current. Subsequent outreach through email or hard copy reminders may be sent to the recipient if the SF-425 is delinquent.

For general information or assistance in completing the SF-425 reports, go to **https://cops.usdoj.gov** or contact the COPS Office Response Center by phone at **AskCopsRC@usdoj.gov**.

## How will award funds be monitored?

The COPS Office and designated representatives from the Office of the Chief Financial Officer, Office of Justice Programs monitor the financial aspects of your organization's award through financial reports, on-site visits, office-based award reviews, meetings, telephone contacts, reports, audits, reviews of award change requests, and special request submissions.

# Performance Reports

Semiannual Performance Reports and a Final Performance (Closeout) Report are required to be submitted directly to the COPS Office via JustGrants. Agencies must submit a separate performance report for each award.

## How do we file a Performance Report?

Only the Grants Award Administrator for your organization will be able to view and submit a performance report. For information on assigning a Grant Award Administrator to your award, see the Entity Management Job Aid Reference Guide on the **JustGrants website**.

To submit your performance report, please log in to JustGrants and check your worklist or the "Funded Award Performance Management" tab for performance reports. The Grant Award Administrator can locate the current report question set in JustGrants in two locations: My Worklist or on the Performance Management tab of the funded award. Information on JustGrants Performance Reporting is found at **https://justicegrants.usdoj.gov/training/training-performance-reporting**.

If you experience issues with submitting your performance report, please contact JustGrants Support at **JustGrants.Support@usdoj.gov** or 833-872-5175.

Important reminder: The only role within JustGrants that can submit a performance report is the Grant Award Administrator.

You should complete a final performance report within 120 days of the period of performance end date. To submit a final report, the Grants Award Administrator should locate the report question set in My Worklist or on the Performance Management tab. The report cover page will ask whether the report is interim progress report or a final report – please select "final" to view final report questions.

## When are Performance Reports due?

Semiannual performance reports are due March 2 and August 31, as shown in table 2.

**Table 2. Due dates of Performance Reports by semiannual dates**

| Reporting period | Performance Report due date |
|---|---|
| **August 1 – January 31** | March 2 |
| **February 1 – July 31** | August 31 |

## What kind of information will these reports require?

These reports will request information about the status of your award in terms of purchasing equipment, hiring personnel, delivering services, and progress in meeting milestones identified in the cooperative agreement, as well as general information about your organization.

## What if we make a mistake or need to modify the report after it is submitted?

You may log in to JustGrants to reopen and make edits to your Performance Report.

## Will the data that we submit be publicly available?

Performance Reports submitted to the COPS Office may be reported publicly in response to a Freedom of Information Act (FOIA) request.

If your organization has any questions regarding the submission of these required reports, please call the COPS Office Response Center at **AskCOPSRC@usdoj.gov**.

## Entity management

If you do not have the ability to submit your federal financial report or performance report, this may indicate that the Entity Administrator for your organization has not made the correct work assignment to your award. To confirm the work assignment has been properly made, the Entity Administrator should follow the steps below to confirm: 1. Log in to JustGrants. 2. Click "Awards" from the left menu. 3. Click "Show/Hide Roles." 4. Click the "Financial Manager" and "Grant Award Administrator" check boxes. 5. Click "Confirm." If the Financial Manager and Grant Award Administrator's names appear under the respective columns, then the work assignment has been properly made and those users should be able to complete and submit the reports.

If the names do not appear in the respective columns, the Entity Administrator should take the following steps: 1. Click the check box next to the award ID. 2. Choose a role (e.g., Financial Manager, Grant Award Administrator) from the "Choose Role" dropdown menu (bottom of the screen). 3. Choose the individual's name from the "Assign to" drop-down menu. 4. Click "Assign." Once the Entity Administrator has completed these steps, the assigned Financial Manager and Grant Award Administrator should be able to access and submit the respective reports.

## Contact points to obtain technical assistance and report violations

Any alleged violations, serious irregularities, or acts that may result in the use of public funds in a manner inconsistent with the Public Safety Partnership and Community Policing Act of 1994 or the purposes of this award may be reported to the U.S. Department of Justice. Furthermore, the COPS Office welcomes the opportunity to provide assistance regarding the implementation of award provisions to help ensure that federal award funds are spent responsibly. As such, the following contacts are provided to address noncompliance and technical assistance issues:

- If you suspect violations of a criminal nature, please contact the U.S. Department of Justice, Office of the Inspector General (OIG) at **https://oig.justice.gov/hotline**, **OIG.hotline@usdoj.gov** or 800-869-4499.

- If you suspect award violations (not criminal in nature) related to the award conditions listed in this manual, please contact the COPS Office Grant Monitoring Division at 800-421-6770.

- If you have any questions or need assistance regarding your award, please contact your COPS Office Program Manager.

COPS-AR-1072

# VII. When the Award Period Has Ended

At the end of your organization's award period, the COPS Office is responsible for the closeout of your award. As part of this process, the COPS Office requires documentation demonstrating that your organization has met all the programmatic and financial requirements of the award.

After the end of the award period, your organization will be asked to submit a Final Federal Financial Report (SF-425) and any applicable final performance reports.

## Final Federal Financial Report (SF-425)

The final Federal Financial Report (SF-425) for your award is due to the COPS Office no later than 120 days after the end date of the award period. The final report should reflect the total amount of allowable federal expenditures that were incurred during the life of the award, as well as the amount of unobligated funds remaining, if any. The federal funds expended should reflect only the actual allowable costs incurred relative to the specific program requirements for that award. In addition, once you have completed your final drawdown, this report should reconcile with the total amount of federal funds drawn down by your organization. The final SF-425 should also include the required minimum total amount of local (recipient) cash match contributed, if applicable.

## When should all the award monies be spent?

Award funds reflecting allowable project costs must be obligated before the end of the award period. Obligated funds cover monies spent, and expenses incurred but not yet paid, for any approved items listed in the award package. Your organization has up to 120 days after the end of the award period to pay for eligible expenses previously incurred, and to request reimbursement for any remaining eligible balance.

*Please be advised that 2 C.F.R. § 200.344(b) requires recipients to submit final SF-425s within 120 days after the expiration of the award.*

It is possible that your organization may have unobligated and unspent award funds remaining in your account following the award period due to an overestimate of item costs during the application period. Your organization should review its records carefully to ensure that it draws down and expends only the amount required for actual costs incurred during the award period. Any remaining unobligated or unspent funds should remain in your account and will be deobligated during the closeout process.

## Final Performance (Closeout) Report

After your award period has ended, your organization will be sent a final performance report via JustGrants and asked to complete it. This report will serve as your organization's final programmatic report on the award, and the information your organization provides in this report will be used to make a final assessment of your award progress.

COPS-AR-1073

## Equipment disposition

Each recipient must use any equipment funded through a COPS Office award for approved award-related purposes and must retain the equipment for the life of the award. Property records must be maintained by the recipient, which should include a description of the property; a serial number or another identification number; the source of the property; the name of the person or entity that holds the title; the acquisition date and cost of the property; the percentage of federal agency contribution toward the original purchase; the location, use, and condition of the property; and any ultimate disposition data, including the date of disposal and sale price of the property. A control system must be developed to ensure adequate safeguards to prevent loss, damage, or theft of the property. A physical inventory of the property must be conducted, and the results must be reconciled with the property records at least once every two years. 2 C.F.R. § 200.313(d).

A State or an Indian Tribe must use, manage, and dispose of equipment acquired under a Federal award by the state or an Indian Tribe in accordance with state or tribal laws and procedures. If such laws and procedures do not exist in an Indian Tribe, they must follow the guidance in 2 C.F.R. § 200.313. 2 C.F.R. § 200.313(b).

When the award has expired and equipment obtained under the award is no longer needed for the original project, program, or for other activities currently or previously supported by a federal agency, disposition of the equipment shall be made as follows:

Items of equipment with a current per-unit fair market value of $10,000 or less may be retained, sold, or otherwise disposed of with no further obligation to the awarding agency.

Items of equipment with a current per-unit fair market value in excess of $10,000 may be retained or sold and the awarding agency is entitled to an amount calculated by multiplying the current market value or proceeds from sale by the awarding agency's federal share in the cost of the original purchase.

For more information, please see 2 C.F.R. §§ 200.1 and 200.313.

COPS-AR-1074

# VIII. Conclusion

We hope that this manual has assisted you and your organization with your award questions. We welcome and encourage any comments you have regarding the COPS Office Safer Outcomes Program and the materials we have developed for its administration. If you have specific comments regarding this manual or have any questions about your award, please call your COPS Office Program Manager.

Pursuant to Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving," the COPS Office encourages recipients of U.S. Department of Justice funds to adopt and enforce policies that ban text messaging while driving and to establish workplace safety policies to decrease crashes caused by distracted drivers.

In addition, pursuant to Executive Order 13043, "Increasing Seat Belt Use in the United States," the COPS Office encourages recipients of U.S. Department of Justice funds to adopt and enforce on-the-job seat belt policies and programs for their employees when operating company-owned, rented, or personally owned vehicles.

COPS-AR-1075

# Appendices

## Appendix A. List of source documents

### A. Primary Sources

Public Safety Partnership and Community Policing Act of 1994, 34 U.S.C. § 10381 et seq.

