DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
KARUN A. TILAK, SBN 323939
JESSE E. LANIER, SBN 303395
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, CA 94102-5408
Telephone: (415) 554-4223
Facsimile: (415) 437-4644
E-Mail: Karun.Tilak@sfcityatty.org
          Jesse.Lanier@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

*[additional counsel on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; CITY OF TUCSON; and CITY OF SAN DIEGO,<br><br>          Plaintiffs,<br><br>     vs.<br><br>UNITED STATES DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in her Official Capacity; OFFICE OF COMMUNITY ORIENTED POLICING SERVICES; and CORY D. RANDOLPH, in his official capacity,<br><br>          Defendants. | Case No. 25-cv-09277-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:    August 20, 2026<br>Time:              10 a.m.<br>Judge:             Hon. James Donato<br>Place:             Courtroom 11, 19th Floor<br><br>Date Filed:       October 28, 2025<br>Trial Date:       None Set |

Notice of Mot.; Mot.; MPA ISO MSJ
CASE NO. 25-cv-09277-JD

TONY LOPRESTI, SBN 289269
County Counsel
KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
BILL NGUYEN, SBN 333671
Deputy County Counsel
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone: (408) 299-5900
Facsimile: (408) 292-7240
E-Mail: bill.nguyen@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

HEATHER FERBERT, SBN 246759
City Attorney
JEAN JORDAN, SBN 155009
Acting Assistant City Attorney
JULIE RAU, SBN 317658
Lead Deputy City Attorney
JENNIFER MARTIN, SBN 322048
Deputy City Attorney
1200 Third Avenue, Suite 1620
San Diego, CA 92101
Telephone: (619) 236-6220
Facsimile: (619) 236-7215
E-Mail: Jrau@sandiego.org
        MartinJM@sandiego.org

Attorneys for Plaintiff
CITY OF SAN DIEGO

ROI I. LUSK
City Attorney
REGINA L. NASSEN, Ariz. Bar No. 014574*
Principal Assistant City Attorney
Tucson City Attorney's Office
255 W. Alameda, 7th Floor
P.O. Box 27210
Tucson, Arizona 85726-7210
Telephone: (520)837-4207
Facsimile: (520)623-9803
E-Mail: regina.nassen@tucsonaz.gov

ERIN B. BERNSTEIN, SBN 231539
PRIANKA MUNGALE, SBN 348165
Bradley Bernstein Sands, LLP
1212 Broadway, Suite 1100
Oakland, California 94612
Telephone: (510)380-5801
E-Mail: ebernstein@bradleybernstein.com

Attorneys for Plaintiff
CITY OF TUCSON
*Admitted *pro hac vice*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

UNDISPUTED FACTS ............................................................................................................... 2

      I.   Congress Creates a Grant Program to Support Community Policing and to Prioritize Hiring Women and Minority Officers.. ....................................................... 2

      II.  President Trump Issues Slew of Executive Orders, Many Purporting to Reinterpret Civil Rights and Nondiscrimination Law and Targeting DEI. ............ 2

      III.  Defendants Announce NOFOs, and Plaintiffs Apply for Grants ............................ 4

      IV.  Plaintiffs Receive Grant Awards ........................................................................... 6

      V.   Plaintiffs' Grant Awards Contain Unlawful Conditions ......................................... 7

           A.  The Nondiscrimination/DEI Condition ...................................................... 7

           B.  The False Claims Act. ................................................................................. 7

           C.  The EO Condition ...................................................................................... 8

      VI.  Plaintiffs Seek Relief from the Challenged Conditions ........................................ 8

      VII.  Plaintiffs Will Suffer Irreparable Harm If The Challenged Conditions Are Enforced ........................................................................................................... 8

LEGAL STANDARD .................................................................................................................. 9

ARGUMENT ............................................................................................................................ 10

      I.   The "Stark Conflict" Between the Text of the Act and the Terms of the Conditions Is a "Sure Sign" Defendants Acted "Outside [Their] Statutory Authority." ........................................................................................................... 10

      II.  The Challenged Conditions Are Also Contrary to the Constitution. ..................... 11

           A.  Congress Did Not Authorize the Executive Branch to Impose the Challenged Conditions, and the Challenged Conditions Violate the Separation of Powers. ................................................................................ 12

           B.  The Challenged Conditions Violate the Spending and Due Process Clauses. .................................................................................................... 13

               1.   The Challenged Conditions Are Vague and Ambiguous ............... 14

               2.   The Challenged Conditions Also Violate the Spending Clause Because They Are Unrelated to the Purpose of the Grants. .......... 18

      III.  The Challenged Conditions Are Arbitrary and Capricious ................................... 19

      IV.  Plaintiffs Are Entitled to Vacatur and a Permanent Injunction Preventing Defendants from Imposing the Challenged Conditions ........................................ 21

           A.  The Court Should Vacate the Challenged Conditions. ............................. 21

B.    The Court Should Also Permanently Enjoin Defendants from Enforcing Any Similar Conditions ..................................................................22

1.    Plaintiffs Have Demonstrated Actual Success on the Merits and Irreparable Harm. ..........................................................................23

2.    Damages Are Inadequate to Remedy the Harms the Challenged Conditions Cause. ..........................................................................24

3.    The Public Interest and the Balance of Hardships Strongly Favor Injunctive Relief. .........................................................................25

CONCLUSION..........................................................................................................................26

FILER'S ATTESTATION............................................................................................................29

**TABLE OF AUTHORITIES**

**Constitutional Provisions**

U.S. Const., art. II
§ 3. ..................................................................................................................12

**Cases**

*Al Otro Lado v. Exec. Off. for Immigr. Rev.*
120 F.4th 606 (9th Cir. 2024) ........................................................................22

*Al Otro Lado v. Exec. Off. for Immigr. Rev.*
138 F.4th 1102 (9th Cir. 2025) ......................................................................22

*Al Otro Lado, Inc. v. Mayorkas*
619 F. Supp. 3d 1029 (S.D. Cal. 2022).........................................................22

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*
155 F.4th 1082 (9th Cir. 2025). .....................................................................10

*Am. Fed'n of Tchrs. v. Dep't of Educ.*
796 F. Supp. 3d 66 (D. Md. 2025)..................................................................17

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*
559 F.3d 1046 (9th Cir. 2009) ........................................................................23

*Amoco Prod. Co. v. Village of Gambell, Alaska*
480 U.S. 531 (1987)..................................................................................22, 23

*Arizona Dream Act Coalition v. Brewer*
757 F.3d 1053 (9th Cir. 2014) ..................................................................24, 25

*Arrington v. Daniels*
516 F.3d 1106 (9th Cir. 2008) ........................................................................10

*ASSE Int'l, Inc. v. Kerry*
803 F.3d 1059 (9th Cir. 2015) ........................................................................11

*Bowen v. Massachusetts*
487 U.S. 879 (1988).........................................................................................25

*California v. Env't Prot. Agency*
72 F.4th 308 (D.C. Cir. 2023).....................................................................12, 13

*Chicago Women in Trades v. Trump*
773 F. Supp. 3d 592 (N.D. Ill. 2025)..............................................................17

*City & Cnty. of San Francisco v. Sessions*
349 F. Supp. 3d 924 (N.D. Cal. 2018)............................................................18

*City & Cnty. Of San Francisco v. Trump*
897 F.3d 1225 (9th Cir. 2018) ........................................................................25

*City & County of San Francisco v. Trump*
779 F. Supp. 3d 1077 (N.D. Cal. 2025) ...............................................................23, 24

*City & County of San Francisco v. Trump*
782 F. Supp 3d 830 (N.D. Cal. 2025) ........................................................................23

*City of Fresno v. Turner* (*"Fresno I"*)
25-CV-07070-RS, 2025 WL 2469330 (N.D. Cal. Aug. 27, 2025)...............................13, 16, 17

*City of Fresno v. Turner* (*"Fresno II"*)
25-CV-07070-RS, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025)....................................20, 23

*City of Los Angeles v. Barr*
941 F.3d 931(9th Cir. 2019) ................................................................................12, 24

*City of Los Angeles v. Sessions*
No. CV-17-7215-R, 2018 WL 6071072 (C.D. Cal. Sept. 13, 2018) ...............................24

*Cnty. of Santa Clara v. Noem*
No. 25-CV-08330-WHO, 2025 WL 3251660 (N.D. Cal. Nov. 21, 2025) ..........................15

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.*
68 F.4th 864 (4th Cir. 2023) ...................................................................................15

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*
591 U.S. 1 (2020)....................................................................................................21

*Drakes Bay Oyster Co. v. Jewell*
747 F.3d 1073 (9th Cir. 2014) .................................................................................25

*eBay Inc. v. MercExchange, L.L.C.*
547 U.S. 388 (2006)................................................................................................23

*F.C.C. v. Fox Television Stations, Inc.*
556 U.S. 502 (2009)................................................................................................20

*Grayned v. City of Rockford*
408 U.S. 104 (1972)................................................................................................14

*Hecox v. Little*
104 F.4th 1061 (9th Cir. 2024) ................................................................................23

*Hernandez v. Sessions*
872 F.3d 976 (9th Cir. 2017) ...................................................................................23

*Hous. Auth. of City and Cnty. of San Francisco v. Turner*
25-CV-08859-JST, 2025 WL 3187761 (N.D. Cal. Nov. 14, 2025)..............................16

*Illinois v. Fed. Emergency Mgmt. Agency*
801 F. Supp. 3d 75 (D.R.I. 2025) ............................................................................21

*Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*
    730 F.3d 1024 (9th Cir. 2013) ................................................................................................22

*Loper Bright Enterprises v. Raimondo*
    603 U.S. 369 (2024).................................................................................................................11

*Louisiana Pub. Serv. Comm'n v. FCC*
    476 U.S. 355 (1986).................................................................................................................12

*Martin Luther King, Jr. Cnty. v. Turner*
    785 F. Supp. 3d 863 (W.D. Wash. 2025)..................................................................................13

*Maryland v. King*
    567 U.S. 1301 (2012)...............................................................................................................24

*McCrary v. Guitierrez*
    C-08-015292 RMW, 2010 WL 520762 (N.D. Cal. Feb. 8, 2010).........................................9, 10

*Melendres v. Arpaio*
    695 F.3d 990 (9th Cir. 2012) ..................................................................................................25

*Monsanto Co. v. Geertson Seed Farms*
    561 U.S. 139 (2010).................................................................................................................22

*Mont. Wildlife Fed'n v. Haaland*
    127 F.4th 1 (9th Cir. 2025) ......................................................................................................21

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*
    463 U.S. 29 (1983).............................................................................................................19, 20

*Or. Nat. Res. Council v. Thomas*
    92 F.3d 792 (9th Cir. 1996) .....................................................................................................20

*Nat'l Educ. Ass'n. v. United States Dep't of Educ.*
    779 F. Supp. 3d 149 (D.N.H. 2025).........................................................................................15

*Nat'l Fam. Farm Coal. v. Vilsack*
    758 F. Supp. 3d 1060 (N.D. Cal. 2024)...................................................................................20

*New York v. United States*
    505 U.S. 144 (1992).................................................................................................................18

*Occidental Eng'g Co. v. I.N.S.*
    753 F.2d 766 (9th Cir. 1985) ..............................................................................................10, 20

*Ohio v. Env't Prot. Agency*
    603 U.S. 279 (2024).................................................................................................................19

*Pennhurst State Sch. & Hosp. v. Halderman*
    451 U.S. 1 (1981).........................................................................................................13, 14, 15

*R.I. Latino Arts v. Nat'l Endowment for the Arts*
  800 F. Supp. 3d 351 (D.R.I. 2025) ....................................................................22

*Rodriguez v. Robbins*
  715 F.3d 1127 (9th Cir. 2013) .........................................................................25

*S. Dakota v. Dole*
  483 U.S. 203 (1987)...........................................................................13, 18, 19

*San Francisco A.I.D.S. Found. v. Trump*
  786 F. Supp. 3d 1184 (N.D. Cal. 2025)........................................................13, 16

*San Francisco Unified School District v. AmeriCorps*
  789 F. Supp 3d 716  (N.D. Cal. 2025).................................................................17

*Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*
  508 F. Supp. 3d 521 (N.D. Cal. 2020).................................................................15

*Scholl v. Mnuchin*
  494 F. Supp. 3d 661 (N.D. Cal. 2020).................................................................22

*Sierra Club v. Bosworth*
  510 F.3d 1016 (9th Cir. 2007) ............................................................................9

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*
  576 U.S. 519 (2015)...........................................................................................15

*Texas v. United States*
  No.18-CV-00068, 2021 WL 3022434 (S.D. Tex. July 16, 2021) ...........................22

*United States v. Williams*
  553 U.S. 285 (2008)...........................................................................................13

*Youngstown Sheet & Tube Co. v. Sawyer*
  343 U.S. 579 (1952)...........................................................................................12

**Rules**
Fed. R. Civ. Proc.
  56(a) .................................................................................................................9

**Statutes**
5 U.S.C.
  § 706 ..............................................................................................................10
  § 706(2)......................................................................................................21, 26
  § 706(2)(A) .......................................................................................................19
  § 706(2)(B) ...........................................................................................12, 18, 19
  § 706(2)(C) .......................................................................................................11
  § 706(2)(D) .......................................................................................................21

31 U.S.C.
§ 3729(a) ...................................................................................................................7
§ 3729(a)(1)(A) ..........................................................................................................7

34 U.S.C.
§ 10381(a) ................................................................................................................12
§ 10381(b)(2) ......................................................................................................2, 18
§ 10381(b)(18) ..........................................................................................................18
§ 10381(b)(19) ....................................................................................................2, 18
§ 10381(b)(20) .............................................................................................................2
§ 10381(b)(25) ....................................................................................................2, 18
§ 10382(c) ................................................................................................................15
§ 10382(c)(11) .................................................................................................2, 11, 19

**Regulations**

2 C.F.R.
§ 200.208(a) ..............................................................................................................11
§ 200.208(d)(2) .........................................................................................................21
§ 3002.10 ..................................................................................................................11

28 C.F.R.
§ 85.5(a) .....................................................................................................................7

**Executive Orders**

*Assuring the Security of the State of Qatar*
Executive Order No. 14,353, 90 Fed. Reg. 48143 (Sept. 29, 2025). ........................19

*Celebrating America's 250th Birthday*
Executive Order No. 14,189, 90 Fed. 8849 (Jan. 29, 2025) ...................................3, 4

*Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (″Gender Ideology EO″)
 Executive Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025).................................3, 16, 17

*Ending Illegal Discrimination and Restoring Merit-Based Opportunity* (″Anti-DEI EO″)
Executive Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025)..................................3, 15, 17

*Ending Radical and Wasteful Government DEI Programs and Preferencing* (″Government DEI EO″)
Executive Order No. 14,151, 90 Fed. Reg. 8339 (Jan 20, 2025).........................................3, 20

*Ensuring Continued Accountability in Federal Hiring*
Executive Order No. 14,356, 90 Fed. Reg  48387 (Oct. 15, 2025) .........................................18

*Improving Oversight of Federal Grantmaking* (″Grantmaking EO")
Executive Order No. 14,332, 90 Fed. Reg. 38929 (Aug. 7, 2025) ..........................3, 16, 17, 20

*Keeping Education Accessible and Ending COVID-19 Vaccine Mandates in Schools* (″Vaccine Requirement EO″)
Executive Order No. 14,214, 90 Fed. Reg. 9949 (Feb. 14, 2025) .................................4, 16, 17

*Protecting American Monuments, Memorials, and Statues and Combatting Recent Criminal Violence*
("American Monuments EOs")
Executive Order No. 13,933, 85 Fed. Reg. 40081 (June 26, 2020)................................4, 16, 17

*Saving TikTok While Protecting National Security*
Executive Order No. 14,352, 90 Fed. Reg. 47219 (Sept. 25, 2025)...........................................19

**Other Authorities**
Presidential Actions, White House,
https://whitehouse.gov/presidential-actions (last visited Apr. 16, 2025).....................................8

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 20, 2026 at 10:00 a.m., or as soon thereafter as may be heard before the Honorable Judge James Donato in Courtroom 11, 450 Golden Gate Avenue, San Francisco, California 94102, of the United States District Court for the Northern District of California, Plaintiffs the City and County of San Francisco, the County of Santa Clara, the City of Tucson, and the City of San Diego will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 56 for summary judgment on all claims pled in their First Amended Complaint. Plaintiffs base this motion on the accompanying memorandum of points and authorities; the accompanying declarations and exhibits thereto; the pleadings; the records on file in this action (including previously filed declarations and requests for judicial notice supporting prior motions); the Administrative Record and Supplement filed by Defendants; and any other written or oral evidence or argument as may be presented when or before this motion is heard by the Court.

## STATEMENT OF RELIEF REQUESTED

This Motion asks the Court to find that: (i) Plaintiffs are entitled to judgment as a matter of law on their constitutional claims; (ii) Plaintiffs are entitled to judgment as a matter of law on their claims under the Administrative Procedure Act, 5 U.S.C. section 706(2)(A)-(C); (iii) Plaintiffs suffered irreparable harm; (iv) the remedies available to Plaintiffs at law are inadequate; (v) the balance of hardships justify an equitable remedy; and (vi) a permanent injunction supports the public interest.

Plaintiffs respectfully request that the Court enter judgment in their favor on each claim in the First Amended Complaint on the grounds that the Administrative Record (including the Supplement) and the undisputed evidence show that the Challenged Conditions Defendants imposed on Plaintiffs' Grant Awards are unlawful. Plaintiffs respectfully request that this Court vacate the Challenged Conditions and permanently enjoin Defendants from enforcing them or any materially similar conditions.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

"The plain language of the Community Policing Act does not reveal a basis for the government's actions." Order, Dkt. No. 49, 11. So this Court has already held, and so it remains today. Since the Court preliminarily enjoined Defendants from enforcing the Challenged Conditions,[1] very little has changed. The Administration *remains* hostile to diversity, equity, and inclusion initiatives and fixated on circumventing co-equal branches of government to achieve its policy objectives. The Challenged Conditions *remain* both inscrutable and unrelated, even contrary, to the Community Policing Act's goals. And Plaintiffs *remain* in urgent need of the grants at issue—particularly in the face of dire budgetary conditions. The material facts—the text of the Challenged Conditions, their issuance by the Executive Branch, their lack of relationship to the governing statute, the scarcity of funds and the urgency of Plaintiffs' needs, and the lack of evidence of reasonable or reasoned decision-making—all are undisputed and undisputable. The same legal arguments that the Court previously concluded showed a likelihood of success on the merits now justify a finding of *actual* success on the merits.

Plaintiffs are entitled to judgment as a matter of law on each of their causes of action: violations of (i) the separation of powers, (ii) the Spending Clause, and (iii) the Fifth Amendment Due Process Clause, and violations of the Administrative Procedure Act for agency action that is (iv) arbitrary and capricious, (v) contrary to the Constitution, and (vi) in excess of statutory authority.

