UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br><br>    Defendants. | Case No. 3:25-cv-09277-JD<br><br>**[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: August 20, 2026<br>Time: 10:00 a.m.<br><br>The Honorable James Donato |

This matter came on regularly for hearing at the above-captioned time. Having considered the papers submitted and heard the arguments of the parties, and good cause appearing therefore, it is hereby ordered that Plaintiffs' motion for summary judgment is DENIED and Defendants' cross-motion for summary judgment is GRANTED.

**I.     Background**

Since taking office on January 20, 2025, the President has issued several executive orders consistent with federal law, setting the policy priorities for his administration intended to eliminate all types of discrimination. Many focus on the expenditure of federal funds, instructing federal agencies to terminate, review, or revise federal grants. Plaintiffs' motion for summary judgment (ECF No. 55, "Mot.") discusses ten of those executive orders:  Executive Order No. 14151, 90 Fed. Reg. 8339 (Jan. 20, 2025) (*Ending Radical and Wasteful Government DEI Programs and Preferencin*g); Executive Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) (*Defending Women From Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*); Executive Order No. 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025) (*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*); Executive Order No. 14332, 90 Fed. Reg. 38929 (Aug. 7, 2025) (*Improving Oversight of Federal Grantmaking*); Executive Order No. 14356, 90 Fed. Reg. 48387 (Oct. 15, 2025) (*Ensuring Continued Accountability in Federal Hiring*); Executive Order No. 14353, 90 Fed. Reg. 48143 (Sep. 29, 2025) (*Assuring the Security of the State of Qatar*); Executive Order

14189, 90 Fed. Reg. 8849 (Jan. 29, 2025) (*Celebrating America's 250th Birthday*); Executive Order 14214, 90 Fed. Reg. 9949 (Feb. 14, 2025) (*Keeping Education Accessible and Ending COVID-19 Vaccine Mandates in Schools*); Executive Order 13933, 85 Fed. Reg. 40081 (June 26, 2020) (*Protecting American Monuments, Memorials, and Statues and Combatting Recent Criminal Violence*); and Executive Order No. 14352, 90 Fed. Reg. 47219 (Sep. 25, 2025) (*Saving TikTok While Protecting National Security*). Each of the executive orders discussed in the Motion makes clear that it must be "implemented consistent with applicable law." *See* EO 14151 § 4(b); EO 14168 § 8(b); EO 14173 § 8(b); EO 14332 § 7(b); EO 14356 § 5(b); EO 14353 § 4(b); EO 14352 § 6(b); EO 14214 § 4(b); EO 13933 § 6(b); EO 14189 § 4(b).

The federal government, through various agencies (including Defendants in this lawsuit), provides funding to state and local governments and other eligible stakeholders using federal financial assistance (through grants and cooperative agreements) that are subject to specified terms and conditions which govern the recipients' use of and continued receipt of the federal funds. As a default matter, government-wide grant regulations issued by the Office of Budget and Management ("OMB") require that federal agencies incorporate "statutory, executive order, other Presidential directive, or regulatory requirements" into the terms and conditions of federal awards. 2 C.F.R. § 200.211(c)(1)(ii); *see also* 2 C.F.R. § 200.300(a) ("The Federal agency or pass-through entity must manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations—including provisions protecting free speech, religious liberty, public welfare, and the environment, and those prohibiting discrimination—and the requirements of this part."); 2 C.F.R. § 200.303(b) (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards requiring all recipients of federal grants to "[c]omply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award").

The COPS Office administers four discretionary, competitive grant programs that are the subject of the first amended complaint: (1) FY 2025 Community Policing Development ("CPD") Microgrants; (2) FY 2025 Law Enforcement Mental Health and Wellness Act ("LEMHWA"); (3) FY 2025 COPS Hiring Program ("CHP"); and (4) FY 2025 Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement ("Safer Outcomes"). ECF No. 17 (First Amended Complaint, "FAC") ¶ 25.

Each of these four programs is authorized under the Omnibus Crime Control and Safe Streets Act of 1968, as amended, and the Violent Crime Control and Law Enforcement Act of 1994, Title I, Part Q, Public Law 103-322, 34 U.S.C. § 10381 *et seq.* Under 34 U.S.C. § 10388, the Attorney General may promulgate regulations and guidelines to carry out the grant programs. *Id.* Each notice of funding opportunity at issue here included a link to the applicable grant terms and conditions, and those terms and conditions include the Challenged Conditions. ECF No. 53 (Certified Administrative Record, "AR") at 0028, 069, 105, 140, 158, 196. In Plaintiffs' applications for the grant awards, each Plaintiff certified that it "will comply with all legal, administrative, and programmatic requirements that govern the applicant for acceptance and use of federal funds as outlined in the applicable COPS Office Grant Application Resource Guide, the COPS Office Award Owner's Manual, the DOJ Grants Financial Guide, Assurances, Certifications, all Executive Orders, and applicable Presidential Memoranda, program regulations, laws, orders, and circulars." AR-0264-65, 316-17, 392-93, 446-47, 496-97.

