DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
KARUN A. TILAK, SBN 323939
JESSE E. LANIER, SBN 303395
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, CA 94102-5408
Telephone: (415) 554-4223
Facsimile: (415) 437-4644
E-Mail: Karun.Tilak@sfcityatty.org
        Jesse.Lanier@sfcityatty.org

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

*[additional counsel on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; CITY OF TUCSON; and CITY OF SAN DIEGO <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in her Official Capacity; OFFICE OF COMMUNITY ORIENTED POLICING SERVICES; and CORY D. RANDOLPH, in his official capacity, <br><br> Defendants. | Case No. 25-cv-09277-JD <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> Date: August 20, 2026 <br> Time: 10:00 a.m. <br> Judge: Hon. James Donato <br> Place: Courtroom 11, 19th Floor <br><br> Date Filed: October 28, 2025 <br> Trial Date: None Set |

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

I.    The Tucker Act Does Not Divest This Court of Jurisdiction. ...............................1

II.   The Court Is Entitled to Consider the July Bondi Memo and the Civil Rights Fraud Initiative Memo in Evaluating Plaintiffs' Claims...........................................1

III.  Defendants Do Not Contest That Plaintiffs Will Suffer Irreparable Harm If the Challenged Conditions Are Enforced. ....................................................................4

IV.   The Court Has Already Ruled the Challenged Conditions Violate the APA Because the Community Policing Act Does Not Authorize Defendants to Impose Them. ......................................................................................................4

A.    This Court Has Already Ruled Plaintiffs' Claims Are Subject to Judicial Review. ........................................................................................4

B.    This Court Has Already Ruled the Conditions Are Not Authorized by Statute. .....................................................................................................5

V.    The Challenged Conditions Are Also Unconstitutional. ........................................8

A.    The Challenged Conditions Violate the Separation of Powers....................8

1.    Plaintiffs' Separation-of-Powers Claim Is Constitutional Under *Murphy Co.* ....................................................................................8

2.    Congress Did Not Authorize Defendants to Impose Any of the Conditions. ......................................................................................9

B.    The Challenged Conditions Violate the Spending Power and Due Process Clause. .........................................................................................9

1.    Spending Power Constraints Apply. .................................................9

2.    Due Process Applies. ......................................................................10

3.    The Challenged Conditions Are Vague and Ambiguous—and Therefore Run Afoul of Both the Spending Power and the Due Process Clause. .............................................................................11

4.    The Challenged Conditions Are Unrelated to Community Policing. .......................................................................................13

VI.   The Challenged Conditions Are Arbitrary and Capricious and Violate the APA for This Separate Reason. ......................................................................................14

VII.  Vacatur and Permanent Injunction Are Appropriate and Necessary Remedies. ...15

CONCLUSION....................................................................................................................15

FILER'S ATTESTATION....................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*
155 F.4th 1082 (9th Cir. 2025) ......................................................................................................3

*Am. Fed'n of Tchrs. v. Dep't of Educ.*
796 F. Supp. 3d 66 (D. Md. 2025) ...............................................................................................11

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*
548 U.S. 291 (2006) .....................................................................................................................11

*ASSE Int'l, Inc. v. Kerry*
803 F.3d 1059 (9th Cir. 2015) .......................................................................................................5

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*
295 F.3d 28 (D.C. Cir. 2002) .......................................................................................................11

*Board of Education for Silver Consolidated Schools v. McMahon*
791 F. Supp. 3d 1272 (D.N.M. 2025) ..........................................................................................10

*California v. U.S. Dep't of Homeland Sec.*
612 F. Supp. 3d 875 (N.D. Cal. 2020) ...........................................................................................2

*California v. U.S. Dep't of Health & Hum. Servs. (HHS)*
No. 25-2165, 2026 WL 1557438 (1st Cir. June 2, 2026) .............................................................11

*California v. United States Dep't of Health and Human Servs.*
811 F. Supp. 3d 183 (D. Mass. 2025) ..........................................................................................11

*Chaly-Garcia v. United States*
508 F.3d 1201 (9th Cir. 2007) .......................................................................................................6

*City & Cnty. of San Francisco v. Barr*
965 F.3d 753 (9th Cir. 2020) .......................................................................................................13

*City & Cnty. of San Francisco v. Sessions*
349 F. Supp. 3d 924 (N.D. Cal. 2018) .........................................................................................13

*City & Cnty. of San Francisco v. Trump*
25-cv-01350, 2025 WL 1738675 (N.D. Cal. June 23, 2025) .......................................................14

*City & Cnty. of San Francisco v. Trump*
897 F.3d 1225 (9th Cir. 2018) .......................................................................................................8

*City of Fresno v. Turner* ("*Fresno I*")
No. 25-CV-07070-RS, 2025 WL 2469330 (N.D. Cal. Aug. 27, 2025) ........................................12

*City of Fresno v. Turner* (*Fresno II*)
25-CV-07070-RS, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025) ...........................7, 8, 14, 15

*City of Los Angeles v. Barr* ("*Barr I*")
   929 F. 3d 1163 (9th Cir. 2019) ...............................................................................9

*City of Los Angeles v. Barr*
   941 F.3d 931 (9th Cir. 2019) .................................................................................9

*City of Seattle v. Trump*
   808 F. Supp. 3d 1204 (W.D. Wash. 2025).............................................................7

*Cnty. of Santa Clara v. Noem*
   815 F. Supp. 3d 979 (N.D. Cal. 2025) ............................................................ passim

*Cnty. of Santa Clara v. Trump*
   267 F. Supp. 3d 1201 (N.D. Cal. 2017) .................................................................2

*Cruz v. Bondi*
   146 F.4th 730 (9th Cir. 2025) ..............................................................................10

*Dalton v. Specter*
   511 U.S. 462 (1994)...........................................................................................8, 9

*DeHoog v. Anheuser-Busch InBev SA/NV*
   899 F.3d 758 (9th Cir. 2018) .................................................................................2

*Eloyan v. United States*
   No. 19-cv-9565, 2020 WL 7382316 (C.D. Cal. Oct. 21, 2020) .................................11

*FCC v. Fox Television Stations, Inc.*
   567 U.S. 239 (2012)..............................................................................................10