### B. Secondary Sources

*Code of Federal Regulations (CFR)/Office of Management and Budget (OMB):*

2 C.F.R. Part 200 (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards) as adopted by the U.S. Department of Justice in 2 C.F.R. § 2800.101

4 C.F.R. Parts 101-105, U.S. Department of Justice/Government Accountability Office, "Joint Federal Claims Collections Standards"

5 C.F.R. Part 1320, "Controlling Paperwork Burdens on the Public"

5 C.F.R. Part 151, "Political Activity of State and Local Officers or Employees"

28 C.F.R. Part 23, "Criminal Intelligence Systems Operating Policies"

28 C.F.R. Part 61, "Procedures for Implementing the National Environmental Policy Act"

28 C.F.R. Part83, "Government-Wide Requirements for Drug-Free Workplaces (Grants)"

28 C.F.R. Part 69, "New Restrictions on Lobbying"

31 C.F.R. Part 205, "Rules and Procedures for Efficient Federal-State Funds Transfers"

OMB Circular A-129, "Policies for Federal Credit Programs and Non-Tax Receivables"

48 C.F.R. Part 31 (Federal Acquisition Regulation), "Contract Cost Principles and Procedures"

*Executive Orders:*

Executive Order 12291, "Regulations"

Executive Order 12372, 28 C.F.R. Part 30, "Intergovernmental Review of Federal Programs"

Executive Order 12547, "Non-Procurement Debarments and Suspension"

Executive Order 13513, "Federal Leadership on Reducing Text Messaging While Driving,"

Executive Order 13043, "Increasing Seat Belt Use in the United States"

COPS-AR-1076

2024 COPS Office Safer Outcomes Program Award Owner's Manual

# Appendix B. U.S. Department of Justice Certified Standard Assurances

On behalf of the Applicant, and in support of this application for a grant or cooperative agreement, I certify under penalty of perjury to the U.S. Department of Justice ("Department"), that all of the following are true and correct:

(1)  I have the authority to make the following representations on behalf of myself and the Applicant. I understand that these representations will be relied upon as material in any Department decision to make an award to the Applicant based on its application.

(2)  I certify that the Applicant has the legal authority to apply for the federal assistance sought by the application, and that it has the institutional, managerial, and financial capability (including funds sufficient to pay any required non-federal share of project costs) to plan, manage, and complete the project described in the application properly.

(3)  I assure that, throughout the period of performance for the award (if any) made by the Department based on the application--
   a.  the Applicant will comply with all award requirements and all federal statutes and regulations applicable to the award;
   b.  the Applicant will require all subrecipients to comply with all applicable award requirements and all applicable federal statutes and regulations; and
   c.  the Applicant will maintain safeguards to address and prevent any organizational conflict of interest, and also to prohibit employees from using their positions in any manner that poses, or appears to pose, a personal or financial conflict of interest.

(4)  The Applicant understands that the federal statutes and regulations applicable to the award (if any) made by the Department based on the application specifically include statutes and regulations pertaining to civil rights and nondiscrimination, and, in addition--
   A.  the Applicant understands that the applicable statutes pertaining to civil rights will include section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d); section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681); and section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102);
   b.  the Applicant understands that the applicable statutes pertaining to nondiscrimination may include section 809(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (34 U.S.C. § 10228(c)); section 1407(e) of the Victims of Crime Act of 1984 (34 U.S.C. § 20110(e)); section 299A(b) of the Juvenile Justice and Delinquency Prevention Act of 2002 (34 U.S.C. § 11182(b)); and that the grant condition set out at section 40002(b)(13) of the Violence Against Women Act (34 U.S.C. § 12291(b)(13)), which will apply to all awards made by the Office on Violence Against Women, also may apply to an award made otherwise;
   c.  the Applicant understands that it must require any subrecipient to comply with all such applicable statutes (and associated regulations); and
   d.  on behalf of the Applicant, I make the specific assurances set out in 28 C.F.R. §§ 42.105 and 42.204.

(5)  The Applicant also understands that (in addition to any applicable program-specific regulations and to applicable federal regulations that pertain to civil rights and nondiscrimination) the federal regulations applicable to the award (if any) made by the Department based on the application may include, but are not limited to, 2 C.F.R. Part 2800 (the DOJ "Part 200 Uniform Requirements") and 28 C.F.R. Parts 22 (confidentiality - research and statistical information), 23 (criminal intelligence systems), 38 (regarding faith-based or religious organizations participating in federal financial assistance programs), and 46 (human subjects protection).

COPS-AR-1077

(6)  I assure that the Applicant will assist the Department as necessary (and will require subrecipients and contractors to assist as necessary) with the Department's compliance with section 106 of the National Historic Preservation Act of 1966 (54 U.S.C. § 306108), the Archeological and Historical Preservation Act of 1974 (54 U.S.C. §§ 312501-312508), and the National Environmental Policy Act of 1969 (42 U.S.C. §§ 4321-4335), and 28 C.F.R. Parts 61 (NEPA) and 63 (floodplains and wetlands).

(7)  I assure that the Applicant will give the Department and the Government Accountability Office, through any authorized representative, access to, and opportunity to examine, all paper or electronic records related to the award (if any) made by the Department based on the application.

(8)  I assure that, if the Applicant is a governmental entity, with respect to the award (if any) made by the Department based on the application--

   A.  it will comply with the requirements of the Uniform Relocation Assistance and Real Property Acquisitions Act of 1970 (42 U.S.C. §§ 4601-4655), which govern the treatment of persons displaced as a result of federal and federally-assisted programs; and

   B.  it will comply with requirements of 5 U.S.C. §§ 1501-1508 and 7324-7328, which limit certain political activities of State or local government employees whose principal employment is in connection with an activity financed in whole or in part by federal assistance.

(9)  If the Applicant applies for and receives an award from the Office of Community Oriented Policing Services (COPS Office), I assure that as required by 34 U.S.C. § 10382(c)(11), it will, to the extent practicable and consistent with applicable law—including, but not limited to, the Indian Self-Determination and Education Assistance Act—seek, recruit, and hire qualified members of racial and ethnic minority groups and qualified women in order to further effective law enforcement by increasing their ranks within the sworn positions, as provided under 34 U.S.C. § 10382(c)(11).

(10) If the Applicant applies for and receives a DOJ award under the STOP School Violence Act program, I assure as required by 34 U.S.C. § 10552(a)(3), that it will maintain and report such data, records, and information (programmatic and financial) as DOJ may reasonably require.

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and the Applicant to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and 3801-3812). I also acknowledge that the Department's awards, including certifications provided in connection with such awards, are subject to review by the Department, including by its Office of the Inspector General.

_____          _____

Signature of Law Enforcement Executive/Agency Executive          Date

(For your electronic signature, please type in your name)

_____          _____

Signature of Government Executive/Financial Official          Date

(For your electronic signature, please type in your name)

COPS-AR-1078

# Appendix C. U.S. Department of Justice Certifications Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; Drug-Free Workplace Requirements; Law Enforcement and Community Policing

Applicants should refer to the regulations cited below to determine the certification to which they are required to attest. Applicants should also review the instructions for certification included in the regulations before completing this form. The certifications shall be treated as a material representation of fact upon which reliance will be placed when the U.S. Department of Justice ("Department") determines to award the covered transaction, grant, or cooperative agreement.

1. LOBBYING

   As required by 31 U.S.C. § 1352, as implemented by 28 C.F.R. Part 69, the Applicant certifies and assures (to the extent applicable) the following:

   i.   No Federal appropriated funds have been paid or will be paid, by or on behalf of the Applicant, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the making of any Federal grant, the entering into of any cooperative agreement, or the extension, continuation, renewal, amendment, or modification of any Federal grant or cooperative agreement;

   ii.  If the Applicant's request for Federal funds is in excess of $100,000, and any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a member of Congress, an officer or employee of Congress, or an employee of a member of Congress in connection with this Federal grant or cooperative agreement, the Applicant shall complete and submit Standard Form - LLL, "Disclosure of Lobbying Activities" in accordance with its (and any DOJ awarding agency's) instructions; and

   iii. The Applicant shall require that the language of this certification be included in the award documents for all subgrants and procurement contracts (and their subcontracts) funded with Federal award funds and shall ensure that any certifications or lobbying disclosures required of recipients of such subgrants and procurement contracts (or their subcontractors) are made and filed in accordance with 31 U.S.C. § 1352.

2. DEBARMENT, SUSPENSION, AND OTHER RESPONSIBILITY MATTERS

   A. Pursuant to Department regulations on nonprocurement debarment and suspension implemented at 2 C.F.R. Part 2867, and to other related requirements, the Applicant certifies, with respect to prospective participants in a primary tier "covered transaction," as defined at 2 C.F.R. § 2867.20(a), that neither it nor any of its principals—

      i.   is presently debarred, suspended, proposed for debarment, declared ineligible, sentenced to a denial of Federal benefits by a State or Federal court, or voluntarily excluded from covered transactions by any Federal department or agency;

      has within a three-year period preceding this application been convicted of a felony criminal violation under any Federal law, or been convicted or had a civil judgment rendered against it for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State, tribal, or local) transaction or private agreement or transaction; violation of

65

     Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion or receiving stolen property, making false claims, or obstruction of justice, or commission of any offense indicating a lack of business integrity or business honesty that seriously and directly affects its (or its principals') present responsibility;

    ii.   is presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, tribal, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and/or

    iii.   has within a three-year period preceding this application had one or more public transactions (Federal, State, tribal, or local) terminated for cause or default.

B.   Where the Applicant is unable to certify to any of the statements in this certification, it shall attach an explanation to this application. Where the Applicant or any of its principals was convicted, within a three-year period preceding this application, of a felony criminal violation under any Federal law, the Applicant also must disclose such felony criminal conviction in writing to the Department (for OJP Applicants, to OJP at **Ojpcompliancereporting@usdoj.gov**; for OVW Applicants, to OVW at **OVW.GFMD@usdoj.gov**; or for COPS Applicants, to COPS at **AskCOPSRC@usdoj.gov**), unless such disclosure has already been made.

3.   FEDERAL TAXES

A.   If the Applicant is a corporation, it certifies either that (1) the corporation has no unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability, or (2) the corporation has provided written notice of such an unpaid tax liability (or liabilities) to the Department (for OJP Applicants, to OJP at **Ojpcompliancereporting@usdoj.gov**; for OVW Applicants, to OVW at **OVW.GFMD@usdoj.gov**; or for COPS Applicants, to COPS at **AskCOPSRC@usdoj.gov**).

B.   Where the Applicant is unable to certify to any of the statements in this certification, it shall attach an explanation to this application.