There are three distinct themes woven through Plaintiffs' claims. ***First***, the Challenged Conditions are outside the bounds of what the Constitution permits and contrary to the express will of Congress. ***Second***, the Challenged Conditions are so vague and ambiguous that Plaintiffs cannot know what they require or prohibit. And, ***third***, the Conditions are arbitrary and capricious. Each reason *alone* is sufficient for the Court to vacate the Challenged Conditions and permanently enjoin Defendants from enforcing them or any materially similar requirements. And Defendants' Administrative Record

---

[1] For ease of reference, Plaintiffs use the shorthand from their Motion for Preliminary Injunction or, as applicable, the Court's preferred shorthand from its Order preliminarily enjoining the Challenged Conditions.

reveals nothing to dislodge the Court's previous reasoning. Accordingly, Plaintiffs respectfully request the Court grant summary judgment on each of their six claims.

**UNDISPUTED FACTS**

There is no genuine dispute concerning the material facts of this case.

## I. Congress Creates a Grant Program to Support Community Policing and to Prioritize Hiring Women and Minority Officers.

In 1994, Congress passed the Public Safety Partnership and Community Policing Act, Pub. L. No. 103-322, Title I, Sept. 13, 1994, 108 Stat. 1807 ("Community Policing Act"). This Act authorizes the disbursement of grants to local law enforcement agencies to support community policing and to enhance public safety. *Id.* at 108 Stat 1808 at § 1701. The Act authorizes the Attorney General to administer grants "to hire and train new, additional career law enforcement officers for deployment in community-oriented policing," 34 U.S.C. § 10381(b)(2); to provide specialized training in "verbal de-escalation" and interaction with individuals with mental illnesses, 34 U.S.C. §§ 10381(b)(19)-(20); and "to establish peer mentoring mental health and wellness pilot programs" for law enforcement agencies, 34 U.S.C. § 10381(b)(25). Congress further mandated that "each application for a [grant pursuant to the statute] . . . shall . . . provide assurances that the applicant will, to the extent practicable, seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks within the sworn positions in the law enforcement agency." 34 U.S.C. § 10382(c)(11).

## II. President Trump Issues Slew of Executive Orders, Many Purporting to Reinterpret Civil Rights and Nondiscrimination Law and Targeting DEI.

On January 20, 2025, President Trump was sworn in for his second term. That very day, he began issuing a stream of executive orders ("EOs") on an array of issues. In November of 2025, when Plaintiffs filed their opening brief in support of their request for a preliminary injunction, the President had issued 213 EOs. As of the date of this filing, he has issued 254, along with 60 presidential memoranda and 118 proclamations. Several EOs purport to further the President's aim of reshaping by

fiat longstanding nondiscrimination and civil rights law by targeting diversity, equity, and inclusion ("DEI") initiatives.

For instance, among the first EOs President Trump signed upon resuming office was *Ending Radical and Wasteful Government DEI Programs and Preferencing*, Executive Order No. 14,151, 90 Fed. Reg. 8339 (Jan 20, 2025) ("Government DEI EO"). This EO declares that the federal government's support for "illegal and immoral discrimination programs, going by the name 'diversity, equity, and inclusion' (DEI) . . . ends today." *Id.* The President also signed *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*. Executive Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025) ("Anti-DEI EO"); Administrative Record and Supplemental Administrative Record, Dkt. Nos. 53, 54 at AR-0646-49 (henceforth cited by Bates number). This EO calls DEI policies "illegal" and proclaims that they "not only violate the text and spirit of our longstanding Federal civil-rights laws, they also undermine our national unity." *Id.*

Several months later, the President signed *Improving Oversight of Federal Grantmaking,* Executive Order No. 14,332, 90 Fed. Reg. 38929 (Aug. 7, 2025) ("Grantmaking EO"). This EO maligns multiple DEI initiatives and directs agency heads to take measures to ensure that discretionary grant awards "demonstrably advance the President's policy priorities," which include prohibitions on grant awards being used "to fund, promote, encourage, subsidize, or facilitate . . . racial preferences or other forms of racial discrimination by the grant recipient, including activities where race or intentional proxies for race will be used as a selection criterion for employment or program participation." *Id.*

The President also issued EOs concerning other topics germane to this lawsuit. *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* purports to "protect" women by promulgating definitions of gender and sex-related concepts to "govern" "application of Federal law." Executive Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025) ("Gender Ideology EO"); AR-0639-43.[2] This EO also orders federal agencies to "ensure grant funds do not

---

[2] Defendants included four EOs and presidential directives in the Administrative Record: (i) *Defending Women from Gender Ideology Extremism*, (ii) *Keeping Education Accessible and Ending COVID-19 Vaccine Mandates in Schools*, (iii) *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, and (iv) *Celebrating America's 250th Birthday*. AR0635-55. For ease of reference, subsequent cites to these EOs will be to Bates numbers only.

promote gender ideology." AR-0641. The EO defines "gender ideology" as "an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa, and requiring all institutions of society to regard this false claim as true." *Id.* The EO continues, "Gender ideology is internally inconsistent, in that it diminishes sex as an identifiable or useful category but nevertheless maintains that it is possible for a person to be born in the wrong sexed body." *Id.*

On January 29, 2025, the President signed *Celebrating America's 250th Birthday*. Executive Order No. 14,189, 90 Fed. 8849 (Jan. 29, 2025); AR0653-55. In addition to creating a task force for the celebration of Independence Day in 2026, this EO reinstates an EO from the President's first term, *Protecting American Monuments, Memorials, and Statues and Combatting Recent Criminal Violence*. Executive Order No. 13,933, 85 Fed. Reg. 40081 (June 26, 2020); AR0658-64 (collectively, the "American Monuments EOs"). This 2020 EO accuses so-called "left-wing extremists" of a conspiracy to vandalize monuments and statues[3] and proclaims that state and local public officials have "abdicat[ed] . . . their law enforcement responsibilities." *Id.*

Finally, on February 14, 2025, the President signed *Keeping Education Accessible and Ending COVID-19 Vaccine Mandates in Schools*. Executive Order No. 14,214, 90 Fed. Reg. 9949 (Feb. 14, 2025) ("Vaccine Requirement EO"); AR-0635-36. This document accuses schools of "coerc[ing] children and young adults into taking the COVID-19 vaccine" and proclaims that "[f]ederal funds should not be used to directly or indirectly support or subsidize" educational institutions "that require[] students to have received a COVID-19 vaccination to attend any in-person education program." *Id.*

**III.    Defendants Announce NOFOs, and Plaintiffs Apply for Grants.**

Under the auspices of the Community Policing Act, in May of 2025, the Office of Community Oriented Policing ("COPS Office") released Notices of Funding Opportunity ("NOFOs") for the grants at issue in this case and invited local law enforcement agencies to apply. AR001, 036, 077, 113. Each NOFO included prohibitions on using grant money that mirror policy priorities evinced throughout the President's EOs. Per the NOFOs, grant money may not be used: (i) to support educational institutions

---

[3] This EO also states: "My Administration will not allow violent mobs incited by a radical fringe to become the arbiters of the aspects of our history that can be celebrated in public spaces." AR-0660.

Notice of Mot.; Mot.; MPA ISO MSJ                                    4
CASE NO. 25-cv-09277-JD

that "requires students to have received a COVID-19 vaccination to attend any in-person education program;" (ii) "to promote gender ideology;" or (iii) "for projects that provide or advance diversity, equity, inclusion, and accessibility, or environmental justice programs, services, or activities." AR015, 057, 091, 128. Nor should grant money be awarded to local governments "that have failed to protect public monuments, memorials, and statues from destruction or vandalism." *Id.* Plaintiffs refer collectively to these NOFO prohibitions as the "Federal Funding Restrictions." If Defendants determine a grantee has not complied with the Federal Funding Restrictions, "the COPS Office may place a hold on the award and/or take other remedial action." *Id.* The NOFO for each grant at issue in this case states that its terms and conditions "are subject to change before the award is issued." AR028, 069, 105, 140.

In June of 2025, Plaintiffs submitted grant applications. AR228-30, 293-95, 356-58, 423-25, 475-77.

On July 29, 2025, after Plaintiffs submitted their grant applications, then-Attorney General Pamela Bondi[4] issued *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination* ("July Bondi Memo" or "Memo"). *See* Request for Judicial Notice ("RJN") filed concurrently, Ex. A. The Memo purports to "clarif[y] the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ('DEI') programs." *Id.* at p. 1. But the Memo asserts that practices and policies long understood to be lawful—including training and educational programs, scholarships, and hiring policies designed to end exclusion of historically marginalized groups—are unlawful and discriminatory. *See id.* at pp. 4-8 (classifying as unlawful the "prioritiz[ation] [of] candidates from 'underrepresented groups' for admission, hiring, or promotion" and policies that "set[] racial benchmarks or mandate[] demographic representation in candidate pools, such as requiring a certain percentage of finalists to be from 'diverse' backgrounds").

---

[4] The President removed Bondi from office on April 2, 2026.

**IV.    Plaintiffs Receive Grant Awards.**

On October 10, 2025, Plaintiffs received grant awards ("COPS Grants") from the COPS Office. AR0276-77, 339-40, 406-07, 459-60, 519-20.