Plaintiffs filed this lawsuit to challenge some of the terms and conditions that they were aware of and agreed to when they applied for the grant programs. *First*, the grant terms require Plaintiffs to agree "that [their] compliance with all applicable Federal civil rights and nondiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for purposes of the False Claims Act (31 U.S.C. 3729-3730 and 3801-3812), and, by accepting this award, certif[y] that [they] do[] not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws." AR-0158, 196, 281, 344, 411, 464, 524. Plaintiffs refer to this provision as the "Nondiscrimination/DEI Condition." Mot. at 7.

*Second*, the grant awards require that "[r]ecipients of grant funding must comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President." AR-0158, 196, 281, 344, 411, 464, 524. Plaintiffs describe this as the "EO Condition." Mot. at 8.

*Third*, the grant awards prohibit the use of awarded grant funds to, *inter alia*, (1) directly or indirectly support educational institutions "[requiring] students to have received a COVID-19 vaccination to attend any in-person education program," (2) promote "gender ideology," (3) support "projects that provide or advance diversity, equity, inclusion, and accessibility or environmental justice programs,

services, or activities," and (4) agencies that "fail to protect public monuments, memorials, and statues." AR-0015, 057, 091, 128. Plaintiffs call these the "Federal Funding Restrictions." Mot. at 5. These Federal Funding Restrictions were based on current national and administration priorities announced in five Executive Orders: EO 14214; EO 14168; EO 14173; EO 14189; EO 13933. Again, each executive order at issue in the Federal Funding Restrictions makes clear that it must be "implemented consistent with applicable law." EO 14214 § 4(b); EO 14168 § 8(b); EO 14173 § 8(b); EO 14189 § 5(b); EO 13933 § 6(b); EO 14189 § 5(b). The NOFOs advised applicants that if they receive an award and it is determined that the applicant is not in compliance with the Federal Funding Restrictions, the COPS Office may place a hold on the award and/or take other remedial action. AR-0015, 057, 091, 128.

Plaintiffs refer to the Nondiscrimination/DEI Condition, the EO Condition, and the Federal Funding Restrictions collectively as the "Challenged Conditions." Mot. at 7.

## II.      Legal Standard

"Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based." *Partridge v. Reich*, 141 F.3d 920, 926 n.4 (9th Cir. 1998) (quotation omitted); *see also Shah v. U. S. Citizenship & Immigr. Servs.*, No. 18-cv-1345, 2019 WL 6877929, at *3 (W.D. Wash. Dec. 17, 2019) ("Courts routinely resolve APA challenges to an agency's administrative decision by summary judgment"). Furthermore, "[t]he court's role on motions for summary judgment is not to resolve contested fact questions which may exist in the underlying administrative record, but to determine whether or not, as a matter of law, the evidence in the administrative record permitted the agency to make the decision it did." *Ctr. for Biological Diversity v. Gould*, 150 F. Supp. 3d 1170, 1177 (E.D. Cal. 2015) (quotation omitted).

## III.      Discussion

### A.      This Court Lacks The Power To Order Monetary Payments

Generally, federal district courts lack jurisdiction to "order the payment of money under" the APA because the federal government's sovereign immunity for claims seeking non-monetary relief "does not extend to orders 'to enforce a contractual obligation to pay money.'" *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). The APA's limited waiver also does not apply "if any other statute that grants consent to suit expressly or

impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). The Tucker Act (28 U.S.C. § 1491(a)(1)) is one such statute that "grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *California*, 604 U.S. at 651 (quoting 28 U.S.C. § 1491(a)(1)). Specifically, the Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), and it "impliedly forbids" bringing "contract actions" against "the government in a federal district court." *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (citation omitted). This prohibition extends to claims founded on grants, like those at issue here, that are implemented through "contracts to set the terms of and receive commitments from recipients." *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021); *see also Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 358 (2025) (explaining that courts have historically described federal grants as contracts). This jurisdictional barrier ensures that contract claims against the United States are channeled into a court that has "unique expertise." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

The Supreme Court has reiterated the preclusive scope of the Tucker Act. Last April, the Supreme Court stayed a district court order to make payments based on grants because the federal government was "likely to succeed in showing the District Court lacked jurisdiction" to bar termination of various education-related grants because the injunction was effectively an order "to enforce a contractual obligation to pay money." *California*, 604 U.S. at 651 (citation omitted). Last August, the Supreme Court stayed a judgment vacating the federal government's termination of grants because the APA's limited waiver does not provide district courts with jurisdiction "to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (Mem.) (2025) ("*NIH*") (citation omitted).