*Goldberg v. Kelly*
   397 U.S. 254 (1970)..............................................................................................10

*Grayned v. City of Rockford*
   408 U.S. 104 (1972)..............................................................................................10

*Housing Authority of City & Cnty. of San Francisco v. Turner*
   No. 25-CV-08859-JST, 2025 WL 3187761 (N.D. Cal. Nov. 14, 2025)........................... passim

*Lands Council v. Powell*
   395 F.3d 1019 (9th Cir. 2005) ...............................................................................3

*Lee v. City of Los Angeles*
   250 F.3d 668 (9th Cir. 2001) .................................................................................2

*Lincoln v. Vigil*
   508 U.S. 182 (1993)................................................................................................5

*Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*
   729 F.3d 1025 (9th Cir. 2013) ...............................................................................5

*Martin Luther King Jr. Cnty. v. Trump* ("*King Cnty. I*")
  785 F. Supp. 3d 863 (W.D. Wash. 2025)...........................................................................7, 14, 15

*Martin Luther King, Jr. Cnty. v. Turner*
  798 F. Supp. 3d 1224 (W.D. Wash. Aug. 12, 2025)....................................................................6

*Mayweathers v. Newland*
  314 F.3d 1062 (9th Cir. 2002) ...............................................................................................10, 12

*Milk Train, Inc. v. Veneman*
  310 F.3d 747 (D.C. Cir. 2002).......................................................................................................5

*Murphy Co. v. Biden*
  65 F.4th 1122 (9th Cir. 2023) ........................................................................................................ 9

*Nat'l Endowment for the Arts v. Finley*
  524 U.S. 569 (1998)......................................................................................................................10

*Nat'l Urban League v. Trump*
  783 F. Supp. 3d 61 (D.D.C. 2025).................................................................................................11

*New York v. National Science Foundation*
  793 F.Supp. 3d 562 (S.D.N.Y. 2025) .............................................................................................8

*Novedades y Servicios, Inc. v. Fin. Crimes Enf't Network*
  785 F. Supp. 3d 785 (S.D. Cal. 2025)............................................................................................3

*Pennhurst State Sch. & Hosp. v. Halderman*
  451 U.S. 1 (1981)...................................................................................................................11, 13

*Perry v. Sindermann*
  408 U.S. 593 (1972)......................................................................................................................10

*Policy & Research, LLC v. United States Dep't of Health & Hum. Servs.*
  313 F. Supp. 3d 62 (D.D.C. 2018)..................................................................................................5

*Rueda Vidal v. U.S. Dep't of Homeland Sec.*
  536 F. Supp. 3d 604 (C.D. Cal. 2021) ...........................................................................................2

*San Francisco A.I.D.S. Found. v. Trump*
  786 F. Supp. 3d 1184 (N.D. Cal. 2025)...................................................................................10, 11

*San Francisco Unified Sch. Dist. v. AmeriCorps* ("*AmeriCorps I*")
  789 F. Supp. 3d 716 (N.D. Cal. 2025)..................................................................................9, 10, 12, 13

*Serrato v. Clark*
  486 F.3d 560 (9th Cir. 2007) .........................................................................................................5

*Sessions v. Dimaya*
  584 U.S. 148 (2018).......................................................................................................................10

*Thakur v. Trump*
    163 F.4th 1198 (9th Cir. 2025) ..................................................................................................1

*The Bd. of Regents of State Colls. v. Roth*
    408 U.S. 564 (1972)..................................................................................................................10

*Town of Castle Rock v. Gonzalez*
    545 U.S. 748 (2005)..................................................................................................................10

**Statutes**

5 U.S.C.
    § 701(a)(2) .................................................................................................................................5
    § 706(2)(B) ...............................................................................................................................14
    § 706(2)(C) ..............................................................................................................................3, 8

42 U.S.C.
    § 2000d .......................................................................................................................................7

**INTRODUCTION**

Defendants forthrightly admit that many arguments in their brief have already been considered and rejected by this Court.  Def.s' Opp'n to Pls' Mot. for Summ. J., Dkt. 59 (Opp.) at 5.  There is nothing new—no document in the Administrative Record or citation to legal authority—that warrants revising the Court's previous, correct reasoning when it granted Plaintiffs' motion for preliminary injunction.[1]  Plaintiffs therefore request the Court grant summary judgment on each of their six claims and deny Defendants' cross-motion for summary judgment in its entirety.

**ARGUMENT**

**I.      The Tucker Act Does Not Divest This Court of Jurisdiction.**

As this Court has already ruled, the Tucker Act is "not a bar to the Court's jurisdiction over this lawsuit.  Plaintiffs' case is rooted in statutory and constitutional commands, not in contract law." Order Regarding Prelim. Inj., Dkt. No. 49 (Order) at 8-9.  "This is not a lawsuit that seeks to enforce contractual obligations," nor is it a lawsuit that challenges the termination of grant awards, and, accordingly, "Plaintiffs' claims are not 'disguised breach-of-contract claim[s]' that are subject to the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act." *Id.* at 9 (citing *Thakur v. Trump*, 163 F.4th 1198, 1204 (9th Cir. 2025) (quotations omitted)).  At the preliminary injunction hearing, Defendants conceded that the Tucker Act did not apply if Plaintiffs did not seek an order commanding the federal government to pay money owed under grant agreements.  Tr. of Prelim. Inj. Hr'g, Dkt. No. 41 (Prelim. Inj. Hr'g ) at 7:3-8, and 7:15-22 ("If all [Plaintiffs are] seeking is an injunction against the challenged conditions, then I think I would agree that the Court has jurisdiction to consider that.").  As Plaintiffs explained during that hearing, that was precisely the relief Plaintiffs sought, and it is precisely the relief (along with vacatur) Plaintiffs seek now.  Accordingly, the Tucker Act remains inapplicable.

**II.     The Court Is Entitled to Consider the July Bondi Memo and the Civil Rights Fraud Initiative Memo in Evaluating Plaintiffs' Claims.**

Defendants are evidently wary[2] of having this Court consider the July Bondi Memo and the

---

[1] Plaintiffs use the shorthand defined in their opening brief.