4.   DRUG-FREE WORKPLACE (GRANTEES OTHER THAN INDIVIDUALS)

As required by the Drug-Free Workplace Act of 1988, as implemented at 28 C.F.R. Part 83, Subpart F, for grantees, as defined at 28 C.F.R. §§ 83.620 and 83.650:

A.   The Applicant certifies and assures that it will, or will continue to, provide a drug-free workplace by—

    i.   Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in its workplace and specifying the actions that will be taken against employees for violation of such prohibition;

    ii.   Establishing an on-going drug-free awareness program to inform employees about—

        a.   The dangers of drug abuse in the workplace;

        b.   The Applicant's policy of maintaining a drug-free workplace;

        c.   Any available drug counseling, rehabilitation, and employee assistance programs; and

        d.   The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

    iii.   Making it a requirement that each employee to be engaged in the performance of the award be given a copy of the statement required by paragraph (a);

    iv.   Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the award, the employee will—

        a.   Abide by the terms of the statement; and

        b.   Notify the employer in writing of the employee's conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction;

    v.   Notifying the Department, in writing, within 10 calendar days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title of any such convicted employee to the Department, as follows:

> For COPS award recipients - COPS Office, 145 N Street, NE, Washington, DC, 20530;
>
> For OJP and OVW award recipients - U.S. Department of Justice, Office of Justice Programs, ATTN: Control Desk, 810 h Street, N.W., Washington, D.C. 20531.
>
> Notice shall include the identification number(s) of each affected award;

    vi.   Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted:

        a.   Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1973, as amended; or

        b.   Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency; and

    vii.   Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

LAW ENFORCEMENT AGENCY CERTIFICATION REQUIRED UNDER DEPARTMENT OF JUSTICE DISCRETIONARY GRANT PROGRAMS ("SAFE POLICING CERTIFICATION")

If this application is for a discretionary award pursuant to which award funds may be made available (whether by the award directly or by any subaward at any tier) to a State, local, college, or university law enforcement agency, the Applicant certifies that any such law enforcement agency to which funds will be made available has been certified by an approved independent credentialing body or has started the certification process. To become certified, a law enforcement agency must meet two mandatory conditions: (a) the agency's use of force policies adhere to all applicable federal, State, and local laws; and (b) the agency's use of force policies prohibit chokeholds except in situations where use of deadly force is allowed by law.

For detailed information on this certification requirement, see **https://cops.usdoj.gov/SafePolicingEO**. The Applicant acknowledges that compliance with this safe policing certification requirement does not ensure compliance with federal, state, or local law, and that such certification shall not constitute a defense in any federal lawsuit. Nothing in the safe policing certification process or safe policing requirement is intended to be (or may be) used by third parties to create liability by or against the United States or any of its officials, officers, agents or employees under any federal law. Neither the safe policing certification process nor the safe policing certification requirement is intended to (or does) confer any right on any third-person or entity seeking relief against the United States or any officer or employee thereof. No person or entity is intended to be (or is) a third-party beneficiary of the safe policing certification process, or, with respect to the safe policing certification requirement, such a beneficiary for purposes of any civil, criminal, or administrative action.

COPS-AR-1081

2024 COPS Office Safer Outcomes Program Award Owner's Manual

5.    COORDINATION REQUIRED UNDER PUBLIC SAFETY AND COMMUNITY POLICING PROGRAMS
       As required by the Public Safety Partnership and Community Policing Act of 1994, at 34 U.S.C. § 10382(c)(5), if
       this application is for a COPS award, the Applicant certifies that there has been appropriate coordination with
       all agencies that may be affected by its award. Affected agencies may include, among others, Offices of the
       United States Attorneys; State, local, or tribal prosecutors; or correctional agencies.

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material
fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution
(including under 18 U.S.C. §§ 1001 and/or 1621, and/or 34 U.S.C. §§ 10271-10273), and also may subject me and
the Applicant to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C.
§§ 3729-3730 and 3801-3812). I also acknowledge that the Department's awards, including certifications provided
in connection with such awards, are subject to review by the Department, including by its Office of the Inspector
General.

_____                    _____

Signature of Law Enforcement Executive/Agency Executive              Date

(For your electronic signature, please type in your name)

_____                    _____

Signature of Government Executive/Financial Official                 Date

(For your electronic signature, please type in your name)

COPS-AR-1082

# Appendix D. Conference and Event Guidance

## Conference and Event Approval, Planning, and Reporting FAQ

### *Prior Approval*

i.  **Approximately how long should it take to adequately complete the Conference & Events Submission form?**

The amount of time required to adequately complete the Conference & Events Submission Form will vary depending on the complexity of the proposed event. A small event (in terms of number of attendees, total cost, etc.) may require only an hour or two to complete the form because the event is basic or routine and data are not required in all of the available categories. On the other hand, a large event (in terms of number of attendees, multiple sessions occurring at the same time, etc.) may require several hours or days depending on the amount of required data (categories) and level of justification needed to support the event. Regardless of the size of any event, the supporting justification should be sufficient to support the agency's mission for conducting the event.

ii.  **Which types of events do not require prior approval?**

Currently there are six types of events that do not require prior approval:

a.  Conferences held by grant recipients. (Note: Conferences held by cooperative agreement recipients do require prior approval.)
b.  Law enforcement operational activities, including staging, surveillance, investigation, intelligence, and undercover activities.
c.  Routine operational meetings (e.g., staff meetings or all-hands meetings) if held in a federal facility, if held by cooperative agreement recipients in a nonfederal facility that does not charge for its use, and if there are neither costs to the DOJ for logistical conference planning nor government-provided food or beverages. In all three of these instances, the answer to all the questions on the Prior Approval Not Required Checklist must be "No." Site visits are considered routine operational meetings regardless of location so long as there are no costs to the DOJ for meeting rooms, logistical conference planning, or food and beverages.
d.  Testing activities where the primary purpose of the event is to evaluate an applicant's qualifications to perform certain duties necessary to his or her job. This includes firearms and weaponry proficiency testing and certifications. A majority of the event must be devoted to administering and taking the test. Testing activities that are incidental to a training course or conference or are given upon its completion do require prior approval.
e.  Video conferences and webinars where there are neither costs to the DOJ for logistical conference planning nor government-provided food or beverages.
f.  Technical assistance visits where travel was made by an individual or a small group of project staff members to provide training or technical assistance to a particular entity; in this instance, the answer to all the questions on the Prior Approval Not Required Checklist must be "No."

COPS-AR-1083

iii. **Where should time staff spent working on the conference that is not related to planning be captured?**

Time spent working on a conference by staff or contractors can be classified as either logistical planning time or programmatic planning time. Programmatic planning includes time spent on activities such as developing the conference content and agenda, identifying and recruiting subject matter experts, and preparing written materials. Logistical planning includes time spent on tasks such as selecting a venue, ordering and setting up audio-video equipment, securing hotel rooms, processing registrations, providing onsite support during the event, and undertaking other nonprogrammatic functions.

iv. **If a cooperative agreement recipient or contractor is able to obtain a no-cost site for the event, are we still required to look into other facilities and provide justification for not selecting the other facilities?**

Yes. Cooperative agreement recipients and contractors should compare three or more facilities in a location. Facilities being compared should have provided a cost estimate and be able to accommodate the event as detailed in the requirements. A desired hotel may offer an incentive of no overall facility cost (e.g., for meeting rooms or audio-visual equipment) but may not be economical in other cost comparison items such as the availability of lodging at per diem rates, travel distance for attendees, etc. Also, recipients and contractors should maintain written documentation justifying their decision to select the chosen location in the event of a future audit.

v. **Is there a time frame after the COPS Office accepts a conference request that a cooperative agreement recipient or contractor can expect notification of approval?**

Each event request (meeting, conference, webinar, etc.) is unique with respect to how it will accomplish the COPS Office's mission. The key to any conference request moving through the review process is whether the package is complete. A complete package contains a detailed cost analysis and sufficient justification to support all categories within the package.

**Example:** An event is submitted for approval and consists of the following categories: printing and distribution, meals and incidental expenses (M&IE), lodging, transportation, and trainer or facilitator costs. The package contains a detailed cost analysis of each cost category (e.g., one trainer at $450 per day x 2 days = $900) and adequate justification explaining the purpose of the event and the role of the trainer. This package can move through the review process in a few days and allow ample time for travelers to make reservations, if the package is submitted within the required time frame. However, if the trainer or facilitator's costs in the submitted package exceed the COPS Office's threshold and if supporting justification is not included, a delay may occur while this justification is being retrieved.

To avoid delays in the approval process, all recipients and contractors should adhere to the time frame requirements for the dollar amount of their proposed event.

vi. **Once an event is approved, how do we handle any increases or decreases in the number of attendees originally proposed on the cost analysis spreadsheet submitted to the DOJ for approval?**

After receiving notification of approval from the COPS Office, all subsequent changes prior to the start day of the event should be sent to the COPS Office Conference Costs email address, as appropriate. **Example:** If the COPS Office approved on 9/1/2020 an event scheduled for 12/15/2020, the cooperative agreement recipient or contractor should notify the COPS Office of any changes in attendees as soon as possible (preferably 30 days or more in advance). This scenario holds true for changes to the start and end date, location, and any other cost-related category.

vii. **Does the $25 per person per day limit for meeting rooms and audio-visual costs also include service fees and taxes?**

Yes. The cost allowed for conference space and audio-visual equipment and services (fees and taxes) is limited to $31.25 per day per attendee and is not to exceed a cumulative total cost of $25,000. Total costs are defined as direct and indirect costs.

viii. **What if there are multiple meetings occurring within the larger event offered to all the attendees? Is the $31.25 per day per attendee limit applicable to each meeting? Example: A general session meeting contains all attendees and later breakout sessions are offered to the groups. Can each breakout session have its own $31.25 per person per day limit?**

No. Despite the multiple meetings offered within the larger event, the COPS Office considers and approves this type of situation to be a single event.

ix. **Can we accept complimentary food and beverage?**

Yes. Complimentary food and beverages may be accepted if offered to everyone. **Example:** Hotel W offers a complimentary continental breakfast to all its overnight customers regardless of any status they may have with the hotel chain. This type of complimentary offer is considered a business strategy of the hotel to promote an increase in overnight stays. You are not required to reduce your M&IE by the value of the food and beverage it offered to all customers as noted in this example.

x. **Are the thresholds ($8,750 for logistical planner, $35,000 for programmatic planner, and $20,000 for conference space and audio-visual equipment and services) a cumulative cost for the entire event or a per day cost?**