The San Francisco Police Department ("SFPD") and the San Diego Police Department ("SDPD") received COPS Hiring Program Grants ("Hiring Grant"). AR0276-77, 406-08. The Hiring Grant provides funds "to hire and/or rehire additional career law enforcement officers in an effort to increase their community policing capacity and crime prevention efforts." AR006. This Grant covers the salary and fringe benefits of new or re-hired local law enforcement officers for three years. *Id.* SFPD received $6.25 million, and SDPD received $750,000. AR0276, 406.

The Tucson Police Department ("TPD") received the COPS Policing Development Recruitment Microgrant ("Recruitment Microgrant"), which supports local law enforcement agencies' efforts to "develop[] and test[] innovative strategies," to establish a knowledge base about effective practices, and to "support[] new, creative approaches to preventing crime and promoting safe communities." AR036. This includes grants for officer recruitment, hiring, and retention, which the Department of Justice ("DOJ") recognizes as "among the most important elements to advancing community policing" and ensuring that law enforcement agencies "reflect[] the communities they serve." AR045. TPD received $175,000. AR519-20.

The Santa Clara County Sheriff's Office ("SCCSO") received the Law Enforcement Mental Health and Wellness Act Grant ("Mental Health Grant"). The Mental Health Grant funds mental health and wellness services for law enforcement officers and their families. AR077, 083. The SCCSO received $200,000. AR339-40.

Finally, in addition to the Hiring Grant, SDPD also received the Safer Outcomes: Enhancing De-Escalation and Crisis Response Grant ("Safer Outcomes Grant"). This Grant supports training programs that focus on de-escalation tactics and alternatives to use of force, more safely responding to individuals experiencing mental health or behavior crises and to individuals with disabilities, improved crisis intervention, and effective referrals to community-based services. AR119-20. Defendants awarded SDPD $500,000. AR459-60.

## V.    Plaintiffs' Grant Awards Contain Unlawful Conditions.

Each of Plaintiffs' Grant Awards contained two conditions that are unconstitutional and unlawful: (i) a Nondiscrimination/DEI Condition and (ii) an EO Condition.  Collectively, Plaintiffs refer to the Nondiscrimination/DEI Condition, the EO Condition, and the Federal Funding Restrictions (contained in the NOFOs, as discussed in section III, above) as the "Challenged Conditions." Defendants concede that the imposition of the Challenged Conditions in the Grant Awards is a final agency action.  Order at 10 n.5.

### A.    The Nondiscrimination/DEI Condition

The Nondiscrimination/DEI Condition (Condition 3) requires Plaintiffs to "certif[y]" that they do "not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws." AR281, 344, 411, 464, 524.  Particularly in light of the Bondi Memo and other DOJ actions, there is a significant risk that Defendants intend Condition 3 to mean that DEI programs long accepted as lawful will now be viewed as unlawful despite the lack of any legal support for that view.  Also thrown into doubt are the meaning and import of several other Grant Award conditions that require recipients to comply with various civil rights and antidiscrimination laws—including the Community Policing Act itself (collectively the "Civil Rights Conditions"[5]).

### B.    The False Claims Act

Included in the Nondiscrimination/DEI Condition is a requirement that each Plaintiff agree that compliance with "all applicable Federal civil rights and nondiscrimination laws" is "material" for the purposes of the False Claims Act ("FCA").  AR281, 344, 411, 464, 524.  The FCA imposes liability on "any person" who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).  Each violation of the FCA is punishable by treble damages plus civil penalties.  31 U.S.C. § 3729(a); *see also* 28 C.F.R. § 85.5(a).

---

[5] The Civil Rights Conditions are numbers 8, 9, and 15.  Condition 8 requires Plaintiffs to comply with, *inter alia*, the COPS Statute.  AR282, 286, 345, 349, 411-412, 416, 464-65, 469, 524-25, 529. Conditions 8, 9, and 15 also incorporate various other documents, including the Award Owners' Manuals and DOJ Financial Guide, which, too, require compliance with civil rights and nondiscrimination law.  *E.g.*, AR 690-91, 730, 788-89, 828, 869, 1037-38, 1077.

On May 19, 2025, the DOJ formed a task force to target grantees that sign such certifications. *See* RJN, Ex. B ("Civil Rights Fraud Initiative Memo"), at pp. 1, 2.  The DOJ considers liability under the FCA a "primary weapon" it will deploy to enforce its proscription on DEI programs and has "strongly encourag[ed]" private parties to bring civil suits against grant recipients.  *Id.*

**C. The EO Condition**

The EO Condition (Condition 4) requires Plaintiffs to "comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President."  AR281, 344, 411, 464, 524. This Condition does not define "applicable" and has no meaningful limiting principle.  It could be read to require Plaintiffs to comply not only with "all" existing EOs, regardless of whether they relate to COPS Grants, but also with EOs yet to be issued, EOs enjoined as unlawful or unconstitutional, EOs with vague or undiscernible terms, or EOs contrary to the Community Policing Act.  Finally, the EO Condition requires compliance with "Presidential Memoranda," an undefined term that may (or may not) refer to directives posted on the White House's website under a similarly named drop-down menu.[6]

**VI.      Plaintiffs Seek Relief from the Challenged Conditions.**

Plaintiffs filed the operative complaint on November 4, 2025, alleging that the Challenged Conditions violate the Separation of Powers doctrine, the Spending Clause, and the Due Process Clause of the Constitution, and the Administrative Procedure Act ("APA").  Dkt. No. 17.  On January 21, 2026, after oral argument, this Court preliminarily enjoined Defendants from enforcing the Challenged Conditions.  Order at 15.

**VII.     Plaintiffs Will Suffer Irreparable Harm If The Challenged Conditions Are Enforced.**

The material circumstances justifying this Court's preliminary injunction have not changed.  *See* Plaintiff's Notice of Motion and Motion for Preliminary Injunction, Dkt. No. 20 at pp. 21 – 23.  Plaintiffs remain unable to accept the unlawful and unconstitutional Challenged Conditions—each of which remain indecipherable, overbroad, and unrelated or even contrary to the mandates of the Community Policing Act.  But Plaintiffs also remain unable to forgo the grant funding attached to the Challenged Conditions.  Declaration of Sean Frost, Dkt. No. 20–4, ¶¶ 13-18; Declaration of Thomas Maguire

---

[6] *See* Presidential Actions, White House, https://whitehouse.gov/presidential-actions (last visited Apr. 16, 2025).

("Maguire Decl.") ¶¶ 4, 5, 8; Declaration of Robert Jonsen, Dkt. No. 20-3, ¶¶ 17–23; Supplemental Declaration of Robert Jonsen ("Suppl. Jonsen Decl.") ¶¶ 7–10; Declaration of Kyle Meaux, Dkt. No. 20-2, ¶¶ 4–8; Supplemental Declaration of Kyle Meaux ("Suppl. Meaux Decl.") ¶¶ 4, 5, 8; Declaration of Chad Kasmar, Dkt. No. 20-1, ¶¶ 17-19; Declaration of Monica Prieto ("Prieto Decl.") ¶¶ 6,7, 9.  As when Plaintiffs applied to the Court for preliminary relief, there are no feasible alternative sources of funding to cover the costs of these essential programs and initiatives.  Maguire Decl. ¶ 7; Suppl. Jonsen Decl. ¶ 10; Suppl. Meaux Decl. ¶ 8; Prieto Decl. ¶ 9.

After the Court preliminarily enjoined the Challenged Conditions, Plaintiffs expeditiously signed and accepted the Grant Awards, AR292 (two days after Order), 354 (six days after Order), 422 (two days after Order), 474 (two days after Order), 536-537 (two days after Order), and, moved swiftly to put the badly needed funds to their intended use.  SFPD, for instance, has already taken steps to use a portion of its Hiring Grant Award to pay for police training academies for fourteen officers.  Maguire Decl. ¶ 6.  SCCSO has already put into motion its secular chaplaincy program, and contracts for the pilot wellness-check and mental health training programs (which will serve hundreds of individuals) are in process.  Suppl. Jonsen Decl. ¶ 9.  SDPD is already using its Hiring Grant funding for the training of two recruits through its police academy.  Suppl. Meaux Decl. ¶ 7.  SDPD has lined up a contractor to provide virtual reality training for de-escalation best practices and, after completing training of facilitators, intends to begin training officers late this year.  *Id.*  TPD, meanwhile, has begun using its Recruitment Microgrant to recruit new officers.  Prieto Decl. ¶ 6.  In the absence of final relief from this court, Plaintiffs face the prospect of being unable to continue to use the Grant Awards to fund the hiring of sworn officers, mental health and community support for law enforcement agency staff and officers, and training on safer interactions with members of the public suffering mental health crises.  Maguire Decl. ¶ 7; Suppl. Jonsen Decl. ¶ 10; Suppl. Meaux Decl. ¶¶ 5,8; Prieto Decl. ¶ 9.

## LEGAL STANDARD

Summary judgment is appropriate if there is no dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Sierra Club v. Bosworth*, 510 F.3d 1016, 1022 (9th Cir. 2007).  Where a plaintiff has challenged a final agency action under the APA, the case on review is a question of law.  *McCrary v. Guitierrez*, No. C-08-015292 RMW, 2010 WL 520762, at

*2 (N.D. Cal. Feb. 8, 2010) (citing *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985)) (explaining that "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did"). "[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts it did." *McCrary*, 2010 WL 520762, at *2 (quoting *Occidental Eng'g Co.*, 753 F.2d at 770). Judicial review under the APA is generally limited to "the whole [administrative] record or those parts of it cited by a party[.]" 5 U.S.C. § 706; *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008). But "[r]eview of an *ultra vires* challenge [is not] limited to an administrative record." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 155 F.4th 1082, 1093 (9th Cir. 2025).