To the extent Plaintiffs are seeking to enforce an obligation to pay money, the Court finds it does not have jurisdiction. As in *California* and *NIH*, any entitlement Plaintiffs may have to these funding streams arises solely on the basis of their federal grant awards; Plaintiffs have no statutory or constitutional right to such funding. Because Plaintiffs' theories hinge on contractual routing of funding to them as

provided for in their grant awards, cloaking their claims as seeking equitable relief under the Constitution and the APA is irrelevant. *See, e.g.*, *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (district court lacks jurisdiction over any case that "is in 'its essence contractual'"); *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act").

**B.**     **All Challenged Conditions Are Lawful And Constitutional**

**1.**     **The Nondiscrimination/DEI Condition Is Constitutional**

Under Title VI of the Civil Rights Act of 1964, recipients of federal assistance must comply with federal anti-discrimination law. *See* 42 U.S.C. § 2000d. Title VI further "authorize[s] and direct[s]" federal agencies that award federal funds to effectuate section 2000d by issuing rules and regulations. 42 U.S.C. § 2000d-1. Pursuant to this authority, DOJ, as a federal agency, and the COPS Office, as a component of DOJ, is required to ensure that all grant awards comply with federal law. Specifically, DOJ must administer federal awards in a manner that ensures "that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a); *see also* 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b). All relevant requirements must then be communicated to recipients and subrecipients and incorporated into the awards directly or by reference in the terms and conditions of the federal award. *Id.*

That is exactly what the COPS Office did. It provided the terms and conditions required for the awards and specifically told recipients of those awards that they must certify that they do "not operate any program (including any such programs having components relating to diversity, equity, and inclusion) that violates any applicable Federal civil rights or antidiscrimination laws." AR-0158, 196, 281, 344, 411, 464, 524. That condition makes plain that recipients cannot violate existing federal anti-discrimination law. And false certifications of compliance with civil rights laws are false statements that put recipients on notice that their compliance is material, *i.e.*, that it is "capable of influencing" the government's payment decision. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016); *see also* AR-0158, 196, 281, 344, 411, 464, 524.

This condition is not novel. It has been true for decades that "[e]very application for Federal financial assistance must, 'as a *condition* to its approval and the extension of any Federal financial

assistance,' contain assurances that the program will comply with Title VI *and* with all requirements imposed pursuant to the executive regulations issued under Title VI." *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629-30 (1983) (Marshall, J., dissenting) (citing regulations from more than ten federal agencies). These "assurances" of compliance are "given in consideration of" federal aid, "and the federal government extends assistance in reliance on the assurance of compliance"— but the obligations of Title VI apply regardless of any certification. *Id.* at 630 (citation omitted). The requirement here is no different; although recipients must certify that any DEI programs they run comply with federal antidiscrimination law, this certification "does not place upon a recipient any unanticipated burdens because any recipient must anticipate having to comply with the law." *Id.*

Accordingly, another Judge of this Court denied a similar challenge to a DEI certification provision, finding that the plaintiffs "have not demonstrated that they [are] likely to succeed in their challenge to the Certification Provision because they have not shown at this juncture that the provision goes beyond targeting DEI programs that violate federal antidiscrimination law." *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1200, 1221-22 (N.D. Cal. 2025), *appeal filed* No. 25-4988 (9th Cir. 2025). Further, the Fourth Circuit unanimously granted the government's motion for a stay in a case challenging Executive Order 14173, which directs federal agencies to require grant recipients to certify that they do not operate unlawful DEI programs. *See* Order, *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025); *see id.* at 7 (Harris, J. concurring) (explaining that the challenged provision "appl[ies] only to conduct that violates existing federal anti-discrimination law"). The Fourth Circuit subsequently vacated the preliminary injunction that had enjoined that certification requirement. *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Feb. 6, 2026) ("Plaintiffs suggest that defendants view all DEI programs as illegal under existing antidiscrimination law. Perhaps, but the Certification Provision doesn't say that").