[2] Defendants did not contest Plaintiffs' request for judicial notice of the July Bondi Memo or the Civil Rights Fraud Initiative Memo at the preliminary injunction stage.  Pls' Reply in Support of Mot. For

Civil Rights Fraud Initiative Memo (collectively, the DOJ Memos or the Memos).  The July Bondi Memo in particular reveals the degree to which the Department of Justice's (DOJ) interpretation of nondiscrimination and civil rights law has doglegged from decades of precedent and is at odds with the Community Policing Act's mandate.  *See* Order at 7, 11-12.  Yet, in attempting to direct the Court's attention away from the Memos, Defendants conflate two distinct issues—first, whether to take judicial notice of these documents and, second, whether it is appropriate for the Court to consider those documents in its analysis.

As to the first question, as explained in Plaintiffs' request for judicial notice, the DOJ Memos are judicially noticeable because each is an agency-wide, public-facing memorandum.  Reqs. for Judicial Notice, Dkt. Nos. 21, 58 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 n.5 (9th Cir. 2018), and *Cnty. of Santa Clara v. Trump*, 267 F. Supp. 3d 1201, 1217 n.11 (N.D. Cal. 2017) (taking judicial notice of memorandum prepared by DOJ official)).  Plaintiffs have met their burden to substantiate judicial notice.  *See Cnty. of Santa Clara v. Noem*, 815 F. Supp. 3d 979, 1018 n.7 (N.D. Cal. 2025) (taking judicial notice of a memorandum written by then-Attorney General Pamela Bondi).

As for the second question, it is entirely appropriate for the Court to consider the DOJ Memos in at least some of its analysis.  The Court, for instance, is not confined to the Administrative Record in its analysis of Plaintiffs' constitutional claims (First through Third Causes of Action).  *See California v. U.S. Dep't of Homeland Sec.*, 612 F. Supp. 3d 875, 895 (N.D. Cal. 2020) ("It follows, therefore, that if plaintiffs have a constitutional claim that exists outside of the APA, then the APA's administrative record requirement does not govern the availability of discovery."); *Rueda Vidal v. U.S. Dep't of Homeland Sec.*, 536 F. Supp. 3d 604, 612-13 (C.D. Cal. 2021) (judicially noticing documents outside of the administrative record for analysis of constitutional claims and APA claim based on lack of constitutional authority); *Santa Clara v. Trump*, 267 F. Supp. 3d at 1215-18 (considering judicially noticed documents in analysis of constitutional claims).  And, if the Court determines that Plaintiffs are entitled to judgment as a matter of law on any one of Plaintiffs' constitutional claims, Plaintiffs

Prelim. Inj., Dkt. No. 35 (Reply) at 1, n.2.  The Court did not expressly rule on Plaintiffs' request—but the Court cited the July Bondi Memo in its reasoning.  *See* Order at 7.

also prevail in tandem on their APA claim predicated on constitutionality. For this reason, it is also appropriate for the Court to consider the Memos in its analysis of Plaintiffs' Fifth Cause of Action.

Moreover, as Plaintiffs argued in their opening brief, the Court is not limited to review of the Administrative Record for *ultra vires* challenges. Pls' Mot. For Summ. J., Dkt. No. 57 (Mot.) at 10 (quoting *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 155 F.4th 1082, 1093 (9th Cir. 2025)). Plaintiffs' Sixth Cause of Action, one of their three APA claims, is based on allegations that Defendants exceeded their statutory authority in imposing the Challenged Conditions—in other words, that Defendants' actions were *ultra vires*. *See Novedades y Servicios, Inc. v. Fin. Crimes Enf't Network*, 785 F. Supp. 3d 785, 802 (S.D. Cal. 2025) (describing 5 U.S.C. § 706(2)(C) claim as an "*ultra vires*"-style claim). The Court may therefore also consider the DOJ Memos in its analysis of Plaintiffs' Sixth Cause of Action.

That leaves only the question of whether the Court may consider the Memos in its analysis of Plaintiffs' Fourth Cause of Action, which alleges the Challenged Conditions were arbitrary and capricious under the APA. First, Defendants' rationale for excluding the DOJ Memos from the Court's consideration is that the Memos post-date the NOFOs. This is inconsistent with Defendants' prior positions. Defendants conceded in their preliminary injunction briefing and at the hearing that the final agency action at issue is the decision to include the Challenged Conditions in the grant awards. Order at 10, n.5 (citing Prelim. Inj. Hr'g at 10:12-20). The final agency action at issue is not, in other words, the issuance of any of the NOFOs inviting local governments to apply for grants. The dates of the NOFOs are therefore immaterial to determining which documents should be included in the Administrative Record. Further, multiple materials Defendants inserted into the Administrative Record—including, for instance, Plaintiffs' grant applications, grant awards, and the DOJ Grants Financial Guide—post-date the NOFOs. AR228-537, 861-1010. Finally, while it is true that, "general[ly]" speaking, judicial review of an agency decision is limited to the administrative record defendants compile, there are circumstances under which it is appropriate for a court to review additional documents. *Lands Council v. Powell*, 395 F.3d 1019, 1029-30 (9th Cir. 2005). Those exceptions are: (i) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (ii) if "the agency has relied on documents not in the

record," (iii) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (iv) "when plaintiffs make a showing of agency bad faith." *Id.* at 1030. The DOJ Memos satisfy at least the second exception: The DOJ relied on the Memos when issuing the grant awards at issue here. The Memos were published in May and July of 2025. They were penned by the then-Attorney General and her then-Deputy, concern subject matter of the Challenged Conditions, and pre-date the grant awards (which Defendants have conceded mark the final agency actions at issue). It is exceedingly unlikely, bordering on incredible, that Defendants did not consider these missives when deciding to include the Challenged Conditions in grant awards issued in October of the same year.

At minimum, the Court should take judicial notice of these documents and consider them in its analysis of Plaintiffs' three constitutional claims and of Plaintiffs' *ultra vires* and constitutional APA claims.