The cost allowed for conference space and audio-visual equipment and services (fees and taxes) is limited to $31.25 per day per attendee and is not to exceed a cumulative total cost of $25,000. The cost allowed for a logistical planner is the lesser of $62.50 per attendee or $11,000 per event. The cost allowed for a programmatic planner is the lesser of $250 per attendee or $43,750 per event.

xi. **To whom should I submit event requests?**

For all COPS Office events, the form should be sent to the COPS Office Conference Costs email address (**COPS.Conferencecosts@usdoj.gov**). Please do not send questions or other correspondence to this email address. This mailbox should be used only for the submission of conference forms and supporting documentation (e.g., hotel contracts).

xii. **How far in advance do I have to submit an event for review and approval?**

Requests for conferences costing $100,000 or less and not exceeding any cost thresholds (conference space and audio-visual equipment and services, logistical conference planner, and programmatic conference planner) must be submitted to the COPS Office 90 calendar days in advance of the earliest of the following:

- Start date of the conference
- Deadline for signing conference-related contracts
- Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request)

COPS-AR-1085

Requests for conferences costing more than $100,000, or exceeding any one cost threshold (conference space and audio-visual equipment and services, logistical conference planner, or programmatic conference planner), must be submitted to the COPS Office 120 calendar days in advance of the earliest of the following:

- Start date of the conference

- Deadline for signing conference-related contracts

- Obligation of funds for conference costs (except for minimal costs required to assemble and submit the approval request)

If approval requests are submitted less than the required number of days in advance (as noted above), the COPS Office, in its sole discretion, may consider the late requests but cannot ensure the requests will receive a decision in time to avoid having to cancel the conference (particularly if any issues arise with specific items of cost in the request). Cancellation costs associated with conference requests that are submitted for late prior approval may be determined to be unallowable costs by the COPS Office.

**xiii.  What are the most common mistakes made on the forms so that I can avoid them in the future and increase the likelihood of a quick review and approval decision for my event?**

The following are the most common mistakes found:

- *Inaccurate calculation of daily per diem*. Daily per diem rates for locations across the nation can be found on the GSA website. Ensure the daily rate used in the calculations corresponds to the specific location and dates of the meeting. In addition, remember that travel days are reimbursed at a slightly lower rate than meeting days. The lower rates must be used for days of travel both before and after the event. Table 3 includes these lower rates:

**Table 3. Per diem rates**

| Full per diem rate | Corresponding travel day rate (75%) |
| --- | --- |
| $46.00 | $34.50 |
| $51.00 | $38.25 |
| $56.00 | $42.00 |
| $61.00 | $45.75 |
| $66.00 | $49.50 |
| $71.00 | $53.25 |

**EXCEPTION:** If your organization has its own formal, written travel policy, your event submissions can reflect that policy instead of the rates in table 3. In these instances, state that you have a formal, written travel policy, and clearly explain the rates in the policy and how the corresponding numbers in your submission were derived.

- *Insufficient explanation and justification of transportation costs.* Remember to break out and briefly describe and justify the transportation costs that are included. **Example:** If participants are flying to your event and the tickets are being paid for with DOJ funding, you should include the anticipated number of people flying multiplied by the estimated cost per ticket. If cars will be rented, you should include a brief justification for why rental cars are being used instead of another form of ground transportation, such as taxis or shuttles.

COPS-AR-1086

- *Insufficient explanation and justification of audio-visual costs.* All audio-visual costs should be broken out and briefly described. The quantity of equipment to be rented (number of microphones, projectors, etc.) should be included, along with relevant costs and a brief justification for why the proposed equipment is required to conduct a successful meeting. A discussion of how the audio-visual services provider was selected should be included (for example, did you obtain three quotes?).

- *Insufficient explanation and justification of printing costs.* Proposed printing costs for participant materials should also be itemized and briefly described. Specifically, it is important to articulate why printed materials are needed instead of making materials available electronically (at low or no cost) to attendees before or after the event.

- *Insufficient explanation and justification of shipping costs.* Provide an itemization of these costs, along with a brief description of why the equipment and other materials being shipped are essential to hosting a successful conference.

- *Insufficient explanation and justification of consultant costs.* The maximum daily rate for subject matter experts who are being reimbursed for their time is noted in the Consultant/Contractor Fact Sheet at **https://cops.usdoj.gov/saferoutcomes-award#programdocuments**. Describe all consultant costs in detail and include a brief yet compelling justification for the proposed costs. Daily rates for subject matter experts above the maximum daily rate require prior approval by the COPS Office and DOJ. In cases where higher rates are included in the event submission, written documentation of prior approval is required and should be attached.

xiv. **Should I continue to exclude all food and beverage costs in my event submissions?**

Yes. The inclusion of food and beverage costs will delay the review process, and these costs are not likely to be approved. The only exception is when the location of the conference does not allow attendees to obtain food or beverages on their own or when this restriction would greatly disrupt the conference schedule. If you believe your event qualifies for such a rare exception, contact your Program Manager to discuss it before completing and submitting your form. If meals are included in your event submission, remember that attendees must subtract the meal costs from the M&IE reimbursement for the days on which the meals will occur.

xv. **Can you summarize what I can do to prevent follow-up questions about my submitted events that delay the review and approval process?**

As a general rule, explain how you derived every cost that you include in the conference submission form. For lines that do not provide space for you to add descriptive narrative, include your explanations and specific cost breakdowns in a separate tab or in a separate document that is submitted with the form. In addition, include the cooperative agreement or contract number on the form.

xvi. **What events qualify for the expedited review process?**

There is no expedited review process. Every effort is made to review all events as quickly as possible.

Most delays result from a need for additional information. Event requests are prioritized for review by balancing the following three criteria:

- The start date of the event
- The date the event submission was received by COPS Office
- The overall cost and complexity of the event

COPS-AR-1087

For example, conferences requiring approval by the assistant attorney general's administration and the deputy attorney general (over $100,000–$250,000) typically take longer to process, as they must go through COPS Office and DOJ reviews, result in more questions, and are more likely to have issues related to cost thresholds.

## Reporting

**xvii. Where can I find the most updated version of the conference reporting form to use for my submissions?**

The most updated version of the conference reporting form can be found under the Training Resources for award recipients section on the COPS Office Training page at **https://cops.usdoj.gov/training**.

**xviii.    If I have a question about conference reporting, to whom should I send it?**

Send your questions to your designated Program Manager. They are great resources and will be happy to assist you.

**xix.  Are we expected to have our staff track their time hour for hour for time spent on the event for planning, etc., or are reasonable estimates adequate for cost reporting purposes?**

Post-event reports must contain actual costs, not estimates. These costs should include logistical and programmatic planner staff time spent on these activities and any contracted planner costs.

**xx.   With conference cost reports now being due 30 days after the event, how should we handle costs for invoices that have not been received yet? Many invoices (such as for hotels) are not received within 30 days after the event. Should estimates be included on the cost report?**

All conference costs for events held by cooperative agreement recipients or contractors costing more than $20,000, or where more than 50% of attendees are DOJ employees, must be reported within *45 calendar days after the last day of the event.*

**xxi.  On the DOJ Conference & Events Submission Form under "A. General Conference Information," is item 19, "Reporting Period," the period in which the actual cost of the event is being reported, or should this be based on the end date of the event?**

This reporting requirement is based on the end date of the event. All conference costs for events held by cooperative agreement recipients or contractors costing over $20,000, or where more than 50% of attendees are DOJ employees, must be reported within 45 calendar days after the last day of the event. Example: A COPS Office–approved conference was conducted from 3/16/2021 through 3/20/2021. A completed Conference & Events Submission Form must be submitted, showing the prior approval amounts compared to the actual costs and explaining all variances greater than 10% or $1,000. Reports should be emailed to the COPS Office Conference Cost email address at **COPS.Conferencecosts@usdoj.gov**.

The following pages contain the conference reporting form template.

COPS-AR-1088



# Department of Justice-Sponsored Conference
## Request and Report

*A* **RED** *cell indicates that your entry exceeds the DOJ meal threshold AND cannot be submitted unless within the meal threshold.*

*A* **YELLOW** *cell indicates that your entry exceeds the DOJ threshold, and additional justification must be provided.*

*A* **GREY** *box indicates that no entry is required.*

| JMD FINANCE STAFF USE ONLY: | |
|---|---|
| JMD Tracking Number | |
| Date  Received | |
| | |
| | |

| COMPONENT USE ONLY: | |
|---|---|
| Component Internal Tracking Number *(Optional)* : | |
| | |
| | |
| | |

| A.  GENERAL CONFERENCE INFORMATION: | |
|---|---|
| 1.  Name of Requestor | |
| 2.  Component Name *(Drop Down)* | COPS - Office of Community Oriented Policing Services |
| 3.  Is this submission for a conference request or report? *(Drop Down)* | Conference Request |
| 4.  JMD Tracking # *(Report Only)* | |
| 5.  If this is a Re-Submission of a previously disapproved conference, indicate original JMD Tracking Number. | |
| 6. Official Title of the Conference *(No Abbreviations)* | |
| 7.  Is this a blanket request? (Y/N) *(Drop Down) If "YES" Skip A9-13,A16 and Sections C,D,& E1, If "NO" Skip A8* | |
| 8.  If this is a Blanket Request, indicate for each: 1) Number of occurrences this fiscal year, 2) Locations, and 3) Start and End Dates | |
| 9.  Conference Start Date *(MM/DD/YYYY)* | |
| 10. Conference End Date *(MM/DD/YYYY)* | |
| 11. Location: Country  *(Drop Down)* | |
| 12. Location: State / Territory / Possession *(Drop Down)* | |
| 13. Location: City | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
1 of 6