## ARGUMENT

There is no dispute of any material fact, and Plaintiffs are entitled to summary judgment on each of their six causes of action. First, the Challenged Conditions exceed Defendants' authority under the Community Policing Act, and Plaintiffs are therefore entitled to judgment on their Sixth Cause of Action—that the Challenged Conditions violate the APA by exceeding Defendants' statutory authority. This was the focus of the Court's reasoning in its order preliminarily enjoining the Challenged Conditions. Second, Defendants' actions violate the separation of powers, Spending Clause, and Due Process Clause, and Plaintiffs are therefore entitled to judgment as a matter of law on their First through Third Causes of Action. Prevailing on *any one* constitutional claim is sufficient for Plaintiffs to prevail on their Fifth Cause of Action—that Defendants violated the APA by acting contrary to the Constitution. Finally, Plaintiffs are entitled to judgment as a matter of law on their final APA claim, that Defendants' imposition of the Challenged Conditions was arbitrary and capricious (Fourth Cause of Action).

**I.    The "Stark Conflict" Between the Text of the Act and the Terms of the Conditions Is a "Sure Sign" Defendants Acted "Outside [Their] Statutory Authority."[7]**

As this Court already held, the Challenged Conditions are untethered to any statutory authority. The Court noted in its order preliminarily enjoining the enforcement of the Challenged Conditions that "the plain text of the Community Policing Act," "the sole statutory basis of the grantmaking authority held by the COPS Office," "does not give the COPS Office unfettered discretion to attach conditions of

---

[7] Order at 12.

its choice to the community policing grants it makes." Order at 10 (citing *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015)). The Act's "language is clear and direct, and leaves no room for the conditions the government seeks to impose here." *Id.* at 11. In sum, the "plain language of the Community Policing Act does not reveal a basis for the government's actions." *Id.*

There is no statutory authority for *any* of the Challenged Conditions—and, indeed, as this Court has noted, Order at 11, at minimum, the Nondiscrimination/DEI Condition and the DEI-related Federal Funding Restriction *conflict* with the Community Policing Act. The Act explicitly requires grant applications to assure the hiring of women and minority officers. 34 U.S.C. § 10382(c)(11). "There is no way to reconcile the conditions with the statute short of engaging in doublethink that forbidding considerations of race and gender is the same as taking them into account." Order at 11-12.[8]

Any argument Defendants revive that the Challenged Conditions do no more than require Plaintiffs to comply with federal law must again be rejected. As this Court previously noted when it dismissed this argument, Plaintiffs are obligated to follow federal law regardless of any grant conditions: Plaintiffs "are no more free to flout the Community Policing Act or any other federal law than the government is." Order at 12. This Court, too, has correctly observed that Defendants' insistence that EOs published by the President are on equal footing with statutes passed by Congress is misplaced. *Id.*

There is nothing in the Administrative Record necessitating a different result, and Plaintiffs are entitled to summary judgment on their APA claim that the Challenged Conditions are in excess of statutory authority (Sixth Cause of Action). *See* 5 U.S.C. § 706(2)(C).

## II.    The Challenged Conditions Are Also Contrary to the Constitution.

As this Court correctly observed in its Order preliminary enjoining the Challenged Conditions, courts must "effectuate the will of Congress subject to constitutional limits," Order at 13, without giving deference to agency interpretations of statutes or the Constitution. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 391–95 (2024) (cleaned up). Here, the Challenged Conditions are unconstitutional because they violate the separation of powers, the Spending Clause, and the Due

---

[8] In imposing the Challenged Conditions, Defendants also fail their requirements under Office of Management and Budget Guidance in Title 2 of the Code of Federal Regulations, Part 200. 2 C.F.R. § 3002.10. "Federal agencies are responsible for ensuring that specific Federal award conditions . . . are consistent with the program design." 2 C.F.R. § 200.208(a).

Process Clause.  Plaintiffs are thus entitled to judgment as a matter of law on their three constitutional claims (First through Third Causes of Action), and their APA claim (Fifth Cause of Action) under section 706(2)(B) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity.").

### A. Congress Did Not Authorize the Executive Branch to Impose the Challenged Conditions, and the Challenged Conditions Violate the Separation of Powers.

The President does not make laws.  *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952).  His constitutional role is only to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.  Likewise, the Executive Branch "has no power to act . . . unless and until Congress confers power upon it."  *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).  Executive Branch agencies may not impose conditions on federal funding without statutory authority.  *See City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019) (concluding that agency grant conditions imposed without statutory authority were "ultra vires").

The Community Policing Act enumerates specific purposes for which grants may be disbursed.  *See* 34 U.S.C. § 10381(a).  It does not authorize Defendants to impose the Challenged Conditions or anything remotely similar.  The Act does not authorize Defendants to prohibit a grantee from (i) operating DEI programs (as at least the Nondiscrimination/DEI Condition and Federal Funding Restrictions purport to do); (ii) spending grant money to support educational institutions that impose COVID-19 vaccine requirements; (iii) "promoting" "gender ideology;" (iv) supporting "environmental justice;" (v) receiving grants if, in the Administration's view, the grantee does not do enough to protect public monuments; or (vi) running afoul of any of the edicts the President has handed down in more than 250 EOs across dozens of subjects.  To the extent it is *possible* to understand what the Conditions require or prohibit, the Challenged Conditions inhibit Plaintiffs' ability to use their Grant Awards for the statutorily enumerated purposes.  Indeed, as the Court previously found, the Discrimination Condition is directly *contrary* to the express statutory requirements of the Community Policing Act.

The EO Condition is a particularly stark illustration of the lengths to which Defendants have gone and will go (at the behest of the President) to circumvent a co-equal branch of government.  EOs and other presidential missives are not laws, *California v. Env't Prot. Agency*, 72 F.4th 308, 318 (D.C.

Cir. 2023), and the President cannot use them as vectors to sneak in restrictions on grants that are unrelated to and inconsistent with congressional appropriations, *see City of Fresno v. Turner* ("*Fresno I*"), No. 25-CV-07070-RS, 2025 WL 2469330, at *6 (N.D. Cal. Aug. 27, 2025).  But this is precisely how Defendants use many EOs.  By requiring Plaintiffs to comply with the edicts of all EOs and other presidential memoranda, regardless of subject matter, Defendants impermissibly attempt to co-opt Plaintiffs into implementing the President's policy objectives, even when they contradict the will of Congress.  *See* Order at 12 ("The suggestion that executive orders are on parity with statutes is bereft of any meaningful support in the government's briefs, all the more so when, as demonstrated, the executive orders' directives stand in direct conflict with the plain text of the Community Policing Act."); s*ee also Martin Luther King, Jr. Cnty. v. Turner*, 785 F. Supp. 3d 863, 886-87 (W.D. Wash. 2025) (holding "[s]ubstantive conditions implicating controversial policy matters that are unrelated to the authorizing statute . . . are simply not 'of the same kind' as conditions that require recipients to monitor and report the progress of their program").

Because there is no statutory authority for the Challenged Conditions, they violate the separation of powers and are "contrary to constitutional right, power, privilege, or immunity."  Accordingly, Plaintiffs are entitled to summary judgment on their First and Fifth Causes of Action.

**B.      The Challenged Conditions Violate the Spending and Due Process Clauses.**

Under the congressional spending power, grant conditions must be (i) set forth unambiguously, (ii) established before the grantee accepts the terms of the grant award, and (iii) related to the subject matter of the grant program.  *See S. Dakota v. Dole*, 483 U.S. 203, 207 (1987); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).  Likewise, under the Due Process Clause, a governmental enactment is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1223 – 24 (N.D. Cal. 2025) (preliminarily enjoining certain grant conditions on due process grounds where conditions did not give

fair notice of prohibited conduct and encouraged "arbitrary and discriminatory enforcement by the implementing agencies"). The Challenged Conditions fail on all counts.[9]

### 1. The Challenged Conditions Are Vague and Ambiguous.

The Challenged Conditions are anything but clear and unambiguous. *See Pennhurst*, 451 U.S. at 17 ("[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously[.]"); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[A]n enactment is void for vagueness if its prohibitions are not clearly defined.").

The ***Nondiscrimination/DEI Condition*** requires Plaintiffs to certify that they "do[] not operate any programs" with DEI "components" that violate applicable antidiscrimination laws. AR281, 344, 411, 464, 524. The Executive Branch, however, has muddied the waters on what activities might be considered violative of antidiscrimination law. The President has made his hostility to DEI abundantly clear through multiple EOs (not to mention countless public statements). *E.g.*, AR646 ("Illegal DEI and DEIA policies . . . undermine our national unity. . . ."). As has the DOJ: The July Bondi Memo asserts that DEI initiatives are unlawful and discriminatory, including training and educational programs, scholarships, and hiring policies designed to support historically disadvantaged groups. *See* RJN Ex. A pp. 4 – 8.

Any assertion or insinuation—by the erstwhile Attorney General or by the President—that DEI programs are "illegal," however, is an attempt to rewrite decades of settled jurisprudence and federal law and only sows confusion. The end result is that, when Plaintiffs certify that they "do[] not operate any program (including any such programs having components relating to diversity, equity, and inclusion) that violates any applicable Federal civil rights or antidiscrimination laws," and that such compliance is material under the FCA, they do not know whether they are certifying their compliance with law as passed by Congress and interpreted by courts[10]—or with the Executive Branch's views and

---

[9] As discussed further below, the open-ended nature of the EO Condition leaves open the possibility that EOs issued after the date of the deadline for grant award acceptance will be enforced against Plaintiffs. In other words, accepting the EO Condition seemingly leaves Plaintiffs on the hook for conditions (future EOs) implemented after Plaintiffs have accepted their Grant Awards.