### (i)    The Nondiscrimination/DEI Condition Does Not Violate The "Separation of Powers"

Plaintiffs argue that the Nondiscrimination/DEI Condition "[v]iolate[s] the Separation of Powers." Mot. at 12-13. Plaintiffs' argument fails. To start, *Dalton v. Specter*, 511 U.S. 462 (1994), forecloses Plaintiffs' ability to raise statutory arguments with constitutional dressing. There, the Supreme Court

reversed a federal circuit court that had "reasoned, relying primarily on *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), that whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id.* at 471. The Court stated this reasoning was incorrect because the Supreme Court's "cases do not support the proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. Instead, the Court "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* Therefore, "claims simply alleging that the President [or an executive officer] has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review." *Id.* at 473. The Court thus ignores Plaintiffs' attempt to constitutionalize their statutory claim. *See New York v. NSF*, 793 F. Supp. 3d 562, 604-07 (S.D.N.Y. 2025) (challenge to directives and grants was statutory, not constitutional, under *Dalton*).

In any event, as discussed *supra*, the COPS Office fully complied with the relevant governing statutes. Indeed, the COPS Office is *required* to include conditions to ensure that recipients comply with anti-discrimination law. *See* 42 U.S.C. § 2000d; 2 C.F.R. § 200.300(a); 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b). The Nondiscrimination/DEI Condition sensibly implements Title VI. That Congress did not specifically spell out that the COPS Office must enforce anti-discrimination laws in each statute governing a grant program does not remove the COPS Office's authority—and obligation—to ensure that recipients follow those laws. There is thus no basis for a "Separation of Powers" violation.

### (ii) The Nondiscrimination/DEI Condition Does Not Violate The Spending Clause

Plaintiffs also argue that the Nondiscrimination/DEI Condition is unlawful under the U.S. Constitution's Spending Clause. U.S. Const. art. I, § 8, cl. 1. Mot. at 13-19. Under the Spending Clause, statutes passed by Congress must meet certain criteria. Absent a violation of another constitutional provision, all that is required is that they must be "in pursuit of the general welfare" and "unambiguous, clearly communicating . . . the consequences of [] participation in the federally funded scheme." *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002) (citation omitted). The funding must "bear *some relationship* to the purpose of the federal spending," but that is a "low-threshold." *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1034 (N.D. Cal. 2018). In any event, "Congress may . . . 'further

broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'" *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (citation omitted). Applying these principles, the Ninth Circuit rejected a Spending Clause challenge to COPS Office competitive grant programs under the first Trump Administration. *See Barr*, 929 F.3d at 1175 ("the applicable Spending Clause principles do not readily apply to an allocation of grant funds through a competitive grant process, such as the [COPS Office] program in this case").

Plaintiffs' first argument on this front is that the Nondiscrimination/DEI Condition is ambiguous. *See* Mot. at 14-15. It is not. The provision requires Plaintiffs to "not operate any program (including any such programs having components relating to diversity, equity, and inclusion) that violates any applicable Federal civil rights or antidiscrimination laws." AR-0158, 196, 281, 344, 411, 464, 524. To comply with the clear notice requirement of Spending Clause jurisprudence, Congress must only make clear that acceptance of federal funds obligates States to comply with a condition. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981). *Pennhurst* explicitly recognized that a State's obligations under a Spending Clause program may be "largely indeterminate," so long as Congress gives "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with" the condition. *Id.* at 24-25. States make an "informed choice" when the Federal Government simply makes clear that acceptance of federal money obligates the States to comply with a condition. *Id.* at 25. Indeed, the Ninth Circuit has recognized that the Spending Clause is satisfied where a "statute's *intention to impose a condition* is expressed clearly," even though the operation of a funding condition "is perhaps unpredictable." *Mayweathers*, 314 F.3d at 1067. There is no requirement to "list every factual instance in which a [funding recipient] will fail to comply with a condition" because requiring "[s]uch specificity would prove too onerous, and perhaps, impossible." *Id.*

Here, there is no doubt that grantees must comply with the Nondiscrimination/DEI Condition. Plaintiffs have identified no ambiguity about whether they are subject to the condition; that is why they filed this lawsuit. While the COPS Office requires recipients to certify that any DEI programs they operate comply with anti-discrimination law, Plaintiffs cannot plausibly argue that this certification is impermissible given that it is subsumed within the broader certification prohibiting funding recipients from operating *any* programs that violate federal anti-discrimination law. Indeed, it is unclear why Plaintiffs

believe this provision is ambiguous—they claim that "they do not know whether they are certifying to compliance with those laws as written by Congress and long interpreted by the courts—or to the Executive Branch's views and purported guidance." Mot. at 14-15. But that argument ignores Congress's express requirements for recipients to comply with federal anti-discrimination law and for agencies to effectuate that law when awarding federal funding. 42 U.S.C. §§ 2000d, 2000d-1. The consequences of failing to follow anti-discrimination laws, such as an investigation into False Claims Act liability, *see* Mot. at 14, does not make the requirement to comply ambiguous. *Cf. Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (courts apply "plain, nonabsurd meaning" of a statute "even if . . . the words lead to a harsh outcome").