**III.    Defendants Do Not Contest That Plaintiffs Will Suffer Irreparable Harm If the Challenged Conditions Are Enforced.**

In their opening brief, Plaintiffs explained the ways in which they will suffer irreparable harm if the Challenged Conditions are enforced. Mot. at 8-9, 23-25. Defendants make no argument that Plaintiffs will not suffer irreparable harm, conceding the point. Defendants insist, however, that any resulting harm to Plaintiffs' communities is "self-inflicted." Opp. at 17-18. This glib framing skirts the untenable—and very real—dilemma Plaintiffs face. Plaintiffs cannot accept terms that violate the Constitution or the APA, terms they cannot understand, or terms that are contrary to the mandates of the Community Policing Act. Nor can Plaintiffs jeopardize the safety of their communities or the safety and wellbeing of their sworn officers by turning down the grant moneys *Defendants have already determined they should have*. Plaintiffs will suffer irreparable harm if the Challenged Conditions are enforced.

**IV.    The Court Has Already Ruled the Challenged Conditions Violate the APA Because the Community Policing Act Does Not Authorize Defendants to Impose Them.**

    **A.    This Court Has Already Ruled Plaintiffs' Claims Are Subject to Judicial Review.**

As mentioned above, in section II, Defendants have conceded that the imposition of the Challenged Conditions on Plaintiffs' Grant Awards is a final agency action. But, without citing new authority, Defendants reiterate their losing argument that Plaintiffs' claims are not subject to judicial

review because there is no "meaningful standard against which to judge the agency's exercise of discretion" of how to allocate funds and whether to award a grant to an applicant. Opp. at 15-16 (citations omitted). This argument again must fail. As this Court has already reasoned, Defendants' argument is "entirely beside the point" because Plaintiffs do not contest Defendants' decision to award Plaintiffs the grants. Order at 10. What's more, as this Court has observed, there is, contrary to Defendants' characterization, a "crystal clear" "governing standard": "It is the plain text of the Community Policing Act," which "does not give the COPS Office unfettered discretion to attach conditions of its choice to the community policing grants it makes, and this case is not one of those 'rare instances where statutes are drawn in such broad terms that . . . there is no law to apply, thereby leaving the court with no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* (quoting *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015) (quotations omitted). In sum, section 701(a)(2) does not preclude judicial review of Plaintiffs' APA claims.[3]

**B.      This Court Has Already Ruled the Conditions Are Not Authorized by Statute.**

As this Court also already held, the Challenged Conditions are untethered to any statutory authority. Order at 11-13. The Community Policing Act is the "sole statutory basis" for the COPS Grants, and the "clear and direct" language "does not reveal a basis" for the Challenged Conditions. Order at 10-11. The Challenged Conditions therefore violate the APA. *Id.* at 13.

Defendants reiterate their rejected position that the Challenged Conditions do no more than require compliance with federal law. But, as the Court has previously reasoned, Plaintiffs must follow federal law regardless of any grant conditions. Order at 12.[4] With respect to the

---

[3] *Lincoln v. Vigil*, 508 U.S. 182 (1993) does not stand for the proposition Defendnats assert. Opp. at 16. That case involved cancellation of a program funded by a lump sum. 508 U.S. at 185. Because the relevant statutes did not mention the program, the Court held "[t]he decision to terminate the Program was committed to the [agency's] discretion." *Id.* at 193-94. Defendants' remaining authorities are also unavailing. *See Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002) (involving allocation of funding, but noting that "statutory reference point" could support judicial review); *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013) (lack of specific language made action unreviewable); *Serrato v. Clark*, 486 F.3d 560, 568-69 (9th Cir. 2007) (funding from lump-sum appropriation did not indicate how it was to be used); *Policy & Research, LLC v. United States Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 75-78 (D.D.C. 2018) (involving decision not to fund grant and concluding that agency's regulations permitted review).

[4] Defendants also concede this point. Opp. at 9.

Nondiscrimination/DEI Condition and the DEI-related components of the Federal Funding Restrictions in particular, other provisions of the Grant Awards, including the Civil Rights Conditions, require Plaintiffs to comply with "applicable federal civil rights and nondiscrimination statutes and regulations including[] Section 601 of the Civil Rights Act of 1964." AR282, 286, 345, 349, 411-412, 416, 464-65, 469, 524-25, 529. The Nondiscrimination/DEI Condition and the DEI-related components of the Federal Funding Restrictions are therefore "superfluous" at best. *See Chaly-Garcia v. United States*, 508 F.3d 1201, 1204 (9th Cir. 2007) (federal common law "presum[es] that every provision was intended to accomplish some purpose, and that none are deemed superfluous").

And, of course, as this Court has previously reasoned, the Challenged Conditions purport to do far more than just require Plaintiffs to follow existing law. Order at 12-13. By themselves, but particularly in conjunction with the July Bondi Memo and many of this Administration's EOs,[5] the Nondiscrimination/DEI Condition and DEI-related components of the Federal Funding Restrictions require Plaintiffs to operate contrary to settled antidiscrimination law. As this Court observed, "[t]here is no way to reconcile the conditions with the statute short of engaging in doublethink that forbidding considerations of race and gender is the same as taking them into account." Order at 11-12. What's more, the Executive Branch's guidance not only openly maligns DEI but also "repeatedly cast[s] [the Administration] as departing drastically from the practices of prior administrations." *See Housing Authority of City & Cnty. of San Francisco v. Turne*r, No. 25-CV-08859-JST, 2025 WL 3187761, at *12 (N.D. Cal. Nov. 14, 2025) (discussing anti-DEI EOs); *Martin Luther King, Jr. Cnty. v. Turner,* 798 F. Supp. 3d 1224, 1248 (W.D. Wash. Aug. 12, 2025) (". . . Defendants interpret federal antidiscrimination laws in a manner that is inconsistent with well-established legal precedent."). The Nondiscrimination/DEI Condition therefore marks "professedly radical departures from a longstanding status quo." *See Santa Clara v. Noem*, 815 F. Supp. 3d at 1029-30 ("The current Administration's vision of what anti-discrimination means . . . [is] somewhat at odds with that precedent. . . .").

---

[5] This Court has also correctly observed that Defendants' insistence that EOs are on equal footing with statutes is misplaced. Order at 12-13. EOs published by the President do not have the full force and effect of laws passed by Congress. Mot. at 12-13 (citing cases).