COPS-AR-1089

| | Conference REQUEST Information | Conference REPORT Information |
|---|---|---|
| 14. Justification that conference is essential to accomplishing core mission | | |
| 15. Funding Appropriation Symbol | | |
| 16. Facility Name *(Specific)* | | |
| 17. Facility Type (Federal/Non-Federal) *(Drop Down)* | | |
| 18. Cooperative Agreement (Y/N) *(Drop Down)* | | |
| *(Required when reporting actuals) (Drop Down)* | | |
| 20. Number of DOJ Federal Attendees | | |
| 21. Number of Other Federal Attendees | | |
| 22. Number of Non-Federal Attendees | | |
| 23. Total Number of Attendees *(Auto-populates)* | 0 | |
| 24.  Total number of attendees whose travel expenses are paid for by DOJ *(required)* | | |
| 25. Total Cost *(Auto-populates from entries below)* | $0 | |
| 26. Predominately Internal Event held at a Non-Federal Facility (Y/N) *(Auto-populates based on Facility Type and Number of Attendees)* | PLEASE PROVIDE NUMBER OF ATTENDEES | |

**Competitive Contracting:**

| | |
|---|---|
| *(Drop Down)* | |
| *(Drop Down)* | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
2 of 6

COPS-AR-1090

*When REPORTING quarterly conferences, only complete the request information if JMD approved your request and you have a JMD tracking number*

| B. TOTAL CONFERENCE COSTS: | Conference REQUEST Information | | | | Conference REPORT Information | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | ESTIMATED DIRECT COST | ESTIMATED INDIRECT COST *(Funding from Cooperative Agreement)* | ESTIMATED TOTAL COST *(Auto-populates)* | % OF TOTAL COST *(Auto-populates)* | ACTUAL DIRECT COST | ACTUAL INDIRECT COST *(Funding from Cooperative Agreement)* | ACTUAL TOTAL COST *(Auto-populates)* | VARIANCE *(Between Actual and Estimate) (Auto-populates)* | VARIANCE JUSTIFICATION (Provide justification if variance is >$1,000 and >10% as indicated by a light yellow cell OR exceeds cost thresholds, as indicated by a bright yellow cell) |
| 1. Conference Meeting Space (including rooms for break-out sessions) | | | $          - | 0.00% | | | | | |
| 2. Audio-visual Equipment and Services | | | - | 0.00% | | | | | |
| 3. Printing and Distribution | | | - | 0.00% | | | | | |
| 4. Meals Provided by DOJ | | | | | | | | | |
| a. Breakfast | | | - | 0.00% | | | | | |
| b. Lunch | | | - | 0.00% | | | | | |
| c. Dinner | | | - | 0.00% | | | | | |
| 5. Refreshments Provided by DOJ | | | - | 0.00% | | | | | |
| 6. M&IE for Attendees | | | - | 0.00% | | | | | |
| 7. Lodging | | | - | 0.00% | | | | | |
| 8. Common Carrier Transportation | | | - | 0.00% | | | | | |
| 9. Local Transportation | | | - | 0.00% | | | | | |
| 10. Conference Planner - Logistical | | | - | 0.00% | | | | | |
| 11. Conference Planner - Programmatic | | | - | 0.00% | | | | | |
| 12. Conference Trainer/Instructor/Presenter/Facilitator | | | - | 0.00% | | | | | |
| 13. Other Costs: *(Itemize Below)* | | | | | | | | | |
| | | | - | 0.00% | | | | | |
| | | | - | 0.00% | | | | | |
| | | | - | 0.00% | | | | | |
| | | | - | 0.00% | | | | | |
| | | | - | 0.00% | | | | | |
| 14. Total Conference Cost: *(Auto-populates)* | $          - | $          - | $          - | 0.00% | | | | | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To: JMD Finance Staff, TSG at Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
3 of 6

COPS-AR-1091

**C.  MEALS & REFRESHMENTS THRESHOLD CALCULATOR**

| CONFERENCE LOCATION: | PER DIEM RATE | |
|---|---|---|
| 1.  Continental United States MI&E | GSA Per-Diem Rates | |
| 2.  Hawaii, Alaska, US Territories & Possessions MI&E | DOD Per-Diem Rates | |
| 3.  Foreign Country MI&E | State Department Per-Diem Rates | |

| D.  MEALS | NUMBER OF TIMES MEAL IS SERVED | NUMBER OF ATTENDEES | PER PERSON THRESHOLD ($) | TOTAL JMD THRESHOLD ($) |
|---|---|---|---|---|
| 1.  Breakfast | | 0 | SELECT PER DIEM RATE | N/A |
| 2.  Lunch | | 0 | SELECT PER DIEM RATE | N/A |
| 3.  Dinner | | 0 | SELECT PER DIEM RATE | N/A |

**E.  OTHER THRESHOLDS CALCULATOR**

| COST CATEGORY: | NUMBER OF ATTENDEES | PER PERSON THRESHOLD ($) | TOTAL JMD THRESHOLD ($) |
|---|---|---|---|
| 1.  Conference Space & Audio-visual Equipment and Services | 0 | $          25 | $          - |
| 2.  Logistical Conference Planner | 0 | $          50 | $          - |
| 3.  Programmatic Conference Planner | 0 | $          200 | $          - |

| F. JUSTIFICATION IF SUBMITTING CONFERENCE REQUEST FORM WITH ESTIMATED COSTS OVER THRESHOLD *(Complete if cells turn YELLOW):* | |
|---|---|
| 1. Conference Space & Audio-visual Equipment and Services | |
| 2. Refreshments | |
| 3. Logistical Conference Planner | |
| 4. Programmatic Conference Planner | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
4 of 6

COPS-AR-1092

**G. JUSTIFICATION REQUIRED FOR CONFERENCES WITH MEALS (*Complete if cells turn YELLOW*):**

| Government Provided Meals | |
|---|---|
| | |

**H. JUSTIFICATION FOR NON-FEDERAL FACILITY *(Complete if cells turn YELLOW)*:**

| Justification for Using a Non-Federal Facility *(Drop Down)* | |
|---|---|
| | |

**I. FACILITIES CONSIDERED**

| NAME | FACILITY TYPE *(Drop Down)* | TOTAL EST. CONFERENCE COST | SELECTED (Y/N) | REASON FOR USE OR NON-USE |
|---|---|---|---|---|
| | **0** | $          - | YES | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
5 of 6

COPS-AR-1093

**J.  ESTIMATED ATTENDEE INFORMATION**

| ATTENDEE DUTY STATION | ATTENDEE ORGANIZATION | NUMBER OF ATTENDEES |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **TOTAL -** *(Breakout must match entry on line A23)* | | 0 |

DOJ-Sponsored Conference Request and Report Form_Version 2
Release Date: 4/1/13

Return To:  JMD Finance Staff, TSG at  Conference.and.Non-Federal.Center@usdoj.gov

Attachment 1
SUBMISSION FORM
6 of 6

COPS-AR-1094

# Appendix E. Enhancement of contractor protection from reprisal for disclosure of certain information (41 U.S.C. § 4712)

**(a)** **Prohibition of reprisals**.--

    **(1)** **In general**.--An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

    **(2)** **Persons and bodies covered**.--The persons and bodies described in this paragraph are the persons and bodies as follows:

        **(A)** A Member of Congress or a representative of a committee of Congress.

        **(B)** An Inspector General.

        **(C)** The Government Accountability Office.

        **(D)** A Federal employee responsible for contract or grant oversight or management at the relevant agency.

        **(E)** An authorized official of the Department of Justice or other law enforcement agency.

        **(F)** A court or grand jury.

        **(G)** A management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct.

    **(3)** **Rules of construction**.--For the purposes of paragraph (1)--

        **(A)** an employee who initiates or provides evidence of contractor, subcontractor, or grantee misconduct in any judicial or administrative proceeding relating to waste, fraud, or abuse on a Federal contract or grant shall be deemed to have made a disclosure covered by such paragraph; and

        **(B)** a reprisal described in paragraph (1) is prohibited even if it is undertaken at the request of an executive branch official, unless the request takes the form of a non-discretionary directive and is within the authority of the executive branch official making the request.

**(b)** **Investigation of complaints**.--

    **(1)** **Submission of complaint**.--A person who believes that the person has been subjected to a reprisal prohibited by subsection (a) may submit a complaint to the Inspector General of the executive agency involved. Unless the Inspector General determines that the complaint is frivolous, fails to allege a violation of the prohibition in subsection (a), or has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant, the Inspector General shall investigate the complaint and, upon completion of such investigation, submit a report of the findings of the investigation to the person, the contractor or grantee concerned, and the head of the agency.

COPS-AR-1095

(2) **Inspector General action**.--

   (A) **Determination or submission of report on findings**.--Except as provided under subparagraph (B), the Inspector General shall make a determination that a complaint is frivolous, fails to allege a violation of the prohibition in subsection (a), or has previously been addressed in another Federal or State judicial or administrative proceeding initiated by the complainant or submit a report under paragraph (1) within 180 days after receiving the complaint.

   (B) Extension of time.--If the Inspector General is unable to complete an investigation in time to submit a report within the 180-day period specified in subparagraph (A) and the person submitting the complaint agrees to an extension of time, the Inspector General shall submit a report under paragraph (1) within such additional period of time, up to 180 days, as shall be agreed upon between the Inspector General and the person submitting the complaint.

(3) **Prohibition on disclosure**.--The Inspector General may not respond to any inquiry or disclose any information from or about any person alleging the reprisal, except to the extent that such response or disclosure is--

   (A) made with the consent of the person alleging the reprisal;

   (B) made in accordance with the provisions of section 552a of title 5 or as required by any other applicable Federal law; or

   (C) necessary to conduct an investigation of the alleged reprisal.

(4) **Time limitation**.--A complaint may not be brought under this subsection more than three years after the date on which the alleged reprisal took place.

(c) **Remedy and enforcement authority**.--

(1) In general.--Not later than 30 days after receiving an Inspector General report pursuant to subsection (b), the head of the executive agency concerned shall determine whether there is sufficient basis to conclude that the contractor or grantee concerned has subjected the complainant to a reprisal prohibited by subsection (a) and shall either issue an order denying relief or shall take one or more of the following actions:

   (A) Order the contractor or grantee to take affirmative action to abate the reprisal.

   (B) Order the contractor or grantee to reinstate the person to the position that the person held before the reprisal, together with compensatory damages (including back pay), employment benefits, and other terms and conditions of employment that would apply to the person in that position if the reprisal had not been taken.

   (C) Order the contractor or grantee to pay the complainant an amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees) that were reasonably incurred by the complainant for, or in connection with, bringing the complaint regarding the reprisal, as determined by the head of the executive agency.