[10] As another example, the Memo also asserts that the use of "[f]acially neutral criteria. . . that function as proxies for protected characteristics violate[s] federal law if designed or applied with the intention of advantaging or disadvantaging individuals based on protected characteristics." RJN Ex. A at p. 2. That assertion is inconsistent with Supreme Court precedent that has "consistently declined to find

purported guidance. The lack of clarity enables Defendants to make mischief. *See Nat'l Educ. Ass'n. v. United States Dep't of Educ.*, 779 F. Supp. 3d 149, 188 (D.N.H. 2025) (enjoining Department of Education letter as impermissibly vague for characterizing "unlawful DEI" in a manner inconsistent with the ordinary meaning of DEI). The consequences of certifying materiality and being deemed to have made a false statement could be astronomical for Plaintiffs. And, in light of the DOJ's evident eagerness to weaponize the FCA, RJN Ex. B at 1, Plaintiffs' trepidation is more than warranted.

Moreover, to the extent the Nondiscrimination/DEI Condition incorporates this Administration's perspective on DEI policies, the Condition contradicts other components of the Grant Awards— including specifically the requirement to comply with the Community Policing Act, which requires grantees to assure the hiring of women and minority officers. *See* 34 U.S.C. § 10382(c). Plaintiffs have no way of understanding which of the diametrically opposed interpretations of nondiscrimination and civil rights law they must follow. As this Court has noted, "[t]here is no way to reconcile the conditions with the statute short of engaging in doublethink . . . ." Order at 11. This Condition is therefore fatally ambiguous and vague. *See Cnty. of Santa Clara v. Noem*, No. 25-CV-08330-WHO, 2025 WL 3251660, at *38 (N.D. Cal. Nov. 21, 2025) (ruling similar condition "rife with vagueness and ambiguity" in violation of the Spending Clause).

The ***EO Condition*** is likewise ambiguous and fails to give Plaintiffs fair notice of what is expected of them. *Santa Clara*¸ 2025 WL 3251660, at *38 (holding "EO Condition is, at best, ambiguous"). As noted, this Condition, which commands grantees to comply with "all Executive Orders by the President," could be read to require Plaintiffs to comply not only with existing EOs having nothing to do with COPS Grants, but also with EOs enjoined as unlawful or unconstitutional, EOs that run contrary to the Community Policing Act (such as the Anti-DEI EO), and EOs not yet issued. *See Pennhurst*, 451 U.S. at 25 (clarifying that the spending power does not include the ability to impose "post acceptance or 'retroactive' conditions"); *see also Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F. Supp. 3d 521, 543 (N.D. Cal. 2020) (enjoining provisions of EO against grantee where provisions

constitutionally suspect" the adoption of race-neutral criteria—even when such criteria were "correlated with race." *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 885 - 86 (4th Cir. 2023) (cleaned up) (*citing Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 545 (2015)).

were "so vague it is impossible . . . to determine what conduct is prohibited"). Moreover, while the EO Condition purports to incorporate only "applicable" federal laws and Presidential Memoranda, there are no discernable criteria as to what "applicable" includes. *See Hous. Auth. of City and Cnty. of San Francisco v. Turner*, No. 25-CV-08859-JST, 2025 WL 3187761, at *14 (N.D. Cal. Nov. 14, 2025) (enjoining similar EO condition where it required compliance with future EOs with "no meaningful guidance as to what conduct is expected, tolerated, or prohibited"). What federal guidance is "applicable" is left, therefore, entirely to Defendants' subjective discretion. *San Francisco A.I.D.S. Foundation*, 786 F. Supp. 3d at 1223 (noting that one of the dangers of vague government enactments is that they "encourage arbitrary and discriminatory enforcement").

What's more, in many cases the language of the EOs themselves is often vague. *See, e.g., Fresno I*, 2025 WL 2469330, at *6. Take, for instance, the Grantmaking EO. In addition to the anti-DEI components discussed above, this EO proclaims that discretionary grant awards must "demonstrably advance the President's policy priorities" and "shall not be used to fund, promote, encourage, subsidize, or facilitate" "denial by the grant recipient of the sex binary in humans or the notion that sex is a chosen or mutable characteristic," or other "anti-American values." 90 Fed. Reg. 38929. The EO is silent on what a "policy priorit[y]" is or what "anti-American values" are. As another example, the most recent of the American Monuments EOs declare that federal support will be withheld from states and local governments "that have failed to protect public monuments, memorials, and statues from destruction or vandalism." AR662. Do these EOs apply only to monuments to American history? Or do they apply also to public art that has been relocated against an artist's wishes? Do they cover unsuccessful efforts to prevent graffiti artists from tagging or the failure to hold them accountable after the fact? What about a local government's inability to pay for restoration work relating to weather-related damage? Plaintiffs can only guess. The Gender Ideology EO, meanwhile, aims at ensuring grant funds "do not promote gender ideology," but, while the EO maligns "self-assessed gender identity," it never attempts to explain what activities might constitute "promotion" by a grantee in the context of a grant award to support community policing. AR640-641. Similarly, with respect to the Vaccine Requirement EO, it is entirely unclear what it would mean to "directly or indirectly support or subsidize" an educational institution that requires students to be vaccinated for COVID-19. AR635.

Notice of Mot.; Mot.; MPA ISO MSJ
CASE NO. 25-cv-09277-JD

It is not clear what compliance with any of these EOs, each of which *could* be understood to apply to the Plaintiffs' Grant Awards under the EO Condition, requires of Plaintiffs—particularly as EOs bind only executive branch agencies, officers, and employees, "not private parties or local governments." *See Fresno I*, 2025 WL 2469330, at *6 (holding an EO condition vague in part because the Grantmaking EO and Anti-DEI EO, among other orders, "use[d] vague language"); *see also San Francisco Unified School District v. AmeriCorps*, 789 F. Supp 3d 716, 745 – 49 (N.D. Cal. 2025) (finding grant conditions ambiguous because incorporated provisions of EOs, including the Anti-DEI EO, were "highly ambiguous"). There is also no way to predict whether the President will issue additional EOs or directives that the Administration will contend are "Presidential Memoranda," much less how frequently or when he will do so, or the subject matter or scope of such materials. The EO Condition, with terms not yet conceived, is an impermissible mandate.

Finally, ***the Federal Funding Restrictions*** are also vague and ambiguous. As discussed above, the prohibition on using funds for "diversity, equity, inclusion, and accessibility," like the Nondiscrimination/DEI Condition, is directly contrary to the requirements of the Community Policing Act. Plaintiffs expect Defendants will argue that the Gender Ideology EO, the American Monuments EOs, and the Vaccine Requirement EO dispel ambiguity in the other Federal Funding Restrictions. Not so. First, the Federal Funding Restrictions do not refer to any of these EOs much less incorporate them by reference. *See* AR015, 057, 091, 128. And, even if they did, the terms of these EOs themselves are vague, as discussed above.

None of the Challenged Conditions' "various interpretations" are "self-evident." *See AmeriCorps*, 789 F. Supp. 3d at 748 – 49. Ultimately, the Challenged Conditions "leave regulated persons without proper notice of what conduct they must certify they are not engaging in, and they empower the government to enforce the [c]ertification [r]equirement arbitrarily." *See Am. Fed'n of Tchrs. v. Dep't of Educ.*, 796 F. Supp. 3d 66, 102, 118 (D. Md. 2025). Courts have repeatedly held that ambiguous conditions—including conditions materially similar to the Challenged Conditions—violate the Spending and Due Process Clauses. *See, e.g.*, *id.; Fresno I*, 2025 WL 2469330, at *5; *Chicago Women in Trades v. Trump*, 773 F. Supp. 3d 592, 603 (N.D. Ill. 2025) (recognizing the meaning of DEI conditions "is left entirely to the imagination"). There is no reason to reach a different result here. As

Notice of Mot.; Mot.; MPA ISO MSJ
CASE NO. 25-cv-09277-JD

17

such, Plaintiffs are entitled to summary judgment on their Second, Third, and Fifth Causes of action. *See* 5 U.S.C. § 706(2)(B).

### 2.     The Challenged Conditions Also Violate the Spending Clause Because They Are Unrelated to the Purpose of the Grants.

The Challenged Conditions also violate the spending power because they bear no relationship to the purpose of Plaintiffs' COPS Grants. Conditions imposed on federal grants, even by Congress, must be "reasonably related to the purpose of the expenditure." *New York v. United States*, 505 U.S. 144, 172 (1992) (citation omitted); *see also Dole*, 483 U.S. at 207, 209. Without "some relationship" between spending conditions and "the purpose of the federal spending," "the spending power could render academic the Constitution's other grants and limits of federal authority." *New York*, 505 U.S. at 167; *see also City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 960 (N.D. Cal. 2018) (holding conditions on Byrne JAG funding regarding immigration enforcement lacked "any relationship to (and in fact interfere[d] with) the criminal justice priorities . . . [of] the Byrne JAG statute").

As expressly noted by Congress, COPS Grants are intended to support community policing (and in turn public safety) by bolstering local law enforcement's ability to recruit, hire, retain, and support sworn officers. The Community Policing Act specifies that COPS Grants be distributed to support specifically enumerated purposes, including hiring, providing specialized training in de-escalation and for interactions with individuals with mental illnesses, and supporting officers with mental health resources. 34 U.S.C. §§ 10381(b)(2), (18) – (19), (25).