Next, Plaintiffs argue that the Nondiscrimination/DEI Condition is "antithetical to an animating goal of the Community Policing Act[.]" Mot. at 19. But there is no conflict between the Nondiscrimination/DEI Condition and the statute's directive that grant recipients, "to the extent practicable" "seek, recruit, and hire members of racial and ethnic minority groups and women." 34 U.S.C. § 10382(c)(11). Indeed, the Nondiscrimination/DEI Condition simply ensures that grant recipients will comply with anti-discrimination law (as the recipients are independently required to do)—in no way does the Nondiscrimination/DEI Condition prevent grant recipients from hiring "members of racial and ethnic minority groups and women." *Id.* In any event, the reasonable relation requirement is a "low-threshold," *Becerra*, 284 F. Supp. 3d at 1034, and "not demanding." *Barr*, 929 F.3d at 1175. The Supreme "Court has never struck down a condition on federal grants based on th[e] relatedness prong." *Id.*

There is no need for this Court to break new ground, as agencies have long applied grant conditions like the Nondiscrimination/DEI Condition to further all manner of purposes and objectives. *See, e.g.*, 2 C.F.R. § 200.303(b) (requiring all recipients of federal grants to "[c]omply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award"). The conditions here simply prevent the expenditure of federal funds on activities that violate the law. *Cf. State v. Dep't of Just.*, 951 F.3d 84, 107 (2d Cir. 2020) ("[T]here is something disquieting in the idea of States and localities seeking federal funds to enforce their own laws while themselves hampering the enforcement of federal laws, or worse, violating those laws.").

### (iii)    The Nondiscrimination/DEI Condition Is Not Impermissibly Vague

Plaintiffs invoke the vagueness doctrine under the Fifth Amendment's due process clause. Mot. at

13-15. However, the vagueness doctrine—and the Due Process Clause generally—does not apply in this context for multiple threshold reasons, and even if the Court were to reach the merits, there is no violation.

The Due Process Clause's vagueness doctrine—which traditionally "guarantees that ordinary people have 'fair notice' of the conduct *a statute* proscribes," *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) (plurality op.) (emphasis added)—has no application here in a case about take-them-or-leave-them federal funding conditions. When courts have applied the doctrine outside of the statutory context, they have done so with respect to direct regulation of primary conduct. *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." (citation omitted)). That is because the Due Process Clause prohibits uneven enforcement of coercive sanctions, not the discretion to affirmatively fund the work of grant recipients. *See Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 589 (1998) ("when the Government is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe"). No vagueness concerns arise in this context.

Plaintiffs also fail to establish a protectable property interest, as is required to bring a Due Process Claim. "The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire'" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) (citation omitted). Applying these principles, the Supreme Court has identified a narrow set of government benefits, so-called "new property," that are protected under the Due Process Clause. *See Perry v. Sindermann*, 408 U.S. 593 (1972) (tenured teaching position); *Goldberg v. Kelly*, 397 U.S. 254 (1970) (welfare benefits); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972) (collecting cases). The Due Process protections afforded to this set of entitlement-like benefits, however, have not been extended to "'ordinary' or 'routine' government contracts." *See generally Eloyan v. United States*, No. 19-cv-9565, 2020 WL 7382316, at *5-6 (C.D. Cal. Oct. 21, 2020). Such an extension would be particularly inappropriate in the grant context where agencies, by regulation, may generally terminate a grant at any time if they determine the grant "no

longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4).

Even setting all that aside, Plaintiffs cannot establish a due process vagueness claim. The Nondiscrimination/DEI Condition to which Plaintiffs object simply requires compliance with existing federal law. Such a condition, incorporating sources of law with which Plaintiffs are already generally required to comply, cannot be facially vague. *See, e.g.*, *Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61, 94-96 (D.D.C. 2025) (rejecting vagueness challenges to DEI—and gender ideology—executive orders that "tells agencies to cancel equity related agreements in accordance with the law, not whenever they see fit").