Defendants next claim the Nondiscrimination/DEI Condition is lawfully imposed under federal regulations promulgated pursuant to Title VI[6] of the Civil Rights Act.  Opp. at 6-7.  Nothing in Title VI (or its implementing regulations) authorizes Defendants to impose the Nondiscrimination/DEI Condition.  *See, e.g., Santa Clara v. Noem*, 815 F. Supp. 3d at 1029-31; *City of Seattle v. Trump*, 808 F. Supp. 3d 1204, 1215-18 (W.D. Wash. 2025) (holding Title VI does not authorize prohibition of DEI); *Housing Authority*, 2025 WL 3187761, at *11 ("Congress has never authorized the Executive to use Title IX or Title VI as vehicles for prohibiting gender ideology.").  Moreover, "an agency regulation cannot create statutory authority; only Congress can do that."  *City of Fresno v. Turner*, 25-CV-07070-RS, 2025 WL 2721390, at *10 (N.D. Cal. Sept. 23, 2025) (*Fresno II*) (cleaned up); *see id.* at *15-16, 19 (finding similar conditions likely unlawful).

Defendants then argue that the Challenged Conditions perpetuate mandates handed down from the President through multiple EOs.  Opp. at 14.  But it is *Congress*, not the President, that provided the statutory authority for the COPS program, and Defendants identify no statute authorizing the Executive Branch to legislate the President's policy priorities on unrelated subjects, such as Qatar, TikTok, COVID-19 vaccines, public monuments, "gender ideology," or "environmental justice," as conditions of receiving federal grants.  *See also Martin Luther King Jr. Cnty. v. Trump*, 785 F. Supp. 3d 863, 886-87 (W.D. Wash. 2025) ("*King Cnty. I*") ("Substantive conditions implicating controversial policy matters that are unrelated to the authorizing statute . . . are simply not 'of the same kind' as conditions that require recipients to monitor and report the progress of their program.").  Defendants also point to administrative practice in "prior years" as authority to impose the EO Condition and the Federal Funding Restrictions.  Opp. at 14.  But Defendants do not—they cannot—offer any authority that prior practice can itself authorize agency action.  That the COPS Office *may* have put similar conditions in prior grant awards does not make it legal.  (And, at any rate, there are no examples in the Administrative Record of "similar conditions" purportedly included in prior grant awards.)

---

[6] Title VI prohibits discrimination "on the ground of race, color, or national origin" in "any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.

Finally, to the extent any of Defendants' arguments rely on boilerplate language limiting implementation to the contours of applicable law, such arguments must fail. *E.g., Housing Authority*, 2025 WL 3187761, at *13; *Fresno II*, 2025 WL 2721390, at *10. Such savings clauses are not "magic[]," *Housing Authority*, 2025 WL 3187761, at *13, and they may not be used to override "clear and specific language" or to "rescue" lawfulness. *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018).

Imposing grant conditions without statutory authority, as Defendants have, violates the APA. Mot. at 10-11. There is nothing in the Administrative Record necessitating a different result, and Plaintiffs are entitled to summary judgment on their APA claim that the Challenged Conditions are in excess of statutory authority (Sixth Cause of Action). *See* 5 U.S.C. § 706(2)(C).

**V.    The Challenged Conditions Are Also Unconstitutional.**

Defendants' arguments concerning Plaintiffs' constitutional claims fare no better.

**A.    The Challenged Conditions Violate the Separation of Powers.**

**1.    Plaintiffs' Separation-of-Powers Claim Is Constitutional Under *Murphy Co.***

Defendants' argument misinterprets the teachings of *Dalton v. Specter*, 511 U.S. 462 (1994), and ignores controlling Ninth Circuit precedent. Moreover, courts in the Northern District have already considered and rejected Defendants' exact argument. *See, e.g.*, *Santa Clara v. Noem*, 815 F. Supp. 3d at 1024-25; *Housing Authority*, 2025 WL 3187761, at *10.[7]

Defendants contend *Dalton* stands for the principle that a claim the President has exceeded his statutory authority is not and can never be a constitutional claim. Opp. at 8-9. But, in *Dalton*, the plaintiffs' claims were rooted solely in statutory analysis: There, the plaintiffs sought to enjoin an executive action because it violated the substantive and procedural requirements of a statute governing military base closures. *Dalton*, 511 U.S. at 466, 474. The Court held judicial review was not available because that same statute granted the President the discretion to act as he did. *Id.* at 469-72, 74.

---

[7] Defendants' out-of-circuit authority is distinguishable. As Plaintiffs pointed out in support of their motion for preliminary injunction, in *New York v. National Science Foundation*, 793 F.Supp. 3d 562, 604-07 (S.D.N.Y. 2025) (quoting *Dalton*, 511 U.S. at 474), the plaintiffs alleged solely that terminations of grants "violated the terms of various statutes."

Here, unlike in *Dalton*, the Community Policing Act provides no such discretion. Indeed, Plaintiffs allege the Community Policing Act *does not authorize Defendants to impose the Challenged Conditions*. This is a textbook separation-of-powers argument. That Plaintiffs invoke statutory doctrines to illustrate the violation of the separation of powers does not transform this dispute from a constitutional one to a statutory one. In the Ninth Circuit, a challenge to an Executive Branch action is "constitutional, and therefore judiciable" as long as the plaintiff ties the separation of powers claim to the President's lack of "statutory authority and background constitutional authority." *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023), *cert. denied* 144 S. Ct. 1111 (2024). Plaintiffs have argued precisely this. Mot. at 12-13; *Murphy*, 65 F.4th at 1130. ("While an action taken by the President in excess of his statutory authority does not necessarily violate the Constitution, specific allegations regarding separation of powers may suffice." (cleaned up)).

### 2. Congress Did Not Authorize Defendants to Impose Any of the Conditions.

Executive Branch agencies may not impose conditions on federal funding without statutory authority. *See City of Los Angeles v. Barr*, 941 F.3d 931, 945 (9th Cir. 2019). Yet this is what Defendants have done, as argued above in section IV.B. Defendants have identified no statutory or constitutional basis for imposing any of the Challenged Conditions. Nor could they: There is none. The Challenged Conditions violate the separation of powers and must fail on this independent basis.