   **Exhaustion of remedies**.--If the head of an executive agency issues an order denying relief under paragraph (1) or has not issued an order within 210 days after the submission of a complaint under subsection (b), or in the case of an extension of time under paragraph (b)(2)(B), not later than 30 days after the expiration of the extension of time, and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction

COPS-AR-1096

over such an action without regard to the amount in controversy. Such an action shall, at the request of either party to the action, be tried by the court with a jury. An action under this paragraph may not be brought more than two years after the date on which remedies are deemed to have been exhausted.

**(2) Admissibility of evidence**.--An Inspector General determination and an agency head order denying relief under paragraph (2) shall be admissible in evidence in any de novo action at law or equity brought pursuant to this subsection.

**(3) Enforcement of orders**.--Whenever a person fails to comply with an order issued under paragraph (1), the head of the executive agency concerned shall file an action for enforcement of such order in the United States district court for a district in which the reprisal was found to have occurred. In any action brought under this paragraph, the court may grant appropriate relief, including injunctive relief, compensatory and exemplary damages, and attorney fees and costs. The person upon whose behalf an order was issued may also file such an action or join in an action filed by the head of the executive agency.

**(4) Judicial review**.--Any person adversely affected or aggrieved by an order issued under paragraph (1) may obtain review of the order's conformance with this subsection, and any regulations issued to carry out this section, in the United States court of appeals for a circuit in which the reprisal is alleged in the order to have occurred. No petition seeking such review may be filed more than 60 days after issuance of the order by the head of the executive agency. Review shall conform to chapter 7 of title 5. Filing such an appeal shall not act to stay the enforcement of the order of the head of an executive agency, unless a stay is specifically entered by the court.

**(5) Burdens of proof**.--The legal burdens of proof specified in section 1221(e) of title 5 shall be controlling for the purposes of any investigation conducted by an Inspector General, decision by the head of an executive agency, or judicial or administrative proceeding to determine whether discrimination prohibited under this section has occurred.

**(6) Rights and remedies not waivable**.--The rights and remedies provided for in this section may not be waived by any agreement, policy, form, or condition of employment.

**(d) Notification of employees**.--The head of each executive agency shall ensure that contractors, subcontractors, and grantees of the agency inform their employees in writing of the rights and remedies provided under this section, in the predominant native language of the workforce.

**(e) Construction**.--Nothing in this section may be construed to authorize the discharge of, demotion of, or discrimination against an employee for a disclosure other than a disclosure protected by subsection (a) or to modify or derogate from a right or remedy otherwise available to the employee.

**(f) Exceptions**.--

**(1)** This section shall not apply to any element of the intelligence community, as defined in section 3(4) of the National Security Act of 1947 (50 U.S.C. § 401a(4)).

**(2)** This section shall not apply to any disclosure made by an employee of a contractor, subcontractor, or grantee of an element of the intelligence community if such disclosure--

**(A)** relates to an activity of an element of the intelligence community; or

**(B)** was discovered during contract, subcontract, or grantee services provided to an element of the intelligence community.

COPS-AR-1097

2024 COPS Office Safer Outcomes Program Award Owner's Manual

(g) **Definitions**.--In this section:

   **(1)** The term "abuse of authority" means an arbitrary and capricious exercise of authority that is inconsistent with the mission of the executive agency concerned or the successful performance of a contract or grant of such agency.

   **(2)** The term "Inspector General" means an Inspector General appointed under the Inspector General Act of 1978 and any Inspector General that receives funding from, or has oversight over contracts or grants awarded for or on behalf of, the executive agency concerned.

(h) **Construction**.--Nothing in this section, or the amendments made by this section, 1 shall be construed to provide any rights to disclose classified information not otherwise provided by law.

**[(i) Repealed by Pub.L. 114-261, § 1(a)(3)(A)(ii), Dec. 14, 2016, 130 Stat. 1362]**

COPS-AR-1098

# Appendix F. 2 C.F.R. Appendix II to Part 200: Contract provisions for nonfederal entity contracts under federal awards

In addition to other provisions required by the Federal agency or non-Federal entity, all contracts made by the non-Federal entity under the Federal award must contain provisions covering the following, as applicable.

(A) Contracts for more than the simplified acquisition threshold, which is the inflation adjusted amount determined by the Civilian Agency Acquisition Council and the Defense Acquisition Regulations Council (Councils) as authorized by 41 U.S.C. 1908, must address administrative, contractual, or legal remedies in instances where contractors violate or breach contract terms, and provide for such sanctions and penalties as appropriate.

(B) All contracts in excess of $10,000 must address termination for cause and for convenience by the non-Federal entity including the manner by which it will be effected and the basis for settlement.

(C) Equal Employment Opportunity. Except as otherwise provided under 41 CFR Part 60, all contracts that meet the definition of "federally assisted construction contract" in 41 CFR Part 60-1.3 must include the equal opportunity clause provided under 41 CFR 60-1.4(b), in accordance with Executive Order 11246, "Equal Employment Opportunity" (30 FR 12319, 12935, 3 CFR Part, 1964-1965 Comp., p. 339), as amended by Executive Order 11375, "Amending Executive Order 11246 Relating to Equal Employment Opportunity," and implementing regulations at 41 CFR part 60, "Office of Federal Contract Compliance Programs, Equal Employment Opportunity, Department of Labor."

(D) Davis-Bacon Act, as amended (40 U.S.C. 3141-3148). When required by Federal program legislation, all prime construction contracts in excess of $2,000 awarded by non-Federal entities must include a provision for compliance with the Davis-Bacon Act (40 U.S.C. 3141-3144, and 3146-3148) as supplemented by Department of Labor regulations (29 CFR Part 5, "Labor Standards Provisions Applicable to Contracts Covering Federally Financed and Assisted Construction"). In accordance with the statute, contractors must be required to pay wages to laborers and mechanics at a rate not less than the prevailing wages specified in a wage determination made by the Secretary of Labor. In addition, contractors must be required to pay wages not less than once a week. The non-Federal entity must place a copy of the current prevailing wage determination issued by the Department of Labor in each solicitation. The decision to award a contract or subcontract must be conditioned upon the acceptance of the wage determination. The non-Federal entity must report all suspected or reported violations to the Federal awarding agency. The contracts must also include a provision for compliance with the Copeland "Anti-Kickback" Act (40 U.S.C. 3145), as supplemented by Department of Labor regulations (29 CFR Part 3, "Contractors and Subcontractors on Public Building or Public Work Financed in Whole or in Part by Loans or Grants from the United States"). The Act provides that each contractor or subrecipient must be prohibited from inducing, by any means, any person employed in the construction, completion, or repair of public work, to give up any part of the compensation to which he or she is otherwise entitled. The non-Federal entity must report all suspected or reported violations to the Federal awarding agency.

(E) Contract Work Hours and Safety Standards Act (40 U.S.C. 3701-3708). Where applicable, all contracts awarded by the non-Federal entity in excess of $100,000 that involve the employment of mechanics or laborers must include a provision for compliance with 40 U.S.C. 3702 and 3704, as supplemented by Department of Labor regulations (29 CFR Part 5). Under 40 U.S.C. 3702 of the Act, each contractor must be required to compute the wages of every mechanic and laborer on the basis of a standard work week of 40 hours. Work in excess of the standard work week is permissible provided that the worker is compensated at a rate of not less than one and a half times the basic rate of pay for all hours worked in excess of 40 hours in the work week. The requirements of

40 U.S.C. 3704 are applicable to construction work and provide that no laborer or mechanic must be required to work in surroundings or under working conditions which are unsanitary, hazardous or dangerous. These requirements do not apply to the purchases of supplies or materials or articles ordinarily available on the open market, or contracts for transportation or transmission of intelligence.

(F) Rights to Inventions Made Under a Contract or Agreement. If the Federal award meets the definition of "funding agreement" under 37 CFR §401.2 (a) and the recipient or subrecipient wishes to enter into a contract with a small business firm or nonprofit organization regarding the substitution of parties, assignment or performance of experimental, developmental, or research work under that "funding agreement," the recipient or subrecipient must comply with the requirements of 37 CFR Part 401, "Rights to Inventions Made by Nonprofit Organizations and Small Business Firms Under Government Grants, Contracts and Cooperative Agreements," and any implementing regulations issued by the awarding agency.

(G) Clean Air Act (42 U.S.C. 7401-7671q.) and the Federal Water Pollution Control Act (33 U.S.C. 1251-1387), as amended—Contracts and subgrants of amounts in excess of $150,000 must contain a provision that requires the non-Federal award to agree to comply with all applicable standards, orders or regulations issued pursuant to the Clean Air Act (42 U.S.C. 7401-7671q) and the Federal Water Pollution Control Act as amended (33 U.S.C. 1251-1387). Violations must be reported to the Federal awarding agency and the Regional Office of the Environmental Protection Agency (EPA).

(H) Debarment and Suspension (Executive Orders 12549 and 12689)—A contract award (see 2 CFR 180.220) must not be made to parties listed on the government wide exclusions in the System for Award Management (SAM), in accordance with the OMB guidelines at 2 CFR 180 that implement Executive Orders 12549 (3 CFR part 1986 Comp., p. 189) and 12689 (3 CFR part 1989 Comp., p. 235), "Debarment and Suspension." SAM Exclusions contains the names of parties debarred, suspended, or otherwise excluded by agencies, as well as parties declared ineligible under statutory or regulatory authority other than Executive Order 12549.

(I) Byrd Anti-Lobbying Amendment (31 U.S.C. 1352)—Contractors that apply or bid for an award exceeding $100,000 must file the required certification. Each tier certifies to the tier above that it will not and has not used Federal appropriated funds to pay any person or organization for influencing or attempting to influence an officer or employee of any agency, a member of Congress, officer or employee of Congress, or an employee of a member of Congress in connection with obtaining any Federal contract, grant or any other award covered by 31 U.S.C. 1352. Each tier must also disclose any lobbying with non-Federal funds that takes place in connection with obtaining any Federal award. Such disclosures are forwarded from tier to tier up to the non-Federal award.

(J) See § 200.323.

(K) See § 200.216.