The EO Condition and the Federal Funding Restrictions, to the extent decipherable, impose a host of restrictions having nothing whatsoever to do with increasing resources for community policing—along these or other statutorily enumerated parameters. An educational institution's vaccine requirements, a city or county's policies and practices concerning the upkeep of statutes and monuments, "environmental justice," and "gender ideology," not to mention some of the President's plans for the country's 250th anniversary celebration, federal employers' hiring practices,[11] the degree of Qatar's

---

[11] *See Ensuring Continued Accountability in Federal Hiring*, Executive Order No. 14,356, 90 Fed. Reg. 48387 (Oct. 15, 2025).

political stability,[12] and preserving Americans' access to TikTok[13]--have *nothing at all* to do with a law enforcement office's ability to recruit, hire, retain, or support sworn officers or with reducing crime.

Further, to the extent it is possible to intuit the ultimate requirements of the Nondiscrimination/DEI Condition, this Condition is antithetical to an animating goal of the Community Policing Act—to increase the number of racial and ethnic minorities and women in officer ranks. 34 U.S.C. § 10382(c)(11). The Community Policing Act contains an explicit Congressional DEI mandate, directed not just at increasing diversity amongst a law enforcement agency's sworn officers, but also at ensuring that the make-up of a law enforcement agency is more closely aligned with the communities that it serves. Requiring Plaintiffs to abandon their own DEI programs, as the Nondiscrimination/DEI Condition does, could not be at greater odds with the purpose of the COPS Grants, as this Court has already observed. Order at 11 – 12.

In sum, none of the Challenged Conditions are "reasonably calculated" to enhance community policing. *See Dole*, 483 U.S. at 207, 209 ("[C]onditions on federal grants" must be "reasonably calculated to address th[e] particular . . . purpose . . . for which the funds are expended."). Plaintiffs are entitled to judgment as a matter of law on their Second and Fifth Causes of Action for this independent reason. *See* 5 U.S.C. § 706(2)(B).

**III.     The Challenged Conditions Are Arbitrary and Capricious.**

The Challenged Conditions are also invalid under section 706(2)(A). Agency action is arbitrary and capricious where the action is not "reasonable" or "reasonably explained." *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024) (cleaned up). An agency must offer "a satisfactory explanation for its action" and can neither "rel[y] on factors which Congress has not intended it to consider" nor simply ignore "an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.* ("*State Farm*"), 463 U.S. 29, 43 (1983). While agencies are free to change their existing policies, they must "display awareness that" they are doing so, provide "good reasons for

---

[12] *See Assuring the Security of the State of Qatar*, Executive Order No. 14,353, 90 Fed. Reg. 48143 (Sept. 29, 2025).

[13] *See Saving TikTok While Protecting National Security*, Executive Order No. 14,352, 90 Fed. Reg. 47219 (Sept. 25, 2025).

the new policy," and demonstrate that they have taken account of "reliance interests" engendered by the prior policy. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Defendants' imposition of the Challenged Conditions is arbitrary and capricious in three ways.

***First***, as discussed above, the Challenged Conditions have no basis in, and in many cases are contrary to, the congressional intent and enumerated purposes reflected in the Community Policing Act. *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996) (stating that whether an agency has overlooked an important aspect of the problem "turns on what a relevant substantive statute makes important"). The Administrative Record shows no evidence Defendants *acknowledged* the language of the Community Policing Act, let alone that Defendants contemplated the Conditions' relationship to the purpose of COPS Grants. *See Nat'l Fam. Farm Coal. v. Vilsack*, 758 F. Supp. 3d 1060, 1071 (N.D. Cal. 2024) ("It is well established that, in a suit brought under the APA to review agency action, 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" (quoting *Occidental Eng'g Co.*, 753 F.2d at 769). Similarly, Defendants "relied on factors which Congress has not intended [them] to consider" because they conditioned grant funding on Plaintiffs' compliance with Defendants' reinvention of antidiscrimination law and adherence to the President's political agenda as articulated in EOs. *See State Farm*, 463 U.S. at 43; *see also City of Fresno v. Turner*, 25-CV-07070-RS, 2025 WL 2721390, at *8 (N.D. Cal. Sept. 23, 2025) ("*Fresno II*") (indicating that actions furthering presidential directive are not exempt from arbitrary-and-capricious review (collecting cases)). This is particularly evident where Defendants have tied funding to prohibitions *directly at odds* with the Community Policing Act.

***Second***, the Challenged Conditions "reflect changes in agency position which require . . . an explanation of reasoning." *See Fresno II*, 2025 WL 2721390, at *8. The Challenged Conditions effect a radical change in the conditions applicable to COPS Grants. The Discrimination Condition's references to anti-discrimination law "act as announcements of policies" and make clear that the Executive Branch's interpretation of federal law "is undergoing *significant change*." *Id.* (emphasis added). When preliminarily enjoining the Challenged Conditions, this Court highlighted language from the Government DEI EO that explicitly concedes this shift: Federal support for DEI initiatives "*ends today*." Order at 6 (citing 90 Fed. Reg. 8339 (emphasis added)). The EO Condition and Federal Funding

Restrictions likewise purport to incorporate a number of the Administration's policy preferences as part of COPS Grants *for the first time*. Yet Defendants have not included in the Administrative Record any evidence acknowledging, let alone reasonably explaining these dramatic changes in position.[14]

***Third***, and relatedly, agencies "must consider the 'alternatives' that are 'within the ambit of existing policy'" and must also consider reliance interests, consider whether those reliance interests are "significant," and weigh such interests "against competing policy concerns." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30, 33 (2020) (cleaned up). The Administrative Record contains no evidence at all that Defendants considered any of these factors. There is no evidence Defendants have accounted for Plaintiffs' reliance on COPS Grants to serve critical public safety needs. There is no evidence that Defendants considered the disastrous consequences to community policing, public safety, and officer wellness. Defendants' failure to adduce evidence they "even consider[ed] reasons to not impose" the Challenged Conditions only "highlights the arbitrariness of the process." *Illinois v. Fed. Emergency Mgmt. Agency*, 801 F. Supp. 3d 75, 94 (D.R.I. 2025).

Defendants have produced no evidence of any reasoned decision making. Defendants' imposition of the Challenged Conditions is therefore arbitrary and capricious, and Plaintiffs are entitled to judgment as a matter of law on their Fourth Cause of Action on that basis.

**IV.    Plaintiffs Are Entitled to Vacatur and a Permanent Injunction Preventing Defendants from Imposing the Challenged Conditions.**

    **A.    The Court Should Vacate the Challenged Conditions.**

Under the APA, a court "shall . . . hold unlawful and set aside agency action[s]" that violate the statute. 5 U.S.C. § 706(2). "[V]acatur and remand is the default remedy under the APA[.]" *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025). Plaintiffs have shown multiple ways in which the Challenged Conditions violate the APA. This Court should vacate the Challenged Conditions in their entirety.

---

[14] Defendants have also failed to observe procedures required by law. *See* 5 U.S.C. § 706(2)(D). Regulations require Defendants to clarify "[t]he reason why the specific condition(s) is being imposed" "[p]rior to imposing specific conditions." 2 C.F.R. § 200.208(d)(2) (emphasis added). But, as explained above, no reason has been provided or is apparent from the Administrative Record. And with good reason: There likely is none.

**B.    The Court Should Also Permanently Enjoin Defendants from Enforcing Any Similar Conditions**

Vacatur alone is unlikely to fully protect Plaintiffs:  This remedy "does not restrain the enjoined defendants from pursuing other courses of action to reach the same or a similar result as the vacated agency action."  *Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029, 1045 (S.D. Cal. 2022), *aff'd in part, vacated in part sub nom. Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 120 F.4th 606 (9th Cir. 2024), and *aff'd in part, vacated in part sub nom. Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102 (9th Cir. 2025).  Here, Defendants neither struck nor modified the Challenged Conditions, even after this Court preliminarily enjoined them as unlawful.  The same Administration remains in power, even if some personnel have been terminated.  The EOs maligning DEI and directing federal agencies to impose the President's whims on grantees—as well as the July Bondi Memo and the Civil Rights Fraud Initiative Memo—have not been withdrawn or revised.  These dynamics only underscore Plaintiffs' need for complete relief.

Where, as here, vacatur is not sufficient to redress a plaintiff's injury, injunctive relief should also be awarded.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010).  Indeed, courts often award both.  *See, e.g., Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 692 (N.D. Cal. 2020); *see also R.I. Latino Arts v. Nat'l Endowment for the Arts*, 800 F. Supp. 3d 351,  374–75 (D.R.I. 2025); *Texas v. United States*, No.18-CV-00068, 2021 WL 3022434, at *2-3 (S.D. Tex. July 16, 2021).  Here, a permanent injunction is necessary to provide complete relief, and this Court should therefore issue one.

To obtain a permanent injunction, a plaintiff must demonstrate: (i) actual success on the merits; (ii) that it has suffered an irreparable injury; (iii) that remedies available at law are inadequate; (iv) that the balance of hardships justify an equitable remedy; and (v) that the public interest would not be disserved by a permanent injunction.  *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013).  The primary differences between the test for a preliminary injunction, which this Court has already determined Plaintiffs satisfied, and permanent injunctive relief are that Plaintiffs must now additionally show actual success on the merits and the inadequacy of legal remedies.  *See Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546

n.12 (1987); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Plaintiffs easily meet all the requirements for a permanent injunction.