While Plaintiffs contend that the administration "has made [its] hostility to DEI abundantly clear," such purported hostility alone does not justify facial invalidation. *See Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002) ("The mere possibility that some agency might make a legally suspect decision to award a contract *or to deny funding for a project* does not justify an injunction against enforcement of a policy that, so far as the present record reveals, is above suspicion in the ordinary course of administration." (emphasis added)); *Nat'l Urban League*, 783 F. Supp. 3d at 95 (a vagueness challenge will not succeed just because "an agency might 'exercise[] [its] discretion unlawfully' under this provision"; the question is "instead whether anything in the provision prevent[s] the agency from doing so," and that standard is met for directives that require accordance with the law). The Court does not assume in advance that Defendants will adopt unlawful interpretations of existing laws. *See, e.g.*, *Cruz v. Bondi*, 146 F.4th 730, 739 (9th Cir. 2025) (discussing presumption of regularity).

### 2.    The EO Condition And The Federal Funding Restrictions Are Constitutional

Plaintiffs' challenges to the EO Condition and Federal Funding Restrictions (all of which are based on national and administration policies announced through executive orders) are similarly misguided. The COPS Office included within its grant conditions a requirement that all recipients comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President. AR-0158, 196, 281, 344, 411, 464, 524. Here, Plaintiffs again argue that the EO Condition and the Federal Funding Restrictions violate the "Separation of Powers," the Spending Clause, and the Due Process Clause. These arguments lack merit.

### (i)  The EO Condition And The Federal Funding Restrictions Do Not Violate The "Separation of Powers"

Like the Nondiscrimination/DEI Condition, Plaintiffs' challenge to the COPS Office's ability to impose the EO Condition and the Federal Funding Restrictions is a statutory claim disguised as a constitutional one precluded by the Supreme Court's decision in *Dalton*, so the claim fails on that basis alone.

But, in any event, the COPS Office is required to incorporate into the terms of its grants "national policy requirements," including those flowing from "executive order[s]." 2 C.F.R. § 200.211(c)(1)(ii); *see* also 2 C.F.R. § 200.300. There is nothing new about these grant requirements; the EO Condition and the Federal Funding Restrictions here are lawful and within the COPS Office's authority.

### (ii)  The EO Condition And The Federal Funding Restrictions Do Not Violate The Spending Clause

The EO Condition and the Federal Funding Restrictions do not violate the Spending Clause because they are unambiguous and related to the purpose of the grants. To start, these conditions are unambiguous. Like COPS Office grant conditions issued in prior years, the EO Condition and the Federal Funding Restrictions merely require Plaintiffs to comply with executive orders in the same manner as they would have to follow any changes to federal statutes or regulations or intervening court decisions. The EO Condition and the Federal Funding Restrictions here are as clear as those prior requirements and readily satisfy the Spending Clause standard. *See Mayweathers*, 314 F.3d at 1067.

Plaintiffs claim that they do not know which executive orders are encompassed within the EO Condition because "there are no discernable criteria as to what 'applicable' includes." Mot. at 15-16. But such conditions, incorporating sources of law with which Plaintiffs are already generally required to comply, cannot be facially vague. *See, e.g.*, *Nat'l Urban League*, 783 F. Supp. 3d at 94-96 (rejecting vagueness challenges to DEI—and gender ideology—executive orders that "tells agencies to cancel equity related agreements in accordance with the law, not whenever they see fit"). Indeed, the EO Conditions "do[] not place upon a recipient any unanticipated burdens because any recipient must anticipate having to comply with the law," even as federal law shifts when Congress passes laws or the Supreme Court interprets laws differently. *Guardian Ass'n*, 463 U.S. at 630 (Marshall, J., dissenting).

The EO Condition and the Federal Funding Restriction surpass the "low-threshold" of being reasonably related to the purpose of expenditure. *See Becerra*, 284 F. Supp. 3d at 1034. The COPS Office is required to ensure that all grants comply with federal law, and the EO Condition and the Federal Funding Restrictions are another way to ensure that requirement is met.

### (iii) The EO Condition And The Federal Funding Restrictions Do Not Violate The Due Process Clause

As a threshold matter, Plaintiffs' due process clause challenges do not apply to the discretionary grant programs at issue in this case. But even assuming the due process clause could apply in this context, neither the EO Condition nor the Federal Funding Restrictions are unconstitutionally vague, as discussed in more depth above.

### C. The Challenged Conditions Do Not Violate The APA

#### 1. Plaintiffs' Grant Awards Are Not Reviewable Because They Are Committed To Agency Discretion

Plaintiffs cannot prevail on their APA claim because the grant awards at issue are discretionary. Plaintiffs thus fail to demonstrate that there are standards for the Court to apply in reviewing the Nondiscrimination/DEI Condition, the EO Condition, and the Federal Funding Restrictions for these discretionary grants.