### B. The Challenged Conditions Violate the Spending Power and Due Process Clause.

### 1. Spending Power Constraints Apply.

Defendants' argument that the Spending Clause has "no application to Executive Branch decisions" about how to expend funds appropriated by Congress is contrary to Ninth Circuit law. *See City of Los Angeles v. Barr* ("*Barr I*"), 929 F. 3d 1163, 1175 n.6 (9th Cir. 2019) (finding "no reason" that Spending Power constraints would not apply to "agency-drawn conditions on grants"). *Barr I* controls, even if Defendants contend, based solely on out-of-circuit authority, the decision "is incorrect." Opp. at 9. Courts in the Northern District have applied this reasoning recently in similar cases involving grant conditions. *See, e.g., San Francisco Unified Sch. Dist. v. AmeriCorps* ("*AmeriCorps I*"), 789 F. Supp. 3d 716, 744 (N.D. Cal. 2025) ("[T]he Spending Clause applies not

only to Congress, but the agencies implementing spending legislation."). The constraints of the Spending Power apply.[8]

### 2.    Due Process Applies.

Defendants argue that due process does not attach because Plaintiffs have no constitutionally recognized property interest in their grant awards. Opp. at 12-13. But Defendants do not attempt to engage with the opinions from courts in the Ninth Circuit that apply the Due Process Clause to conditions imposed on federal grants. See Mot. at 14-17 (citing *Housing Authority*, 2025 WL 3187761 at *13-15 (collecting cases); *Americorps I*, 789 F. Supp. 3d at 745-50 & n.12; *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1224-26 (N.D. Cal. 2025)). *Housing Authority* is particularly illustrative because the court distinguished many of the authorities upon which Defendants rely and rejected the exact arguments Defendants make here. 2025 WL 3187761 at *13-15 (noting due process does not attach only to rights created by statute or to entitlement-like benefits). Instead, Defendants once again attempt to shift focus to Defendants' discretion in determining whether to award the grants to Plaintiffs. Opp. at 12-13. As discussed, and as previously observed by this Court, that is not at issue. Order at 10. Not one of Defendants' cited authorities stands for the proposition that grant recipients do not have a property interest in grant awards they have already received.[9]

---

[8] Defendants' reliance on *Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) is inapt. In that case, the "plain language" of the statute at issue "clearly communicates" the requirements of the condition. *Id.* at 1067. *Board of Education for Silver Consolidated Schools v. McMahon*, 791 F. Supp. 3d 1272 (D.N.M. 2025), is distinguishable because the case concerned annually renewed grants that, at the appointed time, were not renewed.

[9] *Cruz v. Bondi*, 146 F.4th 730, 739 (9th Cir. 2025) discusses the presumption of regularity in the context of procedural deficiencies during an appeal following an immigration hearing. *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) ("*Dimaya*") discusses the vagueness doctrine in the context of immigration removal proceedings. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) concerns the application of this doctrine in the context of the FCC's decision to fine a broadcaster for supposed indecency. *Grayned v. City of Rockford*, 408 U.S. 104 (1972) addressed the vagueness of anti-noise and anti-picketing ordinances. *Id.* at 108-09 ("…[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."). *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 589 (1998) concerns a federal agency's determination of whether to award a grant. *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) addresses whether the petitioner, a victim of intimate partner violence, had a protectable constitutional property interest in the police's enforcement of restraining orders against her abuser. *Perry v. Sindermann*, 408 U.S. 593 (1972) analyzed whether a constitutionally protected entitlement existed with respect to a teaching position, as did *The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972). *Goldberg v. Kelly*, 397 U.S. 254 (1970) addressed whether an individual had a

### 3.    The Challenged Conditions Are Vague and Ambiguous—and Therefore Run Afoul of Both the Spending Power and the Due Process Clause.

One of the dangers of vague government enactments is that they "encourage arbitrary and discriminatory enforcement." *San Francisco A.I.D.S. Foundation*, 786 F. Supp. 3d at 1223; *see also Am. Fed'n of Tchrs. v. Dep't of Educ.*, 796 F. Supp. 3d 66, 102, 118 (D. Md. 2025) (noting vague and ambiguous requirements "leave regulated persons without proper notice of what conduct they must certify they are not engaging in, and they empower the government to enforce the [c]ertification [r]equirement arbitrarily"). Plaintiffs do not insist on clarity for its own sake:  There are significant consequences to the parties' having a different understanding of the import of the Challenged Conditions. *See* RJN Ex. B (describing penalties of False Claims Act).

Defendants argue that the requirements of a grant condition may be ambiguous—so long as it is clear to the grantee that there is a condition with which they must comply.  Opp. at 10-11.  This argument is not only based on a misreading of case law—it makes no sense.  What purpose is served by a condition that unambiguously exists and unambiguously applies to a party—*if the party charged with compliance cannot understand what the condition requires it to do*?  The purpose of the prohibition on ambiguity is to ensure that acceptance of any conditions is knowing: "[T]here can, of course, be no knowing acceptance if a State . . . is unable to ascertain what is expected of it." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (emphasis added); *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (cleaned up) (local governments "cannot knowingly accept conditions of which they are unaware or which they are unable to ascertain"); *see also California v. United States Dep't of Health and Human Servs.*, 811 F. Supp. 3d 183, 201-202 (D. Mass. 2025), appeal dismissed sub nom. *California v. U.S. Dep't of Health & Hum. Servs. (HHS)*, No. 25-2165, 2026 WL 1557438 (1st Cir. June 2, 2026) (rejecting identical argument).

---

constitutionally protected entitlement in welfare benefits.  In *Eloyan v. United States*, No. 19-cv-9565, 2020 WL 7382316, at *5-6 (C.D. Cal. Oct. 21, 2020), the district court considered whether a small business owner had a property interest in government contracts to which his business was party based on a federal agency's determination to debar the business.  And, in *Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002), Plaintiffs challenged the lawfulness of a single executive order, but did not bring a Due Process Clause claim.  Finally, *Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61, 94-96 (D.D.C. 2025) concerned prospective enforcement of discrete provisions of three EOs on existing contracts with federal agencies.  The court ruled that the plaintiffs lacked standing to challenge the vast majority of the contested EO provisions.