[78 FR 78608, Dec. 26, 201, as amended at 79 FR 75888, Dec. 19, 2014; 85 FR 49577, Aug. 13, 2020]

COPS-AR-1100

# Appendix G. Remittance of Interest Earned Amounts

## 2 CFR § 200.305 (b)(9) – Payment (remittance of interest earned)

1. *Interest earned amounts up to $500 per year may be retained by the non-federal entity for administrative expense. Any additional interest earned on federal advance payments deposited in interest-bearing accounts must be remitted annually to the Department of Health and Human Services Payment Management System (PMS) through an electronic medium using either Automated Clearing House (ACH) network or a Fedwire Funds Service payment. Remittances must include pertinent information of the payee and nature of payment in the memo area (often referred to as "addenda records" by Financial Institutions) as that will assist in the timely posting of interest earned on federal funds. Pertinent details include the Payee Account Number (PAN) if the payment originated from PMS, or Agency information if the payment originated from ASAP, NSF or another federal agency payment system. The remittance must be submitted as follows:*

    i.    For ACH Returns:

    Routing Number: 051036706
    Account number: 303000
    Bank Name and Location: Credit Gateway - ACH Receiver St. Paul, MN

    ii.   For Fedwire Returns*:

    Routing Number: 021030004
    Account number: 75010501
    Bank Name and Location: Federal Reserve Bank Treas NYC/Funds Transfer Division New York, NY

    (* Please note organization initiating payment is likely to incur a charge from your Financial Institution for this type of payment)

    iii.  For International ACH Returns:

    Beneficiary Account: Federal Reserve Bank of New York/ITS (FRBNY/ITS)
    Bank: Citibank N.A. (New York)
    Swift Code: CITIUS33
    Account Number: 36838868
    Bank Address: 388 Greenwich Street, New York, NY 10013
    Payment Details (Line 70): Agency Name (abbreviated when possible) and ALC
    Agency POC: Michelle Haney, 301-492-5065

    iv.   For recipients that do not have electronic remittance capability, please make check** payable to: "The Department of Health and Human Services."

    Mail Check to Treasury approved lockbox:
    HHS Program Support Center, P.O. Box 530231, Atlanta, GA 30353-0231

    (** Please allow 4-6 weeks for processing of a payment by check to be applied to the appropriate PMS account)

Any additional information/instructions may be found on the PMS Web site at **https://pms.psc.gov/**. Instructions for returning interest on can be found at **https://pms.psc.gov/grant-recipients/returning-funds-interest.html**.

COPS-AR-1101

# Appendix H. Additional resources for Cooperative Agreement recipients

All recipients must follow the guidance in the financial fact sheets as outlined in this manual. The following are the fact sheets that can be found on the **Award Management Materials web page**:

- *Grant Adjustment Modifications – Budget Modification Fact Sheet*

- *Consultant Contractor Fact Sheet*

- *Indirect Costs Fact Sheet*

- *Program Income Fact Sheet*

- *Sole Source Justification Fact Sheet*

In addition to the above fact sheets, recipients should also refer to **The DOJ Grants Financial Guide**. The DOJ Grants Financial Guide (the "Guide") serves as the primary reference manual to assist OJP, OVW, and COPS Office award recipients in fulfilling their fiduciary responsibility to safeguard grant funds and ensure funds are used for the purposes for which they were awarded. It compiles a variety of laws, rules and regulations that affect the financial and administrative management of your award. There may be instances where the requirements may differ among the three grant-making components; to the extent possible, those differences are spelled out throughout the Guide. However, recipients (and subrecipients) should refer to the award terms and conditions outlined in this Award Owner's Manual to determine the specific requirements that apply to your award.

Some recipients may be awarded Cooperative Agreements to develop reports, publications, manuals, training, videos, and other products. The Cooperative Agreement, which is included in the Award Document, includes customized tasks and deliverables that may require the recipient to follow one or more of these resource documents or fact sheets applicable to their project:

- ***COPS Office Logo Standards Manual***
- ***In Person Curriculum Standards Guide***
- ***Instructor Quality Assurance Guide***
- **Non-TOT Instructor Guide Template**
- **Non-TOT Participant Guide Template**
- **Non-TOT PowerPoint Background**
- ***Online Curriculum Process Guide***
- **TOT Instructor Guide Template**
- **TOT Participant Guide Template**
- **TOT PowerPoint Background**

- ***Video Development Process Guide***
- ***The ADDIE Model of Instructional Design Fact Sheet***
- ***The COPS Office Editorial and Graphics Style Manual: Guide for Authors, New Revised Third Edition***
- ***Training Fact Sheet***
- ***Section 508 of the Rehabilitation Act of 1973***
- ***Webinar Fact Sheet***
- **Webinar Template**

COPS-AR-1102

# Glossary of Terms

**allowable costs.** Allowable costs are costs that will be paid for by this award program. Upon review of your submitted budget, any unallowable costs were removed. The award financial information included in your award package specifies your allowable costs, contains the final budget category amounts for which your organization was approved, and notes any relevant revisions that were made to your original budget submission.

**assistance listing.** The assistance listing contains a description and index of all forms of federal assistance. Each program is assigned an assistance listing number, which is used by auditors to track award revenues. It is also used in participating states by State Single Points of Contact in conducting the required intergovernmental reviews under Executive Order 12372. The assistance listing number for COPS Office awards is 16.710.

**audit.** Work done by auditors, including both the Office of the Inspector General (OIG) and state or local auditors, to examine financial statements and to review

- compliance with laws and regulations;
- economy and efficiency of operations;
- effectiveness in achieving program results;
- allowability of costs claimed against the award.

**authorized representative.** The authorized representatives are the individuals in your organization who have final authority and responsibility for all programmatic and financial decisions regarding this award. At the time of award application, your agency listed the authorized representatives for your agency. For non–law enforcement agencies (institutions of higher education, private organizations, etc.), the authorized representatives are the programmatic and financial officials who have the ultimate signatory authority to sign contracts on behalf of your organization. These executives are listed on your award document and are understood to be your authorized representatives. If any of the executive information is incorrect, please **revise** the information via JustGrants. For any assistance, please reference the **https://justicegrants.usdoj.gov/training/jarg-entity-management.pdf**.

**award end date.** This is the date until which your agency is authorized to purchase items or hire positions that were approved by the COPS Office. The award end date is found on your award document. Recipients may not make any purchases or hire any positions prior to this date without written approval from the COPS Office.

**award number.** The award number identifies your organization's award and can be found on your award package. This number should be used as a reference when corresponding with the COPS Office. Your award number is in the format 15JCOPS-24-GG-XXXXX-XXXX for awards made in FY 2024. The COPS Office tracks award information based upon this number.

**award start date.** This is the date on or after which your agency is authorized to purchase or hire any allowable equipment, services, personnel, or other costs that were approved by the COPS Office. The award start date is found on your award package. Recipients may not expend funds prior to this date without written approval from the COPS Office.

**career law enforcement officer.** The COPS Office statute defines a career law enforcement officer as a person hired on a permanent basis who is authorized by law, or by a state or local public agency, to engage in or oversee the prevention, detection, or investigation of violations of criminal laws.

**closeout.** This is the process in which the awarding agency, the COPS Office, determines that all applicable administrative actions and all required work and conditions of the award have been completed and met by the recipient and awarding agency.

**cognizant federal agency.** Your cognizant federal agency is generally the federal agency that provides your agency with the most federal money. The Office of Management and Budget (OMB) may have already assigned your cognizant federal agency to you. If this is the first federal award that your organization has received, the U.S. Department of Justice (DOJ) is your cognizant federal agency.

**community policing.** Community policing is a philosophy that promotes organizational strategies that support the systematic use of partnerships and problem-solving techniques to proactively address the immediate conditions that give rise to public safety issues such as violent crime, nonviolent crime, and fear of crime.

**consortium.** A consortium is a group of two or more governmental entities that agree to form a partnership to provide law enforcement services to their constituent communities.

**computing devices.** Computing devices are machines used to acquire, store, analyze, process, and publish data and other information electronically, including accessories (or "peripherals") for printing, transmitting, and receiving, or storing electronic information.

**cooperative agreement.** A legal instrument of financial assistance between a federal awarding agency and a nonfederal entity to carry out a public purpose authorized by a law of the United States that, consistent with 31 U.S.C. § 6302-6305, provides for substantial involvement between the federal awarding agency and the non-federal entity in carrying out the activity contemplated by the federal award.

**COPS Office.** The Office of Community Oriented Policing Services (COPS Office) is the office within the U.S. Department of Justice that is the grantor or awarding agency for your award. The COPS Office is responsible for assisting your agency with the administration and maintenance of your award for the entire award period. You can reach the COPS Office at 800-421-6770.

**COPS Office finance staff accountants.** The COPS Office finance staff accountants are responsible for your agency's financial and budgetary needs related to this award. A staff accountant has been assigned to your state and is available to answer any questions that you may have concerning the Quarterly Financial Status Reports (SF_425) and other financial aspects of your award. To identify your staff accountant, please call the COPS Office Response Center at **AskCOPSRC@usdoj.gov**.

**COPS Office Program Manager.** COPS Office Program Managers are trained to assist you with implementing and maintaining your Safer Outcomes award. A Program Manager is assigned to your project and is available to answer any questions that you may have concerning the administrative, programmatic, and substantive aspects of your award. Your Program Manager can assist you with such matters as requesting an extension on your award or modifying the award and reviewing outlines for project deliverables. The name and phone number of your COPS Office Program Manager is provided on the award congratulatory letter and available by contacting the COPS Office Response Center at **AskCOPSRC@usdoj.gov**.

**disallowed costs.** Disallowed costs means those charges that are determined to be unallowable, in accordance with the applicable Federal statutes, regulations, or the terms and conditions of the federal award.

**Employer Identification Number (EIN) / OJP vendor number.** This number is usually your agency's nine-digit federal tax identification number as assigned to you by the Internal Revenue Service (IRS). Your accounting/bookkeeping department should have this number. In some cases, the EIN has been previously assigned to another agency within your jurisdiction. In this instance, a new vendor number will be assigned to you by the Office of the Chief Financial Officer. The newly assigned number is to be used for COPS Office administrative purposes only and should not be used for IRS purposes.