### 1.   Plaintiffs Have Demonstrated Actual Success on the Merits and Irreparable Harm.

For the reasons argued above, Plaintiffs have demonstrated actual success on the merits.

This Court already found that Plaintiffs faced a threat of irreparable harm.  Order at 13 – 14 ("Because the conditions imposed on the grants are unlawful, being forced to accept them would impose irreparable harm on plaintiffs." (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017))).  The Challenged Conditions have become no less unlawful since the Court's preliminary injunction order, and this particular irreparable harm persists.  By presenting Plaintiffs with a "Hobson's choice" between accepting unconstitutional and unlawful conditions and forgoing congressionally appropriated funding, Defendants have already caused irreparable constitutional injury.  *See, e.g., Hecox v. Little*, 104 F.4th 1061, 1088 (9th Cir. 2024), *as amended* (June 14, 2024), *cert. granted*, 145 S. Ct. 2871 (2025); *see also Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057–59 (9th Cir. 2009).

Plaintiffs will suffer multiple other harms if this Court declines to permanently enjoin the Challenged Conditions.  Budgetary uncertainty is one such harm.  *City & County of San Francisco v. Trump*, 779 F. Supp. 3d 1077, 1082 (N.D. Cal. 2025), *opinion clarified*, 782 F. Supp. 3d 830 (N.D. Cal. 2025) (concluding that budgetary uncertainty constitutes irreparable harm).  Plaintiffs must make budgetary decisions—including whether to fund projects supported by their COPS Grants alongside myriad other public safety functions—while facing the prospect that Defendants could, at any time, withdraw funding based on Plaintiffs' perceived failure to abide by unclear requirements or, based on the same perceived failure, pursue exorbitant monetary penalties under the FCA.  Maguire Decl. ¶ 8; Suppl. Jonsen Decl. ¶ 10; Suppl. Meaux Decl. ¶¶ 5,8; Prieto Decl. ¶ 9; *see also Fresno II*, 2025 WL 2721390, at *19 (finding irreparable harm where plaintiffs' grants might be withdrawn or blocked based on defendants' assessment of similarly vague conditions).

And Plaintiffs would have extraordinary difficulty forgoing the initiatives that their COPS Grant Awards fund.  After the Court preliminarily enjoined the Challenged Conditions, Plaintiffs began putting the Grant Awards to use.  San Francisco is using its $6.25 million COPS Hiring Grant to redress a 30

percent staffing gap by subsidizing the costs of police academies. The hiring and training of fourteen officers has already been funded. Maguire Decl. ¶ 7. The City is already staring down a massive budget deficit, and SFPD has no realistic alternative source of funding to hire these officers. *Id.* ¶ 6. SDPD is preparing to train two recruits using its Hiring Grant and is beginning to use its $500,000 Safer Outcomes Grant to train officers in more effective crisis response, and it, too, has no feasible source of alternative funding. Suppl. Meaux Decl. ¶¶ 5, 7, 8. TPD is already using its Recruiting Microgrant to recruit new officers. Prieto Decl. ¶¶ 6,9. SCCSO is processing contracts to use its $200,000 Mental Health Grant to provide mental health services and support for law enforcement staff. Suppl. Jonsen Decl. ¶ 9. Without the Grant, SCCSO will have to divert funding from other public safety services or forgo providing these services altogether. *Id.* ¶ 10.

The damage to community trust and to public safety are yet other irreparable injuries at play. When Plaintiffs are forced to abort key public safety programs, trust will erode between local law enforcement agencies and the communities they serve. *City & County of San Francisco v. Trump*, 779 F. Supp. 3d at 1082 (finding "irreparable injury in the form of [inter alia], undermining trust between the Cities and Counties and the communities they serve"); see *also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (acknowledging irreparable harm exists to "enforcement and public safety interests"); *City of Los Angeles v. Sessions*, No. CV-17-7215-R, 2018 WL 6071072, at *3 (C.D. Cal. Sept. 13, 2018), *aff'd sub nom. City of Los Angeles v. Barr*, 941 F.3d 931 (9th Cir. 2019) (finding irreparable harm where the city had to either "diminish[] community trust and undermine[] public safety" by implementing objectionable policies or forgoing funding).

Plaintiffs have demonstrated multiple irreparable harms.

### 2.   Damages Are Inadequate to Remedy the Harms the Challenged Conditions Cause.

The relief Plaintiffs seek here is purely equitable. Plaintiffs do not seek damages, and, as this Court has already agreed, damages would in any event be inadequate to remedy the harms imposed by the Challenged Conditions. Order at 14 (citing *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)). Instead, Plaintiffs seek only the ability to use their Grant Awards without encumbrance of the unlawful Challenged Conditions, and to be free from having to litigate the same or

materially similar unlawful conditions, imposed through other means, in the future. *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988). For these reasons, complete relief is available only through both vacatur of the Challenged Conditions and injunctive relief.

### 3.    The Public Interest and the Balance of Hardships Strongly Favor Injunctive Relief.

Finally, the equitable factors weigh in favor of a permanent injunction. When the government is a party, the balance of hardships and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Here, both favor an injunction.

The requirements are satisfied by actual success on the merits of an underlying constitutional claim. *See Ariz. Dream Act Coal.*, 757 F.3d at 1069; *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (finding that "it is always in the public interest to prevent the violation of a party's constitutional rights" (citation omitted)). Plaintiffs have shown they are entitled to summary judgment as a matter of law on their constitutional claims (First through Third Causes of Action), above.

Moreover, as discussed above, in the absence of permanent injunctive relief, Plaintiffs face serious harm to their programs and communities they serve. Such hardships outweigh any faced by Defendants. Order at 14; *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (describing how defendants "cannot suffer harm from an injunction that merely ends an unlawful practice").

Further, the public benefits from permanent injunctive relief. The public not only has an interest in preventing Defendants from engaging in unconstitutional and unlawful behavior, but also directly benefits from the programs funded by the Plaintiffs' Grant Awards, *see City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018) ("[T]he public interest cannot be disserved by an injunction that brings clarity to all parties and to citizens dependent on public services"). In fact, public safety would suffer if Plaintiffs were unable to further these programs and initiatives.

Both the balance of hardships and the public interest still sharply tip in Plaintiffs' favor, as the Court previously concluded. Order at 14. Plaintiffs have satisfied the requirements for a permanent injunction.

**CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor as to each count in their Complaint and, under 5 U.S.C. section 706(2), vacate the Challenged Conditions. Plaintiffs also respectfully request this Court permanently enjoin Defendants (and their officers, agents, employees, attorneys, and any person acting in concert with them or at their behest) from (i) imposing or enforcing any or all of the Challenged Conditions in COPS Grants awarded to Plaintiffs and (ii) withholding or terminating COPS Grants funding on the ground that Plaintiffs did not accept or comply with any or all of the Challenged Conditions. Finally, Plaintiffs ask this Court to permanently enjoin Defendants (and their officers, agents, employees, attorneys, and any person acting in concert with them or at their behest) from enforcing any requirement (including but not limited to the Civil Rights Conditions) that Plaintiffs certify they do not operate any programs that violate any applicable Federal civil rights or nondiscrimination laws in any way that is inconsistent with current meanings of federal law, as enacted by Congress and interpreted by federal courts.

Dated: April 17, 2026

Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
KARUN A. TILAK
JESSE E. LANIER
Deputy City Attorneys

By: /s/ *Jesse E. Lanier*
    JESSE E. LANIER
    Deputy City Attorney

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

TONY LOPRESTI, SBN 289269
County Counsel

By: */s/ Bill Nguyen*
BILL NGUYEN
Deputy County Counsel

KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
BILL NGUYEN, SBN 333671
Deputy County Counsel
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone:    (408) 299-5900
Facsimile:    (408) 292-7240
E-Mail:        bill.nguyen@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

ROI I. LUSK
City Attorney

By: */s/ Regina L. Nassen*
REGINA L. NASSEN, Ariz. Bar No. 014574*
Principal Assistant City Attorney

Tucson City Attorney's Office
255 W. Alameda, 7th Floor
P.O. Box 27210
Tucson, Arizona 85726-7210
Telephone: (520)837-4207
Facsimile: (520)623-9803
E-Mail: regina.nassen@tucsonaz.gov

ERIN B. BERNSTEIN, SBN 231539
PRIANKA MUNGALE, SBN 348165
Bradley Bernstein Sands, LLP
1212 Broadway, Suite 1100
Oakland, California 94612
Telephone: (510)380-5801
E-Mail: ebernstein@bradleybernstein.com

Attorneys for Plaintiff
CITY OF TUCSON

HEATHER FERBERT, SBN 246759
City Attorney

By: */s/ Jennifer Martin*
  JENNIFER MARTIN
  Deputy City Attorney

JEAN JORDAN, SBN 155009
Acting Assistant City Attorney
JULIE RAU, SBN 317658
Lead Deputy City Attorney
JENNIFER MARTIN, SBN 322048
Deputy City Attorney
1200 Third Avenue, Suite 1620
San Diego, CA 92101
Telephone: (619) 236-6220
Facsimile: (619) 236-7215
E-Mail: Jrau@sandiego.org
        MartinJM@sandiego.org

Attorneys for Plaintiff
CITY OF SAN DIEGO

Notice of Mot.; Mot.; MPA ISO MSJ                28
CASE NO. 25-cv-09277-JD

**FILER'S ATTESTATION**

I, JESSE E. LANIER, am the ECF user whose identification and password are being used to file this PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES, I hereby attest that the other above-named signatories concur in this filing. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.