Ordinarily, for discretionary grants, agencies are free to reject applications in what is a competitive process. And "before any review at all may be had, a party must first clear the hurdle of § 701(a)," *Heckler v. Chaney*, 470 U.S. 821, 828 (1985), which precludes review under the APA if the challenged agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Under § 701(a)(2), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. "In such a case," the relevant statutory provision "can be taken to have committed the decisionmaking to the agency's judgment absolutely." *Id*. (internal quotation marks omitted).

An agency's allocation of appropriated funds is typically and presumptively committed to agency discretion by law because "the very point . . . is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way."

*Lincoln v. Vigil*, 508 U.S. 182, 192 (1993); *see Milk Train, Inc. v. Veneman*, 310 F.3d 747, 748-51 (D.C. Cir. 2002); *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013); *Serrato v. Clark*, 486 F.3d 560, 568-70 (9th Cir. 2007). This is why agency grant-award decisions are presumptively unreviewable. *See Lincoln*, 508 U.S. at 191-92 (including "allocation of funds from a lump-sum appropriation" among the "administrative decision[s] traditionally regarded as committed to agency discretion" that have been held "to be presumptively unreviewable"); *see also Milk Train, Inc.*, 310 F.3d at 750–51 (applying *Lincoln* in the context of non-lump-sum appropriations).

Plaintiffs cannot overcome the presumption that the Nondiscrimination/DEI Condition, the EO Condition, and the Federal Funding Restrictions—which merely reiterate that recipients must comply with federal anti-discrimination law and executive orders—are unreviewable for these discretionary grants. No statutory provision limits the COPS Office's discretion to issue funding, much less do the statutes prevent requiring compliance with federal anti-discrimination law or Executive Branch policy directives, making those decisions presumptively unreviewable. *Cf. Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018) (holding that decision to stop funding and recompete the funds is a "presumptively unreviewable" type of agency action, but holding that a denial to continue funding without explanation was arbitrary and capricious under the APA).

### 2.    Plaintiffs' APA Claim Also Fails On The Merits

Plaintiffs' initial APA argument parrots Plaintiffs' earlier claims that the COPS Office exceeded its statutory authority to implement the Challenged Conditions. Mot. at 18-19. But that is wrong. As discussed above, the COPS Office is required to enforce all federal anti-discrimination laws and is obligated, by regulation, to require recipients of federal grant funding to follow executive orders.

The COPS Office's implementation of the Challenged Conditions was also not arbitrary or capricious. Mot. at 19-21. Judicial review under the APA's arbitrary-and-capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). That review is "narrow." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). All that is required is for the agency to "act[] within a zone of reasonableness." *Prometheus*, 592 U.S. at 423; *Barr*, 929 F.3d at 1181 ("The agency need provide only a minimal level of analysis to avoid its action being deemed arbitrary and capricious"). Here,

given the agency's discretion to impose appropriate terms and conditions on the receipt of federal funds, and general grantmaking requirements that the recipients of such funds follow federal law, the adoption of grant conditions that require recipients to certify their compliance with executive orders and federal anti-discrimination laws can hardly be considered arbitrary or capricious. *See Barr*, 929 F.3d at 1182 (rejecting APA arbitrary and capricious challenge to COPS grant programs and holding that "the wisdom of DOJ's policy is not an element of our arbitrary and capricious review").

Plaintiffs argue otherwise based on the mistaken premise that the "Challenged Conditions effect a radical change in the conditions applicable to COPS Grants" and that Plaintiffs have a reliance interest on COPS Office grants to serve critical public safety needs. Mot. at 20-21. But although the COPS Office's grant conditions may have been worded differently in the past, the Challenged Conditions are not new, nor do they constitute a "radical change" in conditions applicable to COPS Office grants. As discussed above, the Nondiscrimination/DEI Condition simply requires Plaintiffs to certify compliance with otherwise applicable anti-discrimination law. Further, Plaintiffs' claim that they have a reliance interest in "COPS Grants to serve critical public safety needs" is a red herring. Mot. at 21. The issue is not whether Plaintiffs have a reliance interest in federal funding—Plaintiffs unquestionably are free to accept the awarded federal funding in this case.[1] Instead, the issue is whether Plaintiffs have a right to accept federal funds while violating federal anti-discrimination laws; Plaintiffs have no such right or reliance interest. Plaintiffs also do not explain what reliance interest they could have in being able to violate executive orders while participating in programs funded by the federal government. Any harm to the public safety of Plaintiffs' communities due to their choice to not accept federal funds with appropriate conditions is not caused by the federal government. *See* Mot. at 22 (arguing that Defendants did not consider "the disastrous consequences to community policing, public safety, and officer wellness). Instead, any harm here is self-inflicted if Plaintiffs choose not to accept the awarded funds.