Moreover, Plaintiffs do not contend Defendants have failed to "list every factual instance" of noncompliance. Opp. at 10 (quoting *Mayweathers*, 314 F.3d at 1067). Plaintiffs are unable to ascertain what the Conditions *mean*. The Nondiscrimination/DEI Condition's text, especially in conjunction with the July Bondi Memo and sundry EOs, has inserted ambiguity into what it means to comply with antidiscrimination law by pronouncing DEI, including the type of diversity considerations mandated by the Community Policing Act, unlawful. When Plaintiffs certify compliance, they cannot know whether they are certifying compliance with antidiscrimination laws as written by Congress and interpreted by the courts—or with the Executive Branch's new interpretations. *See Santa Clara v. Noem*, 815 F. Supp. 3d at 1037 ("[I]t does not appear that any other President has attempted to comprehensively override understanding of federal anti-discrimination law in the way this Administration seeks to through [EOs].").[10] As this Court has noted, "[t]here is no way to reconcile the conditions with the statute short of engaging in doublethink . . . ." Order at 11. The Nondiscrimination/DEI Condition is fatally ambiguous and vague. *See Santa Clara v. Noem*, 815 F. Supp. 3d at 1034 (ruling similar condition "rife with vagueness and ambiguity" in violation of the Spending Clause); *Housing Authority*, 2025 WL 3187761 at *14-15.

The EO Condition is also vague and ambiguous. *E.g., Santa Clara v. Noem*, 815 F. Supp. 3d at 1035 ("[I]t is not clear what compliance with the EO Condition would entail, as it fails to articulate to what extent plaintiffs would be expected to adhere to President Trump's Executive Orders."); *City of Fresno v. Turner*, No. 25-CV-07070-RS, 2025 WL 2469330, at *6 (N.D. Cal. Aug. 27, 2025) ("*Fresno I*") (holding an EO condition vague in part because the Grantmaking EO and Anti-DEI EO, among other orders, "use[d] vague language"); *see also Americorps I*, 789 F. Supp 3d at 745 – 49 (finding grant conditions ambiguous because incorporated provisions of EOs, including the Anti-DEI EO, were "highly ambiguous"). It could be read to require compliance with existing, unrelated EOs, with

---

[10] Contrary to Defendants' characterization, Opp. at 11, Plaintiffs do not argue that the False Claims Act materiality component of the Nondiscrimination/DEI Condition is ambiguous or renders that Condition ambiguous. In fact, its consequences, as further underscored by the Civil Rights Fraud Initiative Memo, are *unambiguously* alarming. Mot. at 8; *see also, e.g., Santa Clara v. Noem*, 815 F. Supp. 3d at 1035 (noting ambiguities in Nondiscrimination/DEI Condition "particularly concerning" in light of the "well founded fear that the Department of Justice may use the [False Claims Act] as a weapon against grant recipients").

unlawful or unconstitutional EOs, and with EOs yet to be issued.  Defendants insist this Condition only requires Plaintiffs to comply with the law as it exists and evolves.  Opp. at 13.  But, again, EOs are not laws under the Constitution.  The Opposition also does not reconcile the EO Condition's plain language, which would encompass EOs that do not yet exist, with constitutional limits on retroactive conditions.  *See Pennhurst*, 451 U.S. at 25.  And Defendants fail entirely to address Plaintiffs' arguments concerning the undefined terms of the EOs (incorporated by reference into the Grant Awards by the EO Condition) or the Federal Funding Restrictions.  Mot. at 15-18.  In fact, Defendants pass over all of Plaintiffs' arguments concerning the ambiguities of the Federal Funding Restrictions.  These Conditions, too, are impermissibly vague and ambiguous.

### 4.    The Challenged Conditions Are Unrelated to Community Policing.

Defendants argue that the Challenged Conditions are "reasonably related" to the purpose of the federal expenditure because they require nothing more than for Plaintiffs to comply with the law.  Opp. at 14-15.  This Court should reject this argument for the reasons discussed above.  Further, there is no semblance of connection between the Challenged Conditions and the purpose of the COPS Grants.  As discussed throughout, the Nondiscrimination/DEI Condition and DEI-related components of the Federal Funding Restrictions appear to prohibit DEI.[11]  Prohibiting DEI is contrary to the requirements of the Community Policing Act, *id.*, and negates any relation to its purpose.  *Id.*; *see AmeriCorps I*, 789 F. Supp. 3d at 750 (finding anti-DEI grant conditions likely did not "bear [any] relationship" to grants whose "statutory objections . . . conflict[ed]" with the conditions); *City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 961 (N.D. Cal. 2018), *aff'd in part, vacated in part sub nom. City & Cnty. of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020) (holding that immigration enforcement conditions had no "nexus" to the purpose of funding because they "interfere[d]" with priorities of the statute).  And the EO Condition and Federal Funding Restrictions, to the extent their terms are decipherable, impose restrictions completely unrelated to assisting law enforcement with community policing through recruiting, hiring, retaining, and supporting sworn

---

[11] Plaintiffs do not argue that the Nondiscrimination/DEI Condition "prevents" the hiring of minorities and women.  Opp. at 11.  Rather, the Challenged Conditions threaten to prevent Plaintiffs from prioritizing the hiring of minorities and women as sworn officers, which the Community Policing Act requires.

officers.  Defendants have not even attempted to argue otherwise.  The Challenged Conditions violate the spending power for this independent reason.

Imposing grant conditions without constitutional imprimatur, as Defendants have done here, too, also violates the APA.  *See, e.g., Santa Clara v. Noem*, 815 F. Supp. 3d at 1039; *City & Cnty. of San Francisco v. Trump*, 25-cv-01350, 2025 WL 1738675, at *1 (N.D. Cal. June 23, 2025); *Fresno II*, 2025 WL 2721390, at *10- 12; *King Cnty. I*, 785 F. Supp. 3d at 884-88.  Defendants' arguments and authority are the same as in opposition to the motion for preliminary injunction, and there is nothing in the Administrative Record that tips the balance in the other direction.  Accordingly, in addition to being entitled to judgment as a matter of law on their constitutional claims (Causes of Action One through Three), Plaintiffs are also entitled to judgment as a matter of law on their Fifth Cause of Action.  *See* 5 U.S.C. § 706(2)(B).