**equipment.** Equipment is tangible personal property (including information technology systems) having a useful life of more than one year and a per-unit acquisition cost that equals or exceeds $5,000.

**federally recognized tribe.** Tribal entities that are recognized and eligible for funding and services from the Bureau of Indian Affairs (BIA) by virtue of their status as Indian tribes. They are acknowledged to have the immunities and privileges available to other federally recognized Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, power, limitations, and obligations of such tribes. Only federally recognized tribes are eligible to apply for COPS Office tribal award funds. For further information, contact BIA, Division of Tribal Government Services, MS-4631 – MIB, 1849 C Street NW, Washington, DC 20240, 202-208-2475.

**grant.** A legal instrument of financial assistance between a federal awarding agency and a non-federal entity to carry out a public purpose authorized by a law of the United States that, consistent with 31 U.S.C. § 6302-6305, does not provide for substantial involvement between the federal awarding agency and the non-Federal entity in carrying out the activity contemplated by the federal award.

**Grant Operations Staff.** COPS Office Grant Operations Staff are trained and available to assist you in addressing any compliance-related questions regarding your award. Grant monitoring specialists plan and conduct site visits and enhanced office-based grant reviews. During the life of your award, you may be selected for a monitoring site visit to assess your compliance with the terms and agreements of the award program, to review your community policing initiatives, and to provide technical and administrative support for your award. Please contact the COPS Office Response Center at **AskCOPSRC@usdoj.gov** if you have any compliance-related questions.

**Indian tribe.** For purposes of COPS Office awards, Indian tribe means any Indian tribe, band, nation, or other organized group or community, including any Alaska Native village or regional or village corporation as defined in or established pursuant to the Alaska Native Claims Settlement Act, which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians. See Pub. L. 106–113, div. B, title I, §116, 113 Stat. 1501A–21.

**indirect costs.** If approved for your program, indirect costs means those costs incurred for a common or joint purpose benefitting more than one cost objective, and not readily assignable to the cost objectives specifically benefitted, without effort disproportionate to the results achieved.

**institutions of higher education (IHE).** Institution of higher education is defined at 20 U.S.C. 1001.

**local budget cycle.** Your agency's fiscal year. Some common examples include January 1 to December 31, October 1 to September 30, and July 1 to June 30. Some local budget cycles may extend up to 24 months.

**matching funds.** What a locality must contribute as a cash match toward total allowable project costs over the life of the program.

COPS-AR-1105

**mobile data computer/laptop.** A Mobile Data Computer (MDC) is a computer terminal mounted in a vehicle that is linked via wireless communication to a network that is often integrated with a CAD system. MDCs enable officers to complete previously handwritten reports on a computer. This often eliminates the need to enter duplicate information on multiple reports.

**modified total direct cost.** Modified total direct cost (MTDC) means all direct salaries and wages, applicable fringe benefits, materials and supplies, services, travel, and up to the first $50,000 of each subaward (regardless of the period of performance of the subawards under the award). MTDC excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs and the portion of each subaward in excess of $50,000. Other items may only be excluded when necessary to avoid a serious inequity in the distribution of indirect costs, and with the approval of the cognizant agency for indirect costs.

**National Incident-Based Reporting System (NIBRS).** A comprehensive reporting database. Agencies provide individual records for eight index crimes and 38 other offenses.

**nonfederal entity.** Nonfederal entity means a state, local government, Indian tribe, institution of higher education, or nonprofit organization that carries out a federal award as a recipient or subrecipient.

**nonprofit organization.** Nonprofit organization means any corporation, trust, association, cooperative, or other organization, not including institutions of higher education, that is operated primarily for scientific, educational, service, charitable, or similar purposes in the public interest; is not organized primarily for profit; and uses net proceeds to maintain, improve, or expand the operations of the organization.

**obligation of funds.** The COPS Office obligates federal funds when the award document is signed by the COPS Office Director or their designated official. For the recipient, award funds are obligated when monies are spent or orders are placed for purchasing approved technology or services under your Safer Outcomes award. The term "encumbrance" is often used at the local and state levels to describe this type of transaction. Liquidated obligations are considered cash outlays or monies actually spent. Unliquidated obligations are obligations incurred and recorded but not yet paid (accrual basis of accounting) or not yet recorded and not yet paid (cash basis of accounting).

**OJP vendor number/EIN number.** This is your agency's nine-digit federal tax identification number assigned to you by the IRS. Your accounting/bookkeeping department should have this number.

If your EIN previously has been assigned to another agency within your jurisdiction, the Office of the Comptroller will assign a new OJP vendor number to you. The new assigned number is to be used for administrative purposes only, in connection with this award program, and should not be used for IRS purposes.

**participant support costs.** Participant support costs means direct costs for items such as stipends or subsistence allowances, travel allowances, and registration fees paid to or on behalf of participants or trainees (but not employees) in connection with conferences, or training projects.

**primary law enforcement authority.** An agency with primary law enforcement authority is the agency that is the first responder to calls for service, and has ultimate and final responsibility for the prevention, detection, or investigation of violations of criminal laws within its jurisdiction. Agencies are not considered to have primary law enforcement authority if they only respond to or investigate specific type(s) of crime(s), respond to or investigate

crimes within a correctional institution, serve warrants, provide courthouse security, transport prisoners, or have cases referred to them for investigation or investigational support.

**program income.** Program income means gross income earned by the nonfederal entity that is directly generated by a supported activity or earned as a result of the federal award during the period of performance.

**Public Safety Partnership and Community Policing Act of 1994.** The COPS Office is charged with fulfilling the mandates of this law. The purposes of the law are to

- increase the number of community policing officers on the beat;

- provide additional and more effective training to law enforcement officers to enhance their problem-solving, service, and other skills needed in interacting with members of the community;

- encourage the development and implementation of innovative programs to permit members of the community to assist law enforcement agencies in the prevention of crime;

- encourage the development of new technologies to assist law enforcement agencies in reorienting the emphasis of their activities from reacting to crime to preventing crime.

**recipient.** The Uniform Guidance defines it as "Recipient means a non-Federal entity that receives a Federal award directly from a Federal awarding agency to carry out an activity under a Federal program. The term recipient does not include subrecipients. See also § 200.1 Non-Federal entity." 2 C.F.R. § 200.1.

**research and development.** Research and development (R&D) means all research activities, both basic and applied, and all development activities that are performed by non-Federal entities. The term "research" also includes activities involving the training of individuals in research techniques where such activities use the same facilities as other research and development activities and where such activities are not included in the instruction function. "Research" is defined as a systematic study directed toward fuller scientific knowledge or understanding of the subject studied. "Development" is the systematic use of knowledge and understanding gained from research directed toward the production of useful materials, devices, systems, or methods, including design and development of prototypes and processes.

**simplified acquisition threshold.** Simplified acquisition threshold means the dollar amount below which a nonfederal entity may purchase property or services using small purchase methods. Nonfederal entities adopt small purchase procedures in order to expedite the purchase of items costing less than the simplified acquisition threshold. The simplified acquisition threshold is set by the Federal Acquisition Regulation at 48 C.F.R. Subpart 2.1 (Definitions) and in accordance with 41 U.S.C. § 1908. Currently, the simplified acquisition threshold is $250,000.

**subaward.** Subaward means an award provided by a pass-through entity to a subrecipient for the subrecipient to carry out part of a federal award received by the pass-through entity. It does not include payments to a contractor or payments to an individual that is a beneficiary of a federal program. A subaward may be provided through any form of legal agreement, including an agreement that the pass-through entity considers a contract.

**subrecipient.** Subrecipient means a nonfederal entity that receives a subaward from a pass-through entity to carry out part of a federal program; but does not include an individual that is a beneficiary of such program. A subrecipient may also be a recipient of other federal awards directly from a federal awarding agency.

**supplanting.** For the purposes of your COPS Office Safer Outcomes award, supplanting means replacing state, local, or Bureau of Indian Affairs (BIA) funds that otherwise would have been spent on award purposes with federal COPS Office funds. State, local, and tribal governments are prohibited from supplanting throughout the

COPS-AR-1107

award period. This means that your agency may not use COPS Office funds to pay for any equipment/technology, services, personnel, or other items which, in the absence of the COPS Office program, would otherwise have been funded with state or local funds or with funds supplied by the BIA. The COPS Office funds must instead be used to supplement, or increase, your budget on award purposes. For additional information on supplanting, please review the award condition titled "Supplementing, Not Supplanting" in this manual.

**supplies.** Supplies means all tangible personal property other than those described under equipment. A computing device is a supply if the acquisition cost is less than the lesser of the capitalization level established by the nonfederal entity for financial statement purposes or $5,000, regardless of the length of its useful life.

**System for Award Management (SAM).** The SAM database is the repository for standard information about federal financial assistance applicants, recipients, and subrecipients. Organizations that have previously submitted applications via **Grants.gov** are already registered with SAM, as it is a requirement for **Grants.gov** registration. Please note, however, that applicants must update or renew their SAM at least once per year to maintain an active status. Information about registration procedures can be accessed at **www.sam.gov**.

**unique entity identifier.** The Unique Entity ID (UEI) is a 12-character alpha-numeric value and once issued, will not change. Entities. A unique entity identifier is required of all applicants for COPS Office awards and must be updated every year in SAM.gov. This number will be used by the Federal Government to better track award recipient information throughout the award cycle and to provide consistent name and address data for electronic award application systems.

COPS-AR-1108

# 2024 COPS Office Safer Outcomes Program Award Owner's Manual

This manual was created to assist COPS Office Safer Outcomes Program recipients with the administrative and financial matters associated with their award.

For more information about your award, please contact your COPS Office Program Manager. If you do not know the name or telephone number of your Program Manager, please contact the COPS Office Response Center at **AskCOPSRC@usdoj.gov**.



U.S. Department of Justice
Office of Community Oriented Policing Services
145 N Street NE
Washington, DC 20530

To obtain details on COPS Office programs,
call the COPS Office Response Center at 800-421-6770.
Visit the COPS Office online at **cops.usdoj.gov.**
Published November 2024

COPS-AR-1109