**D.    The Court Denies Plaintiffs' Request For Judicial Notice**

The court denies Plaintiffs' Request for Judicial Notice (ECF No. 56, "Plaintiffs' Request for

---

[1] In any event, each of the four grant programs at issue are competitive and discretionary, and Plaintiffs thus cannot reasonably argue that they have a reliance interest in funds that are "fraught with unpredictability due to the competitive nature of the grant application process." *City of Chelsea v. Trump*, No. 25-10442, 2025 WL 2807831, at *7 (D. Mass. Oct. 2, 2025).

Judicial Notice"), which seeks to submit for Court consideration (1) a memorandum dated July 29, 2025 from then-Attorney General Pamela Bondi ("Bondi Memo") and (2) a memorandum dated May 19, 2025 from then-Deputy Attorney General Todd Blanche ("Blanche Memo"). Neither the Bondi Memo nor the Blanche Memo are properly subject to judicial notice in this APA review case.

First, the Bondi and Blanche Memos are not part of the agency's certified administrative record. ECF Nos. 53 & 54. As a result, it is presumed that the Bondi and Blanche Memos *are not* part of the "whole record" that is subject to this Court's review. *See* 5 U.S.C. § 706. The whole record administrative record "is ordinarily 'the record the agency presents.'" *Blue Mts. Biodiversity Project v. Jeffries*, 99 F.4th 438, 444-45 (9th Cir. 2024) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985)). "[A]n agency's statement of what is in the record is subject to a presumption of regularity." *Id.* (quoting *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021)). As a result, "barring clear evidence to the contrary," courts should "presume that an agency properly designated the Administrative Record." *Id.* (citation and quotation marks omitted). Accordingly, in APA review cases, "judicial review is generally limited to the administrative record, which is the agency's compilation of all the materials before it when it made the decision." *Cardona v. United States Dist. Court (In re United States Dep't of Educ.)*, 25 F.4th 692, 700 (9th Cir. 2022); *see also San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) ("In general, a court reviewing agency action under the APA must limit its review to the administrative record"); *Fence Creek Cattle Co. v. U.S.F.S.*, 602 F.3d 1125, 1131 (9th Cir. 2010) (same).

Second, to the extent Plaintiffs seek to expand this Court's review to materials beyond the agency's certified administrative record, they do not meet their burden of demonstrating that an exception to the general rule applies. *See San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 992-93 (exceptions to the general rule limiting judicial review to the certified administrative record "are to be narrowly construed, and the party seeking to admit extra-record evidence initially bears the burden of demonstrating that a relevant exception applies"). Here, Plaintiffs' Request for Judicial Notice does not even attempt to demonstrate the narrowly construed exceptions to the general rule. *Compare id.* at 992 (discussing narrow exceptions) *with* ECF No. 56.

Finally, even if Plaintiffs' attempt to supplement the administrative record were procedurally proper and sufficiently supported, the Bondi Memo and the Blanche Memo both post-date the COPS Office's

imposition of the Challenged Conditions in this case, and it is thus impossible for those materials to have been considered by agency decision-makers while formulating the agency action. *See Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989) (the "whole record" includes "all documents and materials directly or indirectly considered by agency decision-makers") (emphasis removed). "[A]gency action must be examined by scrutinizing the administrative record at the time the agency made its decision." *Asarco, Inc. v. E.P.A.*, 616 F.2d 1153, 1159 (9th Cir. 1980); *Sw. Ctr. for Biological Diversity v. U.S.F.S.*, 100 F.3d 1443, 1450 (9th Cir. 1996) ("Judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision"). "This rule ensures that the reviewing court affords sufficient deference to the agency's action." *San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 992. And when "a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Asarco*, 616 F.2d at 1160. Here, the NOFOs for each of the four discretionary grants at issue in this case were released before either the Bondi Memo or the Blanche Memo were in existence. AR-0001, 0036, 0077, 113. As a result, neither the Bondi Memo nor the Blanche Memo could have been considered either "directly or indirectly" by the agency's decision-makers when they issued the NOFOs with the Challenged Conditions. Simply stated, the Bondi Memo and the Blanche Memo are wholly immaterial to this Court's APA review of the agency's actions.

**IV.    Conclusion**

For the foregoing reasons, the Court denies Plaintiffs' motion for summary judgment and grants Defendants' cross-motion for summary judgment. The Court further denies Plaintiffs' request for judicial notice.

Dated: _____          _____

THE HONORABLE JAMES DONATO