## VI.    The Challenged Conditions Are Arbitrary and Capricious and Violate the APA for This Separate Reason.

Defendants fail to counter Plaintiffs' arguments that the Challenged Conditions are arbitrary and capricious.  Mot. at 19-21.  And, in an attempt to skirt the requirement to provide an explanation of their reasoning or to show Defendants considered Plaintiffs' reliance interests, Defendants insist the Challenged Conditions do not mark a "radical change."  Opp. at 17.

Defendants' position is divorced from the reality of the Executive Branch's actions. The Nondiscrimination/DEI Condition, especially in conjunction with the July Bondi Memo and multiple EOs the President has issued, characterizes DEI as unlawful.  This is the Trump Administration's new assertion of what federal law requires, as other courts have noted.  *E.g., Housing Authority*, 2025 WL 3187761, at *12 (noting Trump EOs issued by second Trump administration "repeatedly cast themselves as departing drastically from the practices of prior administrations"); *Fresno II*, 2025 WL 2721390, at *8 (observing condition's references to anti-discrimination law show Executive Branch's interpretation of federal law "is undergoing significant change").  Requiring Plaintiffs to comply with "all" EOs and "Presidential Memoranda" is also a change in agency position, as are the hundreds of EOs issued by this President on a wide array of subject matter the EO Condition incorporates by reference.  And the admonitions of the Federal Funding Restrictions, which Defendants only cursorily

address in their brief, reflect policy goals of the Trump Administration (as expressed through multiple EOs) but not one aim of the Community Policing Act—the sole authority for the grantmaking at issue here. Defendants do not even attempt to argue that restrictions relating to COVID-19 vaccine policy, "environmental justice," "gender ideology," or public monuments do not signify a policy change— much less attempt to explain the reasoning behind imposing these limits. Contrary to Defendants' insistence, Plaintiffs do not ask the Court to "substitute its own policy judgment" for that of the COPS Office and the DOJ. Opp. at 17. Plaintiffs instead ask the Court to call a spade a spade and to recognize that, as a matter of law, the Challenged Conditions are a change in policy requiring explanation of reasoning and consideration of reliance interests.[12] As Defendants have failed to provide either, and there is no evidence in the Administrative Record supporting their position, there can be no dispute that the Challenged Conditions are arbitrary and capricious. *E.g., Fresno II*, 2025 WL 2721390, at \*9; *King Cnty. I*, 785 F.Supp.3d at 888-89.

## VII.   Vacatur and Permanent Injunction Are Appropriate and Necessary Remedies.

Defendants do not address any of Plaintiffs' arguments concerning the necessity for vacatur and permanent injunction and thereby concede both are appropriate remedies. Accordingly, in addition to vacating the Challenged Conditions in their entirety, this Court should permanently enjoin the Challenged Conditions for the reasons argued in Plaintiffs' opening motion. Mot. at 21-25.

### CONCLUSION

For the reasons argued above and in Plaintiffs' opening brief, Plaintiffs respectfully request this Court grant their motion for summary judgment on all six causes of action and vacate and permanently enjoin the Challenged Conditions as requested. Mot. at 26.

---

[12] Nor does the Administrative Record provide any evidence Defendants followed the statutory and regulatory procedures concerning the imposition of conditions. Mot. at 21 n.14.

Dated: June 12, 2026

Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
KARUN A. TILAK
JESSE E. LANIER
Deputy City Attorneys

By:  /s/ Jesse E. Lanier
JESSE E. LANIER
Deputy City Attorney

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

TONY LOPRESTI, SBN 289269
County Counsel

By:  /s/ Bill Nguyen
BILL NGUYEN
Deputy County Counsel

KAVITA NARAYAN, SBN 264191
Chief Assistant County Counsel
MEREDITH A. JOHNSON, SBN 291018
Lead Deputy County Counsel
BILL NGUYEN, SBN 333671
Deputy County Counsel
70 W. Hedding Street, East Wing, 9th Floor
San José, CA 95110
Telephone: (408) 299-5900
Facsimile: (408) 292-7240
E-Mail: bill.nguyen@cco.sccgov.org

Attorneys for Plaintiff
COUNTY OF SANTA CLARA

Reply ISO MSJ and Opp to Cross MSJ
Case No. 25-cv-09277-JD

16

ROI I. LUSK
City Attorney

By: */s/ Regina L. Nassen*
REGINA L. NASSEN, Ariz. Bar No. 014574*
Principal Assistant City Attorney

Tucson City Attorney's Office
255 W. Alameda, 7th Floor
P.O. Box 27210
Tucson, Arizona 85726-7210
Telephone: (520)837-4207
Facsimile: (520)623-9803
E-Mail: regina.nassen@tucsonaz.gov

ERIN B. BERNSTEIN, SBN 231539
PRIANKA MUNGALE, SBN 348165
Bradley Bernstein Sands, LLP
1212 Broadway, Suite 1100
Oakland, California 94612
Telephone: (510)380-5801
E-Mail: ebernstein@bradleybernstein.com

Attorneys for Plaintiff
CITY OF TUCSON

HEATHER FERBERT, SBN 246759
City Attorney

By: */s/ Jennifer Martin*
JENNIFER MARTIN
Deputy City Attorney

JEAN JORDAN, SBN 155009
Acting Assistant City Attorney
JULIE RAU, SBN 317658
Lead Deputy City Attorney
JENNIFER MARTIN, SBN 322048
Deputy City Attorney
1200 Third Avenue, Suite 1620
San Diego, CA 92101
Telephone: (619) 236-6220
Facsimile: (619) 236-7215
E-Mail: Jrau@sandiego.org
MartinJM@sandiego.org

Attorneys for Plaintiff
CITY OF SAN DIEGO

Reply ISO MSJ and Opp to Cross MSJ                17
Case No. 25-cv-09277-JD

**FILER'S ATTESTATION**

I, JESSE LANIER, am the ECF user whose identification and password are being used to file this PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.